UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    -v.-<br><br>SEAN COMBS,<br>    a/k/a "Puff Daddy,"<br>    a/k/a "P. Diddy,"<br>    a/k/a "Diddy,"<br>    a/k/a "PD,"<br>    a/k/a "Love,"<br><br>            Defendant. | 24 Cr. 542 (AS) |


# THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTIONS FOR A HEARING, BILL OF PARTICULARS, AND GAG ORDER


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278


Meredith Foster
Emily A. Johnson
Christy Slavik
Madison Reddick Smyser
Mitzi Steiner
Assistant United States Attorneys
    *Of Counsel*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL HISTORY.................................................................................................... 3

BACKGROUND ................................................................................................................... 5

    A. The Investigation of the Defendant.................................................................................. 5

        1. Grand Jury Materials.................................................................................................... 5

        2. March 25, 2024 Search Warrants................................................................................ 6

    B. Discovery ......................................................................................................................... 7

ARGUMENT ......................................................................................................................... 8

    I. The Defendant is Not Entitled to the Relief He Seeks for Purported Leaks ..................... 8

        A. Applicable Law ............................................................................................................ 9

            1. Federal Rule of Criminal Procedure 6(e) and Grand Jury Secrecy ................................ 9

            2. Local Criminal Rule 23.1 and Non-Public Information ............................................... 11

        B. Discussion ................................................................................................................. 12

            1. The Intercontinental Video Was Neither Grand Jury Material Nor Leaked by the Prosecution Team .................................................................................................. 12

            2. The Defendant Fails to Establish That the Cited Articles Disclosed Matters Occurring Before the Grand Jury ................................................................................................ 15

            3. The Defendant Cannot Show that the Prosecution Team Was the Source of Any Improper Disclosures ............................................................................................. 18

            4. The Defendant is Not Entitled to The Remedies He Seeks ......................................... 22

    II. The Defendant is Not Entitled to a Bill of Particulars ...................................................... 24

        A. Applicable Law .......................................................................................................... 24

        B. Discussion ................................................................................................................. 27

            1. The Motion Fails Under Local Criminal Rule 16.1 .................................................... 27

            2. The Defendant is Not Entitled to a Bill of Particulars ................................................ 28

            3. Any Motion for a Bill of Particulars is Premature ..................................................... 31

            4. The Motion Improperly Seeks to Restrict the Government's Proof and Poses Serious Risks of Obstruction.............................................................................................. 32

    III. The Defendant's Victim Gag Motion Should be Denied ................................................ 37

CONCLUSION.................................................................................................................... 39

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Bank of Nova Scotia v. United State*s,
    487 U.S. 250 (1988).................................................................................................. 22

*Barry v. United States*,
    865 F.2d 1317 (D.C. Cir. 1989)............................................................................... 18

*Blalock v. United States*,
    844 F.2d 1546 (11th Cir. 1988) .......................................................................... 16, 17

*Dalia v. United States*,
    441 U.S. 238 (1979).................................................................................................. 17

*In re Grand Jury Subpoena*,
    103 F.3d 234 (2d Cir. 1996)............................................................................... 10, 16

*United States v. Antico*,
    08 Cr. 559 (CBA), 2010 WL 2425991 (E.D.N.Y. June 11, 2010) ......................... 26

*United States v. Barnes*,
    158 F.3d 662 (2d Cir. 1998)..................................................................................... 31

*United States. v. Barrera*,
    950 F.Supp.2d 461 (E.D.N.Y., 2013) ................................................................ 30, 33

*United States v. Bejasa*,
    904 F.2d 137 (2d Cir. 1990)............................................................................... 35, 38

*United States v. Bellomo*,
    263 F. Supp. 2d 561 (E.D.N.Y. 2003) .................................................................... 25

*United States v. Blaszczak*,
    17 Cr. 357 (LAK), 2018 WL 1322192 (S.D.N.Y. Mar. 12, 2018) .............. 10, 11, 18

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987)............................................................................... 24, 29

*United States v. Boyle*,
    S1 08 Cr. 534 (CM), 2009 WL 2032105 (S.D.N.Y. July 9, 2009).......................... 31

*United States v. Brewster*,

    19 Cr. 833 (SHS), 2021 WL 3423521 (S.D.N.Y. Aug. 5, 2021) ............................................. 25

*United States v. Cannone*,

    528 F.2d 296 (2d Cir. 1975)....................................................................................... 36, 38

*United States v. Castro*,

    08 Cr. 268 (NRB), 2008 WL 5062724 (S.D.N.Y. Nov. 25, 2008) .............................. 26, 33, 35

*United States v. Cimino*,

    31 F.R.D. 277 (S.D.N.Y. 1962) ........................................................................................ 33

*United States v. Chambers*,

    17 Cr. 396 (WHP), 2018 WL 1726239 (S.D.N.Y. Apr. 9, 2018) ........................................... 32

*United States v. Cordones*,

    11 Cr. 205 (AKH), 2022 WL 815229 (S.D.N.Y. Mar. 17, 2022)........................................... 28

*United States v. D'Amico*,

    734 F. Supp. 2d 321 (S.D.N.Y. 2010)................................................................................ 32

*United States v. Davidoff*,

    845 F.2d 1151 (2d Cir. 1988)........................................................................................... 30

*United States v. Eastern Air Lines, Inc.*,

    923 F.2d 241 (2d Cir. 1991)................................................................................. 9, 10, 16

*United States v. Eisen*,

    974 F.2d 246 (2d Cir. 1992)........................................................................................... 22

*United States v. Feola*,

    651 F. Supp. 1068 (S.D.N.Y. 1987).................................................................................. 25

*United States. v. Feola*,

    875 F.2d 857 (2d Cir. 1989)........................................................................................... 25

*United States v. Gibson*,

    175 F. Supp. 2d 532 (S.D.N.Y. 2001)............................................................................... 24

*United States v. Gotti*,

    S4 02 Cr. 743 (RCC), 2004 WL 32858 (S.D.N.Y. Jan. 6, 2004)........................................... 33

*United States v. Green*,

    04 Cr. 424 (RWS), 2004 WL 2985361 (S.D.N.Y. Dec. 23, 2004) .......................................... 34

*United States. v. Gupta,*
    11 Cr. 907 (JSR) (S.D.N.Y. 2012) ........................................................................ 37

*United States v. Haller,*
    837 F.2d 84 (2d Cir. 1988) ................................................................................. 9

*United States v. Huntress,*
    13 Cv. 199S, 2015 WL 631976 (W.D.N.Y. Feb. 13, 2015) ................................... 29

*United States v. Interstate Dress Carriers, Inc.,*
    280 F.2d 52 (2d Cir. 1960) ................................................................................. 10

*United States v. Jimenez,*
    824 F. Supp. 351 (S.D.N.Y. 1993) ...................................................................... 25

*United States v. Kelly,*
    19 Cr. 286 (AMD), 2020 WL 473613 (E.D.N.Y. Jan. 29, 2020) ................. 26, 33, 34

*United States. v. Kevin,*
    97 Cr. 763 (JGK),1999 WL 194749 (S.D.N.Y. Apr. 7, 1999) ........................... 26, 35

*United States v. Khan,*
    538 F. Supp. 2d 929 (E.D.N.Y. 2007) ................................................................. 12

*United States v L.,*
    16 Cr. 676 (LGS), 2017 WL 1435746 (S.D.N.Y. Apr. 21, 2017) ........................... 28

*United States v. Leonelli,*
    428 F. Supp. 880 (S.D.N.Y. 1977) ...................................................................... 24

*United States v. Levy,*
    S5 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. Feb. 25, 2013) .......................... 28

*United States. v. Levy,*
    803 F.3d 120 (2d Cir. 2015) ............................................................................... 28

*United States v. Ma,*
    03 Cr. 734 (DAB), 2006 WL 708559 (S.D.N.Y. Mar. 21, 2006) ........................... 29

*United States v. Mackey,*
    21 Cr. 80 (NGG), 2022 WL 2093012 (E.D.N.Y. May 13, 2022) ........................... 35

*United States v. Mahabub,*
    13 Cr. 908 (AJN), 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014) ................ 24, 25, 31

*United States v. Malinsky,*
    19 F.R.D. 426 (S.D.N.Y. 1956) ................................................................ 33, 34, 35

*United States v. Mandell,*
    710 F. Supp. 2d 368 (S.D.N.Y. 2010) ................................................................ 25

*United States v. Martinez,*
    22 Cr. 251 (LJL), 2023 WL 2403134 (S.D.N.Y. Mar. 8, 2023) ............................. 24

*United States v. Maxwell,*
    20 Cr. 330 (AJN), 2021 WL 1625392 (S.D.N.Y. Apr. 27, 2021) .......................... 37

*United States v. Maxwell,*
    20 Cr. 330 (AJN), 2020 WL 5026668 (S.D.N.Y. Aug. 25, 2020) ......................... 31

*United States v. Ming He,*
    94 F.3d 782 (2d Cir. 1996) ................................................................................ 37

*United States v. Ming,*
    02 Cr. 596 (LAK), 2002 WL 1949227 (S.D.N.Y. Aug. 22, 2002) .................... 26, 27

*United States v. Mitlof,*
    165 F. Supp. 2d 558 (S.D.N.Y. 2001) ................................................................ 24

*United States v. Nachami*e,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000) ................................................................. 30

*United States v. Nordlicht,*
    16 Cr. 640 (BMC), 2018 WL 6106707 (E.D.N.Y. Nov. 21, 2018) ............. 11, 17, 18, 19, 23

*United States v. Phillips,*
    843 F.2d 438 (8th Cir. 1988) ............................................................................ 10

*United States v. Raniere,*
    384 F. Supp. 3d 282 (E.D.N.Y. 2019) ............................................................... 28

*United States v. Ray,*
    20 Cr. 110 (LJL), 2021 WL 3168250 (S.D.N.Y. July 27, 2021) ................. 30, 35, 37

*United States v. Rioux,*
    97 F.3d 648 (2d Cir. 1996) ......................................................................... 10, 22

*United States v. Roberts,*
    01 Cr. 410 (RWS), 2001 WL 1646732 (S.D.N.Y. Dec. 17, 2001) ........................ 26

