

The Clerk is directed to docket this letter received by the Court.

SO ORDERED.

*Arun Subramanian, U.S.D.J.*
*Date: November 1, 2024*

**Douglas H. Wigdor**
dwigdor@wigdorlaw.com

October 30, 2024

**VIA EMAIL**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>United States v. Combs, 24-cr-542 (AS)</u>

Dear Judge Subramanian:

We write as counsel for two plaintiffs in civil proceedings against Defendant Sean Combs[1] in response to Mr. Combs's criminal attorney's request for an order prohibiting extrajudicial statements from prospective witnesses and their lawyers. Dkt. No. 43. Because such an order would inappropriately silence victims who are proactively seeking justice through the civil justice system, because Defendant Combs's family and representatives have themselves engaged in the release of extrajudicial statements, and because an order prohibiting attorneys from speaking about their cases would violate the ethical rules governing the practice of law, we respectfully ask that Mr. Combs's request be denied.

**I.**     <u>Gag Orders on Victims Are Inappropriate</u>

For both legal and moral reasons, silencing victims of sexual assault, abuse, and violence is inappropriate. The Rape, Abuse & Incest National Network (RAINN), citing data from the Department of Justice and Federal Bureau of Investigation, notes that only 310 out of every 1,000 sexual assaults are reported to police, meaning that more than 2 out of 3 assaults go unreported.[2] The two individuals we represent came forward well before the federal investigation or criminal indictment of Mr. Combs became public. Moreover, after our two clients came forward, Mr. Combs and his proxies made numerous comments to the media about their accusations. To now order our clients to be completely silent about what they experienced would be an affront to their

---

[1]     *See Ventura v. Combs, et al.*, No. 23-cv-10098 (S.D.N.Y. Nov. 16, 2023); *Doe v. Combs, et al.*, No. 23-cv-10628 (S.D.N.Y. Dec. 6, 2023).

[2]     *See* https://rainn.org/statistics/criminal-justice-system#:~:text=Only%20310%20out%20of%20every,out%20of%203%20go%20unreported.



bravery and would be detrimental to other victims of sexual violence who remain afraid to come forward.

It is not clear exactly whom Mr. Combs seeks to silence with his requested relief, but his submission suggests that anyone who has claimed to have been a victim of Mr. Combs—regardless of whether their experience is relevant or connected to the criminal case at hand—must be prevented from speaking out about their allegations. The relief Mr. Combs seeks therefore extends far beyond the known or existing participants in this criminal litigation, and indeed could extend to individuals whose stories may not be relevant to the Government's case against Mr. Combs. Such a restraint on speech implicates the constitutional rights of victims and their attorneys, and thus "carries a heavy presumption against its constitutional validity." *U.S. v. Salameh*, 992 F.2d 445, 446-47 (2d Cir.1993) (citing *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 570 (1976)). Such an order must be narrowly tailored and is only justified when there is a "reasonable likelihood" that pretrial publicity will actually prejudice a fair trial. *See In re Dow Jones*, 842 F.2d 604, 610 (2d Cir. 1988).

Here, Mr. Combs seeks an order preventing prospective witnesses and their attorneys from making any statement concerning Defendant, and in support, cites to a plethora of comments made in various media publications, many of which were made before the grand jury indicted him. He has not shown with any reasonable certainty that this publicity will prejudice a fair trial—in fact, it is illogical to state that news that occurred *before* the criminal case was initiated could be restrained by this Court. Nothing about his request is narrowly tailored; indeed, Mr. Combs plainly asks for a blanket prohibition on speech on a large swath of unidentified individuals and attorneys, without proposing any less broad proscription or alternative means to ensure a fair trial without restricting the speech of individuals who are not even participants in this litigation. As a result, his request should be denied.

## II. Mr. Combs's Representatives and Family Have Themselves Engaged in Extrajudicial Statements

The relief Mr. Combs seeks is particularly inappropriate given that his family and representatives have themselves made extrajudicial statements to garner the exact attention he claims he wants to diminish.

