# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 24-CR-556 (DEH) |
| ERIC ADAMS, | ORDER |
| Defendant. | |

DALE E. HO, United States District Judge:

Defendant New York City Mayor Eric Adams ("Defendant" or "Mayor Adams") is charged on a five-count indictment, including charges of wire fraud, solicitation of a contribution by a foreign national, and federal program bribery. He brings this motion alleging that one or more Government attorneys (or their agents) violated Federal Rule of Criminal Procedure 6(e)[1] by disclosing "matter[s] occurring before the grand jury" that returned an indictment against him. Fed. R. Crim. P. 6(e)(2)(B). In his motion, Mayor Adams requests that the Court hold an evidentiary hearing to determine the scope and extent of the alleged disclosures, and to sanction the Government for its alleged leaks. *See* Mem. of Law in Supp. of Def.'s Mot. for Rule 6(e) Hr'g and Sanctions 2, ECF No. 19 ("Mem."). For the reasons set forth below, Mayor Adams's Motion for a Rule 6(e) Evidentiary Hearing and for Sanctions is **DENIED**.

## LEGAL STANDARDS

"[T]he proper functioning of [the American] grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California. v. Petrol Stops Nw.*, 441 U.S. 211, 218

---

[1] All subsequent references to Rules are to the Federal Rules of Criminal Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

(1979). To ensure this "indispensable secrecy," *United States v. Johnson*, 319 U.S. 503, 513 (1943), Rule 6(e)(2)(B) lists various people who "must not disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). If a defendant makes a prima facie showing that a person enumerated in the Rule[2] disclosed "matters occurring before the grand jury," the district court must order an evidentiary hearing and may order sanctions.[3] *See United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996); *see also Grand Jury*, 52 GEO. L.J. ANN. CRIM. PROC. 317 (2023).

A prima facie showing of government attorneys leaking grand jury secrets may be substantiated with media reports containing evidence of the impermissible disclosure(s). *See United States v. Skelos*, No. 15 Crim. 317, 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015). "To determine if the defendant established a prima facie violation of the Rule, the court should examine, among other factors: (1) whether the media reports disclose matters occurring before the grand jury; (2) whether the media report discloses the source as one prohibited under Rule 6(e); and (3) evidence presented by the government to rebut allegations of a violation of Rule 6(e)."

---

[2] Persons covered by the Rule include: "a grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, [or] an attorney for the government." Fed. R. Crim. P. 6(e)(2)(B).

[3] The Second Circuit has stated that a defendant seeking a hearing must also show that they have been prejudiced by the disclosure of a matter before the grand jury. *See United States v. Eisen*, 947 F.2d 246, 261 (2d Cir. 1992) ("[A] defendant seeking reversal or a hearing regarding alleged grand jury abuse must show prejudice or bias."); *see also United States v. Blaszczak*, No. 17 Crim. 357, 2018 WL 1323192, at *3 (S.D.N.Y. Mar. 12, 2018) ("[E]ven if there has been a Rule 6(e) violation, relief may be granted only if the defendant shows prejudice as a result of the violation."). But not all cases addressing allegations of a Rule 6(e) violation include prejudice in discussing the applicable legal standard. *See, e.g.*, *United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996). That may be the case because, as explained *infra*, it is relatively uncommon to find an unlawful disclosure in violation of Rule 6(e), and where no such violation is found, it is unnecessary to reach the question of prejudice. *See, e.g.*, *United States v. Skelos*, No. 15 Crim. 317, 2015 WL 6159326, *11-12. (S.D.N.Y. Oct. 20, 2015). In any event, because Mayor Adams has not made a prima facie showing of an unlawful disclosure in violation of Rule 6(e), the Court does not address whether Mayor Adams has made a showing of prejudice here.

*Rioux*, 97 F.3d at 662. Upon making the requisite showing, "the burden then shifts to the Government to rebut the defendant's case in a show cause hearing." *Skelos*, 2015 WL 6159326, at \*9.

The weight of the burden on a defendant alleging a violation of Rule 6(e) depends on the relief being sought. "A criminal defendant who seeks to obtain dismissal of an indictment . . . bears a heavy burden in attempting to justify such relief." *In re Grand Jury Investigation*, 610 F.2d 202, 219 (5th Cir. 1980). By contrast, "[a] prima facie case to secure a hearing on whether to impose contempt sanctions upon government attorneys . . . does not require as strong a showing." *Id.*

Notwithstanding the relatively lighter showing required in this context, the parties' submissions do not identify any cases in the Second Circuit where the relief requested by Mayor Adams on this motion—a hearing—was granted.[4] That may be because, while a defendant's prima facie burden under Rule 6(e) has been described as "relatively light," *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1068 n.7 (D.C. Cir. 1998), courts have generally required a somewhat specific showing where a defendant relies on news articles to substantiate allegations of a violation. First, "there *must be a clear indication* that [the] media reports disclose information about 'matters occurring before the grand jury'" specifically. *In re Grand Jury Investigation*, 610 F.2d at 216 (emphasis added) (quoting…). Such information must be more specific than "discuss[ions of] federal 'investigations'" generally. *Rioux*, 97 F.3d at 662. Second, the articles must also expressly

