# AGNIFILO INTRATER

November 3, 2024

Given the urgency of the issue, if defendant has additional arguments to make on the motion at Dkt. 42 in reply to the Government's opposition, he should provide those to the Court by **November 5, 2024 at 12:00 PM**.

SO ORDERED.

**VIA ECF**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Arun Subramanian, U.S.D.J.
Date: November 4, 2024

Re:   *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

      We write on behalf of our client, Mr. Sean Combs, regarding the deluge of improper pretrial publicity that is undermining Mr. Combs's right to a fair trial and the integrity of the grand jury proceedings. As the Court is aware, Mr. Combs filed a motion to restrict extrajudicial statements by potential witnesses and their counsel, ECF No. 42, which the government has opposed, ECF No. 53. Mr. Combs's reply is due on November 8, 2024. However, given the imminent harm of certain extrajudicial statements relating to the ongoing grand jury proceedings, we request that the court immediately restrain extrajudicial statements by potential witnesses and their counsel during the pendency of the motion.

      Over the past several days, a grand jury witness and his attorney have given multiple interviews – including outside the courthouse immediately following his apparent grand jury testimony – making false and outrageous claims, including that the witness possesses videos of Mr. Combs involved in the sexual assault of celebrities and minors.[1] This grand jury witness claims that he was subpoenaed after he made public statements on social media that he possessed videos of celebrities, including minors, being sexually assaulted. The subpoena also comes on the heels of his attorney's statements that she had been asked to "shop a particular video" and contact a celebrity "in the video to see if they were interested in purchasing the video before it became public knowledge."[2]

      In anticipation of his testimony, the witness's lawyer made numerous statements to the media about his testimony, including that the government had subpoenaed him to testify about the alleged videos.[3] Immediately after his appearance before the grand jury, he and

---

[1] *Diddy Grand Jury Subpoenas New Witness, Claims to Have Tapes, Kim Porter Diary*, TMZ (Oct. 31, 2024), https://www.tmz.com/watch/2024-10-31-103124-courtney-burgess-ariel-mitchell-1921952-665/.
[2] *Diddy accuser's lawyer: 'High-profile' person unknowingly recorded*, NewsNation (Sept. 27, 2024), https://www.newsnationnow.com/banfield/diddy-accusers-lawyer-high-profile-person-unknowingly-recorded/.
[3] *Grand jury in Sean 'Diddy' Combs case hearing from witness who claims he has footage of Combs potentially victimizing celebrities*, CNN (Oct., 31, 2024), https://www.cnn.com/2024/10/31/entertainment/sean-diddy-combs-grand-jury/index.html; *New York grand jury hearing new evidence in Sean 'Diddy' Combs federal case*, NBC News (Oct. 30, 2024),

Hon. Arun Subramanian
November 3, 2024
Page 2 of 5

his lawyer were interviewed on the courthouse steps.[4] That evening, they also sat down for an interview, where the witness claimed that he has seen videos of eight celebrities being victimized, including some who appeared to be minors, and all of whom appeared intoxicated.[5]

These stories have spread rapidly through the media and created the impression that such videos exist, which is false, and that the government is actually crediting his sensational claims, which is profoundly prejudicial. While the witness and his attorney eagerly spread false and unchecked claims in the media, they have avoided subjecting their claims to verification through the legal process. For instance, the witness and his lawyer admitted that he resisted complying with the grand jury subpoena and only appeared after the Marshals tracked him down.[6] And, when directly asked if they had the videos to back up their outlandish claims, the attorney responded: "that's what we're going to head over to do now. So we're having a hearing now to determine what we're going to do in terms of what documents we will have to turn over and what documents we do not."[7] Her references to "documents" rather than videos is a clear indication that he they do not possess the latter. Indeed, this witness – who has never even met Mr. Combs[8] – claims that he received the tapes from an unnamed individual (who was subsequently shot and killed)[9] along with a purported memoir of the deceased mother of Mr. Combs's children that has since been denounced as fake.[10] By treating these ridiculous claims as anything but a pathetic extortion scheme, the government is fueling the fire of online conspiracy theories and making it impossible for Mr. Combs to have a fair trial.

