# Exhibit B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

26 Federal Plaza, 37th Floor
New York, New York 10278

September 18, 2024

**BY ECF**

The Honorable Andrew L. Carter Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a*
           *"Diddy," a/k/a "PD," a/k/a "Love,"* **24 Cr. 542 (ALC)**

Dear Judge Carter:

    The Government respectfully submits this letter in advance of the bail appeal by defendant
Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love."  For
the reasons set forth below, and in the Government's September 17, 2024 detention letter (Dkt. 5
(the "September 17 Letter")) and argument before the Magistrate Court (Dkt. 13-9 ("Tr.") at 11-
23, 48-50), the defendant presents a danger—to victims and others, both through physical violence
and through obstructive conduct—and a risk of flight.  He must be detained.

    I.    **Additional Background**

    The relevant factual background is set forth in detail in the September 17 Letter and
incorporated by reference herein.  (September 17 Letter at 1-6).  The defendant was arrested on
September 16, 2024, and arraigned on September 17, 2024 before the Honorable Robyn F.
Tarnofsky, United States Magistrate Judge.  Following arraignment, the Government sought the
defendant's detention on three grounds: dangerousness, obstruction, and risk of flight. (Tr. 9-10).
Pretrial Services similarly recommended detention for the defendant.

    After an extended bail argument, the Court found that the defendant had failed to rebut the
presumption of detention in this case.  (Tr. 54).  Judge Tarnofsky noted that the crime of sex
trafficking is "a crime that happens behind closed doors" and expressed concern that such conduct
could not be monitored by Pretrial Services.  (Tr. 54).  The Court further found that detention was
warranted based on the defendant's history and characteristics:

    There are also indications in your history and characteristics that I think are a reason
    why the presumption in favor of detention has not been rebutted; prior substance
    abuse and the fact that the alleged violence seems to occur hand in hand with times
    when you are not necessarily in control of your actions because of that substance
    abuse.  Your lawyer asked me to trust you and to trust him, and I don't know that I
    think you can trust yourself, and I don't believe that counsel has the ability to

> control you, given the very significant concerns I have, particularly because of
> substance abuse and what seem like anger issues.

(Tr. 54-55). In addition, the Court noted that the "weight of the evidence is significant given that the government has proffered that there are multiple witnesses who are saying that they have witnessed significant serious violence." (Tr. 55). Finally, the Court concluded that the danger posed by the defendant was "quite serious," due to the defendant's access to weapons, use of violence, and the coercion of witnesses. (Tr. 55).

This Court should reach the same conclusions. Judge Tarnofsky's findings are well supported by the record before the Court today and demonstrate why the presumption of detention is not rebutted in this case. Moreover, defense counsel's most recent letter fails to seriously contend with the findings, most glaringly related to the defendant's unpredictable dangerousness and inability to be monitored or controlled.

## II.    The Defendant Poses a Significant and Ongoing Danger

Despite public statements by counsel minimizing the defendant's conduct, both to Judge Tarnofsky and the media,[1] the defendant has committed incredibly serious crimes. As alleged in Counts One and Two of the Indictment, among other crimes, the defendant used violence, threats of violence, and coercion to cause women to engage in commercial sex acts. In other words, the defendant committed sex trafficking—a crime so serious that Congress has determined that there is presumptively no condition or combination of conditions that will reasonably assure the safety of the community and the defendant's appearance in court. 18 U.S.C. § 3142(e)(3)(D). The defendant's crimes have spanned over a decade and continued through this year, putting others around him, including both victims and witnesses, at risk.

The nature of the offenses and the defendant's history and characteristics demonstrate the danger he poses and weigh heavily in favor of detention. 18 U.S.C. § 3142(g)(1), (3). The defendant's repeated acts of domestic violence, which are recurrent and, as noted by Judge Tarnofsky, often occur behind closed doors, are not disconnected to the offense conduct—they are an element of it. The physical force and coercion the defendant repeatedly used, during and apart from the Freak Offs, caused victims to engage in the sexual activity. That is sex trafficking. These acts of physical force—of violence—are corroborated not only through victim testimony, but also through, among other things, victim communications with the defendant spanning years of the charged time period; witness testimony, including witnesses who were present during and after Freak Offs; video footage; photographs capturing victim injuries; and law enforcement records, among other things. The same is true of the defendant's coercion. The communications between the defendant and multiple victims, which include communications sent as recently as this year, capture victim resistance to engaging in Freak Offs even in light of the defendant's abusive tactics. The defendant's years-long use of force and coercion speaks directly to dangerousness.

---

[1] *See, e.g.*, CNN, *Sean 'Diddy' Combs' Attorney on Whether The Star Was Surprised By His Arrest*, YouTube (Sept. 18, 2024), https://www.youtube.com/watch?v=0s75LAia5RA (characterizing the March 5, 2016 incident a "misdemeanor assault").

