UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>SEAN COMBS,<br><br>                    Defendant. | 24-cr-542 (AS) |

**Reply Memorandum In Further Support Of Mr. Combs' Renewed Motion For Bail**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ........................................................................................................................................ 2

    I.    The Court Should Exercise Its Ample Discretion To Reopen The Bail Hearing ................ 2

        A.  Mr. Combs' Motion Presents New, Material Information ............................................ 2

        B.  Since Filing His Motion, Mr. Combs Has Received Even More New, Material Information Demonstrating The Government Misled The Court About The Video At The Prior Bail Hearings ................................................................................. 4

        C.  The New Evidence Undermines The Government's Initial Proffer ............................ 6

            i.    Communications With Victim-1 Do Not Evidence Sex-Trafficking ................... 6

            ii.   There Is No Second Victim At All ........................................................................ 7

            iii.  Mr. Combs' Did Not Obstruct Grand Jury Witnesses .......................................... 7

        D.  18 U.S.C. § 3142(i) Further Warrants Release ............................................................... 8

    II.   The Government's New Evidence Does Not Justify Detaining Mr. Combs ....................... 9

        A.  Mr. Combs' Use Of "ContactMeASAP," Other PAC Numbers, And Three-Way Calling Is Not An Attempt to Evade Law Enforcement ................................................ 9

        B.  The Communications Do Not Evidence Obstruction .................................................. 10

        C.  Mr. Combs' Other Comments Reflect Protected First Amendment Speech ............. 12

    III.  The Government Cannot Meet Its Burden To Continue Detention ................................. 14

        A.  There Is No Clear And Convincing Evidence Supporting Detention ........................ 14

        B.  There Is No Risk Of Flight ............................................................................................. 14

        C.  The Proposed Updated Bail Conditions Are Sufficient ............................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Gentile v. State Bar of Nevada*,
  501 U.S. 1030 (1991) .................................................................................................................. 13

*Strickland v. Washington*,
  466 U.S. 668 (1984) .................................................................................................................... 11

*United States v. Boustani*,
  932 F.3d 79 (2d Cir. 2019) .......................................................................................................... 15

*United States v. Combs*,
  No. 24-2606 (2d Cir.), Dkt.35 .................................................................................................... 15

*United States v. English*,
  629 F.3d 311 (2d Cir. 2011) ......................................................................................................... 4

*United States v. Esposito*,
  354 F. Supp. 3d 354 (S.D.N.Y. 2019) .......................................................................................... 3

*United States v. Fox*,
  No. 22-1043, 2022 WL 2564600 (2d Cir. July 8, 2022) .............................................................. 1

*United States v. Jackson*,
  823 F.2d 4 (2d Cir. 1987) ............................................................................................................. 9

*United States v. Jeffries*,
  24-cr-423 (NJC) (E.D.N.Y.) ................................................................................................. 1, 15

*United States v. Jones*,
  583 F. Supp. 2d 513 (S.D.N.Y. 2008) .......................................................................................... 3

*United States v. LaFontaine*,
  210 F.3d 125 (2d Cir. 2000) ....................................................................................................... 16

*United States v. Lewis*,
  No. 16 Cr. 212 (LAK), 2016 WL 6902198 (S.D.N.Y. Nov. 16, 2016) .................................. 3, 4

*United States v. Martir*,
  782 F.2d 1141 (2d Cir. 1986) ..................................................................................................... 16

*United States v. Mizell*,
  No. 14-CR-212 (RJS), 2014 WL 12769113 (S.D.N.Y. July 25, 2014) ....................................... 3

*United States v. Murtari*,
  No. 5:07-CR-0428 (DEP), 2008 WL 687434 (N.D.N.Y. Mar. 11, 2008) ................................. 13

*United States v. Persico*,
  No. S 84 CR 809 (JFK), 1986 WL 3793 (S.D.N.Y. Mar. 27, 1986) .......................................... 12

