UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SEAN COMBS,<br><br>                    Defendant. | 24-cr-542 (AS) |

## **DECLARATION OF TENY GERAGOS KRISHNASWAMY**

I, Teny Rose Geragos Krishnaswamy, declare as follows:

1. I am a partner at Agnifilo Intrater LLP, counsel for Sean Combs. I am licensed and in good standing to practice law in the States of New York and California and I am also admitted to the United States District Court for the Southern District of New York.

2. The declaration is based on my personal knowledge of the facts stated herein, and is submitted in reply to the government's Response (Dkt. 69) of Mr. Combs' Renewed Motion For Bail (Dkt. 60).

*The Defendant and Defendant's Counsels' Efforts to Interview Witnesses*

3. Mr. Agnifilo and I began interviewing witnesses for this matter in April 2024, after the Department of Homeland Security's raids at two of Mr. Combs' residences and on his person.

4. Mr. Agnifilo stated examples of these interviews at the bail hearing on September 17, 2024:

- "So Ms. Geragos and I have interviewed a half a dozen of these males. We have been as busy as the government has over the last six months." *See* 9/17/24 Tr. at 42.

- "They talk about other violence in their bail letter, and they are talking about a kidnapping from 2011, and I know exactly what they are talking about because we interviewed – I know who the person was who was allegedly kidnapped. Ms. Geragos and I interviewed her in Los Angeles. We took a statement from her. She certainly didn't use the word

- 'kidnapping' with us. I won't get into what she did say, but let's suffice it to say there is another side to that story, and one day that other side might be told." See 9/17/24 Tr. at 43-44.

- "Are we going to continue to interview witnesses? Of course, we are. We take pains to stay out of the government's way. We don't know who the grand jury witnesses are, you know. And honestly – I won't get into the details. If I think they are talking to someone, I will pull up short. I don't want any problems. You know, do I want to speak -- we both know pretty much everything, you know." See 9/17/24 Tr. at 52.

5.  After Mr. Combs' indictment on this matter, the government and I began negotiations over the Protective Order. Because we had protracted discussions, we did not come to agreement on terms until on or about October 4, 2024. (See Dkt. 25: Letter Motion attaching Protective Order.) This Court entered the agreed-upon Protective Order on or about October 7, 2024. That evening, the government produced their first production of discovery material to the defense. This production included the government's search warrants and their supporting affidavits.

6.  Even without the benefit of the government's discovery, Mr. Agnifilo's and my investigation continued. In the beginning of October, our investigator traveled to the [REDACTED] to interview multiple witnesses—he had planned to interview people in [REDACTED]

[REDACTED]

[REDACTED]

7.  On October 2, 2024, our investigator was in [REDACTED] interviewing a witness. He then traveled to [REDACTED] to interview [REDACTED] we believed may have important information related to the investigation. On October 3, 2024, I met with my client at MDC and discussed [REDACTED] with him. We discussed [REDACTED]

[REDACTED]

2

(*See* Dkt. 69 at 21.) This individual who, as the government states "has previously publicly detailed the physical abuse she suffered" remained romantically involved with Mr. Combs on and off until less than a month before Victim-1's filed her November 2023 lawsuit. (*Id.*) ▮, I sent Mr. Agnifilo and our investigator the following text message:



8.  The next day, our client made the call in which the government transcribes, ▮ (*See* Dkt. 69, Ex. M at 3:04-3:57) (Oct. 4, 2024 call)).

9.  The last part of the sentence, which is not included in the government's brief, but is in the exhibit, states: ▮ (*Id.* at 3:30-3:57.)

10. Ultimately, ▮.

3

11. On October 7, 2024, we received the government's search warrant affidavits. It became clear to me from ▇▇▇ that Victim-3 was considered an alleged victim by the government and that, ▇▇▇. With this information from the search warrant affidavits, ▇▇▇ Therefore, after October 7, 2024, I have not reviewed any discovery where Mr. Combs states on any calls, or in any emails to anyone to contact Victim-3. Instead, Mr. Combs focuses on potential witnesses to address Victim-3 and possible allegations. (*See* Dkt. 69, Ex. N at 4:10-4:24 (Oct. 14, 2024 call). There was never any instruction whatsoever that Mr. Combs, or counsel, would "blackmail" Victim-3.

### Witness-1

12. The government's Response addresses Mr. Combs' contact with Witness-1.

13. ▇▇▇ the search warrant affidavits received on October 7, 2024, state:



14. ▇▇▇, who the government describes as Witness-1 in Document Number 69. Prior to reviewing the government's search warrants, I was unaware that the government put Witness-1 in the grand jury ▇▇▇

4

███████████████████████████████████████████████

███████████████████████████████████████████████

15. I first learned of Witness-1 ███████████, when Marc Agnifilo and I were in Miami, Florida meeting with our client at his house.

16. As part of our defense investigation, we have discussed several individuals with whom Mr. Agnifilo and I determined we should interview as part of our defense investigation. ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████. The photograph is below:

███████████

17. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████

18. On June 25, 2024, Mr. Agnifilo and I traveled to █████████ to continue our investigation. ███████████████████████████████████████

███████████████████████████████████████

███████████████████ resident.

███████████ Mr. Agnifilo and I met with Mr. Combs at his home in Los Angeles. Mr. Combs called Witness-1 at ███████, ████ ████████████████████████████████████. Mr. Combs made this phone call in our presence ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████.

