Shapiro Arato Bach LLP

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

November 25, 2024

**VIA ECF**

Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs,* 24-cr-542 (AS)

Dear Judge Subramanian:

      Defendant Sean Combs respectfully submits this letter in response to the Court's request at the November 22, 2024 hearing for further briefing on the contours of "the types of communications that Mr. Combs is able to engage in, consistent with this Court's order and Rule 23.1," and the First and Sixth Amendments. Tr.62.

      For months and months, government agents, plaintiffs' attorneys, and others with questionable motives have been polluting the airwaves with false and outrageous claims about Mr. Combs. This nonstop drumbeat of negative publicity has destroyed his reputation and will make it virtually impossible for him to receive a fair trial. Mr. Combs is not required to sit idly by and acquiesce to all of this. He has a right to a fair trial and a constitutional right to speak out on his own behalf. The government's arguments that asking his children to post birthday wishes on Instagram and that he is not entitled to publicly express his opinion that this prosecution is racially motivated are, quite simply, an unconstitutional effort to silence him.

      Mr. Combs "sought only to stop a wave of publicity he perceived as prejudicing potential jurors" and "injuring his … reputation in the community." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1043 (1991) (plurality opinion). His communications directed at the public are protected speech under the First Amendment and cannot justify denying bail—or indeed, preventing him from engaging in constitutionally protected public relations efforts, so long as they comport with the carefully tailored legal limits imposed by the controlling authorities described below.

    **I.**  **Mr. Combs' Communications Regarding Potential Public Statements And Social Media Posts Constitute Speech Protected By The First Amendment**

        **A. The "Most Demanding Scrutiny" Applies When Deciding The Issue**

      In *United States v. Trump*, the D.C. Circuit "assume[d] without deciding that the most demanding scrutiny applies to" pre-trial speech restrictions on criminal defendants, "and that

Hon. Arun Subramanian
November 25, 2024

only a significant and imminent threat to the administration of criminal justice will support restricting [a defendant's] speech."  88 F.4th 990, 1008 (D.C. Cir. 2023).  The Court considered but rejected application of the less exacting "substantial likelihood of material prejudice" standard articulated in *Gentile v. State Bar of Nevada*, which considered a professional disciplinary sanction on a criminal defense lawyer pursuant to an ethical rule.  *Gentile*'s standard relied in part on lawyers' special duties and roles as officers of the court, *see* 501 U.S. at 1066-1074, and the Supreme Court has never decided what standard of review applies to a criminal defendant's own speech.  Because Mr. Combs is "a criminal defendant" and "is presumed to be innocent," he has "a greater constitutional claim than other trial participants"—including counsel—"to criticize and speak out against the prosecution and the criminal trial process that seek to take away his liberty."  *Trump*, 88 F.4th at 1008.  Accordingly, the Court should apply *Trump*'s heightened standard when considering Mr. Combs' speech here.  For the same reasons, Local Criminal Rule 23.1 (and this Court's gag order), which employs the "substantial likelihood" formulation, is only enforceable to the extent it withstands *Trump*'s higher level of scrutiny with respect to the speech at issue—although, to be clear, as explained at the November 22 hearing and *infra*, the communications at issue would not violate the Court's order or the Local Rule anyway.[1]

To the extent the government disagrees as to the standard, it is no response to rely on *Gentile*'s observation "that the speech of *those participating before the courts* could be limited" because of a supposed "distinction between participants in the litigation and strangers to it."  501 U.S. 1072-73.  This argument is most apt when applied to those who voluntarily invoke the court's jurisdiction.  But "[d]efendants are involuntarily present and thus cannot be said to consent to a restriction on their speech."  Erwin Chemerinsky, Lawyers Have Free Speech Rights, Too: Why Gag Orders on Trial Participants Are Almost Always Unconstitutional, 17 LOY. L.A. ENT. L.J. 311, 324 n.89 (1997).  Indeed, "[a] criminal defendant awaiting trial in a controversial case has the full power of the government arrayed against him and the full spotlight of media attention focused upon him."  *United States v. Ford*, 830 F.2d 596, 599 (6th Cir. 1987).

