UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA, | |
|---|---|
| -against- | 24-CR-542 (AS) |
| SEAN COMBS, | |
| Defendant. | ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Defendant Sean Combs renewed his motion for bail on November 8, 2024. The Court held a hearing on November 22, 2024, and the parties filed supplemental letters on November 25 and 26, 2024. For the following reasons, Combs's motion is DENIED.

I. **No Condition or Combination of Conditions Will Reasonably Assure the Safety of the Community**

The Court has evaluated each of the factors that it must consider under 18 U.S.C. § 3142(g): 1) "nature and circumstances of the offense charged," 2) "weight of the evidence against the person," 3) "history and characteristics of the person," and 4) "nature and seriousness of the danger . . . that would be posed by the person's release."[1] *See also United States v. Zhe Zhang*, 55 F.4th 141, 144 (2d Cir. 2022) (courts have "broad discretion" in weighing the factors). The Court has also reviewed the information submitted by Combs and the government across all three bail hearings in this case. *See* Dkts. 1, 5, 8, 9, 12, 13, 15, 17, 19, 60, 61, 62, 69, 80, 81, 82, 83, 84, 85, 86, 90, and 91. The Court finds that the government has shown by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.[2] In support of this finding, the Court provides the following reasons:

1. A rebuttable presumption of detention applies to this case. *See* 18 U.S.C. § 3142(e)(3)(D). Even if Combs successfully rebuts this presumption (which the Court assumes here), it remains one of the factors that the Court considers in determining whether the government has met its burden of persuasion. *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

---

[1] Whether or not the information submitted by Combs in his renewed motion meets the statutory standard for reopening a detention hearing, *see* 18 U.S.C. § 3142(f), this Court exercises its inherent authority to review the entire record to determine whether the government has met its burden of proving that pretrial detention is required. *See United States v. Maxwell*, 527 F. Supp. 3d 659, 663 (S.D.N.Y. 2021) (collecting cases).

[2] Given this finding, the Court does not reach the question of risk of flight.

2. The indictment charges Combs with serious and violent crimes. It alleges that "[f]or decades," Combs "abused, threatened, and coerced women and others around him to fulfill his sexual desires, protect his reputation, and conceal his conduct. To do so, [Combs] relied on the employees, resources, and influence of the multi-faceted business empire that he led and controlled—creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex trafficking, forced labor, kidnapping, arson, bribery, and obstruction of justice." Dkt. 1 ¶ 1. It says that Combs "himself carried or brandished firearms to intimidate and threaten others, including victims of and witnesses to his abuse," and notes that during searches of Combs's residences in March 2024, "law enforcement seized firearms and ammunition, including three AR-15s with defaced serial numbers, as well as a drum magazine." *Id*. ¶ 12(d). When Combs's authority or reputation was threatened, the indictment alleges, he and members of his enterprise "engaged in acts of violence, threats of violence, threats of financial and reputational harm, and verbal abuse. These acts of violence included kidnapping and arson." *Id*. ¶ 12(f). The indictment also charges Combs with sex trafficking in violation of 18 U.S.C. § 1591. *Id*. ¶ 16. *See* 18 U.S.C. § 3142(g)(1) (requiring the Court to consider the "nature and circumstances of the offense charged," including "whether the offense is a crime of violence," whether it is "a violation of section 1591," and whether it involves "a controlled substance" or "firearm").

3. The government has presented direct evidence of Combs's violence. This includes video footage from 2016 (there is clearly violence even in the version of the footage submitted by Combs) and text messages between Combs and Victim-1. *See* Dkt. 19 at 10 (text messages from the "hours and days" following the 2016 Intercontinental Hotel incident: "I have a black eye and a fat lip. You are sick for thinking it's OK to do what you've done." "I still have crazy bruising."); Dkt. 69 at 7–8 (on October 17, 2018: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ; *id.* at 8 (on October 19, 2018: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (alteration in original)). Nevertheless, Combs argues that the weight of the evidence does not support a charge of sex trafficking. *See* 18 U.S.C. § 3142(g)(2). In his view, it supports at best a toxic, sometimes violent, long-term relationship between Combs and Victim-1. Dkt. 61 at 1. But regardless of whether that's true, there is compelling evidence of Combs's propensity for violence. *See* 18 U.S.C. § 3142(g)(3) (requiring the Court to consider the "history and characteristics of the person").

4. There is evidence supporting a serious risk of witness tampering. For example, Combs initiated and had unexplained communications with Witness-1, who was subpoenaed to testify before the grand jury in June 2024, and in fact testified on July 25, 2024. Dkt. 69 at 10. Combs was represented by counsel during this time, and they have offered an explanation for some of these communications. Dkt. 80 at 7–8; Dkt. 81 at 4–7. But they could not explain them all, for instance Combs's efforts to call and text Witness-1 *even after* his grand jury testimony, or Combs's deleted texts with this witness. *See* Dkt. 69 at 10–11 ("[A]lthough the phone records confirm that the defendant, using a particular phone number, and Witness-1 exchanged multiple text messages from June 2024 through August 2024, there were no such messages recovered from [Combs's]

cellphone associated with that number."). Further, Combs's interactions with Witness-1 are directly in conflict with defense counsel's representations to Judge Carter on September 18, 2024 that Combs "did not reach out to grand jury witnesses . . . He didn't do it and he wouldn't do it." Dkt. 19 at 42. *See* 18 U.S.C. § 3142(g)(2), (3).

