UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

SEAN COMBS,

Defendant.

24-CR-542 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Defendant Sean Combs moves for discovery and an evidentiary hearing on alleged government leaks of case information (Dkt. 30). For the following reasons, the motion is DENIED.

Combs alleges that the "government, primarily through [the Department of Homeland Security (DHS)], has engaged in a seven-month campaign" involving "strategic[] leak[s]" of grand jury material. Dkt. 31 at 1. Right now, the motion seeks discovery and an evidentiary hearing related to the alleged leaks, although Combs forecasts that he may ultimately ask for suppression of certain evidence or dismissal of the indictment. *Id.* at 14–15. While Combs identifies numerous alleged leaks, the heart of his dispute with the government is a 2016 video from the Intercontinental Hotel in Los Angeles that Combs alleges was leaked by the government and broadcast on CNN. *Id.* at 8–10.

Federal Rule of Criminal Procedure 6(e) states that "a matter occurring before the grand jury" must not be disclosed by "an attorney for the government" or "any government personnel . . . that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." To obtain an evidentiary hearing on an alleged breach of this rule, "the defendant must establish a *prima facie* case of a violation." *United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996). In determining whether the required showing has been made, the "court should examine, among other factors: (1) whether the media reports disclose matters occurring before the grand jury; (2) whether the media report discloses the source as one prohibited under Rule 6(e); and (3) evidence presented by the government to rebut allegations of a violation of 6(e)." *Id.*; *see also United States v. Skelos*, 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015) ("[The defendant] must first make a *prima facie* showing that (1) there has been disclosure of a matter or matters occurring before the grand jury; and (2) that the source of the disclosure was an attorney or agent of the government."). This requires a "relatively lighter showing" when the primary relief sought is an evidentiary hearing, not dismissal of the indictment. *United States v. Adams*, 2024 WL 4702754, at *2 (S.D.N.Y. Nov. 4, 2024).

As to searches of Combs's homes, he argues that the presence of media on the scene made it "clear that the DHS alerted the media prior to the search in order to maximize exposure." Dkt. 31 at 4. But of course, the searches—which were executed pursuant to warrants—were not

themselves "matter[s] occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). Combs provides no basis to suggest that there has been a violation of Rule 6(e) here. *See In re Grand Jury Subpoena*, 103 F.3d 234, 238 (2d Cir. 1996) ("Rule 6(e) [is] not violated by disclosure of a search warrant affidavit, even if that information might later be presented to the grand jury, where it was obtained independently from the grand jury and did not disclose matters occurring before the grand jury."); *Skelos*, 2015 WL 6159326, at *10 ("Information produced by a criminal investigation that parallels but is independent of a grand jury investigation is not subject to Rule 6(e) provisions on disclosure." (cleaned up)).

As to the Intercontinental Hotel video, Combs has not carried his burden to show that the government leaked it to CNN. Combs argues that "the most likely source of the leak is the government," but he doesn't point to any sound basis for this conclusion. Dkt. 31 at 8. Combs lists four reasons for accusing the government, none of which is convincing. First, he argues that "federal agents had already engaged in a months-long campaign of leaking information to the press" by May 2024, when the CNN video was leaked, and so they had a "demonstrated propensity" to make such leaks. *Id*. Second, he says that "Victim 1 is not a likely source of the leak" because there is no evidence she had access to the tape, and she had "no motive to approach law enforcement" after receiving a "substantial eight-figure settlement" from Combs in another case. *Id.* at 9. Third, Combs surmises that an "unrelated third party is not a likely source" because such an individual would have sold the video instead of "simply giv[ing] it to CNN." *Id.* To Combs, the leak showed a "motive other than financial profit[:] . . . to damage Mr. Combs'[s] reputation without renumeration." *Id.* And finally, Combs suggests that the "timing of the leak" points to a government source because federal agents "would have known that May 17 was . . . a perfect time" due to the "break in the Trump trial" for Barron Trump's high school graduation. *Id.*

In response, the government insists that it was not in possession of the video when it was aired on CNN and that the video wasn't procured through the grand jury process. Dkt. 53 at 12. DHS agents are also unable to issue grand jury subpoenas on their own. *Id.* The government says that it obtained a copy of the video at the same time as everyone else: when CNN released it. *Id.* at 13. The government rightly points out that Combs never considers the possibility that many people beyond Victim-1 and government agents likely had access to the video, including Combs's team (who paid security officers at the Intercontinental Hotel "$100,000 in cash to destroy" the video) and hotel employees and contractors. *Id.* at 14–15; Dkt. 86 at 3. An *ex parte* submission by the government, which the Court considers after *in camera* review, *see In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) ("[W]here an *in camera* submission is the only way to resolve an issue without compromising a legitimate need to preserve the secrecy of the grand jury, it is an appropriate procedure."), presents compelling evidence that CNN's source was not in fact the government. And importantly, nothing in CNN's presentation of the video even hinted that the source was a government agent.

As to the interviews and quotes attributed to law enforcement agents, none discloses "matters occurring before the grand jury." Combs doesn't identify a single article with government sources disclosing grand jury materials, despite telling the Court that "several of the leaks

explicitly mentioned grand jury proceedings and the grand jury's ongoing investigation." Dkt. 64 at 7. Combs argues that "matters occurring before the grand jury" should be construed broadly to include, in addition to "evidence actually presented to that body," "also anything that may tend to reveal what transpired before it, such as summaries of grand jury testimony." *United States v. E. Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991). But again, no such information is attributed to law enforcement or government sources in the articles.[1] Instead, the articles discuss the searches of Combs's homes, what was found inside, previous allegations against Combs, the charges against him, and the government's future investigatory plans. All of this is part of the ongoing prosecution, not necessarily the grand jury investigation, and can be gleaned (without running afoul of Rule 6(e)) from the indictment, official statements about the investigation, statements in open court, and search warrants. The Second Circuit has been clear that information about a criminal investigation is not covered by Rule 6(e). *See Rioux*, 97 F.3d at 662 (finding no *prima facie* showing when news articles "discussed federal 'investigations,' without actually discussing matters before the grand jury"); *see also Adams*, 2024 WL 4702754, at *3 ("[T]here is a difference 'between statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a *grand jury*'s investigation, a distinction of the utmost significance.'" (citation omitted)); *United States v. Nordlicht*, 2018 WL 6106707, at *4 (E.D.N.Y. Nov. 21, 2018) ("In cases where federal courts have found violations of Rule 6(e), the violations were closely linked to improper disclosure of the inner workings of the grand jury, not simply information about some aspect of a related government investigation."). Just as in *Adams*, the articles here "reference 'investigations' generally, but they do not identify [these investigations] as *grand jury investigations* or investigations into matters before the *grand jury* specifically." *Adams*, 2024 WL 4702754, at *4.

And none of the articles "expressly or by implication 'identif[ies] the source of the alleged disclosure as one proscribed under Rule 6(e).'" *Id.* at *2 (cleaned up) (citation omitted). Not all law enforcement agents or government employees are subject to Rule 6(e); only government attorneys or agents with whom grand jury information has been shared are subject to the secrecy requirement. As the government points out, "none of the Cited Articles indicate on their face that any leaked information came from . . . the prosecutors and agents conducting the investigation who had access to grand jury material." Dkt. 53 at 18. In *United States v. Skelos*, news reports that

---

[1] The only article mentioned in Combs's submissions to the Court that reports on grand jury proceedings is a May 2024 CNN article in which "sources familiar with the probe" stated that potential witnesses may be brought to testify before a grand jury. *See* Dkt. 46 at 2 n.2. Attributing information to a source "familiar with the probe" is not sufficient to make a connection to the government. *United States v. Blaszczak*, 2018 WL 1322192, at *5 (S.D.N.Y. Mar. 12, 2018) (finding that an article "d[id] not attribute anything to government sources" when the "attributions [were] to unspecified 'people familiar with the probe,'" and noting that the "universe of" people who might fall into that category was "substantial" given the size of the case). And the potential existence of a grand jury and the need for unspecified, unnamed witnesses to testify before a grand jury are not "matters occurring before the grand jury." *See, e.g.*, *Adams*, 2024 WL 4702754, at *3 (including in the broader conception of "matters occurring before the grand jury": "summaries of grand jury testimony . . . and 'the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like'" (citation omitted)); *Skelos*, 2015 WL 6159326, at *10 (similar, but also adding "revelations of the identity of either grand jurors or expected witnesses" and "the date when a grand jury will return an indictment").

3

merely "identified a 'government source' or '[l]aw-enforcement sources,' not government investigators" subject to Rule 6(e), did not evidence a violation. 988 F.3d 645, 662 (2d Cir. 2021) (alteration in original). Similarly, here no article states that its source is a prosecutor or an agent with access to grand jury material. The articles that come closest are those that cite DHS agents "who helped raid" Combs's home in Miami. *See* Dkt. 32-8; 32-9. But even if true, only those DHS agents given access to grand jury materials are covered by Rule 6(e), and there is no evidence that the DHS agents cited as sources were among those with access. And nothing in what those agents supposedly told media outlets is clearly from or relating to a grand jury proceeding. For example, the claim that there were rooms at Combs's house "solely 'dedicated to sex' with cameras planted all around" could have come from the agent's execution of the search warrant, and the statement that "[i]n my opinion, he's as bad as Jeffrey Epstein" is an opinion (presented as such) held by the alleged agent that doesn't reveal any particular information from the grand jury proceedings. Dkt. 32-9; *see also* Dkt. 32-8 (another article relying on very similar quotes).

This analysis includes the two New York Post articles highlighted in Combs's reply, one published before (but on the same day as) the Court's October 25, 2024 order, Dkt. 49-1, and the other less than a week later, Dkt. 57 at 4. *See* Dkt. 64 at 2. Both involve "federal law enforcement source[s]" who claim some familiarity with the "investigation," but neither discloses information that could not be obtained from a non-grand jury source. *Id*. The quotes in those articles that Combs finds most objectionable reflect statements that don't themselves reveal any particular facts, rather than subjective opinions, and certainly not particular facts from the grand jury proceedings. *Id*.[2] These include general descriptions of the government's criminal investigation and individual sources opining on whether Combs's alleged conduct was lawful or appropriate, and neither required access to grand jury materials.

The government also submitted an affidavit from Jane Kim, SDNY's Deputy Chief of the Criminal Division, stating that after she discussed the matter with the prosecutors and agents assigned to the investigation, "[t]hey each affirmed that they have not disclosed information they learned during the course of the [i]nvestigation to any member of the press." Dkt. 96-1 ¶ 3. Such affidavits are frequently considered by courts in this district when assessing whether there has been any Rule 6(e) violation. *See Rioux*, 97 F.3d at 662 (collecting cases).[3]

---

[2] In relation to Combs's separate motion for a "gag order" applicable to all potential victims and their attorneys, Combs filed a letter that includes links to news articles in which the grand jury is mentioned directly. *See, e.g.*, Dkt. 57 at 3 (describing one article that quotes a "source familiar with the current state of the investigation" as saying: "The grand jury is always meeting. This is an ongoing investigation."); *id.* (another article in which another source "familiar with parts of the investigation" said: "The grand jury has never stopped."). But Combs never alleges that these were based on government leaks. Instead, he argues that they were examples of improper statements made by civil plaintiffs and their attorneys. They are never raised in Combs's briefs on the instant motion.

[3] In addition to Rule 6(e), Combs also says that the conduct at issue on this motion—like the statements from unidentified agents recounted in the press—runs afoul of Local Criminal Rule 23.1, this Court's nondisclosure order, and the New York Rules of Professional Conduct. At this time, Combs has not brought forward enough specific information of a knowing violation of the rules to warrant action. But if there are future incidents, Combs should bring those to the Court's attention. And at this point, everyone has been put on notice of what the rules and the Court's order requires, and they should steer clear of anything that crosses the line.

       The Court is sensitive to Combs's concern about the publication of stories claiming to disclose inside information about this case from unnamed "federal law enforcement source[s] who [are] involved in the investigation." Dkt. 49-1. The Court has already taken steps in this regard, *see* Dkt. 50, and it is open to tailored applications for relief as this case continues. The Court once again reminds the government and its agents that if specific information comes to light showing that they leaked prohibited information, action will be taken. And the Court reminds the public that whether the government can prove Combs's guilt in this case will turn on the evidence presented at trial, not in a "trial by newspapers." *Pennekamp v. Florida*, 328 U.S. 331, 361–63 (1946) (Frankfurter, J., concurring) ("Cases are too often tried in newspapers before they are tried in court, and the cast of characters in the newspaper trial too often differs greatly from the real persons who appear at the trial in court and who may have to suffer its distorted consequences.").

       The Clerk of Court is directed to terminate Dkt. 30.

       SO ORDERED.

Dated: December 16, 2024
New York, New York

                                                       _____
                                                            ARUN SUBRAMANIAN
                                                          United States District Judge