

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

January 24, 2025

**VIA ECF**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

      We write on behalf of Sean Combs to respond to the declarations submitted by the government on January 17, 2025 (Dkt. 131), and in further support of Mr. Combs' Motion For A Hearing, Suppression, And Other Relief (Dkt. 97).

      The declarations show that ever since the government first tried to use Mr. Combs's privileged notes to continue his detention, it has presented a materially false narrative about how it got access to these sensitive, privileged materials containing his defense strategy and communications with his attorneys. Most significantly, the declarations reveal SDNY supervisors directed the BOP to search Mr. Combs's unit, *because of its investigation and prosecution of Mr. Combs*. And they demonstrate the government has consistently monitored Mr. Combs's legal calls. In other words, they confirm what Mr. Combs has been arguing all along—that the search was conducted based upon a pretext, not for any legitimate penological reason, and that Investigator-1's surveillance before and during the search violated Mr. Combs's constitutional rights and invaded the attorney-client privilege.

      *First*, the declarations refute the government's repeated claims that the BOP sweep was carried out solely to further legitimate penological interests and did not target Mr. Combs. The declarations expose that after the sweep began, it was unclear whether Mr. Combs's unit would be searched at all. Moreover, the search of that unit was carried out specifically at the direction of SDNY supervisors, including the supervisor for this case, because of their interest in obtaining evidence against Mr. Combs.

      *Second*, the declarations show that Investigator-1 became an agent of the prosecution team and worked to advance its case. He searched Mr. Combs's bunk for evidence, not contraband, and it is clear his purpose was to gather evidence for the prosecution, not police any potential threats to MDC security. Indeed, it is notable that even though he has been surveilling Mr. Combs's communications for months, to this day the BOP has not taken any actions to discipline Mr. Combs for any purported violations of MDC policies. Mr. Combs has never received so much as a write up in his four months in BOP custody, despite the government's repeated complaints about his alleged obstruction from MDC and supposed violation of policy.

Hon. Arun Subramanian
January 24, 2025

*Third*, the declarations confirm that the government was complicit in Investigator-1's continuous monitoring of Mr. Combs's privileged communications. Investigator-1 admits he listened to Mr. Combs's calls, including with his counsel, and that all those recordings, including the ones with attorneys, are being furnished to the U.S. Attorneys' Office.

*Finally*, the declarations raise additional questions that cannot fully and accurately be answered except through discovery and an evidentiary hearing. As just one example, despite reporting to prosecutors that he personally took the photographs of Mr. Combs's notes, ████████████████████████████████████████████████████████████████

The declarations are inconsistent with each other, omit key details, rely extensively on hearsay, and are remarkably vague as to key points. The truth will only be fully revealed if the government's claims can be tested through cross-examination of witnesses who have actual knowledge of the material facts. Likewise, the Court cannot fashion appropriate remedies without the complete information that can only be discovered through such a hearing.

I. **The Government Misrepresented The Facts And Tried To Conceal The Constitutional Violations**

   A. **SDNY Prosecutors, Not The BOP, Directed The Search**

The declarations contradict the government's prior representations concerning the reasons for the search and who directed it. The government previously claimed that the MDC sweep was planned by prison officials well in advance of Mr. Combs's arrest; was motivated solely by legitimate penological interests; and did not target Mr. Combs. *See* Dkt.117 at 1, 3, 8; Dkt.72 at 2-3. It further claimed "no one on the Case Team supervised, conducted, or participated [in] the search," Dkt.72 at 3, and that the search was organized and executed primarily by BOP staff, *id.* at 5. These claims were essential to the government's opposition, which rested on the notion that "prison officials are presumed to do their best to evaluate and monitor objectively the security needs of the institution," including in deciding whether a search is necessary. Dkt.117 at 9.

But these claims were false.

The truth is that the search of Mr. Combs's unit apparently was not even part of the BOP's original plan for the sweep. But it was SDNY supervisors, including the trial team's own unit chief—Supervisor-1—who ultimately directed the search. And the search was conducted not for legitimate institutional security reasons, but because Supervisor-1 was interested in searching Mr. Combs.

Specifically, on the morning of the second day of the sweep, representatives from the BOP and other federal agencies met to discuss "a potential search of [Mr. Combs's] unit." Slavik Decl. ¶10. The agencies had not previously decided whether such a search was necessary, and "inquired into … the position of the USAO-SDNY … regarding the potential search." *Id.* Supervisor-2, an SDNY unit chief who helped plan the MDC sweep and was present during the sweep, then discussed with Supervisor-1 whether Mr. Combs's unit should be searched. Supervisor-1 stated that it should be searched "in part because of what the Prosecution Team had

Hon. Arun Subramanian
January 24, 2025

learned regarding [Mr. Combs's] conduct at the MDC." *Id.* ¶11. Supervisor-1 conferred with SDNY "senior leadership," and relayed to Supervisor-2 that Mr. Combs's unit should indeed be searched, which Supervisor-2 further relayed to the BOP, leading to the search. *Id.* Thus, while AUSA Slavik claims no SDNY "personnel directed *how* the search of [Mr. Combs's] unit would be conducted," she can't deny that SDNY supervisors "directed" the search itself. Slavik Decl. ¶12 (emphasis added). That flatly contradicts the government's prior representations.

### B. Investigator-1 Was Searching For Evidence And Not Contraband

The declarations also contradict the government's prior narrative concerning its relationship with Investigator-1 and his motivations. The government previously claimed "the Case Team's investigation and the BOP investigation have operated independently," Dkt.117 at 16, and that Investigator-1 was merely searching for "contraband"—not evidence—during the sweep, Dkt.72 at 3; Dkt.117 at 4. The declarations show that both of these claims were false.

In fact, the government and Investigator-1 worked in a coordinated fashion for at least two weeks leading up to the MDC search, and the trial team encouraged Investigator-1 to monitor Mr. Combs's communications. BOP "personnel" contacted Supervisor-1 on October 10, 2024, to inform her that Investigator-1 was monitoring Mr. Combs's communications and found relevant evidence. Slavik Decl. ¶3. That date is significant, because it was ten days after Mr. Combs filed his widely publicized notice of appeal concerning the detention order, and the same day the Court invited the defense to make a renewed bail application. *See* Oct. 10, 2024 Tr.26. Notably, the SDNY supervisors on this case have been present for all court appearances in this matter, including that October 10 conference. ██████████████████████████████████████████████████████████████████████████ He spoke with AUSA Slavik "on several other occasions in October and November 2024," Slavik Decl. ¶4, although AUSA Slavik never specifies when or in what capacity these conversations took place, or what was discussed.

Investigator-1 clearly became an agent of the prosecution team. He collected, screened, and shared evidence while collaborating with a trial team prosecutor, and the fruits of his investigation were ultimately used by the government to try to detain Mr. Combs. He made a point of alerting them to Mr. Combs's "plans to discredit possible witnesses and find dirt on people," Slavik Decl. ¶16—in other words, core defense strategy protected by the Sixth Amendment, *see* Dkt. 85, unrelated to any legitimate penological concerns.

And the prosecutors have used the information Investigator-1 illegally obtained in various ways. We cannot know the full extent of the improper uses of the fruits of the search without a *Kastigar* hearing, but, for example, ███████████████████████████████████████████████████████████████████████

---

[1] While Investigator-1 claims ████████████████████████████████████████████████████, AUSA Slavik claims these requests were made on October 10, 2024—the date of the pretrial conference in which the Court mentioned the possibility of a renewed bail motion. *Compare* ███████████, *with* Slavik Decl. ¶3.

Page 4

Hon. Arun Subramanian
January 24, 2025

███████ [2] And despite the government's claims that Investigator-1 was monitoring Mr. Combs because of purported violations of BOP policy, Mr. Combs has not once been disciplined, or even asked by the MDC to stop engaging in the cited conduct. If Investigator-1's surveillance was genuinely undertaken solely for penological purposes, why does it seem that the fruits of his work have only been used by the prosecutors and not the BOP itself?

Clearly, Investigator-1 searched Mr. Combs's notes during the sweep to find evidence for the prosecutors—he was not searching for purported "contraband" as the government previously represented to the Court. ████████████████████████████████████████ Moreover, AUSA Slavik states that the BOP was looking for "narcotics, weapons, and electronic devices," none of which could possibly be found in the pages of Mr. Combs's notes. Slavik Decl. ¶7. The "contraband" excuse was thus clearly a pretext for the unlawful search.

### C. The Government Did Not Proceed In Good Faith And Took No Steps To Avoid Violating Mr. Combs's Rights

The declarations confirm that the government has, via Investigator-1, consistently monitored Mr. Combs's privileged communications *with his attorneys*. In its opposition to the defense motion, the government claimed it made "good faith efforts to *avoid* coming into contact with privileged material" and that it is "contrary to facts and logic" to suggest Investigator-1 was its "informant in the defense camp." Dkt. 117 at 14-15. But it turns out Investigator-1 has been spying on the defense team all along.

████████████████████████████████████████████████ Investigator-1 thus repeatedly informed the trial team he was eavesdropping on privileged communications, but the trial team never instructed him to stop.[3] That is outrageous. Worse, the trial team endorsed his conduct by requesting the communications at issue. Accordingly, the government has obtained and produced to the defense over thirty of the defense's own calls with Mr. Combs.

---

[2] Mr. Combs already described other ways in which the government may have already made use of the notes apart from its bail arguments. *See* 12/4/24 Geragos Decl. ¶23. And it is possible the government shared the contents of the notes with additional parties such as witnesses or alleged victims (whose counsels are often in court), further prejudicing the defense.

[3] Mr. Combs's bunk was searched yet again, and his items rifled through, on December 24, 2024.

Page 5

Hon. Arun Subramanian
January 24, 2025

That is an egregious breach of Mr. Combs's rights, and the Court should immediately order the government and BOP to cease any such spying on the defense camp.[4]

## II. The Declarations Show That Further Discovery And A Hearing Are Required

### A. The Slavik Declaration Is Permeated With Unverified Hearsay And Lacks Crucial Details

The Slavik declaration is largely based on unsworn hearsay, much of which is vague and raises more questions than it answers. For example, the discussion between the unidentified BOP "personnel" and Supervisor-1 on October 10, 2024, lacks any detail. Slavik Decl. ¶3. Important questions remain. Who are the BOP personnel? What was said? Why was Supervisor-1 contacted, seemingly out of the blue by the BOP, and how did the BOP know who to contact? Based on the chain of events, it is likely the BOP had standing orders from Supervisor-1 or other SDNY personnel to monitor Mr. Combs and report on his conduct. When were such orders given, and why? Where there other communications leading up to this call?

AUSA Slavik also fails to share what she personally discussed (and when) with Investigator-1. She merely states, "I spoke with Investigator-1 on several other occasions in October and November 2024." Slavik Decl. ¶4. But again, glaring questions remain as to what was said and what expectations arose from these communications. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

The declaration further references, without describing, multiple conversations and meetings involving BOP personnel, certain SDNY personnel, and other government officials. Slavik Decl. ¶¶7, 10, 11. It references multiple other conversations and meetings between Supervisor-2 and Supervisor-1, *during which the supervisors specifically discussed Mr. Combs.* *Id.* ¶11. There are also references to conversations between Supervisor-1 and SDNY "senior leadership." *Id.* The Court's consideration of Mr. Combs's motion should not be based on such rank, nondescript hearsay; further discovery and testimony from these individuals is required.

---

[4] The government claims it directed Investigator-1 to produce the recordings to the Filter Team, Slavik Decl. ¶17, but that is cold comfort for this egregious breach of Mr. Combs's Sixth Amendment rights. As we explained in prior submissions, Dkt. 98 at 6-9, 11, 21-22, Dkt. 120 at 5, the Filter Team process has failed, as the production of multiple privileged notes to the Case Team, which the Court had to order clawed back, amply demonstrates. In addition, since the filing of this motion, we have discovered multiple additional instances of privileged material being produced by the Filter Team to the Case Team. For example, after defense counsel alerted the Case Team to the existence of a potentially privileged notebook from Mr. Combs's Miami residence that was searched in March 2024, the notebook was produced from the Filter Team to the Case Team without any input from counsel. It was not until this instant motion that the defense was given the opportunity to make privilege determinations regarding the notebook. Additionally, multiple communications from an attorney at a law firm that has been on counsel's privilege list since April had been in the Case Team's possession until the defense asked for them to be clawed back. The defense has initiated other clawback requests in connection with additional privileged materials the Filter Team passed to the Case Team.

Hon. Arun Subramanian  
January 24, 2025

As just one more example, the Slavik declaration states Investigator-1 "provided a *high-level overview* of the contents of the BOP notes, including the defendant's plans to discredit possible witnesses and find dirt on people." Slavik Decl. ¶16 (emphasis added). What specifically did Investigator-1 say? What witnesses were identified? And what else was communicated regarding the notes? Perhaps directing Investigator-1 to provide the photographs to the Filter Team in the first instance provided some cover for the Case Team, but if the "high level overview" revealed the substance of the notes, it was not a legitimate way to ensure that the Case Team was not tainted by access to privileged information about Mr. Combs's defense.

### B. Investigator-1's Declaration Lacks Important Details

Curiously, in contrast to the Slavik Declaration, Investigator-1's declaration nowhere states that he described the contents of Mr. Combs's notes to AUSA Slavik. *Compare* ▓▓▓▓▓▓, *with* Slavik Decl. ¶16. Why the inconsistency, and what is he hiding? Inconsistencies like this undermine the credibility of the declaration and further underscore the need for a hearing. Indeed, it is clear Investigator-1 previously misled prosecutors by telling them he took the photographs of Mr. Combs's notes. *See* Slavik Decl. ¶16; Dkt. 72 at 3; Dkt. 117 at 4. That is apparently not true, yet Investigator-1's declaration still fails to identify the individual who actually took the photographs. Who is this person? What did he do with the photographs? Who else saw them? And did the government have any communications with this individual? Did the government ever interview that individual before filing its response to Mr. Combs's motion, or to comply with the Court's order to file the declarations (Dkt. 123)?

### C. The "Prosecution Team" Also Includes Supervisor-1, Supervisor-2, and SDNY "Senior Leadership"

The government uses a severely limited definition of "prosecution team" in an attempt to withhold critical information and dodge accountability. But as explained in Mr. Combs's motion, the rights at issue "proscribe[] unlawful searches by government actors" generally—including any BOP and USAO employees—not just searches carried out by the Case Team. Dkt. 98 at 13.

In any case, the "prosecution team" as defined by the Second Circuit plainly includes the SDNY supervisors and "senior leadership." It includes, for example, the "prosecutor's office" generally. *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("An individual prosecutor is presumed … to have knowledge of all information gathered in connection with *his office's investigation* of the case." (emphasis added)). Supervisor-1 and Supervisor-2, as well as SDNY's "senior leadership," are not "farflung member[s] of the executive branch," *United States v. Hunter*, 32 F.4th 22, 37 (2d Cir. 2022), or "employed by a different office of the government," *id.* at 36 (quoting *Avellino*, 136 F.3d at 255). These individuals regularly observe the proceedings in this case, and supervise and sign off on the trial team's investigative activities and trial strategy. The Court should order discovery and declarations from these individuals and eventually take their testimony at a hearing.

Hon. Arun Subramanian
January 24, 2025

### D. The Government Should Produce The Emails and Other Evidence

The government mentions "email communications," Slavik Decl. ¶7, and the MDC is wired with surveillance cameras that recorded the relevant search. The Court should order the production of this evidence and any other evidence in the government's possession relevant to the motion. It is the most reliable means of testing the government's dubious claims.

* * *

Instead of sharing the full story, the government has cherry-picked a few facts and submitted declarations that undermine the credibility of its previous submissions, omit key facts, and raise numerous important questions about what really happened. A full hearing in which Mr. Combs's counsel are afforded the opportunity to cross-examine the government actors with knowledge of the facts relevant to the search is the only way to find the true facts and understand the full picture so the Court can assess how best to remedy this grave violation of Mr. Combs's constitutional rights. Mr. Combs therefore respectfully requests that the Court order the government to produce the additional discovery described in this letter, as well as whatever communications it has already shared with the Court in camera, and hold a hearing.

Respectfully submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4880
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com

cc: all counsel by ECF