

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javitz Building*
*26 Federal Plaza, 37ᵗʰ Floor*
*New York, New York 10278*

January 28, 2025

VIA ECF
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *United States v. Sean Combs*, 24 Cr. 542 (AS)

Dear Judge Subramanian:

The Government respectfully writes in response to the defendant's motion to modify the terms of the Protective Order to require the Government to electronically produce certain videos described in Paragraphs 12(a) and 12(c) of the Indictment (the "Inspection-Only Videos"). (Dkt. 129 ("Motion")). The Court should deny this request. Based on their content alone, good cause exists for the Protective Order's current designation of these highly sensitive videos as available for inspection only. Moreover, the necessity of stringent protections for the videos is underscored by the defendant's blatant disregard of the Protective Order in his Motion, which subjectively described the content of the Inspection-Only Videos without proper redactions.

## I.  Background

### a.  Indictment and the Videos

Indictment 24 Cr. 542 was filed on September 12, 2024 after a grand jury found probable cause that the defendant had committed: (1) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); (2) sex trafficking, in violation of 18 U.S.C. §§ 1591 and 2; and (3) interstate transportation to engage in prostitution, in violation of 18 U.S.C. §§ 2421(a) and 2. As alleged in Count One, the defendant participated in a racketeering conspiracy from at least approximately 2008 to approximately 2024. Specifically, as alleged, the defendant, often assisted by other members and associates of the racketeering enterprise (the "Enterprise"), engaged in sex trafficking and acts of violence, including kidnapping, arson, and physical violence, among other crimes. (Dkt. 1 ¶¶ 1-14). With respect to the alleged sex trafficking activity, the defendant used force, threats of force, and coercion to cause women to engage in commercial sex, which included sex acts with male commercial sex workers that the defendant referred to as "Freak Offs." (*Id.* ¶¶ 12, 16). The defendant ensured that female victims participated in Freak Offs ("FOs") through coercion and violence, including by supplying female victims with controlled substances; subjecting female victims to physical, emotional, and verbal abuse; and controlling female victims' careers, livelihoods, and housing. (*Id.* ¶ 12). The defendant also filmed and kept videos of victims

engaging in FOs and used these sensitive and embarrassing recordings as collateral to ensure the continued obedience and silence of victims. (*Id.*).

On September 16, 2024, the defendant was arrested in connection with the aforementioned charges and the Indictment was unsealed the following day.

### b. The Protective Order

Shortly after the defendant's arrest, the parties began negotiating the terms of the Protective Order. Those negotiations included discussions about how sexually explicit videos and images, including those depicting FOs, should be classified under the Protective Order. Throughout those negotiations, the Government balanced the defendant's reasonable request to be able to review the sexually explicit videos with his counsel against the need for appropriate protections for the videos given their extremely sensitive nature. In particular, the Government communicated to the defense that consistent with the Crime Victims' Rights Act ("CVRA"), a small subset of these videos (ten[1] videos in total—the Inspection Only Videos) ▮▮▮▮▮▮▮▮▮▮ required particular protection. The Government noted that Victim-1 had specifically requested that the Inspection-Only Videos not be electronically shared or reproduced in order to protect Victim-1's privacy. The Inspection-Only Videos were recovered from an electronic device that Victim-1 had provided to the Government. The videos vary in length but total less than two hours of footage.

On October 4, 2024, the parties agreed to the Protective Order. That Protective Order provided that "[a]ll visual depictions, including any photograph, film, video, picture, or image, of sexually explicit conduct or nudity, will be designated as [attorneys' eyes only ("AEO")] regardless of whether it has been designated as such by the Government," with the exception of (1) any such material located on the defendant's devices or cloud accounts which would be designed as attorneys' possession only ("APO") with certain additional protections;[2] and (2) any videos described in Paragraphs 12(a) and (c) of the Indictment or images of the same, that were not located on the defendant's devices or cloud accounts, which would be made "available for inspection only and not electronically produced" and which the defendant and his counsel could review in person while monitored by law enforcement officials.[3] (Dkt. 26 at 4-5 & n.2-3). The Court entered this Protective Order on October 7, 2024. (*Id.*).

---

[1] The Motion notes that there are only nine videos designated as inspection only. However, the Government identified a tenth such video, of which it notified defense counsel on December 16, 2024.

[2] Specifically, it provided that the defendant may view the materials under the following agreed upon conditions: "(1) the material is viewed by the defendant in the presence of defense counsel, (2) on a device approved by the Government, (3) in an approved private room in the jail facility or other facility approved by the Government, and (4) defense counsel ensures that such material will be not be accessible or viewable by incarcerated individuals other than the defendant, visitors, or others who are not part of the defense." (Dkt. 26 at 5 n.2).

[3] To protect Victim-1's privacy, the sole reference to these inspection-only materials was redacted from the publicly filed Protective Order. (Dkt. 26 at 5 n.3).

A few weeks after the Protective Order was entered, the parties scheduled time for the defendant and defense counsel to view these Inspection-Only Videos.  The defendant reviewed the Inspection-Only Videos on both November 20, 2024 and December 13, 2024 consistent with the terms of the Protective Order.  The defendant has not made any additional requests to view the Inspection-Only Videos.

### c.  The Motion

On or about December 14, 2024, defense counsel and the Government met and conferred.  Defense counsel asked the Government to re-designate the Inspection-Only Videos as APO for two reasons—*first*, because the defendant needed to access the videos' metadata, and *second*, because the defendant wanted to enhance the audio and sound of the Inspection-Only Videos.  Later that day, the Government responded in writing that:

> given the significant sensitivity of the materials and specific request from Victim-1 that the materials not be electronically transmitted and produced, we cannot de-designate the videos at this time.  However, we hear and understand the concerns you raised and are prepared to offer the following as soon as possible: [1] To the extent the metadata is missing from the files on the hard drive, we will provide you with all available categories of metadata in a letter on Monday.  [2] For the use of both parties, we will work with you to identify a neutral expert who can enhance the image and sound quality of the videos.

The next day, the defense responded that they did not believe that there was "anything left to confer about given that the government is not in a position to change the designation at this time," the defense had already hired an expert in connection with these videos, and would file a motion with the Court.  On December 16, 2024, the Government provided defense counsel with a letter memorializing all available metadata from the Inspection-Only Videos.  The Government also offered to prepare a forensic copy of the ten videos, which would include all available metadata for their inspection.  Defense counsel has not made any further requests regarding the videos' metadata.

On or about January 14, 2025, the defendant filed the instant Motion.[4]  (Motion at 1).  In the publicly filed Motion, the defendant described at length the Inspection-Only Videos using subjective and inflammatory language calculated to embarrass Victim-1.  Many of those characterizations and descriptions were unredacted, in plain violation of the Protective Order.  That same day, the Government requested that the Court direct the Motion be removed from the docket and re-filed with redactions comporting with the Protective Order.  (Dkt. 127).  The Court granted

---

[4] The Government understands the Motion to request only that the Inspection-Only Videos be redesignated as APO and does not contest the current designation under the Protective Order of any photographs designated as inspection-only.

that request on January 15, 2025 and ordered the Government to respond to the Motion by January 28, 2025.  (Dkt. 128).

The Government conferred with legal counsel for Victim-1 in preparing this opposition. Victim-1 opposes any modification of the Protective Order as to the Inspection-Only Videos. Specifically, counsel for Victim-1 continues to have serious concerns about the security of such videos, including the possibility of third parties gaining access to the videos surreptitiously and/or unlawfully due to the very publicized nature of the case, the possibility of these highly sensitive videos being shared with witnesses, and the defendant's use of such videos to litigate its case in the public domain—as demonstrated by the instant Motion.

## II.    Legal Standard

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *See In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir. 2008) ("Rule 16(d) [] leaves the precise conditions under which the defense may obtain access to discoverable information to the informed discretion of the district court.").  In determining whether good cause exists, courts should "balance several interests, including whether dissemination of the discovery materials inflicts hazard to others [and] whether the imposition of the protective order would prejudice the defendant." *United States v. Ramirez*, No. 21-CR-41 (AJN), 2021 WL 914457, at *1 (S.D.N.Y. Mar. 10, 2021) (quoting *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013)).

"Courts around the country have relied on the CVRA to find good cause for entry of protective orders." *United States v. Torres*, No. 20-CR-00418, 2020 WL 4500046, at *4 (D.N.J. Aug. 5, 2020) (collecting cases); *see United States v. Patkar*, No. CR. 06-00250 (JMS), 2008 WL 233062, at *5 (D. Haw. Jan. 28, 2008) ("Congress, in effect, has determined that failure to treat a victim with fairness and with respect to privacy works a clearly defined and serious injury to the victim. This right fully supports a finding of good cause to limit disclosure of the R.A. documents."). The CVRA provides crime victims with important rights including the "right to be reasonably protected from the accused" and the "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8).

In cases involving sexual abuse, courts in this District have repeatedly entered protective orders that restrict a defendant's review of certain highly sensitive discovery materials—including nude and sexually explicit content—to inspection only review. *See, e.g., United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN), Dkt. 38 at 10 (entering protective order that provided that "highly confidential information," which includes "nude, partially-nude, or otherwise sexualized images, videos, or other depictions of individuals," shall not be "disseminated, transmitted, or otherwise copied and provided" to defense counsel or the defendant but shall be "made available for inspection"); *United States v. Robert Hadden*, 20 Cr. 468 (RMB), Dkt. 68 at 8-9 (entering protective order that provided that "highly confidential information," which include "nude, partially-nude, or otherwise sexualized images, videos, or other depictions of individuals," shall "be made available for inspection by Defense Counsel and the defendant").

### III.    Discussion

Good cause exists for the protections in the Protective Order of this limited number of videos, which Victim-1 has specifically requested not be electronically produced to the defendant. █████████████████████████████ As alleged, the defendant filmed and then threatened Victim-1 with the dissemination of these videos to ensure Victim-1's compliance with his will. Further, the defendant's proposal of redesignating these materials to APO is woefully insufficient to address Victim-1's valid privacy concerns and to ensure that such videos are not improperly disseminated.

#### a.    Good Cause Exists for the Current Protective Order

There is ample good cause for the Court to affirm the Protective Order's designation of these Inspection-Only Videos. These materials implicate Victim-1's privacy interests due to their "highly sensitive and personal nature." *Torres*, 2020 WL 4500046, at *4. ████████████████████████████████████ These sexual acts have caused significant trauma to Victim-1 and disclosure of their recordings would undoubtedly "cause 'particularly serious' embarrassment to [Victim-1] and, potentially, economic harm." *Id.*

The risk of improper disclosure is especially salient here where the defendant is alleged to have used videos of commercial sex acts as collateral, threatening to disclose video recordings of FOs to coerce the victims' continued participation. As Victim-1 texted the defendant in December of 2015, "You know what sick and disgusting shit I was reminded of the other day? You forcing me to [omitted to protect victim privacy] or you were going to leak some FO shit." (Bail Hearing Tr. (Sept. 18, 2024) at 6). In addition, in a text message from a different victim significantly after 2015, that victim wrote, "He just threatened me about my sex tapes that he has of me on two phones. He said he would expose me, mind you these sex tapes where I am heavily drugged and doing things he asked of me for the past three years." (Bail Hearing Tr. (Sept. 18, 2024) at 7). In other words, when the defendant had access to these sorts of videos, he shamelessly extorted his victims to ensure obedience, compliance, and continued participation in forced and/or coerced sexual acts. Following the charges in the present case, which carry significant penalties, there is no telling what the defendant would do to discredit and embarrass victims. Thus, ample good cause exists for the Protective Order's limitations on the defense's physical possession of and access to these videos.

Good cause for the Protective Order's treatment of these Inspection-Only Videos is further supported by the CVRA and the defendant's recent violations of the Protective Order in filing this very Motion. As the defense knows, Victim-1, who has statutory rights under the CVRA to be "reasonably protected from the accused" and "treated with fairness and with respect for [her] dignity and privacy" in these criminal proceeding, has specifically requested that this small subset of sexually explicit videos be provided to the defense on an inspection-only basis. *See* 18 U.S.C. § 3771(a)(1) and (a)(8). This request is entitled to serious consideration by this Court, particularly here, where Victim-1 has articulated reasonable concerns about the defendant's improper use of

the videos to litigate his case and the possibility of third parties' gaining unauthorized access to the videos. The defendant's apparent willingness to violate the Protective Order in order to embarrass Victim-1 and litigate this case in the public domain, as demonstrated by his filing of the instant Motion, underscores these concerns. There is now an even stronger basis for the Court to strictly regulate the defendant's access to the Inspection-Only Videos.

*Second*, the current designation of the videos as inspection-only does not unduly prejudice the defendant. The Government has repeatedly worked to ensure that the defendant has ample and ready access to the videos to prepare for trial. The Government agreed not to designate the videos as AEO so that the defendant could review the videos with his counsel. And the Government has made the Inspection-Only Videos available to the defendant each time he requested access. In advance of trial, the Government is committed to ensuring that the defendant has continued, prompt access to this material in a secure location. In addition, the Government recently provided the defendant with all metadata for these videos and proposed using a neutral expert to enhance the quality of the videos, a proposal rejected immediately by the defendant. The Government will continue to work with defense counsel to ensure that the videos' inspection-only status does not unduly prejudice the defendant. For example, the Government is amenable to having an expert retained by the defendant view the videos under the same circumstances as the defense may (*i.e.*, for inspection in a controlled setting).

In addition, to the extent that the defense claims that the inspection-only status of these videos is somehow incompatible with his ability to adequately defend himself at trial, that is incorrect. As noted above, in cases involving sexual abuse, courts routinely enter protective orders that designate certain categories of highly sensitive sexual material as inspection-only. Indeed, in child sexual abuse material ("CSAM") cases, the Adam Walsh Act requires that the Court deny all requests for defense duplication or copying of CSAM—which is arguably the key evidence in those cases—so long as the Government makes the material reasonably available to the defendant, his attorney, and/or experts for inspection and viewing at a government facility. 18 U.S.C. § 3509(m). And, courts have repeatedly rejected constitutional challenges to this law, concluding that it is consistent with due process and sufficiently allows a defendant to prepare a defense. *See, e.g.*, *United States v. Spivack*, 528 F. Supp. 2d 103, 108 (E.D.N.Y. 2007).

In sum, good cause exists for the Protective Order's treatment of the Inspection-Only Videos. The Court should thus deny the defendant's request to modify the Protective Order with respect to this small subset of videos.

### b. Should the Court Redesignate the Inspection-Only Videos Under the Protective Order, Additional Safeguards Must Be Afforded

Although the defendant has failed to establish a sufficient basis to redesignate the Inspection-Only Videos and his request to do so should be denied, it bears noting that the defendant's modification proposal falls short for other reasons too. In particular, even assuming it were appropriate for the defense to maintain its own copy of the videos, the proposal fails to provide adequate safeguards against third-party access and/or dissemination. A modification without such safeguards should be flatly rejected. Instead, any redesignation must come with

additional protections to govern: (1) how the Inspection-Only Videos are stored and maintained; and (2) with whom they are shared.[5]

As to the first category of protections, measures must be taken to ensure the defendant's electronic copy of the Inspection-Only Videos is securely maintained to prevent any unauthorized access. Consistent with the Government's treatment of these videos, the defense should be required to store the videos on an offline, encrypted drive in a secure location known only to a limited number of attorneys. Copying, electronic file sharing, or real-time electronic streaming of the videos to third parties over video-conference technology must all be strictly prohibited.

As to the second category of protections, any modification of the Protective Order should (i) prevent the defendant from showing these Inspection-Only Videos to witnesses, with the exception of witnesses who are physically depicted in the videos or certain expert witness; (ii) require the defendant to provide advance notice to the Court prior to showing the videos to any permissible witness; and (iii) require the defendant to maintain a log of all individuals who viewed the Inspection-Only Videos and file such log under seal with the Court. Finally, to the extent that the Court grants the defendant authorization to provide an expert copies of the videos—to which the Government objects—that expert should first have to agree in writing that the videos will be maintained in similarly secure conditions to prevent unauthorized access to them.

If the Court concludes that some modification to the Protective Order is required, the Government requests the opportunity to provide an addendum to the Protective Order that includes specifications consistent with the above regarding how the Inspection-Only Videos are stored, maintained, and accessed.

---

[5] Notably, redesignating the materials from inspection-only to APO would actually make these videos less protected than other "visual depictions . . . of sexually explicit conduct or nudity," which—with the exception of materials on the defendant's own devices—are designated as AEO. (Dkt. 26 at 5). This too counsels against redesignation of the Inspection-Only Videos.

**IV.     Conclusion**

For the foregoing reasons, the Court should deny the Motion.


                              Respectfully submitted,

                              DANIELLE R. SASSOON
                              United States Attorney


                    By:  ____/s/_____
                              Maurene Comey
                              Meredith Foster
                              Emily A. Johnson
                              Christy Slavik
                              Madison Reddick Smyser
                              Mitzi Steiner
                              Assistant United States Attorneys
                              (212) 637-2324/-2310/-2409/-1113/-2381/-2284