UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

     v.

SEAN COMBS,

          Defendant.

24-cr-542 (AS)

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO SUPPRESS EVIDENCE OBTAINED THROUGH SEARCH WARRANTS,
## OR IN THE ALTERNATIVE, FOR A *FRANKS* HEARING

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

ARGUMENT .......................................................................................................................3

   I.   THE GOVERNMENT'S WARRANT APPLICATIONS CONTAINED
       INTENTIONALLY OR RECKLESSLY DECEPTIVE STATEMENTS
       AND OMISSIONS .......................................................................................................3

      A.   Warrant Applications May Not Omit Critical Exculpatory Evidence ...........................3

      B.   The Government's Warrant Applications Hid Critical Exculpatory Evidence
          Regarding Victim-1's Consent And Financial Motive...................................................5

      C.   The Government's Warrant Applications Hid Critical Exculpatory Evidence
          Regarding Credibility Of Other Witnesses.................................................................11

      D.   The Misstatements And Omissions Were Material .....................................................18

  II.  THE WARRANTS WERE UNCONSTITUTIONALLY BROAD ...................................20

      A.   The Fourth Amendment Forbids General Warrants.....................................................20

      B.   The Warrants Obtained By The Government In This Case Were Virtually
          Limitless ......................................................................................................................22

CONCLUSION ..................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      **Page(s)**

*Arizona v. Gant*,
   556 U.S. 332 (2009) .................................................................................................2, 20

*Brown v. D'Amico*,
   35 F.3d 97 (2d Cir. 1994)...................................................................................................4

*Coolidge v. New Hampshire*,
   403 U.S. 443 (1971) ....................................................................................................21, 24

*Franks v. Delaware*,
   438 U.S. 154 (1978) ...........................................................................................................4

*Harrison's Trial*,
   12 How. St. Tr. 834 (Old Bailey 1692)............................................................................24

*Jones v. Combs et al.*,
   24-cv-1457-JPO (S.D.N.Y.)..............................................................................................14

*McColley v. County of Rensselaer*,
   740 F.3d 817 (2d Cir. 2014).........................................................................................5, 10

*Payton v. New York*,
   445 U.S. 573 (1980) .........................................................................................................20

*Rainsberger v. Benner*,
   913 F.3d 640 (7th Cir. 2019)........................................................................................4, 19

*Riley v. California*,
   573 U.S. 373 (2014) .........................................................................................................21

*Rivera v. United States*,
   928 F.2d 592 (2d Cir. 1991)...............................................................................................4

*United States v. Baxter*,
   889 F.2d 731 (6th Cir.1989)..............................................................................................11

*United States v. Canfield*,
   212 F.3d 713 (2d Cir. 2000)...............................................................................................4

*United States v. Cerda*,
   2023 WL 3792448 (E.D.N.Y. June 2, 2023)......................................................................9

*United States v. Coreas*,
   419 F.3d 151 (2d Cir. 2005).............................................................................................18

*United States v. Galpin,*
   720 F.3d 436 (2d Cir. 2013)........................................................................................20, 21

*United States v. Ganias,*
   824 F.3d 199 (2d Cir. 2016)..........................................................................................2, 21

*United States v. Hernandez,*
   2010 WL 26544 (S.D.N.Y. Jan. 6, 2010)........................................................................21

*United States v. Kunen,*
   323 F. Supp. 2d 390 (E.D.N.Y. 2004)............................................................................19

*United States v. Lahey,*
   967 F. Supp. 2d 698 (S.D.N.Y. 2013).........................................................................4, 17

*United States v. Lauria,*
   70 F.4th 106 (2d Cir. 2023)..............................................................................................4

*United States v. Rajaratnam,*
   719 F.3d 139 (2d Cir. 2013)....................................................................................passim

*United States v. Reilly,*
   76 F.3d 1271 (2d Cir. 1996).......................................................................................11, 17

*United States v. Rosa,*
   626 F.3d 56 (2d Cir. 2010)..............................................................................................21

*United States v. Simmons,*
   771 F. Supp. 2d 908 (N.D. Ill. 2011) ..............................................................................17

*United States v. Ulbricht,*
   858 F.3d 71 (2d Cir. 2017)..............................................................................................21

*United States v. Vigeant,*
   176 F.3d 565 (1st Cir. 1999) ...........................................................................................11

*United States v. Wey,*
   256 F. Supp. 3d 355 (S.D.N.Y. 2017) ..................................................................1, 23, 24

*United States v. Yusuf,*
   461 F.3d 374 (3d Cir. 2006)............................................................................................12

*United States v. Zemlyansky,*
   945 F. Supp. 2d 438 (S.D.N.Y. 2013).............................................................................21

*Washington v. Napolitano,*
   29 F.4th 93 (2d Cir. 2022)..........................................................................................5, 12

*Wilson v. Russo*,
    212 F.3d 781 (3d Cir. 2000) .................................................................................................1, 5

**Other Authorities**

2 Wayne R. LaFave,
    *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(a) (5th ed. 2012) .................24

## INTRODUCTION

The government has a duty of candor when it seeks warrants. The nature of the proceeding mandates secrecy, so the process is not adversarial. Precisely for that reason, investigators have an obligation to present a fair picture of the evidence, including both inculpatory and exculpatory facts. While investigators need not present a magistrate with every bit of evidence they have discovered, they must nonetheless include a reasonably even-handed account, and they cannot omit critical exculpatory facts that might undermine a finding of probable cause. As the Second Circuit has instructed, investigators should include evidence if it is "the kind of thing the judge would wish to know" in determining whether probable cause exists. *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)).

The government in this case utterly failed to do so. It sought several warrants to search Mr. Combs's residences, his electronic devices, and his person—and it presented a grossly distorted picture of the facts. It included only inculpatory facts, and it excluded critical exculpatory evidence that was indisputably in its possession at the time. The government claimed victims were coerced into sex, but it failed to inform the magistrate that ███████████████████████████ ████████████████████████████████████████████████████████████████████. It also failed to inform the magistrate that it possessed text messages between the alleged victims and Mr. Combs, ██████████████████. The applications were intentionally misleading, which, at a minimum, requires a *Franks* hearing.

The warrants themselves were also grossly overbroad. On a theory that Mr. Combs's entire life was a criminal enterprise, the government sought virtually limitless authority to seize any evidence related to that "enterprise"—all his digital devices and the information they contained, all information in his iCloud accounts, plus troves of records and items in his houses, almost none of which was contraband. As in *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017), where

Judge Nathan found similar warrants unconstitutional, here the government obtained authority "to rummage at will among" Mr. Combs's "private effects," *Arizona v. Gant*, 556 U.S. 332, 345 (2009).

Perhaps most troublingly, the government received essentially limitless authority to search Mr. Combs's digital devices, which contained a "vast trove of personal information," *United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016) (en banc). The Supreme Court and Second Circuit have repeatedly warned that it is especially important that digital device searches must be limited and particularized. The warrants here were not. The warrants were thus unconstitutional general warrants, and the evidence obtained through those warrants must be suppressed.

## FACTUAL BACKGROUND

During its investigation, the government executed numerous search warrants. On January 4, 2024, it received a warrant to obtain all information in Combs's iCloud accounts. On March 22, 2024, it received two warrants to search Combs's residences in Los Angeles (Mapleton Drive) and Miami (Star Island Drive). Both applications were based on substantially identical affidavits sworn by HSI Special Agent Sean Quinn. Three days later, on March 25, the government obtained an additional warrant to search Combs's person and to seize and search two of his cell phones.[1] The warrants sought to obtain evidence related to possible crimes of racketeering, sex trafficking, and obstruction of justice. The list of "items to be seized" at the residences was incredibly broad, spanning pages, and included among other categories all digital devices found within the residences. The list of information to be obtained from the devices was similarly broad.

But as detailed below, the warrant applications presented a grossly distorted picture of reality. The government had in its possession, for example, a variety of evidence—including

---

[1] Paragraph citations herein are to the Los Angeles warrant. *See* Ex.2. The same information, with minor variations in paragraph numbering, is presented in the Miami warrant and the March 25 warrants. *See* Exs.3-6. "Ex." refers to exhibits to the accompanying Geragos Declaration.

████████████████████████████████—suggesting Victim-1's participation in the alleged "freak-offs" (FOs) was voluntary and consensual, not coerced as the government suggested in its applications.  The government's claims ██████████████████████████ was based primarily on statements from Producer-1, an utterly unreliable witness whose claims were contradicted by other evidence that the government failed to mention.  And the government's obstruction allegations were based largely on texts and statements taken out of context—a critical part of the context being that ██████████████████████████████████ ████████████████████████.  The affiant also failed to mention that nearly every witness he interviewed had ███████████████████████, giving them a financial motive to fabricate or embellish.

The probable cause statements were intentionally misleading.  But it worked—the government got its warrants, leaked damaging information, and then executed its military-style raids at Combs's residences.  Through this duplicity, the government obtained evidence—including multiple electronic devices with an enormous amount of information about his entire life—and an enormous and unfair tactical advantage.  It continued to press its advantage, obtaining an indictment and multiple additional warrants, which were also incredibly broad.

## ARGUMENT

I.    **THE GOVERNMENT'S WARRANT APPLICATIONS CONTAINED INTENTIONALLY OR RECKLESSLY DECEPTIVE STATEMENTS AND OMISSIONS**

### A.    Warrant Applications May Not Omit Critical Exculpatory Evidence

Under the Fourth Amendment, a warrant may only issue upon a showing of probable cause.  But as then-Judge Barrett wrote, the Warrant Clause is "not merely a probable-cause guarantee"—rather, it "is a guarantee that a warrant will not issue unless a neutral and disinterested magistrate independently decides that probable cause exists."  *Rainsberger v. Benner*, 913 F.3d 640, 650 (7th

Cir. 2019) (Barrett, J.).  A magistrate can only perform that function if the government provides an accurate and complete statement of the evidence demonstrating probable cause.  Under *Franks v. Delaware*, 438 U.S. 154 (1978), if a statement of probable cause contains material false or misleading statements or omissions, then the warrant is invalid, and any evidence obtained pursuant to the warrant must be suppressed.

To suppress evidence obtained pursuant to a warrant, a defendant must show: (1) that the warrant application contained intentionally or recklessly misleading statements or omissions and (2) that the falsehoods or omissions were material and necessary to the warrant's issuance.  *See United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000).  To obtain a *Franks* hearing, a defendant need only make a "substantial preliminary showing" as to each prong.  *Franks*, 438 U.S. at 155-56; *see United States v. Lauria*, 70 F.4th 106, 131-32 (2d Cir. 2023) (vacating judgment and remanding for a *Franks* hearing on unresolved factual issues).  Recklessness or intent "may be inferred where the omitted information was clearly critical to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); *see United States v. Lahey*, 967 F. Supp. 2d 698, 723-27 (S.D.N.Y. 2013) (suppressing evidence after finding reckless omissions).

As noted, a warrant application can be false either through affirmative false statements or misleading omissions.  An application must contain a reasonably complete statement of the evidence, *including exculpatory evidence* that would be critical to the evaluation of probable cause. "Though an officer need not volunteer every fact that arguably cuts against the existence of probable cause, the officer may not omit circumstances that are critical to the evaluation of probable cause."  *Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir. 1994); *see Rainsberger*, 913 F.3d at 647 ("An officer similarly violates the Fourth Amendment if he intentionally or recklessly withholds material information from a probable cause affidavit.").  While an application need not include "every potentially evocative detail that would interest a novelist or gossip," an investigator

"cannot make unilateral decisions about the materiality of information" or "merely inform the magistrate or judge of inculpatory evidence." *Washington v. Napolitano*, 29 F.4th 93, 108 (2d Cir. 2022) (quoting *Wilson*, 212 F.3d at 787). Simply put, an affiant seeking a warrant cannot withhold important exculpatory evidence from the magistrate.

The duty to include critical exculpatory evidence includes a duty to reveal information that undermines the credibility of a confidential informant or other witness. When the government relies on witnesses' statements rather than an investigator's own observations, their "credibility is plainly relevant—even critical—to the probable cause determination." *McColley v. County of Rensselaer*, 740 F.3d 817, 825 (2d Cir. 2014). The "failure to provide known information that goes directly to the credibility" of a witness or informant violates an investigator's duty to disclose. *Id*.

The government made false statements and omitted critical exculpatory evidence in its warrant applications in this case. This omitted evidence was in the government's possession at the time it sought the warrants. The omissions were intentional, or at the very least, reckless.

### B.    The Government's Warrant Applications Hid Critical Exculpatory Evidence Regarding Victim-1's Consent And Financial Motive

1.    The core allegation in the warrant applications—and indeed the government's entire case—is that Combs forced Victim-1 to participate in FOs. In its March warrant applications to search the residences, it stated: ██████████████████████████████████████████

████████████████ Ex.2 ¶11.c. This statement was based on the investigator's interview with Victim-1, which took place five years after the events. *Id.* ¶11. But the government unaccountably failed to inform the magistrate ████████████████████████████████████████

████████████████████████████████████, both of which severely undermined its account.

When it sought the warrants to search Mr. Combs's residences, the government had already obtained one device from Victim-1 that contained ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████     Geragos Decl. ¶8.

Unbelievably, the government did not ████████████ in the warrant applications—

or even *inform the magistrate* ██████████.  Faced with a claim of coerced and forced sex, the

████████████████████████ is the sort of thing that any factfinder "would wish to know."

*Rajaratnam*, 719 F.3d at 154.  This was no accidental omission.

2.     By the time it obtained the warrants to search Mr. Combs's residences, the

government had also already obtained ██████████████████████████

██████████████████████████████████████████████████████

████████████████.[2]     Once again, these ██████████████ contradict the

government's claims that the FOs were coerced.

██████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████     Ex.10.     ██████████████████████

██████████████████████████████████████████████████████

---

[2] The warrant applications state that the agent had already reviewed the "SC Bad Boy iCloud-1 account and the PD Team iCloud-1 account."  Ex.2 ¶17.

Ex.11.

Ex.12.

Ex.13.

Ex.14.

Ex.15.

Ex.16.

Ex.17.

███████████████████████████████████████████████████

██████████████████ Ex.18. █████████████████████████████

████████████████████████████████████ Ex.19. ███████████████

████████████████████████████████████████ Ex.20.

The government alleged, █████████████████████████████████

███████████████████████████. Ex.2 ¶11.j. But it failed to mention ███████

████████████████████████████████████████████████████

Ex.21. The government alleged that ████████████████████████████

██████████████████ Ex.2 ¶11.r. But it failed to mention ███████████████

████████████████████████████ Ex.22.

More generally, even as their relationship deteriorated and the two managed a break-up,

██████████████████████████████████████████. ████████████████

████████████████████████████████████████████████████

████████ Ex.23. ██████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ Ex.24.

████████████████████████████████████████

████████ They are important evidence. They show the context of the relationship, and they also

██████████████████████████████████████ They are "the kind

of thing" that any magistrate judge "would wish to know" when reviewing a warrant application

in a sex trafficking case. *Rajaratnam*, 719 F.3d at 154. Yet the warrant applications contain not

even a hint of them—they didn't even inform the magistrate judge that this evidence existed. They

simply stated that █████████████████████████████████████████" Ex.2 ¶11.c. This was

intentionally misleading. ██████████████████████████ contradicted Victim-1's later

accounts, and gave the investigator "obvious reasons to doubt the veracity of the allegations." *United States v. Cerda*, 2023 WL 3792448 at *6 (E.D.N.Y. June 2, 2023) (quoting *Rajaratnam*, 719 F.3d at 154). The investigator was thus legally required to disclose them.

3.    ███████████████████████ contradict the applications in other ways too. The applications said ████████████████████████████████████████

████████████████████████████████████████████████████

███████████. Again, ███████████████████████████ tell a different story.

████████████████████████████████████████████

██████████████████████[3] ████████████████████████████

████████████████[4] Ex. 25. ████████████████████████

████████████████████████████████████████████████

████████████████████████████ Ex. 16. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Ex. 18.

The warrant applications also claimed ████████████████████████

████. Once again, the government hid evidence to the contrary. For example, ████████████

████████████████████████████████████████████████

████████████████████████████████. Ex. 13. ████████████████████

████████████████████████████████████████████████

---

[3] ████████████████ is a male escort service. As the motion to dismiss Count Three details, the service has been operating in the open for a over a decade.

[4] The investigators had ████████████████████████████████.

███████████████████████████████ Ex.26.  As the government has since

conceded in disclosure letters, ██████████████████████████████████ .

Moreover, the government hid evidence that Combs at times *discouraged* ███ from using

so many drugs. █████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ Ex.27. █████████████

████████████████████████████████████████

██████████████████████ Ex.15.

4.    Finally, the warrant applications contain no mention of Victim-1's financial motive

to  exaggerate  and  falsify.    As  the  government  knew, ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████thus

provided an unusually strong motive to fabricate, years after the underling events.

████████████████████████████████████

████████████████ , suggest that years after her relationship, she changed her story in a way that

would cause maximum potential damage to Combs—and thus give him maximum incentive to

agree to a large payment.  This is exactly the sort of evidence that "goes directly to the credibility"

of the witness, whose story provided the core of the government's applications.  *McColley*, 740

F.3d at 825.  As courts around the country have held, evidence that undermines the credibility of a

key witness must be revealed because "[t]he magistrate judge must be given the opportunity to

assess the 'totality of the circumstances.'" *United States v. Vigeant*, 176 F.3d 565, 574 n.9 (1st Cir. 1999); *see United States v. Baxter*, 889 F.2d 731, 734 (6th Cir. 1989).

Here, rather than giving the reviewing magistrate a fair summary, the government hid exculpatory evidence to bolster its case. The warrant applications were "calculated to mislead," omitting "clearly critical" evidence. *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996).

### C.     The Government's Warrant Applications Hid Critical Exculpatory Evidence Regarding Credibility Of Other Witnesses

The government also sought to corroborate Victim-1's allegations, and make related allegations, with statements from other witnesses and victims. Again, the government hid evidence undermining these witnesses' credibility and presented misleading and selective accounts. We are not dealing here with omission of a few ancillary facts. This is a case of systematic deception.



1.     <u>Sex-Worker-1</u>. The government relied on information from Sex Worker-1—

Ex.2 ¶11.h.

But Sex Worker-1 has also given the government exculpatory information, none of which was included in the warrant applications. In its December 29, 2024 discovery letter, for example, the government revealed that

"[5] Ex.32.

Ex.33. These statements—from a key participant in the FOs—undermine the allegations that

---

[5] The government has refused to provide the defense with the names of anonymized individuals named in the warrants. Sex Worker-1 appears to be the same person disclosed in the letter.

██████████████████████████████████████████.”  And they corroborate ████████████

████████████████████████████████████████████████.

It is unclear when the government received this information—the government has only

stated ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████—

something any investigator would have asked.  It is also unclear what other exculpatory statements

Sex Worker-1 made about ██████████████████████████████████████████

That is precisely why a *Franks* hearing is required—to learn more about what the government

knew, and when.  Moreover, even if the government was not yet aware of ██████████████

████████████████████████████████████ it could have been aware had it

asked.  *See United States v. Yusuf*, 461 F.3d 374, 385 (3d Cir. 2006) (failure to "undertake further

investigation" in face of questions about the accuracy of information is reckless).

Given the government's loose relationship with the truth throughout its warrant

applications, the most obvious inference is that the government was already aware of Sex Worker-

1's exculpatory statements but simply failed to include them in the applications.  It did exactly

what the Second Circuit forbids—"merely inform[ing] the magistrate or judge of inculpatory

evidence."  *Napolitano*, 29 F.4th at 108.

2.    <u>Assistant-1</u>.  The warrant applications relied on information about Assistant-1,

including ██████████████████████████████████████████.  The

applications said Assistant-1 ██████████████████████████████████.  Ex.2

¶12.n.  As with Victim-1, the applications failed to disclose that ██████████████████

████████████████████████████████████████████████████████████

██████████.

But the applications were particularly misleading in their recounting of supposed obstruction of justice. They stated Combs had obstructed justice by ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Ex.2 ¶31.a-c. But the government cherry-picked a couple of statements out of context to imply ████████████████████████████

But the complete thread demonstrates the opposite. ████████████████████

████████████████████████████████████ Ex.28. ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████ Ex.29. ██████████████████████████ Ex.30.

This was not a harassing or threatening exchange. It was, rather, ████████████

████████████████████████████████████████████

█ does not remotely make out probable cause for an act of obstruction. But the government plucked a few quotes out of context and thus presented the magistrate with a completely distorted picture of what happened. That distortion could not have been accidental—it was a deliberate choice.

3.    <u>Producer-1</u>.    Some of the most salacious allegations recounted in the warrant applications came from Producer-1, who the government now says it will not even call to testify at trial.    The investigator indicated he had interviewed Producer-1, and Producer-1 had relayed stories about his time working for Combs.    Ex.2 ¶21.    Producer-1 claimed, among other things, that ███████████████████████████████████████████████████████████

███████████████████████████.    *Id.* ¶21a-c.    But the most serious and specific allegation from Producer-1 was his claim that ████████████████████████████.    The applications state

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████    *Id.* ¶27.b.

These accusations were never credible.    They were uncorroborated—████████████████

████████████████████████████████████████    And the government had boatloads of contrary evidence, including ███████████████████████████████

███████████████████████████    The government eventually dropped these allegations in later warrants, but their lack of credibility was manifest from the outset.

And the government once again failed to disclose Producer-1's financial incentive to fabricate and embellish.    Producer-1 ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

14

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████" Geragos Decl. ¶17.

The government has advised us it will not call Producer-1 as a witness at Combs's trial. Presumably that is because his stories are fantastical, and he lacks any credibility. But his lack of credibility was equally apparent in March 2024, in part based on ████████████████████████ ████████. At a minimum, the warrant applications should have disclosed ████████████ ████████████████████████████████—namely, his motive to fabricate and to tell the government a story that matched the stories ████████████████████████████.

Once again, however, the government hid this from the magistrate. The investigator simply relayed Producer-1's claims, without qualification, as if he were a credible witness.

4.    <u>Victim-2.</u> ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

5.    <u>Victim-3.</u>  The affidavits allege, based on interviews with Victim-3, that Combs ████████████████████████████████ Ex.2 ¶19.b.  The relevance of these allegations is less clear.  The claims about Victim-3 appear under the header ████████████████████████

████████████████████████████████████████████████

████████████

In any event, the warrant applications once again include none of the information the government must have known that called into question her credibility regarding the allegations.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████    Geragos Decl. ¶16.    ████████████████████████    Once again, none

of this information necessary to assess her credibility was included in the warrant applications.

      6.    <u>Victim-4</u>.  The warrant applications included allegations that Victim-4 ████████████

█████████████████████████████████    Ex.2 ¶33.    They went on to state that

████████████████████████████████████████████████████████

███████████████████.  The government made no effort to corroborate Victim-4's claims.  If it

had conducted a reasonably competent investigation, it would have obtained evidence

contradicting her account, including ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████    Ex.31.    ████████████████████████████████████

██████████████

      The applications failed to note that, ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

      7.    <u>Designer-1</u>.  The warrant applications also included allegations from Designer-1,

████████████████████████████████████████████████████████.

Ex.2 ¶11.q, ¶26.  The government also claimed a representative of Combs had engaged in

obstruction when, █████████████████████████████████████████████████

█████████ *Id.* ¶32.a.

The applications failed to note the context of that ███████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████

In sum, three critical witnesses on which the government relied were all ██████████

████████████████████████████████████████████████████. Not

only did they have the general financial motive to fabricate—███████████████

████████████████████████████████████████ That information

would have, to put it mildly, raised doubts about their credibility. But the government said nothing

about ███████████████████████████. Once again, it intentionally hid

evidence that would have undermined their credibility.

* * * *

The misrepresentations and misleading omissions in the warrants are frequent and

patterned. The affiant omitted, for example, all information about all the witnesses' ███████ and

financial motives to fabricate. These omissions were "related and exculpatory," indicating

recklessness. *Lahey*, 967 F. Supp. 2d at 723. This is a case where the "cumulative effect of all of

the omissions was to eliminate nearly every indicator detracting from the [witnesses'] reliability."

*United States v. Simmons*, 771 F. Supp. 2d 908, 918 (N.D. Ill. 2011). This is a case where the

affiant "fail[ed] to provide *all* potentially adverse information" that might have undermined a

probable cause finding. *Reilly*, 76 F.3d at 1280 (emphasis added). The law requires the

17

government to include all critical exculpatory information in a warrant application.  Here, the government included none.

Sex trafficking, like child pornography, "is so repulsive a crime that those entrusted to root it out may, in their zeal, be tempted to bend or even break the rules."  *United States v. Coreas*, 419 F.3d 151, 151 (2d Cir. 2005).  When government investigators cheat to obtain warrants, "they endanger the freedom of us all."  *Id*.  In cases like this, it is essential that courts enforce the requirements of the Fourth Amendment, both to protect the individual defendant's rights and also to deter this sort of government misconduct.

### D.    The Misstatements And Omissions Were Material

There is no question, based on the above evidence, that the warrant applications contained falsehoods and misleading omissions.  The remaining question—the second prong of *Franks*—is whether those falsehoods were material.  This analysis examines what a hypothetical truthful warrant application would have stated, and whether that information would have supported probable cause.  In the case of misstatements, a reviewing court must "set aside" the misstatements and determine whether the "untainted portions" are sufficient for probable cause.  *Rajaratnam*, 719 F.3d at 146 (cleaned up).  In the case of misleading omissions, a court must "insert the omitted truths" and determine whether they undermine probable cause.  *Id*. (cleaned up).

Here, truthful applications would have stated that Victim-1's ██████████████ ████████████████████████████████████████████████████ ███████████████████████████████ but also that the relationship was long, complicated, and often loving.  They would have stated that ███████████████ ████████████████████████████████████████████████████ ████████████████ Such a truthful presentation would not have provided probable

cause for a sex trafficking charge or any other federal offense.  Still less would it have provided a basis to search everything and anything in Combs's two residences a decade later.

Truthful applications would have stated that Combs, ███████████████████ ███████████████████████████████████ They would have stated Producer-1 ██████ ████████████████████████████████████████████████████ ██████████████████████████████████████. They would have stated that ██████████████████████████████████████████████ ████████████████. Such a truthful presentation would not have provided probable cause for sex trafficking or racketeering.

Truthful applications would have stated that after ███████████████████ ████████████████████████████████████████████████████ ████████████████. They would have noted, however, that nearly all these witnesses had also ████████████████████████████████████████████████████ They would have noted that some of Combs's representatives ██████████████████ ████████████████████████████████████████████████████ ██████  Such a truthful presentation would not have provided probable cause for obstruction of justice.

The government here unfortunately demonstrated a "'dam[n] the torpedoes, full speed ahead' mentality." *United States v. Kunen*, 323 F. Supp. 2d 390, 399 (E.D.N.Y. 2004).  In its zeal to prosecute a famous target, it rushed ahead and violated the law.  It submitted an egregiously false and misleading summary of the evidence, thus denying the "neutral and disinterested magistrate" the opportunity to *independently* determine whether probable cause existed based on a fair and truthful summary of the evidence.  *Rainsberger*, 913 F.3d at 650.  It presented only inculpatory evidence, and it hid all exculpatory evidence.  These falsehoods, taken in the aggregate,

were material to the probable cause determination.  Truthful and complete applications would not have provided probable cause to search both of Combs's residences and all his devices.

## II.    THE WARRANTS WERE UNCONSTITUTIONALLY BROAD

The warrants themselves were also unconstitutionally broad.  The charges here reflect an extraordinary legal theory that Mr. Combs is himself an "enterprise" and that his businesses, his household, his personal relationships, and his sex life were all part of a criminal conspiracy.  That broad theory is alleged in the indictment and reflected in the warrants.  The government essentially took the position that everything about his life is possible evidence of a crime.  In a series of warrants, it thus sought authority to search and seize anything in (a) his iCloud account, (b) his residences, (c) his cellular phones, and (d) his hotel room.  The only limitation was that evidence had to be "related to the subject offenses"—but because the theory was that his entire life was a racketeering enterprise, that was no limitation at all.

This case "implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects."  *Gant*, 556 U.S. at 345.  That is exactly what the warrants unlawfully allowed.

### A.    The Fourth Amendment Forbids General Warrants

The Fourth Amendment's Warrant Clause requires that any valid warrant must state with particularity the place to be searched and the things to be seized.  The purpose of the particularity requirement was to prevent the government from using broad warrants to rummage through a person's whole life.  "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'"  *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980)).

A warrant must at a minimum satisfy three criteria: It must specify the offense, it must describe the place to be searched, and it must specify the relationship between the items sought and the designated crimes. *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017). In addition to those three general factors, there are also "circumstance-specific considerations" that bear on legality. *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 454 (S.D.N.Y. 2013). For example, a warrant that fails to indicate a reasonably specific date range can be constitutionally overbroad. *Id.*; *see United States v. Hernandez*, 2010 WL 26544 at *9 (S.D.N.Y. Jan. 6, 2010).

Moreover, the search and seizure of personal electronic devices raises additional concerns. The seizure of such devices "can give the government possession of a vast trove of personal information about the person to whom the drive belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure." *Ganias*, 824 F.3d at 217. "[A] cell phone search," for example, "would typically expose to the government far *more* than the most exhaustive search of a house," because "[a] phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form." *Riley v. California*, 573 U.S. 373, 396-97 (2014). Indeed, these devices contain "the privacies of life." *Id.* at 403. Warrants seeking to seize and search personal devices therefore create "serious risk that every warrant for electronic information will become, in effect, a general warrant." *Galpin*, 720 F.3d at 447. Thus, the Second Circuit has held that warrants "lack[ing] meaningful parameters on an otherwise limitless search" of a person's electronic devices are invalid. *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010).

Again, at bottom, the core abuse that the Fourth Amendment sought to prohibit was "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). That is true as to the belongings in a person's home, and as to the belongings

on a person's cell phone.  In this case, the government sought and received authority for general

exploratory rummaging through Mr. Combs's entire physical and digital life.

**B.    The Warrants Obtained By The Government In This Case Were Virtually Limitless**

The government sought warrants in this case that gave it the unfettered ability to search

Mr. Combs's residences, his digital devices and his iCloud accounts.  The government's list of

"items to be seized" from his houses was pages long, and it is stunning in its breadth.  The

government claimed the right to seize, among other things:

- Evidence of Mr. Combs's location, or anything reflecting the location of any co-conspirator or witness—which, according to the government, seems to mean anyone who ever worked for Combs or went to a party;

- Utility bills, mail, correspondence, address books;

- All calendars or scheduling information, including travel records;

- All financial records, including bank statements and credit card statements, plus all cash, property deeds or titles, or anything related to property ownership; plus any evidence relating to online financial accounts;

- Any sex toys, sexually suggestive clothing (whatever that means), plus any medical supplies or other materials possibly related to sex, plus any bodily fluid or other material that might contain DNA evidence;

- Any communication or record of communication with any former sexual partner or employee of "the Combs Business," plus any communication related to the charged offenses (which was, as noted, defined incredibly broadly) with any possible victim, coconspirators, or witnesses.

- Corporate records, including corporate organizational and ownership documents and employment records;

- Any digital device that might contain evidence, including phones, computers, iPads, and cameras.

These descriptions were often written with catch-all clauses, with regular use of phrases

like "such as," "including without limitation," and "including but not limited to."  The list above

is thus not even a remotely complete list of what the warrant sought—it merely sets forth some of the high-level categories targeted by the government.  *See* Ex.2 at Attachment B-1.

The government's warrants to search Combs's iCloud accounts and his cell phones were similarly broad.  As to what information it sought, the government may just as well have said "everything."  The iCloud warrant sought the ability to search anything stored in the accounts.  Ex.1.  The cell phone warrants—both the initial March warrants and the subsequent September warrant—sought all communications, photos, documents, calendars, location data, travel records, financial records, call records and so on—anything "related to the subject offenses."  Exs.5-8.  But because the subject offenses were defined as including all of Combs's businesses, his household, and his relationships with his girlfriends over the last two decades, it is hard to think of anything that would not have been "related to the subject offenses."

In *United States v. Wey*, Judge Nathan held that similarly broad warrants were unconstitutionally broad and suppressed the evidence obtained through the warrants.  *Wey* involved securities fraud offenses, and the government obtained warrants to search both his residence and his place of business.  256 F. Supp. 3d at 359-60.  The warrants broadly sought any and all records or evidence that might be related to the offense, including financial records, bills, messages, travel records, photographs, computers and cell phones, and so on—indeed, the broad list of "items to be seized" very much resembles the list in this case.  *See id*. at 364-65.

The district court ruled the warrants were overbroad and therefore illegal.  Several key reasons undergirded the ruling.  Although the warrants generally identified the crime as securities fraud, the categories of documents sought were so "broad and numerous as to be consistent with an investigation into almost any form of financial crime."  *Id*. at 385.  More importantly, the warrants set forth "expansive categories of often generic items subject to seizure—several of a 'catch-all' variety—without, crucially, any linkage to the suspected criminal activity, or indeed any

23

meaningful content-based parameter or other limiting principle." *Id*.  In *Wey*, as here, the listed property was not illegal contraband.  Rather, it was property in lawful use that the government only vaguely suggested might be "related" to broadly-specified criminal activity.  *Id*. (citing 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(a) (5th ed. 2012)).  In *Wey*, as here, the warrants lacked any meaningful temporal limitation on the items that could be seized.  *Id*. at 387-88.

At bottom, the warrants in *Wey* violated the Fourth Amendment because they authorized "the seizure of sweeping categories of materials" and lacked "any practical tool to guide the searching agents in distinguishing meaningfully between materials of potential evidentiary value and those obviously devoid of it." *Id*. at 386-87.  As Judge Nathan concluded, "the Warrants are—in function if not in form—general warrants."  *Id*. at 386.

The same is true here.  Indeed, the warrants here are even more infirm: whereas the warrants in *Wey* authorized unbounded search of the defendant's business affairs, the warrants here authorized unbounded search of Mr. Combs's business *and personal* affairs.  The warrants here allowed the very sort of "general, exploratory rummaging in a person's belongings," that the Fourth Amendment forbids.  *Coolidge*, 403 U.S. at 467.  Nor can the government evade the Fourth Amendment's limits simply by stating that Mr. Combs was himself a sort of "criminal racketeering enterprise" and therefore all evidence of his business and personal life was relevant evidence of a crime.  If such a rhetorical trick were allowed, the Fourth Amendment would lose all meaning.

\* \* \* \*

Lord Chief Justice Holt once famously challenged a prosecutor: "Hold, what are you doing now?  Are you going to arraign his whole life?"  *Harrison's Trial*, 12 How. St. Tr. 834, 864 (Old Bailey 1692).  That is exactly what the government did here.  It charged Mr. Combs's whole life as a racketeering enterprise, and then it obtained warrants to search his whole life.  The iCloud

warrant, the warrants to search his hoses, the cell phone warrants, and the Park Hyatt warrant were—individually and collectively—exactly the sort of "general warrants" that the Fourth Amendment sought to prohibit.

## **CONCLUSION**

For the foregoing reasons, this Court should suppress the evidence and all fruits obtained from the warrants to search Combs's residences, his person, his iCloud account, and his devices. These warrants were unconstitutionally broad.  In the alternative and at a minimum, this Court should order a *Franks* hearing to hear additional evidence and determine whether the warrants were improperly obtained through deception.

Date:  February 18, 2025                    Respectfully Submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
Shapiro Arato Bach LLP
1140 Ave of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com