UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   -v.-<br><br>SEAN COMBS,<br>     a/k/a "Puff Daddy,"<br>     a/k/a "P. Diddy,"<br>     a/k/a "Diddy,"<br>     a/k/a "PD,"<br>     a/k/a "Love,"<br><br>              Defendant. | **S1 24 Cr. 542 (AS)** |

## THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Maurene Comey
Meredith Foster
Emily A. Johnson
Christy Slavik
Madison Reddick Smyser
Mitzi Steiner
Assistant United States Attorneys
    *Of Counsel*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    I. The Charged Offenses ........................................................................................... 2

    II. The Challenged Warrants ..................................................................................... 2

ARGUMENT ....................................................................................................................... 4

    I. The Defendant Has Not Met the High Burden Required for a *Franks* Hearing
    Based on Purported Misstatements in the Affidavits .................................................. 4

        A. Applicable Law .............................................................................................. 4

            1. Reviewing a Magistrate's Probable Cause Determination ............................ 4

            2. Alleged False Statements and Omissions in a Search Warrant Affidavit ....... 5

        B. Discussion ..................................................................................................... 8

            1. The Standard Applied by the Defendant Is Unsupported by Law ................. 8

            2. The Sole Alleged Misstatement Is Not Material .......................................... 9

             3. The Challenged Alleged Omissions Were Not Material ............................. 11

                a. The Purported Omissions Related to Victim-1 Were Not Material ......... 11

                b. The Purported Omissions Related to Victim-2 Were Not Material ......... 17

                c. The Purported Omissions Related to Victim-3 Were Not Material ......... 18

                d. The Purported Omissions Related to Assistant-1 Were Not Material ...... 19

                e. The Omissions Related to Civil Litigation Were Not Material ............... 22

             4. The Defendant Has Shown No Intent to Mislead or Reckless Disregard
               for the Truth ............................................................................................... 24

            5. The Defendant Has Failed to Show that a *Franks* Hearing Is Warranted .... 30

    II. The Search Warrants Are Particular and Not Overbroad ..................................... 31

        A. Applicable Law ............................................................................................ 31

        B. Discussion ................................................................................................... 32

CONCLUSION.................................................................................................................. 35

# TABLE OF AUTHORITIES

Page(s)

Cases

*Carpenter v. United States*,
  585 U.S. 296 (2018)................................................................................................32

*Florida v. Harris*,
  568 U.S. 237 (2013)..................................................................................................4

*Franks v. Delaware*,
  438 U.S. 154 (1978).......................................................................................5, 6, 31

*Howe v. Gilpin*,
  65 F.4th 975 (8th Cir.) ...........................................................................................29

*Illinois v. Gates*,
  462 U.S. 213 (1983)..................................................................................................4

*Panetta v. Crowley*,
  460 F.3d 388 (2d Cir. 2006).....................................................................................6

*United States v. Pinto-Thomaz*,
  352 F. Supp. 3d 287 (S.D.N.Y. 2018)...................................................................35

*Rivera v. United States*,
  928 F.2d 592 (2d Cir. 1991)..................................................................................5, 7

*Texas v. Brown*,
  460 U.S. 730 (1983)..................................................................................................4

*United States v. Almaleh*,
  No. 17 Cr. 25 (ER), 2022 WL 602069 (S.D.N.Y. Feb. 28, 2022) ....................25, 26

*United States v. Awadallah*,
  349 F.3d 42 (2d Cir. 2003)...........................................................................5, 6, 31

*United States v. Bakhtiari*,
  913 F.2d 1053 (2d Cir. 1990)...................................................................................4

*United States v. Barbosa*,
  896 F.3d 60 (1st Cir. 2018)....................................................................................29

*United States v. Blauvelt*,
  638 F.3d 281 (4th Cir. 2011) .................................................................................23

*United States v. Calk*,
  No. 19 Cr. 366 (LGS), 2020 WL 3577903 (S.D.N.Y. Jul. 1, 2020) ........................6

*United States v. Canfield*,
  212 F.3d 713 (2d Cir. 2000)..........................................................................5, 8, 31

*United States v. Clark*,
  638 F.3d 89 (2d Cir. 2011).................................................................4, 32, 33, 35

*United States v. Cromitie*,
  No. 09 Cr. 558 (CM), 2010 WL 3025670 (S.D.N.Y. July 28, 2010) ....................7, 8

*United States v. Dale*,
  991 F.2d 819 (D.C. Cir. 1993)...............................................................................29

*United States v. Dupigny*,
  18 Cr. 528 (JMF) (S.D.N.Y.) .................................................................................13

*United States v. Falso*,
    544 F.3d 110 (2d Cir. 2008) ............................................................ 5, 8

*United States v. Fama*,
    758 F.2d 834 (2d Cir. 1985) ........................................................... 4, 22

*United States v. Frey*,
    736 F. Supp. 3d 128 (E.D.N.Y. 2024) ................................................. 14

*United States v. Galpin*,
    720 F.3d 436 (2d Cir. 2013) ........................................................ 32, 33

*United States v. George*,
    975 F.2d 72 (2d Cir. 1992) ................................................................ 32

*United States v. Harding*,
    273 F. Supp. 2d 411 (S.D.N.Y. 2003) ................................................. 24

*United States v. Juarez*,
    No. 12 Cr. 59 (RRM), 2013 WL 357570 (E.D.N.Y. Jan. 29, 2013) ................ 33

*United States v. Klump*,
    536 F.3d 113 (2d Cir. 2008) ................................................................ 5

*United States v. Kozminski*,
    487 U.S. 931 (1988) ........................................................................ 13

*United States v. Lahey*,
    967 F. Supp. 2d 698 (S.D.N.Y. 2013) ................................................. 7, 8

*United States v. Leon*,
    468 U.S. 897 (1984) ................................................................... 32, 35

*United States v. Maisonet*,
    No. 12 Cr. 829 (AKH), 2013 WL 12204909 (S.D.N.Y. Mar. 22, 2013) ........... 6, 30

*United States v. Mandell*,
    710 F. Supp. 2d 368 (S.D.N.Y. 2010) ............................................. passim

*United States v. Marcus*,
    487 F. Supp. 2d 289 (E.D.N.Y. 2007) ................................................. 14

*United States v. Melendez*,
    No. 16 Cr. 33 (LTS), 2016 WL 4098556 (S.D.N.Y. July 28, 2016) ................. 5

*United States v. Nejad*,
    436 F. Supp. 3d 707 (S.D.N.Y. 2020) ................................................... 6

*United States v. Nichols*,
    912 F.2d 598 (2d Cir. 1990) ................................................................ 5

*United States v. Perez*,
    247 F. Supp. 2d 459 (S.D.N.Y. 2003) ................................................. 29

*United States v. Pulley*,
    987 F.3d 370 (4th Cir. 2021) ............................................................ 26

*United States v. Rajaratnam*,
    719 F.3d 139 (2d Cir. 2013) ........................................................ passim

*United States v. Raniere*,
    18 Cr. 204 (NGG) (E.D.N.Y) ............................................................. 13

*United States v. Ray*,
    20 Cr. 110 (LJL) (S.D.N.Y.) ........................................................ 13, 14

*United States v. Rivera*,
    750 F. Supp. 614 (S.D.N.Y. 1990) ....................................................... 6

*United States v. Rivera,*
   799 F.3d 180 (2d Cir. 2015) .................................................................................. 13, 14

*United States v. Rowell,*
   903 F.2d 899 (2d Cir. 1990) ...................................................................................... 24

*United States v. Roy,*
   781 F.3d 416 (8th Cir. 2015) ..................................................................................... 14

*United States v. Rumph,*
   No. 23 Cr. 603 (ALC), 2024 WL 4503027 (S.D.N.Y. Oct. 16, 2024) ............................ 25, 26

*United States v. Sandalo,*
   70 F.4th 77 (2d Cir. 2023) ................................................................................... passim

*United States v. Thomas,*
   788 F.3d 345 (2d Cir. 2015) .................................................................................. 27, 28

*United States v. Tontisabo,*
   No. 21 Cr. 701 (LAK), 2023 WL 411622 (S.D.N.Y. Jan. 25, 2023) ............................... 31

*United States v. Ulbricht,*
   858 F.3d 71 (2d Cir. 2017) .............................................................................. 32, 33, 34

*United States v. Vilar,*
   No. 05 Cr. 621 (KMK), 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) ..................... 6, 12, 33

*United States v. Wagner,*
   989 F.2d 69 (2d Cir. 1993) ........................................................................................ 24

*United States v. Wey,*
   256 F. Supp. 3d 355, 384 (S.D.N.Y. 2017) .......................................................... 34, 35

*United States v. Yusef,*
   461 F.3d 374 (3d Cir. 2006) ...................................................................................... 29

*Wilson v. Russo,*
   212 F.3d 781 (3d Cir. 2000) ........................................................................................ 9

Statutes

18 U.S.C. § 1591 .......................................................................................................... 2, 13
18 U.S.C. § 1962(d) .......................................................................................................... 2
18 U.S.C. § 2421(a) .......................................................................................................... 2
U.S. Const. amend. IV ...................................................................................................... 4

Rules

Fed. R. Crim. P. 41(e)(2)(B) ............................................................................................. 33

## PRELIMINARY STATEMENT

The Government respectfully submits this opposition to the defendant's motion to suppress.  In an attempt to suppress powerful electronic evidence of his guilt, the defendant makes two challenges to the search warrants authorizing the evidence's seizure.  Neither challenge meets the demanding standard for suppression, and the motion should be denied without a hearing.

The defendant first alleges that the Government knowingly misled magistrate judges who authorized search warrants by submitting affidavits containing false statements and omissions. The only thing actually misleading, however, is the defendant's repeated emphasis on what the factfinder "would wish to know," rather than on the well-established standard in the Second Circuit for evaluating intent.  The defendant only prevails on his motion to suppress where the Court determines that material information was not included in a warrant affidavit *and* that the material information was omitted due to the affiant's subjective intent to mislead or reckless disregard for the truth.  Here, he falls far short of the substantial preliminary showing required for both materiality and intent in order to justify further factfinding.

The defendant's second challenge, that the warrants are overbroad, also fails.  The defendant incorrectly argues that the warrants authorized the Government to search "everything" in the defendant's cloud accounts, residences, and cellphones, ignoring the warrants' specific and detailed categories of highly relevant information and materials to be seized, each of which was amply supported by probable cause.  This alone dooms the defendant's overbreadth challenge.  But even if the warrants did suffer some defect, which they do not, suppression would nonetheless be inappropriate because of the executing agents' objectively reasonable reliance on the warrants.

## BACKGROUND

### I.  The Charged Offenses

On September 12, 2024, the grand jury returned Indictment 24 Cr. 542 charging the defendant in three counts: (1) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) ("Count One"); (2) sex trafficking, in violation of 18 U.S.C. §§ 1591 and 2 ("Count Two"); and (3) interstate transportation to engage in prostitution, in violation of 18 U.S.C. §§ 2421(a) and 2 ("Count Three").  (Dkt. No. 1).  On January 30, 2025, the grand jury returned a Superseding Indictment (the "Indictment"), which included additional allegations in Count One.  (Dkt. No. 144).  As charged in the Indictment, the defendant, often assisted by other members and associates of the racketeering enterprise (the "Enterprise"), engaged in numerous offenses, including sex trafficking, forced labor, other acts of sexual and physical violence, bribery, and obstruction.  (*Id.* ¶¶ 1-14).  The Enterprise was made up of the defendant, corporate entities he controlled, and individuals employed by those corporate entities, among others.  (*Id.* ¶ 7).

### II.  The Challenged Warrants

Prior to the grand jury's return of the Indictment, multiple magistrate judges in three federal districts authorized search warrants for, among other things, the defendant's cloud accounts, his two primary residences, and multiple electronic devices.  As relevant to the instant motion, the following warrants (collectively, the "Warrants") were issued:

- **January 2024 iCloud Warrant**: On January 4, 2024, the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York, issued a warrant (the "iCloud Warrant") authorizing the search of two Apple iCloud accounts—an iCloud account associated with sc@badboyworldwide.com (the "SC Bad Boy iCloud") and an iCloud account associated with pdteam69@icloud.com (the "PD Team iCloud")—believed to be used by the defendant.

- **March 2024 Premises Warrants**: On March 22, 2024, the Honorable Lauren F. Louis, United States Magistrate Judge for the Southern District of Florida, issued a warrant (the "Miami Warrant") authorizing the search of 2 Star Island, Miami Beach, Florida, which is the defendant's residence in Miami (the "Miami House"), including all electronic devices found within the Miami House.  On that same day, the Honorable Alicia G. Rosenberg, United States

Magistrate Judge for the Central District of California, issued a warrant (the "LA Warrant," and collectively with the Miami Premises Warrant, the "March 2024 Premises Warrants") authorizing the search of 200 South Mapleton Drive, Los Angeles, California, which is the defendant's residence in Los Angeles (the "LA House"), including all electronic devices found within the LA House.

- **March 2024 Person Warrant**: On March 25, 2024, the Honorable Eduardo I. Sanchez, United States Magistrate Judge for the Southern District of Florida, issued a warrant (the "March 2024 Person Warrant") authorizing the search of Combs' person for all electronic devices, and two specifically identified phones (together with the March 2024 Premises Warrants, the "March 2024 Warrants").

- **September 2024 Warrants**: On September 16, 2024, the Honorable Robyn F. Tarnofsky, United States Magistrate Judge for the Southern District of New York, issued a warrant (the "September 2024 Person Warrant") for Combs' person, as well as two electronic devices used by him.  That same day, the Honorable Robyn F. Tarnofsky, United States Magistrate Judge for the Southern District of New York, issued a warrant (the "New York Warrant," and together with the September 2024 Person Warrant, the "September 2024 Warrants") for the hotel room in Manhattan where the defendant was then residing.

With respect to each of these warrants, the magistrate judge who authorized the warrant necessarily found that the underlying affidavit articulated both probable cause that the defendant committed certain subject offenses, and probable cause that the relevant premises, devices, and accounts would contain evidence of those offenses.  Some of the subject offenses listed in the warrants included racketeering conspiracy; sex trafficking; travel, or enticement to travel, with intent to engage in illegal sexual conduct; obstruction of justice; and conspiracy to distribute or possess with intent to distribute controlled substances.

The defendant moves to suppress the evidence obtained pursuant to the iCloud Warrant and the March 2024 Warrants, alleging the warrant affidavits (together, the "Affidavits") contained misstatements and omissions.  (Br. at 3-20).[1]  The defendant further challenges the Warrants as allegedly overbroad and insufficiently particularized.  (*Id.* at 20-25).

---

[1] The defendant does not allege any false statements or omissions in the September 2024 Warrants. (*See* Br. at 2 & n.1).

## ARGUMENT

### I. The Defendant Has Not Met the High Burden Required for a *Franks* Hearing Based on Purported Misstatements in the Affidavits

#### A. Applicable Law

##### 1. Reviewing a Magistrate's Probable Cause Determination

The Fourth Amendment provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[2]  U.S. Const. amend. IV.  Probable cause is a "flexible, common-sense standard," *Texas v. Brown*, 460 U.S. 730, 742 (1983), requiring a case-by-case analysis of the totality of the circumstances, *see Illinois v. Gates*, 462 U.S. 213, 230 (1983). In considering a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.  Probable cause requires only a "probability or substantial chance of criminal activity"— not an actual showing of criminal activity.  *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990).  The question is always whether all the available facts, "viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime."  *Florida v. Harris*, 568 U.S. 237, 248 (2013).  That "an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985).

A magistrate judge's probable cause determination is afforded significant deference by reviewing courts.  *See United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("[A] court reviewing

---

[2] Unless otherwise noted, quotations omit internal quotation marks, citations, and previous alterations.

a challenged warrant . . . must accord considerable deference to the probable cause determination of the issuing magistrate."); *see also United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990) ("A magistrate's finding of probable cause to believe that evidence of a crime would be found on a defendant's premises is entitled to substantial deference on appeal.").

### 2. Alleged False Statements and Omissions in a Search Warrant Affidavit

A search warrant affidavit is presumed reliable. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). "In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). Not every statement in a warrant affidavit must be true. *See United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000). To invoke the *Franks* doctrine, the defendant must demonstrate that there were intentional misstatements or omissions in the search warrant affidavit and that those misstatements or omissions were material. *See Awadallah*, 349 F.3d at 64. The defendant must establish both components—*i.e.*, intent and materiality—by a preponderance of the evidence. *See Klump*, 536 F.3d at 119.

"The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991). To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit *and* the statement was necessary to the judge's finding of probable cause. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). This burden is a heavy one, and such hearings are rare. *See, e.g.*, *United States v. Sandalo*, 70 F.4th 77, 86 (2d Cir. 2023) (describing the necessary burden as "a heavy one that requires more than a mere conclusory showing"); *United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016) ("The burden to obtain [a *Franks*] hearing is a heavy one, and such hearings are exceedingly rare.").

"Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge." *United States v. Nejad*, 436 F. Supp. 3d 707, 719 (S.D.N.Y. 2020); *see Franks*, 438 U.S. at 171 ("[T]he challenger's attack [on the affidavit] must be more than conclusory and must be supported by more than a mere desire to cross-examine.").

In reviewing a challenge to a warrant, alleged "[o]missions are not subject to the same high level of scrutiny as misstatements." *United States v. Rivera*, 750 F. Supp. 614, 617 (S.D.N.Y. 1990). Because "all storytelling involves an element of selectivity," it is "not shocking that every affidavit will omit facts which, in retrospect, seem significant." *United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041, at *27 (S.D.N.Y. Apr. 4, 2007); *see also Awadallah*, 349 F.3d at 67. "[A]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Mandell*, 710 F. Supp. 2d 368, 373 (S.D.N.Y. 2010). Thus, "as a practical matter the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory." *Id.* at 374. This is because "allegations of omission potentially open officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Id.*

As a result, the law recognizes that while "an officer may not disregard plainly exculpatory evidence," *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006), an affiant is "not required to include all potentially exculpatory information" in seeking the search warrant, *United States v. Maisonet*, No. 12 Cr. 829 (AKH), 2013 WL 12204909, at *1 (S.D.N.Y. Mar. 22, 2013); *see also United States v. Calk*, No. 19 Cr. 366 (LGS), 2020 WL 3577903, at *8 (S.D.N.Y. July 1, 2020). Indeed, "[a] requirement that all potentially exculpatory evidence be included in an affidavit would severely disrupt the warrant process and place an extraordinary burden on law enforcement

6

officers, and is not the law." *United States v. Cromitie*, No. 09 Cr. 558 (CM), 2010 WL 3025670, at *6 (S.D.N.Y. July 28, 2010). Accordingly, "[o]mitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing." *Mandell*, 710 F. Supp. 2d at 374.

A motion based on purported omissions must meet an even stricter standard. The Second Circuit has instructed reviewing courts to assess whether there is "credible and probative evidence" that the affiant's omission of material information was "designed to mislead" or "made in reckless disregard of whether it would mislead." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013). Contrary to the defendant's assertions, a search warrant affiant "does not necessarily act with reckless disregard for the truth simply because he or she omits certain evidence that a reviewing court, in its judgment, considers to be clearly critical." *Id.* Rather, "[t]o prove reckless disregard for the truth, the defendant[] must prove that the affiant in fact entertained serious doubts as to the truth of his allegations." *Id.*

To assess an affiant's intent in the context of omissions, the Second Circuit has weighed whether the omitted material was "clearly critical" to the probable cause determination. *See Rivera*, 928 F.2d at 604 (noting that recklessness can be inferred where the omitted information was "clearly critical"). In *Rajaratnam*, the Second Circuit clarified that, standing alone, showing that omitted information was "clearly critical" is insufficient to establish that an affiant acted with reckless disregard for the truth. 719 F.3d at 154; *see also United States v. Lahey*, 967 F. Supp. 2d 698, 709-10 (S.D.N.Y. 2013). While recklessness can be inferred based on the totality of the circumstances, the inquiry assesses the subjective intent of the affiant, not the objective intent of a reasonable person. *Rajaratnam*, 719 F.3d at 154-55 ("[A]n inference is not to be automatically drawn simply because a reasonable person would have included the omitted information and the inference is particularly inappropriate where the government comes forward with evidence

7

indicating that the omission resulted from nothing more than negligence, or that the omission was the result of a considered and reasonable judgment that the information was not necessary."). Allegations of negligence or innocent mistake are insufficient, as the relevant inquiry is not "whether a mistake was made" but instead "on the intention behind the mistake." *Cromitie*, 2010 WL 3025670, at *2; *see also Falso*, 544 F.3d at 127-28.

"To determine if misrepresentations or omissions are material, a court corrects the errors and then resolves de novo whether the hypothetical corrected affidavit still establishes probable cause." *Lahey*, 967 F. Supp. 2d at 711.  "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Canfield*, 212 F.3d at 718.  In other words, "[t]he ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *Id.*

### B.  Discussion

The defendant fails to demonstrate that there were intentional misstatements or omissions in the Affidavits and that those misstatements or omissions were material.  To the contrary, the defendant relies on rank, unsupported assumptions about the Government's access to and knowledge of facts at particular points in time during its long-term investigation of the defendant's crimes.  Moreover, and fatal to his motion, the defendant makes no attempt to show that the affiant acted with the subjective intent to mislead the issuing magistrate judges or with reckless disregard for the truth.  *See Sandalo*, 70 F.4th at 86 (the substantial preliminary showing standard "requires more than a mere conclusory showing").  His motion therefore should be denied without a hearing.

### 1.  The Standard Applied by the Defendant Is Unsupported by Law

Although the defendant repeatedly claims the Affidavits contain material misrepresentations, the defendant identifies only a single allegedly false statement contained in the

Affidavits themselves. The defendant mainly relies on purported omissions that the defendant asserts should have been included in the Affidavits. None of those alleged omissions, however, are material to probable cause. In an attempt to circumvent the Second Circuit's well-established framework for evaluating intent, the defendant relies repeatedly on his own standard for "the kind of thing the judge would wish to know"—language taken from a "but see" citation in *Rajaratnam*. There, the Second Circuit was highlighting the objective intent standard used by some other circuits, one that this Circuit declined to adopt. *See Rajaratnam*, 719 F.3d at 154 (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). The defendant's attempt to lower the bar to obtain a *Franks* hearing is contrary to the law of this Circuit. Rather, to obtain a hearing, he must make a substantial preliminary showing both that the omissions were material and that the affiant acted intentionally or with reckless disregard for the truth. He cannot do either.

### 2. The Sole Alleged Misstatement Is Not Material

The defendant's sole claim that the Affidavits contain material misrepresentations relies on information contained in the March 2024 Warrants from Producer-1, ███████████████████████ ████████████████████████████████████████████. (*See* Br. at 14-15). The Affidavits stated that Producer-1 had reported ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ (LA Warrant ¶ 27(a)-(b)).[3]

The defendant argues that Producer-1's statements regarding ████████████ were "never credible" and that ████████████████████████████████████████████████████

---

[3] While the citations to the affidavits herein are to the LA Warrant specifically, the substance of the affidavit in support of the LA Warrant is essentially identical to the affidavit in support of the Miami Warrant and the March 2024 Person Warrant, as noted by the defense. (Br. at 2 n.1).

█████  (Br. at 14).  But as described in the Affidavits themselves, Producer-1's statements on this topic were corroborated by another witness relied on in the Affidavits—identified as "Assistant-1"—who described █████████████████████████████████ [4]  That the Affidavits contain similar information from Assistant-1 renders Producer-1's statements immaterial: even if Producer-1's statements were removed from the Affidavits, the evaluating magistrate judge could easily find probable cause based on essentially the same facts.

Moreover, even setting aside any witness's observations of █████████, the Affidavits contained more than sufficient evidence to find probable cause as to narcotics offenses.  The Affidavits catalogue numerous witness observations about ████, including the following:

- According to Victim-1, ████████████████████████████████████████ ████████████████████████████████████████████ (LA Warrant ¶ 11(e)).

- According to Sex Worker-1, ████████████████████████████████ ████████████████████████████ (*Id.* ¶ 11(e)).

- According to a holistic doctor █████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ (*Id.* ¶ 24).

- According to Designer-1, ██████████████████████████████ ████████████████████ (*Id.* ¶ 26(a)-(b)).

- According to Assistant-1, ██████████████████████████████ ████████████████ (*Id.* ¶ 23).

- According to a chef who worked for the defendant, ██████████████ ████████████████ (*Id.* ¶ 25).

---

[4] *See, e.g.*, LA Warrant ¶ 23 (██████████████████████████████ ████████████████████████████████████████").

In addition to witness statements, the Affidavits cited numerous text messages addressing ███, including the following:

- ███████████████████████████████████
  ███████ (*Id.* ¶ 16(b)(viii) & n.13).

- ███████████████████████████████████
  ███████████████████████ (*Id.* ¶ 16(d)(vii), (ix)).

- ███████████████████████████████████
  ███████████ (*id.* ¶ 16(h)(iv)),
  ███████████ (*id.* ¶ 16(k)).

- ███████████████████████████████████
  ██████ (*See id.* ¶ 16(a)(ii), (f)(v)-(vi)).

Thus, setting aside both Producer-1 and Assistant-1's references to ████████, "there remains sufficient content in the warrant to support a finding of probable cause" as to narcotics offenses, rendering any purported misstatement from Producer-1 immaterial. *Sandalo*, 70 F.4th at 85.[5]

### 3. The Challenged Alleged Omissions Were Not Material

#### a. The Purported Omissions Related to Victim-1 Were Not Material

The defendant argues the Affidavits failed to inform the magistrate judges of ████
███████████████████████████████████
██████████████████████████ (Br. at 8, 19).

Specifically, the defense argues the Government was required to inform magistrate judges of (1)
███████████████████████████████████

---

[5] Although the defendant attacks Producer-1's credibility, Producer-1's statement that ████
████████ (LA Warrant ¶ 27(a)). During the searches of the defendant's residences, law enforcement located ████████

███████████████████████████████████, and (2) █████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███. (Br. at 5-7).  The defendant's argument fails because these omissions do not defeat probable

cause for sex trafficking—or any of the other subject offenses related to the same conduct relating

to Victim-1, including Mann Act and narcotics offenses—and are thus immaterial.  Further, the

defendant cannot rely on second-guessing the "element of selectivity" that is inherent in "every

affidavit" to seek suppression of the Government's evidence.  *Vilar*, 2007 WL 1075041, at *27.

        The Affidavits detail Victim-1's account ██████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████.  (LA Warrant ¶¶ 11(a),

11(e), 11(h)-(j)).  The Affidavits  also include ███████████████████████████████

███████████████████████████████ (*See e.g.*, *id.* ¶ 11(h) (Sex Worker-1 observed █████████

██████████████████████████);[6] ¶ 11(n) (Assistant-1 observed █████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████; ¶ 11(q) (Designer-1 observed █████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████).  Moreover, the  Affidavits  detail

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████, further supporting a finding

of probable cause.  (*See, e.g.*, *id.* ¶¶ 11(a), 11(b)); *United States v. Kozminski*, 487 U.S. 931, 948,

952 (1988) (noting in forced labor case that "the vulnerabilities of the victim are relevant in

---

[6] Although the defendant alleges that the Government omitted certain observations of Sex Worker-1 from the Affidavits, as detailed *infra* Section I.B.4, the Government did not have this information before March 2024, when the Affidavits were reviewed by magistrate judges.

determining whether the physical or legal coercion or threats thereof could plausibly have compelled the victim to serve."). This information was more than adequate to establish probable cause for the Affidavit's sex trafficking offense.

To establish sex trafficking in violation of 18 U.S.C. § 1591(a)(1), the Government must show that the defendant knew, or recklessly disregarded, that force, threats of force, fraud, or coercion, or any combination of such means, would be used to cause Victim-1 to engage in a commercial sex act. *See United States v. Ray*, 20 Cr. 110 (LJL) (S.D.N.Y. Apr. 5, 2022) (Dkt. 540 at 137) (final jury charge); *see generally United States v. Dupigny*, 18 Cr. 528 (JMF) (S.D.N.Y. Jan. 17, 2020) (Dkt. 268 at 170-74) (same); *United States v. Raniere*, 18 Cr. 204 (NGG) (E.D.N.Y. June 18, 2019) (Dkt. 728 at 97-99) (same). A *single instance* in which a defendant used force, threats of force, or coercion to cause a victim to perform a commercial sex act is sufficient. *Ray*, 20 Cr. 110 (Dkt. 540 at 147-48). Relatedly, a victim's prior acquiescence does not preclude a finding that the victim was later compelled to engage in commercial sex through the use of force or coercion. *See United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015) ("[p]rior sexual conduct for money or pleasure was irrelevant to whether the victims' sexual activities . . . were the result of coercion."); *see also United States v. Frey*, 736 F. Supp. 3d 128, 139 (E.D.N.Y. 2024) ("[The victims'] initial consent to commercial sex does not mean that the[y] . . . therefore consented to being threatened or coerced into performing sexual acts they did not wish to perform."); *United States v. Marcus*, 487 F. Supp. 2d 289, 299-311 (E.D.N.Y. 2007), *vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008) (rejecting claim that defendant could not be convicted of sex trafficking based on conduct that took place as part of an "intimate, domestic relationship" that started as consensual). In other words, a sex trafficking victim need not experience force or coercion during the entire period in which he or she engaged in commercial sex acts.

13

Accordingly, whether the defendant also engaged in non-criminal sexual conduct during his relationship with Victim-1 is irrelevant to a finding of probable cause that he sex trafficked Victim-1. All that is required is a finding of probable cause that the defendant caused Victim-1 to engage in a *single* instance of commercial sex through means of force or coercion. *Ray*, 20 Cr. 110 (Dkt. 540 at 147-48). Similarly, ██████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████ Thus, messages that the defendant argues ███████████████ ██████████████████ do not defeat a finding of probable cause that the defendant committed sex trafficking. *See Rivera*, 799 F.3d at 185; *Frey*, 736 F. Supp. 3d at 139; *Marcus*, 487 F. Supp. 2d at 299-311; *see also United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) (affirming exclusion of evidence of victim's prior prostitution as irrelevant to defendant's charged conduct of sex trafficking). Omission of such facts from the Affidavits cannot be material.

Moreover, ██████████████████████████████████████████████████ was "potentially relevant," it certainly is not "dispositive" as required to warrant a *Franks* hearing. *Mandell*, 710 F. Supp. 2d at 374. *First*, if the Affidavits included the alleged omissions, that would not negate the showing of probable cause that the defendant engaged in at least a single instance of commercial sex through force, fraud or coercion. As set forth above, the Affidavits contained detailed, corroborated facts supporting probable cause to find the defendant trafficked Victim-1 on more than one occasion.

*Second*, the "context" that the defendant claims is demonstrated through his cited █████ █████████████████ is already implicit in the Affidavits' description of ███████████ ████████████████████ The Affidavits detailed ████████████████████████████ ███████████████████████████████████████████████████████████████████████████

14

███████████████████████████████████████████ (*See* LA Warrant ¶ 11(a)). A reasonable

inference from the Affidavits is that ████████████████████████████████████████

████████████████████████████████████████ Accordingly, the text

messages presented by the defendant ███████████████████████████████████

████████████ do not negate a finding of probable cause. (Br. at 8).

    *Third*, the excerpted text messages that the defendant claims are material omissions were

cherry picked by the defendant to illustrate his point about "context," but in fact are part of larger,

incriminating conversations. This fuller context further limits any probative value the defendant's

cited messages could have in negating probable cause. For example, ███████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. A, at 2). Between the

messages identified by the defendant in Exhibit 10, and those in Exhibits 11 and 12, ██████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████ [7] (Ex. B, at 3).

    Nowhere is the defendant's selectivity more apparent than the messages the defendant cites

█████████████████████████████████████████████████████████████

████████████████████████████████████████. The defendant asserts that the

---

[7] The defendant's argument that the Affidavits suggest ███████████████████████████████ is
equally misguided. (Br. at 9). Indeed, the Affidavits describe that ██████████████

█████████████████████████████████████████████████████████████

(LA Warrant ¶ 11(c)). The defendant's contention that this information was omitted from the
affidavits is therefore simply incorrect.

Government intentionally omitted messages ██████████████████████████ ██████████████████████████████████████ (Br. at 8, Ex. 21). But the defense fails to reference messages ██████████████████████████ ████████████████████████████████ For example, ████████ █████████████████████████████████████████████████ █████████████████████████████████████████████████ (Ex. C, at 104-05). █████████████████████████████████████████████████ █████████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████████████████████████████████████" (Ex. C, at 194-95).   Had the Government "fully disclos[ed] the details" of the ██████████████ █████████████████████████, it "would only have strengthened" a finding of probable cause. *Rajaratnam*, 719 F.3d at 155.

Even assuming *arguendo* any of the omissions regarding Victim-1 were material, the March 2024 Premises Warrants and the March 2024 Person Warrant set forth sufficient probable cause to believe that the defendant engaged in sex trafficking of *other* victims.  The defendant ignores these facts altogether.[8]  As detailed below, the March 2024 affidavits demonstrated probable cause that the defendant used fraud and coercion to ███████████████████ ██████████████ (LA Warrant ¶ 16), and that he used force and coercion ████████████ ██████████████████████████, (*see id.* ¶¶ 19-20).  Thus, even independent of Victim-

---

[8] As detailed below, the affidavit in support of the iCloud Warrant was drafted before the Government had obtained ████████ text messages, which were backed up to the defendant's cloud accounts.

1—and certainly when taken together—the Affidavits provide ample evidence for the reviewing judge to find probable cause that the defendant committed sex trafficking.

Finally, the defendant's arguments concerning Victim-1 are directed almost entirely at the sex trafficking subject offense in the Warrants, even though the facts at issue are also evidence of multiple other subject offenses. The defendant makes no attempt to explain how inclusion of the alleged omissions would defeat probable cause as to those subject offenses, including, for example, the Mann Act subject offense, for which consent is not a defense. Indeed, the Affidavits contain substantial evidence that the defendant transported others for the purpose of engaging in commercial sex acts. Similarly, the defendant merely mentions in passing that the alleged omissions negate probable cause of the racketeering conspiracy. That is far from sufficient to carry his burden. Indeed, the Affidavits repeatedly mention ██████████████████████

██████████████████████████████████████████████████████████████

██████████████████ (*Id.* ¶ 11(j), (l), (n), (p)). As a result, even if probable cause were defeated as to sex trafficking—and it is not—the evidence sought by the Warrants could nevertheless be seized as evidence of violations of the Mann Act, racketeering conspiracy, and other federal offenses. The defendant's request for suppression must be denied on this basis as well.

### b. The Purported Omissions Related to Victim-2 Were Not Material

As discussed above, aside from the iCloud Warrant, the Affidavits did not rely on Victim-1 as the sole victim ██████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████ (*See id.* ¶¶ 14-16). The defendant argues that the Affidavits' inclusion ██████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████ (Br. at 15). This is incorrect.

17

*First*, the Affidavits contained no identifiable omissions as to Victim-2's ███████████ ██████████████ The Affidavits explain, for instance, that ███████████ ███████████████████████████████████████████████████████████ ██████████████ (*See, e.g.,* LA Warrant ¶¶ 14 n.8, 16(n) & n.14).

*Second*, the inclusion of additional messages identified by the defendant ████████ ████████████████████████ would not negate the basis for finding probable cause to believe that Victim-2 ███████████████████████ The Affidavits catalogue more than a dozen examples demonstrating ████████. (*See id.* ¶¶ 14 n.8, 16(e)(iv), (g)(iii)-(iv), (h), (j)).  For example, ███████████████████████████████████ ██████████████████████████████████████████████ (*Id.* ¶ 16(g)(iii)). Later that day, ██████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████ (*Id.* ¶ 16(g)(iv); *see also id.* ¶ 16(h)(i)-(iv)).  Considered together, evidence indicating that ████████████ ███████████████████████████████████████████████████ ██████████████████.

### c. The Purported Omissions Related to Victim-3 Were Not Material

The Affidavits (with the exception of the iCloud Warrant) also described ████████████ ██████████████████████.  While the Affidavits do not allege that █████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████.  (*Id.* ¶ 19).  The Affidavits also describe how the defendant █████████████ █████████████████████████████████████████████████████. (*Id.*).

The defendant claims that the Affidavits' omission ████████████████████
████████████████████████████. (Br. 15-16).  But the law does not require an affiant
to include "every piece of information gathered in the course of an investigation." *Mandell*, 710
F. Supp. 2d at 373.  A cherry-picked selection ███████████████████████████
███████████████████████████████████████████████████
██████████. Indeed, as the defendant is well aware, Victim-3 ███████████████████
███████████████████████████████████████████████████
██████████.[9]  Accordingly, there is no material omission with respect to Victim-3.

### d. The Purported Omissions Related to Assistant-1 Were Not Material

The Affidavits describe ██████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████ (*See* LA Warrant ¶¶ 28-34).  █████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████ (*See id.* ¶¶ 11(b),
(n), (o), 23; *see also id.* ¶ 11(l), 12 █████████████████████████████ As detailed
in the Affidavits, ████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████ (*Id.* ¶ 30(a)).  ████████████████
███████████████████████████████████████████████. (*Id.* ¶
30(b)).  ████████████████████████████████████████████████████
███████████████████████████████████████████████████

---

[9]    Available    at    ████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████

█████████ (*Id.*). ████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ (*Id.*). █████████████████

████████████████████████████████████████████████████

████████████████████████████ (*Id.* ¶ 31).

  The defendant does not dispute that ███████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████ Instead, the defendant

argues that the Affidavits' account of ███████████████████████

████████████████████████████████████████████████████

█████████. (*See* Br. at 13). Setting aside that the Government did not have this full thread until

months after the challenged warrants were issued, *see infra* Section I.B.4, which itself is

dispositive of this argument, the inclusion in the Affidavits of the full set of messages would have

only strengthened the obstruction case against the defendant and his co-conspirators and therefore

cannot be material to the finding of probable cause. *See Rajaratnam*, 719 F.3d at 155 n.18

(explaining that whether "an omission would have strengthened or weakened" an application is

relevant both to the materiality and intentionality questions).[10]

  During the relevant conversation, ████████████████████████

████████████, (LA Warrant ¶ 31(a)-(b)), ████████████████████████

---

[10] The defendant also notes that ███████████████████████
██████████████████████████ (Br. at 13). Although the defendant implies
otherwise, █████████████████████████████ (*See* LA Warrant ¶ 31(a) (
█████████████████████████████████████ ")).

████████████████████████████████████████████████████████ (Def.

Ex. 29 ███████████████████████████████████████████████

████████████████████████████████████████████████ )). ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ *Cf. Mandell*, 710 F. Supp. at 378-79 (finding no material omission

in fraud case where affidavit omitted defendant's recording in which he told brokers "not to make

misrepresentations" and to be "brutally honest with potential investors," explaining that "a

successful fraud often involves telling sufficient truth so that the half-truth and the non-truth can

be fully effective").  Moreover, while the defendant argues that these texts ███████████

███████████████████████████ " (Br. at 13), "the fact that an innocent explanation may

be consistent with the facts alleged . . . does not negate probable cause." *Fama*, 758 F.2d at 838.

Had the broader context been included in the Affidavits, it would have been even clearer

to the magistrate judge that there was no innocent explanation ████████████.  That is because

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ For

example, ████████████████████████████████████████████████

███████████████████████████████████████████████████████ (Ex.

D, at lines 46, 48). ██████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████ (Ex. D, at lines 49-50, 54-55; Ex. E). ███████



." (Ex. D, at line 51).

(Ex. D, at lines 56-57).

(Ex. D, at line 60).

strongly supports the inference that

Accordingly, the text messages included in the Affidavits were not simply "a few quotes out of context" that "presented the magistrate with a completely distorted picture of what happened." (Br. at 13). To the contrary, they were evidence that the defendant engaged in obstruction.

### e. The Omissions Related to Civil Litigation Were Not Material



The defendant also argues that the Affidavits omitted discussion of certain witnesses' "financial incentive to fabricate and embellish" by failing to describe the witnesses'

Specifically, the defendant argues that the Affidavits improperly omitted

(Br. at 10, 12). In addition, the defendant claims that the Affidavits failed to disclose that

(Br. at 14-17). To the extent these constitute omissions, none were material.

*First*, the Affidavits did, in fact, reference

(LA Warrant ¶ 30(a)).[11] *Second*, because

the inclusion of that

---

[11] As described below, the Government was not aware of

Similarly, the Government was not aware of

As such, any omission of this information clearly cannot satisfy the intent prong of the analysis.

allegedly omitted information "would have only strengthened" a finding of probable cause because at the time the information was provided to the Government, these witnesses had no possible financial incentive to falsify their stories. *Rajaratnam*, 719 F.3d at 155. *Third*, even if the Affidavits had included details ██████████████████████████████████, there would still have been ample evidence to corroborate those witnesses' statements and support a finding of probable cause. *See, e.g.*, *United States v. Blauvelt*, 638 F.3d 281, 289-90 (4th Cir. 2011) (noting there would still have been sufficient basis for a finding of probable cause where affidavit omitted fact that witness was "engaged in child support and custody litigation [with the defendant] at or near the time of this incident" and "had previously filed a complaint leading to [the defendant]'s arrest" since "probable cause was not based solely on the word of [the witness]" and was therefore supported by "the totality of the circumstances").

Moreover, the defendant cites no case law requiring a search warrant affidavit to describe civil litigation, whether settled or pending, by a civilian victim or witness against a subject. The defendant relies instead on cases evaluating omissions related to the financial incentives of a confidential source or informant. (Br. at 10-11). While the Government does not dispute that the credibility of witnesses cited in a search warrant affidavit is relevant regardless of the witness's status, there are important distinctions between a professional or repeat informant and a lay witness or victim. Informants provide information to the Government in exchange for money or other tangible benefits, often repeatedly, and courts focus on the indicia of reliability for that information. *See United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir. 1993) ("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."). As a result, search warrants relying on a confidential informant should contain facts demonstrating the informant's "proven track record for reliability or corroboration."

23

*United States v. Harding*, 273 F. Supp. 2d 411, 418-19 (S.D.N.Y. 2003). The same requirement reasonably does not exist for victims and witnesses. *See id.* (distinguishing between information provided by victim-witnesses, for which corroboration is unnecessary, and for professional informants); *see also United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) ("The informants described in the [] affidavit were witnesses to [the defendant's] involvement in narcotics activity. They were not professional informants whose reliability might be suspect. A witness to a crime need *not* be shown to have been previously reliable before the authorities may rely on his statements."). Moreover, the statements made by victims and witnesses involved in civil litigation against the defendant were corroborated in the Affidavits through similar statements by numerous other witnesses ██████████████████████████████████, as detailed above. Accordingly, the defendant provides no support for his position that the alleged omissions of civil suits and demands were material.

### 4.   The Defendant Has Shown No Intent to Mislead or Reckless Disregard for the Truth

Setting aside his failure to satisfy the materiality requirement, the defendant's request for suppression—or even a *Franks* hearing—fails for the additional reason that he cannot make even a preliminary showing of an intent to mislead or reckless disregard for the truth. *Sandalo*, 70 F.4th at 85. On this point, the defendant relies solely on rank speculation and aspersions as to what the affiant knew and what the defendant believes the affiant should have investigated. But the Second Circuit is clear that more than a defendant's "mere conclusory" showing of the affiant's subjective intent to mislead the court is required to obtain a *Franks* hearing. *Id.* at 86. As described below, many of the defendant's claims about the Government's knowledge and bad actions are baseless— some of them are even directly contradicted by materials the defense had at the time of their motion. But the Court need not accept the Government's factual proffers to find, as it should, that

the defendant has failed to meet his burden of a substantial preliminary showing that the affiant acted with an intent to mislead or reckless disregard for the truth when submitting the Affidavits.

For almost all of the alleged omissions, the defendant has failed to make any showing that the affiant was even *aware* of the information, let alone a "substantial preliminary showing" that he omitted the information in an attempt to mislead the magistrate judge. *See United States v. Rumph*, No. 23 Cr. 603 (ALC), 2024 WL 4503027, at *7 (S.D.N.Y. Oct. 16, 2024) (denying *Franks* hearing where defendant presented no evidence that affiant was aware of alleged omitted fact "at the time of the warrant affidavits"); *United States v. Almaleh*, No. 17 Cr. 25 (ER), 2022 WL 602069, at *14 (S.D.N.Y. Feb. 28, 2022) (similar); *see also United States v. Pulley*, 987 F.3d 370, 379 (4th Cir. 2021) ("An officer who does not personally know information cannot intentionally or recklessly omit it[.]").  Nor could he because the affiant learned of most of the allegedly omitted information *after* the Affidavits were submitted.

As to other information the defendant claims was omitted, while in the Government's possession, the defendant has no basis to claim it was intentionally omitted.  In particular, before the March 2024 Warrants, the Government was in possession of the contents of the █████████ iCloud and a number of Victim-1's electronic devices that contained communications between Victim-1 and the defendant, some of which the defendant alleges should have been included in the Affidavits.[12]  This data totaled well over one terabyte.  Although the Government had begun its review of seven of Victim-1's electronic devices and the ████████ iCloud before the March

---

[12] The Case Team had not received any extractions of Victim-1's electronic devices before submitting the affidavit in support of the iCloud Warrant.

2024 Warrants were issued, that review was ongoing at the time the Warrants were authorized.[13]

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████.  Because of the ongoing review, the affiant had not yet seen the information that

the defendant is claiming to have been intentionally omitted.  Of course, if the Government was

not yet aware of these text messages, the affiant could not possibly have omitted them from the

Affidavits in an attempt to mislead the court.  *See Rumph,* 2024 WL 4503027, at \*7; *Almaleh*,

2022 WL 602069, at \*14.

Indeed, the affiant's lack of intentional deception is apparent from the fact that the

Affidavits contained ████████████████████████████████████████████████

██████████████████████    ██████████████████████

███████████████████████████████████████████

██████████████████████████████████    *See supra* Section I.B.3.a.

Indeed, where the Government was aware of text messages that strengthened its case, for example

███████████████████████████████████    *See supra* Section

I.B.3.b.  Because the full scope of these messages ████████████    would only have

strengthened the warrant application, their omission could not have been "made deliberately or

with reckless disregard for the truth."  *United States v. Thomas*, 788 F.3d 345, 351 (2d Cir. 2015).

Similarly, the defendant claims it is "[u]nbelievabl[e]" and "no accidental omission" that

the Affidavits did not ████████████████████████████    (Br. at 6).  But the

explanation for that omission is quite simple.  The laptop that contained ████████    had as one

_____

[13] The Government's review of the ████████ iCloud, which does not appear to ████████████

████████, was also ongoing.  That iCloud contained approximately an additional 140 gigabytes of

data.

of its user profiles the name "████████," *i.e.*, the defendant's alias.  As a result, and as the defendant is well aware, the Government obtained a search warrant before accessing the device, and the laptop was put through filter review as a precaution.  The Filter Team did not release the ████ to the Case Team until months after the March 2024 Warrants were issued.  ████████ ████████████████ the affiant had no ability to inform the court as to the existence of ████ he did not know existed.

In addition to the ██████████████████, the defendant also fails to show that the affiant was aware of what it claims to be the "complete thread" between ██████████ (Br. at 13).  Although the Government had various screenshots of this conversation at the time the Affidavits were submitted, the content of which were largely included in the Affidavits, it did not possess the full thread until it extracted ████████ over six months later.  In addition, ████ ████████, the full set of messages only further support, rather than detract from, the Government's showing of probable cause.  *See supra* Section I.B.3.d.  Therefore, the chats' omission does not demonstrate even a preliminary showing of the affiant's alleged misleading intent.  *See Thomas*, 788 F.3d at 351.

The same is true of Sex Worker-1's alleged exculpatory material.  ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ (Def. Ex. 32 at 3; Def. Ex. 33, at 5).  ██████████████ ████████████████████████—months after the Warrants were obtained— and so they could not possibly have been intentionally omitted from the Affidavits.  The defendant

knows this.  The Government, in a December 29, 2024 disclosure letter, told the defense ██████ ████████████████████████████████████ that took place *after* the Government's prior disclosure letter, which was sent on November 21, 2024.  (*See* Def. Ex. 32 at 3).

Similarly, the defendant does not even attempt to argue that the affiant was aware of ████████████████████████████████████████████████████ (Br. at 16).  That is because, as the Government informed the defense on January 25, 2025, the texts were found on a device seized *after* the applications were submitted for the March 2024 Warrants.  In short, the omission of these text messages from the Affidavits was neither intentional nor reckless.

With regard to both Sex Worker-1 and Victim-4, the defendant implies that the Government was reckless by failing to conduct further investigation before submitting the Affidavits.  (*See* Br. at 12, 16).  But the Government is not aware of, and the defendant does not cite, any Second Circuit authority finding failure to conduct further investigation before obtaining a warrant to be reckless, although courts in this District have found to the contrary. *See United States v. Perez*, 247 F. Supp. 2d 459, 480 (S.D.N.Y. 2003) (agreeing with Government position that "a failure to fully investigate is not sufficient to show reckless disregard").  Where other courts have found a failure to conduct further investigation to be reckless, they have set a high bar.  For example, the First Circuit stressed that "[a]s a general rule, a police officer planning to apply for a warrant has no duty to investigate a matter fully," and the exception exists only where the officer "had obvious reasons to doubt either the veracity of the allegations or the credibility of the person making the allegations—doubts of such a magnitude that her failure to conduct an additional inquiry evinced a reckless disregard for the truth."  *United States v. Barbosa*, 896 F.3d 60, 71 (1st Cir. 2018); *see also United States v. Dale*, 991 F.2d 819, 844 (D.C. Cir. 1993) ("[I]n general, the

failure to investigate fully is not evidence of an affiant's reckless disregard for the truth.").[14]  In addition, not all circuits to consider this issue have reached the same conclusion.  *See Howe v. Gilpin*, 65 F.4th 975, 981 (8th Cir. 2023), *cert denied*, 144 S. Ct. 495 (2023) ("An agent does not violate a clearly established constitutional right by omitting information from a warrant application that he does not actually know, even if the reason is his own reckless investigation.").  The defendant's bald assertion that more investigation was needed does not meet the defendant's "heavy" burden "imposed by the 'substantial preliminary showing' standard."  *Sandalo*, 70 F.4th at 86.

The defendant also has not made any showing that the affiant was aware of many of the alleged omitted financial motives.  For example, although the Government was aware that counsel ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████  Similarly, at the time the Affidavits were sworn out, the Government was not aware of the size of the settlements ███████████████████ received from the defendant.  As a result, these facts were not intentionally omitted from the warrants.

This leaves only a small number of alleged omissions of which the Government was aware at the relevant time, including ██████████████████████████████████████████

---

[14] The defendant cites one out-of-Circuit case for the proposition that "failure to 'undertake further investigation' in [the] face of questions about the accuracy of information is reckless[.]"  (Br. at 12 (citing *United States v. Yusef*, 461 F.3d 374, 385 (3d Cir. 2006)).  But *Yusef*'s holding does not address information provided by lay victims and witnesses as is the case here.  As discussed *supra*, not only does the Third Circuit apply an objective standard, rather than a subjective standard, in its reckless analysis, *Yusef* itself applies only to a particular situation: assessing information provided by other governmental agencies where such information "would have put a reasonable official on notice that further investigation was necessary."  361 F.3d at 385.  Moreover, the *Yusef* court denied a *Franks* hearing in part because agents' investigation "into the possibly questionable information" did not give "rise to an obvious reason to doubt that the information was correct."  *Id.* at 386-87.

███████████████████████████████████. And some of these, ███████████████

███████████████████████████████████ were in fact included in the Affidavits,

meaning there could be no omission, not to mention an intentional or reckless one.  *See supra*

Sections I.B.3.a-b.  And considered as a whole, the Affidavits contained a detailed recitation of

evidence from numerous sources, including information corroborating the victims' statements, as

well as some facts that could weigh against probable cause.  That content, taken together, shows

only that the affiant acted in good faith based on a careful review of evidence.  On the other hand,

it provides no basis to infer that the "affiant in fact entertained serious doubts as to the truth of his

allegations." *Rajaratnam*, 719 F.3d at 154; *see also, e.g.*, *Maisonet*, 2013 WL 12204909, at *1 (an

affiant is "not required to include all potentially exculpatory information" in seeking a search

warrant).

### 5.  The Defendant Has Failed to Show that a *Franks* Hearing Is Warranted

It is the defendant's "heavy" burden to make a substantial preliminary showing of both

materiality and intent.  *See Sandalo*, 70 F.4th at 86 & n.7-9.  The defendant has entirely failed to

do so here.  Because the Affidavits plainly set forth probable cause for the subject offenses, even

with the addition of each of the defendant's alleged omissions, the Court need not even assess the

affiant's intent.  *See Canfield*, 212 F.3d at 721 (finding it unnecessary to analyze intent where

alleged inaccuracies were not material to probable cause).  But if it does so, the Court should

swiftly reject the defendant's conclusory assertions that the affiant acted intentionally or with

reckless disregard for the truth.  That the Affidavits fail to include every fact uncovered through

the defendant's review of discovery is insufficient to warrant a hearing.  *See Awadallah*, 349 F.3d

at 67-68.  Indeed, such an inference is "particularly inappropriate" where, as here, any omissions

were unrelated to the Government's careful analysis of the evidence available to it at the time the

Affidavits were drafted.  *See Rajaratnam*, 719 F.3d at 154-55.  Holding a *Franks* hearing under

these circumstances would simply give the defendant a free opportunity to cross-examine the case agent, an unjustified result anticipated and rejected by the Supreme Court. *See Franks*, 438 U.S. at 171 ("[T]he challenger's attack [on the affidavit] must be more than conclusory and must be supported by more than a mere desire to cross-examine."). The defendant's motion therefore should be summarily denied without a hearing.[15]

## II.   The Search Warrants Are Particular and Not Overbroad

The defendant's second challenge to the Warrants likewise fails.  Ignoring the language in the Warrants themselves, the defendant argues that the Government "essentially" sought authority to "search and seize anything" in the defendant's cloud accounts, residences, cellphones, and hotel room.  (Br. at 20).  The defendant is wrong.  Contrary to the defendant's unsupported accusations, the Warrants each specified a number of detailed categories of highly relevant information to be seized that were all amply supported by probable cause.   The Warrants were therefore particularized and not overbroad, and the defendant's overbreadth challenge to the Warrants fails.

### A.   Applicable Law

To satisfy the Fourth Amendment's particularity requirement, a warrant must (i) "identify the specific offense for which the police have established probable cause"; (ii) "describe the place to be searched"; and (iii) "specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).   "The Fourth Amendment does not require a perfect

---

[15] The Court should also deny the defendant's motion to suppress because the defendant failed to establish standing to challenge the searches at issue.  It is the defendant's burden to prove that he had a legitimate expectation of privacy in the items searched or seized, which he must establish through an affidavit setting forth personal knowledge demonstrating sufficient facts to show the defendant's legally cognizable privacy interest. *See United States v. Tontisabo*, No. 21 Cr. 701 (LAK), 2023 WL 411622, at *2 (S.D.N.Y. Jan. 25, 2023) (denying motion to suppress social media account for defendant's failure to establish standing). The defendant has failed to do so here.

description of the data to be searched and seized, however." *Id.* at 100. Rather, "the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). "[A] search warrant does not necessarily lack particularity simply because it is broad." *Ulbricht*, 858 F.3d at 100. However, a warrant is overbroad if its "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013).

Even where a warrant is deficient, there is an "exception to the exclusionary rule for 'evidence obtained in objectively reasonable reliance on a subsequently invalidated warrant.'" *Clark*, 638 F.3d at 99 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Such reasonableness is presumed for searches performed pursuant to a warrant, except "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Clark*, 638 F.3d at 100.

**B.  Discussion**

Here, the Warrants were meticulously particularized and amply supported by probable cause. Each Warrant (i) identified the specific offenses for which probable cause was established; (ii) described the places, accounts, or object to be searched; and (iii) specified the items to be seized by their relation to the designated crimes. *Ulbricht*, 858 F.3d at 99. Thus, each Warrant plainly "satisfies the basic elements of the particularity requirement as traditionally understood." *Id.* at 101. The defendant erroneously suggests that the Warrants gave the Government permission to search "everything" in the defendant's cloud accounts, residences, and devices, but a simple

review of each Warrant disproves that argument—each Warrant very clearly specified the "items to be seized" in detail.[16]

The "items to be seized" set out in each Warrant were also tied directly to "the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446. The defendant complains that the Warrants sought communications, photos, documents, calendars, location data, travel records, financial records, and call records. (Br. at 23). But the defendant conveniently ignores the limiting principle set forth clearly in each Warrant, which only authorized seizure of the aforementioned items that were *related to the* "subject offenses." That would include, for example, communications revealing the defendant's obstructive conduct; photos depicting the defendant's participation in criminal sex acts; and travel records reflecting the defendant's interstate transportation of commercial sex workers. Without question, these materials constitute evidence, fruits, and instrumentalities of the crimes designated on the face of the Warrants. By contrast, the defendant's communications, photos, documents, calendars, location data, travel records, financial records, and call records that *were not* related to criminal activity were fully protected from seizure. To be sure, a significant volume of evidence was recovered pursuant to the Warrants—but that is not because the description of "items to be seized" lacked tailoring to the offenses. *See Ulbricht*, 858 F.3d at 100 ("[I]n many cases, the volume of records properly subject to seizure because of

---

[16] With respect to the search of electronic devices, it is well settled that a warrant can "authorize the seizure of electronic storage media or the seizure or copying of electronically stored information" to be subsequently reviewed off-site "consistent with the warrant." Fed. R. Crim. P. 41(e)(2)(B); *see also, e.g.*, *United States v. Juarez*, No. 12 Cr. 59 (RRM), 2013 WL 357570, at *6 (E.D.N.Y. Jan. 29, 2013) (concluding that cell phone warrant satisfies the particularity requirement when it constrains agents to search for evidence related to the specific criminal activity being investigated); *Vilar*, 2007 WL 1075041, at *38 ("[It] also should not be surprising that a person who uses a computer, or any electronic device, as an instrumentality of crime might discover that a magistrate judge would find probable cause to search that computer.").

their evidentiary value may be vast.").  It is because of the scope and breadth of the defendant's decades-long criminal activity.

The defendant's reliance on *Wey* cannot resuscitate his floundering challenge to the particularity and breadth of the Warrants here.  *First*, the warrants at issue in *Wey* did not specify the crimes under investigation on the face of the warrants, which "would alone be enough to render the Warrants insufficiently particularized."  256 F. Supp. 3d 355, 384 (S.D.N.Y. 2017).  That was plainly not the case here.  *Second*, the *Wey* warrants set forth "expansive categories of often generic items subject to seizure . . . without, crucially, any linkage to the suspected criminal activity."  *Id.* at 385.  As discussed above, the Warrants in this case connected the items to be seized to the crimes being investigated.  *Third*, in *Wey*, the warrants authorized the seizure of items that "related to" listed individuals and entities, but the listed individuals and entities included the entity subject to search and the individuals that owned the premises to be searched, so all items found there could be said to "relate to" them.  *See id.* at 386.  The Warrants here were far more particularized and thus entirely dissimilar.  *Finally*, the general descriptions of items to be seized in the *Wey* warrants "authorize[d] the seizure of, essentially, all documents from [a business] and the [defendant's apartment]," which exceeded the scope of the probable cause showing submitted to the magistrate judge. *Id.* at 393.  In this case, the Warrants authorized searches commensurate with the underlying nature of the criminal conduct.  The Warrants were written with great care and attention to particularizing the information to be seized, which was tied to that very conduct.

In short, the facts in *Wey* are entirely distinguishable.  Whereas the *Wey* warrants failed "to impart meaningful guidelines to the searching agents," *id.* at 393, the Warrants here "were particularized and their breadth tied to the evidence relevant to the charges."  *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 308 (S.D.N.Y. 2018).

Lastly, even if there had been a defect in any of the Warrants, the executing agents' reliance upon the Warrants was objectively reasonable, rendering suppression inappropriate. *See, e.g.*, *Clark*, 638 F.3d at 100. Here, there is no evidence that the law enforcement officer had knowledge that the Warrants lacked particularity or were overbroad—as discussed above, the Warrants *were* particularized and the "items to be seized" were tied to the probable cause set out in the Affidavits. *See Leon*, 468 U.S. at 919 ("[E]vidence obtained from a search should be suppressed only if . . . the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional."). Therefore, evidence obtained pursuant to the Warrants should not be suppressed.

Moreover, the exceptions to the good faith rule—discussed above—do not apply here. The defendant does not argue that the magistrate judges issuing each of the contested warrants "wholly abandoned [their] judicial role[s]," and, as set forth in Section I *supra*, the magistrate judges were not "knowingly misled." *Clark*, 638 F.3d at 100. The Affidavits supporting the Warrants contained detailed recitations of evidence from numerous sources—a blunt contrast to warrants "so lacking in indicia of probable cause as to render reliance upon [them] unreasonable." *Id.* Indeed, five different magistrate judges in three districts agreed that there was sufficient evidence of probable cause and authorized the Warrants. Finally, for all the reasons set forth above, plainly none of the contested Warrants were "so facially deficient that reliance upon [them was] unreasonable." *Id.* Accordingly, suppression is not appropriate even if the Warrants were defective—which they were not.

## **CONCLUSION**

For the reasons set forth above, the defendant's motions should be denied.

Dated:   New York, New York
       March 4, 2025


           Respectfully submitted,

           MATTHEW PODOLSKY
           Acting United States Attorney


     By:     /s/
           Maurene Comey
           Meredith Foster
           Emily A. Johnson
           Christy Slavik
           Madison Reddick Smyser
           Mitzi Steiner
           Assistant United States Attorneys
           (212) 637-2324/-2310/-2409/-1113/-2381/-2284