UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

SEAN COMBS,

              Defendant.

24-cr-542 (AS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT SEAN COMBS'S MOTION TO DISMISS COUNT THREE OF THE SUPERSEDING INDICTMENT**

**INTRODUCTION**

In response to the motion to dismiss Count Three, the government admits that use of escorts or prostitutes is rarely if ever charged as a federal offense, but it argues that the charges here are justified due to the use of force, coercion, and violence. That argument is at odds with the government's stated position that force, coercion, and lack of consent are legally irrelevant to the charge. And the government's examples of charges in supposedly similar cases only serve to underscore how unusual its charging theory is in this case.

**ARGUMENT**

**I.    THE GOVERNMENT TAKES INCONSISTENT POSITIONS ABOUT THE RELEVANCE OF FORCE, COERCION, AND LACK OF CONSENT**

The government's opposition reveals a tension at the heart of the government's legal theory—both as to Count Three specifically and the entire case more generally. The government takes inconsistent positions on whether allegations of violence are essential to its case. The government's simultaneous responses to the motion to dismiss and the motion to suppress put the inconsistency in high relief.

The government initiated this case based on allegations of violence. In its search warrant applications and its indictment (as well as its leaks to the press), the government made broad and unqualified allegations that victims were forced and coerced to participate in FOs. But as discussed in the motion to suppress, the government possesses a ███████████████████ ███████████████████████████████████████████████████████████ ██████████████. So rather than committing to prove a years-long campaign of coercion and violence—as originally alleged—the government now says that it only needs to prove a "*single instance* in which a defendant used force, threats of force, or coercion to cause a victim to perform a commercial sex act." Dkt.171 at 13.

And as to Count Three, the White-Slave Traffic Act count, the government says it doesn't need to prove force or violence at all. As to that count, the government argues that "consent is not a defense." Dkt.171 at 17. Thus, in litigating the validity of the warrants, the government takes the position that the legal theory underlying Count Three is fundamentally different from the legal theory underlying Counts One and Two. There, the government takes the position that violence, coercion, and lack of consent are irrelevant to—or at least not necessary for—a violation of the White-Slave Traffic Act.

But here, in its opposition to the motion to dismiss, the government flips back. It says Count Three is based on allegations "that the defendant engaged in horrific and repeated acts of violence and sexual coercion harming multiple victims over the course of multiple years." Dkt.166 at 1. It describes the charges as based on "abuse," "violence," and "coercion"—using each of those words repeatedly. *Id.* at 1-3. The government argues it is precisely the violence that separates this from other similarly situated individuals, such as Eliot Spitzer. It argues that the alleged violence and coercion in this case "set the defendant in stark contrast" to cases like Spitzer's, where there was "not a hint of trafficking or coercion." *Id.* at 7. It is the "absence of trafficking allegations similar to those against the defendant here defeats any suggestion that those … examples represent similarly situated individuals." *Id*.

Thus, the government simultaneously argues that violence, coercion, and lack of consent are irrelevant to Count Three—but also that it is precisely the violence, coercion, and lack of consent that save Count Three from any selective prosecution attack. Both cannot be true. Perhaps more importantly, the government's contradictory responses to the two pending motions demonstrates an insidious aspect of the trial strategy to come. The government will do everything it can to smear Mr. Combs with allegations of violence—but then whenever it is

2

convenient to do so, the government will turn around and argue that violence is irrelevant to the charges. For example, when the defense seeks to present evidence of the victim's consent to the sex acts, the government will argue that such evidence is irrelevant. The government can't have it both ways.

Voluntary sex with escorts, including those who travel across state lines, is common behavior that is never charged, even if it arguably could be charged under White-Slave Traffic Act. If the additional elements of violence, coercion, and lack of consent are what makes charges here appropriate, then the government should be forced to defend that theory—and the government's case should fail when it is unable to prove it.

## II.  THE GOVERNMENT HAS NEVER PROSECUTED A CASE LIKE THIS BEFORE UNDER THE WHITE-SLAVE TRAFFIC ACT

None of the cases the government claims are similar (Dkt.166 at 9-10) resemble this one. Unlike this one, they all involve situations in which defendants transported the victims across state lines to either force them to work as prostitutes or to rape them. None of those cases involve circumstances like this one—where men whom the government does not suggest were coerced were the ones transported across state lines to engage in "prostitution" as charged in Count Three.

In *United States v. Nygard*, 20 Cr. 624, the defendant transported minor and adult women across state lines to parties and assaulted them. In *United States v. Granados*, 16 Cr. 324, the defendants recruited women and girls—mostly minors—in Mexico, then transported them to the United States, where they were locked in brothels and forced to engage in prostitution.

In *United States v. Rivera*, 19 Cr. 131, the defendants lured drug-addicted women into the District and then forced them to engage in prostitution. In *United States v. Purcell*, 18 Cr. 81, the defendants recruited women on the internet, brought them to the District and then advertised the

women for prostitution.  In *United States v. Pierre-Louis*, 16 Cr. 541, the defendant was a gang member who essentially kidnapped women—mostly minors—around the country, brought them to New York, and forced them to engage in prostitution.

In *United States v. Ramos*, 23 Cr. 380, the defendant smuggled women from El Salvador into the United States, then locked them in his residence and repeatedly raped them.  In *United States v. Paduch*, 23 Cr. 181, the defendant was a doctor who induced young men, including minors, to visit his fertility clinic, where he assaulted them.  In *United States v. Hadden*, 20 Cr. 468, the defendant was a doctor who induced young women, including minors, to visit his OB/GYN clinic, where he assaulted them.

In all the above cases, it was the victims—almost always female victims, usually minors—who were transported across state lines.  Here, by contrast, it was adult male models who traveled across state lines for the FOs.  In the cases above that involved prostitution, the prostitution was forced labor—the defendants lured or kidnapped women and girls, confined them, and then sold them as prostitutes.  The cases were in other words classic cases of sex trafficking.  Here, by contrast, the women who are alleged to have been victims were not "engaged in prostitution" at all.  They were girlfriends of Mr. Combs in long-term relationships.  Even assuming arguendo that the male escorts were engaged in prostitution, they were not forced into their work.  This case presents a total mismatch with the purposes for which the White-Slave Traffic Act was passed, and a total mismatch with the charges usually brought under the Act.

The government's only argument to link all these cases is that they present "aggravating factors," and it claims this case also presents "serious aggravating factors."  Dkt.166 at 10.  In other words, the government says that it prosecutes violations of the White-Slave Traffic Act when they are sufficiently bad.  That is not a persuasive response, especially in light of the Act's

4

troubling history. Prosecutors always seem to conclude that the sex lives of black men are bad enough to deserve punishment. When someone like Eliot Spitzer uses prostitutes, federal prosecutors never find aggravating factors.

## CONCLUSION

For the foregoing reasons, Count Three should be dismissed.

Date: March 10, 2025

Respectfully Submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
Shapiro Arato Bach LLP
1140 Ave of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com

5