UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.

SEAN COMBS,

             Defendant.

24-cr-542 (AS)

---

**<u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
TO SUPPRESS EVIDENCE OBTAINED THROUGH SEARCH WARRANTS,
OR IN THE ALTERNATIVE, FOR A *FRANKS* HEARING</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...........................................................................................ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................ 1

   I.   THE WARRANT APPLICATIONS WERE INTENTIONALLY AND
      MATERIALLY DECEPTIVE ............................................................................. 1

     A.  The Government Misrepresents The Legal Standards ................................... 1

     B.  Evidence Of Alleged Victims' Consent Is Relevant, Important, And Material............. 5

     C.  The Warrant Applications Were Grossly Deceptive ...................................... 7

     D.  The Government's Claims Regarding The Affiant's Lack Of Knowledge Are
        Unsupported And Unbelievable ................................................................ 9

  II.  THE WARRANTS WERE UNCONSTITUTIONALLY OVERBROAD ......................... 13

CONCLUSION .................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Brown v. D'Amico*,
    35 F.3d 97 (2d Cir. 1994) ................................................................................................. 3

*Byrd v. United States*,
    584 U.S. 395 (2018) ...................................................................................................... 13

*Coolidge v. New Hampshire*,
    403 U.S. 443 (1971) ...................................................................................................... 14

*Doe v. N.Y. City Dep't of Social Servs.*,
    649 F.2d 134 (2d Cir. 1981) ........................................................................................... 6

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................................................................. 4, 12

*Maryland v. Pringle*,
    540 U.S. 366 (2003) ....................................................................................................... 3

*United States v. Andrews*,
    2022 WL 2301987 (E.D.N.Y. June 27, 2022) .............................................................. 11

*United States v. Canfield*,
    212 F.3d 713 (2d Cir. 2000) ....................................................................................... 2, 7

*United States v. Colon*,
    250 F.3d 130 (2d Cir. 2001) ......................................................................................... 11

*United States v. Diaz*,
    878 F.2d 608 (2d Cir. 1989) ........................................................................................... 6

*United States v. Ferguson*,
    758 F.2d 843 (2d Cir.1985) ............................................................................................ 2

*United States v. Gramins*,
    939 F.3d 429 (2d Cir. 2019) ........................................................................................... 6

*United States v. Lambus*,
    897 F.3d 368 (2d Cir. 2018) ......................................................................................... 12

*United States v. Lauria*,
    70 F.4th 106 (2d Cir. 2023) ..................................................................................... 4, 12

*United States v. Lucas*,
    379 F. Supp. 3d 182 (W.D.N.Y. 2019) ........................................................................ 11

*United States v. Mandell,*
   710 F. Supp. 2d 368 (S.D.N.Y. 2010) ............................................................. 2

*United States v. Miller,*
   2012 WL 1414853 (W.D. Va. Apr. 24, 2012)................................................... 11

*United States v. Rajaratnam,*
   719 F.3d 139 (2d Cir. 2013) .............................................................. passim

*United States v. Rivera,*
   750 F. Supp. 614 (S.D.N.Y. 1990) ................................................................. 2

*United States v. Rosa,*
   626 F.3d 56 (2d Cir. 2010) ........................................................................... 16

*United States v. Ulbricht,*
   858 F.3d 71 (2d Cir. 2017) ........................................................................... 16

*United States v. Vilar,*
   2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007)..................................................... 3

*United States v. Wey,*
   256 F. Supp. 3d 355 (S.D.N.Y. 2017) ......................................................... 14

*United States v. Zemlyansky,*
   945 F. Supp. 2d 438 (S.D.N.Y. 2013) ......................................................... 16

*Washington v. Napolitano,*
   29 F.4th 93 (2d Cir. 2022)............................................................................. 3

*Wilson v. Russo,*
   212 F.3d 781 (3d Cir. 2000) .......................................................................... 3

**Rules**

Fed. R. Evid. 401 ................................................................................................. 6

Fed. R. Evid. 412 ................................................................................................. 6

## INTRODUCTION

The government admits it possessed a great deal of potentially exculpatory evidence—including ███████████████████████████████████████████ ████—when it sought the search warrants. It admits it did not mention that evidence in the warrant applications. But it nonetheless contends that the applications were not deceptive, for three principal reasons: *first*, that the withheld evidence was not material because it did not conclusively prove innocence; *second*, that the applications "implicitly" and correctly informed the magistrate that ████████████████████████; and *third*, that the individual affiant was unaware of "most" of the exculpatory evidence when he sought the warrants. The first proposition is wrong as a matter of law, the second is contradicted by the warrant applications themselves, and the third is both unsupported and inherently incredible.

And the government concedes the warrants were very broad. But it argues that the extraordinary scope was justified by the extraordinary crimes—crimes without limits, according to the government, justify warrants without limits. That is not and cannot be the law.

## ARGUMENT

## I.    THE WARRANT APPLICATIONS WERE INTENTIONALLY AND MATERIALLY DECEPTIVE

### A.    The Government Misrepresents The Legal Standards

Throughout its opposition, the government relies on bad law. In his motion, Mr. Combs relied on controlling Second Circuit law in defining the standard for a *Franks* hearing. Mtn.4-5. By contrast, the government relies largely on nonprecedential district court cases. Opp.6-8. Several of the government's key points are flatly contradicted by Second Circuit law.

1. The government claims "omissions are not subject to the same high level of scrutiny as misstatements" and that motions based on purported omissions "must meet an even stricter

standard." Opp.6, 7 (quoting *United States v. Rivera*, 750 F. Supp. 614, 617 (S.D.N.Y. 1990)).

The Second Circuit has never said anything of the sort. To the contrary, the Second Circuit has

repeatedly held that "omissions 'are governed by the same rules' as misstatements." *United*

*States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Ferguson*, 758

F.2d 843, 848 (2d Cir. 1985)). The only difference relates to how the materiality inquiry

functions. Misstatements are deleted, while omissions are added, and then the amended affidavit

is examined to see whether it still supports probable cause. The "ultimate inquiry" is the same.

*United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000). *Rivera* is inconsistent with recent

Second Circuit cases, and there is no "stricter standard" for omissions.

Part of the reason for a unified standard is that most falsehoods can be variously

characterized as misstatements or omissions. For example, the government did not inform the

magistrate that ███████████████████████████████ The government

characterizes that as an omission. Opp.11.[1] But the warrant stated that ███████████████

███████████████████████ Ex.2 ¶11.c. It stated that ████████████████████

███████████████████████████████████. *Id.* ¶11.a. That narrative—

presented as it was in totally unqualified form—*misstated* the facts known to the government.

Regardless, even if it were a mere omission, the legal standard is the same.

2. The government claims omissions must be "dispositive" to warrant a *Franks* hearing.

Opp.7. For that proposition, it relies on *United States v. Mandell*, 710 F. Supp. 2d 368, 373

(S.D.N.Y. 2010). Once again, the Second Circuit has never said anything of the sort—it has

never used the word "dispositive" to describe the materiality standard. The materiality inquiry is

---

[1] That "omission" is ongoing. The government's indictment and enterprise letter ███████████
█████████████████████████████

more straightforward.  The question is "whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause."  *Rajaratnam*, 719 F.3d at 146 (cleaned up).  Thus, to obtain a *Franks* hearing, a defendant need not demonstrate that the government had a smoking gun proving his innocence.  Rather, the question is whether the government's evidence—if it had been truthfully presented—supported a finding of probable cause.

Although the probable cause standard does not require any particular quantum of proof, the inquiry is probabilistic.  *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  The magistrate found, based on the information in the affidavit, that the government had met the probable cause threshold.  The question for this Court is whether—correcting for misstatements and misleading omissions of exculpatory evidence—the affidavit still would have crossed that threshold.  That does not require a finding that any evidence is "dispositive" of guilt or innocence.

3.  The government repeatedly protests that "all storytelling involves an element of selectivity."  Opp.6 (quoting *United States v. Vilar*, 2007 WL 1075041, at *27 (S.D.N.Y. Apr. 4, 2007)).  That is true so far as it goes.  As Combs acknowledged, the government need not include every single fact in its possession.  But in deciding what facts to include, it cannot pick all the inculpatory ones and exclude all the exculpatory ones.  The Second Circuit has been clear on this point.  The affiant "may not omit circumstances that are critical to the evaluation of probable cause," *Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir. 1994), and he may not "merely inform the magistrate or judge of inculpatory evidence," *Washington v. Napolitano*, 29 F.4th 93, 108 (2d Cir. 2022) (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000)).  The affiant's ability to be "selective" is limited, because he is required by law to be reasonably candid and forthcoming.

3

Put differently, warrant affidavits are not supposed to be mere "storytelling." They are supposed to be truthful. They are supposed to present a fair recitation of all critical facts, both inculpatory and exculpatory. The government, in its opposition, does not even appear to acknowledge that requirement.

4. Finally, the government claims that Combs's motion relies on an incorrect "objective intent" standard that the Second Circuit has rejected. Opp.9. That is false. It is undisputed that the first prong of the *Franks* test requires a showing that the affiant made intentionally or recklessly misleading statements or omissions. It is, in the end, a subjective test.

Nonetheless, "courts must not 'confus[e] a mental state with the proof of its existence.'" *Rajaratnam*, 719 F.3d at 153 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). We cannot gain access to the affiant's internal monologue in March 2024, but we can infer his intent from objective circumstances. As the Supreme Court explained in *Farmer*, when a fact would be obvious to a reasonable person, a factfinder can infer that someone was aware of that fact. 511 U.S. at 842-43. That is precisely the point the Second Circuit was making in *Rajaratnam*: The difference between a subjective and an objective test is not terribly significant in practice. If an affiant excludes information that a reasonable magistrate would wish to know, that provides circumstantial evidence of intent. Put simply, "[s]ubjective intent … is often demonstrated with objective evidence." *Id*. at 154.

As the Second Circuit has also held, disputes about intent should be settled by factfinding and credibility determinations. "[W]hether an affiant acted negligently or with an intent to 'deceive' or 'mislead' or with a 'reckless disregard for the truth is a factual question' best addressed by the district court, which is better situated to develop the factual record, observe the witnesses, and assess their credibility." *United States v. Lauria*, 70 F.4th 106, 131 (2d Cir. 2023).

**B.    Evidence Of Alleged Victims' Consent Is Relevant, Important, And Material**

The warrant application's central allegation was ███████████████████

███████████████ Ex.2 at 6.  With respect to Victim-1, it alleged ████

███████████████ *Id.* ¶11.c.  It stated: ██████████████

████████████████████████████████████████████

██████ *Id.* ¶11.h.  These allegations were stated in broad, categorical, and unqualified terms.

The government possessed evidence, including ██████████████████

█████████████████, yet it did not disclose any of that to the magistrate.

So the government now switches theories.  It concedes Victim-1 "████████████

████████████████████████████████████████████

██████████████ Opp.14.  And it says "all that is required" is that Combs "caused

Victim-1 to engage in a *single* instance of commercial sex through means of force or coercion."

*Id*.  So according to the government, it might be the case that Victim-1 was Combs' girlfriend

and willingly participated in 99 FOs—but if she was coerced on the 100th occasion, he is guilty

as charged.  And guilty as charged means guilty of a 10-year sex trafficking scheme.  That

position is dubious as a matter of substantive law—and obviously a matter this Court will have to

address in jury instructions and elsewhere.

For present purposes, however, what matters is the stunning argument that comes next:

The government claims Victim-1's consent on other occasions is "irrelevant."  Opp.14.  In other

words, the government jumps from a claim that consent on the previous 99 occasions is not

*dispositive* to a claim that consent on 99 occasions is entirely *immaterial* and *irrelevant*.

That is a fallacy fit for a 1L.  The government does not appear to understand what

"relevance" means, either in evidence law generally or in the *Franks* context.  Evidence is

relevant if it makes some fact "more or less probable than it would be without the evidence."

5

Fed. R. Evid. 401(a).  Evidence need not be dispositive to be relevant, because, as McCormick

famously put it, "a brick is not a wall."  *Id*., adv. comm. notes (quoting *McCormick*); *see United*

*States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989) ("[E]vidence need not be dispositive of an issue

to be relevant."); *Doe v. N.Y. City Dep't of Social Servs*., 649 F.2d 134, 147 (2d Cir. 1981)

(same).  Relevance is a "low threshold, easily satisfied."  *United States v. Gramins*, 939 F.3d 429,

450 (2d Cir. 2019).

Consent on the previous 99 occasions is clearly *relevant* to consent on the 100th.  Indeed,

this theory of relevance is specifically recognized by Rule 412, which states that an alleged

victim's prior specific instances of sexual behavior "with respect to the person accused" may be

admitted "if offered by the defendant to prove consent."  Fed. R. Evid. 412(b)(1)(B).  It is also

relevant to the defendant's mental state, and his understanding of her consent or lack thereof.

Even assuming arguendo that the charges here can be grounded on a single instance of coercion,

the prior history of consent and the long-term relationship makes coercion on that occasion less

likely.  Even if the prior history is not dispositive of the charged incident, it is both relevant and

important—it is something any factfinder would want to know.[2]

The government's mistaken view of relevance further demonstrates why a *Franks* hearing

is necessary.  That the investigative team unilaterally deemed evidence of consent and

voluntariness "irrelevant" makes it more likely the government intentionally omitted these key

facts from its warrant applications.  The government's ongoing refusal to concede instances of

---

[2] As an aside, the government argues that even if evidence of consent would have negated probable cause to search for evidence of sex trafficking offenses, there still would have been probable cause to search for evidence of Mann Act offenses.  Opp.17.  But it was precisely the sex trafficking allegations—and the related allegations of force and coercion—that provided the supposed basis for such broad searches.  The Mann Act allegations, involving transporting escorts for commercial sex, are far narrower.  A warrant searching for evidence related to those allegations would have had to be correspondingly narrow.

consent in the indictment, its enterprise letter, or its disclosures demonstrates its deliberate strategy. In other words, the government's legal position confirms the omissions were intentional, or at least the product of a reckless disregard for the truth.

As discussed above, a defendant seeking a *Franks* hearing need not show that the government withheld evidence that conclusively proves innocence. "Material" does not mean dispositive. The materiality inquiry asks whether, after correcting for the government's misleading statements and omissions, the hypothetical amended warrant would still have supported a finding of probable cause. *Rajaratnam*, 719 F.3d at 146; *Canfield*, 212 F.3d at 718. A truthful affidavit in this case would not have supported probable cause for sex trafficking or racketeering.

### C.    The Warrant Applications Were Grossly Deceptive



The government now seems to admit that ████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████. But the government incorrectly maintains that it fairly and accurately painted that picture in the warrant application. The government says the application ███████████████████████████████████████████ ██████████████. Opp.14-15. The government claims the magistrate could make a "reasonable inference" that ████████████████████████████████████ ██████," Opp.15—even though the applications said no such thing. The government contends because the applications stated ██████████████████████████████ the good parts of that relationship were "implicit" in the affiant's description. Opp.14.

Those arguments blink reality. The warrant applications ████████████████ ████████████████████ According to the affiant, █████████████████████ ███████████████████████████████████████████

██████████████████████████████████████████████████████.

Ex.2 ¶11.a-b.  According to the affiant, ███████████████████████████

██████████████████████████████████████████████████████.

*Id.* ¶11.c-f.  According to the affiant, ████████████████████████

██████████████ *Id.* ¶11.h.  According to the affiant, ████████████████████

████████████████████████████████████████████████████

██████████████████████.  *Id.* ¶11.i-j.  According to the affiant, ████████████

█████████████████████████████.  *Id.* ¶11.r.  According to the affiant,

████████████████████████████████ *Id.* ¶11.n.

According to the affiant, ████████████████████████████████████████

██████████████████████████ *Id.* ¶11.q.

        No reviewing magistrate or any other reader would be left with any hint that the

relationship had positive, loving aspects "or that they ███████████████████████

██████████████████████████████" Opp.15.  Nor does the warrant application

contain any intimation that Victim-1's participation in the FOs was often and indeed regularly

willing and consensual.  The government's argument that these facts were "implicit" is absurd—

one need only read paragraph 11 in its entirety to see why.  It was an entirely one-sided,

sensationalized, and false narrative.  If the government had fairly represented the evidence

already in its possession, the magistrate would have heard a completely different story.

        In addition to ██████████████████, Combs cited a ████████████████████████

████████████████████████████████████████████████████████████

████████████.  The government now says those selections were "cherry picked" and

unrepresentative.  Opp.15.  That is nonsense.  There are hundreds more.

For example, ████████████████████████████████████

████████████████████████████████████████

███████████████████████ Ex.34 at 8. █████████████████

████████████████████████████████████████████

█████████████████████████████████████ Ex.35.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ Ex.36 at 5-

6. ███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████ Ex.37 at 2-7.



These examples are just a selection of evidence in the government's possession at the time it sought the warrants. That evidence shows the nature of the relationship, and the nature of the relationship bears no resemblance to what was portrayed in the warrants.

### D. The Government's Claims Regarding The Affiant's Lack Of Knowledge Are Unsupported And Unbelievable

The government admits that it *possessed* a vast trove of information—including exculpatory information, ██████████████████████—before it obtained the warrants. But it claims that the affiant was nonetheless *unaware* of the information—"the affiant learned most of the allegedly omitted information *after* the Affidavits were submitted." Opp.25. That is a remarkable claim in several respects.

*First*, the government's claim is unsupported by any evidence.  The government cites *nothing* in support of its claim that the affiant only learned the information later.  It attaches no affidavit or declaration from the investigating affiant, or anyone else, to its opposition.  As it has done so often throughout this case, the government simply assumes this Court will accept government representations no matter how dubious, without support.

The government's opposition is replete with unsupported assertions of this sort.  With respect to ███████████████████████████████████████████ ████████████████████████ at the time it sought the warrants.  Opp.20.  It provides no factual support for that assertion.  The government asserts that at the time the affiant sought the warrants, he did not even know █████████████.  Opp.26-27.  It provides no factual support for that assertion.  The warrant application ████████████████ ██████████████████████████████████████████████ ████████████████████████████████.  And yet the affiant, who has been the lead agent on this case since its inception in November 2023, was somehow not aware of ██ ████████████████ which the government had possessed for months?

The government suggests that it was "not aware" of ████████████████████████ ████████████████████.  Opp.22 n.11.  Again, it simply defies belief that ████ ██████████████████████████████████████████ Several of the alleged victims ███████████████████████████████ ████████████████████.  In sum, this Court should not accept the government's repeated claims of ignorance without some supporting affidavit or other evidentiary foundation.

*Second*, the government concedes that the affiant was aware of *some* of the information— it only claims that the affiant was unaware of "most" of it.  Opp.25.  That raises the obvious

question: What does "most" mean?  What information did the affiant already know?  Which ███ ███████████████████, and why did he decide not to mention those in his affidavit?  Once again, the government provides no answers to these questions.  This proves why a *Franks* hearing is needed: This Court should resolve these issues based on evidence, not unsworn say-so.

*Third*, the *Franks* inquiry is not limited to what the individual affiant knew.  Fourth Amendment doctrine is generally governed by the "collective knowledge" doctrine, which holds that knowledge of one officer is imputed to others involved in an investigation.  The collective knowledge doctrine applies to both inculpatory information, *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001), and exculpatory information, *United States v. Andrews*, 2022 WL 2301987 at *21 (E.D.N.Y. June 27, 2022) (collecting cases).  Applying that doctrine in the *Franks* context means, at a minimum, that "if any officer deliberately misrepresented or withheld material information from [the affiant], that act or omission can serve as a basis for exclusion." *United States v. Lucas*, 379 F. Supp. 3d 182, 194 (W.D.N.Y. 2019) (quoting *United States v. Miller*, 2012 WL 1414853, at *4 (W.D. Va. Apr. 24, 2012)).  Thus, the inquiry is shaped in part by what the investigative team *as a whole* knew.

Moreover, even if the individual affiant had not yet had time to review ████████████ ███, he was at least aware of their existence.  At a minimum, an honest affiant would have stated: ████████████████████████████████████████████████ ███████████████████████████████████."  That in itself would have been important information for the magistrate to know—as it might have given the magistrate some pause about approving such broad warrants without having such important information.  But the affiant did not even disclose that much.  That decision was intentional—or it at least demonstrated a reckless disregard for the truth.

11

\* \* \* \*

The evidence raises a strong inference of intentional deception. The government nonetheless makes several conclusory arguments that Mr. Combs's failed to "make any showing" of intent. Opp.24-25. It is unclear what the government means by this. Direct evidence of intent is not required, in part because no federal agent would ever admit to lying in a warrant application. In the *Franks* context, as elsewhere, "[w]hether an individual had a particular mental state 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Rajaratnam*, 719 F.3d at 153 (quoting *Farmer*, 511 U.S. at 842).

Indeed, the Second Circuit has held that *Franks* hearings are necessary in this context because the affiant's supposed lack of knowledge—and thus his intent—"is a factual question." *Lauria*, 70 F.4th at 131; *accord United States v. Lambus*, 897 F.3d 368, 399 (2d Cir. 2018) ("Whether the affiant had an intent to deceive is a question of fact."). Such factual questions should be "addressed by the district court," which has both the authority and the responsibility to "develop the factual record, observe the witnesses, and assess their credibility." *Lauria*, 70 F.4th at 131 (remanding for a *Franks* hearing). To determine whether the affiant possessed the requisite intent, this Court should not accept the government's unadorned assertions. As the Second Circuit has counseled, this Court should put him on the stand, question him, and assess his credibility. There is good reason to doubt the government's claims about the affiant's knowledge and intent. Resolving such doubts is what *Franks* hearings are for.[3]

---

[3] In a throwaway footnote, the government also argues that the motion should be summarily denied because Combs failed to include an affidavit supporting standing. Opp.31 n.15. As the government itself notes, Mr. Combs is contesting the searches of his own person, his own houses, and his own electronic devices. Opp.2-3. The government does not actually contend that he lacks standing—because any such contention would be frivolous.

Fourth Amendment suppression motions do not have formal pleading requirements, and Fourth Amendment "standing" (unlike Article III standing) is merely a "shorthand for capturing

## II.    THE WARRANTS WERE UNCONSTITUTIONALLY OVERBROAD

The government mouths a lot of platitudes but never actually describes any limitations on the breadth of the warrants.  It claims that the warrants were "meticulously particularized" and "clearly specified … in detail."  Opp.32-33.  That is true insofar as the warrants set forth incredibly long lists of everything possible that might be seized.  A list of every single item in a house could be meticulously particularized and detailed—it would also be unconstitutional.

The question for Fourth Amendment purposes is whether the warrant placed any meaningful limits on agents' ability to search.  The question is whether the text of the warrants provides "any practical tool to guide the searching agents in distinguishing meaningfully between materials of potential evidentiary value and those obviously devoid of it."  *United States v. Wey*, 256 F. Supp. 3d 355, 386 (S.D.N.Y. 2017).[4]  The question is whether the warrants contain any meaningful limitations that prevent "general, exploratory rummaging in a person's

---

the idea that a person must have a cognizable Fourth Amendment interest" in the place or thing searched.  *Byrd v. United States*, 584 U.S. 395, 410 (2018).  Because it is "not a jurisdictional question," it "need not be addressed" in every case before reaching the merits.  *Id*. at 411.

Prior to *Byrd*, several district courts had misinterpreted Fourth Amendment standing as a jurisdictional requirement, thus requiring pleading and proof at the outset.  That approach never had support in Supreme Court or Second Circuit law, but in any event, it is now clearly wrong in light of *Byrd*.  The government's half-hearted argument that every Fourth Amendment motion requires an affidavit proving standing—even where standing is entirely obvious—is meritless.  Under *Byrd*, this Court can address the merits without addressing standing, and if some actual dispute were to arise about Mr. Comb's Fourth Amendment interest in his person, his residences, and his cell phones, this Court could address it at that time.  It is exceedingly unlikely that any such dispute would arise, but regardless, Mr. Combs can provide evidence to prove his interest if this Court has any doubts.

[4] The government's argument that *Wey* is distinguishable because "[t]he Warrants here were far more particularized and thus entirely dissimilar," Opp.34, is refuted simply by reading the warrants here (*e.g*., Ex.2 ¶¶1-4), and comparing them to the warrants in *Wey*, *see* 256 F. Supp. 3d at 364-65.  If the warrants here are dissimilar, it is only in the sense that the warrants here covered both Combs's business *and* personal lives, whereas the warrants in *Wey* targeted only the defendants' businesses.

belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). One searches the warrants in vain for any meaningful limitations.

The best the government can come up with is this: "the limiting principle set forth clearly in each Warrant" was that it "only authorized seizure of the aforementioned items that were *related to the* 'subject offenses.'" Opp.33. That argument is tautological. Every warrant ever issued states that the evidence seized must be related to the subject offenses. If that limitation were sufficient, no warrant would ever violate the Fourth Amendment's overbreadth doctrine.

And in this case, given the way the offenses were described, that "limitation" was no limitation at all. The government argues that "communications, photos, documents, calendars, location data, travel records, financial records, and call records that *were not* related to criminal activity were fully protected from seizure." Opp.33. But what does that even mean? Were there *any* calendars and financial records and call records that were not related to the criminal activity, as defined by the government?

Consider travel records. Suppose Mr. Combs took a trip to promote Sean Jean, his fashion line. That trip would have been perfectly legal in itself—it is not, on its face, an act of sex trafficking or prostitution or racketeering, so as a basic matter of Fourth Amendment common sense, such travel records should have been off-limits. But that is not what the warrants said. The warrants stated that the ███████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ Ex.2 ¶9. So according to the government, Sean Jean was itself part of the racketeering enterprise.

And the warrants went on to make numerous additional allegations tying every aspect of the business to criminality. They stated that ████████████████████████████████████

██████████████████████████████████████████████." *Id.* ¶6.  They alleged that

████████████████████████████████████████████████████████████

████████████████████████████████████████.  *E.g.*, *id.* ¶¶6, 7, 11.j-n, 45.  According to the warrants, there was no separation between Mr. Combs' personal life and the "Combs Business," and there was no separation between the Combs business and the crimes. Consequently, according to the warrants themselves, all travel records for Combs Business— including any random trip to promote Sean Jean, for example—would have been "related to the subject offenses."  The government's supposed limiting principle is meaningless.

\* \* \* \*

Having run through the platitudes, the government finally reaches its real argument: It admits the warrants allowed seizure of "a significant volume of evidence," but claims the scope and breadth of the seizure was merely a function "of the scope and breadth of the defendant's decades-long criminal activity."  Opp.33-34.

That is precisely the problem.  The warrant described the "scope and breadth" of the crimes as lasting for decades, and as encompassing every aspect of Mr. Combs's personal and professional life.  The crimes, as defined by the government, include all his relationships with girlfriends over many years and the entirety of the "Combs Business"—including all his myriad interests in everything from music to fashion to vodka.  In the end, the government's argument boils down to a claim that a general warrant was justified here because Mr. Combs's whole life *over decades* was a racketeering enterprise.

And that is why numerous courts have recognized that mere formal compliance with the three-part test of *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (*see* Opp.31), is not always sufficient.  A court must also consider "circumstance-specific considerations," because

"there is no settled formula for determining whether a warrant lacks particularity." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453-54 (S.D.N.Y. 2013). The ultimate question is not simply whether the warrant names some offense. Rather, the ultimate question is whether the warrant imposes "meaningful parameters on an otherwise limitless search." *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010). Here, the warrants did not.

Finally, the government claims that even if the warrant was overbroad, the agents acted in good faith. Opp.35. Given the agents' mendacity in obtaining the warrants, it is hard to credit any claim of good faith. In any event, any reasonable agent would be aware that search warrants cannot legally authorize an unlimited search of a person, his electronic devices, and his homes.

## CONCLUSION

For the foregoing reasons, Mr. Combs requests that this Court suppress the evidence obtained through the warrants, or, at a minimum, order a *Franks* hearing.

Date:  March 10, 2025

Respectfully Submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
Shapiro Arato Bach LLP
1140 Ave of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao

SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com