UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | S2 24 Cr. 542 (AS) |
| SEAN COMBS,<br> a/k/a "Puff Daddy,"<br> a/k/a "P. Diddy,"<br> a/k/a "Diddy,"<br> a/k/a "PD,"<br> a/k/a "Love,"<br>          Defendant. | |

# THE GOVERNMENT'S MOTION *IN LIMINE*
## TO PROTECT THE IDENTITIES OF CERTAIN VICTIM-WITNESSES

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Maurene Comey
Meredith Foster
Emily A. Johnson
Christy Slavik
Madison Reddick Smyser
Mitzi Steiner
Assistant United States Attorneys
*Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................... 2

    **I.**    **The Indictment** ................................................................................................ 2

    **II.**    **Relevant Victim Background** ........................................................................ 2

        **A.**    **Victim-2** ............................................................................................ 2

        **B.**    **Victim-3** ............................................................................................ 4

        **C.**    **Victim-4** ............................................................................................ 5

APPLICABLE LAW ......................................................................................................... 6

DISCUSSION ................................................................................................................ 13

    **I.**    **The Court Should Permit Victim-2, Victim-3, and Victim-4 to Testify Under Pseudonym to Avoid Unnecessary Harassment, Humiliation, Social Stigma, and Professional Consequences** ........................................................................ 13

    **II.**    **The Use of Pseudonyms is Narrowly Tailored to the Particular Privacy Interests of Victim-2, Victim-3, and Victim-4** ................................................ 17

CONCLUSION ............................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Clark v. Ricketts*,
  958 F.2d 851 (9th Cir. 1991)..................................................................................................... 7
*Delaware v. Van Arsdall*,
  475 U.S. 673 (1986) ................................................................................................................. 7
*Doe No. 1 v. Nygard*,
  No. 20 Civ. 6501 (ER), 2020 WL 4890427 (S.D.N.Y. Aug. 20, 2020).................................... 8
*Doe No. 2 v. Kolko*,
  242 F.R.D. 193 (E.D.N.Y. 2006) .............................................................................................. 8
*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ............................................................................................................... 18
*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995)............................................................................................... 18, 19
*United States v. Bennett*,
  409 F.2d 888 (2d Cir. 1969) ..................................................................................................... 7
*United States v. Cohen*,
  366 F. Supp. 3d 612 (S.D.N.Y. 2019) .................................................................................... 18
*United States v. Corley*,
  No. 13 Cr. 48 (AJN), 2016 WL 9022508 (S.D.N.Y. Jan. 15, 2016)........................................ 9
*United States v. Daskal*,
  No. 21 Cr. 110, 2023 WL 9424080 (E.D.N.Y. July 12, 2023) ........................................... 9, 18
*United States v. Figueroa*,
  548 F.3d 222 (2d Cir. 2008).................................................................................................... 6
*United States v. Graham*,
  257 F.3d 143 (2d Cir. 2001) ................................................................................................... 18
*United States v. Graham*,
  No. 14 Cr. 500 (ER), 2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015)........................................ 9
*United States v. Hadden*,
  20 Cr. 468 (RMB) ............................................................................................................. 11,17
*United States v. Hernandez*,
  No. 12 Cr. 809 (PKC), 2013 WL 3936185 (S.D.N.Y. July 29, 2013) .................................... 10
*United States v. Kelly*,
  19 Cr. 286 ........................................................................................................................... 8, 12
*United States v. Kidd*,
  385 F. Supp. 3d 250 (S.D.N.Y. 2019) ............................................................................... 8, 18
*United States v. Marcus*,
  No. 05 Cr. 457 (ARR), 2007 WL 330388 (E.D.N.Y. Jan. 31, 2007)................................. 7, 10
*United States v. Marti*,
  421 F.2d 1263 (2d Cir. 1970).................................................................................................. 7
*United States v. Martinez*,
  No. 17 Cr. 281, (ERK) (E.D.N.Y. Dec. 18, 2017) ................................................. 9, 10, 15, 16

*United States v. Maxwell*,
   20 Cr. 330 (AJN), 2021 WL 5967913 (S.D.N.Y. Dec. 15, 2021) ............................ 8, 10, 15, 17
*United States v. Paris*,
   No. 06 Cr. 64 (CFD) 2007 WL 1484974 (D. Conn. May 18, 2007) .................................. 9, 19
*United States v. Paduch*,
   23 Cr. 181 (RA) .............................................................................................................. 11, 17
*United States v. Raniere*,
   No. 20 Cr. 3520, 20 Cr. 3789, 2022 WL 17544087 (2d Cir. Dec. 9, 2022) ..................... passim
*United States v. Schulte*,
   436 F. Supp. 3d 698 (S.D.N.Y. 2020) ............................................................................... 10
*United States v. Terranova*,
   750 F. Supp. 3d 15 (E.D.N.Y. 2024) ............................................................................ 8, 15
*United States v. Urena*,
   8 F. Supp. 3d 568 (S.D.N.Y. 2014) ..................................................................................... 7
*United States v. Zhong*,
   No. 16 Cr. 614 (DLI), 2018 WL 6173430 (E.D.N.Y. Nov. 26, 2018) ................................. 9

Statutes

18 U.S.C. § 1591 ....................................................................................................................... 2
18 U.S.C. § 1962 ....................................................................................................................... 2
18 U.S.C. § 2421 ....................................................................................................................... 2
18 U.S.C. § 3771 ................................................................................................................. 8, 11
18 U.S.C. § 3771(a)(8) ..................................................................................................... 1, 10, 16

Rules

Fed. R. Evid. 412 .................................................................................................................... 16
Fed. R. Evid. 611 ...................................................................................................................... 7

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion, pursuant to the Crime Victims' Rights Act, that the Court take certain measures at trial to protect the dignity and privacy of victims. *See* 18 U.S.C. § 3771(a)(8). The Government currently expects that Victim-1, Victim-2, Victim-3, and Victim-4 will testify at trial. Victim-1 ████████ ██████████████████████████████████████████████████████████████████ ███████████████████████████ She is prepared to testify under her own name. Vicitm-2, Victim-3, and Victim-4 ██████████████████████████████████████ ██ have asked that their identities not be revealed to the press or the public.[1]

To protect their privacy, the Government respectfully requests that the Court take certain narrowly tailored measures at trial that are consistent with the protections multiple victims of sex crimes have been afforded in recent federal trials within this Circuit. Specifically, the Government requests that (1) Victim-2, Victim-3, and Victim-4 be referred to at trial using only pseudonyms; (2) the Court preclude the defense from eliciting personally identifying details of those witnesses; and (3) the Court seal exhibits that contain the first and/or last names of Victim-2, Victim-3, and Victim-4, with redacted versions to be made available to the public. This case has already received an exceptional amount of media coverage, which will presumably only increase as trial proceeds. Permitting these measures will prevent unnecessary public disclosure of the victims' identities, and the harassment from the media and others, undue embarrassment, and other adverse consequences that would almost certainly follow if these women were forced to reveal their true names publicly at trial.

---

[1] To be clear, the victims' identities are already known to the defendant and, as discussed further below, will be known to the jury.

1

## BACKGROUND

### I.    The Indictment

On March 6, 2025, the grand jury returned Indictment S2 24 Cr. 542 (AS) charging the defendant in three counts.  Count One charges racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  Count Two charges sex trafficking, in violation of 18 U.S.C. §§ 1591 and 2.  Count Three charges interstate transportation to engage in prostitution, in violation of 18 U.S.C. §§ 2421(a) and 2.  (Dkt. No. 169 (the "Indictment')).  As charged in the Indictment, the defendant, often assisted by other members and associates of the racketeering enterprise, engaged in numerous offenses constituting racketeering activity, including, as relevant here, sex trafficking, forced labor, other acts of sexual and physical violence, and obstruction.  (*Id.* ¶¶ 1-14).

In particular, Count One alleges that, as part of a pattern of racketeering activity, the defendant sex trafficked three victims ("Victim-1," "Victim-2," and "Victim-3") through force, fraud, and coercion.  (*Id.* ¶ 12(a)).  The defendant coerced all three victims to participate in highly orchestrated sexual encounters that lasted for multiple hours and sometimes full days without sleep.  (*Id.* ¶ 12(a)).  Some of these commercial sex acts involved male escorts and were referred to by the defendant as "Freak Offs."  (*Id.* ¶ 12(b)).  Count One also alleges that the defendant obtained the forced labor of all three of those same victims during the course of commercial sex acts and obtained the forced labor of one of his employees ("Victim-4"), including sexual activity with the defendant, through force and threats of serious harm.  (*Id.* ¶ 12(i)).

### II.    Relevant Victim Background

#### A.    Victim-2

The Government expects Victim-2 will testify that ██████████████████████████████ ████████████████████████████████████████████████████████████████ The Government expects Victim-2 will testify that ████████████████████████████████

2

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████.

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████. Among other things, Victim-2 has explained that testifying at this trial will already be extremely traumatic, and that trauma would only be magnified if her identity were revealed, potentially leading to psychological, emotional, interpersonal, and professional harms. █████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████. To protect her privacy and the privacy of her family ████████

████████████████ prevent harassment, prevent adverse impact on her ability to earn an income, and minimize the humiliation

she will endure when testifying about such deeply personal topics, Victim-2 has asked that she be permitted to testify under a pseudonym.

**B.    Victim-3**

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ To protect her privacy

and the privacy of her family ██████████████████, prevent harassment, prevent adverse

impact on her ability to earn an income, and minimize the humiliation she will endure when

testifying about such deeply personal topics, Victim-3 has asked that she be permitted to testify

under a pseudonym.

### C.    Victim-4

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

5



To protect her privacy and the privacy of her family, prevent harassment, prevent adverse impact on her ability to earn an income, and minimize the humiliation she will endure when testifying about such deeply personal topics, Victim-4 has asked that she be permitted to testify under a pseudonym.

## APPLICABLE LAW

The Confrontation Clause guarantees defendants the right to cross-examine witnesses who testify against them. U.S. Const. amend. VI; *see also United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir. 2008). This right, however, is not absolute. A defendant's rights under the Confrontation Clause must yield to accommodate other legitimate interests in the criminal trial process. *See, e.g.*, *id.* ("District courts may 'impose reasonable limits on [defense] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" (quoting

---

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986))); Fed. R. Evid. 611 (imposing limits on the scope of cross-examination).

In the context of the disclosure of witness identifying information, the Second Circuit has identified two primary interests of defendants: "(1) obtaining information needed for in-court and out-of-court investigation of the witness; and (2) enabling defense counsel to elicit information that might be relevant to the jury's deliberations as to the credibility or knowledgeability of the witness." *United States v. Marcus*, No. 05 Cr. 457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007) (citing *United States v. Marti*, 421 F.2d 1263, 1266 (2d Cir. 1970)), *aff'd*, 628 F.3d 36, 45 n.12 (2d Cir. 2010).

If the Government provides a reason to "limit disclosure of identifying information in open court," the defendant must "demonstrate a 'particularized need' for disclosure . . . which the court weighs against the risks to the witness." *Id.* (quoting *United States v. Bennett*, 409 F.2d 888, 901 (2d Cir. 1969)); *see also United States v. Urena*, 8 F. Supp. 3d 568, 572-73 (S.D.N.Y. 2014) (permitting an undercover law enforcement officer to testify under a pseudonym, after balancing the relevant interests and noting the defendants "fail[ed] to demonstrate the materiality of UC-188's real name to any issue of guilt or innocence"). Such reason "may be that the answer may subject the witness to reprisals or that the question is being used to humiliate or annoy the witness." *Marti*, 421 F.2d at 1266.

"[T]here is no absolute right of an accused to have a jury hear a witness's true name and address." *Clark v. Ricketts*, 958 F.2d 851, 855 (9th Cir. 1991); *see also United States v. Raniere*, No. 20 Cr. 3520, 20 Cr. 3789, 2022 WL 17544087, at *6 (2d Cir. Dec. 9, 2022) (unpublished summary order) ("Prior to the commencement of trial, upon motion by the Government, the District Court ordered that testifying victims were to be identified by a nickname, first name, or

pseudonym only . . . during trial.  Raniere argues that this decision violated his rights under the Confrontation Clause of the Sixth Amendment and his due process rights under the Fifth Amendment.  We disagree." (internal quotation marks and citations omitted)).  Strong public interests support limiting public disclosure of victim identities and other sensitive information. The Crime Victims' Rights Act, 18 U.S.C. § 3771, requires courts to implement procedures to ensure that crime victims are accorded, among other rights, "[t]he right to be reasonably protected from the accused," and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy."  *Id.* §§ (a)(1), (a)(8).  Moreover, "the public has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes."  *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 Civ. 6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020) (internal quotation marks and ellipsis omitted) (quoting *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)).  This public interest becomes "only stronger" when there are "sprawling allegations of widespread sexual abuse" against a defendant.  *Id.*

Given these strong public interests and the explicit nature of testimony involved in sex abuse cases, victims in such cases often testify using only pseudonyms or their first name.  *See, e.g., Raniere*, 2022 WL 17544087, at *6-7 (affirming district court's decision to permit victims in racketeering and sex trafficking prosecution to testify using first names, nicknames, or pseudonyms); *United States v. Kidd*, 385 F. Supp. 3d 250, 255 (S.D.N.Y. 2019) (permitting minor victims to testify using pseudonyms); *United States v. Terranova*, 750 F. Supp. 3d 15, 26-29 (E.D.N.Y. 2024) (permitting minor victims, their family members, and undercover officer to testify using pseudonyms); Nov. 1, 2021 Tr. at 5:24-13:23, *United States v. Maxwell,* No. 20 Cr. 330 (AJN) (S.D.N.Y.), Dkt. No. 456 (permitting minor victims and their family members to testify using a pseudonym or first name); Order at 19-21, *United States v. Kelly*, No. 19 Cr. 286 (E.D.N.Y.

Nov. 4, 2021), Dkt. No. 255 (permitting victims to testify using a pseudonym, nickname, or first name); *United States v. Zhong*, No. 16 Cr. 614 (DLI), 2018 WL 6173430, at *1-2 (E.D.N.Y. Nov. 26, 2018) (permitting victims in forced labor trial to testify using pseudonyms); Order at 2-3, *United States v. Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34 (permitting victim to testify using pseudonym where the "case has already received significant national and local press coverage"); *United States v. Corley*, No. 13 Cr. 48 (AJN), 2016 WL 9022508, at *3-4 (S.D.N.Y. Jan. 15, 2016) (noting that "Judge Patterson . . . permitted the minor victims to testify under a pseudonym at trial" and denying the *pro se* defendant's request for the surnames of the minor victims for his appeal); *United States v. Graham*, No. 14 Cr. 500 (ER), 2015 WL 6161292, at *10 (S.D.N.Y. Oct. 20, 2015) (permitting victims to testify using their first names only).

Specifically, "the practice of allowing alleged victims of sexual abuse to testify under a pseudonym has been widely permitted because requiring alleged victims to publicly provide their names could chill their willingness to testify for fear of having their personal histories publicized and may cause further harassment or embarrassment." *United States v. Daskal*, No. 21 Cr. 110 (NGG) (LB), 2023 WL 9424080, at *3 (E.D.N.Y. July 12, 2023) (brackets and internal quotation marks omitted); *see also Raniere*, 2022 WL 17544087, at *7 (affirming use of pseudonyms where "the District Court reasoned that requiring victims to provide their names in public could chill their willingness to testify, for fear of having their personal histories publicized" (internal quotation marks omitted)). Victims in sex abuse cases suffer from "likely adverse personal, professional and psychological consequences of publicly linking their identities to their past" experiences. *United States v. Paris*, No. 06 Cr. 64 (CFD), 2007 WL 1484974, at *2 (D. Conn. May 18, 2007). "In light of the explicit nature of the conduct that the witnesses will be testifying about," victims

have "legitimate" fears "of harassment by the media" and "loss of employment potentially resulting from trial publicity." *Marcus*, 2007 WL 330388, at *1. Equally, because of the explicit nature of the offense conduct, which may require victims to testify about "degrading and humiliating treatment by the defendant," revealing victim identities "could chill the willingness of other alleged victims of sex crimes to come forward." Order at 2, *Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34; *see also United States v. Maxwell*, 20 Cr. 330 (AJN), 2021 WL 5967913, at *1 (S.D.N.Y. Dec. 15, 2021). These interests significantly outweigh any defense interest, especially where the defense knows the true identities of victims and is able to mount their defense. *See* Order at 2-3, *Martinez*, No. 17 Cr. 281 (ERK) (E.D.N.Y. Dec. 18, 2017), Dkt. No. 34 ("[D]efendant has not identified any 'particularized need' for the disclosure of Jane Doe's identity information in open court. Defendant already knows who Jane Doe is, and will not be prevented from mounting a defense in the event that she is referred to only as Jane Doe.").[3]

Indeed, in a recent highly publicized case in the Southern District of New York, Judge Nathan granted a motion to permit victims to testify under pseudonyms and redact their real identities from trial exhibits where the alleged victims were expected to give highly sensitive and personal testimony concerning illegal sexual abuse. *See Maxwell*, 2021 WL 5967913, at *1. The Court cited two primary reasons for its decision. First, the court found that because of the "sensitive and inflammatory nature of the conduct alleged," pseudonyms were necessary to protect the victims "right to be treated with fairness and with respect for the victim's dignity and privacy" under the Crime Victims' Rights Act. *Id.* (quoting 18 U.S.C. § 3771(a)(8)). Second, the Court

---

[3] Courts have also permitted the Government to call witnesses using pseudonyms or using only their first names in other types of cases. *See, e.g.*, *United States v. Schulte*, 436 F. Supp. 3d 698, 706 (S.D.N.Y. 2020) (permitting use of pseudonyms in national security case); *United States v. Hernandez*, No. 12 Cr. 809 (PKC), 2013 WL 3936185, at *3 (S.D.N.Y. July 29, 2013) (permitting use of pseudonym for undercover agent in narcotics case).

noted the strong public policy reasons for the use of pseudonyms: "if alleged victims of abuse were subject to publicity, harassment, and embarrassment, other alleged victims of sex crimes may be deterred from coming forward to report abuse." *Id.* (citation and internal quotation marks omitted).[4]

In two similarly publicized cases in the Eastern District of New York, the district court judges also permitted sexual abuse victims to testify using pseudonyms or using only their first names. In *United States v. Raniere*, No. 18 Cr. 204 (E.D.N.Y.), the Government moved to allow testifying victims to testify "under a nickname, first name, or pseudonym only, and to not be required to disclose uniquely identifying information," such as "addresses, names of family members, or exact places of education or employment." Memorandum & Order at 32, *Raniere*, No. 18 Cr. 204 (E.D.N.Y. May 6, 2019), Dkt. No. 622. In granting the motion, the Court explained that "requiring victims of sex trafficking . . . and other crimes to provide their names in public could chill their willingness to testify," and "would only cause further embarrassment and humiliation, given the inflammatory nature of the conduct alleged." *Id.* at 32, 35 (citations and internal quotation marks omitted). It also may "cause other victims to fear seeking help from law enforcement as that could subject them to further harassment and embarrassment." *Id.* (internal quotation marks omitted). Although the defendant claimed that several victims' names were

---

[4] Two other judges in this District recently allowed victims of sexual abuse to testify under pseudonyms at trials that received media attention. During trial in *United States v. Paduch*, 23 Cr. 181 (RA), which took place between April 24, 2024 and May 5, 2024, Judge Abrams permitted thirteen different witnesses—who were either victims of sexual abuse or the relatives of victims— to testify under pseudonyms. Similarly, during trial in *United States v. Hadden*, 20 Cr. 468 (RMB), which took place between January 4, 2023 and January 24, 2023, Judge Berman permitted eight victims to testify under pseudonyms. In those cases, the defense consented to the use of pseudonyms, so the practice's permissibility was not litigated, but both cases demonstrate that it is entirely feasible to efficiently conduct a complex trial with documentary evidence while also allowing multiple victims to testify under pseudonyms.

already public and that some victims had come forward by choice, Judge Garaufis found those facts "irrelevant," explaining "just because some victims' names are publicly available does not mean that the details of their experiences are already available," and "the choice of a victim to publicly discuss a crime is not analogous to being put on the stand about it, as, in court, the victim will not be able to choose how and to what level of detail she discusses the crime." *Id.* at 34 n.17.

Judge Donnelly reached a similar result in *United States v. Robert Kelly*, 19 Cr. 286 (AMD), and granted the Government's similar motion *in limine* to permit certain victims to testify using pseudonyms or their first names and prevent public disclosure of certain identifying details. Mot. at 1, *Kelly*, No. 19 Cr. 286 (E.D.N.Y. July 10, 2021), Dkt. No. 121. In its motion, the Government explained that two of the victims had "not spoken publicly about their experiences," and while a third had done so, "her anticipated testimony at trial will be more fulsome than her prior public disclosures and will include sensitive information that has not been previously publicly revealed." *Id.* at 11. Additionally, the Government noted that the defendant's case had received widespread coverage in the media which was expected to continue throughout the trial due to the defendant's "career as a well-known musician" and the nature of the charges against him. *Id.* at 10-11. In granting the motion, Judge Donnelly found the Government "identified legitimate and compelling reasons" for a particular victim-witness to testify under pseudonym because she "was expected to . . . testify in explicit detail about degrading and humiliating treatment," "[t]he trial garnered a lot of media attention," and consequently, "there was a significant risk of humiliation and reprisals." Order at 20, *Kelly*, No. 19 Cr. 286 (E.D.N.Y. Nov. 4, 2021), Dkt. No. 255. The Court also noted that "[t]he defendant did not identify a clear, particularized need to have [the victim-witness]'s name disclosed publicly," especially where he "knew who [the victim-witness]

is, and investigated her background," and where "the Court gave an instruction that the use of nicknames or pseudonyms is common in cases that have garnered media attention." *Id.*

## **DISCUSSION**

As discussed above, the Government expects the victims in this case will testify in explicit detail about highly sensitive, personal experiences involving sex acts caused by force, fraud, and/or coercion. The limited protections the Government requests on their behalf are reasonable, necessary, and narrowly tailored to protect the victims' well-being, prevent undue embarrassment and other adverse consequences, including loss of employment, and prevent the victims from being harassed by the press and others. This request is by no means extraordinary. As set out above, it is entirely consistent with the decisions of many other district judges within this Circuit who have recently permitted victims of sex crimes to testify under pseudonym to protect their privacy, especially in high-profile cases such as this one. There is no reason for this Court to deviate from that well-established practice here.

### I.   **The Court Should Permit Victim-2, Victim-3, and Victim-4 to Testify Under Pseudonym to Avoid Unnecessary Harassment, Humiliation, Social Stigma, and Professional Consequences**

The Government requests that Victim-2, Victim-3, and Victim-4 be permitted to testify under pseudonyms and to direct that others refer to those individuals by their pseudonyms throughout trial. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Accordingly, the only way to truly protect their privacy is to follow the example of other courts in this Circuit and allow these three victims to testify under pseudonyms.[5]

Since the defendant's arrest, this case has garnered significant media attention, and the Government expects that members of the media will attend and report on the trial. The news coverage has focused on victims in the case, documenting new victims added to the Indictment and details of the conduct alleged.[6] Under these circumstances, it is highly likely that, if stated publicly in open court, the names of these three victims will be widely publicized. That publicity imposes real costs on the victims and the public.

*First*, publicizing the names of these three victims will cause them significant embarrassment, anxiety, and social stigma in light of their anticipated testimony. The Government expects these three victims will each testify in explicit detail about the defendant's physical and sexual abuse. These details will undoubtedly be "inflammatory" in light of the "nature of the conduct alleged." Order at 32, *Raniere*, No. 18 Cr. 204, Dkt. No. 622. Given the significant press

---

[5] While it is possible that the victims may be recognized on sight by members of the press and public, that risk is substantially smaller than the use of their names in court. In any event, it is likely—especially based on past experience in similar cases in this District—that members of the press would refrain from revealing victim identifying information if the Court ordered that information protected at trial.

[6] *See, e.g.*, "Prosecutors Add Two More Women to Sean Combs Case," *BBC* (Jan. 31, 2025), available at https://www.bbc.com/news/articles/c5ye9lgnk5zo; "Prosecutors List Two New Victims, Say Sean 'Diddy' Combs Dangled Woman Off Balcony," *L.A. Times* (Jan. 31, 2025), available at https://www.latimes.com/california/story/2025-01-31/sean-diddy-combs-new-allegations-victims; "Sean 'Diddy' Combs Faces New Claims of Allegedly Forcing Employee to 'Engage in Sex Acts'," *People* (Mar. 6, 2025), available at https://people.com/sean-diddy-combs-faces-new-allegations-of-forced-labor-in-superseding-indictment-11692723; "Diddy: Now I Know Who's Accusing Me . . . Feds Hand Over Names of 3 Alleged Victims," *TMZ* (Mar. 18, 2025).

attention that this trial will likely garner, the details of each victim's testimony will likely appear in the news and on the internet, but the Court can ensure that they will not be publicized side-by-side with the victim's true name.  *See* Order at 2-3, *Martinez*, No. 17 Cr. 281, Dkt. No. 34 ("Th[is] case has already received significant national and local press coverage.  Revealing Jane Doe's identity would likely cause her anxiety and risk social stigma.").

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████.  *See Terranova*, 750 F. Supp. 3d at 27-28 (concluding victim did not "waive[] his right to anonymity by publicly discussing the case on a social media platform where he had thousands of followers and used his real name" because his "trial testimony has the potential to expose him to a far greater degree of embarrassment and stigma than his social media post might have"); Order at 34 n.17, *Raniere*, No. 18 Cr. 204, Dkt. No. 622 ("[T]he choice of a victim to publicly discuss a crime is not analogous to being put on the stand about it, as, in court, the victim will not be able to choose how and to what level of detail she discusses the crime.").  Here, ████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████.  *See* Nov. 1, 2021 Tr. at 9:13-9:25, *Maxwell,* No. 20 Cr. 330, Dkt. No. 456 (granting motion to allow victims to testify under pseudonym, even where at least one victim had previously spoken publicly about the case).

   *Second*, the publicity surrounding this case increases the personal and professional consequences to the victims for testifying.  Victims have expressed serious concerns to the Government about the risks that association with this case will pose to their personal relationships and future employment.  Making that association widely public requires the victims to be

associated with the graphic details of their experiences, not just in the general public consciousness, but with their friends, families, colleagues, and prospective employers.

*Third*, the heightened publicity of this case increases the risk that the victims will be harassed by the press and public if identified by their real names. In light of the significant media attention this case has generated, it is likely that the victims will be approached and harassed by members of the press and the public after their testimony. Publicizing their names will subject them to unwanted attention at the time they are testifying about some of the most difficult moments of their lives in a criminal sex abuse trial.[7]

Taken together, requiring these three victims to testify under their true names imposes serious costs on them. It is inconsistent with the Crime Victims' Rights Act's exhortation that victims are to be treated with respect for their "dignity and privacy." 18 U.S.C. § 3771(a)(8). And requiring victims of sex crimes to provide their names in public could chill their willingness to testify, for fear of having their personal histories publicized as they rebuild their lives. *See* Order at 2, *Martinez*, No. 17 Cr. 281, Dkt. No. 34. It could also cause other victims to avoid seeking help from law enforcement because of fear that coming forward could subject them to further harassment and embarrassment. *Cf.* Fed. R. Evid. 412 Advisory Committee Note (explaining that, by protecting "the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details," the rule

---

[7] The Government would consent to an appropriate jury instruction explaining that the reason for the precautions is "regard for the witnesses' and non-witness victims' privacy," and that no inference should be drawn against the defendant because of those precautions. Order at 33-34, *Raniere*, No. 18 Cr. 204, Dkt. No. 622 ("[T]he court is confident that any prejudice can be cured with a jury instruction explaining that the reason for the anonymity is regard for the witnesses' and non-witness victims' privacy."). As the district court in *Raniere* explained, "[g]iven the potentially embarrassing nature of the allegations, and the media attention thus far, such an explanation will certainly seem plausible to the jury." *Id.* at 34 (footnote omitted).

"encourages victims of sexual misconduct to . . . participate in legal proceedings against alleged offenders").

## II.   The Use of Pseudonyms is Narrowly Tailored to the Particular Privacy Interests of Victim-2, Victim-3, and Victim-4

The Government's request is narrowly tailored to the privacy interests of Victim-2, Victim-3, and Victim-4.  As part of this request, the Government asks that the Court: (1) limit references at trial to these three victims to their pseudonyms, including in jury addresses and examination of witnesses; (2) preclude the defense from eliciting personal identifying information for these three victims, including their addresses, the names of their family members, or the details of their current employment; and (3) seal exhibits containing the names of Victim-2, Victim-3, and Victim-4.[8]

The use of these limited precautions—all common in similar cases in this Circuit—will not curtail the defendant's due process rights.  As an initial matter, the Government expects the jury to learn the true names of these three victims at trial.  The Government intends to offer documentary evidence that would corroborate the testimony of the victims and which contain the victims' true names.  Thus, while those names will remain hidden from the public, they will be revealed to the jury.[9]  Similarly, during voir dire, prospective jurors can be given a sheet of paper

_____

[8] For the same reasons, any courtroom sketch artists should be precluded from drawing the faces of victims. *See, e.g.*, Nov. 18, 2021 Order, *Maxwell*, 20 Cr. 330 (AJN) (S.D.N.Y.), Dkt. No. 471 ("[C]ourtroom sketch artists whether in the courtroom or overflow rooms may not draw exact likenesses of the Protected Witnesses."); May 6, 2019 Text Order, *Raniere*, 18 Cr. 204 ("Sketch artists will be allowed in the courtroom and overflow room with their supplies.  They may, however, not draw exact likenesses of jurors or witnesses other than co-defendants should they testify . . . .").

[9] This can be accomplished simply.  For instance, the jury can learn a victim's name by displaying a document containing that victim's name for the witness and the jury—but not the public—and asking the victim whether the name on the document is her true name.  Indeed, that practice was successfully and efficiently followed in this District during the testimony of numerous witnesses during trials in *United States v. Maxwell*, 20 Cr. 330 (AJN), *United States v Hadden*, 20 Cr. 468 (RMB), and *United States v. Paduch*, 23 Cr. 181 (RA).

with the true names of the protected witnesses and asked whether they know any individuals on the paper. Accordingly, the Court and parties may screen for juror bias without requiring the Court or any juror to state a protected name in open court.

The requested protections also will not compromise the defendant's confrontation rights in any way. The defendant already knows the true identities of Victim-2, Victim-3, and Victim-4, and is fully able to complete an investigation in advance of trial. There is no need—much less a particularized need—for the victims' true names or other personal identifying information to be stated in open court to accomplish that purpose. The use of these victims' real names will not add anything to their testimony or enable the defense to more effectively cross-examine them. *See Daskal*, 2023 WL 9424080, at *5 (finding anonymity appropriate where defendant already knew alleged victim's name, noting defendant "is free to undertake whatever research he sees fit in advance of trial"); *see also Kidd*, 385 F. Supp. 3d at 255 ("[T]he right to know the victims' identity is separate from whether the victims may testify at trial anonymously.").

Similarly, the sealing of exhibits containing the names of Victim-2, Victim-3, and Victim-4, is also appropriate. Although "the public has an especially strong right of access to evidence introduced in trials," *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (internal quotation marks omitted), it "is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). *See United States v. Graham*, 257 F.3d 143, 149 (2d Cir. 2001). Indeed, "subject matter [that] is traditionally considered private rather than public" will weigh "heavily against access." *Amodeo*, 71 F.3d at 1051. This includes certain "[f]inancial records . . . , family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters . . . ." *Id.* "[T]he 'venerable' privacy-interest exception to the presumption of access exists to avert 'cater[ing] 'to a morbid craving for that which is sensational and impure.''" *United States v. Cohen*, 366 F. Supp.

3d 612, 625-26 (S.D.N.Y. 2019) (brackets in original) (quoting *Amodeo*, 71 F.3d at 1051).  The Government's sealing request is narrowly tailored to prevent public disclosure only of the identifying information in those exhibits which would identify Victim-2, Victim-3, and Victim-4. Any other result would defeat the purpose of permitting these victims to testify using pseudonyms. *See Paris*, 2007 WL 1484974, at *2 (concluding the interest in protecting victim identities outweighed the public interest in access to information because "the public and press will be able to hear the Jane Does' and Minors' testimony in full").[10]

In sum, the identifying information the Government seeks to limit in open court, specifically, the names and identifying information about Victim-2, Victim-3, and Victim-4, is irrelevant to their testimony.  There is a substantial risk, however, that disclosure of such information will identify the victims with particularity, and thus subject them to harassment, retaliation, and embarrassment, or additional adverse consequences.  Accordingly, the Court should permit these three victims to testify under pseudonyms and preclude the defense from eliciting testimony regarding their personally identifying information.

---

[10] For essentially the same reasons, the Government respectfully requests that the Court accept this memorandum under seal and allow the parties to confer on narrowly tailored redactions of victim-identifying information to be applied before it is filed publicly on the docket.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should permit Victim-2, Victim-3, and Victim-4 to testify under pseudonyms at trial and should order sealing of exhibits containing identifying information for those three victims.

MATTHEW PODOLSKY
Acting United States Attorney

By:    /s/_____
Maurene Comey / Meredith Foster
Emily A. Johnson / Christy Slavik
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284