# Exhibit C

# United States v. Grant

United States District Court for the Southern District of New York

November 17, 2004, Decided ; November 18, 2004, Filed

04 Cr. 207 (BSJ)

**Reporter**
2004 U.S. Dist. LEXIS 28176 *; 35 Media L. Rep. 2495

United States of America v. Richard Grant, Ronald Coffiel, Randell Rogiers, and Phoenix Sound, Inc., Defendants.

**Prior History:** *United States v. Grant, 2004 U.S. Dist. LEXIS 9462 (S.D.N.Y., May 25, 2004)*

**Counsel:** [*1] For Richard Grant, Defendant: Camille Marie Abate, Abate & Preuss, New York, NY. Charles Lavine, New York, NY. Nicholas H. Goodman, Quirk & Bakalor, p.c., New York, NY.

For MTV Networks, Movant: Naomi Brufsky Waltman, Viacom Law Department, New York, NY.

For USA Plaintiff: David John Berardinelli, U.S. Attorney's Office, SDNY (St Andw's), New York, NY.

**Judges:** BARBARA S. JONES, UNITED STATES DISTRICT JUDGE.

**Opinion by:** BARBARA S. JONES

## Opinion

### Order

**BARBARA S. JONES**

**UNITED STATES DISTRICT JUDGE**

This motion arises out of the Government's effort to subpoena unedited footage from a television documentary series produced by MTV Networks ("MTV"). The series, "True Life," featured an episode about nightclubs, which included video shot at the Sound Factory nightclub. That club, its owner, and two of its former employees are the subject of this criminal prosecution. They are charged with making the club available for the sale and use of drugs under *21 U.S.C. § 856(a)(2)*.

The Government seeks to obtain "outtakes" - raw footage that was not part of the finished program. The Government does not know what it will see in these outtakes; based [*2] on the few seconds of Sound Factory images that did appear on television, the Government believes the outtakes will show "Club patrons suffering from the effects of illegal narcotics." (Gov. Mem. Opp'n at 5.)

MTV Networks, which is not a defendant in this case, has intervened to quash the subpoena on two grounds. First, MTV argues that the subpoena fails to meet the standard set by *Rule 17(c) of the Federal Rules of Criminal Procedure.* Second, MTV claims that production cannot be compelled given the qualified privilege enjoyed by journalists in the Second Circuit.

I. *Rule 17(c)*

*Rule 17(c) of the Federal Rules of Criminal Procedure* governs the issuance of subpoenas *duces tecum*. *Rule 17* is not a discovery device; subpoenas are a tool to produce evidence that the moving party expects will be admissible at trial. *FED. R. CRIM. P. 17(c)(1)*; *Bowman Dairy Co. v. United States, 341 U.S. 214, 220, 95 L. Ed. 879, 71 S. Ct. 675 (1951)*. A subpoena may be quashed or modified "if compliance would be unreasonable or oppressive." *FED. R. CRIM. P. 17(c)(2)*.

In order to require production prior to trial, the party seeking the subpoena must clear three hurdles. *United States v. Nixon, 418 U.S. 683, 700, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974).* [*3] They are: (1) relevancy; (2) admissibility; and (3) specificity. Subpoenas that fail to meet these hurdles may be quashed. *United States v. Morris, 287 F.3d 985, 991 (10th Cir. 2002)*; *United States v. Loe, 248 F.3d 449, 466 (5th Cir. 2001)*; *United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990)*. While *Rule 17(c)* places the initial burden on the party moving to quash the subpoena, *Nixon* shifts the burden to the party seeking production.

Applying *Nixon's* three-pronged test to the subpoena sought by the Government in the instant case, the Court finds that the materials sought are admissible and certainly described with enough specificity. The real question here is relevance.

Relevance means that the items sought would tend to prove a material issue of the prosecution or defense. The Government argues that because the footage that aired on MTV contains images of patrons who seem to be under the influence of drugs, the outtakes must contain more such images. (Gov't's Mem. Opp'n at 7.) This is relevant, the Government claims, because it makes it more probable that the defendants knew people in the club were using drugs. [*4] (Id. at 7-8.)

MTV argues that because the Government's only claim about the outtakes is that they include images of people under the influence of drugs, they are not relevant. (Reply Mem. at 3-5.) MTV concedes that video of people selling or ingesting drugs at the Sound Factory might be relevant, as would video of the individual defendants in the presence of drug use or sale, but emphasizes that the Government does not allege that the outtakes include such images.

The Court finds that while the outtakes are likely to be of minimal value to the prosecution, they are relevant. Images of the club in action, including footage of people alleged to be under the influence of drugs, could tend to convince the jury that facts consequential to the action are more probable. See *FED. R. EVID. 401*.

Having found the subpoena valid under *Rule 17*, an examination of the application of the journalists' quasi-privilege is now necessary.

## II. Newsgatherers' privilege

Any discussion of journalists' privilege under the *First Amendment* begins with *Branzburg v. Hayes, 408 U.S. 665, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972)*, in which the Supreme Court declined to recognize an absolute privilege [*5] for the press. Thereafter many circuits, including this one, sought to define the boundaries of a qualified privilege for newsgatherers. This approach was tacitly sanctioned by Justice Powell's concurrence in *Branzburg,* which suggested that a case-by-case balancing test be performed to weigh the freedom of the press against a citizen's obligation to give testimony in a criminal matter. *408 U.S. at 710*.

The degree of privilege afforded to non-confidential sources - public information gathered by a journalist in the course of covering a story - was resolved by this circuit in *Gonzales v. Nat'l Broadcasting Co., 194 F.3d 29 (2d Cir. 1998)*. There, the court reaffirmed the existence of the qualified privilege for non-confidential materials, but held: "where non-confidential information is at stake, the showing needed to overcome the journalists' privilege is less demanding than for material acquired in confidence. *Id. at 30*. When a civil litigant seeks non-confidential materials from a non-party newsgatherer, she can overcome an assertion of journalists' privilege if she can show that the materials at issue are "of likely relevance to [*6] a significant issue in the case, and are not reasonably obtainable from other available sources. *Id. at 36*.

Applying the Gonzales standard to this case, in which the prosecution seeks non-confidential information from a non-party newsgatherer, requires balancing the likely relevance of the material sought and its availability from alternative sources against the public interest in a free press. *194 F.3d at 35*.

As explained above, the Court finds that the outtakes are of limited relevance to the prosecution's case. Whether reasonably obtainable alternative sources are available to the party seeking the subpoena requires further discussion.

The parties dispute whether the video itself must be available elsewhere or whether alternative sources of the information captured on it would suffice. The Government stakes a particular need for the video itself, claiming that a (moving) picture is worth a thousand words as evidence that patrons at the club were intoxicated. (Gov. Mem. Opp'n at 17.)

While it is true that the Government cannot obtain further video images of the club from any other source, they have considerable evidence of drug selling and [*7] drug use at the Sound Factory. Thanks to nearly four years of surveillance, the Government has voluminous testimony regarding the atmosphere in the club, including, presumably, the conduct of the patrons and defendants. (Indictment, P31-34.) Indeed, they have the Sound Factory clips that aired on MTV, including the images of at least two patrons who, they will argue, appear to be under the influence of drugs. Despite this, the Government claims that its particularized need for further video images is analogous to the facts in Gonzales. The Court does not agree.

In Gonzales, and in other cases in which the journalists' privilege was overcome, the video contained images of the tortious conduct or crime itself. In Gonzales, the video captured the conduct and demeanor of a defendant police officer during a car stop - conduct which the plaintiffs claimed showed one incident in a pattern and practice of violating the civil rights of Hispanic drivers who were stopped without probable cause. 194 F.3d at 31; see also United States v. Cutler, 6 F.3d 67 (2d Cir. 1993) (affirming that journalists' privilege was overcome where the video contained outtakes [*8] from the very statements for which Defendant was charged with contempt).

The video at issue here is nowhere near so material or relevant. Given the availability of alternative sources of information and the far more attenuated need for the outtakes, the Court finds that the Government has not overcome the journalists' privilege under the facts of this case.

Moreover, although the Government has explained why it was unable to obtain its own video, that does not mean they are automatically entitled to MTV's footage. To force MTV to provide the videotape would raise precisely the concern for press freedom expressed in Gonzales. There the Second Circuit emphasized that even when non-confidential sources are at issue, there is a "paramount public interest in the maintenance of a vigorous, aggressive and independent press . . ." Gonzales, 194 F.3d at 35. "Permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." Id.

Gonzales makes clear that requiring the press to surrender materials gathered [*9] in the course of doing its job is not to be done lightly. While the video outtakes here are of some relevance to the Government, their need for them is simply not great enough to outweigh the public interest in a free press.

SO ORDERED:

Barbara S. Jones

United States District Judge

Dated: New York, New York

November 17, 2004

**End of Document**