UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

     v.

SEAN COMBS,

        Defendant.

24-cr-542 (AS)

---

**DEFENDANT SEAN COMBS' MEMORANDUM OF LAW IN OPPOSITION
TO NON-PARTY WARNER BROS. DISCOVERY, INC.'S MOTION TO QUASH**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................................ii

BACKGROUND ...................................................................................................... 1

ARGUMENT .......................................................................................................... 4

    I.      WBD CANNOT HIDE BEHIND THE QUALIFIED REPORTER'S PRIVILEGE ............................................................................................ 4

    II.    THE SUBPOENA SATISFIES RULE 17(c) ........................................ 6

          A.    Rule 17(c) Provides the Proper Standard for Compliance with a Subpoena ................................................................................ 6

    III.   IN THE ALTERNATIVE, THE SUBPOENA SATISFIES *NIXON* .....................11

          A.    The Subpoena is Sufficiently Specific and Not A "Fishing Expedition" ...........................................................................11

          B.    The Subpoena Seeks Relevant and Admissible Documents .................... 14

CONCLUSION......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowman Dairy Co. v. United States*,
341 U.S. 214 (1951) ................................................................................................... 7

*Camreta v. Greene*,
563 U.S. 692 (2011) ................................................................................................. 10

*Gonzales v. Nat'l Broad. Co.*, *Inc.*,
194 F.3d 29 (2d Cir. 1999) ......................................................................................... 4

*Hawkins v. Steingut*,
829 F.2d 317 (2d Cir. 1987) ..................................................................................... 10

*In re Irving*,
600 F.2d 1027 (2d Cir. 1979) ................................................................................... 14

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
991 F. Supp. 2d 464 (S.D.N.Y. 2013) ........................................................................ 5

*In re Refco, Inc. Sec. Litig.*,
628 F. Supp. 2d 432 (S.D.N.Y. 2008) ...................................................................... 10

*Marshall Project, Inc. v. City of Cleveland*,
No. 24-MC-309 (VEC), 2024 WL 4589667 (S.D.N.Y. Oct. 28, 2024) ..................... 4

*Sikelianos v. City of New York*,
No. 05-cv-7673 (RJS)(JCF), 2008 WL 2465120 (S.D.N.Y. June 18, 2008) .............. 6

*Sokolow v. Palestine Liberation Org.*,
No. 04-CV-397, 2012 WL 3871380 (S.D.N.Y. Sept. 6, 2012) ............................... 4, 5

*United States v. Akhavan*,
No. 20-CR-188-2 (JSR), 2021 WL 1251893 (S.D.N.Y. Apr. 2, 2021) ..................... 9

*United States v. Barnes*,
560 F. App'x 36 (2d Cir. 2014) ................................................................................ 10

*United States v. Bergstein*,
788 F. App'x 742 (2d Cir. 2019) .............................................................................. 10

*United States v. Carollo*,
No. 10-cr-654 (HB), 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012) .......................... 14

*United States v. Donziger*,
No. 11-CV-691 (LAK), 2021 WL 1865376 (S.D.N.Y. May 10, 2021) .................... 15

*United States v. Drakopoulos*,
　　No. 02 CR 504 SJ, 2003 WL 21143080 (E.D.N.Y. Jan. 13, 2003) .......................................... 13

*United States v. Ferguson*,
　　No. 3:06-CR137 (CFD), 2007 WL 4577303 (D. Conn. Dec. 26, 2007)................................... 15

*United States v. Fitzsimons*,
　　342 F.R.D. 18 (D.D.C. 2022) ................................................................................................... 13

*United States v. Goldstein*,
　　No. 21-cr-550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023) ........................................... 9

*United States v. Grant*,
　　No. 04 Cr. 207 (BSJ), 2004 U.S. Dist. LEXIS 28176 (E.D.N.Y. Nov. 18, 2004)...................... 5

*United States v. Holihan*,
　　248 F. Supp. 2d 179 (W.D.N.Y. 2003) ................................................................................... 12

*United States v. Iozia*,
　　13 F.R.D. 335 (S.D.N.Y. 1952) ................................................................................................. 7

*United States v. King*,
　　194 F.R.D. 569 (E.D. Va. 2000) .............................................................................................. 15

*United States v. LaRouche Campaign*,
　　841 F.2d 1176 (1st Cir. 1988).................................................................................................. 15

*United States v. Marcos* ,
　　No. SSSS 87 CR. 598 JFK, 1990 WL 74521 (S.D.N.Y. June 1, 1990) ..................................... 6

*United States v. McClure*,
　　No. CRIM.A. 10-28, 2010 WL 3523030 (ED La Sept. 1, 2010)............................................... 12

*United States v. Nachamie*,
　　91 F. Supp. 2d 552 (S.D.N.Y. 2000) ............................................................................... 8, 9, 14

*United States v. Nixon*,
　　418 U.S. 683 (1974)......................................................................................................... *passim*

*United States v. Orena*,
　　883 F. Supp. 849 (E.D.N.Y. 1995) ......................................................................................... 14

*United States v. Rajaratnam*,
　　753 F. Supp. 2d 317 (S.D.N.Y. 2011).......................................................................... 9, 11, 14

*United States v. RW Prof'l Leasing Servs. Corp.*,
　　228 F.R.D. 158 (E.D.N.Y. 2005).............................................................................................. 12

*United States v. Shah*,
   No. 19 CR. 833 (SHS), 2022 WL 1422252 (S.D.N.Y. May 5, 2022) ................................... 5, 13

*United States v. Skelos*,
   88 F.3d 645 (2d Cir. 2021) .................................................................................. 10, 15

*United States v. Soliman*,
   No. 06-cr-236A, 2009 WL 1531569 (W.D.N.Y. May 29, 2009) ............................................ 10

*United States v. Stein*,
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) ...................................................................... 11

*United States v. Tucker*,
   249 F.R.D. 58 (S.D.N.Y. 2008) .......................................................................... 7, 8, 9

*United States v. Ulbricht*,
   858 F.3d 71 (2d Cir. 2017) ................................................................................. 10

*United States v. Weigand*,
   520 F. Supp. 3d 609 (S.D.N.Y. 2021) .................................................................... 9, 10

*United States v. Weisberg*,
   No. 08-CR-347 (NGG) (RML), 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011) .............11, 12, 14

*United States v. Yudong Zhu*,
   No.13 CR. 761 (VM), 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014) ................................. 12, 14

## Rules

Fed. R. Crim. P. 17(c) ................................................................................ *passim*

Fed. R. Civ. P. 26 (b) ...................................................................................... 9

Fed. R. Evid. 401 ......................................................................................... 14

Fed. R. Evid. 402 ......................................................................................... 14

Fed. R. Evid. 613 ......................................................................................... 15

Earlier this year, Warner Bros. Discovery, Inc. ("WBD") aired its television series, "The Fall of Diddy" (the "Documentary"), featuring interviews with two anticipated government witnesses who used the opportunity to preview their testimony for broad public consumption. They did so in exchange for money and attention. In a few weeks, these witnesses are expected to testify about the same subject matter that they discussed in their documentary interviews. But while WBD accepted their stories at face value, their testimony at trial will be subject to cross-examination, and part of that cross-examination will involve impeachment with their prior inconsistent statements. Mr. Combs seeks the raw footage from their interviews precisely so that he can effectively cross-examine these anticipated witnesses with their prior statements about the same subject matter. WBD cannot hide behind the qualified reporter's privilege to prevent disclosure of this non-confidential footage by government witnesses who chose to publicly speak out about the same subjects that make up their anticipated testimony. Indeed, to overcome this qualified privilege, Mr. Combs need only establish that the information is of likely relevance to a significant issue in the case and not reasonably available from an alternative source. He can easily do both and depriving Mr. Combs of such material would interfere with his Sixth Amendment right to present a meaningful defense and Fifth Amendment due process rights. For these reasons, the Court should deny the motion and order WBD to comply with the subpoena.

## BACKGROUND

On March 19, 2025, the Court authorized a Rule 17(c) subpoena seeking, in relevant part, "[a]ll recordings, including raw and unedited footage, of interviews with [Individual A] and [Individual B] created in connection with the documentary series, 'The Fall of Diddy.'" (the

"Subpoena").[1]  Declaration of Thomas B. Sullivan ("Sullivan Decl."), Ex. A, ECF No. 220-1 at

1.  Defense counsel emailed a copy to WBD's counsel, who refused to accept service.

Declaration of Anna Estevao ("Estevao Decl."), Ex. A at 1.  Mr. Combs formally served WBD

thereafter.  Sullivan Decl., Ex. A.

[1]        The Subpoena also requested diary entries provided to WBD by Individual A and Individual B, as well as records of WBD's financial payments to Individual A and Individual B for their participation in the documentary. As WBD notes in its motion, the defense agreed to narrow the subpoena and is no longer seeking those materials. *See* Sullivan Decl., Ex. B, ECF No. 220-2.

[2]        "The Fall of Diddy" is available to stream on MAX.  WBD indicated that it could provide a copy of the documentary to the Court at the Court's request.  WBD Mot., ECF No. 219 at 2 n.1.



The outtakes are also expected to include additional evidence of bias and animosity

toward Mr. Combs.  In her interview Individual A called Mr. Combs a "f---ing liar" and

Individual B referred to Mr. Combs as a "demon" and expresses pleasure with where he is

"sitting today," "not on a yacht on the Amalfi Coast," because "Karma's a b---h," among other statements that demonstrate their deeply held animosity toward Mr. Combs.

## ARGUMENT

### I.    WBD CANNOT HIDE BEHIND THE QUALIFIED REPORTER'S PRIVILEGE

As an initial matter, because the protection of confidential sources is not at issue, WBD can only invoke the narrower qualified reporter's privilege. *See Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 36 (2d Cir. 1999) (explaining that "when protection of confidentiality is not at stake, the privilege should be more easily overcome"). To overcome the qualified privilege for these non-confidential documentary outtakes, Mr. Combs need only show that they "are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Id.*

Mr. Combs easily satisfies these two elements. First, WBD does not dispute that its outtakes are not obtainable from another source. Second, the raw documentary footage of these two interviews is clearly relevant to significant issues in the case, as they cover the same subject matter of their anticipated testimony. The "standard for relevance to overcome the journalist privilege for non-confidential materials is low." *Sokolow v. Palestine Liberation Org.*, No. 04-CV-397, 2012 WL 3871380, at *3 (S.D.N.Y. Sept. 6, 2012) (quoting *Marshall Project, Inc. v. City of Cleveland*, No. 24-MC-309 (VEC), 2024 WL 4589667, at *6 (S.D.N.Y. Oct. 28, 2024)). The subpoenaed outtakes relate to interviews by two individuals who are expected to testify at trial about the very topics that they discussed in their interviews for the documentary. Both witnesses have already given accounts of those topics to the government that are inconsistent with the interviews they gave for the documentary, meaning that these prior inconsistent statements will be relevant at trial. Where a litigant has met this low relevance threshold, courts

compel production over the reporter's privilege.  *See Sokolow*, 2012 WL 3871380, at *3 (denying

motion to quash subpoena noting that request was limited to outtakes of two specific interviews).

The cases cited by WBD are clearly distinguishable.  In *United States v. Shah*, the

defendant sought broad swaths of information, both confidential and nonconfidential, without

showing how such "broad categories of purported interest" were relevant to the case.  *United

States v. Shah*, No. 19 CR. 833 (SHS), 2022 WL 1422252, at *2 (S.D.N.Y. May 5, 2022).  There,

the defendant failed to point to any particular interview or outtake, and instead sought *all* video

footage without articulating its relevance beyond merely stating that it may show "the

circumstances surrounding [her] arrest, the agents views on the case and background knowledge,

and untold topics, each of which is likely relevant to the defense."  *Id.*  Likewise in *In re

McCray, Richardson, Santana, Wise, Salaam Litig.*, the court found that the *Gonzales* relevance

threshold was not met where the defendant had not pointed to specific interviews or outtakes that

were necessary and speculated that the outtakes would be relevant purely "because the

interviews are taken in a relaxed, comfortable, and trusting atmosphere."  991 F. Supp. 2d 464,

470 (S.D.N.Y. 2013).

The remainder of the cases cited by WBD involve instances where the court found that

the request was cumulative of other evidence in the case.  In *United States v. Grant*, in a drug

sale prosecution of the owner and employees of a nightclub, the government sought production

through a Rule 17 subpoena of outtakes of an MTV documentary about a nightclub to show its

patrons under the influence of drugs.  04 Cr. 207 (BSJ), 2004 U.S. Dist. LEXIS 28176 at *2

(E.D.N.Y. Nov. 18, 2004), attached as Sullivan Decl., Ex. C.  The court granted the motion to

quash, not because the material sought was not relevant to the government's case, but because it

was unreasonably cumulative of the government's other evidence, which included four years of

surveillance and testimony that could also establish the clubgoers' drug use.  *Id.* at *7.  So too, the court in *Sikelianos v. City of New York*, granted a motion to quash, in part, because the plaintiff "already ha[d] access to [the] information" he sought to establish through the third-party subpoena. No. 05-cv-7673 (RJS)(JCF), 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008). Finally, *United States v. Marcos*, No. SSSS 87 CR. 598 JFK, 1990 WL 74521 (S.D.N.Y. June 1, 1990), which was decided before the Second Circuit clarified the more relaxed showing needed for non-confidential materials in *Gonzales*, is not instructive here.

The limited and specific outtakes sought here, by stark contrast, relate to the subjects that these witnesses will testify about at trial and are likely to contain additional inconsistences with their anticipated testimony, as well as additional evidence of bias and motive.  This is more than enough to meet the low threshold required by *Gonzales*.

## II.    THE SUBPOENA SATISFIES RULE 17(c)

### A.    Rule 17(c) Provides the Proper Standard for Compliance with a Subpoena

As Mr. Combs explained in his previous opposition to the April 3, 2025 motion to quash, the correct standard for a motion to quash is governed by the plain language of Federal Rule of Criminal Procedure 17.[3]  WBD argues that this Court should apply the standard articulated in *United States v. Nixon*, 418 U.S. 683 (1974), but there is no sound basis to do so.  Rule 17 governs the issuance of subpoenas by the parties to a criminal proceeding.  While the court has authority to "quash or modify [a] subpoena," it may do so only "if compliance would be *unreasonable* or *oppressive*."  Fed. R. Crim. P. 17(c)(2) (emphasis added).  WBD argues that material sought pursuant to Rule 17(c) must be relevant, admissible, and specific.  (Mot., ECF

---

[3]      Since that briefing is under seal pending appropriate redactions, the defense repeats its analysis of Rule 17 in this submission for the benefit of WBD.

No. 219 at 4.) This three-part standard, which derives from the Supreme Court's decision in *Nixon*, 418 U.S. 683, does not apply here.

In *Nixon*, the grand jury investigating Watergate returned an indictment that named then-President Nixon as an unindicted coconspirator. *See id.* at 687. The government then subpoenaed the President, a non-party, who moved to quash. The Supreme Court affirmed the denial of the President's motion, finding that the government's subpoena "clear[ed] three hurdles" applied by lower courts to criminal subpoenas: "(1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700. The Supreme Court in *Nixon* adopted this standard from *United States v. Iozia*, 13 F.R.D. 335 (S.D.N.Y. 1952), a case in which the defendant had subpoenaed the government. *See id.* at 337–38. *Iozia* required the defendant to satisfy a heightened standard because, by serving a Rule 17 subpoena on the *government*, he was potentially circumventing Rule 16's limits on discovery from the government. *See id.* at 338 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). *Nixon* involved "the more unusual situation," present here, "where the subpoena, rather than being directed to the government by defendants [or vice versa], issues to . . . a third party." 418 U.S. at 699 n.12 (quotation marks omitted). As a result, the government in *Nixon* argued that the heightened standard in "*Iozia* does not apply in its full vigor when the subpoena . . . is issued to third parties rather than to government prosecutors." *Id.* The Supreme Court neither accepted nor rejected this argument, instead declining to "decide whether a lower standard exists" because the subpoena satisfied the more stringent standard. *Id.*

In the decades since *Nixon*, courts have split over whether subpoenas to third parties are subject to that standard. The most thorough and persuasive analysis appears in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008), where the court concluded that the *Nixon* standard should not blindly be applied to all subpoenas. *See id.* at 60–67. Unlike the government, a

criminal defendant has a Sixth Amendment right to compulsory process and to confront

witnesses.  "[T]he right to cross-examination has been held to be an essential purpose of the

Confrontation Clause," and "[t]his right is meaningless if a defendant is denied the reasonable

opportunity to obtain material evidence that could be crucial to that cross-examination."  *Id.* at

67 (quotation marks omitted).  As the Supreme Court observed in rejecting the President's

privilege objection to the subpoena in *Nixon*:

> The right to the production of all evidence at a criminal trial . . . has
> constitutional dimensions. The Sixth Amendment explicitly confers
> upon every defendant in a criminal trial the right 'to be confronted
> with the witnesses against him' and 'to have compulsory process for
> obtaining witnesses in his favor.' Moreover, the Fifth Amendment
> also guarantees that no person shall be deprived of liberty without
> due process of law. It is the manifest duty of the courts to vindicate
> those guarantees, and to accomplish that it is essential that all
> relevant and admissible evidence be produced.

418 U.S. at 711.

The plain text of Rule 17 is not as restrictive as the *Nixon* standard, and applying *Nixon* to

all third-party subpoenas would allow "the government [to] prevent defendants from obtaining

[relevant] material by choosing not to obtain it for itself" and thereby avoiding any disclosure

obligations—a "perverse result [that] cannot be intended by the Federal Rules of Criminal

Procedure."  *Tucker*, 249 F.R.D. at 65.  In *Tucker*, the court expressly found that the *Nixon*

standard "is inappropriate where production is requested by (A) a criminal defendant; (B) on the

eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the

documents may be material to his defense."  *Id.* at 66.[4]  Consequently, a defendant issuing a

---

[4] While *Tucker* noted that the subpoena in that case was issued "on the eve of trial[,]" *Tucker*, 249 F.R.D., at 66, the
rationales for refusing to extend *Nixon* to defense subpoenas to third parties apply regardless of when the subpoena
is issued.  Indeed, the *Tucker* court recognized that in *Nachamie*, it had "suggest[ed] that this test [wa]s appropriate
for *all* defense subpoenas directed to non-parties."  *Id.* at 66 n.51 (citing *United States v. Nachamie*, 91 F. Supp. 2d
552, 563 (S.D.N.Y. 2000)) (emphasis added and parenthesis omitted).

subpoena to a non-party "need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." *Id.* at 66; *see also Nachamie*, 91 F. Supp. 2d at 561–63. Applying that standard, the court in *Tucker* approved a subpoena seeking recordings of phone calls made by cooperating witnesses for the purpose of impeaching those witnesses at trial. *See id.* at 66–67.

*Tucker*'s reasoning is compelling, as several courts in this Circuit have recognized. In *United States v. Rajaratnam*, 753 F. Supp. 2d 317 (S.D.N.Y. 2011), the court observed that according to the government's misreading of *Nixon*, "a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents 'reasonably calculated to lead to the discovery of admissible evidence,' . . . [but] a defendant on trial for his life or liberty does not even have the right to obtain documents 'material to his defense' from those same third parties." *Id.* at 321 n.1 (quoting Fed. R. Civ. P. 26 (b)(1)). The court in *Rajaratnam* had no occasion to apply *Tucker*, as the subpoena at issue satisfied *Nixon*. In *United States v. Goldstein*, No. 21-cr-550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023), however, the court followed *Tucker* to grant in part and deny in part the government's motion to quash several 17(c) subpoenas, noting in particular that the other lower courts that have instinctively followed *Nixon* did so despite the fact that "*Nixon* did not determine the propriety of a Rule 17(c) subpoena issued by a defendant to a third party[.]" *Id.* at *2. In *United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021), the court noted that *Tucker* is "more consistent with modern principles of liberal discovery than *Nixon*" because "[p]ermitting issuance of reasonable third-party subpoenas to take discovery…appropriately aligns criminal discovery more closely with modern principles of liberal discovery and better balances the discovery powers of Government and defense." *Id.* at 613; *see also United States v. Akhavan*, No. 20-CR-188-2 (JSR), 2021 WL

1251893, at *1 (S.D.N.Y. Apr. 2, 2021). Likewise in *United States v. Soliman*, No. 06-cr-236A, 2009 WL 1531569 (W.D.N.Y. May 29, 2009), the court applied *Tucke*r in granting the defendant's motion for pretrial subpoenas, holding that even if the documents sought were "potentially voluminous," there was a reasonable "connection between his requests and his defense," and the subpoena could be further tailored if necessary to mitigate the burden of responding. *Id.* at *4.

Like the court in *Tucker*, this Court should apply the standard set forth in the plain text of Rule 17(c). There is no binding precedent requiring the Court to extend *Nixon* to this case.[5] The district-court decisions which have rejected *Tucker* are not binding on this Court, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011), which "remain[s] free to disagree" with them, *Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987). In fact, "every federal court in the land is obliged to apply . . . federal law, interpreted as best that court can in light of the precedents that bind it." *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 439 (S.D.N.Y. 2008) (Lynch, J.) (emphasis added). "[I]f a federal court simply accepts the interpretation of another [court] without independently addressing the merits, it is not doing its job." *Id.* (quotation marks and original brackets omitted). "*Nixon* should not so readily be divorced from the concerns that produced it," and "it is vitally important" not to "let [its] frequent repetition . . . lead to mindless application in

---

[5]    In *United States v. Barnes*, the Court declined to decide whether *Tucker* or *Nixon* applied to a defense subpoena to a third party because the defendant's showing failed to satisfy *Tucker*. 560 F. App'x 36, 40 n.1 (2d Cir. 2014). While the Second Circuit recited the *Nixon* standard in *United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017), the defendant there did not advocate for (or even cite) the *Tucker* standard, and the Court's reference to *Nixon* was dicta, since it did not actually rely on the *Nixon* standard. Rather, it found that the evidence sought was irrelevant and could compromise a grand jury investigation, and that its exclusion was harmless. *See id.* at 109–10. In *United States v. Bergstein*, 788 F. App'x 742 (2d Cir. 2019), the Second Circuit "refused to reject Tucker's more liberal approach, leaving the question open." *Weigand*, 520 F. Supp. 3d at 612 (summarizing *Bergstein*). In *United States v. Skelos*, the court found "no abuse of discretion in the district court's decision to quash the[] subpoenas," also without ruling on the appropriate standard under *Nixon* or *Tucker*. 88 F.3d 645, 661 (2d Cir. 2021).

circumstances [where it] never was intended to apply." *Rajaratnam*, 753 F. Supp. 2d at 321 n.1 (quoting *United States v. Stein*, 488 F. Supp. 350, 365 (S.D.N.Y. 2007)).

Indeed, the Advisory Committee on Criminal Rules has been studying Rule 17 and is in the process of recommending an amendment that would clarify the showing necessary for a Rule 17 subpoena and explicitly relax *Nixon*'s admissibility requirement.  Just recently, on March 28, 2025, the Rule 17 Subcommittee released its new discussion draft, reflecting the Committee's intention to change the standard to either "likely to be admissible" or "likely to lead to evidence that will be admissible."[6]  The Committee "was persuaded that courts had applied the admissibility requirement in *Nixon*'s interpretation of prior text inconsistently, and sometimes too rigidly" and the revised text is intended to "provide an adequate and consistent opportunity for both the prosecution and defense to obtain the evidence they need form third parties."

The cases relied upon by the WBD reflect exactly the sort of rigid interpretation of *Nixon* that the Committee seeks to correct.

## III.    IN THE ALTERNATIVE, THE SUBPOENA SATISFIES *NIXON*

Even under the more restrictive *Nixon* standard, the motion to quash is meritless because the subpoena easily clears the "three hurdles" of "(1) relevancy; (2) admissibility; [and] (3) specificity."  *Nixon*, 418 U.S. at 700.

### A.    The Subpoena is Sufficiently Specific and Not A "Fishing Expedition"

Contrary to WBD's argument, there is no basis to quash the subpoenas on specificity grounds.  "[A] defendant need not have prior knowledge of specific documents to meet the specificity requirement of Rule 17(c)."  *United States v. Weisberg*, No. 08-CR-347 (NGG) (RML), 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011); *accord Rajaratnam,* 753 F. Supp. 2d

---

[6]    April 24, 2025 Agenda for Meeting of the Advisory Committee On Criminal Rules, at 113–18, *available at* https://www.uscourts.gov/sites/default/files/2025-04/2025-04-criminal-rules-committee-agenda-book-final-4-3.pdf.

at 321 n.1 ("requiring the defendant to specify precisely the documents he wants without knowing what they are" would "render[] Rule 17 a nullity").  Rather, if the defendant identifies "a group of records likely to contain helpful documents," his request is sufficiently specific, and "he cannot be said to be engaging in a 'fishing expedition.'"  *Weisberg*, 2011 WL 1327689, at *7.  This is especially so if "there is no indication" that "the production of [the] documents" identified "would require [the subpoena recipient] to allocate significant resources in order to comply."  *United States v. Yudong Zhu*, No. 13 CR. 761 (VM), 2014 WL 5366107, at *6 (S.D.N.Y. Oct. 14, 2014); *see also United States v. McClure*, No. CRIM.A. 10-28, 2010 WL 3523030, *2 (ED La Sept. 1, 2010) (specificity requirement focuses on "undue cost, burden, or delay associated with excessively broad requests"); *United States v. Holihan*, 248 F. Supp. 2d 179,188 (W.D.N.Y. 2003) (subpoena was "sufficiently specified" since the recipient could "easily" locate the evidence); *cf. United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 164 (E.D.N.Y. 2005) (subpoena insufficiently specific where it "could amount to a massive search for countless documents, at great expense to [the subpoenaed company]").

The Subpoena makes a request for the raw footage of two interviews conducted by the production team, and only those interviews by individuals expected to testify at trial.  This is not a "broad request for interview outtakes."  WBD Mot., ECF No. 219 at 4.  Rather, the specific outtakes requested by Mr. Combs relate to topics directly at issue in the government's case and on which the witnesses have already proffered inconsistent statements.  The cases cited by WBD are all easily distinguishable.  In *United States v. Shah*, the court granted the motion to quash seeking "*[a]ll* video footage, including raw video footage, made or used in conjunction with [the documentary]," as well as "[a]ny and all documents and communications concerning the interviews taken for [the documentary], including without limitation, all interviewer notes,"

among other broad categories. 2022 WL 1422252, at *1 (emphasis added). The court concluded that such requests were insufficiently specific, *id.* at *3, and pointed out that the defendant had failed to point to any "particular interview or outtake that would provide the evidence [she] seek[s]." *Id.* (citation omitted). In *United States v. Fitzsimons*, the court "agree[d] with [the defendant] that the subpoena identifies the information sought with reasonable specificity, as it requests the raw footage from a discrete and identifiable interview," 342 F.R.D. 18, 22 (D.D.C. 2022), but ultimately quashed the subpoena because the defendant failed to "provide a basis even in the vaguest terms for his belief that [the witness] recounted the events of that day any differently in the video outtakes than in any of his other public and sworn testimony on the subject," *id.* at 20. In *United States v. Drakopoulos*, the court granted a motion to quash for lack of specificity because the defendant "request[ed] every telephone conversation involving [the witness] for every day during a seven-month period, regardless of whom the conversation was with," and "ha[d] not requested 'precisely identified conversations and meetings,' nor has he shown 'a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment.'" No. 02 CR 504 SJ, 2003 WL 21143080, at *1 (E.D.N.Y. Jan. 13, 2003) (quoting *Nixon*, 418 U.S. at 683, 700).

By contrast, the instant subpoena identifies two specific interviews that cover the exact subject matter that the witnesses will testify to at trial, and the outtakes of which likely contain statements inconsistent with their anticipated testimony. Requiring any further "exquisite specificity places defendants in the impossible position of having to describe in detail documents they cannot access" and "[WBD] obviously ha[s] no difficulty pinpointing the responsive footage." *Fitzsimons*, 342 F.R.D. at 22 (citations omitted).

**B.    The Subpoena Seeks Relevant and Admissible Documents**

Although *Nixon* is a more stringent standard than *Tucker*, *Nixon*'s relevance standard is often overstated.  Evidence is "relevant" if it tends to "make a fact more or less probable," and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  All relevant evidence is presumptively admissible.  *See* Fed. R. Evid. 402.  Combs need only show that the sought after evidence could potentially serve a valid purpose.  *See Nixon*, 418 U.S. at 702 (subpoena was proper where there were "valid potential evidentiary uses for the [requested] material") (emphasis added); *id.* at 699 n.11 (advisory committee drafted Rule 17 "for the purpose . . . of enabling the party to see whether he can use [the evidence] or whether he wants to use [it]") (quotation marks omitted) (emphasis added); *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) (subpoena for union sign-up cards was permissible because "[i]f the cards are in fact forged or otherwise fraudulent, they may provide the defendants with a basis for asserting an entrapment defense") (emphasis added); *Yudong Zhu*, 2014 WL 5366107, at *2–3 (subpoena may properly seek documents that are "potentially admissible"); *United States v. Carollo*, No. 10-cr-654 (HB), 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012) (subpoena is proper "if a document is arguably relevant and admissible") (quotation marks omitted); *Weisberg*, 2011 WL 1327689, at *7 (upholding subpoena of "records likely to contain helpful documents"); *Rajaratnam*, 753 F. Supp. 2d at 321 n.1, 323 ("potential evidentiary uses" satisfy "the 'admissibility' requirement"); *Nachamie*, 91 F. Supp. 2d at 564 (subpoenas may seek documents "likely to be admissible at trial"); *United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995) (approving subpoena of records that were "at least potentially admissible" and that "might also form the basis for eliciting certain testimony at trial").

The subpoenaed outtakes will not solely be used to impeach these witnesses based on bias or self-interest, though they surely include evidence of that.  More importantly, the WBD

14

outtakes are expected to contain statements inconsistent with the witnesses' anticipated testimony at trial. Impeaching their testimony with prior inconsistent statements on the same subject matter – and with respect to important testimony for the government's case – is crucial to Mr. Combs' defense, core impeachment material, and admissible under Rule 613. Therefore, such statements are properly subject to Rule 17(c). *See United States v. Donziger*, No. 11-CV-691 (LAK), 2021 WL 1865376, at *10 (S.D.N.Y. May 10, 2021) (observing that, "to the extent the communications and documents contain prior inconsistent statements, they 'can be the proper subject of a Rule 17(c) subpoena' because they may 'be admissible under Federal Rule of Evidence 613'" (quoting *Skelos*, 2018 WL 2254538, at *2)); *United States v. Ferguson*, No. 3:06-CR137 (CFD), 2007 WL 4577303, at *1-3 (D. Conn. Dec. 26, 2007) (prior inconsistent statements come within the scope of a Rule 17(c) subpoena). Moreover, disclosure of such impeachment materials should not wait until after the witnesses testify ██████████████████

████████████████████████████████████████

████████████████████████████████   ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████ These are the same topics they discussed in the Documentary. Under these circumstances, waiting until trial to order the disclosure of impeachment material makes little sense. *See, e.g., United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (permitting pretrial subpoena of impeachment evidence "where a putative key witness, whose general testimony is already known, is scheduled to testify"); *see also United States v. King*, 194 F.R.D. 569, 574–75 (E.D. Va. 2000) (same).

## CONCLUSION

For the foregoing reasons, the motion to quash should be denied.

Date:  April 10, 2025
       New York, NY

Respectfully submitted,

Marc Agnifilo
Teny Geragos
Agnifilo Intrater LLP
445 Park Ave., 7th Fl.
New York, NY 10022
(646) 205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Alexandra Shapiro
Jason Driscoll
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com

/s/ Anna Estevao
Anna Estevao
Sher Tremonte LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com