UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SEAN COMBS,<br><br>    Defendant. | 24-cr-542 (AS) |

**DEFENDANT SEAN COMBS'S MOTION IN LIMINE
TO EXCLUDE VIDEO FOOTAGE RELATED TO
MARCH 5, 2016 INCIDENT AT INTERCONTINENTAL,
OR IN THE ALTERNATIVE, FOR A HEARING**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

THE NEED FOR A HEARING ..................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 6

    I.    The CNN and iPhone Videos Must Be Excluded Because the Government Cannot Provide Sufficient Evidence to Authenticate the CNN and iPhone Videos. ....................... 6

    II.   The Available Video Files Are Not the Originals; the Government Did Not Make a Competent Effort to Locate the Originals, and Therefore the Files Must Be Excluded Under the "Best Evidence" Rule .......................................................................................... 9

   III.  The CNN and iPhone Videos Should Be Excluded Under Federal Rule of Evidence 403 Because the Dangers of Misleading and Confusing the Jury and Unfair Prejudice Substantially Outweigh Their Probative Value. .................................................................. 11

CONCLUSION ............................................................................................................................. 12

**INTRODUCTION**

There is no longer any dispute that the CNN footage from March 5, 2016 at the Intercontinental Hotel, offered by the government at three separate bail hearings, is wholly inaccurate, having been altered, manipulated, sped-up, and edited to be out of sequence. As indicated below, CNN paid ▮▮▮▮▮▮ for footage, copied that footage in unknown ways, presented that footage out of order and destroyed the original. Accordingly, all the footage from CNN is inaccurate and inadmissible. As for the two items of footage filmed by an iPhone 6, those pieces of footage are inaccurate and inadmissible as well, for the reasons set out below.

As a result, pursuant to Federal Rule of Evidence 901, 1002, and 403, Mr. Combs seeks to exclude all available video files related to an incident from March 5, 2016 in the Intercontinental Hotel. Those exhibits include (a) an edited, manipulated version of hotel surveillance footage; (b) two cellphone video recordings of surveillance video footage taken by ▮▮▮▮▮▮; and (c) and four video files provided by CNN in response to a defense subpoena.

**THE NEED FOR A HEARING**

Before deciding this motion, we ask that the Court hold a pre-trial hearing to allow Mr. Combs to present testimony and video evidence from a forensic video analyst, Conor McCourt, so that the Court can better understand the ways in which each of the available videos are unreliable and not a fair and accurate reflection of the actions depicted. The arguments presented herein and in the attached Affidavit of Conor McCourt are best illustrated by the testimony of Mr. McCourt combined with a visual demonstration of the inaccuracies of the challenged video evidence. We understand and appreciate that the Court may be disinclined to devote time and resources to a hearing at this juncture, but we are constrained to ask for that because the admission of any of these inaccurate, unreliable video files would unfairly confuse and mislead the jury at Mr. Combs's expense and because their admission would be infinitely more prejudicial than probative given the

unreliability. In an effort to avoid making this request, undersigned counsel spent hours with Mr. McCourt trying to understand whether we could create a video file that could be "an accurate portrayal" of what occurred on March 5, 2016. Unfortunately, as explained below, and in the accompanying Affidavit of Conor McCourt, because each of the available video files has inherent reliability problems, that is simply not possible.

If a picture is worth a thousand words, a video is worth a number well over the Court's word limit. Because our issues with the video footage relate to how the footage looks, a hearing where Mr. McCourt can display the footage, slow it down, display it alongside other footage, and point out the inaccuracies that one can see will, we believe, be more helpful to the Court than merely writing about these things. For these and the foregoing reasons, we ask the Court to exclude the government's proposed video evidence from Mr. Combs's trial or, in the alternative, to permit Mr. Combs to present evidence at a pretrial hearing regarding the unreliability of the government's proposed video evidence before the Court decides this motion.

## BACKGROUND

On May 17, 2024, CNN published a video (the "CNN Compilation") purporting to show a March 2016 incident between Mr. Combs and ▇▇▇▇ in the Intercontinental Hotel based on surveillance footage CNN purchased from a ▇▇▇▇▇▇▇▇▇▇▇▇. The video immediately and dramatically turned the tide of public opinion against Mr. Combs. But, unbeknownst to the viewing public, the video was heavily and deceptively edited by CNN. CNN turned approximately ten-and-a-half minutes of footage into a 48-second out-of-order clip that *ended* with Combs appearing to drag ▇▇▇▇ to a hotel room. (*See* Declaration of A. Estavao, Ex. A.) The edited version painted Mr. Combs in the worst possible light.

The government relied on the CNN Compilation as evidence in support of its motion for detention in multiple bail proceedings in this case in September, October and November 2024. In

2

fact, this wholly inaccurate footage was the only exhibit the government used to support detaining Mr. Combs in September of 2024. The government failed to disclose that the footage had been manipulated.

After conferring with the government multiple times on the topic of the CNN Compilation, on November 13, 2024, the government produced two additional iPhone videos ("iPhone Videos") that were in the possession of ▇▇▇▇▇▇▇▇▇▇▇▇, also partially depicting the incident. *See* Reply in Support of Mr. Combs's Renewed Motion for Bail at 8, ECF No. 80; Declaration of T. Geragos (Nov. 21, 2024), ¶ 44, ECF No. 81. The iPhone Videos appear to be recordings of surveillance footage of the Hotel Incident (i.e. re-recordings), but they differ materially from the CNN Compilation. *Id.* This cell phone footage records scenes from the incident that were not in the CNN Compilation. Declaration of A. Estevao ¶5.

Upon receiving the iPhone Videos and noting the myriad ways they differ from the CNN Compilation, defense counsel retained Conor McCourt, a career law enforcement officer with years of experience performing forensic analyses of videos, to compare the iPhone videos to the CNN Compilation. *See* Letter from M. Agnifilo (Nov. 21, 2024) at 1, ECF No. 82. Mr. McCourt confirmed what the government has since been forced to admit—that none of the government's videos are the original, raw surveillance footage of the Hotel Incident; that the CNN Compilation was manipulated either through copying or conversion; and that it lacks any metadata to confirm the manner in which it was manipulated.

In an effort to obtain the original footage, Combs sent a *Brady* request to the government and a subpoena to CNN. Declaration of A. Estevao ¶ 8; Ex. F; *id.* ¶ 10. Ultimately, as a result of the subpoena, defense counsel obtained four additional videos: CNN's Compilation and three videos with footage obtained by CNN from three single cameras in the Intercontinental Hotel (*Id.*

3

at Ex. I the "CNN Video Files"). The CNN Video Files, counsel learned from CNN's counsel, were not the original files that CNN received from its source, ▮▮▮▮▮ ▮ Instead, CNN paid their source for the CNN Video Files, apparently copied those Video Files, and subsequently destroyed the original video files they received. (*Id.* at ¶10; Ex. H.)

The government later confirmed to counsel in a letter dated January 31, 2025, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ defense investigation has been unable to identify the CNN employee who received the surveillance footage from the Intercontinental Hotel, the employee(s) who converted and manipulated the footage, or the employee(s) who destroyed the footage. CNN, for their part, had been publicly reporting on an ongoing federal sex trafficking investigation for months prior to their knowing destruction of the evidence. (*Id.* ¶¶ 12-13.) To defense counsel's knowledge, the government has not investigated CNN, nor ▮▮▮▮▮ , for destroying evidence related to this case *during the pendency of the investigation*. (*Id.* ¶ 15.)

In short, the only available versions present an inaccurate view of the incident.

\* \* \* \*

At the last hearing where the video files were addressed, the Court suggested that a possible solution would be to "slow it down and put it in the right sequence, or provide any other context based on the materials" we have uncovered or based on our expert's analysis, so that when the video went before the jury it would be "an accurate portrayal." 3/14/25 Tr. at 13. After extensive discussions with Mr. McCourt, however, there are several reasons why all available video files are inaccurate and unreliable, and cannot be modified to be accurate.

4

First, the CNN Videos are (1) significantly sped up (Affidavit of C. McCourt ¶ 15); (2) do not accurately represent human movement as a result of being converted from one file type to another (*id.* ¶ 16); (3) inaccurately display timestamp seconds, including jumping back in time, thereby misleading the viewer about the timing of the events (*id.* ¶¶ 22-24); and (4) are missing a considerable amount of footage (*id.* ¶ 26).

Second, the iPhone Videos distort the events depicted in other ways: (1) the aspect-ratio in the iPhone Videos differs from the CNN Video such that Mr. Combs appears to be stockier and shorter than he appears in the CNN Video, causing Mr. Combs to appear more domineering (*id.* ¶¶ 17, 18); (2) they inaccurately display timestamp seconds, when depicted (*id.* ¶¶ 19-20,22-23), misleading the viewer about the timing of the events; (3) they do not show the timestamps in the majority of the videos (*id.* ¶24); and (4) they do not depict the entire Incident (*id.* ¶ 26). In other words, the iPhone Videos reflect what the person holding the cell phone camera focused on when watching the footage—at times the iPhone Videos zoom in on details like a particular person's shoes, cutting out portions of the events depicted in the CNN Videos. Further, because the iPhone Videos were created by using a handheld camera to film a static image, the iPhone Videos contain double images and blurred images, distortive artifacts that are the result of amateur re-recording.

Thus, neither the CNN Video nor the iPhone Videos accurately depict the incident. The government alleges that the iPhone Videos accurately depict the way the raw hotel surveillance footage of the Hotel Incident appeared on March 5, 2016 when ▉▉▉▉ recorded the footage in the iPhone Videos. But the government's claim rests entirely on ▉▉▉▉ word, which is contradicted by forensic analysis.

There is simply no way to obtain or create an accurate version—the only versions that exist are inaccurate and highly prejudicial.

**ARGUMENT**

I. **THE CNN AND IPHONE VIDEOS MUST BE EXCLUDED BECAUSE THE GOVERNMENT CANNOT PROVIDE SUFFICIENT EVIDENCE TO AUTHENTICATE THE CNN AND IPHONE VIDEOS.**

The CNN Video and the iPhone Videos must be excluded because the government cannot provide sufficient evidence of their authenticity, as required by Federal Rule of Evidence 901. Because recorded evidence predictably has a "dramatic impact" on the jury, the Second Circuit rightfully holds the government to a higher standard to establish that video recordings, as opposed to other kinds of evidence that are less susceptible to tampering and manipulation, are authentic before allowing their admission at trial. *See United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967). The government cannot meet that burden here.

Relevant evidence must be authenticated before it can be admitted. *See* Fed. R. Evid. 901; *United States v. Vayner*, 769 F.3d 125, 129 (2d Cir. 2014) ("The requirement of authentication is ... a condition precedent to admitting evidence."). The burden rests on the proponent of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Though some items of evidence are self-authenticating, "meaning they require no extrinsic evidence of authenticity in order to be admitted," video recordings *are not* self-authenticating. *See* Fed. R. Evid. 902. "[E]xclusion of [video recordings] from self-authentication is entirely justified in view of the potential for unreliable or even seriously misleading material being presented in this format"—the type of evidence the government hopes to present to the jury here. *Leo v. Long Island R. Co.*, 307 F.R.D. 314, 326 (S.D.N.Y. 2015).

The burden on the government is high. Although the requirements under Rule 901 are typically satisfied "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification," courts in this Circuit have articulated a higher standard for authenticating recordings. *United States v. Vayner*, 769 F.3d 125, 129–30 (2d Cir. 2014). Because

6

recordings are "susceptible to alteration"—as the videos were here—and "often have a persuasive, sometimes a dramatic, impact on a jury"—as these videos no doubt will—it is "incumbent on the Government to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of recordings." *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967) (quoting *United States v. Manton*, 107 F.2d 834, 845 (2d Cir. 1939)). Indeed, Second Circuit law "requires that the government produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of [video] recordings." *Accord United States v. Ida,* 1997 WL 122753, *2 (S.D.N.Y. March 18, 1997) (internal quotation omitted).

The government has not proffered any competent evidence through which it could authenticate these videos. In the normal course, evidence may be authenticated through such means as testimony of a witness with personal knowledge, evidence that the proffered exhibit has distinctive characteristics demonstrating genuineness, and evidence that the proffered exhibit is the result of a "process or system" that produces accurate results and showing that it produces an accurate result." Fed. R. Evid. 901(1), 901(4), 901(9). But this is not the normal course, and these methods do not apply here. Rather, "in the absence of testimony by the editor or someone else with personal knowledge to determine how [the videos] had been edited," admitting the videos here would be "grossly unfair" and "potentially highly misleading." *Leo v. Long Island R. Co.*, 307 F.R.D. 314, 326 (S.D.N.Y. 2015).

Though the Second Circuit has not published a test with factors for courts in this district to apply with respect to video evidence where foundation is called into question, in *United States v. Kimble*, the Eighth Circuit set forth a number of factors for courts to consider when deciding whether to admit recorded evidence:

> We consider whether a party has established that (1) the device was capable of recording, (2) the operator of the recording device was competent, (3) the recording

7

is authentic and correct, (4) the recording has not been changed, (5) the recording has been preserved, (6) any speakers in the recording are identified, and (7) the conversation was voluntary. To be able to identify a speaker in a recording, a witness only needs to have 'heard the voice of the alleged speaker at any time.'

*Kimble*, 54 F.4th 538, 547 (8th Cir. 2022). All applicable factors weigh against admission here.[1]

With respect to the first factor, we have no information about the device that was used to make the CNN Videos because the Original Videos were converted from one unknown file type to another, obscuring critical metadata about the original device. (Affidavit of C. McCourt ¶16.) As to the iPhone Videos, we know only that the device used to make them was an iPhone 6 that the defense has not had the chance to examine. (*Id.* ¶17.) Though we can reasonably infer that the devices were capable of producing some kind of recording, the government has not proffered any evidence which demonstrates that either device was capable of *reliably* and *continuously* recording events.

With respect to the second factor—whether the operator of the recording device was competent—the government has not proffered any evidence whatsoever regarding the competence of the operator of the device that created the Original Videos. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ The government has likewise proffered no evidence as to the competence of the operator of the iPhone Videos.

Regarding the third factor—that the recording is authentic and correct—this cannot be established for *any* of the available videos. As explained, all of the video files are distorted. Likewise, the fourth factor—that the recording has not been changed—cannot be met for any of the video files. The iPhone Videos distort the depicted subjects and fail to fully depict the events

---

[1] Factors six and seven do not apply as the recordings do not contain audio.

8

captured by the Original Videos. The CNN Video Files, on the other hand, are changed in speed, in frames, and in the way they depict the subjects' movements, among other things. (*Id.* ¶18.)

The fifth factor—the recording has been preserved—strongly weighs in favor of excluding the available videos. Through no fault of the defense, who employed every investigative technique at its disposal to obtain the Original Video, the Original Video has already been destroyed—both by ▮▮▮▮ and by CNN, and the government has refused to use its powers to investigate this obstruction.

## II. THE AVAILABLE VIDEO FILES ARE NOT THE ORIGINALS; THE GOVERNMENT DID NOT MAKE A COMPETENT EFFORT TO LOCATE THE ORIGINALS, AND THEREFORE THE FILES MUST BE EXCLUDED UNDER THE "BEST EVIDENCE" RULE

As discussed above and in the annexed Declaration of Anna Estevao, Esq., and Affidavit of Conor McCourt, none of the files are original despite the defense's good faith efforts to investigate and locate the original video files. Here, by the time that counsel was able to subpoena CNN's video files (after the government's December 31, 2024 discovery deadline), the ▮▮▮▮ and CNN had already destroyed the Original Video. ▮▮▮▮

▮▮▮▮

▮▮▮▮ to find out (1) whether the Original Video still exists; (2) how this individual removed files from the hotel server in order to retain them on a hard drive; and (3) whether this individual knew of the ongoing federal investigation into Mr. Combs. The government has not even taken possession of the hard drive that the footage was on to see if it could recover the deleted files. The same is true of the government's failure to investigate CNN. The government's unwillingness to take any of these logical steps to obtain reliable video evidence and its decision to rely on inaccurate, unreliable duplicates calls into question its motives.

9

But more importantly, the government's failure to investigate means it cannot satisfy the "best evidence" rule, and its inaccurate duplicates should not be admitted.

Authentication requires additional safeguards to ensure validity where the proffered exhibit is a duplicate of evidence rather than the original item. Ordinarily, the Federal Rules of Evidence require that the proponent of an item of evidence introduce the *original* evidence, rather than a copy of it. *See* Fed. R. Evid. 1002 ("[a]n original . . . recording . . . is required to prove its content unless these rules or a federal statute provides otherwise."). The requirement of an original, known colloquially as the "best evidence rule," may give way when the proponent of a duplicate shows that the original is unobtainable and not by any fault of the proponent. In that case, "a duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003; *see Knohl*, 379 F.2d at 440 (quoting *Manton*, 107 F.2d at 845 (noting a duplicate is admissible where "fraud or imposition, reasonably, is not to be feared")). An "electronic re-recording"—an electronic recording of a recording—is a "duplicate" under Rule 1001(4). *United States v. Savarese*, 404 F.3d 651, 656 (2d Cir. 2005).

Here, a "genuine question" has been raised regarding authenticity, and it would be unfair to admit the government's proffered duplicates. Thus, the government's only means of admitting the evidence is Federal Rule of Evidence 1004, which permits the use of a duplicate *if* "all the originals are lost or destroyed, and not by the proponent acting in bad faith," or "[the] original cannot be obtained by any available judicial process." The government's conduct negates admissibility under either prong. It has repeatedly refused to investigate, has not questioned key witnesses regarding the original recordings, and refuses to use available judicial process even to confirm whether the originals still exist. *Cf. Knohl*, 379 F.2d at 441 (observing the "government's

10

procedures for insuring the safekeeping of the tape were hardly adequate"). Rather, it has turned a blind eye hoping that the Court will permit it to use far more inflammatory evidence that will unfairly bolster its arguments and prejudice Combs's case. Indeed, at the time CNN destroyed the original footage, it *knew* about and widely reported on the government's investigation into Combs, yet destroyed evidence anyway. The government has no basis to claim the originals are lost or destroyed, because it has not attempted to find out. It has therefore ratified CNN's "bad faith," and it should not be rewarded.

None of the available files are originals, none of the available files are reliable duplicates, and there is no amount of further editing that can be done to make any of the video files "acceptable…secondary evidence." Fed. R. Evid. 1004 Advisory Committee Notes. To the contrary, the alterations include taking events out of sequence, speeding events up, removing frames, and adding frames, which present grave reliability and accuracy concerns. The facts here thus counsel strongly in favor of exercising discretion to exclude the government's unreliable, inaccurate recordings under Federal Rules of Evidence 901, 1002 and 1004, particularly in the face of the government's refusal to uses its power of process to investigate the destruction of the Original Video. *Id.* The government has not even tried to ensure the accuracy of the proffered evidence, and the evidence should be excluded.

### III. THE CNN AND IPHONE VIDEOS SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403 BECAUSE THE DANGERS OF MISLEADING AND CONFUSING THE JURY AND UNFAIR PREJUDICE SUBSTANTIALLY OUTWEIGH THEIR PROBATIVE VALUE.

The available video files (the iPhone 6 videos and CNN's subpoena response videos) must be excluded as these altered videos will undoubtedly have a misleading and prejudicial, but highly "persuasive" and "dramatic" impact on the jury. *Knohl*, 379 F.2d at 440. The Court should therefore exclude the videos under Federal Rule of Evidence 403.

Though the government will no doubt argue that tampering affects the weight of recorded evidence and not its admissibility, here that is not the case. The manipulation of the videos was specifically designed to inflame the passions of CNN's viewing audience, and that is what the government is hoping to leverage in this case. The videos are sped up to make the violence *look more violent*. The sequence is reordered to leave the viewer with the impression that the woman has been dragged *back* to a hotel room. And the clips delete footage that provides important context making clear that the events were not as horrific as the government will suggest.

As the Second Circuit has observed, "recorded evidence is likely to have a strong impression upon a jury," and here that impression will come in the form of shock and awe. *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977). The government has myriad other less prejudicial ways of presenting evidence concerning the events allegedly depicted in the videos it wishes to admit. The government already intends to present testimony from one or more persons depicted in the videos. Here, where the available video files are not genuine, not accurate, and not originals, and it is impossible to make the available video files accurate, none of the inaccurate, unreliable videos should be admitted. Ultimately, if the government has a witness available to testify to the events of March 5, 2016, such testimony would likely be admissible. However, that testimony—and not the inaccurate, prejudicial, distorted footage—should be the evidence the jury considers.

## **CONCLUSION**

For the foregoing reasons, Mr. Combs requests that this Court hold a hearing and ultimately conclude that none of the available video files of the Hotel Incident be admitted into evidence at Mr. Combs's upcoming trial.

Dated: April 2, 2025
      New York, NY

Respectfully submitted,

_____
Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
(646) 205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestavao@shertemonte.com