UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

SEAN COMBS,

Defendant.

24-cr-542 (AS)

State of New York )
) ss:
County of New York )

Conor McCourt, being sworn, desposes and says:

BACKGROUND

1. I am a forensic video technician and analyst, and the founder of McCourt Video Analysis and Investigations, Inc. In November of 2024, I was approached by counsel for Sean Combs and engaged by Sean Combs to analyze the available video files at that time related to an alleged incident at the Intercontinental Hotel in Century City in March 2016.

2. I was sworn in as a New York City Police Officer on June 30, 1992. I served as a patrol officer in the narcotics unit from 1993 until 1997. In 1997, I was promoted to Sergeant and was assigned to the Midtown North precinct. After the terror attacks of September 11, 2001, I was assigned to the Technical Assistance Response Unit ("TARU").

3. TARU supports detectives in connection with high-level crimes such as kidnappings, homicides, police-involved shootings, etc. While in TARU, I developed a forensic video sub-group in connection with crime scenes. Much of my work involved recovering and also processing videos that were recovered by case and crime scene detectives and field investigators. This includes analyzing the video for authenticity as well as preserving the video to maintain the

evidence's integrity. As part of my responsibilities in TARU, I conducted forensic video analysis, which is the examination, evaluation and/or comparison of video images in legal matters.

TRAINING AND EXPERIENCE

4. As part of my initial training, I completed a 40-hour course in Whittier California on the topic of forensic video analysis and the law in 2002. I have completed several courses in forensic video analysis over the past 22 years, as well as being certified as a forensic video technician in 2010 by LEVA (Law Enforcement Video Association). In addition to this training, I had prior experience with video editing in connection with three films I produced and directed for Cinemax/Home Box Office ("HBO"), during which I used many of the same editing systems that I used in at TARU. I also worked in the TV/Movie industry with jobs such as news camera person and associate producer for America's Most Wanted before I was a police officer.

5. In addition to conducting forensic video analysis on my own cases, I also conducted weekly and monthly training for other personnel at TARU. In addition, I conducted NYPD Department wide training for detectives and investigators of every precinct on the topics of how to collect, examine and compare video evidence.

6. In 2002 I founded McCourt Video Analysis, Inc. doing civil cases only.

7. In 2009, I left the NYPD and started working at my own company full time: McCourt Video Analysis and Investigations, Inc. I am president of McCourt Video which provides analysis of video evidence in legal matters. Since leaving the NYPD, I have conducted video analysis and testified for the Rockland County District Attorney's Office, the Staten Island District Attorney's Office, Insurance companies, various public defender organizations and private defense counsel over 25 times in the last four years. I have provided analysis of video in thousands of legal cases.

8. On or about November 15, 2024, I was approached by lawyers representing Mr. Combs and I was asked to analyze video footage that has been compiled in connection with a federal case pending in the Southern District of New York, United States v. Sean Combs, 24-cr-542 (AS).

9. In connection with this case, I have been provided with video files of different types. First, I was provided with **Exhibit A** of the Estevao Declaration, which I understand the government provided to Combs' counsel and the Court in September 2024. Second, I was provided with **Exhibit C** and **Exhibit D** of the Estevao Declaration. Third, I screen-captured footage from CNN's website depicting footage purportedly from the Intercontinental. Fourth, I was provided with **Exhibit I** of the Estevao Declaration, which contained four video files from CNN in response to a defense subpoena. **Exhibit I-1** was a news broadcast from May 17, 2024 depicting a scene from two different camera angles of the Intercontinental Hotel in Century City from March 5, 2016. When I examined the metadata of the news broadcast file, it indicated that the video file had been created using ClipChamp.com, a free online video editor. The three other videos in **Exhibit I (I-2** through **I-4)** are three single-camera view files, which appear to be the source of the news broadcast. **Exhibit I-2** depicts the opposite view of the hallway and is 6 minutes and 13 seconds of video. **Exhibit I-3** depicts the elevator bank and is 2 minutes and 15 seconds of video. **Exhibit I-4** depicts the hallway and is 1 minute and 59 seconds of video. These three files total approximately ten-and-a-half minutes—significantly longer than the footage broadcast on CNN on May 17, 2024. However, because these videos are sped up, this is not an accurate calculation of real world time.

10. Counsel asked me to view all video files and examine the metadata to determine the origin of this footage, whether any of this video footage appears to have been changed from the original and to indicate anything about the footage that is inaccurate or misleading in any way.

11. As part of my analysis of this video evidence, I imported and interrogated (examined) each evidence video file into an advanced software tool called AXON Investigate Pro ("AXON"), which is used by forensic video professionals and law enforcement around the world to manage, analyze and present video evidence efficiently and accurately. I examined and compared the metadata, timestamps, image resolution, playback speed, aspect ratio, visual distortion and frame rate of all video files in my possession.

12. Using AXON, I was able to determine that the smartphone device which captured **Exhibits C** and **D** was an iPhone 6 on March 5, 2016, with a creation date of 20:42:13 UTC. The videos depict a security monitor during playback and that playback was recorded onto the the iPhone 6, using the camera.

13. During the initial phase of my retention (before CNN complied with the defense subpoena), I was tasked with comparing **Exhibit A** with **Exhibits C** and **D**. I went through the video files one by one, back and forth, and compared images from one source (**Exhibit A**) to the iPhone 6 videos (**Exhibits C** and **D**). Once CNN complied with the defense subpoena, I also compared the CNN production (**Exhibit I**) to video files collected and recorded on the iPhone 6 (**Exhibits C** and **D**).

14. By comparing **Exhibit I** to the iPhone 6 (**Exhibits C** and **D)** videos, I could see significant distortion in those files that were not present in the iPhone 6 video of the same moment in time. The iPhone recorded the video as it played back at the source without the noted distortion.

It is clear to me, based on this analysis, that a significant amount of distortion was introduced into **Exhibit I** (the CNN video files) at some point.

15. For instance, I could determine that **Exhibit I** (the CNN video files) was significantly sped up. As a result, Mr. Combs' actions and the actions of others in the CNN videos were artificially accelerated. I also conducted a side-by-side comparison of (1) an item of the **Exhibit I-3** with (2) a similar scene from the iPhone 6 videos, including a scene of Mr. Combs walking through an elevator bank in the direction of the camera. The comparison showed that Mr. Combs moved faster in the CNN video files than in the iPhone 6 video and that he reached the near side of the elevator lobby sooner in the CNN video files than in the iPhone 6 video. The result is that the CNN video files depict faster, and seemingly more urgent action, than was depicted in the iPhone 6 video and than was actually the case.

16. It is my opinion that the alteration in speed depiction in the CNN video files is due to it being converted from one type of video file to another. This process is calling transcoding. Transcoding is a conversion, not a digital duplication. Transcoding is the rerecording of the original files into newly created files, usually with newly added digital compression. Whereas, a digital duplication would be an exact copy of the original. The result of the transcoding here is a higher frame rate instruction than is appropriate, causing the change in speed. It appears that here, frames are both added, subtracted and duplicated in the conversion. This causes issues with representation of actual life speed, and representation of human movement. Transcoding also adds digital compression, leading to timing and visual errors (distortion) that would not be present in the original files.

17. Furthermore, there were inaccuracies in **Exhibits C** and **D** (the iPhone 6 videos). A comparison of Mr. Combs' stature in side by side comparisons between **Exhibits C** and **D** and

**Exhibit I-3** (the CNN video files) show that **Exhibits C** and **D** make him look larger and wider than he actually was at the time of occurrence. This has the effect of making him appear more domineering. Additionally, the iPhone 6 video was hand held with varying focus and zoom, recording a fixed camera view, which has the effect of making the action more dramatic. The iPhone 6 videos do not have their respective original file names (IMG_XXXX), so I am also wary of their authenticity. Without the respective original file names, I am unable to determine whether the two files are sequential or not.

18. Based on these comparisons, an observer of the different pieces of footage would see the following: (i) **Exhibits A** and **I** (all CNN video files) are artificially sped up; (ii) **Exhibit A** and the CNN news broadcast footage of **Exhibit I-1** were both sped up and taken out of sequence; (iii) different parts of the CNN news broadcast footage obscure the time-stamp such that the viewer is kept from seeing that the action is sped up and taken out of sequence; (iv) the CNN video files consistently have digital visual distortion that is not native to the file, causing significant artifacting that obscured the physical interaction between the subjects; (v) **Exhibits C** and **D** (the iPhone 6 videos) are distorted in their aspect ratio due to the amatuer collection process (i.e. recording the hotel security screen with the wide angle function engaged on an iPhone, causing distortion of subject's actual stature (making them look heavy set)); and (vi) the video files have conflicting and inaccurate timestamps. The distortions in all of the available video files make it impossible to determine what the original video footage depicted in any reliable way.

19. Here, there are many issues with the timestamps across all available video files. First, in **Exhibit A** (the CNN news broadcast footage), the timestamps were covered up by graphics, which obscured the fact that the sequences presented by CNN were taken out of chronological order, in addition to being sped up.

20. Second, there are many issues with the timestamps that are depicted in **Exhibit I** (the CNN video files) and **Exhibits C** and **D** (the iPhone 6 videos). There are at least three different timestamps all depicting different times for the same moment, which causes confusion as to what events were happening at what time. The timestamps also have numerous breaks, which indicate jumps in real time, which were not memorialized in the video files in my possession.

21. Third, there is at least one instance where one time stamp represented two different actual moments as the same time on the same camera. For **Exhibit I-3** at the elevator bank, it depicts Mr. Combs both at the elevator bank *and* seated by the window during the same timestamp, on the same camera, at 11:13:11. In other words, he is in two different places in the same second according to the videos' timestamps, which is impossible.

22. Fourth, one of the most troubling observations concerning time stamps is present in the elevator bank video of **Exhibit I** and the elevator bank video of **Exhibit C**. When comparing these two videos, they show a period of displayed-timestamp-seconds does not match the same displayed-timestamp-seconds in the corresponding video. The sequence of displayed-timestamp-seconds are as follows:

| **Exhibit I-3** (CNN elevator bank) | **Exhibit C** (iPhone 6 video) |
|---|---|
| 11:13:15 | 11:13:15 |
| 11:13:16 | 11:13:16 |
| 11:13:17 | 11:13:17 |
| 11:13:18 | 11:13:18 |
| 11:13:19 | 11:13:19 |
| **11:13:11** | **11:14:30** |
| 11:14:31 | 11:14:31 |

| 11:14:32 | 11:14:32 |
|---|---|

23. So, for **Exhibit I-3**, the timestamp seems to jump back 10 seconds, and then jump forward over a minute to 11:14:31. Notably, 11:14:30 is not present. For **Exhibit C**, it does not jump back 10 seconds to 11:13:11, yet it includes 11:14:30.

24. This instance in **Exhibit I** is just one of multiple instances where the timestamp jumps back in time. I have never seen timestamps jump back in time before in my 22 years of forensic video analysis. The timestamps in the **Exhibits C** and **D**, however, do not jump back, from what I can observe. However, the timestamp is displayed so infrequently in **Exhibits C** and **D**, making it difficult to determine the time depicted.

25. The possibility of editing can not be ruled out as none of video is original, but all transcoded copies. This transcoding is evident, for example, by the added black borders to the left and right of the video image in **Exhibits I-2** through **I-4** (the CNN videos). It is evident in the observance of added distortion, which occurs when video files are transcoded and copied from the original. The CNN videos accelerate and decelerate constantly, as can easily be seen by looking at the timestamp. This constant acceleration/deceleration is either a function of the transcoding and/or the function of the system itself. It significantly changes the way people move with in the video, a stuttering visual effect. The transcoded nature of all the video make it impossible to know what the original video file actually depicted.

26. Finally, there is a considerable amount of video footage that is absent as indicated by the numerous timestamp breaks and video collection methods, making it so a viewer does not know what happened during those numerous breaks in video. The left hall camera in **Exhibit I** has approximately 16 time stamp breaks where approximately 9 minutes 18 seconds of video is

missing of the 18 minute 28 seconds of time indicated elapsed by the timestamp. The right hall camera in **Exhibit I** has approximately 11 timestamp breaks where approximately 15 minutes and 6 seconds of video are missing of the 16 minutes 46 seconds indicated by the timestamp. The elevator camera in **Exhibit I-3** has approximately 7 timestamp breaks where approximately 1 minute and 56 seconds of video are missing of the 5 minutes 7 seconds indicated by the timestamp. **Exhibits C** and **D** (iPhone 6 videos) run 1 minute 40 second and 1 minute 57 seconds respectively. The is a gap of about 50 seconds of real time between the recorded segment with breaks in timestamps occurring during the recording. As stated above, because I do not have the file names for **Exhibits C** and **D**, I do not know whether these two videos are sequential recorded in the iPhone and if any other files depicting the events are contained within that device. These breaks can not be calculated from the timestamp, as the timestamp is often out of view in **Exhibits C** and **D**.

27. Based on my training and experience, and using AXON Investigate Pro forensic video software, it is my opinion that **Exhibits C** and **D** (the iPhone 6 videos) and **Exhibit I (**the 4 CNN videos) are (i) not original; and (ii) have many introduced divergent technical issues that greatly affect a viewers' perception of recorded events as set forth above. It is my opinion that none of the available video files are accurate and reliable copies of the original.

Dated: April 2, 2025
New York, NY

Respectfully submitted,

[signature]

Conor McCourt

STATE OF NEW YORK )

COUNTY OF NEW YORK )

I, FASIL YILMA, a Notary Public, do hereby certify that on this 02 day of 04, 2025, personally appeared before me CONOR MCCOURT, known to me to be the person whose name is subscribed to the foregoing instrument, and swore and acknowledged to me that she executed the same for the purpose and in the capacity therein expressed and that the statements contained herein are true and correct.

NOTARY PUBLIC

FASIL A. YILMA
Notary Public, State of New York
No. 01YI6342601
Qualified in New York County
Commission Expires May 23, 2028