UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

SEAN COMBS,

          Defendant.

24-cr-542 (AS)

## DEFENDANT SEAN COMBS'S OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO AVOID IDENTIFYING CERTAIN WITNESSES

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.     THE GOVERNMENT'S REQUEST UNDULY INFRINGES MR. COMBS'S AND THE PUBLIC'S CONSTITUTIONAL RIGHTS ............................................................ 2

     A.    The Government's Request Violates Mr. Combs's Sixth Amendment Right To Confront Witnesses ....................................................................................... 2

     B.    The Government's Request Unduly Infringes Mr. Combs's And The Public's Rights To A Public Trial ................................................................................ 4

II.    PRACTICAL AND LOGISTICAL PROBLEMS FURTHER UNDERMINE THE GOVERNMENT'S REQUEST ................................................................................. 6

III.   THE GOVERNMENT'S REQUEST IS EXTRAORDINARY AND IS UNSUPPORTED BY ANY LEGITIMATE INTEREST ................................................. 7

     A.    The Government Misstates The Law And The Heavy Burden Required To Override The Presumption Of An Open Trial .................................................. 7

     B.    The Government's Asserted Harms To The Three Witnesses Are Insufficient To Justify Pseudonymity .................................................................................. 10

     C.    The Government Cannot Show Any Harm To ███████████████ ███████████████ .......................................................................................... 14

CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*Alford v. United States*,
   282 U.S. 687 (1931)..................................................................................4

*Davis v. Alaska*,
   415 U.S. 308 (1974)..................................................................................3

*Delaware v. Van Arsdall*,
   475 U.S. 673 (1986)..................................................................................3

*Doe 1 v. Branca USA, Inc.*,
   2022 WL 2713543 (S.D.N.Y. July 13, 2022) ...............................11, 14

*Doe v. Combs*,
   2024 WL 863705 (S.D.N.Y. Feb. 29, 2024) ................................12, 13

*Doe v. Combs*,
   2024 WL 4635309 (S.D.N.Y. Oct. 30, 2024) ...........................4, 5, 12

*Doe v. Combs*,
   2025 WL 268515 (S.D.N.Y. Jan. 22, 2025).............................4, 12, 13

*Doe v. Combs*,
   2025 WL 722790 (S.D.N.Y. Mar. 6, 2025) ..........................................12

*Doe v. Combs*,
   2025 WL 934358 (S.D.N.Y. Mar. 27, 2025) ........................................12

*Doe v. Combs*,
   2025 WL 934380 (S.D.N.Y. Mar. 27, 2025) ...................................4, 12

*Doe v. Combs*,
   2025 WL 950685 (S.D.N.Y. Mar. 28, 2025) ........................................12

*Doe v. Combs*,
   No. 24-CV-7974 (JMF) (S.D.N.Y. Apr. 8, 2025) ...............................12

*Doe v. Combs*,
   No. 24-CV-7776 (NRB) (S.D.N.Y. Apr. 9, 2025) ...............................12

*Doe v. Combs*,
   161671/2024 (Sup. Ct. NY Co. 2025) ..................................................12

*Doe v. Combs*,
   161674/2024 (Sup. Ct. NY Co. 2025) ..................................................12

*Doe v. Combs*,
    161676/2024 (Sup. Ct. NY Co. 2025) .................................................................12

*Doe v. Delta Airlines, Inc.*,
    310 F.R.D. 222 (S.D.N.Y. 2015) .......................................................................3

*Doe v. Freydin*,
    2021 WL 4991731 (S.D.N.Y. Oct. 27, 2021) .......................................................14

*Doe v. Gong Xi Fa Cai, Inc.*,
    2019 WL 3034793 (S.D.N.Y. July 10, 2019) ...................................................5, 11

*Doe v. Shakur*,
    164 F.R.D. 359 (1996) .....................................................................................11

*Doe v. Skyline Auto. Inc.*,
    375 F. Supp. 3d 401 (S.D.N.Y. 2019) ..................................................3, 4, 8, 11

*Doe v. Townes*,
    2020 WL 2395159 (S.D.N.Y. May 12, 2020) ................................................5, 8, 11

*Doe v. Weinstein*,
    484 F. Supp. 3d 90 (S.D.N.Y. 2020) ...........................................................5, 8, 11

*English v. Combs*,
    24-cv-5090 (AT) (S.D.N.Y.) .............................................................................13

*Gannett Co. v. DePasquale*,
    443 U.S. 368 (1979)........................................................................................4, 8

*Globe Newspaper Co. v. Sup. Ct.*,
    457 U.S. 596 (1982)........................................................................................8, 13

*Graves v. Combs*,
    24-cv-7201 (AT) (S.D.N.Y.) .............................................................................13

*Jones v. Combs*,
    24-cv-1457 (JPO) (S.D.N.Y.)...........................................................................13

*McKinney v. Combs*,
    24-cv-3931 (NRB) (S.D.N.Y.) ..........................................................................13

*Nixon v. Warner Comms., Inc.*,
    435 U.S. 589 (1978)........................................................................................5

*Rapp v. Fowler*,
    537 F. Supp. 3d 521 (S.D.N.Y. 2021) ..........................................................11, 15

*Richard v. Combs*,
    24-cv-6848 (KPF) (S.D.N.Y.) ................................................................................13

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) .................................................................................. 3, 5, 13

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008) .........................................................................5

*Smith v. Illinois*,
    390 U.S. 129 (1968) ................................................................................... 3, 4

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) .........................................................................6

*United States v. Corley*,
    2016 WL 9022508 (S.D.N.Y. Jan. 15, 2016) ...............................................9

*United States v. Daskal*,
    2023 WL 9424080 (E.D.N.Y. July 12, 2023) ...............................................9

*United States v. Graham*,
    2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015) .............................................10

*United States v. Hernandez*,
    2013 WL 3936185 (S.D.N.Y. July 29, 2013) ...............................................9

*United States v. Kidd*,
    385 F. Supp. 3d 250 (S.D.N.Y. 2019) .........................................................9

*United States v. Marcus*,
    2007 WL 330388 (E.D.N.Y. Jan. 31, 2007) ...............................................10

*United States v. Martinez*,
    17-cr-281 (BMC), Dkt. 34 (E.D.N.Y.) .......................................................11

*United States v. Maxwell*,
    2021 WL 5967913 (S.D.N.Y. Dec. 15, 2021) .............................................12

*United States v. Maxwell*,
    20-CR-330 (AJN), Dkt. 187 (S.D.N.Y.) .......................................................9

*United States v. Maxwell*,
    20-CR-330 (AJN), Dkt. 465 (S.D.N.Y.) .......................................................9

*United States v. Paris*,
    2007 WL 1484974 (D. Conn. May 18, 2007) ...............................................9

*United States v. Pilcher*,
   950 F.3d 39 (2d Cir. 2020) ........................................................................8

*United States v. Raniere*,
   18-cr-204 (NGG), Dkt. 826 (E.D.N.Y.) ..................................................10

*United States v. Robert (R.) Kelly*,
   19-cr-286 (AMD), Dkt 121 (E.D.N.Y.) .....................................................9

*United States v. Robert (R.) Kelly*,
   19-cr-286 (AMD), Dkt. 255 (E.D.N.Y.) ....................................................9

*United States v. Schulte*,
   436 F. Supp. 3d 698 (S.D.N.Y. 2020) .......................................................9

*United States v. Terranova*,
   750 F. Supp. 3d 15 (E.D.N.Y. 2024) .........................................................9

*United States v. Urena*,
   8 F. Supp. 3d 568 (S.D.N.Y. 2014) ...........................................................9

*United States v. Zhong*,
   2018 WL 6173430 (E.D.N.Y. Nov. 26, 2018) ..........................................9

*Ventura v. Combs*,
   23-cv-10098 (DLC) (S.D.N.Y.) ..............................................................13

*Waller v. Georgia*,
   467 U.S. 39 (1984) ....................................................................................4

**Statutes**

18 U.S.C. § 3509 ...............................................................................................8

18 U.S.C. § 3771 .............................................................................................14

**Other Authorities**

Wright & Miller, 30 Fed. Prac. & Proc. Evid. § 6408 (2d ed. 2025) .........6, 8

## <u>INTRODUCTION</u>

In one of this District's most high-profile prosecutions in recent memory, the government seeks to conceal the identities of three of its main witnesses during his public trial. The Court should reject this extraordinary request and require these three witnesses to stand behind their real names while leveling serious accusations against Mr. Combs.

The government's principal witnesses will include three alleged female victims it calls "Victim-2," "Victim-3," and "Victim-4"—██████████████████████████████ ██████████ respectively.[1] ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. Rather than have these critical witnesses identified by their real names—like virtually every witness in every criminal trial—the government seeks to have them be described and otherwise referred to by pseudonym and to seal exhibits containing either their first or last names.

Yet what the government describes as "narrowly" tailored measures to accommodate its witnesses' privacy interests are, in fact, a blatant violation of Mr. Combs's Sixth Amendment rights to confront witnesses and to a public trial—a violation that risks preventing potential witnesses from coming forward to testify on Mr. Combs's behalf. The government's request would also contravene the public's and press's First Amendment and common law rights of access for a trial of immense public interest in which there could not be a stronger need to enforce these rights.

The government's proposal would also create a logistical nightmare that would confuse witnesses and the jury. Just imagine conducting a trial with Jane Doe 1, 2, and 3, interspersed

---

[1] The government represents that "Victim-1" in the indictment—██████████████████ is "prepared to testify under her own name." Mot. 1.

with references to other witnesses' true names.  Moreover, the government's request would be futile because Mr. Combs's accusers ████████████████████████████████████.

    If constitutional rights and logistical concerns don't foreclose pseudonymity here, the government's request should also be rejected because it cannot carry its heavy burden to justify this extraordinary relief.  Pseudonymity is a very rare exception to the universal presumption of open trials and doesn't apply here.  These three witnesses are adults who merely fear the stigma and embarrassment of public testimony, not minors or undercover agents who would be in danger if identified.

    The Court should deny the government's motion in its entirety.

## <u>ARGUMENT</u>

## I.    THE GOVERNMENT'S REQUEST UNDULY INFRINGES MR. COMBS'S AND THE PUBLIC'S CONSTITUTIONAL RIGHTS

### A.  The Government's Request Violates Mr. Combs's Sixth Amendment Right To Confront Witnesses

Concealing the identities of ████████████████████ would violate Mr. Combs's Sixth Amendment right "to be confronted with the witnesses against him."  These will be three of the government's main trial witnesses.  █████████████████████████████ ████████████████████████████████.  Declaration of Teny Geragos ¶ 6.  ███████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████.  *See id.* ¶ 4.

    The government's case will to a large extent rise or fall on the credibility of these three witnesses—which Mr. Combs is entitled to vigorously challenge on cross-examination.  Indeed, the Confrontation Clause's "main and essential purpose" is "to secure . . . the opportunity of

cross-examination," *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986),[2] which "is the principal means by which the believability of a witness and the truth of his testimony are tested," *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

Although Mr. Combs and the jury will know the true identities of these witnesses, pseudonyms prevent "full[] and adequate[]" cross-examination, *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d 401, 407-08 (S.D.N.Y. 2019), which is why "[t]he case law recognizes a defendant's interest in confronting *an identified accuser*," *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015) (emphasis added), *aff'd*, 672 F. App'x 48 (2d Cir. 2016).  A witness who testifies under her own name "may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account."  *Delta Airlines, Inc.*, 310 F.R.D. at 225.  "[O]pen examination of witnesses . . . is much more conducive to the clearing up of truth, than the private and secret examination . . . where a witness may frequently depose that in private, which he will be ashamed to testify in a public and solemn tribunal."  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 597 (1980) (Brennan, J., concurring) (quoting 3 William Blackstone, Commentaries *373 (13th ed. 1800)).

In *Smith v. Illinois*, for example, the Supreme Court reversed the defendant's conviction because a prosecution witness was permitted to testify pseudonymously.  While "there was not, to be sure, a complete denial of all right of cross-examination," the defendant was nonetheless "denied the right to ask the principal prosecution witness . . . his name," and "when the credibility of a witness is in issue, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is.  390 U.S.

---

[2] Unless otherwise noted, citations omit internal quotation marks, footnotes, and previous alterations in the original source.

129, 131 (1968).  "To forbid this rudimentary inquiry at the threshold," therefore, "[was]

effectively to emasculate the right of cross-examination itself."  *Id.*  Similarly, in *Alford v.

United States*, the Court reversed a conviction because the defendant was prohibited from

inquiring into identifying information on cross examination.  282 U.S. 687, 692-94 (1931).  The

Court should not permit this drastic limitation on Mr. Combs's confrontation right.

### B.  The Government's Request Unduly Infringes Mr. Combs's And The Public's Rights To A Public Trial

Allowing ███████████████████ to use pseudonyms would infringe Mr.

Combs's Sixth Amendment right to a public trial—another important fair trial safeguard.  *See*

*Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979).  Nothing could be more unfair than

requiring Mr. Combs to publicly defend himself while three of the government's accusers wear a

"cloak of anonymity."  *E.g.*, *Skyline Auto. Inc.*, 375 F. Supp. 3d at 407.  Mr. Combs risks

suffering the same reputational damage and mental harms the government invokes to justify

pseudonymity for these witnesses.  Yet the government seeks to have them hide behind fake

names while Mr. Combs endures the immense public indignity of facing lurid sex-crimes

accusations.

Crucially, fully identifying the government's witnesses may also lead other potential

"witnesses to come forward" with testimony or other helpful information.  *Waller v. Georgia*,

467 U.S. 39, 46 (1984).  The potential benefit is especially high in a highly publicized trial like

this one, as courts have explained in cases involving Mr. Combs himself.  *See, e.g.*, *Doe v.*

*Combs*, 2024 WL 4635309, at *5 (S.D.N.Y. Oct. 30, 2024) (*Combs II*); *Doe v. Combs*, 2025 WL

268515, at *4 (S.D.N.Y. Jan. 22, 2025) (*Combs III*); *Doe v. Combs*, 2025 WL 934380, at *5

(S.D.N.Y. Mar. 27, 2025) (*Combs VI*).  A public trial in which witnesses are identified helps

advance the trial's truth-seeking function—but the government's request does the opposite,

further impairing Mr. Combs's rights.  For example, as the government notes (Mot. 6 n.2),



.  Many other potential witnesses are not yet aware of the

importance of contradicting ▮▮▮▮▮▮ testimony, but may well come forward if ▮▮▮▮▮▮ is

forced to identify herself at trial and make her untrue allegations behind her real name.

In addition to Mr. Combs's Sixth Amendment right to a public trial, pseudonymity would

contravene the public's First Amendment right of access.  *Richmond Newspapers, Inc.*, 448 U.S.

at 577-80 (plurality opinion).  "The people have a right to know who is using their courts,"

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008), and a heightened interest

in knowing the identities of accusers in high-profile cases, *e.g.*, *Doe v. Weinstein*, 484 F. Supp.

3d 90, 97 (S.D.N.Y. 2020) (Harvey Weinstein).  This case also presents "concrete and factual"

issues of interest to the public rather than abstract legal issues, which further militates in favor of

an open trial.  *See, e.g.*, *Doe v. Gong Xi Fa Cai, Inc.*, 2019 WL 3034793, at *3 (S.D.N.Y. July

10, 2019); *Doe v. Townes*, 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020).

The government's request to seal exhibits containing the three witnesses' names is a

particularly flagrant violation of the public's—and the press's—right of access.  "Media outlets

have a constitutional right to publish stories about this case," *Combs II*, 2024 WL 4635309, at

*3, and enjoy in independent common law right of access to judicial records, *Nixon v. Warner

Comms., Inc.*, 435 U.S. 589, 597-98 (1978).  The government, however, asks the Court to impose

an unconstitutional prior restraint on publishing the names of three of Mr. Combs's accusers.

Although the government invokes the "privacy interest" exception to the common law right of access (Mot. 18), it is seeking to block publication of witness names, not anything "traditionally considered private," *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)—like financial or health records.

## II.    PRACTICAL AND LOGISTICAL PROBLEMS FURTHER UNDERMINE THE GOVERNMENT'S REQUEST

The government's "narrowly" tailored request should be rejected for the independent reason that pseudonymity would in reality be exceptionally disruptive and mark a jarring departure from standard trial practice.

"[M]ost witness examinations begin with an introduction of the witness to the fact finder, including the witness's name"—information that is "widely accepted, welcomed, and expected in the courtroom."  Wright & Miller, 30 Fed. Prac. & Proc. Evid. § 6408 (2d ed. 2025).  This is a case where names and relationships will be particularly important.  The testimony will frequently delve into who met, spoke with, or interacted with who; and these discussions would be extremely confusing without the real names for three pivotal witnesses.  Witnesses would forget who they can refer to by real or fake name, or misidentify one of the pseudonymous witnesses.  Jurors would spend less time listening to the testimony than trying to figure out who Jane Doe 1, Jane Doe 2, and Jane Doe 3 actually are, or wondering why there are only three Jane Does out of the many testifying witnesses.  Giving the jurors their real names, as the government proposes (Mot. 17), would only heighten the confusion.  On top of all that, many of the exhibits are audible—including hundreds of recorded voice memos and messages—in which references to the government's three witnesses would need to be edited and swapped with confusing references to Jane Does 1-3.

Concealing the identities of ███████████████ would also risk bolstering the veracity or credibility of their claims against Mr. Combs, undermining the presumption of innocence.  The jury may come to believe that these witnesses have, in fact, already been determined to be sex-crimes victims who are in need of special protection from Mr. Combs.

Finally, the government's request to have the three witnesses proceed on a fake-name basis would almost certainly be ineffective.  This litigation has garnered extensive media coverage, and there has been detailed reporting on Mr. Combs and his accusers.  ████████ ████████████████████████████████████████████ as the government notes.  Mot. 13.  Interested members of the public—let alone the numerous tabloids following the trial—████████████████████████████████████████ ███████████████ For example, Mr. Combs expects to cross-examine ██████████████ ████████████████████████████████████████ ████████████████████ *See* Geragos Decl. ¶ 9.  It would make no sense to ████████████████████████████████████████████ ███████████████████. Granting the government's motion would be an exercise in futility, and would thus serve only to impair Mr. Combs's defense and his constitutional rights.

## III.   THE GOVERNMENT'S REQUEST IS EXTRAORDINARY AND IS UNSUPPORTED BY ANY LEGITIMATE INTEREST

### A.  The Government Misstates The Law And The Heavy Burden Required To Override The Presumption Of An Open Trial

The government seems to suggest that pseudonymity is a relatively routine measure that the Court can and should permit any time a prosecution witness would rather not be identified.  For example, the government repeatedly claims that Mr. Combs must present a "particularized need" to use its three witnesses' real names.  Mot. 7, 10, 12, 18.

This gets it completely backwards. The Sixth Amendment "presumes open trials as a norm," *Gannett Co.*, 443 U.S. at 385, and there is also a "uniform rule of openness" protected by the First Amendment, *Globe Newspaper Co. v. Sup. Ct.*, 457 U.S. 596, 605 (1982). Only in rare circumstances—not present here—can the government carry the heavy burden required to rebut this presumption of openness. That is why "pseudonyms are the exception and not the rule," *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020) (per curiam), and why witnesses have been "explicitly authorized witnesses to testify anonymously . . . only in a narrow band of cases," Wright & Miller § 6408.

The government cannot carry its heavy burden in this case—as illustrated by the decisions the government itself cites. The government primarily relies on decisions involving minors and witnesses who would be in actual danger if publicly identified. The government also relies on inapposite cases in which the courts allowed witnesses to testify using their first names. These precedents only underscore the extraordinary nature of the government's ask: that adult witnesses who would not be endangered by identification be referred to by fake names at trial.

<u>Minors</u>. Special solicitude is shown to minors because they are considered more vulnerable than adults like the witnesses the government seeks to "protect"—as Congress has recognized. *See* 18 U.S.C. §3509(d)(3)(A) ("Child Victims' and Child Witnesses' Rights") (authorizing courts to issue pseudonymity orders for children). Courts in this District routinely conclude, however, that adults like ██████████████ are less likely to need their privacy interests protected, and that the rule of open trials must be adhered to. *See, e.g.*, *Townes*, 2020 WL 2395159, at *5; *Skyline Auto. Inc.*, 375 F. Supp. at 406; *Weinstein*, 484 F. Supp. 3d at 96.

Among the government's many inapt precedents involving minors is *United States v. Maxwell*, where the court allowed pseudonyms for alleged victims of the "sexual exploitation and abuse of multiple minor girls by Jeffrey Epstein." 20-CR-330 (AJN), Dkt. 187, S2 Indictment ¶ 1, Dkt. 465, Hr'g Tr. 5-6 (S.D.N.Y.). The court reached the same conclusion in *United States v. Robert (R.) Kelly*, when the alleged victim was a "minor under the age of 18" who "contracted an incurable sexually transmitted disease at the age of 17." 19-cr-286 (AMD), Dkt 121, Memo of Law in Supp. of Gov't Mot. in Limine at 3-4, Dkt. 255, Order at 19-21 (E.D.N.Y.). The government cites a handful of other distinguishable cases involving minors. Mot. 8-9 (citing *United States v. Daskal*, 2023 WL 9424080, at *1-2 (E.D.N.Y. July 12, 2023); *United States v. Kidd*, 385 F. Supp. 3d 250, 255 (S.D.N.Y. 2019); *United States v. Terranova*, 750 F. Supp. 3d 15, 25-26 (E.D.N.Y. 2024); *United States v. Corley*, 2016 WL 9022508, at *3-4 (S.D.N.Y. Jan. 15, 2016); *United States v. Paris*, 2007 WL 1484974, at *1-2 (D. Conn. May 18, 2007)).

Endangered Witnesses. The government also cites cases involving witnesses who might have been in physical danger, which are equally inapposite. *See United States v. Zhong*, 2018 WL 6173430, at *1-2 (E.D.N.Y. Nov. 26, 2018) (victims of alleged forced labor conspiracy and their families potentially faced reprisals); *United States v. Urena*, 8 F. Supp. 3d 568, 569, 572-73 (S.D.N.Y. 2014) (undercover police officer's safety and future effectiveness would've been endangered by violent gang); *United States v. Schulte*, 436 F. Supp. 3d 698, 706-07 (S.D.N.Y. 2020) (need to protect safety and effectiveness of undercover CIA officers); *United States v. Hernandez*, 2013 WL 3936185, at *3 (S.D.N.Y. July 29, 2013) (legitimate concerns for safety and efficacy of undercover DEA special agent).

National security risks and organized crime violence are a far cry from the vague fears of embarrassment and humiliation that the government attributes to ███████████████. *See infra* Point III.B.  Caselaw recognizes the difference and carves out a limited exception to the presumption of open testimony only for the former type of case.  But this is not such a case.

First Name Only.  The government also erroneously relies on decisions permitting witnesses to testify using their first names—not pseudonyms.

For example, the court in *United States v. Raniere* told the jury that it had "instructed the parties to refer to those individuals by their first names only."  18-cr-204 (NGG), Dkt. 826, Trial Tr. 249 (E.D.N.Y.); *see also United States v. Marcus*, 2007 WL 330388, at *2 (E.D.N.Y. Jan. 31, 2007) (two witnesses permitted to be identified by first names); *United States v. Graham*, 2015 WL 6161292, at *10 (S.D.N.Y. Oct. 20, 2015) (same for several victims).  There is a big difference between using first names and the government's proposal here, where witnesses would testify under fake names and all other witnesses would have to refer to them by those fake names.

**B. The Government's Asserted Harms To The Three Witnesses Are Insufficient To Justify Pseudonymity**

The government points to a range of amorphous and unsubstantiated harms that it fears ██████████████████ would suffer if identified at trial.  Given the "exceptional amount of media coverage" generated by this case, the government says, identifying these witnesses would be an "unnecessary public disclosure" that would cause "harassment," "embarrassment," and other unspecified "adverse consequences."  Mot. 1.  The government adds that pseudonymity would "prevent adverse impact" on each witness's earning potential, and "minimize the[ir] humiliation."  *Id.* at 3-6.

10

1.  None of these conclusory and speculative fears—whether considered alone or together—warrants concealing the identities of the three witnesses.  Courts in this District routinely recognize that litigants in sex-offense cases cannot avoid being identified based on generalized and uncorroborated fears of stigma, embarrassment, humiliation, harassment, or negative professional ramifications.  "Were it otherwise, virtually all claims of adult sexual assaults would *ipso facto* proceed anonymously."  *Doe 1 v. Branca USA, Inc.*, 2022 WL 2713543, at *2 (S.D.N.Y. July 13, 2022); *see, e.g.*, *Skyline Auto. Inc.*, 375 F. Supp. 3d at 405 ("potential for embarrassment or public humiliation" insufficient to justify pseudonymity); *Townes*, 2020 WL 2395159, at *4 (same for "[e]vidence of . . . social stigmatization, and economic harm").

The likelihood of mental harm cannot be supported by the government's own say-so, but must be backed by medical documentation or other particularized evidence—which the government doesn't even attempt to offer.  *See, e.g.*, *Branca USA, Inc.*, 2022 WL 2713543, at *2, 5 (no pseudonymity when there was "no evidence of specific and concrete harm, such as in the form of opinions from mental health professionals"); *Gong Xi Fa Cai, Inc.*, 2019 WL 3034793, at *2 ("exacerbat[ion] [of] emotional distress" insufficient "absent more direct evidence linking disclosure of her name to a specific . . . mental injury").

2.  Pseudonymity is improper even in cases involving sex-offense allegations against high-profile defendants.  *See Doe v. Shakur*, 164 F.R.D. 359 (1996) (Tupac); *Weinstein*, 484 F. Supp. 3d 90 (Harvey Weinstein); *Rapp v. Fowler*, 537 F. Supp. 3d 521 (S.D.N.Y. 2021) (Kevin Spacey).  While the government emphasizes one case where the court granted pseudonymity in part because "the case has already received significant national and local press coverage," *United States v. Martinez*, 17-cr-281 (BMC), Dkt. 34, Order at 2 (E.D.N.Y.), "these generalized

concerns are present in every high-profile criminal case," *United States v. Maxwell*, 2021 WL 5967913, at *2 (S.D.N.Y. Dec. 15, 2021), and cannot justify pseudonymity.

For these reasons, nearly every court in this District (and most New York State courts) has rejected pseudonymity or anonymity requests from the many civil plaintiffs alleging similar claims against Mr. Combs.  *See, e.g.*, *Doe v. Combs*, 2024 WL 863705 (S.D.N.Y. Feb. 29, 2024) (*Combs I*); *Combs II*, 2024 WL 4635309; *Combs III*, 2025 WL 268515; *Doe v. Combs*, 2025 WL 722790 (S.D.N.Y. Mar. 6, 2025); *Doe v. Combs*, 2025 WL 934358 (S.D.N.Y. Mar. 27, 2025); *Combs VI*, 2025 WL 934380; *Doe v. Combs*, 2025 WL 950685 (S.D.N.Y. Mar. 28, 2025); *Doe v. Combs*, No. 24-CV-7974 (JMF), Dkt. 59 (S.D.N.Y. Apr. 8, 2025); *Doe v. Combs*, No. 24-CV-7776 (NRB), Dkt. 62 (S.D.N.Y. Apr. 9, 2025); *see also, e.g.*, *Doe v. Combs*, 161671/2024, Dkt. 33 (Sup. Ct. NY Co. 2025); *Doe v. Combs*, 161674/2024, Dkt. 30 (Sup. Ct. NY Co. 2025); *Doe v. Combs*, 161676/2024, Dkt. 31 (Sup. Ct. NY Co. 2025).

In one illustrative case involving Mr. Combs, the court held that neither the highly sensitive nature of the allegations nor the fact that the plaintiff had not spoken about them publicly justified pseudonymity.  Although the case "may attract exceptional media attention and public scrutiny, which understandably might cause the plaintiff embarrassment and distress," the plaintiff failed to present "support from a medical professional" or other "particularized evidence that disclosure will cause injury" and instead offered only a "vague, generic, and speculative claim" of generalized mental harm that was "applicable to all victims of sexual assault."  *Combs III*, 2025 WL 268515, at *2-3.  The government's request fares no better.

3.  The government repeatedly invokes the interest in protecting the identities of alleged sex-crimes victims so others will not be deterred from coming forward.  Mot. 8, 10-11, 16.  According to this logic, pseudonymity would be required for every alleged sex-crimes victim—

but that is not the law.  "[F]urthering this interest does not require maintaining the anonymity of *every* person who alleges sexual assault or other misconduct of a highly personal nature."  *Id.* at *4.

The interest in not deterring the reporting of sex crimes must be balanced against Mr. Combs's interest—indeed, constitutional right—to confront his accusers, and both his and the public's interest in an open trial.  Consequently, this asserted interest "has been repeatedly rejected by courts in this District as an adequate basis . . . to warrant anonymity."  *Combs I*, 2024 WL 863705, at *5.  Any alleged chilling effect is also belied by both the numerous civil plaintiffs who were denied pseudonymity in suits against Mr. Combs, *see supra* Point III.B.2, and the many other plaintiffs who have sued Mr. Combs under their own names ███████ ███████ in this District, *see, e.g.*, *Ventura v. Combs*, 23-cv-10098 (DLC); *Jones v. Combs*, 24-cv-1457 (JPO); *McKinney v. Combs*, 24-cv-3931 (NRB); *English v. Combs*, 24-cv-5090 (AT); *Richard v. Combs*, 24-cv-6848 (KPF); *Graves v. Combs*, 24-cv-7201 (AT).

4.  This parallel civil litigation involving Mr. Combs—and the other civil decisions cited in this opposition—demonstrate *a fortiori* that pseudonyms should not be permitted at Mr. Combs's criminal trial.  The presumption of open trials is even stronger in criminal cases because, unlike civil defendants, criminal defendants have Sixth Amendment rights to a public trial and the confrontation of witnesses.  And open "*criminal trials* in particular" are at the heart of the First Amendment right of access, *Globe Newspaper Co.*, 457 U.S. at 605-06, because "[p]lainly it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted," *Richmond Newspapers, Inc.*, 448 U.S. at 575 (plurality opinion).  This stronger rule of openness virtually

always outweighs victims' statutory "right to be treated with fairness and with respect" for their privacy (18 U.S.C. § 3771 (a)(8))—and this case is no exception.

**C. The Government Cannot Show Any Harm To** ███████████████

Although the Court should not permit pseudonymity for ████████████████, it would be especially inappropriate for ████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████

███████ [3] ██████████████████████

█████████ [4] ████████████████████ Mot. 6.

█████████████████████████████

Geragos Decl. ¶ 9. █████████████████████

██████████████████

The government cannot demonstrate any "incremental injury" that ██████████ ████████████ would suffer from being identified by their full names. *E.g.*, *Branca USA, Inc.*, 2022 WL 2713543, at *4; *Doe v. Freydin*, 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021) (collecting cases). ███████████████████████

---

[3] ████████████████████████████████
████████████████████████

[4] ███████████████████████████████
████████



Mot. 4 (████████████████) (emphasis added)), 13 & 15 (████████████████████████).[5] In similar situations, courts have denied pseudonymity. For example, Judge Kaplan refused to allow the plaintiff in a sexual assault case against actor Kevin Spacey to proceed under a pseudonym because the plaintiff had already disclosed his allegations to the press. *Fowler*, 537 F. Supp. 3d at 528-29.

## **CONCLUSION**

The Court should deny the government's motion in its entirety.

Date:  April 12, 2025                                           Respectfully Submitted,
       New York, NY

                                                               /s/ Alexandra A.E. Shapiro
                                                               Alexandra A.E. Shapiro
                                                               Jason A. Driscoll
                                                               Shapiro Arato Bach LLP
                                                               1140 Ave of the Americas, 17th Fl.
                                                               New York, NY 10036
                                                               (212) 257-4881
                                                               ashapiro@shapiroarato.com
                                                               jdriscoll@shapiroarato.com

                                                               Marc Agnifilo
                                                               Teny Geragos
                                                               AGNIFILO INTRATER
                                                               445 Park Ave., 7th Fl.
                                                               New York, NY 10022
                                                               646-205-4350
                                                               marc@agilawgroup.com
                                                               teny@agilawgroup.com

---

[5] The government further detailed ███████████████████████ *See* Gov. Crime/Fraud Mot. at 17-18 ████████████████████████████ (emphasis added)).

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com