UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 24-cr-542 (AS) |
| v. | |
| SEAN COMBS, | |
| Defendant. | |

**DEFENDANT SEAN COMBS' MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO QUASH**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    I.    THE SUBPOENA SATISFIES RULE 17(c) ........................................................... 3

        A.    Rule 17(c) Provides the Proper Standard for Compliance with a Subpoena ..................................................................................................... 3

        B.    The Subpoena Is Neither Unreasonable Nor Oppressive ........................... 8

    II.    IN THE ALTERNATIVE, THE SUBPOENAS SATISFY THE *NIXON* STANDARD .......................................................................................................... 11

        A.    The Subpoena Seeks Relevant and Admissible Documents ..................... 11

        B.    The Subpoena is Sufficiently Specific and Not A "Fishing Expedition" ................................................................................................ 13

CONCLUSION .................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bowman Dairy Co. v. United States*,
    341 U.S. 214 (1951) ............................................................................................................ 4

*Camreta v. Greene*,
    563 U.S. 692 (2011) ............................................................................................................ 7

*Hawkins v. Steingut*,
    829 F.2d 317 (2d Cir. 1987) ................................................................................................ 7

*In re Irving*,
    600 F.2d 1027 (2d Cir 1979) ..............................................................................................11

*In re Martin Marietta Corp.*,
    856 F.2d 619 (4th Cir. 1988) ............................................................................................. 12

*In re Refco, Inc. Sec. Litig.*,
    628 F. Supp. 2d 432 (S.D.N.Y. 2008) ................................................................................. 7

*United States v. Akhavan*,
    No. 20-CR-188-2 (JSR), 2021 WL 1251893 (S.D.N.Y. Apr. 2, 2021) ............................... 6

*United States v. Barnes*,
    560 F. App'x 36 (2d Cir. 2014) .......................................................................................... 7

*United States v. Bergstein*,
    788 F. App'x 742 (2d Cir. 2019) ........................................................................................ 7

*United States v. Carollo*,
    No. 10-cr-654 (HB), 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012) ...............................11, 12

*United States v. Goldstein*,
    No. 21-cr-550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023) ............................... 6, 9

*United States v. Holihan*,
    248 F. Supp. 2d 179 (W.D.N.Y. 2003) ............................................................................. 13

*United States v. Iozia*,
    13 F.R.D. 335 (S.D.N.Y. 1952) ...................................................................................... 3, 4

*United States v. King*,
    194 F.R.D. 569 (E.D. Va. 2000) ....................................................................................... 13

*United States v. LaRouche Campaign*,
    841 F.2d 1176 (1st Cir. 1988) ........................................................................................... 13

*United States v. McClure*,
  No. CRIM.A. 10-028, 2010 WL 3523030 (ED La Sept. 1, 2010) ............................................ 13

*United States v. Nachamie*,
  91 F. Supp. 2d 552 (S.D.N.Y. 2000) ................................................................................... 5, 11

*United States v. Nixon*,
  418 U.S. 683 (1974) ............................................................................................................ *passim*

*United States v. Orena*,
  883 F. Supp. 849 (E.D.N.Y. 1995) ........................................................................................ 12

*United States v. Rajaratnam*,
  753 F. Supp. 2d 317 (S.D.N.Y. 2011) ............................................................................... *passim*

*United States v. RW Prof'l Leasing Servs. Corp.*,
  228 F.R.D. 158 (E.D.N.Y. 2005) ............................................................................................ 14

*United States v. Skelos*,
  88 F.3d 645 (2d Cir. 2021) ....................................................................................................... 7

*United States v. Soliman*,
  No. 06-cr-236A, 2009 WL 1531569 (W.D.N.Y. May 29, 2009) ............................................... 6

*United States v. Stein*,
  488 F. Supp. 2d 350 (S.D.N.Y. 2007) ....................................................................................... 7

*United States v. Tucker*,
  249 F.R.D. 58 (S.D.N.Y. 2008) ........................................................................................ *passim*

*United States v. Ulbricht*,
  858 F.3d 71 (2d Cir. 2017) ....................................................................................................... 7

*United States v. Weigand*,
  520 F. Supp. 3d 609 (S.D.N.Y. 2021) ................................................................................... 6, 7

*United States v. Weisberg*,
  No. 08-CR-347 (NGG) (RML), 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011) ..................... 11, 13

*United States v. Yudong Zhu*,
  No. 13 CR. 761 (VM), 2014 WL 5366107(S.D.N.Y. Oct. 14, 2014) .......................... 11, 12, 13

**Rules**

Fed. R. Crim. P. 17(c) .................................................................................................... *passim*

Fed. R. Civ. P. 26(b) .............................................................................................................. 6

Fed. R. Evid. 401 .................................................................................................................. 11

Fed. R. Evid. 402 ................................................................................................................11

████████████████████████████████████ seeks to shield important exculpatory information in her possession, and the government joins in that request. In particular, she and the government seek to conceal copies of her draft memoirs and other writings that memorialize a version of events that is markedly different from what she has told the government and will testify to at trial. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████ These relevant and admissible materials are crucial to the defense. They are precisely the types of documents that criminal defendants are entitled to subpoena from third parties. Moreover, depriving Mr. Combs of such material would interfere with his Sixth Amendment right to present a meaningful defense and Fifth Amendment due process rights. For these reasons, the Court should deny the motions and order ████████ to comply with the subpoena.

## BACKGROUND

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

1

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████
████

On March 18, 2025, Mr. Combs made an *ex parte* application for a Rule 17(c) subpoena to ████████ seeking two categories of documents: (1) all draft memoirs, autobiographies, narratives, diaries, journals or notes ████████████████████████████ and any communications about her plans to publish or threaten to publish such a document; and (2) all bank statements ████████████████████████ (the "Subpoena"). The Court authorized the subpoena on March 19, 2025 and defense counsel provided a copy to ████████'s counsel, who accepted service.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

---

[1] ███████████████████████████████████████████████████

2

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████

## ARGUMENT

**I.     THE SUBPOENA SATISFIES RULE 17(c)**

    **A.     Rule 17(c) Provides the Proper Standard for Compliance with a Subpoena**

At the outset, ████████ and the government argue that this Court should apply the standard articulated in *United States v. Nixon*, 418 U.S. 683 (1974), but there is no sound basis to do so. Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas by the parties to a criminal proceeding. While the court has authority to "quash or modify [a] subpoena," it may do so only "if compliance would be *unreasonable* or *oppressive*." Fed. R. Crim. P. 17(c)(2) (emphasis added). ████████ and the government argue that material sought pursuant to Rule 17(c) must be relevant, admissible, and specific. This three-part standard, which derives from the Supreme Court's decision in *Nixon*, 418 U.S. 683, does not apply here.

In *Nixon*, the grand jury investigating Watergate returned an indictment that named then-President Nixon as an unindicted coconspirator. *See id.* at 687. The government then subpoenaed the President, a non-party, who moved to quash. The Supreme Court affirmed the denial of the President's motion, finding that the government's subpoena "clear[ed] three hurdles" applied by lower courts to criminal subpoenas: "(1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700. The Supreme Court in *Nixon* adopted this standard from *United States v. Iozia*, 13 F.R.D. 335 (S.D.N.Y. 1952), a case in which the defendant had subpoenaed the

3

government. *See id.* at 337–38. *Iozia* required the defendant to satisfy a heightened standard because, by serving a Rule 17 subpoena on the *government*, he was potentially circumventing Rule 16's limits on discovery from the government. *See id.* at 338 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). *Nixon* involved "the more unusual situation," present here, "where the subpoena, rather than being directed to the government by defendants [or vice versa], issues to . . . a third party." 418 U.S. at 699 n.12 (quotation marks omitted). As a result, the government in *Nixon* argued that the heightened standard in "*Iozia* does not apply in its full vigor when the subpoena . . . is issued to third parties rather than to government prosecutors." *Id.* The Supreme Court neither accepted nor rejected this argument, instead declining to "decide whether a lower standard exists" because the subpoena satisfied the more stringent standard. *Id.*

In the decades since *Nixon*, courts have split over whether subpoenas to third parties are subject to that standard. The most thorough and persuasive analysis appears in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008), where the court concluded that the *Nixon* standard should not blindly be applied to all subpoenas. *See id.* at 60–67. Unlike the government, a criminal defendant has a Sixth Amendment right to compulsory process and to confront witnesses. "[T]he right to cross-examination has been held to be an essential purpose of the Confrontation Clause," and "[t]his right is meaningless if a defendant is denied the reasonable opportunity to obtain material evidence that could be crucial to that cross-examination." *Id.* at 67 (quotation marks omitted). As the Supreme Court observed in rejecting the President's privilege objection to the subpoena in *Nixon*:

> The right to the production of all evidence at a criminal trial . . . has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right 'to be confronted with the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor.' Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without

4

>  due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced.

418 U.S. at 711.

The plain text of Rule 17 is not as restrictive as the *Nixon* standard, and applying *Nixon* to all third-party subpoenas would allow "the government [to] prevent defendants from obtaining [relevant] material by choosing not to obtain it for itself" and thereby avoiding any disclosure obligations—a "perverse result [that] cannot be intended by the Federal Rules of Criminal Procedure." *Tucker*, 249 F.R.D. at 65.  In *Tucker*, the court expressly found that the *Nixon* standard "is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense." *Id.* at 66.[2]  Consequently, a defendant issuing a subpoena to a non-party "need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." *Id.* at 66; *see also Nachamie*, 91 F. Supp. 2d at 561–63.  Applying that standard, the court in *Tucker* approved a subpoena seeking recordings of phone calls made by cooperating witnesses for the purpose of impeaching those witnesses at trial.  *See id.* at 66–67.

*Tucker*'s reasoning is compelling, as several courts in this Circuit have recognized.  In *United States v. Rajaratnam*, 753 F. Supp. 2d 317 (S.D.N.Y. 2011), the court observed that according to the government's misreading of *Nixon*, "a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents 'reasonably

---

[2] While *Tucker* noted that the subpoena in that case was issued "on the eve of trial," *id.* at 66, the rationales for refusing to extend *Nixon* to defense subpoenas to third parties apply regardless of when the subpoena is issued.  Indeed, the *Tucker* court recognized that in *Nachamie*, it had "suggest[ed] that this test [wa]s appropriate for *all* defense subpoenas directed to non-parties." *Id.* at 66 n.51 (citing *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000)) (emphasis added).

5

calculated to lead to the discovery of admissible evidence,' . . . [but] a defendant on trial for his life or liberty does not even have the right to obtain documents 'material to his defense' from those same third parties." *Id.* at 321 n.1 (quoting Fed. R. Civ. P. 26 (b)(1)). The court in *Rajaratnam* had no occasion to apply *Tucker*, as the subpoena at issue satisfied *Nixon*. In *United States v. Goldstein*, No. 21-cr-550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023), however, the court followed *Tucker* to grant in part and deny in part the government's motion to quash several 17(c) subpoenas, noting in particular that the other lower courts that have instinctively followed *Nixon* did so despite the fact that "*Nixon* did not determine the propriety of a Rule 17(c) subpoena issued by a defendant to a third party[.]" *Id.* at *2. In *United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021), the court noted that *Tucker* is "more consistent with modern principles of liberal discovery than *Nixon*" because "[p]ermitting issuance of reasonable third-party subpoenas to take discovery…appropriately aligns criminal discovery more closely with modern principles of liberal discovery and better balances the discovery powers of Government and defense." *Id.* at 613; *see also United States v. Akhavan*, No. 20-CR-188-2 (JSR), 2021 WL 1251893, at *1 (S.D.N.Y. Apr. 2, 2021). Likewise in *United States v. Soliman*, No. 06-cr-236A, 2009 WL 1531569 (W.D.N.Y. May 29, 2009), the court applied *Tucker* in granting the defendant's motion for pretrial subpoenas, holding that even if the documents sought were "potentially voluminous," there was a reasonable "connection between his requests and his defense," and the subpoena could be further tailored if necessary to mitigate the burden of responding. *Id.* at *4.

Like the court in *Tucker*, this Court should apply the standard set forth in the plain text of Rule 17(c). There is no binding precedent requiring the Court to extend *Nixon* to this case.[3] The district-court decisions which have rejected *Tucker* are not binding on this Court, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011), which "remain[s] free to disagree" with them, *Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987). In fact, "every federal court in the land is obliged to apply . . . federal law, interpreted as best that court can in light of the precedents that bind it." *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 439 (S.D.N.Y. 2008) (Lynch, J.) (emphasis added). "[I]f a federal court simply accepts the interpretation of another [court] without independently addressing the merits, it is not doing its job." *Id.* (quotation marks and original brackets omitted). "*Nixon* should not so readily be divorced from the concerns that produced it," and "it is vitally important" not to "let [its] frequent repetition . . . lead to mindless application in circumstances [where it] never was intended to apply." *Rajaratnam*, 753 F. Supp. 2d at 321 n.1 (quoting *United States v. Stein*, 488 F. Supp. 2d 350, 365 (S.D.N.Y. 2007)).

Indeed, the Advisory Committee on Criminal Rules has been studying Rule 17 and is in the process of recommending an amendment that would clarify the showing necessary for a Rule 17 subpoena and explicitly relax *Nixon*'s admissibility requirement. Just recently, on March 28, 2025, the Rule 17 Subcommittee released its new discussion draft, reflecting the Committee's intention to change the standard to either "likely to be admissible" or "likely to lead to evidence

---

[3] In *United States v. Barnes*, the Court declined to decide whether *Tucker* or *Nixon* applied to a defense subpoena to a third party because the defendant's showing failed to satisfy *Tucker*. 560 F. App'x 36, 40 n.1 (2d Cir. 2014). While the Second Circuit recited the *Nixon* standard in *United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017), the defendant there did not advocate for (or even cite) the *Tucker* standard, and the Court's reference to *Nixon* was dicta, since it did not actually rely on the *Nixon* standard. Rather, it found that the evidence sought was irrelevant and could compromise a grand jury investigation, and that its exclusion was harmless. *See id.* at 109–10. In *United States v. Bergstein*, 788 F. App'x 742 (2d Cir. 2019), the Second Circuit "refused to reject Tucker's more liberal approach, leaving the question open." *Weigand*, 520 F. Supp. 3d at 612 (summarizing *Bergstein*). In *United States v. Skelos*, the court found "no abuse of discretion in the district court's decision to quash the[] subpoenas," also without ruling on the appropriate standard under *Nixon* or *Tucker*. 88 F.3d 645, 661 (2d Cir. 2021).

that will be admissible."[4]  The Committee "was persuaded that courts had applied the admissibility requirement in *Nixon*'s interpretation of prior text inconsistently, and sometimes too rigidly" and the revised text is intended to "provide an adequate and consistent opportunity for both the prosecution and defense to obtain the evidence they need form third parties."

The cases relied upon by the government and ▇▇▇▇▇ reflect exactly the sort of rigid interpretation of *Nixon* that the Committee seeks to correct.

### B. The Subpoena Is Neither Unreasonable Nor Oppressive

The subpoena easily satisfies the Rule 17(c) standard. First, the subpoenas are plainly not "unreasonable," as they seek evidence "material to the defense." *Tucker*, 249 F.R.D. at 66. ▇▇▇▇▇ draft memoirs will show an account of ▇▇▇▇▇ that is different from the story she has provided the government and undermines her allegations ▇▇ ▇▇▇▇▇. Indeed, the responsive material that ▇▇▇▇▇ recently provided to the government includes highly exculpatory statements, ▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇

---

[4] April 24, 2025 Agenda for Meeting of the Advisory Committee On Criminal Rules, at 113–18, available at https://www.uscourts.gov/sites/default/files/2025-04/2025-04-criminal-rules-committee-agenda-book-final-4-3.pdf.

8



It is core impeachment material and integral to the defense. *See Goldstein*, 2023 WL 3662971 at *4

(denying in part motion to quash for because "impeachment materials" were "integral to the defense," and noting "that the right to confront one's accusers is 'meaningless if a defendant is denied the reasonable opportunity to obtain material evidence that could be crucial to that cross-examination.'") (quoting *Tucker*, 249 F.R.D. at 67)).

  There is no reason to treat the relevance of ▮ bank records any differently, and the enforcement of a Rule 17(c) subpoena can serve to correct the government's selective investigation.

The Subpoena is also in no way "oppressive." The Subpoena seeks two categories of documents, both limited in scope and time. Far from "sweeping," as characterized by ▮, *see* ▮'s Motion to Quash ("▮ Mot.") dated April 2, 2025 at 3, it is a targeted request aimed at a specific set of documents that are exclusively within ▮ possession. ▮ makes no arguments with respect to undue burden or expense that would warrant an inference that compliance with the Subpoena would be oppressive.

Moreover, ▮ claims that the subpoena is burdensome should be measured against her full participation in the government's investigation. To date, ▮ has sat for at least six interviews with the government, provided access to multiple electronic devices, and searched for records that selectively corroborate the government's theory. That she now claims to be burdened by a simple request for limited materials is transparently an attempt to shield exculpatory information from the defense.

10

## II.   IN THE ALTERNATIVE, THE SUBPOENAS SATISFY THE *NIXON* STANDARD

Even under the more restrictive *Nixon* standard, the motion to quash is meritless because the subpoena easily clears the "three hurdles" of "(1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700.

### A.   The Subpoena Seeks Relevant and Admissible Documents

Although *Nixon* is a more stringent standard than *Tucker*, *Nixon*'s relevance standard is often overstated. Evidence is "relevant" if it tends to "make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. All relevant evidence is presumptively admissible. *See* Fed. R. Evid. 402. Combs need only show that the sought after evidence could potentially serve a valid purpose. *See Nixon*, 418 U.S. at 702 (subpoena was proper where there were "valid potential evidentiary uses for the [requested] material") (emphasis added); *id.* at 699 n.11 (advisory committee drafted Rule 17 "for the purpose . . . of enabling the party to see whether he can use [the evidence] or whether he wants to use [it]") (quotation marks omitted) (emphasis added); *Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) (subpoena for union sign-up cards was permissible because "[i]f the cards are in fact forged or otherwise fraudulent, they may provide the defendants with a basis for asserting an entrapment defense") (emphasis added); *United States v. Yudong Zhu*, No. 13 CR. 761 (VM), 2014 WL 5366107, at *2–3 (S.D.N.Y. Oct. 14, 2014) (subpoena may properly seek documents that are "potentially admissible"); *United States v. Carollo*, No. 10-cr-654 (HB), 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012) (subpoena is proper "if a document is arguably relevant and admissible") (quotation marks omitted); *United States v. Weisberg*, No. 08-CR-347 (NGG) (RML), 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011) (upholding subpoena of "records likely to contain helpful documents"); *Rajaratnam*, 753 F. Supp. 2d at 321 n.1, 323 ("potential evidentiary uses" satisfy "the 'admissibility' requirement"); *Nachamie*, 91 F. Supp. 2d at 564 (subpoenas may seek

11

documents "likely to be admissible at trial"); *United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995) (approving subpoena of records that were "at least potentially admissible" and that "might also form the basis for eliciting certain testimony at trial").

The government's main argument is that the subpoenas seek impeachment material. The evidence sought is admissible for several purposes other than impeachment, and regardless, the subpoenas would be valid even if they only sought impeachment material.

First, ███████████████████████████████████████████████, evidence that contradicts those claims is not just impeachment – it is affirmatively exculpatory. Thus, evidence that ████████████████████████████████████████████████████████████████████████ ██████, among other exculpatory statements, will be crucial in cross-examining ████████ about her claims and admissible as prior inconsistent statements. ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████

Evidence of ████████ motive to lie is plainly admissible and courts regularly permit Rule 17 subpoenas seeking this type of evidence. *See In re Martin Marietta Corp.*, 856 F.2d 619, 622 (4th Cir. 1988) (defendant could subpoena evidence that his employer "hung him out to dry while protecting its own interest"); *Yudong Zhu*, 2014 WL 5366107, at *5 (denying motion to quash subpoena seeking evidence of witness bias); *Carollo*, 2012 WL 1195194, at *1–3 (subpoena could seek evidence that cooperator transferred money to Swiss banks before pleading guilty, which suggested a motive "to cooperate with the government" in order to "protect assets" or "guard against additional charges for other crimes"); *Orena*, 883 F. Supp. at 869 (subpoena

12

could seek evidence that "illuminate[s] the factors which led [an individual] to become a prosecution witness and the benefits he obtained by doing so").

The argument that impeachment materials should not be sought in advance of trial makes little sense here, where it is obvious that ████████████████████████████ ████████████████████. Indeed, that is the core of the government's case. The subjects of her testimony are not "too speculative."  See ██████ Mot. at 3.  Under these circumstances, a defendant need not wait until trial to seek impeachment material.  *See, e.g., United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (permitting pretrial subpoena of impeachment evidence "where a putative key witness, whose general testimony is already known, is scheduled to testify"); *see also United States v. King*, 194 F.R.D. 569, 574–75 (E.D. Va. 2000) (same).

      **B.**      **The Subpoena is Sufficiently Specific and Not A "Fishing Expedition"**

There is no basis to quash the subpoenas on specificity grounds, either.  "[A] defendant need not have prior knowledge of specific documents to meet the specificity requirement of Rule 17(c)."  *Weisberg*, 2011 WL 1327689, at *7; *accord Rajaratnam,* 753 F. Supp. 2d at 321 n.1 ("requiring the defendant to specify precisely the documents he wants without knowing what they are" would "render[] Rule 17 a nullity").  Rather, if the defendant identifies "a group of records likely to contain helpful documents," his request is sufficiently specific, and "he cannot be said to be engaging in a 'fishing expedition.'"  *Weisberg*, 2011 WL 1327689, at *7.  This is especially so if "there is no indication" that "the production of [the] documents" identified "would require [the subpoena recipient] to allocate significant resources in order to comply."  *Yudong Zhu*, 2014 WL 5366107, at *6; *see also United States v. McClure*, No. CRIM.A. 10-28, 2010 WL 3523030, *2 (ED La Sept. 1, 2010) (specificity requirement focuses on "undue cost, burden, or delay associated with excessively broad requests"); *United States v. Holihan*, 248 F.

13

Supp. 2d 179,188 (W.D.N.Y. 2003) (subpoena was "sufficiently specified" since the recipient could "easily" locate the evidence); *cf. United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 164 (E.D.N.Y. 2005) (subpoena insufficiently specific where it "could amount to a massive search for countless documents, at great expense to [the subpoenaed company]").

Finally, these requests are plainly not a "fishing expedition," as ▮▮▮▮ characterizes them. ▮▮▮▮ at 3. The Subpoena delineates two categories, each aimed at discrete, limited timeframes, pertaining to subject matter that is directly at issue in this trial, and well within ▮▮▮▮ knowledge. And notwithstanding ▮▮▮▮ recent selective production, the requested documents have not been produced to the government. ▮▮▮▮ never represented that the memoir draft she recently produced to the government is the only version of the narrative. Indeed, her attempts to quash the Subpoena with respect to the remaining responsive documents suggest that further, more exculpatory material exists. And contrary to ▮▮▮▮ suggestion, the request for bank statements over a limited period during and leading up to her motive to lie does not target "nebulous financial wrongdoing." ▮▮▮▮ at 4. Rather, ▮▮▮▮

## CONCLUSION

For the foregoing reasons, the motion to quash should be denied.

14

Date:  April 7, 2025
      New York, NY

                Respectfully submitted,

Marc Agnifilo
Teny Geragos
Agnifilo Intrater LLP
445 Park Ave., 7th Fl.
New York, NY 10022
(646) 205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Alexandra Shapiro
Jason Driscoll
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com

/s/ Anna Estevao
Anna Estevao
Sher Tremonte LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com