*United States v. Russo*,

    483 F. Supp. 2d 301 (S.D.N.Y. 2007)...................................................... 36

*United States v. Samsonov*,

    07 Cr. 1198 (CM), 2009 WL 176721 (S.D.N.Y. Jan. 23, 2009).............................. 25

*United States v. Sezanayev*,

    17 Cr. 262 (LGS), 2018 WL 2324077 (S.D.N.Y. May 22, 2018) ........................... 35

*United States v. Simon,*

    30 F.R.D. 53 (S.D.N.Y. 1962) ............................................................ 33

*United States v. Sierra*,

    11 Cr. 1032 (PAE), 2012 WL 2866417 (S.D.N.Y. July 11, 2012).......................... 29

*United States v. Silver*,

    15 Cr. 93 (VEC) (S.D.N.Y. 2018) ........................................................ 37

*United States v. Sindone,*

    01 Cr. 517 (MBM), 2002 WL 48604 (S.D.N.Y. Jan. 14, 2002) ............................ 33

*United States v. Skelos*,

    988 F.3d 645 (2d Cir. 2021)................................................ 10, 11, 19, 22

*United States v. Skelos*,

    15 Cr. 317 (KMW), 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ........... 10, 12, 16, 17, 18, 23

*United States v. Starks*,

    24 Cr. 126 (JLR), 2024 WL 4528169 (S.D.N.Y. Oct. 18, 2024)........................... 32

*United States v. Sterritt*,

    678 F. Supp. 3d 317 (E.D.N.Y. 2023) .................................................... 31

*United States v. Torres*,

    901 F.2d 205 (2d Cir. 1990)......................................................... 24, 36

*United States v. Walsh*,

    194 F.3d 37 (2d Cir. 1999)............................................................... 24

*United States v. Walters*,

    910 F.3d 11 (2d Cir. 2018)......................................................... 10, 22

*United States v. Watson*,

    23 Cr. 82 (EK), 2023 WL 7300618 (E.D.N.Y. Nov. 6, 2023)............................... 15

*United States v. Wey*,

   15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) .............................................. 28

## Statutes

18 U.S.C. § 1962(d) ......................................................................................................... 3

18 U.S.C. § 1591(a)(1) ..................................................................................................... 3

18 U.S.C. § 2421(a) .......................................................................................................... 3

18 U.S.C. § 2701 .............................................................................................................. 5

18 U.S.C. § 3771 ............................................................................................................ 39

## Rules

Local Criminal Rule 23.1 ........................................................................................*Passim*

Federal Rule of Criminal Procedure 6(e) ...............................................................*Passim*

Federal Rule of Criminal Procedure 7(f) ............................................... 5, 23, 24, 36

Federal Rule of Criminal Procedure 41(f)(1)(C) ................................................... 7

## Regulations

28 C.F.R. § 50.2 .............................................................................................................. 11

28 C.F.R. § 50.10(c) ..................................................................................................... 14, 15

**TABLE OF ARTICLES**

**(The "Cited Articles")**

| Dkt. Citation | Full Citation |
|---|---|
| Dkt. No. 32-1 | Oliveira, Alex, "Diddy's LA, Miami homes raided by federal agents as part of sex trafficking probe," *N.Y. Post* (Mar. 25, 2024), https://nypost.com/2024/03/25/us-news/diddys-la-miami-homes-raided-by-federal-agents-as-part-of-sex-trafficking-probe-report/ |
| Dkt. No. 32-2 | Roundtree, Cheyenne, et al., "Sean Combs' Homes Raided as Part of Sex Trafficking Investigation," *Rolling Stone* (Mar. 25, 2024), https://www.rollingstone.com/music/music-news/sean-combs-homes-raided-sex-trafficking-investigation-1234990642/ |
| Dkt. No. 32-3 | Guzman, Alyssa, "Diddy's sons return to LA mansion to grab belongings after being cuffed during federal raid," *N.Y. Post* (Mar. 26, 2024), https://nypost.com/2024/03/26/us-news/diddys-sons-return-to-mansion-to-grab-belongings-after-raid/ |
| Dkt. No. 32-4 | Helling, Steve, "Sean 'Diddy' Combs alleged victims 'talking a lot'; feds claim 'concrete, detailed, explicit allegations of sex trafficking,'" *N.Y. Post* (Mar. 27, 2024), https://nypost.com/2024/03/27/us-news/sean-diddy-combs-alleged-victims-talking-a-lot-feds-claim-concrete-detailed-explicit-allegations-of-sex-trafficking/ |
| Dkt. No. 32-5 | "Raids of Diddy's properties signal federal prosecutors in New York are confident in case: expert," *Eyewitness News ABC7* (Mar. 29, 2024), https://abc7ny.com/sean-diddy-combs-raids-new-york-case-federal-prosecutors/14577518/ |
| Dkt. No. 32-6 | Courtneyb, "Homeland Security Investigation Targets Sean 'Diddy' Combs, Requests Flight Records," *The Source* (Apr. 2, 2024), https://thesource.com/2024/04/02/homeland-security-investigation-targets-sean-diddy-combs-requests-flight-records/ |
| Dkt. No. 32-7 | Menezes, Damita, "'Nothing off the table' as feds set to widen Diddy probe: Reporter," *News Nation* (Mar. 31, 2024), https://www.newsnationnow.com/crime/feds-widen-diddy-probe-reporter/ |
| Dkt. No. 32-8 | Helling, Steve, "Diddy 'as bad as Epstein,' says officer who saw his sex rooms, hidden cameras during Miami mansion raid," *N.Y. Post* (Sept. 18, |

| | |
|---|---|
| | 2024), https://nypost.com/2024/09/18/us-news/diddy-as-bad-as-epstein-says-officer-who-raided-miami-mansion/ |
| Dkt. No. 32-9 | Pedler, Taryn, "Diddy is 'as bad as Epstein' says cop who raided disgraced hip-hop mogul's Miami mansion where police found sex rooms used to host 'freak offs,'" *Daily Mail* (Sept. 19, 2024), https://www.dailymail.co.uk/news/article-13868189/Diddy-bad-Epstein-says-cop-raided-disgraced-hip-hop-moguls-Miami-mansion-police-sex-rooms-used-host-freak-offs.html |
| Dkt. No. 32-10 | "Diddy: More accusers coming forward . . . Talking to Feds after arrest," *TMZ* (Oct. 2, 2024), https://www.tmz.com/2024/10/02/diddy-accusers-coming-forward-since-arrest/ |
| Dkt. No. 32-11 | Bucktin, Christopher, "Sean 'Diddy' Combs probe team launch UK victims search as they jet in from US," *The Mirror* (Sept. 28, 2024), https://www.themirror.com/news/uk-news/sean-diddy-combs-probe-team-719849 |
| Dkt. No. 46 | Wagmeister, Elizabeth, et al., "Exclusive: A federal grand jury may soon hear from Sean 'Diddy' Combs' accusers," *CNN* (May 29, 2024), https://www.cnn.com/2024/05/29/entertainment/sean-diddy-combs-federal-investigation/index.html |
| Dkt. No. 46 | Patten, Dominic, "Sean 'Diddy' Combs Wants Feds To Give Him Victims' Names For Sex Trafficking Trial Defense – Even Though He Has A Lot Of Them Already," *Deadline* (Oct. 15, 2024), https://deadline.com/2024/10/sean-combs-victims-names-motion-1236117051/ |
| Dkt. No. 46 | Wagmeister, Elizabeth, "Civil suits against Sean 'Diddy' Combs are mounting. This could be bad for his criminal case, experts say," *CNN* (Oct. 16, 2024),  https://www.cnn.com/2024/10/16/entertainment/sean-diddy-combs-legal-cases/index.html |
| Dkt. No. 49 | Helling, Steve, "Sean 'Diddy' Combs mixed star-studded bashes with raucous 'Freak Off' sex parties after VMAs and Super Bowl, videos reveal," *N.Y. Post* (Oct. 25, 2024), https://nypost.com/2024/10/25/us-news/diddy-mixed-a-list-parties-with-freak-off-sex-shows-tapes/ |

## PRELIMINARY STATEMENT

The Government respectfully submits its response to the series of motions filed by defendant Sean Combs since he was indicted by a grand jury sitting in this District little more than one month ago: (i) his motion for an evidentiary hearing, among other relief, in response to purported leaks (Dkt. No. 30 (the "Leak Motion")); (ii) his motion to require the Government to identify victims (Dkt. No. 36 (the "Bill of Particulars Motion")); and (iii) his motion for an order prohibiting extrajudicial statements from civil litigants (Dkt. No. 42 (the "Victim Gag Motion")).

*First*, the Court should deny the Leak Motion for the simple reason that the defendant fails to show the leak of *any* grand jury material. Without any factual basis, the Leak Motion seeks to suppress highly probative evidence—a video of Combs brutally physically assaulting a victim in March 2016 that was published by a media outlet in May 2024—by claiming that it was grand jury material leaked by Government agents to CNN. But, as the defendant is fully aware, the video was not in the Government's possession at the time of CNN's publication and the Government has never, at any point, obtained the video through grand jury process. The defendant also complains about purported "law enforcement sources" leaking other alleged grand jury material to the media in several news articles cited in his papers and set forth in the attached table (the "Cited Articles"). Here, too, the defendant is grasping at straws. Because the defendant cannot show that the information in the Cited Articles is grand jury material, and because he cannot show that Government agents with access to grand jury material leaked the information, he cannot make the *prima facie* showing required for the relief he seeks. Moreover, even if any the information in the Cited Articles could be considered non-public information improperly disclosed, the defendant's request for relief under Local Criminal Rule 23.1 is mooted by the order entered by this Court on October 25, 2024. (*See* Order, Dkt. No. 50).

*Second*, the Court should reject the defendant's Bill of Particulars Motion as not only unnecessary but improper.  As an initial matter, the defendant has been more than sufficiently apprised of the charges he faces, including through a 14-page speaking indictment, the Government's submissions and statements on the record in connection with the defendant's bail hearings, and significant productions of discovery.  And at the appropriate times, in accordance with the well-established practices in this District, the defendant will receive even more disclosures about the conduct with which he is charged including through additional discovery, an enterprise letter, a witness and exhibit list, and Jencks Act material.  Accordingly, the defendant cannot credibly claim that he will suffer unfair surprise at trial.  Rather, it is plain that the defendant's request for a bill of particulars containing victim names is merely a vehicle to attempt to prematurely restrict the Government's proof at trial and use these criminal proceedings to defend himself in the press against complainants in separate civil litigation.  This improper request should be denied in its entirety, particularly here, where there are serious and ongoing concerns of victim and witness safety, tampering, and intimidation.

*Finally*, the Victim Gag Motion should be denied as an attempt to backdoor the Federal Rules of Criminal Procedure to compel the Government to prematurely disclose its witness list. Indeed, by seeking a preemptive gag order under Local Criminal Rule 23.1 preventing potential witnesses in the criminal case and their counsel from making extrajudicial statements, the defendant is essentially asking for *either* a blanket order that would apply indiscriminately to any individuals with claims against Combs and their lawyers, *or* for a more limited order that would require the Government to identify its witnesses *six months before trial*.  Not only would such relief be unprecedented, but the defendant should not be permitted to use a local criminal rule as a

2

sword to gag civil claimants whether or not their statements were connected to this criminal proceeding, or to evade established case law in this Circuit.

## PROCEDURAL HISTORY

In or around November 2023, and as described in more detail below, federal prosecutors from the United States Attorney's Office for the Southern District of New York (the "USAO-SDNY"), working with case agents from the Human Trafficking Squad of the New York Field Office of Homeland Security Investigations ("HSI-NY"), began investigating Combs and others for violations of federal criminal law.

On September 12, 2024, a grand jury returned a three-count indictment charging the defendant with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One), sex trafficking by force, fraud and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), 1594(a) and 2 (Count Two), and transportation to engage in prostitution, in violation of 18 U.S.C. §§ 2421(a) and 2 (Count Three). (*See* Dkt. No. 1 (the "Indictment")). As alleged in detail in the 14-page speaking Indictment, starting at least 2008, the defendant participated with others in a racketeering conspiracy that he led and controlled (the "Combs Enterprise"). The defendant and other members and associates of the Combs Enterprise wielded the defendant's power and prestige in the entertainment industry to cause female victims to engage in extended sex acts with male commercial sex workers, referred to as "Freak Offs," which the defendant directed, masturbated during, and often electronically recorded. (*Id.* ¶ 12(a)). The Combs Enterprise accomplished its goals through acts of violence and obstruction. (*Id.* ¶¶ 6, 12(c)). With respect to the Freak Offs, the defendant threatened victims with the electronic recordings of the sex acts as collateral. (*Id.* ¶ 12(c)). In addition, the defendant physically assaulted women and others by striking, punching, dragging, throwing objects at, and kicking them. (*Id.*). Members and associates of the Combs Enterprise also, at times, carried firearms and, on more than one occasion, the defendant carried

3

or brandished firearms to intimidate and threaten victims and witnesses of his crimes. (*Id.* ¶ 12(d)). Further, when the defendant's power was threatened, the Combs Enterprise engaged in acts of violence, including kidnapping and arson, and pressured witnesses and victims, including through attempted bribery, to stay silent and not report what they experienced or knew to law enforcement. (*Id.* ¶ 12(f), (g)). On phone calls, the defendant and other members and associates of the Combs Enterprise, among other things, provided these victims and witnesses with a false narrative of events in an effort to conceal the defendant's crimes. (*Id.*).

Following the return of the Indictment by the grand jury, Combs was arrested on September 16, 2024. The next day, on September 17, 2024, United States Magistrate Judge Robyn Tarnofsky ordered the defendant detained pending trial. United States District Judge Andrew Carter, to whom the case was then assigned, held another bail hearing on September 18, 2024, after which he ordered that the defendant remain detained pending trial. In reaching his determination, Judge Carter stated that the defendant "is a danger regarding obstruction of justice and witness tampering" and "a danger to the safety of others in the community more generally." (Sept. 18, 2024 Tr. at 56).

In the last month, the defendant has filed multiple applications for relief from the Court, each one insisting that the relief sought was necessary and urgent. On October 9, 2024, the defendant filed the Leak Motion, seeking various forms of relief including an evidentiary hearing, discovery, a gag order,[1] and suppression of evidence. (Dkt. No. 30). Then on October 15, 2024,

---

[1] On October 25, 2024, the Court issued an order confirming the Government's obligations under Rule 6(e) as well as the parties' obligations under Rule 23.1 (the "Order"). (Order, Dkt. No. 50). As required by the Order, the Government transmitted the Order to all individuals at USAO-SDNY who are assigned to work on the case or have assisted the case team, all Government personnel authorized to have grand jury material, and the HSI-NY agents assigned to the case and their supervisor. HSI-NY circulated the Order to all special agents, analysts, tech officers, forensic

the defendant filed the Bill of Particulars Motion pursuant to Federal Rule of Criminal Procedure 7(f) asking the Court to require the Government to identify the victims in the case more than six months before trial. (Dkt. No. 36). Finally, on October 20, 2024, the defendant filed the Victim Gag Motion related to media statements from civil plaintiffs and their attorneys, seeking an order prohibiting prospective witnesses and their counsel from making extrajudicial statements, among other relief. (Dkt. No. 42).

## **BACKGROUND**

### A.  The Investigation of the Defendant

Together with case agents from HSI-NY, federal prosecutors from the USAO-SDNY commenced their investigation into the defendant and others in November 2023. As part of the investigation, and pursuant to the authority of the grand jury, the grand jury issued subpoenas to obtain evidence, including documents and other records as well as witness testimony. To date, the grand jury has issued over 300 subpoenas, and the Government has interviewed over 50 witnesses, several of whom testified before the grand jury. (Sept. 17, 2024 Tr. at 22-23). The Government also took other investigative steps outside the grand jury process, including obtaining a multitude of judicially authorized search warrants for, among other things, searches of cloud storage accounts governed by the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and searches of certain premises, persons, and electronic devices in accordance with Rule 41 of the Federal Rules of Criminal Procedure.

### 1.  Grand Jury Materials

The grand jury investigation of the defendant proceeded in accordance with Rule 6 of the Federal Rules of Criminal Procedure, which governs, among other things, secrecy of matters

---

agents, task force officers, and press officers who have or currently work on the case, as well as senior HSI leadership.

before the grand jury and materials considered by the grand jury. For the purposes of this motion, the Government attorneys, analysts, and law enforcement agents who have access to Rule 6(e) materials are referred to herein as the "Prosecution Team."

Throughout the investigation and in accordance with Rule 6, the grand jury issued subpoenas for various records relevant to the investigation, including, *inter alia*, hotel records, travel records, financial records, and phone records. The records returned in response to those subpoenas were maintained pursuant to Rule 6(e). At both HSI-NY and the USAO-SDNY, access to the repository of electronic files containing grand jury information is restricted to the Prosecution Team.[2] Specifically, at HSI-NY, only the three assigned HSI-NY agents can access all of this grand jury material, and if an unauthorized individual attempted to query or access the case file, the case file would appear to be empty to the unauthorized agent. In addition, the lead case agent would receive a notification of the identity of the unauthorized agent who attempted to access the case file.

### 2. March 25, 2024 Search Warrants

The Government's investigative steps outside the grand jury included numerous judicially authorized search warrants, including multiple warrants executed on March 25, 2024 in Los Angeles and Miami. Specifically, HSI-NY, with the assistance of agents from local field offices, executed search warrants on March 25, 2-2024 at three locations: the defendant's Miami Beach residence (the "Miami House"), the defendant's Los Angeles residence (the "LA House"), and on the persons of the defendant and his chief of staff at the Miami-Opa Locka Executive Airport (the

---

[2] As of June 30, 2024, federal agencies must maintain records electronically to the fullest extent possible. *See* December 23, 2022 Office of Management and Budget and National Archives and Records Administration Memorandum M-23-07. HSI-NY has no paper files related to this case, and the paper files containing grand jury information at USAO-SDNY are maintained securely in prosecutor offices.

"Airport").  Each of the search warrants executed on March 25, 2024 was authorized by magistrate judges in the Central District of California and the Southern District of Florida, who reviewed sworn affidavits setting forth probable cause for each of the searches (the "Affidavits") before signing each respective search warrant (the "Search Warrants").  Each Search Warrant consisted of the warrant signed by the magistrate judge followed by attachments describing the property or persons to be searched and the items to be seized.  The Search Warrants to be executed at the Airport and the Miami House authorized execution between 6 a.m. and 10 p.m., while the LA House warrant authorized execution at any time of the day or night as it was meant to be executed simultaneously with the warrants at the Airport and Miami House.

The Airport search, which was conducted after the defendant and others boarded a private plane bound for the Bahamas, began first on March 25, 2024 and dictated the timing of the execution of the search warrants at the Miami House and LA House.  At both the Miami House and LA House, an HSI Special Agent served as the "team leader," and multiple agents assisted in performing the searches.  The team leader at each location had a copy of the applicable Search Warrant to leave at the location of each search, as required by Federal Rule of Criminal Procedure 41(f)(1)(C).  No copies of the Affidavits setting forth probable cause were taken to or left at any search location.  The team leader at each location also prepared an inventory of items seized pursuant to Rule 41(f)(1)(B), which was left at each premise alongside the team leader's copy of the Search Warrant.

### B.  Discovery

Since the defendant's arrest a little over a month ago, the Government has made three significant productions of discovery material, which include the following categories of materials: all search warrants and supporting affidavits; hotel, financial, and communication records produced pursuant to grand jury subpoenas; and electronically stored information from over sixty

of the defendant's own devices and iCloud accounts, including, among other things, text messages, audio and video recordings, photographs, and documents, which the defendant had requested be prioritized. These materials contain additional details about the allegations against the defendant, including, for example, specific allegations relating to multiple victims in search warrant affidavits and communications with victims and witnesses from the defendant's devices.

Forthcoming discovery will similarly contain additional details about the alleged conduct, including additional communications with victims and witnesses, travel and hotel records relating to Freak Offs, bank records showing payments to victims by the defendant and entities associated with the defendant, and police and fire department records relating to the kidnapping and the arson discussed in the Indictment.

## ARGUMENT

Under the law in this Circuit, all three of the defendant's motions should be denied in their entirety. *First*, with respect to the Leak Motion, the defendant has not made a *prima facie* showing of any leak of grand jury material. Consequently, the defendant's requests for, *inter alia*, an evidentiary hearing and the suppression of a video showing the defendant violently assaulting a victim must be rejected. *Second*, the defendant's demand for a bill of particulars identifying victims in the case fares no better because his request—made well before the conclusion of discovery—is both premature and without merit. *Finally*, the defendant's request for what amounts to a witness gag order should also be denied because it is nothing more than another attempt to force the Government to prematurely disclose its witness list and/or to demand extraordinarily overbroad relief.

## I.  The Defendant Is Not Entitled to the Relief He Seeks for Purported Leaks

In the Leak Motion, the defendant argues baselessly that a video depicting the defendant's assault of a victim at the Intercontinental Hotel in Los Angeles on March 5, 2016 (the

"Intercontinental Video") was provided to a media outlet by Government agents. The Leak Motion also catalogues alleged non-public information purportedly provided to media outlets by Government sources in multiple news articles. However, the defendant cannot demonstrate that disclosure of any of the information in the Cited Articles, including the Intercontinental Video published by CNN, was subject to the secrecy protections of Federal Rule of Criminal Procedure 6(e), or that any such disclosure came from a member of the Prosecution Team. Accordingly, he is not entitled to relief.

### A.  Applicable Law

#### 1.  Federal Rule of Criminal Procedure 6(e) and Grand Jury Secrecy

The "proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," because absent that secrecy, "prospective witnesses may be deterred from testifying, those who do testify may be less likely to do so truthfully, targets of investigations may flee, and persons who are the subject of an ultimately meritless investigation may face public embarrassment." *United States v. Haller*, 837 F.2d 84, 87-88 (2d Cir. 1988).[3]  Rule 6(e) governs disclosure of grand jury proceedings and provides that "an attorney for the government" and "any government personnel [to whom grand jury material has been disclosed]" may not disclose "a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B)(vi), (e)(2)(B)(vii), (3)(A)(ii).

The "core" of what Rule 6(e)(2) protects is "evidence that is actually presented to the grand jury," but "[p]rotection also extends beyond the literal evidence that is presented to include 'anything that may tend to reveal what transpired before the grand jury, such as summaries of grand jury testimony.'" *United States v. Skelos*, 15 Cr. 317 (KMW), 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015) (quoting *United States v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d

---

[3] Unless otherwise noted, case text quotations omit all internal quotation marks, citations, and previous alterations.

Cir. 1991)). "[T]he Rule is intended only to protect against disclosure of what is said or what takes place in the grand jury room." *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960).

The Rule also "does not apply to disclosures of information obtained independently of the grand jury process, even if the same information might later be presented to the grand jury." *Skelos*, 2015 WL 6159326, at *10. When the Government gathers information outside of the grand jury, "through wiretaps, search warrants, and interviews with witnesses not expected to appear before the grand jury," that information "is not subject to Rule 6(e) provisions on disclosure." *Id.*; *see also Eastern Air Lines*, 923 F.2d at 244 (Rule 6(e) not violated by disclosure of search warrant affidavit, even if information from affidavit might later be presented to the grand jury).

Where a defendant claims that grand jury matters were disclosed in violation of Rule 6(e), he must first "establish a *prima facie* case of a violation." *United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996). To determine whether the defendant has made out a *prima facie* case:

> [T]he court should examine, among other factors: (1) whether the media reports disclose matters occurring before the grand jury; (2) whether the media report discloses the source as one prohibited under Rule 6(e); and (3) evidence presented by the government to rebut allegations of a violation of Rule 6(e).

*Id.*; *see also, e.g.*, *United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021) (same); *United States v. Blaszczak*, 17 Cr. 357 (LAK), 2018 WL 1322192, at *3 (S.D.N.Y. Mar. 12, 2018) (same). In the second prong, the sources "prohibited" under the rule include, as relevant here, an "attorney for the government," and law enforcement agents to whom grand jury disclosures are made under Federal Rule of Criminal Procedure 6(e)(3)(A)(ii). *E.g.*, *United States v. Walters*, 910 F.3d 11, 19 n.4 (2d Cir. 2018); *see also Skelos*, 988 F.3d at 662 (distinguishing between "a 'government source' or 'law-enforcement sources'" cited in articles and "government investigators" subject to Rule 6(e)). Where the "sole . . . direct evidence" of a Rule 6(e) violation is media reporting, courts

evaluate whether the reporting itself contains protected grand jury information, because "if the article contains no information of the sort Rule 6(e) protects, then no *prima facie* case can be made out." *Blaszczak*, 2018 WL 1322192, at *3 n.30; *accord United States v. Nordlicht*, 16 Cr. 640 (BMC), 2018 WL 6106707, at *3 (E.D.N.Y. Nov. 21, 2018).

### 2. Local Criminal Rule 23.1 and Non-Public Information

Separately, Local Criminal Rule 23.1, entitled "Free Press – Fair Trial Directives," sets forth restrictions regarding the release of non-public information or opinion, and making extrajudicial statements in pending criminal cases and investigations.[4] Specifically, the Local Rule provides:

> It is the duty of the lawyer or law firm, and of non-lawyer personnel employed by a lawyer's office or subject to a lawyer's supervision, private investigators acting under the supervision of a criminal defense lawyer, and government agents and police officers not to release or authorize the release of non-public information or opinion that a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that the dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

Local Crim. R. 23.1(a). And with respect to a grand jury investigation, participating lawyers, including lawyers for the Government, and lawyers for targets, subjects, and witnesses, are directed to "refrain from making any extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication that goes beyond the public record or that is not necessary to . . . aid in the investigation" so long as "the dissemination will interfere with a

---

[4] The Local Rule mirrors Rule 3.6 of the New York Rules of Professional Conduct, which provides that "[a] lawyer who is participating in or has participated in a criminal or civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." N.Y. Rules of Prof'l Conduct 3.6(a). The Department of Justice has issued guidelines to its employees governing trial publicity, which can be found at 28 C.F.R. § 50.2.

fair trial or otherwise prejudice the administration of justice." Local Crim R. 23.1(b). The Court has authority to prevent violations of the Rule, *see United States v. Khan*, 538 F. Supp. 2d 929, 931 (E.D.N.Y. 2007), but "must consider whether the order will be necessary to ensure an impartial jury" and must find that "less extreme available remedies, singly or collectively, are not feasible or would not effectively mitigate the pretrial publicity and bring about a fair trial," Local Crim. R. 23.1(h). In addition, "[a]ny lawyer who violates the terms of [Local Criminal Rule 23.1] may be disciplined under Local Civil Rule 1.5." Local Crim. R. 23.1(i).

### B.  Discussion

The defendant is not entitled to the remedies he seeks—including suppression of evidence and an evidentiary hearing—because he has failed to make a *prima facie* showing that (1) "there has been disclosure of a matter or matters occurring before the grand jury" and (2) "that the source of the disclosure was an attorney or agent of the government." *Skelos*, 2015 WL 6159326, at *9.

### 1.  The Intercontinental Video Was Neither Grand Jury Material Nor Leaked by the Prosecution Team

At the forefront of the Leak Motion is the defendant's bald attempt to suppress a damning piece of evidence against him—a video of him violently beating a victim at the Intercontinental Hotel in Los Angeles in March 2016—under the guise of grand jury secrecy. As the defendant well knows, the Intercontinental Video publicly released by CNN was not in the possession of the Government at the time of its publication and has never been a record obtained through grand jury process. Nonetheless, in the Leak Motion, the defendant baselessly accuses "DHS" agents—who have no authority to issue grand jury process—of secretly obtaining the Intercontinental Video unbeknownst to the prosecutors conducting the investigation and then leaking it to CNN. No evidentiary hearing is necessary to reject these assertions as incredible.

As alleged in the Indictment, the Intercontinental Video that was publicly reported by CNN captured "one instance at a Los Angeles hotel in or about March 2016" during which "Combs kicked, dragged, and threw a vase at a woman as she was attempting to leave." (Indictment ¶ 4). From early in the investigation, the Government pursued obtaining video of this assault and investigated the circumstances under which the surveillance video disappeared from the hotel's server shortly after March 5, 2016. (*See* Sept. 17, 2024 Tr. at 13 (describing the defendant's attempt to bribe a security guard, direction to his staff to contact hotel security staff, and surveillance video disappearing from hotel server within days of March 5, 2016); Sept. 18, 2024 Tr. at 10-11 (same)).

The Government ultimately obtained the Intercontinental Video at the same time as the general public on May 17, 2024, when CNN publicly released the footage. The morning that CNN released the Intercontinental Video, counsel for the defendant contacted the prosecutors assigned to the case to alert them that CNN had the video and expressed a "concern [] that someone (*not any of you and not the lead case agents*) provided this footage to CNN." (*See* Ex. A (emphasis added)). Just after 1 p.m. that day, a Government analyst alerted the prosecutors that CNN had published a story about the assault including the hotel surveillance video, which the analyst preserved by screenshotting the CNN online article and downloading the associated video. The metadata associated with the Government's copy of the Intercontinental Video indicates that the file was saved on May 17, 2024—that is, when it was downloaded from CNN. (*See* Ex. B).

Prior to that date, the Government had been unsuccessful in obtaining any video of the assault. And still, as of the date of the filing of this brief, the Government has not obtained the Intercontinental Video broadcast by CNN from any source other than the public broadcast.[5]

Accordingly, any claim by the defendant that the Intercontinental Video is grand jury material is flatly wrong and the defendant was well aware of this fact at the time he filed the Leak Motion. Indeed, prior to the motion's filing, the Government advised defense counsel by email that it possessed no surveillance video from the Intercontinental prior to CNN's public broadcast, and that it had obtained the Intercontinental Video through CNN's public airing, not through a grand jury subpoena. (*See* Ex. C). The Government likewise informed defense counsel of its understanding that HSI-NY—which cannot independently issue grand jury subpoenas—similarly did not have possession of the Intercontinental Video prior to CNN's broadcast. (*Id.*).

Desperate to suppress the evidence anyway, the defendant makes the *ipse dixit* argument that "it is reasonable to believe that [the Intercontinental Video] was obtained in connection with a grand jury investigation." (Leak Mot. 10). The defendant reasons, for example, that Government agents must have been responsible for the "leak" because, among other reasons, the day that CNN decided to publish the video was "a slow news day given the break in the Trump trial." (Leak Mot. 9). But it strains credulity to suggest that law enforcement agents independently obtained the Intercontinental Video with a grand jury subpoena they had no authority to issue. The defendant refuses to acknowledge that multiple individuals other than Government agents—including some of his own employees—may have had access to the Intercontinental Video. Indeed, the Government is continuing to investigate who had access to and may have obtained the

---

[5] Department of Justice policy prohibits USAO-SDNY from issuing any compulsory legal process, including a grand jury subpoena or search warrant, to CNN to obtain a copy of the Intercontinental Video. *See* 28 C.F.R. § 50.10(c).

video, including, for instance employees of the hotel, the security team contracted by the hotel, and members of the defendant's staff, who, as discussed on the record, attempted to obtain the video surveillance after the incident in March 2016. (*See* Sept. 17, 2024 Tr. at 13; Sept. 18, 2024 Tr. at 10-11). *Any* of these individuals could have provided the Intercontinental Video to CNN but bald speculation is not a valid basis from which to conclude that there was a law enforcement leak of grand jury information.

The defendant thus falls far short of establishing a *prima facie* case of a Rule 6(e) violation as to the Intercontinental Video. Likewise, the defendant cannot plausibly establish that the Intercontinental Video was non-public information that the USAO-SDNY or its agency partner had in their possession at the time of CNN's publication. Therefore, to the extent that the defendant could seek any relief under Local Crim. R. 23.1 for such a disclosure, no relief is available here.[6]

## 2. The Defendant Fails to Establish That the Cited Articles Disclosed Matters Occurring Before the Grand Jury

While the clear objective of the Leak Motion is to suppress the Intercontinental Video, the defendant also complains about other "leaked" information in the Cited Articles. However, as with the Intercontinental Video, the defendant's categorization of much of the information in the Cited Articles as material protected by Rule 6(e) is entirely speculative and has no basis in fact or common sense.

---

[6] Moreover, even if the defendant could make a showing that the publication of the Intercontinental Video constituted a violation of Rule 23.1, the relief he seeks—specifically suppression of the evidence—has no legal basis. As set forth above, the Rule allows for attorney discipline in a separate proceeding in accordance with Local Civil R. 1.5, but the defendant does not assert that a Government prosecutor caused the leak. The Rule also permits the Court to issue a "special order" to remedy interference with the fair trial rights of the defendant. Local Crim. R. 23.1(h). However, the defendant has not demonstrated why such an order is necessary here. *See id.*; *see also United States v. Watson*, No. 23-CR-82 (EK), 2023 WL 7300618, at *12 (E.D.N.Y. Nov. 6, 2023) (noting that "district courts [must] make a finding of necessity before entering [a remedy under Local Rule 23.1(h)").

The searches of the defendant's Miami House and LA House, and evidence recovered therefrom, are the subject matter of the majority of the Cited Articles. (*See* Dkt. Nos. 32-1; 32-2; 32-3; 32-4; 32-5; 32-8; 32-9). The defendant has not, and cannot, establish that this information is protected grand jury material because the law is clear that information obtained through search warrants is outside of the scope of Rule 6(e)'s protections. *See Skelos*, 2015 WL 6159326, at *10 (noting that information gathered outside of the grand jury process, "through wiretaps, search warrants, and interviews with witnesses not expected to appear before the grand jury," "is not subject to Rule 6(e) provisions on disclosure"); *Eastern Air Lines*, 923 F.2d at 244; *see also, e.g.*, *Blalock v. United States*, 844 F.2d 1546, 1551 (11th Cir. 1988) (per curiam).

The defendant's argument that disclosure of information about the searches—including the target of the investigation, the types of search warrants obtained and materials sought, and evidence obtained pursuant to search warrants—somehow "reveal[s] the nature or direction of the grand jury proceedings" (Leak Mot. 14 (quoting *In re Grand Jury Subpoena*, 103 F.3d at 238)), is undermined by the very authority the defendant cites. Courts in most circuits, including the Second Circuit, have held that Rule 6(e) is not violated by disclosure of information obtained by a criminal investigation that parallels but is independent of a grand jury investigation—such as information and material obtained by search warrant. *See In re Grand Jury Subpoena*, 103 F.3d at 238-39 (citing cases holding that "when information is produced by a criminal investigation that parallels but is independent of a grand jury investigation, disclosure of the information is not a violation of grand jury secrecy because it is not a matter occurring before the grand jury").[7]

---

[7] Nor would this information constitute dissemination of "non-public" information in violation of Rule 23.1. For example, Rule 23.1 contemplates that an announcement of a search and "a description of the items seized" "presumptively do[es] not involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of this rule." S.D.N.Y. Local Crim. R. 23.1(e).

Even if the Cited Articles include arguably non-public information obtained from the searches, disclosure of this information does not constitute a violation of Rule 6(e). *See Nordlicht*, 2018 WL 6106707, at \*4 (finding no violation of 6(e) when information published in new articles was contained on the face of the search warrant and its attachments and search was executed prior to the publication of the new articles); *Skelos*, 2015 WL 6159326, at \*10 (finding no violation of Rule 6(e) when disclosures of information could have been discovered in the course of a grand jury investigation or an "investigation outside the grand jury, based on materials obtained through wiretaps, search warrants, and interviews with witnesses not expected to appear before the grand jury"). Simply put, the defendant cannot show that disclosure of information obtained from the searches violates Rule 6(e).[8]

The information in the Cited Articles beyond that obtained pursuant to search warrants is similarly unprotected by Rule 6(e). For instance, the defendant complains about the Cited Articles disclosing witness meetings with the Government (Leak Mot. 14; Dkt. Nos. 32-1; 32-2 ("[F]our Jane Does and one John Doe already sat for interviews with Southern District of New York investigators for a probe related to alleged sex trafficking and racketeering" and that "[m]ore interviews are scheduled"); Dkt. No. 32-5 ("[P]rosecutors have interviewed a number of Diddy's accusers, including those who have filed civil lawsuits.")). But those Cited Articles do not identify the witnesses as grand jury witnesses, nor do they reference testimony before the grand jury. Mere speculation by the defendant that these individuals were grand jury witnesses does not establish a *prima facie* violation of Rule 6(e). *See, e.g.*, *Blalock*, 844 F.2d at 1551 (no violation of Rule 6(e)

---

[8] As for the defendant's complaints about the execution of the searches on March 25, 2024, these complaints are irrelevant to the instant motion. Moreover, it is black letter law that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United States*, 441 U.S. 238, 257 (1979).

based on disclosure of interviews that occurred outside of the grand jury); *Nordlicht*, 2018 WL 6106707, at *4 (to violate Rule 6(e), there must be "improper disclosure of the inner workings of the grand jury, not simply information about some aspect of a related government investigation").

### 3. The Defendant Cannot Show that the Prosecution Team Was the Source of Any Improper Disclosures

Moreover, none of the Cited Articles indicate on their face that any leaked information came from Government attorneys or members of the Prosecution Team, *i.e.*, the prosecutors and agents conducting the investigation who had access to grand jury material. Even the articles that attribute information to "law enforcement" do so vaguely, citing "law enforcement sources" (*see* Dkt. Nos. 32-1; 32-2; 32-3; 46 (10/15/2024 article)), or "sources familiar with the investigation" (*see* Dkt. Nos. 32-5; 32-10; 46 (10/16/2024 article). Some of the Cited Articles simply cite "sources" (*see, e.g.*, Dkt. Nos. 32-2; 32-3; 32-5; 32-6; 32-11) or quote previously published articles or reporters (*see, e.g.*, Dkt. Nos. 32-3; 32-7). To meet the burden of a *prima facie* showing, a far more explicit connection between the alleged leak and the law enforcement officers conducting the investigation is required. *See, e.g.*, *Barry v. United States*, 865 F.2d 1317, 1325 (D.C. Cir. 1989) (multiple articles sourced to law enforcement officials with knowledge of particular testimony given to a grand jury).

Where the sourcing is less clear, courts are reluctant to draw the conclusion that the defendant leaps to here, that anonymous sources "close to" or "familiar with" an investigation must be the personnel conducting that investigation. *See Blaszczak*, 2018 WL 1322192, at *6 ("[N]either the article's attribution of sources—unspecified 'people familiar with the probe'—nor its substance sufficiently points to the government."); *Skelos*, 2015 WL 6159326, at *11 ("[N]one of the news articles or the letter indicates that a government attorney or agent was the source of the information, and at least one explicitly states that the U.S. Attorney's Office and FBI

representatives declined to comment."). Further, even where reporters *expressly* cite law enforcement or government sources, the Second Circuit has refused to infer lightly that those sources were members of the Prosecution Team. *See Skelos*, 988 F.3d at 662 ("[T]he media outlets only identified a 'government source' or '[l]aw-enforcement sources,' not government investigators [subject to Rule 6(e)]."). Even taking at face value that the alleged "law enforcement sources" are indeed individuals who work in federal law enforcement—which is not a given, as many of the articles contain vague attributions—the defendant's logical leap that those sources must be attributable to Government personnel who have access to 6(e) material finds no support in the case law. *See also Nordlicht*, 2018 WL 6106707, at *4 (finding that defense allegations that "government agents were the sources of the disclosures based on the terms used in the Cited Articles to describe unnamed sources, such as persons 'with direct knowledge of the matter,' 'briefed on the investigation,' and 'not authorized to speak publicly on the matter,'" did not "warrant the conclusion that the sources in the Cited articles were government agents or government attorneys").

Moreover, even as to information sourced vaguely to "federal law enforcement" or something similar, the information discussed in many of the Cited Articles was not known only, or even principally, by the Prosecution Team. For instance, the Cited Articles about the searches of the defendant's Miami House and LA House contain information that could be gleaned from the material left at those residences following the searches, including the Search Warrants themselves as well as the attachments to the Search Warrants and search warrant inventories. The recipients of those materials—presumably individuals associated with the defendant who have no ties to the Prosecution Team—were free to share those materials with anyone they chose, including the defendant, members of the defendant's staff, and any other individuals, including the press.

Likewise, with respect to the Government's meetings with witnesses, multiple parties other than the Government are aware of instances in which the Government meets with witnesses, including the witnesses themselves, counsel for the witnesses, and any other individuals the witnesses may choose to tell about the meeting.   Any of those individuals, none of whom is within the Government's control or covered by Rule 6(e), could elect to disclose the meeting.  (*See* Leak Mot. 5 (disclosure of witnesses meeting with the Government)).   The same goes for information requested by grand jury subpoena.  (*See* Leak Mot. 7 (disclosure of HSI investigators seeking to obtain flight records and telecommunications records)).   Recipients of document requests via grand jury subpoena are not bound by the secrecy requirements of Rule 6(e).   Therefore, where hundreds of grand jury subpoenas have been issued to third parties, "leaked" information from "sources close to the case" about documents and information sought by grand jury subpoena are just as likely to have come from the recipients of those subpoenas.

Even information in the Cited Articles sourced generally to law enforcement cannot meaningfully be linked to the Prosecution Team here.  For example, in one article cited by the defendant in his October 20, 2024 letter, a "law enforcement source with knowledge of the case" is quoted as saying "This is all about shaming the alleged victims, it's part of the defense' offense course of action . . .  They'll try anything."  (Dkt. No. 46 (10/15/2024 article)).  This purported "law enforcement source" could be anyone who read the publicly available transcripts of the bail hearings in this case or anyone who viewed defense counsel's various media interviews following the defendant's arrest.  Similarly, information in one of the Cited Articles attributed to a "Miami-based [DHS] officer" in the aftermath of the March 2024 searches include the following: "We believe that there is a disturbing history of sex trafficking. . .  We are responding to concrete, detailed, explicit allegations.  This is not random.  We didn't choose his name out of a hat.  We

had allegations that we're following up on. . .  We became aware of certain allegations during the course of the civil suits against Mr. Combs . . .  You have to understand that we didn't just decide on a whim to search his homes.  A federal judge had to sign off.  This isn't a witch hunt."  (Dkt. No. 32-4).  These statements need not be attributed to anyone even remotely associated with the investigation; they could have come from anyone in law enforcement with a general understanding of how search warrants are executed, who has interviewed victims, and pays attention to the news. That is particularly true here, where there were multiple publicly filed civil lawsuits detailing sexual abuse and trafficking claims against the defendant, which garnered significant media attention, well before the searches took place on March 25, 2024.

This goes for the alleged "federal law enforcement source who is involved in the investigation" as well, who, in October 2024, evidently reviewed descriptions of videos allegedly depicting sexual acts involving the defendant obtained by the media.  (Dkt. No. 49).  That source is quoted as saying "[t]hese are consistent with the videos we have" and "[j]ust about everything you can imagine was happening at his parties."  Again, these statements cannot automatically be assumed to contain non-public information or be attributed to members of the Prosecution Team, as the Government has made detailed public statements about video evidence that it has in its possession.  Indeed, when the alleged law enforcement source made these comments, the Government had already described much of its evidence—including that it had videos of Freak Offs—during two well-publicized bail hearings.  (*See* Sept. 17, 2024 Tr. 10-11, 23; Sept. 18, 2024 at 5-6).

Across all the Cited Articles, there appears to be only one source plausibly connected to the investigation at all—a purported DHS officer who claims to have participated in the search of the defendant's Miami home.  (*See* Dkt. Nos. 32-8; 32-9 (appearing to feature information from

21

the same source, a purported DHS agent "who helped raid [Combs'] Miami mansion").  Much of

the information this source discusses was a matter of the public record at the time he or she made

comments in September 2024.  Additionally, while the Government agrees with the defense and

the Court that extrajudicial commentary by law enforcement officers involved in the investigation

in any way is inappropriate (*see* Order, Dkt. No. 50 ("Those remarks, if made by an agent involved

in the investigation or prosecution of this case, are plainly improper.")), an agent who merely

participated in a search—who had no access to grand jury materials or even the Affidavit setting

forth probable cause to search the defendant's Miami House—is decidedly not a member of the

Prosecution Team.  Moreover, as described above, nothing disclosed by this alleged DHS source

was protected by Rule 6(e).

    For all these reasons, the defendant has not made a *prima facie* showing that matters

occurring before the grand jury were leaked, nor has he shown that members of the Prosecution

Team leaked them.[9]

### 4.  The Defendant is Not Entitled to The Remedies He Seeks

    Because the defendant cannot make a *prima facie* showing that any grand jury material

was disclosed, much less that the source of the disclosure was an attorney or agent of the

Government covered under Rule 6(e), he is not entitled to an evidentiary hearing.  *See, e.g.*, *Rioux*,

97 F.3d at 662 ("Before a court will order a hearing on a possible breach of the Grand Jury Secrecy

---

[9] Even if the defendant could establish that information protected by Rule 6(e) was leaked by the Prosecution Team, he cannot demonstrate prejudice, which is required to obtain relief.  *United States v. Eisen*, 974 F.2d 246, 261 (2d Cir. 1992) ("[A] defendant seeking…a hearing regarding alleged grand jury abuse must show prejudice or bias.").  To demonstrate prejudice, the defendant must show that disclosure of grand jury materials "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."  *Walters*, 910 F.3d at 23 (citing *Nova Scotia v. United States*, 487 U.S. 250, 254-55 (1988)).  The defendant cannot demonstrate this—he does not even argue it.  For this reason as well, the defendant is not entitled to an evidentiary hearing or other relief.

Rule, the defendant must establish a *prima facie* case of a violation of [Rule] 6(e).").  The Second Circuit has made clear that the Court may consider information proffered by the Government to rebut a *prima facie* case without holding a hearing.  *See Skelos*, 988 F.3d at 662 (affirming denial of a hearing where district court found, relying on evidence provided by the Government, that no *prima facie* showing had been made); *Rioux*, 97 F.3d at 662 (affirming district court's decision to deny a hearing based on review of evidence submitted by the Government).  Here, as the only specific alleged "grand jury" material the defendant cites is CNN's Intercontinental Video, which is demonstrably *not* grand jury material, the defendant is not entitled to a hearing.[10]

The defendant also seeks an order "forbidding government attorneys and agents involved in the case from leaking any further information to the media."  (Leak Mot. 14).  This request is moot given the Court's Order "underscoring the parties' existing responsibilities under Local Rule 23.1 and Fed. R. Crim. P. 6(e)."  (*See* Order, Dkt. No. 50).  As set forth *supra*, the Government has transmitted the Order to all attorneys and staff working on the case in the USAO-NY, as well as all HSI-NY case agents and supervisors with explicit instructions to disseminate to all HSI agents and officers, including those located in other field offices, who have participated or assisted in the investigation.  Accordingly, the defendant's request for such an order is moot.

The defendant's further requests for other extraordinary remedies, including discovery, suppression of evidence, disqualification of witnesses, and even dismissal of the Indictment, should be rejected out of hand given that he has failed to make a *prima facie* case for a violation of Rule 6(e).  *See Nordlicht*, 2018 WL 6106707, at *6 (rejecting the "drastic remedies" including discovery and dismissal of counts in the indictment as "unwarranted under circumstances here"

---

[10] As the defendant otherwise fails to establish a *prima facie* case for a Rule 6(e) violation, the Government need not rebut such a showing.

when defendants failed to make a *prima facie* case of a violation of Rule 6(e)); *Skelos*, 2015 WL 6159326, at *12 ("Defendants have failed to make a *prima facie* showing of a Rule 6(e) violation and therefore are not entitled to discovery or a hearing on this issue.").[11]

## II.   The Defendant is Not Entitled to a Bill of Particulars

By seeking a bill of particulars identifying victims under Federal Rule of Criminal Procedure 7(f), the defendant attempts to pervert the Federal Rules of Criminal Procedure to unduly and prematurely restrict the Government's proof at trial, and to co-opt the criminal proceeding to defend himself against complainants in separate civil litigation. The Court should reject this misuse of Rule 7(f), particularly in light of the serious risks that identification of victims poses in this case, which, as the Court is aware, involves serious allegations of violence, sexual violence, witness intimidation, and obstruction.

### A.   Applicable Law

"A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001); *see United States v. Martinez*, 22 Cr. 251 (LJL), 2023 WL 2403134, at *1 (S.D.N.Y. Mar. 8, 2023) (same). The proper purpose of a bill of particulars under Federal Rule of Criminal Procedure 7(f) is "to provide a defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (emphasis added), *overruled on other grounds*; *see also United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977); *United States v. Mahabub*, 13 Cr. 908–1 (AJN), 2014 WL

---

[11] The defendant has not cited—and the Government has not found—any cases in which an alleged violation of Local Criminal Rule 23.1 has been held to warrant an evidentiary hearing or the other remedies requested by the defendant, besides entry of an order pursuant to Rule 23.1, which has already been entered in this case. (*See* Order, Dkt. No. 50).

4243657, at *2 (S.D.N.Y. Aug. 26, 2014) ("The purpose of a bill of particulars is to ensure that a defendant has the information necessary to prepare a defense, not to turn over all information that would aid the defendant."). Accordingly, "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

Factors courts weigh when considering whether a bill of particulars is necessary include the Indictment's text, as well as discovery and other information that has and will be provided to the defendant concerning the Government's allegations. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *see also, e.g.*, *United States v. Brewster*, 19 Cr. 833 (SHS), 2021 WL 3423521, at *2 (S.D.N.Y. Aug. 5, 2021) ("Because the defense has received, and will continue to receive, information from the government that will assist them in preparing their defense, the motion to compel a bill of particulars as to all defendants is denied without prejudice.").

Moreover, it is well established that "[a] bill of particulars is not a discovery device and should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010). Similarly, a bill of particulars "is not designed to: obtain the government's evidence" or "restrict the government's evidence prior to trial." *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003). Indeed, the limitation on the availability of a bill of particulars is important as "a bill of particulars confines the Government's proof to particulars furnished," and therefore can "restrict unduly the Government's ability to present its case," *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989), and from "using proof it may develop as the trial approaches," *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993). *See also Mahabub*, 2014 WL 4243657, at *2

(recognizing that "care must be taken" in deciding whether to order a bill of particulars because "[t]he government's presentation of evidence at trial is limited to the particulars contained in the bill"); *United States v. Samsonov*, 07 Cr. 1198 (CM), 2009 WL 176721, at *3 (S.D.N.Y. Jan. 23, 2009) ("The vehicle of a bill of particulars . . . must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches."). Relatedly, the Government's provision of particulars creates the very real danger that a defendant will "tailor [his] testimony to explain away the Government's case." *United States v. Roberts*, 01 Cr. 410 (RWS), 2001 WL 1646732, at *12 (S.D.N.Y. Dec. 17, 2001).

When a defendant seeks victim identities through a bill of particulars, courts generally "deny disclosure if the government sets forth specific reasons why such a request should be denied." *United States v. Kelly*, 19 Cr. 286 (AMD), 2020 WL 473613, at *1 (E.D.N.Y. Jan. 29, 2020) (quoting *United States v. Antico*, 08 Cr. 559 (CBA), 2010 WL 2425991, at *1 (E.D.N.Y. June 11, 2010)). In particular, courts routinely reject requests for victim identities in cases involving crimes of violence and racketeering, "especially when the government demonstrates a risk to witness safety, the potential for witness intimidation or subornation of perjury. *Id.* (collecting cases); *United States v. Castro*, 08 Cr. 268 (NRB), 2008 WL 5062724, at *3 (S.D.N.Y. Nov. 25, 2008) (concluding that disclosure of victim information may endanger those individuals); *United States v. Kevin*, 97 Cr. 763 (JGK), 1999 WL 194749, at *12 (S.D.N.Y. Apr. 7, 1999) (finding "a clear risk of danger" in identifying victims in violent crime case). Courts also routinely deny requests for bills of particulars containing victim names on the basis that these requests are, in reality, a backdoor attempt to obtain "a list of the witnesses whom the Government intends to call at trial." *Kevin*, 1999 WL 194749, at *12; *see Castro*, 2008 WL 5062724, at *3.

Consistent with the limited availability of a bill of particulars, prior to filing a motion for a bill of particulars, the defendant must comply with various procedural requirements.  Rule 7(f) provides that the defendant must move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits."  Fed. R. Crim. P. 7(f).  Further, Local Criminal Rule 16.1 requires that the defendant confer with the Government to resolve the issue in good faith and file an affidavit so certifying at the time the motion is filed.  If a defendant does not comply with these procedural requirements, the motion should not be entertained.  *See United States v. Ming*, 02 Cr. 596 (LAK), 2002 WL 1949227, at *1 (S.D.N.Y. Aug. 22, 2002) (collecting cases).

**B.  Discussion**

**1.  The Motion Fails Under Local Criminal Rule 16.1**

As an initial matter, the defendant has not met the procedural requirements of Local Criminal Rule 16.1 and the motion should be denied on that basis.  After sending a letter to the Government on October 7, 2024, demanding, among other things, that the Government identify its victims, defense counsel alerted the Government on October 15, 2024 that they intended to file a motion with the Court for the disclosure of victims' identities.  The Government promptly requested to confer before the motion was filed, as required by the Local Rule.  That afternoon, shortly before the motion was filed, the parties conferred and the Government informed the defense that it was aware of no legal authority for the disclosure request but invited defense counsel to provide it for the Government's consideration.  The Government further stated its position that any such request for disclosure was premature before discovery was completed.  Defense counsel did not offer any legal authority but instead informed the Government it would proceed with filing the motion.  Shortly thereafter, the defendant filed the motion without an affidavit regarding its efforts to confer with the Government in a good faith effort to resolve the dispute.  *See* Local Crim. R. 16.1.  Because the defendant did not adequately attempt to resolve this dispute short of court

27

intervention, the motion for a bill of particulars should be denied as premature.  *See Ming*, 2002 WL 1949227, at *1 (collecting cases).

### 2.  The Defendant is Not Entitled to a Bill of Particulars

But notwithstanding the defendant's procedural failure, the motion also fails on the merits because there is no need for a bill of particulars listing victim names here.  The defendant has been more than sufficiently apprised of the nature of the charges he faces based on, *inter alia*, the 14-page speaking Indictment; the Government's written submissions and factual proffers at  two separate bail hearings; and discovery produced to date, totaling over 25 terabytes of data, including detailed search warrant affidavits laying out details of the Government's investigation and evidence.  Courts have repeatedly rejected requests for bills of particulars where the defendant has received similar materials.  *See, e.g.*, *United States v. Cordones*, 11 Cr.. 205 (AKH), 2022 WL 815229, at *8 (S.D.N.Y. Mar. 17, 2022) ("Courts routinely deny motions for bills of particulars where, as here, the charging document is a speaking indictment."); *United States v. Raniere*, 384 F. Supp. 3d 282, 323 (E.D.N.Y. 2019) (agreeing that "[t]he Indictment, the complaint, and the Government's letters concerning bail and detention provide ample notice of the government's theory."); *United States v. L.*, 16 Cr. 676 (LGS), 2017 WL 1435746, at *2 (S.D.N.Y. Apr. 21, 2017) (denying bill of particulars request where "Government . . . represents that it provided search warrant affidavits that describe its investigation and evidence").

In particular, the discovery in the case counsels against a bill of particulars.  While the defendant argues that the "anticipated volume of discovery" underscores the need for a bill of particulars, (Bill of Particulars Mot. 3), courts in this Circuit routinely deny motions for a bill of particulars based on the mere fact that the case is complex or discovery is voluminous, especially in situations where defendants have had—or, in this case, will have—many months to review said discovery before trial.  *See United States v. Wey*, 15 Cr. 611 (AJN), 2017 WL 237651, at *21

28

(S.D.N.Y. Jan. 18, 2017) ("[T]he discovery volume alone simply does not necessitate a bill of particulars."); *United States v. Levy*, S5 11 Cr. 62 (PAC), 2013 WL 664712, at *13 (S.D.N.Y. Feb. 25, 2013), *aff'd*, 803 F.3d 120 (2d Cir. 2015) (denying request for bill of particulars based on amount of discovery).  Here, all discovery will be produced by December 31, 2024, more than four months before trial, and the Government's rolling productions have intentionally prioritized items like search warrant affidavits—which contextualize the charges in the Indictment—as well as other materials requested by the defendant.  And each production is accompanied by a detailed index and produced in searchable formats where possible.  *See, e.g.*, *United States v. Huntress*, 13 Cr. 199S, 2015 WL 631976, at *29 (W.D.N.Y. Feb. 13, 2015) ("I conclude that the organized production of discovery, when coupled with the detailed allegations of the 27–page Indictment, provides defendants with a sufficient roadmap of the charges against them to enable them to prepare for trial and to prevent surprise.").  Moreover, the Government stands ready to meet and confer with the defense to assist them in reviewing the discovery—a request that the defense has not made.[12]  The defendant, backed by four prominent law firms with veteran trial lawyers and support staff, cannot credibly claim that he does not have the resources to review these materials within the time he chose to mount a defense.  *Cf. United States v. Sierra*, 11 Cr. 1032 (PAE), 2012 WL 2866417, at *3 (S.D.N.Y. July 11, 2012).  To the extent the defendant claims the time before trial is insufficient to make use of the disclosures he has, the appropriate relief is to ask for an adjournment of the trial date *he* requested—not to obtain a bill of particulars.

---

[12] The defendant cites *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) for the proposition that the Government cannot meet its obligation to provide the defendant with notice of the charges against him by providing mountains of documents in discovery.  But, the facts in *Bortnosky* are inapposite here where the "relevance of key events was shrouded in mystery at the commencement of and throughout the trial," and one of the defendant's counsel had only "four days within which to prepare a defense." *Id.* at 575.

In sum, the defendant's claim that there is "no way for Mr. Combs to determine who the other unidentified alleged victims are," (Bill of Particulars Mot. 3), rings hollow. The Indictment along with other disclosures, including discovery, adequately advise the defendant of the criminal acts of which he is accused, and accordingly of potential victims. *See United States v. Ma*, 03 Cr. 734 (DAB), 2006 WL 708559, at *15 (S.D.N.Y. Mar. 21, 2006). This is particularly true, here, where the defendant is not "likely to be surprised by the identity of" victims "whom he may never have met." *United States v. Nachami*e, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000). To the contrary, the victims are individuals whom the defendant is alleged to have trafficked, violently assaulted, and transported across state lines for commercial sex, among other criminal acts in which the defendant directly participated. *See United States v. Ray*, 20 Cr. 110 (LJL), 2021 WL 3168250, at *5 (S.D.N.Y. July 27, 2021) (denying bill of particulars request for victim and co-conspirator names, in part, on basis that defendant would be expected to know their identities as "[t]he charged means and methods of the conspiracy are all ones in which [the defendant] would have been directly involved").

The Second Circuit's decision in *United States v. Davidoff*, on which the defendant relies in his motion, provides him with no support. *See* 845 F.2d 1151 (2d Cir. 1988). Unlike in *Davidoff* where the defendant sought the identities of victims in uncharged acts of racketeering, *id.* at 1152, the defendant here seeks the identities of victims of the charged offenses—offenses that are outlined in detail in the Indictment. Moreover, to the extent that the Government intends to introduce evidence of conspiracies or criminal acts other than those alleged in the Indictment, such evidence will not be sprung upon the defendant at trial. As is its usual practice, the Government will file a Rule 404(b) notice sufficiently in advance of trial. *See United States v. Barrera*, 950 F. Supp. 2d 461, 479 (E.D.N.Y. 2013) (discussing *Davidoff* and rejecting bill of particulars request

for names of victims on this basis).  The Government will likewise disclose to the defendant at least fifteen days prior to trial any witness testimony or other evidence it intends to admit under Federal Rule of Evidence 413.

Separately providing the names of victims to the defendant now, in a bill of particulars is not required.  *See United States v. Sterritt*, 678 F. Supp. 3d 317, 331-32 (E.D.N.Y. 2023) (rejecting request for identities of the victims where "[t]he government has already spelled out enough"); *Barrera*, 950 F. Supp. 2d at 478 ("[T]he Government need not disclose the names of the [] conspiracy's intended victims in order for [the defendant] to be adequately apprised of the specific crimes of which he is accused.").

### 3.  Any Motion for a Bill of Particulars Is Premature

In addition to being unnecessary given prior disclosures, the request is also premature because of additional anticipated disclosures concerning the victims in the case.  *First*, as the defendant is aware, the Government will produce additional indexed discovery over the next few months pertaining to the victims of the offenses.  In similar contexts, courts have denied motions seeking the identification of victims before the close of discovery.  *See, e.g.*, *United States v. Maxwell*, 20 Cr. 330 (AJN), 2020 WL 5026668, at *1 (S.D.N.Y. Aug. 25, 2020) (denying as premature motion for disclosure of alleged victims' identities prior to completion of discovery); *Mahabub*, 2014 WL 4243657, at *2-3 (denying a motion for a bill of particulars that sought, among other things, the "alleged victim" and noting that "[t]he government can also discharge its obligation to disclose this information by other means, such as by presenting evidence in discovery."); *cf. United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998) (finding that a bill of particulars was not required where the discovery provided to the defendant enabled him "to understand the nature of the charges against [him], to prepare a defense, and [to] avoid unfair surprise at trial.").

31

*Second*, consistent with the practice in this District, the Government will file an "enterprise letter" sufficiently in advance of trial setting forth the specific acts and conduct underlying the racketeering conspiracy charged in this case. That letter will contain more particular notice of the specific objects of the charged conspiracy, including to the extent possible the times, dates, places, and participants for each act. *See United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) ("In light of the 'Enterprise Letter' recently submitted by the Government (Docket No. 37), Watts' request for a bill of particulars is denied."); *United States v. Boyle*, S1 08 Cr. 534 (CM), 2009 WL 2032105, at *5 (S.D.N.Y. July 9, 2009) (denying motion for bill of particulars where government will file "an 'enterprise letter' setting forth in greater detail the specific acts and conduct underlying the racketeering conspiracy charge in this case")

*Finally*, the Government will produce to the defense a list of trial exhibits, a witness list, and Jencks Act material reasonably in advance of trial. *See United States v. Starks*, 24 Cr. 126 (JLR), 2024 WL 4528169, at *5 (S.D.N.Y. Oct. 18, 2024) (finding bill of particulars not warranted where, among other things, "the Government has stated that it will provide Starks with Section 3500 materials sufficiently in advance of trial to prevent any prejudicial surprise, along with a list of trial exhibits and a witness list"); *United States v. Chambers*, 17 Cr. 396 (WHP), 2018 WL 1726239, at *2 (S.D.N.Y. Apr. 9, 2018) (denying request for bill of particulars where "this Court will require production of Jencks Act material in advance of trial to apprise the defendant of the essential facts"). There is thus no reasonable risk that the defendant will suffer unfair surprise at trial

### 4. The Motion Improperly Seeks to Restrict the Government's Proof and Poses Serious Risks of Obstruction

Because the Government has more than met its obligations to sufficiently advise the defendant of the acts of which he is accused, it is plain what this demand for a bill of particulars

32

really is:  a thinly veiled attempt to restrict the Government's proof at this early stage of the case and to hijack the criminal proceeding so the defendant can respond to civil lawsuits.  This demand should be squarely rejected, especially in light of the risk it poses to witness safety.

### a. A Bill of Particulars Is Improper Due to the Nature of the Offenses Charged

Disclosure of victim names poses serious risks based on the nature of this case.  Where the defendant is charged with engaging in a wide range of racketeering acts involving violence and threats of violence and obstruction of justice, the Government should not be required to produce information that would, in effect, provide the defendants before trial with a preview of the Government's case and its victims, with all of the attendant risks to such disclosure.  "Discovery in criminal proceedings is not comparable to discovery in civil [proceedings] because of the nature of the issues, the danger of intimidation of witnesses, and the greater danger of perjury and subornation of perjury." *United States v. Malinsky,* 19 F.R.D. 426, 428 (S.D.N.Y. 1956).  As a court in this District has observed:

> The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present. Accordingly, the government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented.

*United States v. Sindone,* 01 Cr. 517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) (citing *United States v. Simon,* 30 F.R.D. 53, 55 (S.D.N.Y. 1962); *United States v. Cimino,* 31 F.R.D. 277, 279 (S.D.N.Y. 1962)).  Those concerns are particularly relevant in a case like this one, with serious, well-supported allegations of prior attempts to obstruct and tamper with witnesses. Courts thus "routinely deny requests for victims' identities in racketeering cases . . . when the government demonstrates a risk to witness safety, the potential for witness intimidation or subornation of perjury." *Kelly*, 2020 WL 473613, at *1 (collecting cases); *see, e.g.*, *Barrera*, 950

F. Supp. 2d at 479 (denying bill of particulars for identities of unnamed victims because "[u]nder these circumstances, and especially given the aforementioned concerns [the gang's] reputation for violence, it would be inappropriate at this time to order the Government to disclose the names of the intended victims of the murder conspiracy."); *Castro*, 2008 WL 5062724, at *3 ("We agree with the government that, given the violent crimes alleged here, defendant is not entitled at this time to the disclosure of victim information because those individuals might be endangered by the early disclosure."); *United States v. Gotti*, S4 02 Cr. 743 (RCC), 2004 WL 32858, at *9 (S.D.N.Y. Jan. 6, 2004) (denying a motion for a bill of particulars as to the identities of co-conspirators, witnesses, and victims when the indictment included acts of violence).  For example, in *Kelly*, the district court rejected the defendant's request for a bill of particulars disclosing victim identities in a case involving racketeering and Mann Act charges based on the defendant's "history of obstruction, intimidation and witness tampering."  2020 WL 473613, at *2.

Here, as detailed in the Indictment and at the bail hearings, the defendant has a significant history of violence and obstruction.  Indeed, Judge Carter found by clear and convincing evidence at the conclusion of the second hearing, the defendant "is a danger regarding obstruction of justice and witness tampering" and "is a danger to the safety of others in the community more generally." (Sept. 18, 2024 at 56).  Due to the defendant's history, the Government has serious concerns about victim safety and the possibly of witness tampering if a list of victim names were provided to the defendant.[13]

---

[13] That the defendant is incarcerated should not affect this conclusion.  The risk of obstruction of justice and witness tampering from prison—although reduced—is not nonexistent and, as detailed in the Indictment, the defendant often used loyal intermediaries to accomplish his objectives, which he could do from prison or out on bail.  There is no effective way to guarantee that he will not continue to attempt to do so, even from jail.

### b. A Bill of Particulars Would Improperly Restrict the Government's Proof at Trial

The defendant's request would also have the effect of improperly "foreclos[ing] the Government from using proof it may develop as the trial approaches." *United States v. Green*, No. 04 CR. 424 (RWS), 2004 WL 2985361, at \*2 (S.D.N.Y. Dec. 23, 2004) (quoting *Malinsky*, 19 F.R.D. at 428). The defendant is alleged to have participated in a multiyear conspiracy, and—as the defendant is well aware—the Government's investigation of that conspiracy is ongoing. Accordingly, it would be entirely inappropriate to force the "government [to] commit" *over six months before trial* "to whom it will present at trial as a victim," *Ray*, 2021 WL 3168250, at \*6, particularly in light of the extensive disclosures that have and will be made to the defendant reasonably in advance of trial. *See United States v. Mackey*, 21 Cr. 80 (NGG), 2022 WL 2093012, at \*2 (E.D.N.Y. May 13, 2022) (stating that a bill of particulars "should not be granted where the consequence would be to restrict unduly the Government's ability to present its case").

Relatedly, the defendant's request for victim names should be denied on the basis that it is tantamount to a request for early disclosure of the Government's witness list, something he is clearly not entitled to at this extremely early stage of the proceedings. *See, e.g.*, *Ray*, 2021 WL 3168250, at \*6 n.3 ("The defense request [for victim identities] is tantamount to a request for a witness list far in advance of trial, which is routinely denied in these cases."); *Castro*, 2008 WL 5062724, at \*3 ("Although the government may not currently intend to call these victims as witnesses, ultimately, every victim is a potential witness, and the government is not obligated to disclose a witness list to defendant at this time"); *Kevin*, 1999 WL 194749, at \*12 ("Moreover, to the extent that the defendants' requests for the identities of unnamed co-conspirators and victims are really requests for a list of the witnesses whom the Government intends to call at trial, they are

not entitled to this list before trial without a specific showing of need, which has not been established in this case.").

In this Circuit, there is a strong presumption against compelling pretrial disclosure of the identity of Government witnesses. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Thus, such a request should be denied "in the absence of a specific showing that disclosure [of a witness list is] both material to the preparation of the defense and reasonable in light of the circumstances surrounding the case." *Id.* at 139-40; *see United States v. Sezanayev*, 17 Cr. 262 (LGS), 2018 WL 2324077, at *10 (S.D.N.Y. May 22, 2018) ("Courts in the Second Circuit typically deny motions for the early disclosure of witness lists where, as here, defendants have not made a specific showing of need."). No specific showing has been made here, and therefore the defendant cannot overcome the general presumption against requiring early disclosure of witnesses. *See United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975) (an "abstract, conclusory claim that such disclosure [is] necessary to [the defendant's] proper preparation for trial" is insufficient); *United States v. Russo*, 483 F. Supp. 2d 301, 309 (S.D.N.Y. 2007) (rejecting the request for an early witness list where the defendants' argument was based solely on the "complexity of the case"). Moreover, early disclosure of witnesses is especially unwarranted here, where there are serious concerns of witness safety and obstruction. *See Cannone*, 528 F.2d at 301-02 (holding district court abused its discretion when ordering disclosure of government witnesses where two defendants had been indicted for obstruction of justice).

### c. Rule 7(f) Is Not a Vehicle to Respond to Civil Litigation

Even more unavailing is the defendant's argument that he needs victim identities so he can "respond" to allegations made in civil suits. This Court should reject this blatantly improper request. As previously noted, the proper purpose of a bill of particulars under Federal Rule of Criminal Procedure 7(f) is to provide a defendant with necessary information about the details of

the criminal charges against him.  *E.g., Torres*, 901 F.2d at 234.  It is not, however, a backdoor to obtain information from the criminal case so that the defendant can use it to defend himself in media against "allegations in civil suits."  (Bill of Particulars Mot. 3).  As the defendant well knows, there is zero legal authority for his attempt to co-opt this criminal proceeding to defend against civil litigation.[14]

 The Court should thus reject the defendant's inappropriate request for a bill of particulars.

### III. The Defendant's Victim Gag Motion Should be Denied

 The Victim Gag Motion should, like, the Bill of Particulars Motion, be denied as a premature request for the Government to identify and restrict its witness list *over six months before trial*.  Although styled as a request to prevent "prospective witnesses and their lawyers" from making extrajudicial statements that "substantially interfere with Mr. Combs's right to a fair trial," (Victim Gag Mot. 1), the reality is that the Victim Gag Motion is simply another way to get at the relief sought in the Bill of Particulars Motion—premature disclosure of the Government's witnesses and a restriction of the Government's ongoing investigation.  The authority cited by the defendant as giving the Court the authority to issue such gag order derives from Local Criminal Rule 23.1, which applies to witnesses and attorneys for witnesses in this criminal case.  In other words, for the defendant to get the relief he seeks, the Government would be required to identify its witnesses to the defendant and the Court *six months* in advance of trial.  Not only would the Government's compilation of such list at the outset of its case and while it is continuing to investigate be a fool's errand, but such relief would be unprecedented.  *See Ray*, 2021 WL 3168250, at *6 n.3; *see, e.g.*, *United States v. Maxwell*, 20 Cr. 330, Dkt. 250 (AJN) (month long

---

[14] The case that the defendant cites in support of this argument is entirely inapposite.  The cited portion of *United States v. Ming He*, 94 F.3d 782, 793 (2d Cir. 1996) does not concern either bills of particulars or disclosure of victim names, but instead whether cooperating witnesses are entitled to have counsel present at debriefings, *id.* at 792–93.

sex trafficking trial; witness list due seven-weeks before scheduled trial date); *United States v. Silver*, 15 Cr. 93 (VEC) (month-long bribery trial; exhibit and witness lists approximately three weeks before trial); *United States v. Gupta*, 11 Cr. 907 (JSR) (three-week insider trading trial; exhibit and witness lists produced three weeks before trial).  Further, the defendant does not even begin to attempt to make the specific showing required for an early witness list, *see Bejasa*, 904 F.2d at 139-40, and fails entirely to address witness safety concerns in a case where those concerns are paramount, *see Cannone*, 528 F.2d at 301-02.

In the alternative, to the extent that the defendant seeks a blanket gag order that would prohibit *any* civil claimant and their attorneys from making extrajudicial statements, such an order would be even more extraordinary and beyond the purview of the Local Rule on which it relies. Indeed, as to the universe of civil claimants, the defendant has specific relief available to him outside the present *criminal* case.  To date, cases alleging sexual misconduct against the defendant have been filed in state and federal courts, including several in this District.  These cases were filed both before the Indictment in the present case, as well as after.  Those cases are presided over by capable and experienced judges who are free to assess whether any sort of gag order is appropriate and to fashion remedies, including remedies pursuant to Rule 3.6 of the New York Rules of Professional Conduct, which mirrors Local Criminal Rule 23.1 and applies to attorneys in civil matters as well.  *See* N.Y. Rules of Prof'l Conduct 3.6.[15]

Finally, the defendant's suggestion that the Government "has directed or authorized" prejudicial extrajudicial statements by counsel for civil litigants is baseless and provides no support for the relief he seeks.  (Victim Gag Mot. 5).  The Government understands its obligations under

---

[15] To the extent the Court considers entering a broad order, the Court should permit interested parties to be heard on the legality and scope of such an order, particularly as it relates to the First Amendment and the Crime Victims' Rights Act, *see* 18 U.S.C. § 3771.

Local Criminal Rule 23.1—as it has represented multiple times on the record—and, as set out above, fully commits to complying with those obligations as well as this Court's orders. (*See* Order, Dkt. No. 50).

## **CONCLUSION**

For the reasons set forth above, the defendant's motions should be denied.

Dated:          New York, New York
               October 30, 2024


                            Respectfully submitted,

                            DAMIAN WILLIAMS
                            United States Attorney


               By:    _____/s/_____
                            Meredith Foster
                            Emily A. Johnson
                            Christy Slavik
                            Madison Reddick Smyser
                            Mitzi Steiner
                            Assistant United States Attorneys
                            (212) 637-2310/-2409/-1113/-2381/-2284