For example, last week—the day after Mr. Agnifilo filed his letter—Mr. Combs's son posted on Instagram that the past month has "devastated our family," noting that Mr. Combs has been judged "based on accusation" but that the truth "will prevail."[3] And, on October 6, 2024, the Defendant's mother—through her lawyer, Natalie G. Figgers, Esq.—issued a written statement characterizing the criminal indictment in this matter as a "narrative created out of lies" and a "public lynching," and plainly states that the Defendant is not guilty of the crimes he is accused of and suggests that

---

[3] https://www.instagram.com/quincy/p/DBbIxQHPOjn/?hl=en



any conviction would fall into an alleged history of "wrongful" convictions.[4] The Defendant's mother further commented on her son's civil legal team's actions in one of the civil cases that her son resolved months prior. Combs's argument that the attorneys for alleged victims of Combs's abuse create a "circus-like" atmosphere, but that his own family's attorneys' statements cause no impact, underscores the disingenuity of the relief sought.

Indeed, Mr. Combs's own attorneys have frequently made extrajudicial comments concerning this case itself. That is, unlike the comments he seeks to gag that are potentially unrelated to the criminal investigation or case before Your Honor, Mr. Agnifilo has proactively called the case a "racially motivated prosecution," contending that his client is being targeted because he is a "successful Black man." Mr. Agnifilo has also appeared in the tabloid publication TMZ's documentary about this case—playing into the very media circus he claims prejudices his client's ability to receive a fair trial.

Mr. Combs and his agents' abuse of extrajudicial statements alone undermines the legitimacy of the relief he now requests and is yet another basis for denying his request for a gag order.

### III.    A Gag Order on Attorneys Violates the Rules of Professional Conduct

Combs seeks not only to silence victims, but also the attorneys who represent victims. The attorneys who "participated in or [have] participated in" the matter are, of course, bound by Rule 3.6 of the Rules of Professional Conduct, which prohibits extrajudicial statements that the attorney "knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." N.Y. Rules of Professional Conduct 3.6(a).[5] But the extraordinary relief Mr. Combs seeks is for attorneys not associated with the criminal case to be similarly prevented from making any statements, presumably including statements concerning those attorneys' active litigations against Mr. Combs in civil cases, and further asks that those attorneys remove information from online postings that fall under his proposed blanket restriction.

An order preventing the attorneys for civil plaintiffs in other proceedings from speaking about their representation or their client's litigation would, however, run afoul of victims' attorneys' ability to competently and diligently represent their clients as required by, for example Rules 1.1 and 1.3 of the Rules of Professional Conduct.

The ability to speak publicly about an attorney's work is in fact enshrined in the ethical rules. Indeed, attorneys may not themselves agree to any provision in any form of agreement that would

---

[4]    https://www.instagram.com/figgerslaw/p/DAzDBw7p2pL/?img_index=1

[5]    While Mr. Combs's submission emphasizes that Local Rule 23.1(b) applies to lawyers for witnesses, it specifically concerns "a grand jury or other pending investigation of any criminal matter." All other provisions of Local Rule 23.1 appear to contemplate restrictions on extrajudicial comments from lawyers "associated with the prosecution or defense." LR 23.1(c).



restrict his or her ability to speak publicly about their cases, as doing so would violate Rule of Professional Conduct 5.6, which concerns restrictions on an attorney's ability to practice. As one ethics opinion succinctly states, "Once the matter is public, a settlement agreement may not impose confidentiality on otherwise public matters without violating D.C. Rule 5.6(b). A lawyer may not propose or agree to such a confidentiality provision." See D.C. Ethics Opinion 335.[6] That opinion further notes that a provision requiring an attorney to remove information about the public case from the firm's website similarly restricted an attorney's ability to practice, as attorneys are always permitted to disclose public information that he or she handled if, for example, a potential client inquired as to that attorney's experience. Indeed, because discussions about an attorney or a firm's experience are part of many firms' efforts to attract new clients, such restrictions would inhibit the ability of lawyers to advertise their services.

Combs's request would have a similar effect on the attorneys for victims of Mr. Combs who have used their expertise and experience representing victims of sexual assault to help their brave clients come forward and seek justice. These survivors and their attorneys should not be silenced and prevented from pursuing their claims publicly, or from speaking their truth, during the pendency of Mr. Combs's criminal case.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Douglas H. Wigdor

---

[6] Available at https://dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-335.