---

[4] The Court notes that in *United States v. Walters*, the district court found, based on the parties' filings, that a Rule 6(e) violation had occurred without holding an evidentiary hearing. *See* 910 F.3d 11, 20 (2d Cir. 2018). That case is distinguishable from this one, however, because the Government there *admitted* that one of its agents disclosed confidential information to the media. *See id.*

or by implication "*identify the source* [of the alleged disclosure] as one proscribed under Rule 6(e)." *Rioux*, 97 F.3d at 662 (emphasis added). Moreover, even where an article indicates a "likely" disclosure by a government official, a court may still find that the defendant has failed to make a prima facie showing if the government submits a statement indicating that no attorneys or investigators staffed on the case have disclosed information they learned in the course of the investigation to the press. *See id.* (affirming district court's finding of no Rule 6(e) violation after accepting as true a government affidavit disclaiming responsibility for leaks despite being presented with an article "about matters before the grand jury [where] the source . . . was 'likely' a government official.").

## DISCUSSION

In support of his allegation that Government attorneys disclosed matters occurring before the grand jury that returned his indictment, Mayor Adams presents fifteen media reports written about the investigation into his alleged improprieties and his subsequent indictment. Broadly speaking, these articles offer commentary on five topics: (1) the "evolving" focus of the federal investigation into Mayor Adams's alleged improprieties; (2) the substance of grand jury witness testimony; (3) non-testimonial evidence purportedly gathered for and presented to the grand jury, including through the execution of search warrants; (4) the issuance of, and identities of individuals allegedly served with, subpoenas to produce documents to or testify before the grand jury; and (5) the timing of the unsealing of the indictment returned against Mayor Adams. *See* Mem. 11-15.

As explained below, the Court concludes that Mayor Adams's allegations as to items (1) through (3) do not establish that a matter occurring before the grand jury has been disclosed in violation of Rule 6(e). And as to items (4) and (5), the Court concludes that, even assuming arguendo that a matter before the grand jury has been improperly disclosed, Mayor Adams has not

made a showing that an attorney for the Government (or their agents) made the alleged disclosure(s).  In surveying the relevant case law, the Court determines that this case is analogous to cases in this Circuit in which requests for a hearing were denied, and it is dissimilar in important ways from cases in other Circuits where such relief has been granted.  Accordingly, the motion for a hearing is **DENIED**.

## A.      Matters Occurring Before the Grand Jury

Rule 6(e) does not define what precisely constitutes "a matter occurring before the grand jury."  Fed. R. Crim. P. 6(e)(2)(B).  The Second Circuit, however, has provided some guidance.  The Rule protects evidence "actually presented" to the grand jury from being disclosed.  *United States v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991).  It also prohibits disclosure of "anything that may tend to reveal what transpired before" the grand jury.  *Id.*; *see also Skelos*, 2015 WL 6159326, at *9.  Information protected from disclosure under Rule 6(e) therefore extends beyond the evidence "actually presented" to the grand jury and includes, for example, summaries of grand jury testimony, *Eastern Air Lines*, 923 F.2d at 244, and "the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998).

That said, Rule 6(e) "does not require that a veil of secrecy be drawn over all matters occurring in the world that happens to be investigated by a grand jury."  *Skelos*, 2015 WL 6159326, at *10.  The Rule and cases applying it seek to strike a balance, keeping secret only those materials that "reveal the inner workings of a grand jury."  *S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 83 (2d Cir. 1990); *see also* 1 ORFIELD'S CRIMINAL PROCEDURE UNDER THE FEDERAL RULES § 6:118 (2024) ("The touchstone of applicability of the rule which protects the secrecy of grand

jury proceedings is whether the disclosed materials would elucidate the inner workings of the grand jury."). Thus, for example, information that is obtained "independently from the grand jury" process is *not* protected by Rule 6(e) "even if that information might later be presented to the grand jury," as long as the information "did not disclose matters occurring before the grand jury." *In re Grand Jury Subpoena*, 103 F.3d 234, 238-39 (2d Cir. 1996). Thus, media reports that "discuss[] federal 'investigations'" generally, "without actually discussing matters before the grand jury," are not necessarily indicative of an improper disclosure. *Rioux*, 97 F.3d at 662. Ultimately, determining whether something is "a matter occurring before the grand jury" is "a fact-specific inquiry" left to "the district court's judgment," *In re Grand Jury Subpoena*, 103 F.3d at 238-39.

## 1. The Focus of the Federal Investigation into Mayor Adams's Alleged Improprieties

Mayor Adams directs the Court's attention to several articles broadly discussing "the evolving focus of the investigation" into his alleged improprieties. *See* Mem. 13-14. These articles, he argues, support his allegation that the Government leaked grand jury secrets in violation of Rule 6(e). *Id.* But they do not.

Rule 6(e) extends to "the strategy or direction of a grand jury's investigation." *Skelos*, 2015 WL 6159326, at *10. However, "information produced by a criminal investigation that parallels but is independent of a grand jury investigation is not subject to Rule 6(e) provisions on disclosure." *Skelos*, 2015 WL 6159326, at *10 (distinguishing between "information that reveals the strategy or direction of a *grand jury* investigation . . . [and information derived from] any outside investigation"); *see also Eastern Air Lines*, 923 F.2d at 244. To that point, there is a difference "between statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a *grand jury*'s investigation, a distinction of the utmost significance." *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999) (citing

*Rioux*, 97 F.3d at 662); *see also id.* ("Prosecutors' statements about their investigations . . . implicate the Rule only when they directly reveal grand jury matters.").

Thus, the question here is whether any of the articles Mayor Adams submits discloses how the investigation by the grand jury specifically—as opposed to a parallel or separate government investigation—"evolved." Upon carefully reviewing the articles in question, the Court concludes that they do not. Generally speaking, with some possible exceptions discussed *infra* Section B., the media reports Mayor Adams has provided this Court do not clearly indicate that they pertain to the *grand jury's* investigation into his alleged misconduct. In this way, Mayor Adams's allegations are similar to those rejected in analogous cases heard in this Circuit and elsewhere. For example, in *Rioux*, the Second Circuit determined that, like here, "most of the media surrounding the Rioux investigation . . . discussed federal 'investigations' without actually discussing matters before the grand jury." *Rioux*, 97 F.3d at 662. In *Nordlicht*, a district court in the Eastern District of New York noted that "[i]n cases where federal courts have found violations of Rule 6(e), the violations were closely linked to improper disclosure of the inner workings of the grand jury, not simply information about some aspect of a related government investigation." *United States v. Nordlicht*, No. 16 Crim. 640, 2018 WL 6106707, at *4 (E.D.N.Y. Nov. 21, 2018). And in *United States v. Menendez*, a district court in the District of New Jersey refused to consider articles that "involve[d] information relating to Government investigations, not the 'inner workings of the grand jury process.'" No. 15 Crim. 155, 2015 WL 5703199, at *14 (D.N.J. Sept. 28, 2015).

In his Reply, Mayor Adams argues that this case is less like those cited above and more like *Barry v. United States*, where the D.C. Circuit concluded, after evaluating the newspaper articles the defendant had submitted, that there had been a prima facie showing of a violation of Rule 6(e). Reply Mem. of Law in Supp. of Def. Eric Adams's Mot. for Evidentiary Hr'g and

Sanctions 8-9, ECF No. 40 ("Reply"); *see* 865 F.2d 1317, 1325-26 (D.C. Cir. 1989).  But the articles at issue in that case contained actual quotes and summaries of grand jury witness testimony, as well as statements about what the grand jury had or would be "looking into."  *See id.* at 1320, 1325; *see also Barry v. United States*, 740 F. Supp. 888, 890 (D.D.C. 1990) ("T[he] article opens with an unattributed statement that a *federal grand jury* is 'looking into drug use among city employees.'" (emphasis added)).  Here, by contrast, the articles Mayor Adams has submitted reference "investigations" generally, but they do not identify them as *grand jury investigations* or investigations into matters before the *grand jury* specifically.  This falls short of the kind of "clear indication" of a disclosure of a matter before the grand jury that has formed the basis of a prima facie showing of a Rule 6(e) violation.  *In re Grand Jury Investigation*, 610 F.2d at 216.

In sum, Mayor Adams has not established that media reports regarding the purported "evolving focus of the federal investigation" demonstrate a disclosure of information protected by Rule 6(e).

### 2.    The Substance of Grand Jury Witnesses' Testimony

Mayor Adams also alleges that the Government made disclosures in violation of Rule 6(e) that provided fodder for media reports about the substance of grand jury witness testimony.  *See* Mem. 12.  But this allegation is unsubstantiated because the articles Mayor Adams cites do not actually purport to offer any "characterization[] of [grand jury] witness testimony."  *Id.*

Rule 6(e) protects factual matters from being disclosed—evidence "actually presented" to the grand jury, *Eastern Air Lines*, 923 F.2d at 244, including "what is said or what takes place in the grand jury room."  *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960); *see also In re Sealed Case No. 99-3091*, 192 F.3d at 1002.  But Mayor Adams does not offer evidence showing that what was actually "said" in the grand jury room has been leaked.  The

articles he cites do not, for example, quote grand jury witness testimony.  *See In re Motions of Dow Jones & Co*, 142 F.3d at 500 (noting that "actual transcripts" of grand jury proceedings are "[e]ncompassed within the rule of secrecy" under Rule 6(e)).  Nor do they purport to summarize grand jury witness testimony or otherwise speak to the *substance* of grand jury testimony.  *Id.* Instead, Mayor Adams's motion simply makes bald allegations regarding what purportedly happened in the grand jury room, including that the grand jury was "primed" for one purported witness's testimony; that another purported grand jury witness "turned against" him; and that the grand jury would hear from a third person who had been subpoenaed.  *See* Mem. 12-13.  Such unsubstantiated assertions as to what was said in the grand jury room are not enough to establish a disclosure in violation of Rule 6(e).

In his Reply, Mayor Adams argues that he is forced to speculate as to what was said in the grand jury room because the Government "has rejected [his] request to produce grand jury witness transcripts," and asks this Court to "order the transcripts be produced now."  Reply 8-9.  But in his request, Mayor Adams does not establish that he has satisfied the requirements of Rule 6(e)(3)(E))(ii), which governs defendants' requests for courts to to authorize disclosure of a grand jury matter.  Nor does the Mayor cite a case where, *before* a defendant has made a prima facie showing of a Rule 6(e) violation, a district court has ordered grand jury transcripts be produced to him.

To be clear, this Court makes no findings as to the factual accuracy of the newspaper articles that Mayor Adams claims characterize grand jury witness testimony, as to what was actually said in the grand jury room, or even as to whether the individuals Mayor Adams identifies in his motion actually testified before the grand jury.  Instead, the Court concludes solely that the allegations in Mayor Adams's motion, taken together with the media reports he has submitted, do

not amount to a prima facie showing of an impermissible disclosure of the substance of grand jury witness testimony in violation of Rule 6(e).

### 3.      Non-Testimonial Evidence

Mayor Adams next alleges that the Government leaked information to the press detailing non-testimonial evidence being gathered for the grand jury.  *See* Mem. 13-14.  The articles he presents to substantiate this claim describe law enforcement officials executing search warrants at the homes and businesses of various individuals purportedly having knowledge of Mayor Adams's alleged misconduct, as well as certain types of physical evidence seized.  *See id.* at 12.

These articles do not demonstrate that "a matter before the grand jury" has been disclosed in violation of Rule 6(e).  As with the articles that Mayor Adams claims disclose the substance of grand jury witness testimony, the media reports regarding evidence allegedly gathered pursuant to the search warrants make no claims regarding what was specifically gathered for, or ever "actually presented" to, the grand jury.  *Eastern Air Lines*, 923 F.2d at 244; *see also Skelos*, 2015 WL 6159326, at *10 ("Rule 6(e) does not apply to disclosures of information obtained independently of the grand jury process, even if the same information might later be presented to the grand jury. This includes information produced by a criminal investigation that parallels but is independent of a grand jury investigation."); *see also Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987) ("[I]t is not the information itself, but the fact that the grand jury was considering that information which is protected by Rule 6(e).").  Indeed, at least one article explicitly states that the evidence

was *not* being gathered as part of an investigation targeting Mayor Adams.[5]  Accordingly, Mayor Adams has not shown that the evidence from search warrants described in various media reports disclosed information about what was gathered for or presented to the grand jury specifically.

*        *        *

In sum, the Court has conducted the requisite "fact-specific inquiry," *In re Grand Jury Subpoena*, 103 F.3d at 239, and concludes that, with respect to Mayor Adams's allegations concerning the "evolving" focus of the grand jury investigation, the substance of purported grand jury witness testimony, and the non-testimonial evidence purportedly presented to the grand jury, there is no "clear indication" that a matter actually before the grand jury has been disclosed.  *In re Grand Jury Investigation*, 610 F.2d at 216.  Mayor Adams has therefore failed to make a prima facie showing of a violation of Rule 6(e) with respect to these categories of information.

## B.      Disclosure by the Government

There is no denying that "government attorneys and their assistants . . . are forbidden to disclose matters occurring before the grand jury."  *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983); *see also* Fed R. Crim. P. 6(e)(2)(B).  In evaluating whether a defendant has made a prima facie showing that "an attorney or agent for the government" impermissibly disclosed a grand jury secret in violation of Rule 6(e), the district court "look[s] at the information contained in the articles or news reports presented in support of the motion."  *Skelos*, 2015 WL 6159326, at *11.  "[T]he article or articles *must indicate the source* of the information revealed to be one of

---

[5] *See* William K. Rashbaum et al., *U.S. Investigating Whether Adams Received Illegal Donations From Turkey*, N.Y. TIMES (Nov. 2, 2023), https://www.nytimes.com/2023/11/02/nyregion/eric-adams-brianna-suggs-fbi-raid.html ("There was no indication that the investigation was targeting the mayor, and he is not accused of wrongdoing.").

those prescribed by Rule 6(e)[.]"  *In re Grand Jury Investigation*, 610 F.2d at 217 (emphasis added).  Though media reports need not "expressly implicate the government[] if the nature of the information disclosed therein makes clear the connection," the articles must nonetheless contain information sufficient for the Court to conclude that the government was the source of the information contained therein.  *Skelos*, 2015 WL 6159326, at *11.

Two categories of information remain in dispute: information regarding the issuance and recipients of grand jury subpoenas, and information regarding Mayor Adams's indictment, including the timing of it.  As to the former, Mayor Adams presents newspaper articles reporting that several entities and individuals (including himself) were subpoenaed by the grand jury.[6]  *See*

---

[6] Specifically, the articles state that:

- Brianna Suggs, "a campaign consultant who is deeply entwined with efforts to advance the mayor's agenda," was "served . . . with a subpoena directing her to testify before a federal grand jury hearing evidence in Manhattan." William K. Rashbaum et al., *U.S. Investigating Whether Adams Received Illegal Donations from Turkey*, N.Y. TIMES (Nov. 2, 2023), https://www.nytimes.com/2023/11/02/nyregion/eric-adams-brianna-suggs-fbi-raid.html.

- Dan Nigro, a former NYFD Fire Commissioner, "received a grand jury subpoena." John Miller, *Investigation into NYC Mayor Adams Focused on Campaign Money and Possible Foreign Influence*, CNN (Nov. 14, 2023 7:46 AM), https://www.cnn.com/2023/11/14/politics/mayor-eric-adams-investigation-campaign-money-foreign-influence/index.html.

- Mayor Adams, City Hall, and Mayor Adams'ssss election committee were "served . . . subpoenas . . . seek[ing] an extensive range of materials, including text messages, other communications and documents" and information about "travel by the mayor, his aides and others, as well as fund-raising."  William K. Rashbaum & Dana Rubinstein, *Eric Adams and His Campaign Receive Subpoenas in Federal Investigation*, N.Y. TIMES (Sept. 13, 2024), https://www.nytimes.com/2024/08/15/nyregion/eric-adams-fbi-investigation.html; *see also* William K. Rashbaum et al., *U.S. Inquiry Into N.Y. Mayor's Foreign Ties Said to Include 6 Countries*, N.Y. TIMES (Sept. 27, 2024), https://www.nytimes.com/2024/09/23/nyregion/fbi-adams-qatar-israel-china-uzbekistan-korea.html (describing content of subpoenas).

Mem. 7-8, 12-13.  As to the latter, Mayor Adams presents a *New York Times* article stating that he was indicted, which was published on September 25, 2024—"before the indictment was unsealed and," he further alleges, "before the Mayor's counsel was notified of the indictment."  *See id.* at 1 (citing William K. Rashbaum et al., *Eric Adams Is Indicted After Federal Corruption Investigation*, N.Y. Times (Sept. 30, 2024), https://www.nytimes.com/2024/09/25/nyregion/eric-adams-indicted.html).

As an initial matter, the Government argues that these categories of information fall outside of the scope of materials protected from disclosure by Rule 6(e)(2).  As to the subpoenas, that is unclear at best.  There is no dispute that the identities of individuals who actually testify as witnesses before a grand jury are protected by Rule 6(e).  *See In re Motions of Dow Jones & Co.*, 142 F.3d at 500.  And while the Government argues that the Rule does not extend to recipients of grand jury subpoenas, who may not necessarily become witnesses, there is some case law holding

---

- Several senior officials in the Mayor's administration "had their phones seized or records of their communications subpoenaed."  William K. Rashbaum et al., *Mayor Eric Adams Faces Crisis as US. Investigations Reach Inner Circle*, N.Y. TIMES (Sept. 13, 2024), https://www.nytimes.com/2024/09/05/nyregion/banks-sheena-fbi-search-nyc.html.

- Arda Sayiner, "a self-described brand adviser, influencer, and journalist who does business in Turkey," was "named in [a] subpoena[]."  William K. Rashbaum et al., *U.S. Inquiry Into N.Y. Mayor's Foreign Ties Said to Include 6 Countries*, N.Y. TIMES (Sept. 27, 2024), https://www.nytimes.com/2024/09/23/nyregion/fbi-adams-qatar-israel-china-uzbekistan-korea.html.

- Mayor Adams describes an additional individual, Rana Abbasova, as "another grand jury witness" in his motion.  Mem. of Law in Supp. of Def.'s Mot. for Rule 6(e) Hr'g and Sanctions 12.  However, none of the articles Mayor Adams has submitted discuss whether Ms. Abbasova was served a grand jury subpoena.

or suggesting that because such the identifies of such individuals are, in fact, shielded from disclosure under Rule 6(e) because they are *likely* to testify before the grand jury.[7]

With respect to an indictment having been returned, and to the timing of an indictment's unsealing, the parties argue over the precise source and purpose of the prohibition on their disclosure, *see* Government's Opp'n to Def.'s Mot. for Sanctions 19 n.9, ECF No. 38 ("Opp.") (arguing that it is protected under Rule 6(e)(4) rather than 6(e)(2)). But there does not appear to

---

[7] A number of courts, including one district court in this Circuit, have held or suggested that, contrary to the Government's position here, *see* Government's Opp'n to Def.'s Mot. For Sanctions 19, ECF No. 38, the identity of an individual served a grand jury subpoena is protected by Rule 6(e), because such witnesses are likely to testify before a grand jury. *See, e.g.*, *Comm. on Judiciary, U.S. House of Representatives*, 332 F.R.D. 412, 415-16 (D.D.C. 2019) ("That an individual's testimony was subpoenaed by the grand jury is also a 'matter occurring before the grand jury.' . . . [W]hile the grand jury is ongoing, a potential witness's identity is protected insofar as that witness's testimony has been subpoenaed. Secrecy is also warranted where the testimony is otherwise likely, as in 'about to be presented' or 'not yet delivered but clearly anticipated.'"); *In re Grand Jury Investigation*, 610 F.2d 202, 216-17 (5th Cir. 1980) ("We construe the secrecy provisions of Rule 6(e) to apply not only to disclosures of events which have already occurred before the grand jury, such as a witness's testimony, but also to disclosures of matters which will occur, such as *statements which reveal the identity of persons who will be called to testify*.") (emphasis added); *cf. United States v. Nordlicht*, No. 16 Crim. 640, 2018 WL 6106707, at *4 (E.D.N.Y. Nov. 21, 2018) (no finding of a matter occurring before the grand jury having been leaked where the "article did not contain any specific information related to the grand jury process, e.g., it did not describe the date the subpoenas were issued or served, *who was subpoenaed*, or what information was sought") (emphasis added). And there is some language in one Second Circuit opinion arguably pointing towards the same conclusion. *See United States v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991) ("[W]e are . . . disinclined to view the Rule as generally precluding the disclosure of information obtained from persons who have neither testified before the grand jury *nor been subpoenaed to testify*.") (emphasis added). But the Second Circuit has not expressly ruled on this question definitively, and as one district court has noted, the Second Circuit has not yet expressly held that Rule 6(e) prohibits "information that may reveal what is *likely* to occur in front of the grand jury in the future." *Blaszczak*, 2018 WL 1322192, at *4 n.31 (emphasis added).

be a real dispute that such information is in fact prohibited from disclosure, and there is case law to that effect.[8]

In any event, the Court need not resolve these issues today. The Court takes seriously Mayor Adams's allegations, but ultimately concludes that he has failed to make a prima facie showing that the Government was the source of these disclosures. While Mayor Adams insists that "[t]here is no alternative source for the leaks," Mem. 15, the identities of the recipients of the subpoenas and the timing of the unsealing of the indictment were pieces of information that were known by others beyond the Government. And Mayor Adams has failed to show that *Government attorneys or their agents*, as opposed to other individuals, were the source of information in the articles. For example, with respect to the subpoenas directed at City Hall and Mayor Adams's campaign, dozens of people were likely aware of the fact that those subpoenas had been served. The individuals subpoenaed to testify before the grand jury similarly knew of those subpoenas' existence.[9] And the fact that an indictment had been returned against the Mayor and would be

---

[8] Several courts in this Circuit have either held or suggested that the timing of when the grand jury will return an indictment is protected by Rule 6(e). *See, e.g., Skelos*, 2015 WL 6159326, at *10 (disclosures about "the date when a grand jury will return an indictment" "might constitute [a] Rule 6(e) violation[]"); *Nordlicht*, 2018 WL 6106707, at *4 ("[C]ourts have held that Rule 6(e) was violated where disclosures . . . report when the grand jury will return an indictment"). And the Fifth Circuit has held the same. *See, e.g., In re Grand Jury Investigation*, 610 F.2d at 216-17 (construing "the secrecy provision[] of Rule 6(e) to apply not only to disclosures of events which have already occurred before the grand jury . . . but also to disclosures of matters which will occur, such as statements which . . . report when the grand jury will return an indictment."). The Court notes, however, that the purpose of the prohibition on disclosure of the timing of an indictment is primarily to prevent a *defendant* from learning that they have been indicted so as to reduce the risk of flight. *See United States v. Nassimi*, No. 04 Crim. 706, 2023 WL 3584409, at *3 (S.D.N.Y. May 22, 2023). That is a different purpose than the one underlying the prohibition against disclosure of matters to before the grand jury under Rule 6(e)(2), which is to protect the integrity of the proceeding itself.

[9] This also true of the individuals who had search warrants executed at their residences and businesses.

unsealed was also known by individuals outside of the U.S. Attorney's Office; in fact, before the media reported on the indictment, Mayor Adams's own counsel emailed the Government stating "[w]e are hearing from numerous sources that there will be charges against the Mayor announced tomorrow."  Wikstrom Decl. ¶ 13, ECF No. 38-1; *cf. Barry*, 740 F. Supp. at 891 (where numerous "individuals were 'familiar with'" information contained in newspaper article by the time it was published, "[i]t is by no means clear that the source for this publication was in fact a person covered by Rule 6(e)").  In sum, there is no article in the record that contains information that could have been disclosed *only* by the Government, and the Court cannot credit Mayor Adams's arguments to the contrary.[10]

Moreover, the Government has submitted a declaration affirming that none of the Assistant United States Attorneys, FBI Special Agents, or New York City Department of Investigation Deputy Investigators General assigned to Mayor Adams's case "disclosed information they learned in the course of the Investigation to any member of the press."  *See* Feinzig Decl. ¶ 3, ECF No. 38-2.  In the Second Circuit, such statements are accorded significant weight.  In *United States v. Rioux*, the Second Circuit affirmed a district court's ruling that, under similar facts, the defendant had not established that the Government had violated Rule 6(e).  97 F.3d at 662.  Despite the fact that there was "at least one article . . . about matters before the grand jury" where "the source . . . was 'likely' a government official," the district court nonetheless found no prima facie showing of

_____

[10] To be clear, this Court makes no factual findings with respect to the source of the disclosure to the *New York Times* that Mayor Adams's indictment would soon be unsealed.  Rather, the Court notes simply that Mayor Adams has not met his prima facie burden on this motion because individuals working for the U.S. Attorney for the Southern District of New York were not the only people who knew that the Mayor had been indicted before the indictment was unsealed, and Mayor Adams offers no evidentiary basis to disregard the Government's declaration, described *infra*, stating that the Government did not disclose information about the investigation into Mayor Adams to the media.

a violation "after considering government affidavits denying that they were the source of the information." *Id.*  The Second Circuit affirmed, stating, *inter alia*, that "[t]he court's consideration of the government affidavits was certainly proper." *Id.*  In *United States v. Skelos*, the district court took a similar approach, considering the Government's affidavits before concluding that the defendants "failed to demonstrate that the Government was the source of any of the[] alleged disclosures." 2015 WL 6159326, at *11.  *Skelos* noted specifically that "[r]elying on such a government affidavit is particularly appropriate where the source of the information in a news article is not definite." *United States v. Skelos*, No. 15 Crim. 317, 2018 WL 2849712, at *5 (S.D.N.Y. June 8, 2018).  And on appeal, the Second Circuit affirmed the district court's reliance on the Government's affidavits given that "the media outlets only identified a 'government source' or 'law-enforcement sources,' not government investigators." *United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021).

That is largely the case here as well.  None of the articles that reference grand jury subpoenas or the indictment cited by Mayor Adams in his opening papers states or even implies that the sources to which it refers (e.g., "people with knowledge of the matter") are, in fact, attorneys for the Government involved in the grand jury process (or their agents).  That distinguishes these articles from ones that have formed the basis of a prima facie showing of a Rule 6(e) violation.  *Compare Barry*, 865 F.2d at 1325 (describing news articles referencing their sources as "law enforcement officials familiar with [grand jury] testimony"); *United States v. Flemmi*, 233 F.Supp.2d 75, 82 (D. Mass. 2000) (similar).

There is, however, one article—which the Government identified and which Mayor Adams relies on in his Reply—that describes the issuance of grand jury subpoenas and cites "law enforcement" as its source: a *New York Post* article from August 15, 2024.  *See* Opp. 6, 16; Reply

3-4.  This article is perhaps Mayor Adams's strongest evidence of an improper leak under Rule 6(e).  But the Court declines to hold that it establishes a prima facie case, for several reasons.

First, the article contains only a single reference to non-descript "law enforcement sources" confirming the existence of subpoenas issued during the previous month to Mayor Adams, his campaign, and City Hall.  Craig McCarthy et al., *NYC Mayor Eric Adams Hit with First Subpoena over 2021 Campaign*, N.Y. Post (Aug. 15, 2024), https://nypost.com/2024/08/15/us-news/nyc-mayor-eric-adams-hit-with-first-subpoena-over-2021-mayoral-campaign.  By contrast, in cases where courts have found the Government responsible for disclosures to the media, it is more clearly apparent that the disclosures were attributable to Government officials involved in the grand jury process.  *See, e.g.*, *Barry*, 865 F.2d at 1325 (affirming district court's finding of a prima facie violation of Rule 6(e) based on news articles disclosing information provided by "law-enforcement officials familiar with [the defendant's grand jury] testimony"); *In re Grand Jury Investigation*, 610 F.2d at 220-21 (finding the Government responsible for media disclosures because, inter alia, "[t]he articles contain[ed] numerous disclosures of information about the grand jury proceedings, and several of the articles identif[ied] either expressly or by inference the government attorneys as the source of the information").  But where, as here, the articles' sources are unclear, courts do not automatically conclude that the information conveyed should be attributed to the Government.  *Cf. United States v. Blaszczak*, No. 17 Crim. 357, 2018 WL 1322192, at *6 (S.D.N.Y. Mar. 12, 2018) ("In any case, neither the article's attribution of sources—unspecified 'people familiar with the probe'—nor its substance sufficiently points to the government.").

Second, in this context, the Court—while not "bound" by the Government's declaration denying that it was the source of the disclosures, *Rioux*, 97 F.3d at 662—affords significant weight to it.  "The inability to show a definite source for some of the information contained in the articles

18

might cause a prima facie case to fail if a responsive affidavit denying the allegations is made." *In re Grand Jury Investigation*, 610 F.2d at 219.  Here, the Government's declaration distinguishes this case from those in which a Rule 6(e) violation was found.  *Compare id.* at 220 (finding Rule 6(e) violation "[i]n light of . . . the government's failure to file an affidavit denying the charges of misconduct"); *cf. Flemmi*, 232 F. Supp. 2d at 117 (noting that "no affidavits have been filed by the government in response to [the defendant's] motion," and granting Rule 6(e) relief); *Barry*, 740 F. Supp. at 891–92 (finding, after defendant initially made a prima facie showing, no Rule 6(e) violation because "[t]he Government has proferred [sic] affidavits . . . unequivocally denying any unlawful disclosure," which "effectively negate any inference of unlawful disclosure.").  Courts afford substantial weight to such statements.  As noted, the Second Circuit in *Rioux* affirmed a district court's conclusion that Government affidavits were sufficient to determine that no prima facie showing of a violation had been made, even where one news article disclosed matters before the grand jury and it appeared "likely" that the source was a government official.  97 F.3d at 662.

Mayor Adams notes that, unlike in *Skelos*, the Government here relies on a single declaration based on interviews with the relevant Government officials, rather than on statements from each of them individually.  *See* Reply 7.  That is true, and perhaps is a basis to afford slightly less weight to the declaration here than the affidavits in *Skelos* or *Rioux*, but it is not a basis to discount it altogether.  Ultimately, after considering all of the submissions in the record, including the Government's declaration, and conducting the requisite "fact-sensitive" Rule 6(e) inquiry, *Skelos*, 2015 WL 6159326, at *12, the Court concludes that Mayor Adams has failed to make a

prima facie showing that the Government was the source of disclosures as to the identity of recipients of grand jury subpoenas or the timing of the indictment in this matter.[11]

C.      **Mayor Adams's Supplemental Submission**

On October 30, 2024, Mayor Adams submitted a letter and additional materials to "supplement the record on [his] motion." *See* ECF No. 44. The Court has reviewed this supplemental submission, and concludes that it does not change the Court's analysis.

To the extent that the submission includes factual information (as opposed to additional legal argument) about purported leaks, those facts largely pertain to purported disclosures in an unrelated, nearly decade-old case, referenced throughout this Opinion, where the district court found no Rule 6(e) violation. *See Skelos*, 2015 WL 6159326. Such information was known or knowable before Mayor Adams submitted his reply brief on October 25, 2024, at which point his motion was fully briefed. Thus, the submission is untimely to extent it presents and relies on that material, and the Court does not consider it in its analysis. But even if it were to do so, the Court is aware of no authority for the proposition that alleged leaks in one case support a prima facie showing of leaks in another. And, in any event, the district court in *Skelos* found that there was no showing of a prima facie violation in that case. *See id* at *12.

To the extent the letter presents additional argument regarding the prohibition on disclosure of grand jury subpoenas—assuming that such argument is not untimely—it nonetheless does not affect the Court's decision. As noted *supra*, while the Second Circuit has not expressly held that Rule 6(e)'s prohibitions extend to the identities of recipients of grand jury subpoenas, even

---

[11] For the avoidance of doubt, this Court makes no factual findings, and there is nothing in the parties' briefs, with respect to whether the subpoenaed parties Mayor Adams identifies in his motion testified before and/or submitted documents to the grand jury.

assuming arguendo that such information is protected by Rule 6(e) (as a number of courts have held), this Court has determined based on the complete record before it, including Mayor Adams's supplemental submission, that he has failed to make a prima facie showing that an attorney for the Government (or their agent) improperly disclosed information regarding grand jury subpoenas, or the identities of grand jury subpoena recipients.

## CONCLUSION

For the reasons discussed herein, Mayor Adams's Motion for a Rule 6(e) Hearing and Sanctions is **DENIED**. "Nevertheless, the parties are cautioned that this case is to be tried in the courtroom and not in the press." *United States v. Silver*, 103 F.Supp.3d 370, 382 (S.D.N.Y. 2015). The Clerk of Court is respectfully directed to terminate ECF No. 18.

SO ORDERED.

Dated: October 31, 2024
     New York, New York

DALE E. HO
United States District Judge