The government's main objection to the extension of the gag order to all civil litigants is that it would be "extraordinary and beyond the purview of the Local Rule." Based on this assertion—which is unsupported by any legal authority and ignores the

---

https://www.nbcnews.com/news/us-news/new-york-grand-jury-hearing-new-evidence-sean-diddy-combs-federal-case-rcna178036;

[4] *Diddy Grand Jury Subpoenas New Witness, Claims to Have Tapes, Kim Porter Diary*, TMZ (Oct. 31, 2024), https://www.tmz.com/watch/2024-10-31-103124-courtney-burgess-ariel-mitchell-1921952-665/. It is counsel's understanding that this attorney made several calls to news organizations leading up to the grand jury appearance, and arranged for cameras to wait outside of the grand jury so that she could stage a televised interview.

[5] *Full interview: Diddy court witness says he saw 8 sex tapes with at least 2 celeb minors*, NewsNation (Oct. 31, 2024), https://www.youtube.com/watch?v=Cx3WZMb2v9I

[6] *Diddy Grand Jury Subpoenas New Witness, Claims to Have Tapes, Kim Porter Diary*, TMZ (Oct. 31, 2024), https://www.tmz.com/watch/2024-10-31-103124-courtney-burgess-ariel-mitchell-1921952-665/ (lawyer stating that "if you don't answer a subpoena the marshals will come to your house as they came to his house and they will bring you here so that's why we're here today").

[7] *Id.*

[8] *Id.* (when asked if he knows Mr. Combs, stating "not personally").

[9] *Diddy insider leaks names, insane celeb pics & Kim Porters Diary Extras!*, YouTube (Oct. 30, 2024), https://www.youtube.com/watch?v=G9chnGDKoDo.

[10] *Amazon pulls purported Kim Porter memoir after it is denounced by her children*, LA Times (Oct. 2, 2024), https://www.latimes.com/entertainment-arts/books/story/2024-10-02/kim-porter-book-diddy-abuse-allegations.

Rule's facial applicability to lawyers for grand jury witnesses and the witnesses themselves—the government suggests that this issue should be litigated piecemeal in courts throughout the country. ECF 53 at 38. The government is inviting error. This Court has "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity," *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378 (1979), and the "measures a judge takes or fails to take to mitigate the effects of pretrial publicity . . . may well determine whether the defendant receives a trial consistent with the requirements of due process," *Sheppard v. Maxwell*, 384 U.S. 333, 551-56 (1966). Those measures certainly may include restraining the speech of potential witnesses and their counsel, including those who may ultimately not be part of the criminal case, especially where the government refuses to identify who it plans to call as a witness. As the Supreme Court explained in *Sheppard*, a court can "proscribe[] extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters." *Id.*; *see also United States v. Brown*, 218 F.3d 415 (5th Cir. 2000) (affirming gag order on parties, lawyers, and potential witnesses, preventing them from making "any extrajudicial statement or interview" and otherwise interfering with the trial in prosecution of state politician). Indeed, "[w]hen the exercise of free press rights actually tramples upon Sixth Amendment rights, the former must nonetheless yield to the latter." *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 609 (2d Cir. 1988) (upholding gag order retraining extrajudicial speech by trial participants in public corruption case). This applies with particular force with respect to restricting attorneys' speech. Attorneys, as officers of the court, "have a fiduciary responsibility not to engage in public debate that will redound to the detriment of the accused or that will obstruct the fair administration of justice." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1074-75 (1991). Attorneys' statements also pose an increased "threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative," when, in fact, they are advocating their client's slanted perspective. *Id.*

Moreover, it makes little sense that civil litigants seeking to capitalize on the criminal allegations against Mr. Combs can nonetheless claim that they are not involved in the criminal proceedings for purposes of the Local Rule. Those litigants and their counsel stand to financially benefit from a conviction and therefore are highly motivated to make damaging statements in the press. To say that those cases and those litigants are unrelated is illusory.

The recent press is especially damaging because it has occasioned another wave of leaks by law enforcement, in violation of the Court's October 25, 2024 Order, ECF No. 50. *See, e.g.*, *Grand jury in Sean 'Diddy' Combs case hearing from witness who claims he has footage of Combs potentially victimizing celebrities*, CNN (Oct. 31, 2024), https://www.cnn.com/2024/10/31/entertainment/sean-diddy-combs-grand-jury/index.html ("'The grand jury is always meeting. This is an ongoing investigation,' a source familiar with the current state of the investigation told CNN on Thursday. A separate source, also familiar with parts of the investigation said, 'The grand jury has never stopped.'"); *New York grand jury hearing new evidence in Sean 'Diddy' Combs federal case*, NBC News (Oct. 30, 2024), https://www.nbcnews.com/news/us-news/new-york-grand-jury-hearing-

new-evidence-sean-diddy-combs-federal-case-rcna178036 ("A source familiar with the grand jury proceedings confirmed that a male is expected to testify Thursday."). Indeed, even after the Court's October 25th Order, the leaks relating directly to the grand jury proceedings continue unabated. A New York Post article published on October 31, 2024 attributed the following to a "federal law enforcement source who is involved in the investigation":

- "They're all too happy to talk," says a federal law enforcement source who is involved in the investigation. "We're asking them about their recollections of the Freak Offs, what they were paid to do, and who else was involved. I'm surprised how many of them can recall intricate details about what happened."
- The source told The Post that many of the men — who were in their 20s at the time of the parties, but are now in their 40s and have aged out of the skin biz — have offered similar details about parties, including the drugs that were allegedly supplied.
- "They were all encouraged to take Viagra and Cialis before the parties," said the source. "They were expected to perform and were told if they didn't perform, they'd be thrown out of the party and not paid."
- Authorities are trying to determine if any of the participants in Diddy's Freak Offs were underage or illegally coerced into performing.
- "We have to identify all the people in the videos," says the Fed source. "And then we can figure out how old they were at the time, and make sure that none of them were trafficked or threatened to participate. It's a long process, but we're making progress.[11]

The government has been investigating for nearly a year, and as they are aware, their own allegations about "Freak Offs" do not relate to "men" at "parties" or alleged underaged victims. In light of the continuing prejudicial extrajudicial statements by witnesses and their lawyers – and the extent to which those press statements generate further government leaks – we respectfully request that the Court enter the attached proposed temporary order restraining the speech of potential witnesses and their counsel.

---

[11] *Diddy investigators have interviewed male escorts about his infamous 'Freak Off' parties – and they're 'happy to talk': source*, NY Post (Oct. 31, 2024), https://nypost.com/2024/10/31/us-news/diddy-investigators-have-interviewed-about-10-male-escorts-about-his-infamous-freak-off-parties-and-theyre-happy-to-talk-source/.

Hon. Arun Subramanian
November 3, 2024
Page 5 of 5

    We appreciate the Court's consideration.

                                      Respectfully submitted,

                                      Marc Agnifilo
                                      Teny Geragos
                                      AGNIFILO INTRATER
                                      445 Park Ave., 7th Fl.
                                      New York, NY 10022
                                      646-205-4350
                                      marc@agilawgroup.com
                                      teny@agilawgroup.com

                                      Anthony Ricco
                                      Law Office of Anthony L. Ricco
                                      20 Vesey Street
                                      New York, NY 10007
                                      (212) 791-3919
                                      tonyricco@aol.com

                                      Alexandra Shapiro
                                      Shapiro Arato Bach LLP
                                      1140 Avenue of the Americas, 17th Fl.
                                      New York, NY 10036
                                      (212) 257-4881
                                      ashapiro@shapiroarato.com

                                      Anna Estevao
                                      SHER TREMONTE LLP
                                      90 Broad St., 23rd Fl.
                                      New York, NY 10004
                                      (212) 202-2600
                                      aestevao@shertremonte.com