To be clear, despite the Indictment naming one victim in Count Two, this case is not about just one victim. The Government's evidence to date—including the defendant's own communications—demonstrates that the defendant has used force and coercion against *multiple* victims. In addition to these women, the defendant has assaulted a host of other individuals, including his employees and witnesses to his violence. For example, the defendant directed his rage toward his employees and those close to Victim-1 who had seen him physically abuse Victim-1, including by throwing these witnesses against walls and onto the ground, choking them, and throwing objects at them, among other things, particularly when they attempted to protect Victim-1. In doing so, the defendant has demonstrated that he is not only a danger to victims and witnesses but is also obstructive and willing to engage whatever is necessary—including physical violence—to instill fear in witnesses to keep them silent. *All* of this violence, against victims, witnesses, and others, factors into the analysis of the defendant's dangerousness.

### III.    The Defendant Has Consistently Obstructed Justice

Equally, as outlined in the Government's September 17 Letter, the defendant poses a significant risk of obstruction. (September 17 Letter at 9-11). The defendant's argument that his recent contacts with witnesses to the charged conduct should not be considered "obstruction" because he was unaware of the Government's investigation simply cannot be credited.[2] The defendant has been aware of the Government's investigation of this case since at least in or about January 2024. And even earlier, directly following the filing of a civil lawsuit in November 2023, the defendant was aware of the potential for criminal charges. Nevertheless, since that time, the defendant has continued his long-standing pattern of engaging in obstructive conduct.

Defense counsel acknowledges that the defendant has contacted witnesses in this investigation—apparently with "counsel's blessing"—but claims that the defense has "studiously avoided" interviewing grand jury witnesses. (Dkt. 13 at 10). The fact is, the defendant has personally and repeatedly contacted multiple witnesses, including at least one he *himself* knew was a grand jury witness. The defendant contacted these witnesses, including at least one whom he had not been in contact with for years, after they were served and leading up to the date they were required to appear before the grand jury. The defendant's behavior illustrates Judge Tarnofsky's point that counsel cannot control their client. (Tr. 54).

Moreover, contrary to counsel's protestations to the contrary, there is ample evidence from which to infer that the defendant's contacts are not innocuous. Indeed, the Government has multiple examples of the content of such communications between the defendant and/or his intermediaries and victims and witnesses. These communications include feeding victims and witnesses false narratives of events that they observed and/or personally experienced. (*See*

---

[2] The defendant's arguments with respect to his obstructive intent are equally unavailing. Specifically, the defendant claims that his actions on March 5, 2016 do not amount to obstruction because there was "no official proceeding in fact or in the contemplation of Mr. Combs or anyone else." (Def. Ltr. at 10). First, there need not be an official proceeding at the time of the obstructive acts to satisfy 18 U.S.C. § 1512. *See United States v. Reich*, 479 F.3d 179, 185-86 (2d Cir. 2007). Second, there is no "official proceeding" requirement with respect to obstruction under 18 U.S.C. § 1591(d) (obstruction of justice in connection with a sex trafficking matter).

September 17 Letter at 10). And they include communications were even made in the aftermath of the November 2023 civil lawsuit, during which the defendant was clearly concerned about the possibility of potential law enforcement scrutiny, as during several calls, the defendant expressed his concern that his communications may be monitored. (*See, e.g.*, "You know I can't really talk on this phone. You feel me."; "I'm not even supposed to be talking on the phone."; "I can't be on these phones and shit like that . . . you feel me."; "I-I can't even talk on the phone. Like, please don't send no texts or d-do nothing. People misread and shit.").

Finally, it bears noting that within the first 24 hours of this case's unsealing, there are already new concerns about witness interference as well as interference with a fair trial based on the defendant and his counsel's attempts to publicly discredit one of the victims. As Judge Tarnofsky noted in her ruling, one of the pertinent concerns here is the "power imbalance" in the case. (Tr. 54). The defendant, as alleged in the indictment and publicly known, is a man of immense power and influence. Consequently, his ability to coerce victims and to influence witnesses is outsized. Just yesterday, during the bail argument and a subsequent appearance on CNN, defense counsel impugned the allegations made by a statutory victim—challenging the motivation and timing of her claims. In addition to being factually inaccurate, this sort of attack comes close the limits set forth in L. Crim. R. 23.1. It also can be expected to intimidate other witnesses who may feel tremendous pressure not to go up against the defendant. The Government therefore requests that the Court caution the defendant and counsel not to violate L. Crim. R. 23.1, including by publicly challenging the credibility of prospective witnesses or by publicizing information counsel knows to be likely inadmissible at trial. Moreover, the Government submits that this is yet another example of the defendant's ability to obstruct these proceedings, even though the media. *Cf. United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK) (S.D.N.Y. Aug. 11, 2023) (Dkt. 224) (remanding defendant who disseminated materials to the media in an effort to discredit and intimidate a trial witness).

### IV.    The Defendant Poses a Risk of Flight

Both at argument yesterday and in the press, the defendant has emphasized his supposed "cooperation" with the Government, including his willingness to surrender. The Court should take that argument for what it truly is: attorney-crafted theatre designed to convince this Court that the defendant can be trusted and is not a risk of flight. Make no mistake—the defendant's recent behavior shows that he cannot be trusted or controlled, particularly now that he is facing serious charges that carry significant penalties. As Judge Tarnofsky observed, "Your lawyer asked me to trust you and to trust him, and I don't know that I think you can trust yourself, and I don't believe that counsel has the ability to control you." (Tr. 54). Indeed, since at least in or about January 2024—when the defendant was unquestionably aware of the criminal investigation—the evidence shows that he has engaged in multiple Freak Offs (some involving the interstate transportation of individuals to participate), has continued to use narcotics, and has contacted multiple witnesses. Some of this conduct has even taken place since the defendant arrived in New York City, allegedly

to "sit it out" and wait to be arrested. (Tr. 25). The defendant's conduct is demonstrably not cooperative, and indeed, highlights his inability to abide by the law or counsel's directives.

## V.    The Defendant's Detention Is Consistent with Case Law

The defendant's attempts to distinguish recent sex trafficking cases in which defendants were detained pending trial are unavailing. A review of the case law confirms that pre-trial detention in this case is consistent with the rulings in other similar cases—particularly cases in which obstruction was a concern. For instance, in *Epstein*, Judge Berman ordered the defendant detained on dangerousness, obstruction, and risk of flight grounds, despite the fact that the charged conduct—as well as the bulk of the obstructive conduct—took place approximately one decade prior. *See United States v. Epstein*, No. 19 Cr. 490 (RMB) (S.D.N.Y. July 18, 2019) (Dkt. 32). Specifically, Judge Berman found that the defendant's pattern of sexual misconduct, as well as his long history of attempting to intimidate, harass, and buy off potential victims and witnesses, made him a danger to the community. *See id.* Similarly, in *United States v. Kelly*, No. 19 Cr. 286 (AMD) (E.D.N.Y.), the defendant was detained on dangerousness, obstruction, and risk of flight grounds. There, the court found the defendant's dangerousness based on the seriousness of the charges, which dated back more than a decade, and included sexual and physical abuse of minors and adults alike, such as hitting, slapping, punching, and spanking. *Id.*, Dkt. 40 at 7. The court also found that the defendant's obstructive conduct and witness tampering, which related to the matters charged, were grounds for detention. *See id.* at 31-32. Judge Garaufis denied the defendant bail in *United States v. Raniere*, No. 18 Cr. 204 (NGG) (E.D.N.Y.), noting that the defendant posed a danger to the community due to the nature and circumstances of the charged sex trafficking conduct (which did not, at the time of the bail determination, include allegations involving minors) and crediting the Government's representations that NXIVM critics and defectors faced harassment. *See id.*, Dkt. 222 at 13-14; *see also United States v. Ray*, No. 20 Cr. 110 (LJL) (S.D.N.Y. Mar. 2, 2020) (Dkt. 17-1) (detaining defendant in one-victim sex trafficking case after Government argued, among other things, that the defendant intimidated and threatened witnesses). Far from supporting the defendant's position, these cases instead stand for the proposition that sex trafficking defendants—regardless of the age of their victims—are routinely detained pre-trial, especially when they have engaged in repeated obstructive conduct.

## VI.    The New Proposed Bail Conditions Fail to Adequately Address the Risk of Danger or Obstruction

Finally, the new conditions proposed by the defendant fail to adequately protect the community against his dangerousness and ability to interfere with witnesses. Indeed, these conditions do not speak at all to the defendant's risk of obstruction. Further, considering that the defendant's proposed conditions still contemplate him having staff and visitors, they cannot adequately protect against dangerousness. The Government's evidence, as described above and in the Indictment, includes numerous instances of assaults on his employees, as well as the involvement of his high-ranking supervisors, personal assistants, security, and household staff—

all of whom frequently work in his homes—in offense conduct.  Accordingly, the defendant has failed to rebut the presumption in favor of detention.

## VII.    Conclusion

For the reasons set forth above, there are no conditions of bail, or combination of conditions, that would reasonably assure the defendant's appearance and compliance, or the safety of the community.   Accordingly, the defendant's application for bail should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ____/s_____
Meredith Foster
Emily A. Johnson
Madison Reddick Smyser
Christy Slavik
Mitzi Steiner
Assistant United States Attorneys
(212) 637-2310/-2409/-2381/-1113/-2284

cc:    Marc Agnifilo, Esq. (by email)
Teny Geragos, Esq. (by email)