*United States v. Schwamborn*,
  No. 06 Cr. 328 (SJF) (AKT), 2007 WL 9653331 (E.D.N.Y. June 29, 2007) .............................. 6

*United States v. Stephens*,
  447 F. Supp. 3d 63 (S.D.N.Y. 2020) ................................................................................... 3, 8

*United States v. Trump*,
  88 F.4th 990 (D.C. Cir. 2023) ................................................................................................ 13

*United States v. Weigand*,
  492 F. Supp. 3d 317 (S.D.N.Y. 2020) ................................................................................... 15

*United States v. Zhang*,
  55 F.4th 141 (2d Cir. 2022) ................................................................................................. 4, 6

**Statutes**

18 U.S.C. § 3142 ................................................................................................................ passim

18 U.S.C. § 3145 ........................................................................................................................ 4

## INTRODUCTION

The government persuaded Judge Carter to detain Mr. Combs by claiming its video of an 8-year-old incident was evidence of sex trafficking, and by making unsubstantiated claims of witness tampering. The defense rebutted those arguments through its own proffer, but lacked access to key evidence that could corroborate its rebuttal.

Nearly two months later, much has changed. Most importantly, discovery produced after the initial bail hearing—some of it after this motion was filed—shows the narrative the government presented then was fictional. For instance, we now know that even before it arrested Mr. Combs, the government possessed ▬▬▬ confirming his account of the March 5, 2016 incident at the Intercontinental Hotel. But instead of presenting *that* video to the Court, the government submitted an altered video that omitted key scenes and presented events materially out of order. The prosecutors also claimed there was a second victim, but they have never interviewed her, and messages produced in discovery confirm she was not a victim. Likewise, communications produced in discovery show Mr. Combs' contacts with witnesses were innocuous and consistent with his right to participate in his defense by developing potential defense witnesses.

The government's opposition brief confirms that bail should be granted. It spills much ink insisting the Court lacks authority to reopen the bail proceedings—even though the controlling authority clearly establishes the Court's ample discretion to do so. The government also offers no response to many of the cases cited in Mr. Combs' motion—including two other sex trafficking cases in which bail was granted, *United States v. Jeffries*, 24-cr-423 (NJC) (E.D.N.Y.), and *United States v. Fox*, No. 22-1043, 2022 WL 2564600 (2d Cir. July 8, 2022).

Instead, the government reprises the same disingenuous tactics it used in the prior proceedings. It took full advantage of the detention order, scouring Mr. Combs' communications to try to find some actual evidence to substantiate its obstruction allegations. But once again, the government's theatric spin on the evidence omits key context and creates a misleading picture. For instance, it makes much of Mr. Combs' contacts with others but is unable to point to any communications involving actual tampering efforts. And it omits key parts of conversations, which show that Mr. Combs was not pressuring anyone or telling anyone what to say about anything. Likewise, its allegations about MDC rule violations are false or overblown.

There is no legitimate legal basis for continuing to force Mr. Combs to prepare for trial from jail. The government is unable to show that the extremely restrictive proposed conditions are insufficient to prevent any possible danger or obstruction. The revelations about the recent MDC raid only confirm that it is impossible for Mr. Combs to work with his counsel on a confidential basis to develop his trial strategy from the jail. He is entitled to pretrial release under the Bail Reform Act and the Constitution.

## ARGUMENT

**I.      The Court Should Exercise Its Ample Discretion To Reopen The Bail Hearing**

      **A.      Mr. Combs' Motion Presents New, Material Information**

The government's efforts to disparage the significance of the new evidence supporting Mr. Combs' motion (Dkt.69 at 6) are nothing more than empty rhetoric. The evidence cited in Mr. Combs' motion fundamentally undermines the government's prior representations as to "the weight of the evidence" and "the nature and seriousness of the [purported] danger" he presents. 18 U.S.C. § 3142(g)(2) & (4). That is more than sufficient to demonstrate changed circumstances, which is satisfied by showing "the strength of the primary evidence relied upon

by the Government to demonstrate … danger … has been undermined by new information." *United States v. Stephens*, 447 F. Supp. 3d 63, 64 (S.D.N.Y. 2020).

The specific evidence outlined in Mr. Combs' motion was not available at the time of the initial hearings. Although the defense had a general understanding of Mr. Combs' past interactions with individuals like Victim-1, we did not have access to the specific contents of the relevant correspondence, because it was contained on devices that were seized from Mr. Combs but had not yet been produced to him. Thus, the government's claim that "nothing about the content of the text messages between the defendant and Victim-1" were unknown to him at the time of the initial hearing (Dkt.69 at 7) is false. The government does not dispute that other evidence, such as the ▇▇▇▇▇▇▇▇—could not have been known to Mr. Combs during the initial hearings. As just one example, Mr. Combs did not know that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—directly contradicted the government's claims at the detention hearings. Nor did Mr. Combs know that the government was portraying a second woman as a purported victim even though it has never even spoken to her. This is sufficient new information to reopen the hearing. *See, e.g., United States v. Jones*, 583 F. Supp. 2d 513, 513 (S.D.N.Y. 2008) (new documentary evidence that called into question grand jury testimony sufficient to reopen bail hearing).[1]

The government's separate argument that the Court has no inherent authority to reopen the hearing because this case has been reassigned (Dkt. 69 at 13) is baseless. The Court is

---

[1] The cases the government cites does not hold otherwise. *United States v. Lewis*, No. 16 Cr. 212 (LAK), 2016 WL 6902198 (S.D.N.Y. Nov. 16, 2016), *supports* reopening the hearing, as explained *infra*. *United States v. Mizell*, No. 14-CR-212 (RJS), 2014 WL 12769113 (S.D.N.Y. July 25, 2014), is entirely inapposite—it involved a pro se request to reopen bail, which the court summarily denied with no analysis. And the changed circumstance cited in *United States v. Esposito*, 354 F. Supp. 3d 354 (S.D.N.Y. 2019), was not new evidence but the adjournment of the trial date.

3

entitled to consider the basis for the detention order in deciding whether to reopen. We are not asking the Court to rule that Judge Carter erred—which is what *United States v. English* addressed when it observed that a second district court judge is not "authorized to review" the decisions of a previous district court judge. 629 F.3d 311, 320 (2d Cir. 2011) (interpreting "[r]eview" in the bail appeal statute, 18 U.S.C. § 3145). We are simply offering new evidence and additional conditions in response to the reasons Judge Carter gave for detaining Mr. Combs.

As the Second Circuit has clearly instructed: "The Act … leaves the decision to reopen a hearing to the sound discretion of the district court." *United States v. Zhang*, 55 F.4th 141, 148 (2d Cir. 2022). And a "prior detention determination is a natural reference point against which to measure the materiality of new information for the purpose of reopening the hearing." *Id.* Indeed, to suggest otherwise would nonsensically "untether[] the materiality inquiry from those facts that the court found consequential to its earlier detention decision." *Id.*

**B.     Since Filing His Motion, Mr. Combs Has Received Even More New, Material Information Demonstrating The Government Misled The Court About The Video At The Prior Bail Hearings**

On November 13, 2024, the government produced even more material new evidence, including more ▮▮▮▮ of the March 5, 2016 Intercontinental Hotel incident. The government had this ▮▮▮ as early as August 7, 2024, yet only produced it to the defense *after* Mr. Combs filed his renewed motion for bail.[2] Geragos Decl. ¶41-44. The ▮▮▮ consists of ▮▮▮▮ (Geragos Decl. Exs. B & C) ▮▮▮▮▮ used to create the government's principal piece of evidence at the earlier bail hearings—an edited, manipulated version of the video published by CNN (Dkt. 69, Ex. A-1). The new ▮▮▮ supports the

---

[2] The government's own caselaw suggests this is new information under 18 U.S.C. § 3142(f)(2)(B). *See Lewis*, 2016 WL 6902198, at *2 (audio recordings produced after initial bail hearing was "arguably new evidence").

4

defense's argument at the earlier bail hearings and shows the government knowingly mischaracterized and concealed critical facts during those hearings. As an analysis prepared by Forensic Video Analyst Conor McCourt (Geragos Decl. Ex. D) explains, the video the government submitted to the Court omits footage corroborating the defense account, changes the sequence of events in material respects, and does not accurately depict the events.

The government had the more complete ▮▮▮▮▮▮▮ during the initial hearings, but chose not to share it with the Court. Instead, it offered its edited version of the CNN video as its most powerful evidence of danger and obstruction. Mr. Combs argued Exhibit A-1 was not evidence of a "freak off," but depicted a domestic dispute in which he ran down the hall of the hotel to recover his clothes and cellphone. The government invented a different narrative. It argued "our evidence will show that's just not what happened," because "if it's about the clothes and wanting to get the clothes back, which again it's not, why drag the victim back down the hall to the room? And you can see that on the tape. That's what he does." 9/18/24 Tr.12. The government further argued Mr. Combs "throws a vase at her," *id.* Tr.10, which the district court cited in detaining Mr. Combs, *id.* Tr.49. The government apparently stands by those arguments again here, but *they are false, and the government knows it*.

The more complete footage of the incident—in contrast to the government's sensationalized CNN cut—contradicts the government's representations. The video demonstrates that (i) Mr. Combs in fact ran down the hall to retrieve a bag of clothes and a cellphone, (ii) he did not "drag [Victim-1] back down the hall to the room" as the government and its re-sequenced exhibit falsely suggest, (iii) he did not throw a vase at Victim-1 but only its contents (presumably flowers), and (iv) she was not "only … able to leave" once "security staff intervened," *id.* Tr.10. *See* Geragos Decl. Exs. B, C, D. In other words, it is the government

5

whose "explanation is just another cover-up … just more lies." 9/18/24 Tr.12. The true facts corroborate what Mr. Combs has stated all along: The video is not evidence of a coerced "freak off" and sex trafficking, but rather a sad glimpse into a decade-long *consensual* relationship between Mr. Combs and Victim-1.

### C.   The New Evidence Undermines The Government's Initial Proffer

Mr. Combs' new evidence undermines the basis for the initial detention decision, and none of the government's more specific arguments demonstrates otherwise.

#### i.   Communications With Victim-1 Do Not Evidence Sex-Trafficking

*Not one piece of correspondence* that we have reviewed between Mr. Combs and Victim 1—the sole victim in the indictment—corroborates the prosecution's sex trafficking theory or its representations at the previous bail hearings. And the government still does not offer a single piece of actual evidence supporting that allegation. Instead, it reiterates its proffer of cherry-picked citations to purported messages, *see* Dkt.69 at 7. If the messages, in context, actually support the government's argument, why hasn't it produced them to the defense or provided them to the Court?

The government brushes off Victim-1's motives for accusing Mr. Combs as having "no bearing on the question of bail." Dkt.69 at 8. But Victim-1 is the only victim identified in the indictment, and her credibility will be a—if not *the*—key issue at trial. If the jury does not credit her testimony, it will have to acquit him of the sex trafficking count. Her motives thus directly relate to and diminish the "the weight of the evidence against [Mr. Combs]" as well as "the nature and seriousness of the [purported] danger" he presents. 18 U.S.C. § 3142(g)(2) & (4).[3]

---

[3] *United States v. Schwamborn*, No. 06 Cr. 328 (SJF) (AKT), 2007 WL 9653331 (E.D.N.Y. June 29, 2007) (cited Dkt.69 at 8), applied the wrong standard for assessing the materiality of *Giglio* information at a bail hearing, instead of the test for assessing whether evidence is "material" to bail later articulated in *Zhang*, 55 F.4th at 147.

6

####    ii.     There Is No Second Victim At All

The government does not even dispute that despite labeling a second person a "victim" of sex trafficking, it has never even spoken to her. Presumably for this reason, the government also fails to dispute the fact that (i) this individual was voluntarily intimate with Mr. Combs for years, (ii) ███████████████████████████████████████, and (iii) █████████████████████████████████████████████████████████████████████████████████████████ the government now falsely portrays as sex trafficking.

The government simply has no response to these facts. Instead, it doubles down on more misleading representations to the Court. It suggests Mr. Combs is tampering with this individual through financial coercion including "as recently as mid-September 2024." Dkt.69 at 9. Yet the government *knows*, but again *withholds from the Court*, that █████████████████████████████████████████████████████████████████████████████████████████████████████████████ There is simply no financial coercion at all.

####    iii.    Mr. Combs' Did Not Obstruct Grand Jury Witnesses

The government's discussion of Mr. Combs' contacts with Witness-1 (Dkt.69 at 9-10) contain no facts suggesting any tampering. The government does not and cannot dispute that Mr. Combs did not try to influence the individual's grand jury testimony. To the contrary, he confirmed the witness should "███████████." Dkt.61 at 13. Indeed, his contacts with the witness were in coordination with counsel and in connection with a defense investigation. Geragos Decl. ¶12-23.

The government cites "128 phone contacts in total" with Witness-2 (Dkt.69 at 11), but ignores that the content of the correspondence evinces no obstruction. The most the government

7

can offer is that ███████████████████████████████████

███████████████████████████████ *Id.* ███████████████████

████████████████████████ *Id.* █████████████████████████

███████████████████ *Id.* at 12.  That is all, and it is not evidence of obstruction.

    **D.**    **18 U.S.C. § 3142(i) Further Warrants Release**

The government concedes that in considering whether release is "necessary for preparation of the person's defense," the Bail Reform Act requires that a defendant in custody "be afforded reasonable opportunity for private consultation with counsel." 18 U.S.C. § 3142(i)(3); Dkt.69 at 14. The government's breezy assurance that "the MDC's procedures do not infringe on the defendant's constitutional right to effective counsel or to participate in his defense," Dkt.69 at 14, is cold comfort—particularly given what the opposition revealed about how the government has taken advantage of the detention order to violate Mr. Combs' privacy and pierce his privileged communications with his attorneys. The government has (i) listened to his calls including with "family members and *attorneys*," and (ii) reviewed his messages including "with dozens of individuals, including *attorneys*." *Id.* at 18 (emphasis added). The BOP sweep and prosecutors' conduct here will unquestionably have a chilling effect on Mr. Combs' preparations if his detention continues. The government's response—that its actions need only be "reasonable, not perfect," Dkt.72 at 5—provides little comfort. *Cf. Stephens*, 447 F. Supp. 3d at 67 (BOP suspension of visits and calls "impact[ed] the Defendant's ability to prepare" and created "obstacles in attempting to communicate" with counsel, making release "necessary for preparation" of defense).

Defense counsel has repeatedly tried to come to an agreement with the government on various issues, including the sharing of discovery with Mr. Combs and clarifying the Filter Team's protocol. These issues remain unresolved. The government says it will provide a laptop

8

"in short order." Dkt.69 at 15 n.5. But it has been saying that all along, and while it has made a laptop for counsel to bring into the MDC available this week, it still has not provided a laptop for Mr. Combs to have in the facility. The government has done nothing to remedy the issues raised by the motion. To the contrary, it hid from the defense that Mr. Combs' privileged materials and work product were searched and seized. The comment that it "stands ready to engage with defense counsel on these issues if needed," Dkt.69 at 15-16, is hard to take seriously given the history here.

Nor is the suggestion (Dkt.69 at 15) that Mr. Combs should consent to further delaying the trial if detention makes preparation impracticable. He has constitutional and statutory rights to a speedy trial. "[W]hen the government moves for pretrial detention it has an obligation to arrange for the trial as quickly as possible, using 'extraordinary means' if necessary." *United States v. Jackson*, 823 F.2d 4, 8 (2d Cir. 1987). Indeed, *Jackson* "make[s] completely clear that [the Court] will not view this obligation of the government lightly." *Id.*

## II.     The Government's New Evidence Does Not Justify Detaining Mr. Combs[4]

### A.     Mr. Combs' Use Of "ContactMeASAP," Other PAC Numbers, And Three-Way Calling Is Not An Attempt to Evade Law Enforcement

Mr. Combs' use of methods of communication that the government claims violate BOP policy does not evidence obstruction and does not justify detention. It is simply not true that the communications "are designed to evade BOP and law enforcement monitoring." Dkt.69 at 17.

ContactMeASAP.com is a service that defense counsel did not believe was unauthorized by BOP as it is widely used in the prisons. Geragos Decl. ¶36-38. Defense counsel has spoken,

---

[4] At the November 19, 2024 conference, the government agreed it would no longer rely on the notes seized from Mr. Combs during the BOP sweep of MDC in opposing his renewed motion for bail. Mr. Combs accordingly does not address the substance of the notes here.

9

multiple times, with an administrator of this website to confirm that this method of communication (i) utilizes the BOP's TruLincs system, which it does, and (ii) is monitored by BOP officials, which it is. *Id.* The government therefore can read (and even, block) every single message Mr. Combs sends and receives through this service, as was Mr. Combs' understanding. *Id.* Indeed, the government has never once instructed defense counsel to have Mr. Combs refrain from using the service, nor has the BOP. *Id.* ¶39. Mr. Combs is no longer using ContactMeAsap.com as of November 16, 2024. *Id.* ¶40.

The use of other inmates' PAC numbers is also a widespread practice at the MDC and not obstruction. Inmates routinely share their calling minutes with other inmates, and they are limited to 15 minutes per call and one call per hour. *Id.* ¶33-34. The government has presented no evidence suggesting anything Mr. Combs says using other numbers is any different from what he says while using his individual PAC number. If anything, that Mr. Combs needs to resort to sharing minutes demonstrates that the conditions at MDC do not permit an adequate defense preparation. Although this is technically not permitted by BOP policy, the BOP effectively sanctions the practice, and all calls are monitored.

The government claims to have reviewed "multiple calls" in which Mr. Combs has attempted to dial in third parties, but it does not describe how any of these calls could be attempts at obstruction. Dkt.69 at 18. And while it states that the potential contacts in these calls include "members and associates of the Enterprise," *id.*, because the government will not identify these individuals the defense has no way of testing the government's claim. Indeed, ███████ ███████████████████████████████████████ *See* Dkt.69, Ex. H at 10:53.

B.    **The Communications Do Not Evidence Obstruction**

The messages cited by the government reflect Mr. Combs' efforts to investigate and prepare his defense, including with counsel's participation—nothing more.

10



███████████████████████. Dkt.69 at 21. █████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Dkt.69, Ex. M at

3:30-4:00. At the time, the defense team did not even know that this individual was a purported victim. Geragos Decl. ¶6-11. ████████████████████████████

██████ Dkt.69, Ex. N at 4:16. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████[5] *Id.* at 5:17-5:30.

Of course, the government continues to portray the individual in question as a "victim" "who could provide powerful testimony against [Mr. Combs]." Dkt.69 at 21. Mr. Combs' Sixth Amendment rights would be violated if counsel did not adequately conduct a "thorough investigation" into the individual, and any such investigation must be "based, *quite properly*, on informed strategic choices made by the defendant and on information supplied by [him]." *Strickland v. Washington*, 466 U.S. 668, 690 (1984) (emphasis added). Indeed, "what investigation decisions are reasonable depends critically on such information." *Id.* Accordingly, courts are "mindful of [a pre-trial detainee's] need to make telephone calls to potential witnesses," and other individuals who might be useful to the defense. *United States v. Persico*,

---

[5] The government repeatedly quotes Mr. Combs' use of the phrase "████████████████" to suggest some nefarious motive on his part. Dkt.69 at 20-21. But that turn of phrase is simply part of Mr. Combs' vernacular, as can be heard throughout many of the recordings.

11

No. S 84 CR 809 (JFK), 1986 WL 3793, at *2 (S.D.N.Y. Mar. 27, 1986). Mr. Combs' comments to that effect do not evidence obstruction.

The government completely mischaracterizes the content of ▇▇ on Exhibit L. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt.69, Ex. L at 1:33. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 1:38. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Geragos Decl. ¶25-26. ▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt.69, Ex. L at 1:52-1:59. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[6] the music video for which was never released. *Id.* at 2:13; Geragos Decl. ¶27-30. The quotes cited by the government tellingly include no reference to Victim-1, because they aren't references to any videos or public relations strategy meant to discredit her.

### C. Mr. Combs' Other Comments Reflect Protected First Amendment Speech

The government also cites comments reflecting classic protected speech. The government claims using "public statements to alter public perception and "▇▇▇▇▇▇ ▇▇▇▇▇," or "▇▇▇▇▇▇▇▇▇▇," is obstructive. Dkt.69 at 19. It argues the same regarding establishing a narrative about "▇▇▇▇▇▇▇▇▇▇▇," Mr. Combs' belief that this is "▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇," and his persona as a "▇▇▇▇▇▇▇." *Id.* at 19, 20.[7]

---

[6] https://www.youtube.com/watch?v=9z_qMz42zPo.
[7] Grasping at straws, the government makes much of Mr. Combs' request that his family make an Instagram post to celebrate his birthday. (Dkt.69 at 19-20). We do not believe that a social media post showing his family's love and birthday wishes violated the Court's order, even if it presents him in a more positive light than the overwhelmingly unfavorable media coverage which has dominated the public narrative about Mr. Combs for the past year.

12

"Without question," a pretrial detainee "does not necessarily forfeit … his or her First Amendment rights." *United States v. Murtari*, No. 5:07-CR-0428 (DEP), 2008 WL 687434, at *4 (N.D.N.Y. Mar. 11, 2008).  Indeed, as the Supreme Court has held, "in some circumstances press comment is necessary to protect the rights of the [accused]," because a defense does "not begin inside the courtroom door" and one "cannot ignore the practical implications of a legal proceeding" for the accused.  *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1042, 1058 (1991).  The cited conduct does not "demonstrate[] any real or specific threat to the legal process, and [Mr. Combs'] statements have the full protection of the First Amendment."  *Id.* at 1058.

*Gentile* considered the appropriate standard for speech restrictions on a lawyer.  But Mr. Combs, who is "a criminal defendant" and "is presumed to be innocent," has "a greater constitutional claim than other trial participants to criticize and speak out against the prosecution and the criminal trial process that seek to take away his liberty."  *United States v. Trump*, 88 F.4th 990, 1008 (D.C. Cir. 2023).  His comments—which were not even made but merely anticipated—involve thoughts "that this prosecution is politically motivated or that he is innocent of the charges against him," which would constitute protected speech.  *Id.* at 1028.

To the extent the Court remains concerned that such statements might interfere with a fair trial, the remedy is not to detain the defendant, which would chill free speech. Instead, it is to screen potential jurors through voir dire.  Moreover, the Bail Reform Act authorizes courts to release pre-trial detainees on condition that they "avoid all contact with an alleged victim … and with a potential witness," 18 U.S.C. § 3142(c)(1)(B)(v), which mitigates the specific obstruction concerns raised by the government.

### III. The Government Cannot Meet Its Burden To Continue Detention

#### A. There Is No Clear And Convincing Evidence Supporting Detention

The government claims its detention request is supported by "witness testimony, communications, photos and videos, police reports, and other materials." Dkt.69 at 22. But it has produced no such evidence. The only "testimony" in the bail record confirms that ███████████████████████████████████████████████████████████████ ███████████████████████. Dkt.61 at 13-14. The "communications" it continues to rely on include innocuous "messages sent by [purported] Victim-2," Dkt.69 at 9—an individual the government *has never spoken to*, and one it knows isn't a victim. Dkt.61 at 12. And its pièce de résistance—the "video" involving the only specific "victim" mentioned in the indictment—is not evidence of sex trafficking, as explained. *See supra* Point I.B.

The government again reiterates the indictment's allegations (Dkt.69 at 22), but offers no response to the caselaw illustrating why those allegations are insufficient to meet its burden. *See* Dkt.61 at 7-8.

#### B. There Is No Risk Of Flight

Mr. Combs fully intends to face these charges. The prospect of a conviction does not materially change his incentives here, where his reputation has already been destroyed by the government's allegations and aggressive and deceptive media tactics, and can only be rebuilt by winning at trial. As the government concedes, Mr. Combs "took steps to mitigate the … risk of flight before the Indictment," Dkt.69 at 24, and there is no credible risk that he will attempt to flee if committed to the 24/7 custody of qualified security personnel.[8]

---

[8] The government is wrong to suggest that Mr. Combs' communications demonstrate he has "continued" to try to evade law enforcement." Dkt.69 at 16. He has never attempted to evade law enforcement.

14

C.      **The Proposed Updated Bail Conditions Are Sufficient**

The proposed conditions specifically mitigate any possible concerns. The government cites purported obstruction carried out through phone and email. But under the proposed conditions, Mr. Combs will have *less access*—in fact *no access*—to such means of communication other than to communicate with counsel. Moreover, family visits will require prior approval, and Mr. Combs would consent to security personnel monitoring the visits and video monitoring if necessary. Tellingly, the government does not even attempt to distinguish the precedent supporting release on comparable conditions in similar cases. *See* Dkt.61 at 5-6. Indeed, the government consented to release on conditions of two defendants in the *Jeffries* case since the initial bail hearings here.

The government is also wrong that *United States v. Boustani*, 932 F.3d 79 (2d Cir. 2019), favors detention, as explained in Mr. Combs' reply on appeal, which he incorporates here. *See United States v. Combs*, No. 24-2606 (2d Cir.), Dkt.35 at 9-10. *Boustani* stated a private security arrangement "may be appropriate where the defendant is deemed to be a flight risk [or danger] primarily because of his wealth." 932 F.3d at 82. That is exactly what the government has argued and alleged in this case. Dkt.69 at 9 (citing "financial coercion" and "significant financial benefits"); *id.* at 24 (arguing Mr. Combs "has nearly limitless resources to facilitate his flight"); Indictment (alleging racketeering activity fueled by the "employees, resources, and influence of [Mr. Combs'] multi-faceted business empire"). *Boustani* cannot foreclose release where the "Government … repeatedly emphasize[s] [the defendant's] wealth in explaining the risk of flight." *United States v. Weigand*, 492 F. Supp. 3d 317, 319 (S.D.N.Y. 2020).

\*    \*    \*

Throughout these proceedings, the government has sought detention without actual proof, only to later produce evidence revealing the true—materially different—facts. Because the

15

"accuracy" of its proffers are "in question," they should be disregarded, and the Court should only rely on "the underlying evidence or evidentiary sources." *United States v. Martir*, 782 F.2d 1141, 1147 (2d Cir. 1986); *accord United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

## **CONCLUSION**

For the forgoing reasons, the Court should reopen the hearing and grant bail on the proposed conditions, or any other conditions the Court deems appropriate.

Date: November 21, 2024

Respectfully Submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Shapiro Arato Bach LLP
1140 Ave of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anthony Ricco
Law Office of Anthony L. Ricco
20 Vesey Street
New York, NY 10007
(212) 791-3919
tonyricco@aol.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com

16