███████████████████████████████████████

████████████████████████████.

21. I memorialized this conversation in writing at the time ████████.

22. On June 27, 2024, after ████████████████████ Mr. Agnifilo and I ██████████████████████████████████

---

[1] On November 20, 2024, the government made available for inspection ████████ ████████ Victim-1 and Witness-1, which corroborates this witness's statement.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

23. On July 8, 2024, I believe I contacted Witness-1 for his attorney's name and contact information. Mr. Agnifilo and I spoke to Witness-1's attorney, who declined to make his client available for an interview.

*Individual-1*

24. This Individual, as the government states, is Mr. Combs' "▓▓▓▓." (*See* Dkt. 69 at 20.)

25. The government writes that Mr. Combs said he has "▓▓▓▓▓▓▓▓" (*Id.*) This has nothing to do with "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." (*Id.*) He goes on to talk about "▓▓▓▓▓▓▓▓▓" There is no indication in this call, or any others that I've received in discovery and listened to, that he wanted to distribute "▓▓" or videos of Victim-1 to the media. Instead, he says "▓▓▓▓▓▓▓▓▓▓▓▓▓." (Dkt. 69, Ex. L.)

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

27. Mr. Combs says next, "▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Here, Mr. Combs is referencing an unreleased music video of a song called Stay: Part 1 from his September 2023 Album called Love Album. He stated, "▓▓▓▓▓▓" but "▓▓▓▓▓."

28. It is my understanding that "▓▓▓" i.e. dropping songs and music videos anonymously, is regular practice in the music industry.

29. It is also my understanding that the music video for this song was never "▓▓▓."

30. I reviewed this music video on the evening of November 20, 2024, and can confirm that this music video does not reference Victim-1.

7

31.     Because Individal-1 is Mr. Combs' longtime videographer, I had asked him to provide me with all videos he had access to of Victim-1, as these videos are responsive to Request No. 23 in the Corporate Records Subpoena. He provided me with these videos and on October 29, 2024, I produced 13 videos "regarding" Victim-1 (some depicting her, and one depicting my client regarding her) to the government as part of our rolling subpoena compliance.

32.     On November 12, 2024, Individual-1 contacted me and stated that the lead case agent approached him and that they were going to meet the next day. I instructed my client immediately to cease contact with Individual-1.

### *BOP Prison Calls*

33.     It is my understanding that BOP inmates receive 300 minutes of phone calls per month, with an additional 100 minutes per month in November and December. (*See* https://www.bop.gov/locations/institutions/bro/bro_ao-handbook.pdf?v=1.0.0 at 10.) It is also my understanding, and my experience based on phone calls with my client, that calls are limited to 15 minutes in duration (*id.* at 26) and that the phone system allows inmates to make one call per hour.

34.     As I understand it, inmates will frequently use other inmates' minutes to allow for (1) more than one call in a one-hour period; and (2) more phone calls once their 300 minutes expire.

### *CONTACTMEASAP.COM*

35.     After Mr. Combs was incarcerated, the government advised me that they were aware of many contraband cellular devices in the MDC, and asked if I would change Mr. Combs' iCloud passwords. I agreed. To date, I have been unable to do so, but have represented to the prosecutors that Mr. Combs does not have, nor does he use, a contraband cellular device.

8

36. ContactMeAsap.com and prison calls have been monitored, recorded, and reviewable by SIS officers at the MDC. These communications (with the exception of legal video teleconferences) have subsequently been produced to the government.

37. Since Mr. Combs has been incarcerated, I have been aware of his use of ContactMeAsap.com, though I did not have an understanding that this was unauthorized. I have spoken, multiple times, with an administrator of this website, and confirmed that this method of communication utilized the Bureau of Prisons' TruLincs/Corrlinks system and was monitored by BOP officials, who are able to monitor every message Mr. Combs sends and receives.

38. My understanding has now been verified through the government's discovery—because we have received Mr. Combs' ContactMeAsap.com messages.

39. The government never instructed me to refrain from having him use this service, nor has the BOP.

40. Mr. Combs is no longer using ContactMeAsap.com as of November 16, 2024.

*Additional Video Evidence from the Intercontinental Hotel Incident*

41. On November 13, 2024, the government produced their sixth production of discovery to the defense. Included in the production was USAO_00937645 – USAO_00937646, which ███████████████████████████████████████████████████ from the Intercontinental hotel incident in March of 2016. ███████████████████████████████████████

42. Attached to this Declaration as Exhibit B is USAO_00937645.

43. Attached to this Declaration as Exhibit C is USAO_00937646.

44. On November 15, 2024, I asked the government when they came into possession of ▇▇▇▇▇. The government replied that they came into possession of ▇▇▇ on August 7, 2024.

### Conor McCourt

45. On November 15, 2024, we retained Conor McCourt as an expert. In connection with his retention on this matter, we provided him with the Protective Order entered in this case, Exhibit A-1 from the Government's previous bail filings, and USAO_00937645 – USAO_00937646, ▇▇▇▇ produced to us in discovery on November 13, 2024.

46. At my and my co-counsel's direction, Mr. McCourt created the video, attached to this Declaration as Exhibit D, comparing Exhibit A-1 of the Government's Bail Response with USAO_00937645 (Exhibit B) – USAO_00937646 (Exhibit C).

47. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:     November 21, 2024
           New York, NY

                                                    /s/ Teny Geragos
                                                    Teny Rose Geragos, Esq.