### B. The Government Must Satisfy A Heavy Burden

The Second Circuit has held that "*per se* proscriptions of certain types of speech" in the trial context are "overbroad and violate[] the First Amendment."  *United States v. Cutler*, 58 F.3d 825, 835 (2d Cir. 1995).  Thus, when enforcing rules such as Local Criminal Rule 23.1, the Court must examine the specific speech in light of the record evidence to determine if it risks undermining a fair trial.  *Id.*[2]  Local Criminal Rule 23.1(d)'s general categories of presumptively

---

[1] In *United States v. Ford*, the Sixth Circuit applied an even more exacting "clear and present danger" test to a gag order on a criminal defendant.  830 F.2d 596, 598 (6th Cir. 1987).  *Ford* found "no legitimate reasons for a lower threshold standard for … defendants … seeking to express themselves."  *Id*.  Although *Trump* rejected *Ford*, Mr. Combs nevertheless preserves the argument that *Ford*'s standard applies.  The Court need not decide these issues, however, because Mr. Combs' speech is clearly protected under the less exacting standard articulated in *Trump*, as well as the even lower "substantial likelihood" standard outlined in *Gentile*.

[2] *Cutler* interpreted a previous iteration of E.D.N.Y. local rules that "proscribe[d] generally any statements by counsel that 'a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation ..., if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.'"  58 F.3d at 835.  That standard restricted even more speech than the "substantial likelihood" language used in current Local Criminal Rule 23.1 and the Court's gag order, and is unconstitutional under *Trump*.

Hon. Arun Subramanian
November 25, 2024

prejudicial speech are not dispositive of the question. *See id.* Regardless, as explained at the November 22 hearing and further *infra*, the communications at issue do not violate the Rule.

The party seeking to justify a speech restriction bears "the heavy burden of demonstrating, in advance of trial, that without prior restraint a fair trial will be denied." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 569 (1976). The record must show the specific "words have an 'extraordinary power to undermine or destroy the efficacy of the criminal justice system.'" *Trump*, 88 F.4th at 1013 (quoting *Gentile*, 501 U.S. at 1075). It must "establish[] the imminence and magnitude, as well as the high likelihood, of harm to the court's core duty to ensure the fair and orderly conduct of a criminal trial and its truth-finding function." *Trump*, 88 F.4th at 1016. The Court's findings must "appropriately be grounded both in record facts and 'common human experience.'" *Id.* at 1014 (quoting *Nebraska Press Ass'n*, 427 U.S. at 563). Where risk of prejudicing the jury pool is at issue, the record must "establish a nexus between the [speech] and the potential for prejudice to the jury venire." *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 494 (5th Cir. 2013).

In making these determinations, the Court should consider "such factors as the [speech's] phrasing, timing, setting, and meaning." *Trump*, 88 F.4th at 1027; *see also Marceaux*, 731 F.3d at 494 n.4 (considering timing); *Gentile,* 501 U.S. at 1044 (explaining that exposure to information concerning a case six months before trial is less likely to result in prejudice because it will "fad[e] from memory long before the trial date"). The Court should also consider the forms of media at issue and their circulation, as "the mere presence of extra-judicial comments in some forms of media does not, by itself, establish the potential for prejudice of the jury venire without a more thorough examination of that potential." *Marceaux*, 731 F.3d at 494 n.4; *United States v. Brown*, No. CR 23-00090 SOM, 2024 WL 166862, at *5 (D. Haw. Jan. 16, 2024) (no restriction justified in part because "there has been no showing of what percentage of the jury pool even reads any news outlet or other source through which prospective jurors might be exposed to pretrial publicity").

**C. The Speech At Issue Does Not Risk Undermining A Fair Trial**

The government's cited examples of Mr. Combs' speech do not even come close to "the side of the line that's improper illegal conduct." Tr.15. Rather, the examples concern core protected speech.

The government argues that Mr. Combs' children's social media posts "showing [them] gathered to celebrate [his] birthday" evidence obstruction and violate this Court's gag order. Dkt.69 at 19-20. The government further argues that statements that Mr. Combs is a "revolutionary" and that the prosecution is "racist" could be obstructive. While the government conceded that a "PR campaign or a marketing strategy … [is] unobjectionable," it claims the speech is punishable here because Mr. Combs made comments such as wanting to "reach for this jury. I just need one." Tr.15. In other words, the government argues it is "the defendant's stated intent that he wants to influence the jury [that] is problematic." Tr.16.

The cited examples do not even remotely implicate the types of possibly prejudicial speech that courts have previously considered. This is not "speech about witness testimony or cooperation [that] imperils the availability, content, and integrity of witness testimony." *Trump*,

Hon. Arun Subramanian
November 25, 2024

88 F.4th at 1013. Nor does the speech target "known or reasonably foreseeable witnesses … concern[ing] their potential participation in the criminal proceeding." *Id.* at 1012; *cf. United States v. Bankman-Fried*, No. 23-6914-cr (2d Cir. 2023), Dkt.32.1 (affirming order revoking bail because "speech to commit a criminal offense such as witness tampering," which requires "proof of persuasion that is 'corrupt,'" "falls outside the zone of constitutional protection"). Mr. Combs did not "ma[k]e public statements in an attempt to discredit testimony for the prosecution" or "ma[k]e evidence available to the news media." *Sheppard v. Maxwell*, 384 U.S. 333, 359-60 (1966). The speech does not concern any attempt to publish "court-ordered discovery." *Gentile*, 501 U.S. at 1073 (discussing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)). And this is not a case where "the parties' expression was itself obstructive." *Trump*, 88 F.4th at 1015. Nor does the speech involve other sensitive considerations that have justified restrictions, such as the publishing of minor victims' images or content "likely to inflict … public ridicule and embarrassment" on victims. *United States v. Terranova*, No. 23-CR-516 (KAM), 2024 WL 4295508, at *16 (E.D.N.Y. Sept. 26, 2024).

Moreover, the speech at issue does not come near any of Local Criminal Rule 23.1(d)'s categories of presumptively prejudicial speech. It does not concern "[i]nformation … likely to be inadmissible at trial." Rule 23.1(d)(6); *see also Sheppard*, 384 U.S. at 360 (discussing risk of information "disseminated … [that was] clearly inadmissible at trial"). Nor does it concern "[t]he identity, testimony, or credibility of prospective witnesses." Rule 23.1(d)(4).[3] And it falls far short of any type of threat likely to risk prejudicing the trial. *See Trump*, 88 F.4th at 1010 ("Mr. Trump issued a warning: 'IF YOU GO AFTER ME, I'M COMING AFTER YOU!,'" and targeted grand jury witness by stating he "shouldn't [testify]," that he was a "fail[ure]," and a "loser").

Mr. Combs' speech falls on the opposite side of the line and is clearly protected. Anticipated speech about being a "revolutionary" or about a "racist" prosecution involves thoughts "that this prosecution is politically motivated or that he is innocent of the charges against him"—core protected speech. *Trump*, 88 F.4th at 1028. Indeed, "criticizing the … Department of Justice, and the [prosecutors]," is not proscribed. *Id.* To the contrary, "[c]riticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). Mr. Combs' anticipated "words were directed at public officials and their conduct in office. There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment." *Gentile*, 501 U.S. at 1034 (plurality opinion).

The plurality opinion in *Gentile* is further instructive on this point. The plurality concluded that statements "that the State sought the indictment and conviction of an innocent man as a 'scapegoat'"—likening the police department to "crooked cops"—did not "demonstrate[] any real or specific threat to the legal process." 501 U.S. at 1034, 1058. Rather, the plurality concluded such statements "have the full protection of the First Amendment." *Id.* at 1058. Such "criticism questions the judgment of a … public prosecutor," and because "[o]ur

---

[3] To the extent Local Criminal Rule 23.1(d)(7) proscribes "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case," that is clearly too restrictive when applied to a defendant's own statements. *See, e.g.*, *Trump*, 88 F.4th at 999 (noting that district court's order did not prohibit "asserting that Defendant is innocent of the charges against him").

Hon. Arun Subramanian
November 25, 2024

system grants prosecutors vast discretion at all stages of the criminal process," the "public has an interest in its responsible exercise." *Id.* at 1036.

As for Mr. Combs' children's birthday wishes, that message was entirely innocuous.[4] It could not possibly produce an "interference [that is] material." *Trump*, 88 F.4th at 1027. Nor was the message made "with the knowledge that such interference is highly likely to result," or made "intend[ing] to delay or obstruct the justice process." *Id.* It is no response to cite Mr. Combs' subjective hope that his birthday message would reach the public—including potential jurors. Mr. Combs' reputation is drowning in a sea of negative publicity prompted by the government's prosecution here as well as dozens of civil suits, and he "is free to defend himself in the Court of public opinion," which is all the statements cited by the government evidence. *Terranova*, 2024 WL 4295508, at *16. Indeed, as noted in Mr. Combs' reply, a core assumption underlying *Gentile*—and the First Amendment—is that "press comment is [sometimes] necessary to protect the rights of the [defendant]" and "to defend [his] reputation," because a defense does "not begin inside the courtroom door" and one "cannot ignore the practical implications of a legal proceeding" for the accused. 501 U.S. at 1042-43, 1058 (plurality opinion). Even in a case where the speech at issue directly targeted known jurors, the Second Circuit did not uphold restrictions on the speech. *See United States v. Quattrone*, 402 F.3d 304, 312 (2d Cir. 2005) (finding order prohibiting press publication of jurors' names and addresses during pendency of trial to be a "prior restraint" in violation of the First Amendment).

The government is essentially arguing for a standard in which the entire Press community—and civil plaintiffs and the government itself—can wage war against Mr. Combs' reputation but Mr. Combs can't even try to influence public opinion himself in response. That is simply not the law.

### D. Less Restrictive Alternatives To Detention Adequately Mitigate Any Risk

Even if the speech at issue comes close to the line—which again it doesn't—before deeming it impermissible and punishing Mr. Combs, the Court must consider less restrictive alternatives. Alternatives such as searching voir dire and emphatic jury instructions are more than adequate here, and trial courts should resort to these alternatives whenever possible prior to gagging speech. *See Nebraska Press Ass'n*, 427 U.S. at 563-64. Or, as the Second Circuit has held, "each [alternative measure] must be explored and ultimately rejected as inadequate—individually and in combination—as a remedy for prejudicial pretrial publicity," because "[s]ome combination of preventive measures short of a restraining order usually achieves this goal." *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 611 (2d Cir. 1988).

With trial still months away, less restrictive alternatives are clearly available to mitigate any purported risk that the cited statements will undermine a fair trial. *Brown*, 2024 WL 166862,

---

[4] A separate right is also implicated by the birthday posts, for "a parent's interest in maintaining a relationship with his or her child is protected by the Due Process Clause" and is "a fundamental liberty interest." *United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005).

5

Hon. Arun Subramanian
November 25, 2024

at *3-4 ("The well-established doctrines on jury selection and the court's inherent management powers provide an alternative, less restrictive, means of ensuring a fair trial.").[5]

### E. The Government's Stated Rule Is Overbroad and Vague

At the hearing, the government was unable to answer the Court's question concerning the meaning of obstruction. And it had no response to the fact that its cited obstruction precedents are clearly distinguishable here. *See* Tr.28 (discussing *United States v. LaFontaine*, 210 F.3d 125 (2d Cir. 2000) and *United States v. Gotti*, 794 F.2d 773 (2d Cir. 1986)). Indeed, when asked, the prosecutor said "obstruction, I think, it's broad. I don't think it has to be just what fits into the narrow categories of statutes in Title 18," Tr.14, but failed to cite any authority for its argument, and failed to articulate any clear or ascertainable standard. The government's position invites the Court to adopt a test so vague that it "fails to give ordinary people fair notice of the conduct it punishes," and "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *accord Sessions v. Dimaya*, 584 U.S. 148, 155-56 (2018). It bears emphasis that in *Gentile*, five justices agreed that the Nevada Supreme Court Rule at issue was unconstitutionally vague. 501 U.S. at 1082-83 (O'Connor, J., concurring). And, in addition to being unconstitutionally vague, the government's proposal would chill otherwise constitutionally protected speech.

### II. Mr. Combs' Other Conduct Is Protected By The Sixth Amendment

As outlined in Mr. Combs' reply brief, the other communications cited by the government reflect Mr. Combs' efforts to investigate and prepare his defense, including with counsel's participation—nothing more. His intent in requesting contacts with potential witnesses, for example, is clear from the record: "I'm telling you … to hook up with [my lawyer]," because "[t]hat's not … part of our job …. I'm not obstructing no laws, nothing." Dkt.69, Ex. N at 5:17-5:30. The statements cited by the government evidence neither an obstructive intent nor actual obstruction.

To be clear, if released Mr. Combs will accept any condition that instructs him to "avoid all contact with an alleged victim … and with a potential witness," as permitted by the Bail Reform Act. 18 U.S.C. § 3142(c)(1)(B)(v). In other words, despite having a "constitutional right at the end of the day to assist his lawyers in getting witnesses," "Mr. Combs will avoid all contact, directly and indirectly"—other than through counsel—"with any persons who may be a victim or witness in the investigation or prosecution." Tr.48; *see also Trump*, 88 F.4th at 1010 ("Mr. Trump … accept[s] his pretrial release condition that he cannot speak to witnesses in the case about political matters or otherwise.").

While detained, however, and in the absence of such a condition, the status quo remains that Mr. Combs has a constitutional right to assist his lawyers in reaching out to witnesses.

---

[5] Per the unconstitutional conditions doctrine, the government may not deny a benefit to a person because he exercises a constitutional right. As a corollary, the government cannot condition a benefit on the requirement that a person forego a constitutional right. *See, e.g.*, *United States v. Whitten*, 610 F.3d 168, 194 (2d Cir. 2010). Denying bail because Mr. Combs exercised his First Amendment freedoms while detained would be an impermissible unconstitutional condition, and the Court must first resort to less restrictive alternatives, such as release with robust conditions, and searching voir dire.

Hon. Arun Subramanian
November 25, 2024

*United States v. Persico*, No. S 84 CR 809 (JFK), 1986 WL 3793, at *2 (S.D.N.Y. Mar. 27, 1986) ("The court is mindful of [a pre-trial detainee's] need to make telephone calls to potential witnesses."); *cf.* L. Crim. R. 23.1(e)(6) (including as an example of a statement that "presumptively do[es] not involve a substantial likelihood … [of] prejudice" a party's "request for assistance in obtaining evidence"). Imposing any limitation on that right while Mr. Combs is detained will significantly hamper his ability to assist defense counsel and impair his defense. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984).[6]

\* \* \*

For the foregoing reasons and those set forth in Mr. Combs' prior submissions and oral argument, this Court should grant bail on the proposed conditions or any other conditions the Court deems appropriate.

Respectfully Submitted,

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4880
ashapiro@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anthony Ricco
Law Office of Anthony L. Ricco
20 Vesey Street
New York, NY 10007
(212) 791-3919
tonyricco@aol.com

Anna Estevao
SHER TREMONTE LLP

---

[6] Additionally, we note that although counsel previously indicated we would avoid contacting grand jury witnesses, upon reviewing the law we do not think such a restriction is consistent with our professional obligations or Mr. Combs' Sixth Amendment right to the effective assistance of counsel. *See* Dkt.80 at 11. Obviously, if any such witnesses are represented, any contact would be through their counsel.

Hon. Arun Subramanian
November 25, 2024

                                                 90 Broad St., 23rd Fl.
                                                 New York, NY 10004
                                                 (212) 202-2600
                                                 aestevao@shertremonte.com

cc: all counsel by ECF