5. There is evidence that Combs violated Bureau of Prisons regulations during his pretrial detention to obscure his communications with third parties. He paid other inmates to use their Phone Access Code (PAC) numbers to make calls to those not on his approved contact list, Dkt. 69 at 17–18, instructed family members and defense counsel to add other people to three-way calls so that their communications were more difficult to trace, *id.* at 18, and used a messaging program called ContactMeASAP (although the Court recognizes that the parties dispute whether ContactMeASAP is permitted or not). *Id.* The government gives examples of Combs's communications utilizing these means from as recently as November 4, 2024, directed to efforts to influence the jury pool, Dkt. 69 at 19–21, or to reach out to potential witnesses, *id.* at 21–22. The Court makes no determination that the *content* of Combs's communications through these channels was improper. However, his willingness to skirt BOP rules in a way that would make it more difficult for his communications to be monitored is strong evidence that the Court cannot be "reasonably assure[d]" as to the sufficiency of any conditions of release, 18 U.S.C. § 3142(g), especially given that they occurred when Combs was seeking bail, and when he knew the government's concerns about witness tampering and obstruction were front and center. *See* Dkt. 17 at 9 (describing Combs as a "serial obstructer"); Dkt. 19 at 2 (citing obstruction as a "primar[y]" reason for seeking detention). Underscoring the Court's concern, despite defense counsel's assurances to the Court at the November 22, 2024 hearing (with Combs in attendance) that Combs stopped using ContactMeASAP as of November 16, 2024, 11/22 Tr. at 37, the government indicates that Combs has continued to use this service as recently as this past Sunday, November 24, 2024, Dkt. 86 at 4. *See* 18 U.S.C. § 3142(g)(3), (4).

6. The Court further notes that it held an emergency hearing on November 19, 2024 to address the government's usage of notes on legal pads recovered from Combs's bunk during a sweep of the Metropolitan Detention Center (MDC).[3] At that hearing, defense counsel advised: "All these legal pads say 'legal.' . . . Yes. Yes. They're marked as legal." Dkt. 88 at 34. After the hearing, the Court inquired why, in light of counsel's representation that the notes at issue were on legal pads that were clearly marked as legal, photographs taken during the sweep show no such labels. Dkt. 77. At the November 22, 2024 hearing, defense counsel admitted that "it has to be the case that as of the day of the search . . . 'legal' wasn't written on every legal pad" and that they were "not sure" whether the pad presented to the Court had "legal" on it at the time of the sweep. 11/22 Tr. at 4–5. The circumstances of this incident, and the misrepresentation made at the November 19, 2024 hearing where Combs was present, bear on whether the Court can be reasonably assured that any conditions it imposes will be followed, or whether—through

---

[3] In reaching its decision, the Court does not rely on Combs's notes from the MDC, which he claims are privileged, and which the government agreed the Court need not consider.

inadvertence or active subversion—they will be broken, and the community's safety threatened. *See* 18 U.S.C. § 3142(g)(3), (4).

7. The Court assumes that it may consider the bail package that Combs has proposed. *But see United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019) ("We now expressly hold that the Bail Reform Act does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails."). However, given the nature of the allegations in this case and the information provided by the government, the Court doubts the sufficiency of any conditions that place trust in Combs and individuals in his employ—like a private security detail—to follow those conditions. *See United States v. Orena*, 986 F.2d 628, 632–33 (2d Cir. 1993) (proposal "at best 'elaborately replicate[s] a detention facility without the confidence of security such a facility instills'" (citation omitted)). The Court observes that Pretrial Services reached the same conclusion, noting at the November 22, 2024 hearing that "the conditions are insufficient, and that there [are] no conditions that could reasonably assure . . . the safety of the community." 11/22 Tr. at 53. *See* 18 U.S.C. § 3142(g)(4).

8. Finally, the facts and circumstances here differ from those in Combs's principal cited authorities. In *United States v. Fox*, 2022 WL 2564600 (2d Cir. July 8, 2022), the Second Circuit recognized the case presented "an extremely close call" and that "any loosening of conditions or more compelling evidence presented by the government could well tip the balance in favor of pretrial detention." *Id.* at *3. But in *Fox*, the Second Circuit did not address a risk of obstruction, and the government failed to engage with the proposed bail restrictions. *Id.* In *United States v. Jeffries*, while the government raised danger, its principal concern with respect to defendant Michael Jeffries was flight: He had no criminal history, the alleged criminal conduct (which did not involve the kind of violence or RICO allegations made here) abated nearly a decade ago, and Jeffries was 80 years old. *See* Letter in Advance of Arraignment, *United States v. Jeffries*, No. 24 Cr. 423 (E.D.N.Y. Oct. 22, 2024), Dkt. 9; Dkt. 83.

## II. Combs's Motion for Temporary Release Is Denied

The Court also finds that Combs has not shown that a temporary release from detention pursuant to 18 U.S.C. § 3142(i) is warranted. Under this provision, a judicial officer may "permit the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Combs's application under § 3142(i) is based on the conditions at the MDC, which he says "make[] trial preparation impossible." Dkt. 61 at 1–2; 11/22 Tr. at 50–52. But given Combs's access to counsel and documents (there was an issue with Combs receiving a laptop for the purposes of reviewing discovery, but the Court addressed that), the firm deadline for the government's discovery (the end of this year), and the time left before trial (over five months), Combs has not carried his burden of demonstrating that release from detention is necessary for trial-preparation purposes under § 3142(i) or the Constitution. But the Court will promptly address any issue that arises with respect

to Combs's trial preparation, and if the circumstances materially change, he may renew his application under § 3142(i).

The motion is denied. The Clerk of Court is respectfully directed to terminate Dkt. 60.

SO ORDERED.

Dated: November 27, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge