UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

 -v.-

SEAN COMBS,
 a/k/a "Puff Daddy,"
 a/k/a "P. Diddy,"
 a/k/a "Diddy,"
 a/k/a "PD,"
 a/k/a "Love,"

           Defendant.

S2 24 Cr. 542 (AS)

# THE GOVERNMENT'S MOTIONS *IN LIMINE*

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Maurene Comey
Meredith Foster
Emily A. Johnson
Christy Slavik
Madison Reddick Smyser
Mitzi Steiner
Assistant United States Attorneys
 *Of Counsel*

### TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

I.      The Charges Against the Defendant ............................................................ 2

II.     The Evidence Against the Defendant ........................................................... 3

        A.      The Defendant's Abuse, Including Physical and Sexual Abuse, of Victims .... 3

        B.      The Racketeering Conspiracy ........................................................... 5

DISCUSSION ................................................................................................ 6

I.      THE COURT SHOULD ADMIT STATEMENTS BY THE DEFENDANT'S
        EMPLOYEES, AGENTS, AND CO-CONSPIRATORS UNDER RULE 801(d)(2)(D)
        AND (E) ............................................................................................ 6

        A.      Relevant Statements ...................................................................... 7

        B.      Applicable Law ............................................................................ 9

                1.      Statements Offered Not for Their Truth ................................ 9

                2.      Statements Within the Scope of Employment or Agency ......... 10

                3.      Statements of a Defendant's Co-Conspirator ......................... 12

        C.      Discussion ................................................................................ 14

II.     PRIOR CONSISTENT STATEMENTS OF VICTIMS AND WITNESSES ARE
        ADMISSIBLE .................................................................................... 21

        A.      Applicable Law .......................................................................... 22

        B.      Discussion ................................................................................ 24

                1.      Victim-1 .................................................................... 24

                2.      Victim-2 .................................................................... 24

                3.      Victim-3 .................................................................... 40

                4.      Employee-3 ................................................................ 44

III.    THE DECEMBER 2011 911 CALL BY THE DEFENDANT'S BURGLARY
        VICTIM IS ADMISSIBLE ..................................................................... 45

        A.      Relevant Facts ........................................................................... 46

        B.      Applicable Law .......................................................................... 46

                1.      Rule 803(1): Present Sense Impressions .............................. 46

       2.     Rule 803(2): Excited Utterances ................................................. 47

       3.     Rule 803(3): Then-Existing State of Mind or Condition ......................... 47

  **C.**    **Discussion** .................................................................. **48**

**IV.**  **THE COURT SHOULD PRECLUDE THE DEFENDANT FROM OFFERING HIS OWN PRIOR STATEMENTS** ......................................................... **50**

  **A.**    **Applicable Law** ............................................................ **50**

  **B.**    **Discussion** ................................................................ **53**

**V.**  **THE COURT SHOULD PRECLUDE EVIDENCE, QUESTIONS, OR ARGUMENT ABOUT THE DEFENDANT'S FAILURE TO COMMIT OTHER BAD ACTS** ..................................................................... **54**

**VI.**  **THE COURT SHOULD PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S GOOD ACTS AND OTHER PERSONAL FACTORS UNCONNECTED TO GUILT** .................................................... **58**

**VII.**  **EVIDENCE OR ARGUMENT CONCERNING ANY ALLEGATION THAT THE CHARGES AGAINST THE DEFENDANT ARE VINDICTIVE, OR OTHERWISE BROUGHT FOR IMPROPER REASONS, OR ARE NOVEL, SHOULD BE PRECLUDED** ................................................................... **60**

  **A.**    **The Prosecution's Supposed Motivation Is Irrelevant to Guilt or Innocence** **60**

  **B.**    **Evidence or Argument That Others Were Not Prosecuted for Similar Conduct Is Utterly Irrelevant** .............................................. **63**

**VIII.**  **THE COURT SHOULD PRECLUDE CROSS-EXAMINATION OF LAY AND LAW ENFORCEMENT WITNESSES WITH RESPECT TO ISSUES IRRELEVANT TO CREDIBILITY** ...................................................... **64**

  **A.**    **Applicable Law** ............................................................ **65**

  **B.**    **Discussion** ................................................................ **68**

       1.     Lay Witnesses ...................................................... 68

       2.     Law Enforcement Witnesses ........................................... 74

**IX.**  **THE COURT SHOULD PRECLUDE TESTIMONY OF DEFENSE EXPERT DR. BARDEY UNDER RULE 702** .................................................. **76**

  **A.**    **Background** ............................................................... **76**

  **B.**    **Applicable Law** ............................................................ **77**

  **C.**    **Discussion** ................................................................ **80**

1.    Dr. Bardey's Opinions Regarding Dr. Hughes' Methodology Are Unfounded.............................................................................................. 81

2.    Dr. Bardey's Opinions Are Inadmissible to Rebut Dr. Hughes' Subject Matter Testimony ..................................................................................... 85

**CONCLUSION** ............................................................................................. **88**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. Lab. Corp. of Am.*,
  760 F.3d 1322 (11th Cir. 2014)......................................................................................... 87

*Amorgianos v. Nat'l R.R. Pass. Corp.*,
  303 F.3d 256 (2d Cir. 2002)............................................................................................... 79

*Bachir v. Transoceanic Cable Ship Co.*,
  98 Civ. 4625, 2002 WL 413918 (S.D.N.Y. Mar. 15, 2002)........................................ 72

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996)................................................................................................... 80

*Bourjaily v. United States*,
  483 U.S. 171 (1987) ............................................................................................... 11, 78

*Boyce v. Weber*,
  No. 19 Civ. 3825 (JMF), 2021 WL 2821154 (S.D.N.Y. July 7, 2021)....................... 56

*Cabrera v. Jakabovitz*,
  24 F.3d 372 (2d Cir. 1994)................................................................................... 11, 20

*Chnapkova v. Koh*,
  985 F.2d 79 (2d Cir. 1993)................................................................................................ 75

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ........................................................................................ 79, 80, 81

*Delaware v. Van Arsdall*,
  475 U.S. 673 (1986)........................................................................................................... 66

*Farganis* v. *Town of Montgomery*,
  397 F. App'x 666 (2d Cir. 2010)..................................................................................... 68

*Francois v. Mazer*,
  No. 09 Civ. 3275 (KBF), 2012 WL 12549430 (S.D.N.Y. May 14, 2012).............................. 74

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)........................................................................................................... 79

*Highland Capital Mgmt.* v. *Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008)............................................................................. 81

*Hygh v. Jacobs*,
  961 F.2d 359 (2d Cir. 1992).............................................................................................. 81

*In re Reserve Fund Secs. & Derivs. Litig.*,
  No. 09 Civ. 4346 (PGG), 2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012) ......................... 10, 12

*In re United States*,
  945 F.3d 616 (2d Cir. 2019)............................................................................................. 59

*Island Intell. Prop. LLC v. Deutsche Bank AG*,
  No. 09 Civ. 2675 (KBF), 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) ................................ 80

*Jaffee v. Redmond*,
  518 U.S. 1 (1996)................................................................................................................ 75

*Kumho Tire Co., Inc. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................ 79, 80, 88

*LaSalle Bank Nat'l Ass'n v. CIBC Inc.*,
  No. 08 Civ. 8426 (WHP) (HBP), 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012) ...................... 81
*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
  209 F. Supp. 3d 612 (S.D.N.Y. 2016) ........................................................................ 81
*Marx & Co. v. Diners Club, Inc.*,
  550 F.2d 505 (2d Cir. 1977) ..................................................................................... 81
*Montejo v. Louisiana*,
  556 U.S. 778 (2009) ................................................................................................ 52
*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ............................................................................... 79, 84
*Phillips v. City of New York*,
  871 F. Supp. 2d 200 (E.D.N.Y. 2012) ...................................................................... 74
*Phoenix Assocs. III v. Stone*,
  60 F.3d 95 (2d Cir. 1995) ........................................................................................ 23
*Shannon v. United States*,
  512 U.S. 573 (1994) ................................................................................................ 59
*Shelden v. Barre Belt Granite Emp'r Union Pension Fund*,
  25 F. 3d 74 (2d Cir. 1994) ....................................................................................... 15
*Sparf & Hanson v. United States*,
  156 U.S. 51 (1895) .................................................................................................. 63
*United States v. Adeniyi*,
  2004 WL 1077963 (S.D.N.Y. May 12, 2004) ............................................................ 76
*United States v. Agostini*,
  280 F. Supp. 2d 260 (S.D.N.Y. 2003) ...................................................................... 70
*United States v. Al Kassar*,
  660 F.3d 108 (2d Cir. 2011) .................................................................................... 56
*United States v. Antoine*, No.,
  23 Cr. 305 ............................................................................................................. 71
*United States v. Armstrong*,
  517 U.S. 456 (1996) ................................................................................................ 62
*United States v. Avenatti*, No.,
  19 Cr. 374 ............................................................................................................. 60
*United States v. Battaglia*,
  No. 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ............................ 59
*United States v. Bellomo*,
  176 F.3d 580 (2d Cir. 1999) ............................................................................ 9, 14, 15
*United States v. Benedetto*,
  571 F.2d 1246 (2d Cir. 1978) .................................................................................. 58
*United States v. Berg*,
  710 F. Supp. 438 (E.D.N.Y. 1989) ........................................................................... 64
*United States v. Best*,
  219 F. 3d 192 (2d Cir. 2000) ................................................................................... 15
*United States v. Bowen*,
  511 F. Supp. 3d 441 (S.D.N.Y. 2021) ...................................................................... 73
*United States v. Brown*,
  No. 07 Cr. 874 (KAM), 2009 WL 497606 (E.D.N.Y. Feb. 26, 2009) ............................ 70

*United States v. Burrell*,
   43 F. App'x 403 (2d Cir. 2002) ........................................................................ 24

*United States v. Caracappa*,
   614 F.3d 30 (2d Cir. 2010) ............................................................................... 23

*United States v. Cardascia*,
   951 F. 2d 474 (2d Cir. 1991) ........................................................................... 48

*United States v. Castro*,
   813 F.2d 571 (2d Cir. 1987) ............................................................................ 53

*United States v. Chambers*,
   800 F. App'x 43 (2d Cir. 2020) ....................................................................... 55

*United States v. Copeland*, No.,
   21 Cr. 521 (KMK) ........................................................................................... 85

*United States v. Coplan*,
   703 F.3d 46 (2012) ........................................................................................... 21

*United States v. Crowley*,
   318 F.3d 401 (2d Cir. 2003) ............................................................................ 66

*United States v. Dawkins*,
   999 F.3d 767 (2d Cir. 2021) ............................................................... 14, 55, 57

*United States v. Demosthene*,
   334 F. Supp. 2d 378 (S.D.N.Y. 2004) ............................................................ 61

*United States v. Desena*,
   260 F.3d 150 (2d Cir. 2001) ...................................................................... 13, 18

*United States v. Diaz*,
   176 F.3d ........................................................................................................... 13

*United States v. Dinero Express, Inc.*,
   57 F. App'x 456 (2d Cir. 2002) ....................................................................... 84

*United States v. Dukagjini*,
   326 F.3d 45 (2d Cir. 2003) ............................................................................... 83

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) ................................................................................ 81

*United States v. Dupigny*, No.,
   18 Cr. 528 ........................................................................................................ 82

*United States v. Dupree*,
   706 F.3d 131 (2d Cir. 2013) .............................................................................. 9

*United States v. Ellis*,
   156 F.3d 493 (3d Cir. 1998) ....................................................................... 68, 76

*United States v. Ephron*,
   24 Cr. 418 (MMG) .......................................................................................... 71

*United States v. Estrada*,
   430 F.3d 606 (2d Cir. 2005) ............................................................................ 67

*United States v. Farhane*,
   634 F.3d 127 (2d Cir. 2011) ............................................................................ 62

*United States v. Fazio*,
   No. S2 11 Cr. 873, 2012 WL 1203943 ........................................................... 58

*United States v. Fernandez*,
   839 F.2d 639 (9th Cir. 1987) ........................................................................... 51

*United States v. Flaharty*,
  295 F.3d 182 (2d Cir. 2002) ................................................................. 13

*United States v. Flores*,
  945 F.3d ................................................................................................. 23

*United States v. Gambardella*,
  No. 10 Cr. 674 ....................................................................................... 69

*United States v. Gatto*,
  986 F.3d 104 (2d Cir. 2021) ................................................................. 64

*United States v. Gigante*,
  166 F.3d 75 (2d Cir. 1999) ................................................................... 12

*United States v. Gilliam*,
  994 F.2d 97 (2d Cir. 1993) ..................................................................... 9

*United States v. Glover*,
  101 F.3d 1183 (7th Cir. 1996) ............................................................. 53

*United States v. Goldstein*,
  No. 21 Cr. 550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023) ..................... 11

*United States v. Gupta*,
  747 F.3d 111 (2d Cir. 2014) ........................................................... 12, 13

*United States v. Harris*,
  491 F.3d 440 (D.C. Cir. 2007) ............................................................. 59

*United States v. Haynes*,
  729 F.3d 178 (2d Cir. 2013) ................................................................. 83

*United States v. Herman*,
  997 F.3d 251 (5th Cir. 2021) ............................................................... 52

*United States v. Horsford*,
  422 F. App'x 29, 2011 WL 1878747 (2d Cir. 2011) ....................... 68, 76

*United States v. Ibanez*,
  328 F. App'x 673 (2d Cir. 2009) .................................................... 47, 49

*United States v. Jeffers*,
  402 F. App'x 601 (2d Cir. 2010) ......................................................... 69

*United States v. Johnson*,
  117 F.4th 28 (2d Cir. 2024) ........................................................... 47, 48

*United States v. Johnson*,
  507 F.3d 793 (2d Cir. 2007) .......................................................... 52, 53

*United States v. Jones*,
  299 F.3d 103 (2d Cir. 2002) ...................................................... 47, 49, 50

*United States v. Kelly*,
  No. 19 Cr. 286 ....................................................................................... 85

*United States v. Kidd*,
  385 F. Supp. 3d 259 (S.D.N.Y. 2019) .................................................. 82

*United States v. Koskerides*,
  877 F.2d 1129 (2d Cir. 1989) ......................................................... 68, 76

*United States v. Lawes*,
  292 F.3d 123 (2d Cir. 2002) .......................................................... 68, 76

*United States v. Mahler*,
  579 F.2d 730 (2d Cir. 1978) ................................................................. 67

*United States v. Maldonado-Rivera*,
  922 F.2d 934 (2d Cir. 1990) .................................................................. 13, 19

*United States v. Marin*,
  669 F.2d 73 (2d Cir. 1982) ..................................................................... 51, 54

*United States v. Maxwell*,
  No. 20 Cr. 330 (AJN), 2021 WL 5283951 (S.D.N.Y. Nov. 11, 2021) ................. 82, 83, 85, 86

*United States v. McLaughlin*,
  957 F.2d 12 (1st Cir. 1992) .................................................................... 68, 76

*United States v. Muhanad Mahmoud Al-Farekh*,
  956 F.3d 99 (2d Cir. 2020) .................................................................... 66, 67

*United States v. Mulder*,
  273 F.3d 91 (2d Cir. 2001) ......................................................................... 88

*United States v. Mustafa*,
  753 F. App'x 22 (2d Cir. 2018) .................................................................... 58

*United States v. Oldbear*,
  568 F.3d 814 (10th Cir. 2009) ..................................................................... 64

*United States v. Paccione*,
  949 F.2d 1183 (2d Cir. 1991) ...................................................................... 59

*United States v. Padilla*,
  203 F.3d 156 (2d Cir. 2000) ........................................................................ 12

*United States v. Pappas*,
  963 F.2d .......................................................................................... 11, 12, 20

*United States v. Pena*,
  978 F. Supp. 2d 254 (S.D.N.Y. 2013) ............................................................ 70

*United States v. Purcell*,
  967 F.3d 159 (2d Cir. 2020) .................................................................... 23, 24

*United States v. Quinones*,
  511 F.3d 289 (2d Cir. 2007) ......................................................................... 9

*United States v. Rahme*,
  813 F.2d 31 (2d Cir. 1987) ..................................................................... 13, 18

*United States v. Ramsey*,
  No. 21 Cr. 495 (ARR), 2023 WL 2523193 (E.D.N.Y. Mar. 15, 2023) .................. 53

*United States v. Ramsey*,
  No. 23 Cr. 7211, 2024 WL 5199288 (2d Cir. Dec. 23, 2024) ............................. 53

*United States v. Randall*,
  19 Cr. 131 ...................................................................................... 82, 85

*United States v. Raniere*,
  384 F. Supp. 3d 282 (E.D.N.Y. 2019) .......................................................... 56, 84

*United States v. Rastelli*,
  870 F.2d 822 (2d Cir. 1989) ........................................................................ 13

*United States v. Ray*, No.,
  20 Cr. 110 (LJL) ............................................................................. 84, 88

*United States v. Re*,
  401 F.3d 828 (7th Cir. 2005) ...................................................................... 61

*United States v. Rea*,
  958 F.2d 1206 (2d Cir. 1992) ...................................................................... 51

*United States v. Reese,*
  933 F. Supp. 2d 579 (S.D.N.Y. 2013) .................................................... 61
*United States v. Regan,*
  103 F.3d 1072 (2d Cir. 1997) ...................................................... 61, 62
*United States v. Rioux,*
  97 F.3d 648 (2d Cir. 1996) ................................................... 10, 11, 20
*United States v. Rivera,*
  22 F.3d 430 (2d Cir. 1994) ............................................................. 18
*United States v. Rivera,*
  No. 13 Cr. 149 (KAM), 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015) ............................ 56, 58
*United States v. Robinson,*
  No. 20 Cr. 415 (KMW), 2021 WL 3003939 (S.D.N.Y. July 12, 2021) ................................... 74
*United States v. Rosado,*
  728 F.2d 89 (2d Cir. 1984) ............................................................. 61
*United States v. Rowland,*
  826 F.3d 100 (2d Cir. 2016) ............................................................. 10
*United States v. Sasso,*
  59 F.3d 341 (2d Cir. 1995) ............................................................. 67
*United States v. Scarpa,*
  913 F.2d ........................................................................... 55
*United States v. Schwartz,*
  924 F.2d 410 (2d Cir. 1991) ............................................................. 64
*United States v. Simmons,*
  923 F.2d 934 (2d Cir. 1991) ............................................................. 13
*United States v. Sorrentino,*
  72 F.3d 294 (2d Cir. 1995) ............................................................. 10
*United States v. Steele,*
  216 F. Supp. 3d 317 (S.D.N.Y. 2016) ................................................... 49, 50
*United States v. Stewart,*
  No. 03 Cr. 717 (MGC), 2004 WL 113506, at (S.D.N.Y. Jan. 26, 2004) ........................... 61, 62
*United States v. Stratton,*
  779 F.2d 820 (2d Cir. 1985) ............................................................. 9
*United States v. Stroming,*
  838 F. App'x 624 (2d Cir. 2021) ......................................................... 58
*United States v. Sun Myung Moon,*
  718 F.2d 1210 (2d Cir. 1983) ............................................................. 62
*United States v. Tarantino,*
  846 F.2d 1384 (D.C. Cir. 1988) ......................................................... 13
*United States v. Teron,*
  478 F. App'x 683 (2d Cir. 2012) ......................................................... 76
*United States v. Thai,*
  29 F.3d 785 (2d Cir. 1994) ............................................................. 13
*United States v. Thiam,*
  934 F.3d 89 (2d Cir. 2019) ............................................................. 52
*United States v. Thomas,*
  116 F.3d ......................................................................... 60, 63

*United States v. Tocco,*
   135 F.3d 116 (2d Cir. 1998) ................................................................ 47, 48
*United States v. Torres,*
   435 F. Supp. 3d 526 (S.D.N.Y. 2020) ........................................................ 51
*United States v. Torres,*
   No. 20 Cr. 608 (DLC), 2021 WL 1947503 (S.D.N.Y. May 13, 2021) .................. 82
*United States v. Urena,*
   11 Cr. 1032 (PAE), 2014 WL 1303114 (S.D.N.Y. Apr. 1, 2014) ....................... 72
*United States v. Washington,*
   705 F.2d 489 (D.C. Cir. 1983) ................................................................ 63
*United States v. Watson and Ozy Media, Inc.,*
   No. 23 Cr. 82 (EK) 2024 WL 4455773 (E.D.N.Y. May 31, 2024) ...................... 48
*United States v. Williams,*
   205 F.3d 23 (2d Cir. 2000) ............................................................. 55, 57
*United States v. Williams,*
   930 F.3d 44 (2d Cir. 2019) ................................................................... 52
*United States v. Yildiz,*
   355 F.3d 80 (2d Cir. 2004) ................................................................... 11
*United States v. Young,*
   623 F. App'x 863 (9th Cir. 2015) ........................................................... 84
*United States v. Yousef,*
   327 F.3d 56 (2d Cir. 2003) ............................................................. 52, 79
*Weaver v. Bloomberg L.P.,*
   No. 22 Civ. 8201 (PAE), 2024 WL 693166 (S.D.N.Y. Feb. 20, 2024) ................. 11

Statutes

18 U.S.C. § 1591 ................................................................................... 2
18 U.S.C. § 1591(b)(1) .......................................................................... 24
18 U.S.C. § 1962(d) ............................................................................... 2
18 U.S.C. § 2421(a) ............................................................................... 2

Rules

F.R.E. 801(d)(2)(A) ......................................................................... 19, 51
F.R.E. 801(d)(2)(D) ......................................................................... 10, 19
Fed. R. Crim. P. 12(b)(3)(A)(iv) .............................................................. 61
Fed. R. Crim. P. 611(b) ........................................................................ 66
Fed. R. Evid. 104(a) ............................................................................ 12
Fed. R. Evid. 106 ............................................................................... 52
Fed. R. Evid. 403 ............................................................................... 67
Fed. R. Evid. 404(a)(2)(A) & 405(a) .......................................................... 58
Fed. R. Evid. 608(b)(1) ........................................................................ 67
Fed. R. Evid. 609(a)(1) ........................................................................ 67
Fed. R. Evid. 609(a)(2) ........................................................................ 67
Fed. R. Evid. 609(b) ........................................................................... 67
Fed. R. Evid. 609(b)(1) ........................................................................ 73

Fed. R. Evid. 801(a)................................................................................ 14
Fed. R. Evid. 801(c)................................................................................. 9
Fed. R. Evid. 801(d)(1)(B)..................................................................... 22
Fed. R. Evid. 803(1).......................................................................... 47, 49
Fed. R. Evid. 803(2)............................................................................... 47
Fed. R. Evid. 803(3)......................................................................... 15, 48

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its nine motions *in limine* in connection with the trial scheduled to begin in *United States v. Sean Combs*, S2 24 Cr. 542 (AS), on May 5, 2025.[1]

The Government moves to admit the following evidence:

(1)    Statements made by the defendant's employees and agents, under Federal Rule of Evidence 801(d)(2)(D)-(E);

(2)    Prior consistent statements of victims and witnesses, under Federal Rule of Evidence 801(d)(1)(B); and

(3)    A December 2011 911 call concerning the defendant's crimes as a present sense impression and/or excited utterance, under Federal Rule of Evidence 803.

In addition, the Government moves to preclude the following evidence:

(4)    Evidence of the defendant's own prior statements;

(5)    Evidence, questions, or argument about the defendant's failure to commit other bad acts;

(6)    Evidence, questions, or arguments concerning the defendant's good acts and other personal factors unconnected to guilt;

(7)    Evidence, questions, or arguments regarding the Government's motivations in investigating and prosecuting the defendant;

---

[1] The Government has included herein all *in limine* motions that are currently ripe for the Court's review.  In order to streamline its briefing, the Government has included nine motions *in limine* within this single memorandum of law, which cumulatively has a word count well below nine times the word limit contained in the Court's Individual Rules.  If any additional issues arise in the course of trial preparation, the Government will supplement these motions promptly.

(8)     Cross-examination of lay and law enforcement witnesses with respect to issues irrelevant to credibility; and

(9)     The testimony of defense expert Sasha Bardey, M.D.

## BACKGROUND

### I.   The Charges Against the Defendant

On March 6, 2024, the grand jury returned Superseding Indictment S2 24 Cr. 542 charging the defendant in three counts: Count One charges the defendant with participating in a racketeering conspiracy between in or about 2004 and 2024, in violation of 18 U.S.C. § 1962(d).  (Dkt. No. 169 ("Superseding Indictment") ¶¶ 1-15). Among other things, Count One alleges that the defendant coerced three female victims, identified in the Superseding Indictment as Victim-1, Victim- 2, and Victim-3, to engage in commercial sex acts.  (*Id.* ¶ 12(a)).  Count Two charges the defendant with sex trafficking Victim-1 by force, fraud, and coercion between in or about 2009 and 2018, in violation of 18 U.S.C. § 1591.  (*Id.* ¶ 16). Count Three charges the defendant with transporting multiple individuals, including the same sex trafficking victims identified in Count One (Victim-1, Victim-2, and Victim-3), and male commercial sex workers, interstate for purposes of engaging in prostitution between in or about 2009 and 2024, in violation of 18 U.S.C. § 2421(a).  (*Id.* ¶ 17). As detailed in the Superseding Indictment, these charges arise from the defendant's decades' long pattern of criminal conduct involving the abuse and sexual exploitation of multiple victims.[2]

---

[2] An overview of the criminal conduct and the charges in the Indictment were set forth in the Government's prior briefing, and in the Government's Enterprise letters, which were submitted to the Court under seal on March 26, 2025.  Individuals referenced in the Enterprise Letters refer to the same persons herein, with the exception of Victim-4, who is referred to as "Employee-1" in the Enterprise Letters.

## II. The Evidence Against the Defendant

The Government expects that its evidence at trial will include, among other things, witness and victim testimony, law enforcement testimony, expert testimony, financial records, travel records, physical evidence seized from the defendant's properties—including firearms, narcotics, and items for use during Freak Offs—and electronically-stored communications from the devices of the defendant and others. The Government further expects that the evidence at trial will prove the following, in substance and in part and as relevant to the motions made herein.

### A. The Defendant's Abuse, Including Physical and Sexual Abuse, of Victims

Over the course of more than a decade, the defendant subjected multiple victims to sexual, physical, emotional, and verbal abuse. With respect to Victim-1, Victim-2, and Victim-3, the defendant used those forms of abuse, along with threats, fraud, and coercion, to cause them to engage in commercial sex acts. In particular, the defendant forced and coerced them to engage in sex acts with male commercial sex workers, which the defendant sometimes referred to as "Freak Offs." Freak Offs were multi-day sex performances that the defendant arranged, directed, masturbated during, and often electronically recorded. The defendant exercised control over the victims through, among other things, physical violence, promises of career and financial opportunities, granting and threatening to withhold financial support, and by other coercive means, including tracking their whereabouts, dictating the victims' appearance, monitoring their medical records, controlling their housing, and supplying them with controlled substances. The Government expects the evidence to show the following with respect to Victim-1, Victim-2, and Victim-3, as well as other victims:

███████████████████████████████████████████████

███████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Other Victims: The defendant's abuse extended to numerous other individuals, including employees and witnesses to his crimes. In particular, the defendant forced and coerced certain of his employees, including Victim-4 (collectively, with Victim-1, Victim-2, and Victim-3, the "Victims"), Employee-2, and Employee-3, to work long hours with little pay by subjecting them to physical, emotional, and verbal abuse, and other acts of violence, and threats of the same. The

defendant also forced and coerced Victim-4 to engage in sex acts on multiple occasions.  In addition, the defendant assaulted witnesses to his abuse on multiple occasions, including by shoving and striking those individuals and, on one occasion, dangling a female victim over a balcony.  Further, the defendant engaged in multiple acts of kidnapping, including one instance of kidnapping during which he carried and displayed a firearm to a female victim.

### B.  The Racketeering Conspiracy

To commit these acts, the defendant relied on a racketeering conspiracy (the "Combs Enterprise") consisting of corporate entities within the defendant's businesses, and individuals employed by and associated with the defendant's businesses.  Between at least in or about 2004 and 2024, the Combs Enterprise facilitated, enabled, and covered up numerous illegal acts, including acts of violence, threats of violence, acts of coercion, and emotional and verbal abuse.  Specifically, these acts included instances of sex trafficking, forced labor, transportation for prostitution, coercion and enticement, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

At all times, the defendant led and exercised control over the Combs Enterprise, including the entities within the defendant's businesses and the individuals employed by and associated with the defendant's businesses, such as the defendant's chiefs of staff, personal assistants, security staff, household staff, and employees within various departments such as finance and human resources.  Throughout the charged period, the defendant used funds from the corporate entities to pay both the defendant's business and personal expenses, including the salaries of personal staff and personal travel expenses, and also to fund aspects of criminal activity, including, among other things, travel of victims and male commercial sex workers for illegal sex acts.

Throughout the duration of the charged racketeering conspiracy, members and associates of the Combs Enterprise targeted individuals the defendant viewed as a threat and facilitated, enabled, and covered up illegal activity. That illegal activity included assaults of multiple victims, ███████████████████████████████████████████; the sexual exploitation of multiple female victims, including, but not limited to, Victim-1, Victim-2, Victim-3, and Victim-4; multiple kidnappings of a female victim; the arson of property belonging to a rival of the defendant; and other violent acts. Members and associates of the Combs Enterprise also procured illegal narcotics for the defendant, which he then distributed to his victims and others. Throughout this period, the defendant demanded loyalty from his victims as well as all members and associates of the Combs Enterprise, which he enforced through physical violence and threats, including threats of violence and of serious economic and/or reputational harm.

## DISCUSSION

## I.   THE COURT SHOULD ADMIT STATEMENTS BY THE DEFENDANT'S EMPLOYEES, AGENTS, AND CO-CONSPIRATORS UNDER RULE 801(d)(2)(D) AND (E)

At trial, the Government intends to introduce—including through witness testimony and documentary evidence—numerous statements made by the defendant's employees and agents, many of whom were also members of the racketeering conspiracy charged in the Indictment. As an initial matter, many such statements will not be offered for their truth, and therefore are not hearsay. But to the extent employees' statements are offered for their truth, they are admissible under Federal Rule of Evidence 801(d)(2)(D): these statements are being offered against the defendant, were made by his employees, during the course of their employment and were about topics within the scope of their employment. The rules of evidence plainly allow for such statements to be admitted for their truth. Likewise, after certain individuals ceased formal

employment by Combs, they continued to act as his agents at his direction—making their statements admissible under the same provision.  Finally, because several of these individuals were also co-conspirators within the racketeering conspiracy whose statements were in furtherance of that conspiracy, their statements are also admissible for their truth as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E).

### A.  Relevant Statements

At trial, the Government anticipates introducing multiple statements made by the defendant's employees, including some who were members and associates of the Combs Enterprise.  Given the number of employees who worked for the Enterprise and the large number of racketeering acts committed throughout the twenty-year period charged in the Indictment, the Government has not identified an exhaustive list of every statement it may seek to offer under Rules 801(d)(2)(D) and (E).  In an effort to preview for the Court and the defense the types of statements that the Government anticipates offering, however, the Government has identified a non-exhaustive list of examples.

Specifically, the Government expects to offer statements made by the following employees who worked for the defendant during the charged conspiracy:

- The defendant's high-ranking employees, ███████████████████ ████████████████████████████████████████████ ████████████████████████████;

- The defendant's security personnel, ████████████████████ ████████████████████████████████████████████ ████ ████ ████ ████ ████ ████ ████ ████ ████ ████████ ████ ████ ████ ████ ████ ████ ████ ████ ████████████████;

- Senior leadership of the defendant's corporate entities, ██████████████ ████████████████████████████; and

- The defendant's various personal assistants who, among other things, set up for and cleaned up after Freak Offs and assisted with the procurement of narcotics.

These statements include, but are not limited to the following:



███████████████████████████████████████████
███████████████████████████████████████████
███████████ .

## B. Applicable Law

As a general matter, any out-of-court statement offered for the truth of the matter asserted constitutes hearsay, and is inadmissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise.  *See* Fed. R. Evid. 801(c), 802. The Government expects to offer various statements that do *not* constitute hearsay.

### 1. Statements Offered Not for Their Truth

Rule 801(c)(2) specifies that statements constitute hearsay only if offered "to prove the truth of the matter asserted in the statement."[3]  As such, statements not offered for their truth do not constitute hearsay, even where no exclusion or exception exists in the rules.  *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013).   Such statements include those "offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein."  *United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999); *see also United States v. Stratton*, 779 F.2d 820, 830 (2d Cir. 1985) ("threats are verbal acts" rather than hearsay).

Consistent with that definitional understanding, out-of-court statements may be offered for a variety of non-hearsay purposes, including for their effect on the listener or to help the jury understand the future actions of someone acting upon the out-of-court statement.  *See United States v. Quinones*, 511 F.3d 289, 312 (2d Cir. 2007).  That rule applies even where the statement conveys assertions that implicate a defendant in criminal activity.  *See, e.g.*, *United States v. Gilliam*, 994 F.2d 97, 103 (2d Cir. 1993) ("The district court in this case specifically admitted the statement by

---

[3] Unless otherwise noted, all citations omit internal citations, quotations, and alterations.

the anonymous caller to establish the reasons for the return of the officers to the scene, not to prove the truth of the caller's reference to the second gun.").

Statements by out-of-court declarants may also be offered to give context to other evidence, such as by establishing what various parties knew at relevant times. *See United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016) (admitting out-of-court statements by a non-defendant to two witnesses, because those statements were offered "to provide context for what [the witnesses] knew during their subsequent meeting with [the defendant]"); *United States v. Sorrentino*, 72 F.3d 294, 298 (2d Cir. 1995) (overruled on other grounds) (confidential informant's statements were not hearsay where offered not "to prove the truth of the matters asserted but only to render what [the defendant] said in these conversations intelligible"). In these circumstances, courts generally provide limiting instructions directing the jury not to consider the statement for its truth.

### 2. Statements Within the Scope of Employment or Agency

Rule 801(d)(2)(D) provides in relevant part that "[a] statement is not hearsay if . . . [t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." "To show that the statement is not hearsay, the government must show: (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996). An agency relationship may include employees of entities controlled by a defendant. *See In re Reserve Fund Secs. & Derivs. Litig.*, No. 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7 (S.D.N.Y. Oct. 3, 2012) ("Where an individual defendant controls the entity that employs the declarant, and is the declarant's ultimate supervisor, the employee is an agent of the defendant for purposes of F.R.E. 801(d)(2)(D), and his statements are admissible against that individual defendant.").

This same provision covers individuals who are not formally employed by, but who are directly responsible to, the defendant. An agency relationship is established by the following elements: (1) "the manifestation by the principal that the agent shall act for him," (2) "the agent's acceptance of the undertaking," and (3) "the understanding of the parties that the principal is to be in control of the undertaking." *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994), *superseded by statute on other grounds*. In the context of Rule 801(d)(2)(D) analysis, courts have found the agency relationship when the facts and circumstances show the declarant depended on the defendant for instructions. *See United States v. Rioux*, 97 F.3d 648, 660-61 (2d Cir. 1996) (finding the fact that "these supervisors were answerable and directly responsible to [the defendant] . . . is enough to satisfy the first element of the test under 801(d)(2)(D)."); *United States v. Goldstein*, No. 21 Cr. 550 (DC), 2023 WL 3662971, at *7 (E.D.N.Y. May 25, 2023) (noting that an agency relationship may be satisfied "by facts demonstrating the declarant depended on the defendant for her position and job instructions").

The Second Circuit has encouraged "[l]iberal admissibility of this sort of proof" both because "an employee is usually the person best informed about certain acts committed in the course of his employment," and because "while still employed an employee is unlikely to make damaging statements about his employer, unless those statements are true." *Pappas*, 963 F.2d at 537; *see also, e.g.*, *United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004) ("[F]ew principals employ agents for the purpose of making damaging statements."); *Weaver v. Bloomberg L.P.*, No. 22 Civ. 8201 (PAE), 2024 WL 693166, at *11 (S.D.N.Y. Feb. 20, 2024) ("That the statements are detrimental, not helpful, to [the employer's] interests does not impede their admission under Rule 801(d)(2)(D)."). The Second Circuit has emphasized that because:

> Admissions against a party's interest are received into evidence without many of the technical prerequisites of other evidentiary rules—such as, for example,

trustworthiness and personal knowledge—admissibility under this rule should be granted freely.

*Pappas*, 963 F.2d *at* 537.  Thus, even statements that could be characterized as an employee's "private musings" have been admitted when the employee is "speaking as to a matter that matches the subject matter of her job description."  *In re Reserve Fund Secs. & Derivs. Litig.*, 2012 WL 12354233, at *7.

### 3. Statements of a Defendant's Co-Conspirator

Rule 801(d)(2)(E) provides that a statement is not hearsay if "the statement is offered against an opposing party and . . . was made by the party's co-conspirator during and in furtherance of the conspiracy."  To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: (1) that a conspiracy that included the defendant and the declarant existed; and (2) that "the statement was made during the course of, and in furtherance of, that conspiracy."  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).  "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself."  *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014).

When determining whether the predicate conspiracy has been established, the district court is not bound by the Rules of Evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy."  *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000).  The conspiracy in furtherance of which the statement was made does not have to be the conspiracy charged in the indictment.  *See Gigante*, 166 F.3d at 82 ("The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment.").

To be "in furtherance" of a conspiracy, the statement must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy. Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Thus, statements are in furtherance of the conspiracy if they, for example: (1) inform or provide an update as to the "progress or status of the conspiracy," *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158; (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *Diaz*, 176 F.3d at 87; or (7) inform a co-conspirator of "the identity and activities of his coconspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy." *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994); *see also Desena*, 260 F.3d at 158; *Maldonado-Rivera*, 922 F.2d at 958; *United States v. Flaharty*, 295 F.3d 182, 199-200 (2d Cir. 2002). Further, "so long as a coconspirator statement was in furtherance of the conspiracy, there is no requirement that it have been in furtherance of the interests of the defendant himself or of any particular coconspirator." *Gupta*, 747 F.3d at 124.

## C. Discussion

At trial, the Government intends to introduce, through witness testimony and documentary evidence (including email, text messages, and audio/video recordings), the following categories of statements that are not hearsay:  (i) commands, directives, threats, and other statements that are not offered for their truth; (ii) statements of employees or agents on a matter within their relationship while it existed; and (iii) statements by co-conspirators made during and in furtherance of the conspiracy.  *See* Fed. R. Evid. 801(a), (c)(2), (d)(2)(D) and (E).

### 1.  Statements Not Offered for Their Truth

The Government expects to offer certain statements that do not constitute hearsay because they are not admitted for their truth.  ███████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████.  Because ██████████ was not asserting anything in that statement, it falls outside the definition of a hearsay "statement."  *See* Fed. R. Evid. 801(a).  *See United States v. Bellomo*, 176 F.3d 580, 586 (1999) ("Statements offered as evidence of commands . . . rather than for the truth of the matter asserted therein, are not hearsay"); *see also United States v. Dawkins*, 999 F.3d 767, 789 (2d Cir. 2021) ("The statement 'do not accept money from these people' was an order, *i.e.*, an imperative rather than a declarative statement, and it was offered not for its truth, but for the fact it was said.  It was therefore not hearsay.").  Similarly, ██████████ ██████████████ ██████████ seeking to push a false narrative is definitionally not offered for its truth, since ████████████ lied repeatedly during that conversation and sought to have ██████████████ adopt those lies.

Additionally, threats to harm victims are admissible to prove the speaker's state of mind and intent to coerce a victim to take a particular action, as well as to prove the impact of those threats on the victim receiving them, who felt coerced as a result.  These and other statements

made by employees and other witnesses are not offered for their truth, but rather for another permissible purpose such as the effect on or understanding of the listener. Accordingly, these statements are not hearsay and are admissible. *See Bellomo*, 176 F.3d at 586-87 (affirming admission of statements by witness as to what the witness "heard and . . . saw" and that "bore on [the witness's] state of mind").[4]

## 2. Statements by Employees and Agents of the Defendant

The Government also expects to introduce many statements of the defendant's employees and/or agents made within the scope of, and during the course of, their relationship with the defendant. Those statements will be offered as exhibits (including text messages sent by the defendant's employees and recordings of the defendant's employees), as well as through the testimony of witnesses (who will testify to conversations they had with one or more of the defendant's employees). These statements cover a variety of different topics, but they all center around the employees' core job responsibilities of serving the defendant. To the extent that any of these statements are offered for their truth, the statements are non-hearsay under Federal Rule of Evidence 801(d)(2)(D).

All of the employee statements the Government seeks to offer fit within the hearsay exclusion of Rule 801(d)(2)(D). Each statement is being offered against the defendant, was made

---

[4] In addition, statements that bear on the *declarant's* state of mind are separately admissible under the hearsay exception in Federal Rule of Evidence 803(3), which applies to a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3); *see United States v. Best*, 219 F. 3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds."); *Shelden v. Barre Belt Granite Emp'r Union Pension Fund*, 25 F. 3d 74, 79 (2d Cir. 1994) ("[U]nder a long established exception to the hearsay rule, the existence of the plan or intention [to do a given act] may be proven by evidence of 'the person's *own statements* as to its existence.'") (emphasis in original).

by an employee/agent while the employee was employed by the defendant,[5] and was within the scope of that employee relationship. For example, ███████████████████████████

██████████████████████████████████████████████████████████████████████

██. Their discussions about those tasks thus fall within the scope of their employment as the defendant's assistants. Similarly, ███████ job as a member of the defendant's security detail included protecting the defendant physically and reputationally. His messages to ███████ about

██████████████████████████████████████████████████████████████████████

███████ fall within those job responsibilities. Another member of the defendant's security detail, ███████ was often responsible for diffusing the defendant's violence and repercussions of his violence, as well as protecting the defendant's property. ███████ statements to Employee-3 about

██████████████████████████████████████████████████████████████████████

███████, part of his broad responsibilities to handle the effects of the defendant's violence. And his

██████████████████████████████████████████████████████████████████████

███████████████████████████ was made in furtherance of his duties to protect the defendant's property. Finally, ██████ was a senior executive at Bad Boy, responsible for advancing the careers of performing artists, and in that capacity, ██████████████████████████████████████████

███████ Thus, ██████████████████████████████████████████████ —

---

[5] All of these witnesses remained formal employees when they made these statements, with the exception of ██████ who continued to assist the defendant even after his employment ended in approximately 2018. However, it is clear that ██████ continued to act as an agent of the defendant and that his statements that will be offered were made within the scope of that relationship. Moreover, as discussed above, his statements to Victim-4 in 2023 are not offered for their truth. Finally, as discussed below, ██████ statements are separately admissible as co-conspirator statements because ██████ continued his membership in the racketeering conspiracy with the defendant even after his employment ended.

and the limitations imposed on him by the defendant—were within the scope of his employment, which involved ████████████████████████

### 3. Statements of the Defendant's Co-Conspirators

Many of the examples provided above are also co-conspirator statements, admissible against the defendant under Rule 801(d)(2)(E) of the Federal Rules of Evidence.

At the time of the statements, the declarants were members or associates of the Combs Enterprise who were charged with accomplishing the purposes of the Enterprise: fulfilling the defendant's personal desires, covering up the defendant's crimes, and above all else, preserving, protecting, and promoting the power and reputation of the defendant and the Combs Enterprise. With respect to the individuals whose statements are identified above, the Government expects to demonstrate at trial that ████████████████████, among other employees, were all co-conspirators who agreed to assist in at least some of the racketeering activity outlined in the Indictment. For example, members of the defendant's security detail, including ████████████████, often participated in acts of violence at the behest of the defendant and/or played a direct role in handling the aftermath of the defendant's violence. Many other members and associates of the Combs Enterprise, including ████████████████, were aware of the defendant's multiple assaults of female victims. They facilitated the cover up of those assaults by helping the defendant bribe witnesses, arranging treatment for the victims, secreting the victims away from the public until their injuries healed, and contacting victims in the aftermath of the defendant's assaults, among other things. The defendant also enlisted the assistance of a multitude of staff members and assistants, including ████████ to secure drugs for the defendant's personal use and to supply to the Victims, both during Freak Offs and at other times.

The statements outlined above, and others like them, were made in furtherance of the racketeering conspiracy charged in Count One.  Most obviously, many were made, among other reasons, to keep members of the Combs Enterprise informed about the activities of its members and its victims and about the current status of the conspiracy.  *Rahme*, 813 F.2d at 36 (statement admissible where its purpose is "inform[ing] [a coconspirator] of the current status of the conspiracy"); *see also Desena*, 260 F.3d at 158 (statement admissible where it provides "an update as to the status of . . . the conspiracy").  For example, ██████████████████████ ████████████████████████████████████████ was intended to keep ██████ informed of the defendant's status in the middle of their efforts to bribe witnesses and cover up the assault. ██████████████████████████████ was similarly intended to keep other employees informed so that the defendant's staff could assist in protecting the defendant from embarrassment and criminal exposure.

These statements were also made to advance the purposes of the Combs Enterprise and its pattern of racketeering activity.  *See United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994) (statements admissible if "designed to promote or facilitate achievement of the goals of that conspiracy").  For example, ██████████████████████████ ████████████████████████████████████████ ████████████████ were in furtherance of the conspiracy's efforts to bribe witnesses not to report the assault to law enforcement.  The messages between ██████████████████ were similarly in furtherance of the conspiracy's goal of protecting the defendant from criminal exposure.  When ██████████████████████ ██████████████████████████████, the purpose was both to ensure that the defendant's needs were met—after all, ██████████████████████████████

18

██████████████████████████████████████—and also to ensure that the defendant's staff

(████████████████████████████) circled around the defendant to protect him from

further negative publicity and/or law enforcement attention.[6] And with respect to the multitude of

communications between members and associates of the Combs Enterprise related to the

defendant's participation in Freak Offs, the statements clearly "prompt the listener . . . to respond

in a way that promotes or facilitates the carrying out of a criminal activity." *Maldonado-Rivera*,

922 F.2d at 958.

### 4. Statements by Victim Acting at the Direction of the Defendant are Admissible

The Government also expects to introduce statements by ████████████████████

██████████████████████ made for the purpose of arranging Freak Offs at the direction of the

defendant. Certain of these statements are admissible because they are not offered for their truth,

but for other proper purposes, such as to evince future intent, the state of mind of the witness, or

the effect on the statement's recipient. These statements are also admissible pursuant to Federal

Rule of Evidence 801(d)(2)(D), as they were made by the defendant's "agent . . . on a matter within

the scope of that relationship while it existed." Fed. R. Evid. 801(d)(2)(D).[7] Specifically, on

dozens of occasions throughout their respective sexual relationships with the defendant, ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. The Government



---

[6] This latter purpose was particularly important given that ████████████████████████
████████████████████████.

[7] The Government will also introduce evidence of the ████████████████████████████
████████████████████. These statements are unquestionably admissible as an opposing party
statement. *See* F.R.E. 801(d)(2)(A).

expects that ████████████████████████████████████████████

██████████████████████████████████████.

The victims' statements in these exchanges are admissible as statements of the defendant's

agents.  ████████████████████████████████ were acting upon the instruction of

the defendant and during and within the scope of their relationship with him.  Indeed, the testimony

of ████████████████████████████████████████████

██████████████████████████████████████████████.  *Rioux*, 97

F.3d at 660-61.  The Government expects that ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████.  *Cabrera*, 24 F.3d at 386.  For instance,

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████.  Thus, the communications by ████████

████████████████████████████ clearly "relat[ed] to a matter within the scope of the

agency."  *Pappas*, 963 F.2d at 537.  These facts plainly satisfy the requirements of Rule

801(d)(2)(D), and the statements should therefore be admitted.  *United States v. Vilar*, 729 F.3d

62, 87 (2d Cir. 2013) (affirming lower court ruling admitting statements under Rule 801(d)(2)(D)

after finding, by a preponderance of the evidence, that declarant was an agent of the defendants

and that challenged statements were made within the scope of that relationship).

In addition, many of the messages between ████████████████████████

are admissible for non-hearsay purposes such as statements of future intent or the state of mind of

the witness.  For example, ███████████████████████████████████████

████████████████████████████████████  ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████).   As discussed above, statements evincing future intent and

directives are not hearsay and are therefore properly admitted.  The responses of ███████████

████████████ in these conversations are likewise admissible where they are also not offered for their

truth, but for other proper purposes, such as to show the effect on the victim who received the

message ████████████████████████████████████████████████████████████

████████████████████████████████[8]

## II. PRIOR CONSISTENT STATEMENTS OF VICTIMS AND WITNESSES ARE ADMISSIBLE

The Court should admit certain prior consistent statements and/or writings made by victims

and other witnesses under Federal Rule of Evidence 801(d)(1)(B).[9]  Many of these statements are

admissible for non-hearsay purposes, such as to show a victim's state of mind and to provide

context to the defendant's own statements.  In addition, many of these statements should also be

admitted under the hearsay exception for prior consistent statements pursuant to Federal Rule of

Evidence 801(d)(1)(B).   The Government expects that several victims will testify about the

---

[8] Furthermore, as explained in more detail below, many of the statements made by ████████

██████████████████████—are also admissible under the so-called "rule of completeness," Federal
Rule of Evidence 106.  *See United States v. Coplan*, 703 F.3d 46, 85 (2012) (explaining that under
the "rule of completeness," "even though a statement may be hearsay, an omitted portion of the
statement must be placed in evidence if necessary to explain the admitted portion, to place the
admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial
understanding of the admitted portion").

[9] Many of these statements are also admissible for other non-hearsay purposes, such as to show a
victim's state of mind and to provide context to the defendant's own statements, as described
above.

defendant's physical, emotional, and psychological abuse of them on multiple occasions spanning many years. The defendant, who has already previewed his defense that the victims are lying about the nature of their sexual encounters with the defendant and the extent of the defendant's abuse, is sure to attack the credibility of these victims as a central part of his defense at trial, including in opening statements. Once the defendant attacks any witness's credibility on any point in either opening statements or through cross-examination, the witness's prior statements that are consistent with the witness's testimony, including prior statements describing the defendant's abuse, must be admitted under Rule 801(d)(1)(B).

### A. Applicable Law

As noted above, out-of-court statements may be admitted at trial for non-hearsay purposes (*i.e.*, not for their truth), such as to provide context to a defendant's statements during a conversation or message exchange, and to show the declarant's state of mind. In addition, where a declarant testifies and is subject to cross-examination, a declarant-witness's prior statement is not considered hearsay when it "is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B).

The Advisory Committee amended this Rule in 2014 to expand the reasons for which prior consistent statements may be offered. *See* Fed. R. Evid. 801(d)(1)(B)(ii) (effective Dec. 1, 2014). Before the amendment, substantive use of prior consistent statements that were probative to rehabilitate the declarant's credibility were only admissible to rebut charges of recent fabrication, improper influence, or improper motive. *See* Fed. R. Evid. 801(d)(1)(B) (Apr. 26, 2011, eff. Dec. 1, 2011). Thus, as amended in 2014, Rule 801(d)(1)(B)(ii) "expands the purposes for which prior

consistent statements may be offered." *United States v. Purcell*, 967 F.3d 159, 196 (2d Cir. 2020). Notably, "the prior consistent statement need not be proffered through the testimony of the declarant but may be proffered through any witness who has firsthand knowledge of the statement." *United States v. Caracappa*, 614 F.3d 30, 39 (2d Cir. 2010) (affirming admission of prior consistent statements under Rule 801(d)(1)(B) to rebut defense insinuation that witness had testified from improper motive).

Where a prior consistent statement is offered to rebut an allegation of recent fabrication under Rule 801(d)(1)(B)(i), a proponent must establish by a preponderance of the evidence three elements: "(1) that the prior consistent statement is consistent with the witness's in-court testimony; (2) that the prior consistent statement is being offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive; and (3) that the prior consistent statement was made prior to the time that the supposed motive to falsify arose." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 103 (2d Cir. 1995). While there is no established test to determine the admissibility of prior consistent statements under Rule 801(d)(1)(B)(ii), the Second Circuit has upheld district court findings that prior consistent statements are admissible non-hearsay under subsection (ii) when introduced to rebut "defendants' attacks on [the declarant's] credibility and memory," *Flores*, 945 F.3d at 706, or "to rebut [defense counsel's] charge of inconsistency and to rehabilitate [the declarant's] credibility by placing the alleged discrepancies in context." *Purcell*, 967 F.3d at 197.

Rule 801(d)(1) applies to a witness who is subject to cross-examination and "does not restrict admissibility to statements of one who has already been cross-examined." *Flores*, 945 F.3d at 706 (upholding trial court's admission of prior consistent statements where "the government sought permission to introduce the notes and reports of [the declarant] during his

direct testimony" and "it was clear that he would be subject to cross-examination"); *Purcell*, 967 F.3d at 197 (upholding admission of a witness's testimony recounting the declarant's statements to rebut charge of declarant's inconsistency); *United States v. Burrell*, 43 F. App'x 403, 406 (2d Cir. 2002) (allowing prior consistent statements of cooperating witness because the defendant "argued in her opening statement that the cooperating witnesses had a motive to lie").

### B. Discussion

#### 1. Victim-1



---

[10] Testimony and other evidence of the defendant's repeated physical abuse of Victim-1 is directly relevant to proving the force and coercion that caused Victim-1 to engage in commercial sext acts, which is an essential element of sex trafficking. *See* 18 U.S.C. § 1591(b)(1), (e)(2); *see also, e.g.*, *Purcell*, No. 18 Cr. 81 (DLC), Trial Tr. at 43, 378, 434, 411 (Oct. 2018) (in sex trafficking trial, admitting evidence that the defendant choked a trafficking victim as evidence of force, fraud, or coercion); *id.*, Trial Tr. 58 (admitting evidence that defendant hit and slapped women who engaged in prostitution for his profit as evidence of force, fraud, or coercion); *id.*, Trial Tr. at 83 (admitting evidence that trafficking victim believed defendant may have harmed her if she left).

Much of Victim-1's testimony about her abuse is directly corroborated by contemporaneous text messages with the defendant or discussions with other witnesses.[11]  The Government intends to offer many of those messages at trial, several of which are admissible to provide context to the defendant's own statements (which are admissible as opposing-party statements under Rule 801(d)(2)(A)) during his exchanges with Victim-1, and certain of which are admissible to prove Victim-1's then-existing mental, emotional, and/or physical condition under Rule 803(3).

This corroborative evidence is also admissible as prior consistent statements under Rule 801(d)(1)(B).  The Government expects that the defendant will attack Victim-1's credibility broadly at trial.  Indeed, he has done so from the very first filings and court proceedings in this case, claiming that Victim-1 recently fabricated her allegations against the defendant for money.  (*See* Dkt. No. 13 (Sept. 18, 2024 Bail Letter) at 12 (arguing that Victim-1 attempted to extort the defendant by threatening to publish a book and filing a lawsuit against him "not because he raped or sex trafficked anyone, but because of the disastrous consequences a lawsuit of this nature would have on him and his business interests" and claiming that Victim-1 and the defendant were in a "long-term loving relationship that became strained by mutual infidelity and jealousy" but did not involve a lack of consent, coercion, sex trafficking, or "sex crime of any sort"); *accord* Sept. 17, 2024 Bail Hearing Tr. at 36-38; Sept. 18, 2024 Bail Appeal Tr. at 48-49; Nov. 22, 2024 Bail Hearing Tr. at 25-26).  Accordingly, the Court should admit Victim-1's prior consistent statements, including statements about the Freak Offs, the defendant's threats related to Freak Offs, the

---

[11] Throughout this motion, the Government provides the types of prior consistent statements the Government anticipates offering at trial. Given the volume of material, these examples are not exhaustive, but are meant to provide the Court and the defendant a sense of the types of prior consistent statements the Government intends to offer.

defendant's physical violence towards Victim-1 and others, Victim-1's drug use, and the defendant's control over her livelihood, examples of which are described in more detail below.

*First*, the Court should admit Victim-1's text messages that discuss Freak Offs. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████  ████████████████████  This text message confirms Victim-1's anticipated testimony ████████████████████████████████████████████████ ████████████████████████████████████████. That text is highly relevant because it corroborates Victim-1's expected testimony ████████████████████████████, and provides direct evidence that the defendant used violence to force and coerce Victim-1 to engage in Freak Offs. That connection between the defendant's use of force and the commercial sex is powerful proof of the sex trafficking charge, and rebuts the defendant's argument that "[t]he sex and the violence" between the defendant and Victim-1 "were totally separate and motivated by totally different things." (Bail Appeal Tr. at 48). ████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████  These statements are consistent with Victim-1's expected testimony ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

In addition to text messages, a witness who was close friends with Victim-1 during her relationship with the defendant ("Friend-1") is expected to testify ████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████ These statements should also be admitted as consistent with Victim-1's testimony ███████████████████████████████████████.

*Second*, the Government expects Victim-1 ████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████████████████████████████████ ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████ █████████

████████ Both of these messages are admissible as Victim-1's prior consistent statements because they mirror Victim-1's anticipated testimony ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████.

████████████████████████████████    ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ This prior statement is consistent with Victim-1's anticipated testimony ████

████████████████████████████████████

*Third*, Victim-1 is expected to testify ████████████████████████████

████████████████████, and the Court should admit Victim-1's text messages and other statements describing that abuse. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ This message is consistent with Victim-1's expected testimony ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████. It is thus admissible in its entirety as a prior consistent statement.



The defendant's repeated physical abuse of Victim-1 was one of numerous ways that he controlled her and led her to believe that she had no choice but to do his bidding, including with respect to Freak Offs. These text messages are prior consistent statements that confirm Victim-1's testimony about the extent and effect of the defendant's abuse.

In addition to her text messages to the defendant, Victim-1 also told others about some of the defendant's physical abuse and acts of violence, ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

    *Fourth*, Victim-1 is expected to testify ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████. These statements are

directly consistent with Victim-1's expected testimony ████████████████████

██████████

    *Fifth*, the Government expects that Victim-1 ██████████████████████

████████████████████████████████████████████████████

---

[12] This testimony is relevant not only to Victim-1's credible fear of the defendant, but to the arson predicate activity charged as part of the racketeering conspiracy in Count One.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ These texts are

examples of the control the defendant exerted over her career.

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████ ████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

### 2.  Victim-2

The Government expects Victim-2 to testify ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████  Like Victim-1, the

Government expects that the defense will challenge at least some aspects of Victim-2's testimony,

and will call her credibility into question in opening statements and through cross-examination.

Much of Victim-2's testimony is directly corroborated by contemporaneous text messages

with the defendant and by entries Victim-2 wrote in the Notes App of her phone. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

        ██████████████████████████████████████

██████████  ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

32

███████████████████████ Because these recordings, messages, and notes are also entirely consistent with Victim-2's anticipated testimony, they are also admissible as prior consistent statements under Rule 801(d)(1)(B).

*First*, the Government expects Victim-2 will testify ████████████████████████

██████████████████████████████████████████████████████

████████████████████ ██ ████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

[13] ████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████ ██████████████████████████████████████████
████████████████████████████████

All of these prior statements are consistent with Victim-2's anticipated testimony ███████████████████████████████████████████

████████████████

*Second*, the Government expects Victim-2 will testify ██████████████

████████████████████████████████ That anticipated testimony is consistent with several of Victim-2's messages and notes. ████████████████████

███████████████████████ This note is entirely consistent with that anticipated testimony.

*Third*, Victim-2 will also testify ██████████████████████

███████████████████████████████████████████████Several of Victim-2's messages and notes are consistent with that anticipated testimony. ██████████

34

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████     All of these notes are consistent with Victim-2's anticipated testimony about the financial losses, dependency, and social isolation she experienced during her relationship with the defendant, all of which made her more vulnerable to his coercion.

*Fourth*, Vicitm-2 will testify ████████████████████████████

████████████████████████████████████████████

████████████████. Text messages and notes from the period reflect multiple consistent statements on this topic. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████     ████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████     All of these messages are consistent with Victim-2's anticipated

testimony ██████████████████████████████████████████████

██████████████████████████████

         *Fifth*, Victim-2 will testify that █████████████████████████████████

██████████████████████████████████████████████████

████   █████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ These statements are consistent with

Victim-2's anticipated testimony ████████████████████████████

████████████████████████████████████

*Sixth*, the Government expects Victim-2 will testify ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ A large number of Victim-2's messages and

notes are strikingly consistent with that anticipated testimony.  A sampling of these materials consistent with that anticipated testimony is below:





Every one of the above notes and messages, among others not quoted herein, is strikingly consistent with Victim-2's anticipated testimony ███████████████████████ ████████████████████████████████████████████████████. To the extent these statements were part of message exchanges or recorded conversations with the defendant, they should be admitted to provide context for the defendant's own statements. But they should also all be admitted as Victim-2's prior consistent statements. This extraordinary documentary evidence provides powerful corroboration of a large swath of Victim-2's testimony. Once the defense inevitably attacks her credibility, the jury is entitled to see that Victim-2 previously wrote essentially the same things that she will testify to at the trial.

### 3. Victim-3

The Government expects that Victim-3 will testify ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ██ ████████████████████████████████████████████████████████ ██████████ ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████ ██████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████



Much of Victim-3's testimony about her experiences is directly corroborated by contemporaneous text messages with the defendant and by entries Victim-3 wrote in the Notes App of her phone. As with Victim-1 and Victim-2, to the extent these statements were part of message exchanges or recorded conversations with the defendant, they should be admitted to provide context for the defendant's own statements under Rule 801(d)(2)(A), and several of the messages and notes are admissible to prove Victim-3's then-existing mental, emotional, and/or physical condition under Rule 803(3).

In addition, the messages should all also be admitted as Victim-3's prior consistent statements. As with Victim-1 and Victim-2, the Government expects the defense to call into question at least some of Victim-3's testimony and attack Victim-3's credibility. Accordingly, the Court should admit Victim-3's prior statements that are consistent with her testimony describing her relationship with the defendant, including the defendant's abuse and financial coercion. These statements include notes that Victim-3 drafted in the Notes App of her phone, much like diary entries or first drafts of text messages to the defendant, several of which are excerpted below:

- 



Additionally, throughout the course of their relationship, Victim-3 disclosed the defendant's financial coercion and abuse to members of the defendant's staff, including to ███████ ███████ . ████████████████████████████████████████

████████████████████████████████████████████  ████████

████████████████████████████████

Finally, ████████████████████████████████████████████

████████████████████████████  ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Many of Victim-3's prior statements detailed above are admissible for non-hearsay purposes, such as proving Victim-3's then state of mind. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████  Some of the statements made to the defendant's co-conspirators, like those between ████████████, are also admissible not for their truth, but to show that ██████ and others had been told about the abuse. In addition to these bases for admission, the statements are also admissible as prior consistent statements for the independent reason that they are consistent with Victim-3's expected testimony

████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████

### 4.  Employee-3

The Government expects that Employee-3—whose testimony is relevant to Count One of

the  Indictment█████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████  ████████████████████████

████████████████████████████████████████████████

█████████  ████████████████████████████████████

███████████████████████████  ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

During the time that Employee-3 worked for the defendant, Employee-3 kept a personal

diary in which she detailed the specific incidents of the defendant's behavior toward herself and

others, about which the Government anticipates she will testify at trial. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████

The Court should admit statements from Employee-3's diary as prior consistent statements concerning the topics about which she will testify. The Government expects that at trial, the defense will attack Employee-3's credibility, ████████████████████████████████ ███████████████████████████████████████████████████ To the extent that the defense attacks Employee-3's credibility, the Court should allow the introduction of select portions of Employee-3's diary which describe these incidents in a manner consistent with Employee-3's anticipated testimony.

### III. THE DECEMBER 2011 911 CALL BY THE DEFENDANT'S BURGLARY VICTIM IS ADMISSIBLE

At trial, the Government will seek to admit a 911 call placed by Individual-2 after the defendant broke into the Los Angeles home where Individual-2 had been staying. Because this call was made shortly after discovering the break in, it is admissible under Rule 803(1) as a present sense impression, under Rule 803(2) as an excited utterance, and/or under Rule 803(3) as a statement of the declarant's then-existing state of mind. Further, the call is admissible under Rule 801(d)(1) as a prior consistent statement in the event that the defense questions Individual-2's credibility at trial.

### A.  Relevant Facts

On December 22, 2011, Individual-2 called 911 to report a break in and to explain that ▮ ███████████████████████████████████████████████████████ During that recorded call, Individual-2 said ██████████████████████



The 911 operator explained that ██████████████████ █████████████████████████.

### B.  Applicable Law

#### 1.  Rule 803(1): Present Sense Impressions

Rule 803(1) permits admission of out-of-court statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).  To qualify as a present sense impression, the party offering the statement must satisfy three elements: (i) the declarant must have personally perceived the event described; (ii) the statement must describe the event; and (iii) the statement must be made with the event, or immediately thereafter.  *See United States v. Jones*, 299 F.3d 103, 112-13 (2d Cir. 2002); *see also United States v. Ibanez*, 328 F. App'x 673, 675 (2d Cir. 2009) ("For statements to qualify as present sense impressions, precise contemporaneity is not required.").  Present sense impressions are "considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory."  *Jones*, 299 F.3d at 112.

## 2.    Rule 803(2): Excited Utterances

The "excited utterance" exception to the hearsay rule permits admission of an out-of-court statement related to a startling event or condition, made while the declarant was under the stress of excitement that it caused.  Fed. R. Evid. 803(2).  The rationale is that "the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability."  *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998).  Notwithstanding their similar rationales, the "excited utterance" and "present sense impression" exceptions are not synonymous.  While the "present sense impression" exception "focuses on *contemporaneity* as the guarantor of reliability, and requires that the hearsay statement 'describe or explain' the contemporaneous event or condition, the excited utterance exception is based on the *psychological impact* of the event itself, and permits admission of a broader range of hearsay statements—*i.e.* those that 'relate to' the event."  *United States v. Johnson*, 117 F.4th 28, 46-47 (2d Cir. 2024).  Therefore, an excited utterance need not be contemporaneous with a startling event to be admissible.  Indeed, it can be made hours after a traumatic event, so long as the stress of excitement persists.  *See id.* (approving admission of an excited utterance notwithstanding a lapse of "five or six hours" between the utterance and startling event); *Tocco*, 135 F.3d at 127 (approving admission of an excited utterance that occurred three hours after the startling event); *United States v. Watson and Ozy Media, Inc.*, No. 23 Cr. 82 (EK) 2024 WL 4455773, at *2 (E.D.N.Y. May 31, 2024) (admitting under Rule 803(2) an email sent sixteen hours after a startling event).

## 3.    Rule 803(3): Then-Existing State of Mind or Condition

The "state of mind" exception to the hearsay rule permits admission of a statement describing "the declarant's then-existing state of mind" or "emotion, sensory, or physical condition (such as mental feeling, pain, or bodily health)."  Fed. R. Evid. 803(3).  Like the "present sense

impression" exception, the "reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation." *United States v. Cardascia*, 951 F. 2d 474, 487 (2d Cir. 1991). Rule 803(3) draws a distinction between a statement of a then-existing state of mind on the one hand, which is admissible, and a statement regarding a past memory or belief, on the other, which is inadmissible. *Id.* at 488.

### C. Discussion

The December 22, 2011 911 call is admissible under both the present sense impression and excited utterance hearsay exceptions. In addition, portions of the call are also admissible as statements of Individual-2's then-existing state of mind.

*First*, Individual-2's observations of his home are admissible as present sense impressions. On the 911 call, Individual-2 described seeing that ███████████████████████ ████████████████████████████████████████████████████. Although Individual-2 ██████████████████████████████████ ███ Individual-2's statements are nevertheless admissible because they were made close in time to when he observed the break-in at his home. Indeed, the chain of events indicates that the call was placed very soon after Individual-2 observed the state of his home. And because "in many, if not most, instances precise contemporaneity is not possible . . . a slight lapse is allowable" between when the declarant perceived the event and when the declarant made the statement. Fed. R. Evid. 803(1) advisory committee's note (1972).

The Second Circuit has regularly upheld the admission of a statement as a present sense impression where the witness relates his personal observations soon after observing the event, including in the context of 911 calls. *See, e.g.*, *Jones*, 299 F.3d at 107, 112 (2d Cir. 2002) (upholding admission of out-of-court statements describing a person the declarant saw

masturbating in public as made "nearly contemporaneous" with perceiving the event); *accord, e.g.,* *Ibanez*, 328 F. App'x at 675 (upholding admission where "maybe 5 minutes" lapsed between event and statement); *United States v. Steele*, 216 F. Supp. 3d 317, 321-22 (S.D.N.Y. 2016) ("A statement made during a 911 call within minutes of the caller's observation" is admissible). In *Steele*, the district court noted that "[e]ven where a longer time has passed between the events and the statement describing them, admission under Rule 803(1) can be buttressed by the intrinsic reliability of the statements" and cited with approval a decision admitting a second 911 call made sixteen minutes after a shooting as "sufficiently contemporaneous" where other evidence supported the reliability of the caller's statements. *Id.* Given that the 911 call occurred soon after Individual-2 observed his home, it should be admitted as a present sense impression.

*Second*, "[e]ven if the 911 call were not admissible as a present sense impression, it [is] admissible as an excited utterance" because Individual-2 had just observed a "startling event"— the aftermath of a break in at his home. *Steele*, 216 F. Supp. 3d at 323. On the call, Individual-2 sounded "agitated," *Jones*, 299 F.3d at 113, ███████████████████

████████████████████████████████████████████████

███████████████████████ Individual-2 also conveyed his concern ██████████

████████████████████. And even if Individual-2 had remained entirely composed on the call, that would "not prove that [he] was no longer in an excited state." *Steele*, 216 F.3d at 323. Given the emotional impact of viewing the aftermath of a burglary on one's own home, it can reasonably be inferred that Individual-2 was still under the stress and excitement caused by the incident when he made the call.

*Third*, multiple statements in the 911 call are admissible as evidence of Individual-2's then-existing state of mind. These include Individual-2's statement that ████████████████████

49

██████████████████████████████. These statements convey Individual-2's belief and intent at the time, rather than a past memory or belief. Accordingly, they are admissible under Rule 803(3).

Finally, although the 911 call is admissible under multiple hearsay exceptions, even if it were not, it would be properly admitted as Individual-2's prior consistent statement under Rule 801(d)(1)(B), assuming the defendant attacks Individual-2's credibility at trial. The Government expects Individual-2 to ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████Assuming that the defendant challenges the veracity of those statements, the call should be admissible as a prior consistent statement, for the reasons described above.

## IV. THE COURT SHOULD PRECLUDE THE DEFENDANT FROM OFFERING HIS OWN PRIOR STATEMENTS

The Government has provided voluminous discovery of the defendant's own statements in electronic communications, which include ██████████████████████████████

██████████████████████████████████████████████████

█████████████████. The law does not permit a defendant to offer his own prior statements for their truth. The Court should preclude the defendant from attempting to do so here.

### A. Applicable Law

A defendant may not offer his own statement into evidence without subjecting himself to cross-examination. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also*, *e.g.*, *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (similar);

*United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1987) (per curiam) ("[D]efense counsel wished to place [the defendant's] statement . . . before the jury without subjecting [the defendant] to cross-examination, precisely what the hearsay rule forbids."); *United States v. Torres*, 435 F. Supp. 3d 526, 538 (S.D.N.Y. 2020) ("[T]he Court agrees with the Government's view that, in the event evidence of his flight is admitted, Torres may not automatically admit his alternative explanation for his flight, insofar as he wishes to bring in his out-of-court statements to others on social media or to prison officials.").

Of course, the Government is able to introduce the defendant's statements as statements of an opposing party under Federal Rule of Evidence 801(d)(2)(A).  *See* Fed. R. Evid. 801(d)(2)(A) (defining as "not hearsay" a statement "offered against an opposing party" and "made by the party").  But the Federal Rules contain no parallel provision for the defendant.  *See Marin*, 669 F.2d at 84.  Instead, if the defendant wishes to place his own statements before the jury, he must testify so the Government may cross-examine him.  *See United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009).

Notwithstanding the hearsay bar, a defendant may in limited circumstances invoke the so-called "rule of completeness" to require the introduction of additional portions of his or her own out-of-court statement when the Government offers excerpts of it.  *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.").  "The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor

relevant to the admitted passages." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007). Indeed, the Second Circuit has held that "the rule of completeness is violated only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." *United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019). This rule is strictly applied. The Second Circuit has held, for example, that a defendant could not introduce a portion of his confession relating "to the *execution* of a robbery," where the portion introduced by the Government concerned only "*plans* to execute the robbery." *Johnson*, 507 F.3d at 796 (emphasis in original). Importantly, "the rule of completeness does not *require* the admission of self-serving exculpatory statements in all circumstances." *United States v. Williams*, 930 F.3d 44, 61 (2d Cir. 2019) (emphasis in original); *see also United States v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021) (explaining that the rule "permits a party to correct an incomplete and misleading impression" but "does not permit a party to introduce . . . statements to affirmatively advance their own, alternative theory of the case").

The burden rests with the defendant to demonstrate that any portions of a statement he seeks to offer are necessary to clarify or explain the portions the Government intends to offer. *See United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent."). "Mere allusions by a party to 'fairness' or 'context' do not satisfy the party's burden to demonstrate why the evidence should be admitted." *United States v. Ramsey*, No. 21 Cr. 495 (ARR), 2023 WL 2523193, at *3 (E.D.N.Y. Mar. 15, 2023), *aff'd*, *United States v. Ramsey*, No. 23 Cr. 7211, 2024 WL 5199288 (2d Cir. Dec. 23, 2024).

Put differently, Rule 106 does not give the defendant a blank check to offer evidence generally related to the Government's case; its application is limited. "Under this rule, the omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir. 1987); *see Johnson*, 507 F.3d at 796 (Rule does not apply to evidence "neither explanatory of nor relevant *to the admitted passages*" (emphasis added)). That is, the Rule serves to correct the misleading use of a single statement or document, so as to imply a meaning that does not exist when viewed in its immediate context.

### B.  Discussion

The Government expects to offer certain of the defendant's written statements contained in text messages and emails, and oral statements through audio messages and witness testimony. Such statements are properly admitted by the Government as statements of an opposing party under Federal Rule of Evidence 801(d)(2)(A). To the extent the defendant wishes to offer his own out-of-court statements, however, they are hearsay. *See Marin*, 669 F.2d at 84. And unless they accomplish the narrow function of the rule of completeness—*i.e.* clarifying or explaining the statements offered by the Government—the Court should preclude them.

Given the limited admissibility of such statements, and to avoid mid-trial delays, the Government seeks an order from the Court requiring that (a) to the extent the defendant seeks to admit his own statements during the Government's case-in-chief during cross-examination of witnesses, the defense preview to the Government and the Court prior to each trial day any statement of the defendant he intends to admit, so that any evidentiary issues can be addressed

outside the trial day; and (b) that the defendant be required to mark any such statements that he
intends to offer during his case-in-chief as part of his exhibit list.

## V. THE COURT SHOULD PRECLUDE EVIDENCE, QUESTIONS, OR ARGUMENT ABOUT THE DEFENDANT'S FAILURE TO COMMIT OTHER BAD ACTS

The Court should deny any attempt by the defendant to offer evidence that the defendant
engaged in certain consensual sexual encounters, including sexual encounters similar in kind to
Freaks Offs, with women other than the Victims.  In other words, the defendant cannot admit
evidence of consensual sex acts with other partners or argue that because *other* women supposedly
consented to Freak Offs, the victims in this case must have also consented on every occasion.  Such
evidence constitutes impermissible "good acts" evidence and should be precluded, as should
evidence of any other unrelated good acts the defendant may seek to offer.[14]

"Good acts" evidence, or evidence of the absence of bad acts, is irrelevant and
inadmissible.  "No less than evidence of a defendant's prior 'bad acts' used to show that he
committed the crime charged, . . . 'good acts' evidence is only relevant if we assume that a
defendant acted in conformity with those prior good acts—*i.e.*, if we make the exact propensity
inference Rule 404(b)(1) is designed to prohibit."  *Dawkins*, 999 F.3d at 792  (upholding exclusion
of "testimony regarding [defendant's] relationships with coaches whom he did not bribe").
Accordingly, "[a] defendant may not seek to establish his innocence . . . through proof of the
absence of criminal acts on specific occasions."  *Scarpa*, 913 F.2d at 1011 ; *see also Dawkins*, 999

---

[14] With respect to a somewhat different category of other acts evidence, the parties are currently
conferring about the admissibility of any evidence concerning individuals who have filed civil
suits against the defendant but who will not be witnesses at this criminal trial.  Specifically, the
Government does not believe evidence regarding individuals who have filed such unrelated civil
suits, including those that the defense believes have been "discredited," would be proper.  The
parties are hopeful that they can come to an agreement on this issue without the need for motion
practice.  Accordingly, the Government is not filing a motion seeking to preclude such evidence
at this time, but may do so at a later date if the parties are unable to reach agreement.

F.3d at 792.  "A single occurrence of lawful conduct is simply irrelevant to other occurrences of unlawful conduct."  *United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020); *see United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) ("We reject [the defendant's] assertion that the evidence of innocent travel was necessary to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica.  Although the government did argue that [the defendant] had been involved in other importations, it did not allege that [the defendant] had engaged in drug activity during these particular trips.").

This same principle applies in cases involving sex trafficking: the mere fact that a defendant had consensual sex on occasions with women *other* than the Victims has no bearing on whether the defendant's sexual encounters with the Victims were consensual or nonconsensual.[15] *See, e.g.*, *Boyce v. Weber*, No. 19 Civ. 3825 (JMF), 2021 WL 2821154, at *8 (S.D.N.Y. July 7, 2021) (in a civil sex trafficking case, excluding evidence of witnesses who would testify that the defendant did not abuse them, because "[i]t is well established that a defendant may not seek to establish his innocence . . . through proof of absence of criminal acts on specific occasions"); *United States v. Raniere*, 384 F. Supp. 3d 282, 325 (E.D.N.Y. 2019) (rejecting a motion for discovery because "statements by individuals who were not allegedly directed to have sex with [the defendant] or were not threatened with the release of collateral in exchange for acts of care are not *Brady* material because they have no bearing on whether the alleged victims were so directed or threatened"); *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (excluding "good acts" evidence in case involving "racketeering and

---

[15] The Government does not intend to object to the defense introducing evidence that the defendant, at times, had consensual sexual encounters with the Victims.  Indeed, the Government expects to elicit testimony about such consensual encounters during some victims' direct examinations.

racketeering conspiracy, and specific acts and a pattern of criminal conduct, including [] sex trafficking").

Even assuming *arguendo* that there was some minimal relevance to good acts evidence related to the defendant's consensual sexual activity with individuals other than the Victims of the charged offenses, it should be excluded under Federal Rule of Evidence 403.  Pursuant to Rule 403, "a district court may exclude evidence of a defendant's prior good acts if it finds that any minimal probative value of such evidence is outweighed by the likelihood of jury confusion and the risk of jury nullification."  *Id.* at *2 (citing *United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011) ("And the trial judge was rightly concerned that, to the extent any of the evidence [of prior good acts] could be construed to relate to the charged conspiracies, the jury would find it extremely confusing, if not incomprehensible.")).

The defendant should thus be precluded from questioning witnesses about or offering evidence or argument, including in his opening statement, regarding times that he claims that he had consensual sexual encounters with women *other than* the Victims in this case.  This prohibition should include any allegedly consensual encounters that involved the use of male escorts and/or narcotics with individuals who are not part of the Government's case-in-chief.  Such evidence of potentially non-criminal dealings is wholly irrelevant to any issue in dispute at trial and should be precluded under Rules 401 and 403.  *See, e.g.*, *Dawkins*, 999 F.3d at 792; *Williams*, 205 F.3d at 34.  The Government is not required to prove and will not contend at trial that every sexual encounter the defendant ever had—or even every Freak Off he ever had—was nonconsensual.  Rather, the evidence will show that some of the sexual encounters and Freak Offs he had with the Victims identified in the Indictment were the result of force, fraud, and/or coercion.  Accordingly, because it is not a defense to claim that the defendant is not guilty of crimes with which he is not

charged, this good act evidence is irrelevant under Rule 401.  Further, such evidence should be precluded under Rule 403 since it would needlessly complicate and lengthen the trial, introduce non-germane issues that the Government may need to rebut, and would likely confuse the jury as to the nature of the charges.

Likewise, to the extent the defendant seeks to present evidence or argument concerning his commission of other unrelated good acts—including good acts involving his employment, charitable or volunteer work, philanthropic giving, or other similar deeds—to seek to disprove his guilt, he should be precluded from doing so.  While a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait," or the witness's opinion of the defendant with regard to that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense.  *See, e.g*., *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *Rivera*, 2015 WL 1725991, at *2 (precluding evidence of charitable giving); *United States v. Fazio*, No. S2 11 Cr. 873, 2012 WL 1203943 (KBF), at *5 (S.D.N.Y. Apr. 11, 2012) ("[A] defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014).  The defendant should accordingly be precluded from offering evidence or argument concerning any charitable or philanthropic work, or any other specific instance or instances of prior good acts.

## VI. THE COURT SHOULD PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S GOOD ACTS AND OTHER PERSONAL FACTORS UNCONNECTED TO GUILT

The defendant should also be precluded from offering evidence of or arguments about aspects of his life that have no bearing on his guilt or innocence and may tend to elicit the jury's sympathy, such as those relating to his family background, children, health, age, or any other similar, irrelevant, personal factors. Such evidence and argument that make the defendant appear sympathetic for reasons unrelated to the charges at issue improperly invite the jury to acquit a defendant even where the evidence proves his guilt beyond a reasonable doubt. It is well-established that juries are not "to act based on their . . . sympathy." *United States v. Stroming*, 838 F. App'x 624, 627 (2d Cir. 2021); *see, e.g.*, *United States v. Mustafa*, 753 F. App'x 22, 37 (2d Cir. 2018) ("The district court correctly recognized that evidence of solitary confinement could be used for the improper purpose of provoking juror sympathy."). Any attempt to encourage such sympathy is therefore an attempt at nullification, which is itself plainly improper. *See In re United States*, 945 F.3d 616, 626 (2d Cir. 2019) ("[T]rial courts have the duty to forestall or prevent jury nullification.").

In keeping with these principles, the defendant should be precluded from offering evidence and argument concerning his family background, children, health, age, religion, or other similar personal factors, absent a showing that such factors bear on his culpability. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *see also United States v. Harris*, 491 F.3d 440, 447

(D.C. Cir. 2007) (affirming preclusion of evidence designed "purely or mainly to cast [the defendant] in the sympathetic light of a dedicated family man"). Such evidence is irrelevant to the jury's determination of guilt and should be precluded.

The defendant should similarly be precluded from offering evidence or argument concerning the punishment or consequences he faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* There is no proper basis for the defendant to put these issues before the jury in any form, and he should not be permitted to offer evidence or argument inviting the jury to consider them. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374, Dkt. No. 288 (JMF) (S.D.N.Y. Jan. 13, 2022) (Tr. 9-10) ("anything that adverts to possible punishments, including possibility of incarceration, however obliquely, is improper and will not be permitted," including, for example, a statement in opening or closing arguments that the defendant's "liberty is at stake," which would be "a not-so-thinly veiled reference to the prospect of incarceration, which is altogether improper").

Similarly, the defendant should be prevented from raising any argument or evidence that the defendant has already suffered any consequences, whether personal or professional, through being charged with crimes. Such argument has no relevance other than to seek sympathy and implicitly suggest that the jury should acquit because the defendant has already suffered enough. In short, the Court should not countenance any attempts at jury nullification. *Thomas*, 116 F.3d at 616.

59

VII.    **EVIDENCE OR ARGUMENT CONCERNING ANY ALLEGATION THAT THE CHARGES AGAINST THE DEFENDANT ARE VINDICTIVE, OR OTHERWISE BROUGHT FOR IMPROPER REASONS, OR ARE NOVEL, SHOULD BE PRECLUDED**

The defendant has repeatedly asserted both to this Court and to the public that the charges against him are vindictive, racially motivated, and novel.  (Dkt. Nos. 153, 186).  These inflammatory claims are baseless, as the Government established in its opposition to the defendant's motion to dismiss Count Three.  (Dkt. No. 166).  But the time to litigate such accusations is in pretrial motion practice, not in front of the jury.  The Court should preclude the defendant from raising any arguments or presenting any evidence at trial about the propriety of this prosecution.

### A.  The Prosecution's Supposed Motivation Is Irrelevant to Guilt or Innocence

The defendant's various complaints about the motivation for or supposed novelty of this prosecution have nothing to do with the jury's task of weighing the defendant's guilt.  Offering supposed evidence or argument on such matters would serve no purpose other than to seek to distract the jury from the evidence of the defendant's guilt or to encourage jury nullification notwithstanding his guilt.  Such evidence and argument should therefore be precluded in any form, including in opening statements.  *See United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997) (a "selective prosecution defense is an issue for the court rather than the jury"); *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial"); *United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005) (prosecuting authority's motives or views underlying its "charging decisions are not proper subjects for cross-examination and argument"); *United States v. Reese*, 933 F. Supp. 2d

579, 583-84 (S.D.N.Y. 2013) (precluding defendant from advancing arguments aimed at jury nullification and the overall propriety of the government's investigation); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case"), *aff'd*, 173 F. App'x 899 (2d Cir. 2006); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant], as opposed to other individuals who may also have committed the crimes charged or similar crimes"); *see also* Fed. R. Crim. P. 12(b)(3)(A)(iv) (motion for "selective or vindictive prosecution" must be made pretrial); *United States v. Farhane*, 634 F.3d 127, 166-67 (2d Cir. 2011) (affirming a sustained objection to a defense closing argument that "the government had targeted him for prosecution based on his religion"); *United States v. Sun Myung Moon*, 718 F.2d 1210, 1229-30 (2d Cir. 1983) (rejecting selective prosecution claim).

The basis for this settled rule is fundamental.  A claim of improper prosecutorial motive or purpose, whatever its grounds, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  Such a claim is self-evidently "unrelated to factual innocence of the crime[s] charged," which is the sole issue to be decided by the jury.  *Regan*, 103 F.3d at 1082.

Nor should the defendant be permitted to advance arguments or introduce evidence in aid of substantially the same alleged points—even if he does not expressly argue that he has been selectively or discriminatorily prosecuted—because the *reasons* for the prosecution of the defendant, no matter what they are, have no bearing whatsoever on the jury's proper function.  The

defendant should not, for example, be permitted to offer evidence or argument that this prosecution is, in whole or in part, "unprecedented," as he has previously suggested.  (Dkt. No. 153 at 1).  Any argument or evidence along these lines or in aid of such arguments is wholly irrelevant.  *Cf., e.g.*, *Stewart*, 2004 WL 113506, at *2 ("Any characterization of the securities fraud charge in Count Nine as 'novel' is irrelevant to the jury's consideration of the indictment in this case.  The defense may not argue or present evidence to the jury that tends to show that this count is an unusual or unprecedented application of the securities laws.").  Nor should the defendant be permitted to refer to the statute under which he is charged in Count Three as the "White-Slave Traffic Act," as he has in a recent filing with this Court, which would have no conceivable purpose other than to impermissibly raise the specter of racism in the jurors' minds.  (Dkt. No. 186 at 3).

Again, any argument or evidence along these lines would also improperly lead to juror confusion and invite nullification.  *See United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (Jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."); *id.* at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *see also Sparf & Hanson v. United States*, 156 U.S. 51, 101 (1895) ("Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves."); *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam) ("A jury has no more '*right*' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law.  Such verdicts

are lawless, a denial of due process and constitute an exercise of erroneously seized power."
(emphasis in original)).

### B. Evidence or Argument That Others Were Not Prosecuted for Similar Conduct Is Utterly Irrelevant

During this case, the defendant has also suggested that others engaged in similar conduct
were not prosecuted.  (Dkt. Nos. 153, 186).  To the extent the defendant has made this suggestion
in aid of the allegation that this case is a selective prosecution, that argument, and any supposed
evidence in support of it, should be precluded for the reasons set forth above.  But the defendant
should also be precluded from offering evidence or argument concerning the conduct of others
generally.  *See, e.g.*, *United States v. Gatto*, 986 F.3d 104, 129 (2d Cir. 2021) ("[T]hat others are
engaging in improper behavior does not make it lawful."); *United States v. Oldbear*, 568 F.3d 814,
821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons
other than the defendant used funds because "only [the defendant's] actions and state of mind were
material to her guilt"); *United States v. Berg*, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (testimony
concerning the "custom of other arms dealers in complying with arms export laws" precluded on
the ground that such evidence was irrelevant to the state of mind of the defendants), *aff'd in part,
rev'd in part on other grounds sub nom. United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991).
Specifically, the defendant should not be permitted to argue or offer evidence that other individuals
hire escorts or transport commercial sex workers across state lines.  The defendant alone is on trial,
and his conduct, alone, matters.  Evidence of the conduct of others and argument concerning the
same should be precluded.

Moreover, even were such evidence and argument theoretically relevant, which it is not, it
should be barred under Federal Rule of Evidence 403.  Evidence and argument about the conduct
of others would lead to a trial within a trial as to whether the conduct of others, to which the

defendant points, was or was not analogous to that of the defendant. Such evidence or argument would be very likely to both confuse and distract the jury and unduly materially lengthen the trial. Indeed, were the defendant to offer evidence or argument suggesting that others engaged in similar conduct, the Government would need to respond by offering evidence regarding, among other things, whether others engaged in force, fraud, and coercion; whether others attempted to obstruct justice and bribe witnesses; and whether others engaged in a pattern of racketeering activity involving repeated violence. All of this would lengthen the trial, require additional evidence, and distract from the relevant issues.

In short, any argument or attempt to elicit evidence that is intended to question the Government's charging decisions or suggest to the jury that the defendant should be acquitted because the case was brought for improper reasons, or that the case is novel or unlike other cases, is irrelevant to the issues properly before the jury, would create a time-consuming and contentious distraction, and would encourage the jury to make or decline to make a decision on an improper basis. It should thus be precluded, in its entirety.

## VIII.    THE COURT SHOULD PRECLUDE CROSS-EXAMINATION OF LAY AND LAW ENFORCEMENT WITNESSES WITH RESPECT TO ISSUES IRRELEVANT TO CREDIBILITY

The Government seeks an order precluding the defendant from cross-examining the Government's witnesses about certain matters.[16]

*First*, the Court should preclude the defendant from cross-examining non-law enforcement witnesses on topics unrelated to the scope of their direct testimony or matters affecting credibility.

---

[16] The Government has attempted to confer with the defense regarding the proper scope for cross examination of its lay and law enforcement witnesses. The defense, to date, has refused to confirm that it will limit the scope of its cross examination.

Such matters include among other things: (1) domestic violence, physical abuse, and/or illegal sex acts; (2) drug use and possession; (3) driving under the influence and other convictions with no bearing on veracity; and (4) and unrelated civil litigation.  Further, the Government seeks a Court order requiring the defendant to proffer a proper basis for cross examination related to tax offenses, which should be addressed outside the presence of the jury prior to its introduction.

*Second*, the Government intends to call several law enforcement witnesses who will testify about, among other things, the searches of the defendant's residences and plane, as well as summary charts prepared from other exhibits in this case.  The Government similarly requests that the defense be precluded from cross-examining law enforcement witnesses regarding unrelated incidents of officer misconduct or on any other topics that are either outside the scope of their direct testimony or unrelated to matters directly affecting their credibility.[17]

### A.  Applicable Law

Rule 611 of the Federal Rules of Evidence provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."  Fed. R. Crim. P. 611(b).  However, the law does not provide the defendant with an "unbridled prerogative" to cross-examine witnesses "about any topic, or in the manner that the defendant wishes."  *United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 114 (2d Cir. 2020).  And even though a defendant is permitted to impeach a witness's credibility, "[t]rial judges have broad discretion to limit the cross-examination of witnesses as appropriate to minimize the risk of harassment, undue prejudice, confusion of issues to be presented to the jury, redundancy of

---

[17] In an effort to raise potential disputes as far in advance of trial as possible, the Government has endeavored to be overly inclusive in its identification through this motion of potential topics that would be improper grounds for cross-examination of its witnesses.  As the Government continues to prepare its witnesses for trial, however, it is possible that it may identify additional such topics, which the Government will promptly raise in a supplemental motion if necessary.

the evidence, or unnecessary delays in the trial." *Id.* (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); *see also United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) ("[U]nder Rule 403, the district court may exclude even relevant evidence if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'"). Indeed, as the Second Circuit has recognized, district courts have an "independent responsibility to [e]nsure that issues are clearly presented to the jury by, for example, imposing reasonable limitations on cross-examination." *Al-Farekh*, 956 F.3d at 114-15.

In particular, the Federal Rules of Evidence limit the circumstances under which evidence of specific acts of a witness may be introduced at trial. Rule 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." The Court "may, on cross-examination, allow [those prior acts] to be inquired into," but only if such acts "are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b)(1). Any such cross-examination also must satisfy Rule 403—that is, specific instances of a witness's prior conduct may be inquired into on cross-examination only if the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 403; *United States v. Sasso*, 59 F.3d 341, 347-48 (2d Cir. 1995).

With respect to prior convictions, Rule 609(a)(1) provides that evidence of a witness's prior felony conviction "must be admitted, subject to Rule 403." Fed. R. Evid. 609(a)(1); *see also United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) ("Rule 609(a)(1) presumes that all

felonies are at least somewhat probative of a witness's propensity to testify truthfully."). Pursuant to Rule 609(a)(2), evidence of any conviction, regardless of whether it is a felony, is admissible if it involved a crime of dishonesty or false statement. *See* Fed. R. Evid. 609(a)(2). However, under Rule 609(b), "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[,] [e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b); *see also United States v. Mahler*, 579 F.2d 730, 736 (2d Cir. 1978). The Second Circuit "ha[s] repeatedly recognized that Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances." *Farganis* v. *Town of Montgomery*, 397 F. App'x 666, 669 (2d Cir. 2010).

As to law enforcement witnesses, courts often preclude cross-examination concerning prior misconduct that has no bearing on the officer's credibility or character for truthfulness. *See, e.g.*, *United States v. Lawes*, 292 F.3d 123, 131-32 (2d Cir. 2002) (finding that precluding cross-examination was proper where the allegations had no relevance to credibility or motivation to lie); *United States v. Horsford*, 422 F. App'x 29, 2011 WL 1878747, at *1 (2d Cir. 2011) (upholding trial court's preclusion of cross-examination regarding allegations of officer misconduct where the underlying conduct involved no dishonesty). Similarly, a defendant may not conduct cross examination that exceeds the scope of the direct examination for law enforcement witnesses. *See, e.g.*, *United States v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989) (affirming district court's limitation of cross-examination of case agents to scope of direct testimony); *United States v. McLaughlin*, 957 F.2d 12, 18 (1st Cir. 1992) (affirming limitation of cross-examination of government agents to scope of direct because "a party has no right, unless the court in the exercise of its discretion allows, to cross-examine a witness beyond the subject matter of his direct

examination and beyond matters affecting credibility."); *United States v. Ellis*, 156 F.3d 493, 498 (3d Cir. 1998) (affirming district court's ruling that where agent's testimony was limited to authenticity of tape recordings, which defendant did not challenge, agent could not be examined on other topics because his credibility was not at issue).

## B. Discussion

As detailed below, the Court should exercise its considerable discretion to preclude cross-examination of the Government's witnesses regarding irrelevant prior conduct. Any cross-examination on these subjects would have minimal probative value and substantial potential to harass or embarrass the witnesses and distract the jury.

### 1. Lay Witnesses

#### i.     *Domestic Violence, Physical Abuse, and Illegal Sex Acts*

The defendant should be precluded from cross examining witnesses about unrelated acts of domestic violence and/or physical abuse.[18]   Such topics are plainly improper on cross

---

[18] The Government is currently aware of the following instances of domestic violence and/or physical abuse pertaining to witnesses ███████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

examination under Rule 608(b) as they have no bearing on the witnesses' character for truthfulness. *See e.g.*, *United States v. Jeffers*, 402 F. App'x 601, 603 (2d Cir. 2010) (affirming preclusion of cross-examination of cooperating witness regarding prior acts of domestic violence based on "determination that the purported prior acts of violence were not probative of [the witness's] credibility"); *United States v. Gambardella*, No. 10 Cr. 674 (KBF), 2011 WL 6314198, at *1-2 (S.D.N.Y. Dec. 15, 2011) (precluding cross examination on witness's prior acts of domestic violence where its probative value would be substantially outweighed by the danger of prejudice before the jury); *United States v. Agostini*, 280 F. Supp. 2d 260, 261-62 (S.D.N.Y. 2003) (precluding cross-examination regarding witness's prior arrests for allegedly assaulting his girlfriend, finding that "they do not involve instances of dishonesty or making false statements" and noting "the Second Circuit's inclination to preclude the discussion of a witness's prior commission of violent crimes because of such crimes' lack of relevance to the issue of the witness's veracity"); *United States v. Brown*, No. 07 Cr. 874 (KAM), 2009 WL 497606, at *5 (E.D.N.Y. Feb. 26, 2009) (precluding inquiries into a shooting and domestic violence under Rule 608(b)).

Similarly, the defense should be precluded from cross examining witnesses regarding illegal sexual activity.[19] This activity, which did not result in criminal conviction, is irrelevant to

███████████████████████████████████████████████████████████

[19] The Government is aware of the following instances of illegal sex acts pertaining to witnesses
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

the witnesses' credibility and cross-examination on these topics would only serve to embarrass or harass the witnesses. *See United States v. Pena*, 978 F. Supp. 2d 254, 266 (S.D.N.Y. 2013) ("[E]vidence of past crimes relating to sex and violence are properly excluded as having insufficient bearing on a witness' credibility.").

*ii.*      *Drug Use*

The defendant should also be precluded from cross examining witnesses regarding unrelated acts of drug use.[20]  There is no basis under Rule 608(b) to cross-examine witnesses regarding drug usage outside of the presence of the defendant and not during the events about which the witnesses are testifying. *See, e.g.*, *United States v. Antoine*, No. 23 Cr. 305 (NSR), 2024

---

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████

[20] The Government is currently aware of the following instances of narcotics use pertaining to witnesses ██████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████        ██████████████████████████
██████████      To the extent that certain of these witnesses used drugs while employed by the defendant during the scope of their duties, and/or during events encompassed by their testimony, the Government agrees it is proper grounds for cross-examination.

WL 4557435, at *7 (S.D.N.Y. Oct. 23, 2024) (excluding cross-examination regarding unlawful possession of marijuana); *United States v. Ephron*, 24 Cr. 418 (MMG), Dkt. No. 148 at 104-05 (S.D.N.Y. March 24, 2025) (noting the court did not see "the relevance of past marijuana use, nicotine use, or alcohol use" outside the scope of interactions with the defendant during the charged period). Cross examination about drug use outside the presence of the defendant should further be precluded under Rule 403 as leading to juror confusion and unfair prejudice.

> *iii.*     *Driving Under the Influence and Other Convictions with No Bearing on Credibility*

The defense should also be precluded from cross examining witnesses regarding arrests or convictions related to driving under the influence ("DUI") and other convictions with no bearing on credibility.[21] Misdemeanor convictions for driving under the influence and drug possession are plainly not admissible under Rule 609(a)(1), because they were not "punishable by death or imprisonment for more than one year." Nor are they admissible under Rule 609(a)(2), because "establishing the elements of the crime" does not require proof of "a dishonest act or false statement." Accordingly, the plain text of Rule 609 bars cross-examination of the Government's

---

[21] The Government is currently aware of the following instances of DUI arrests and/or misdemeanor convictions ███████ ██████
████████████████████████████████████████████████████████████████
████████████████████████████ . In addition, the Government is currently aware of the following instances of DUI arrests and/or misdemeanor convictions pertaining to witnesses ████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████ . In addition, ████
████████████████████████████████████████████████████████████████
██████████████

witnesses regarding convictions for these misdemeanors.  *See United States v. Urena*, 11 Cr. 1032 (PAE), 2014 WL 1303114, at *2 (S.D.N.Y. Apr. 1, 2014) ("[B]ecause both of [the witness]'s marijuana convictions were misdemeanors, they were not punishable by death or imprisonment in excess of one year, and thus are not admissible under Rule 609(a)(1).  Accordingly, evidence of [the witness]'s two convictions is not admissible under Rule 609(a)."); *see also United States v. Bowen*, 511 F. Supp. 3d 441, 453 (S.D.N.Y. 2021) (precluding cross-examination of a testifying law enforcement officer about DUI and driving with suspended license offenses).  This is for good reason.  Such conduct does not speak to a witness's veracity and would only serve to embarrass and shame those witnesses, not to mention confuse and mislead the jury.

In addition, at least one witness has a felony conviction from over two or three decades ago that has no bearing on credibility.  As such, the conviction is rendered inadmissible at trial under Rule 609(b).[22]  *See* Fed. R. Evid. 609(b)(1) ("[I]f more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[, e]vidence of the conviction is admissible *only if*: (1) its probative value, supported by specific facts and circumstances, *substantially* outweighs its prejudicial effect." (emphasis added)); *Bachir v. Transoceanic Cable Ship Co.*, 98 Civ. 4625, 2002 WL 413918, at *10 (S.D.N.Y. Mar. 15, 2002) (holding that "acts committed twenty years ago are too remote" to be sufficiently probative for admission as evidence).

---

[22] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████

### iv. Civil Litigation

The defense should be precluded from cross examining witnesses regarding unrelated civil litigation, or settlements related to civil claims, in which the witnesses have been defendants.[23] These events do not speak at all to a witness's veracity and are inadmissible under Rule 608(b). The evidence should similarly be excluded under Rule 403 for leading to juror confusion and causing undue prejudice. *Cf. Phillips v. City of New York*, 871 F. Supp. 2d 200, 203 n.2 (E.D.N.Y. 2012) (precluding unrelated civil lawsuits against law enforcement officers since any probative value would be substantially outweighed by danger of unfair prejudice); *United States v. Robinson*, No. 20 Cr. 415 (KMW), 2021 WL 3003939, at *2 (S.D.N.Y. July 12, 2021) (precluding civil lawsuits against officers and noting that "they have little-to-no probative value, and Defendant does not contend otherwise").

### v. Tax Offenses

The Court should also preclude cross-examination related to potential tax offenses unless the defendant proffers in advance a proper basis for such cross examination.[24] *See Francois v.*

---

[23] The Government is currently aware of the following civil litigation unrelated to the defendant: ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████ Finally, although not the subject of a lawsuit, ████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████

[24] The Government is currently aware of the following instances of tax non-compliance or possible non-compliance: ████████████████████████████████████████ ██████████████████████████████████████████████████████████████

*Mazer*, No. 09 Civ. 3275 (KBF), 2012 WL 12549430, at *1 (S.D.N.Y. May 14, 2012) (requiring proffer of relevance "between the returns and a potential credibility or truthfulness issue" prior to its use on cross examination).  While questioning of a witness regarding false statements made in tax returns *may* be appropriate on cross examination, *see Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir. 1993), *abrogated on other grounds*, *Jaffee v. Redmond*, 518 U.S. 1 (1996), it has been found proper only in limited circumstances, for example, where the witness has failed to file taxes over a significant period of time.  *See id.* (permitting cross examination on failure to file taxes for period of eight years "subject to the discretionary considerations in Rules 403 and 608(b)").  Given that the tax-related issues related to the Government's witnesses here are limited, and in some instances over a decade old, there does not appear to be any relevance to the witnesses' credibility. Accordingly, such cross-examination should be precluded unless the defendant can proffer a proper basis in advance and the Court finds that there is a proper basis under Rules 403 and 608(b).

### 2.   Law Enforcement Witnesses

In addition, the Court should preclude cross examination of law enforcement witnesses regarding unrelated officer misconduct.[25]  With respect to law enforcement witnesses, courts often

------

[25] The Government is currently aware of the following misconduct determinations pertaining to its law enforcement witnesses: ████████████████████████

preclude cross-examination concerning prior officer misconduct that has little to no bearing on the officer's credibility or character for truthfulness. *See, e.g.*, *United States v. Teron*, 478 F. App'x 683, 685 (2d Cir. 2012) (upholding district court's limitation on cross-examination based on CCRB proceedings when CCRB did not make any findings with respect to the witness's credibility); *Horsford*, 422 F. App'x at 30 (upholding trial court's preclusion of CCRB reports where the underlying conduct involved no dishonesty); *Lawes*, 292 F.3d at 131 (finding that precluding cross-examination was proper where the misconduct had no relevance to credibility or motivation to lie). This is particularly true here, where none of the witnesses' conduct bears on truthfulness.

Similarly, the defendant should not be permitted to conduct cross examination of law enforcement witnesses that exceeds the scope of direct examination, including with respect to their views on the Government's prosecution. *See Koskerides*, 877 F.2d at 1136; *McLaughlin*, 957 F.2d at 18; *Ellis*, 156 F.3d at 498; *United States v. Adeniyi*, 2004 WL 1077963, at *3 (S.D.N.Y. May 12, 2004) ("The Court is also unpersuaded by Defendant's apparent contention that [the case agent's] acknowledgment during direct examination that he had participated in an investigation of Defendant, coupled with [the case agent's] testimony regarding certain specific aspects of that investigation, combined to give defense counsel carte blanche to inquire into any subject related to the investigation of Defendant."). Such questioning would be altogether improper under Rules 611(b) and 403 and should be precluded.

---

█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████

## IX. THE COURT SHOULD PRECLUDE TESTIMONY OF DEFENSE EXPERT DR. BARDEY UNDER RULE 702

The proffered expert testimony of Alexander Sasha Bardey, M.D is speculative and unreliable and should be precluded by the Court under Federal Rule of Evidence 702. As discussed below, Dr. Bardey's opinions are unreliable, not based on the scientific literature, squarely within the ken of the average juror, and would invade the province of the Court and the jury. The Court should preclude his testimony. Indeed, Dr. Bardey's proffered opinions merely underscore why Dr. Hughes's testimony is necessary to disabuse common misconceptions about intimate partner violence, sexual abuse, and coercion and to properly inform the jury about the academic literature on these critical subjects.

### A. Background

As described in his expert notice, attached hereto as Exhibit A, the defendant proposes to offer the opinions of Dr. Bardey, a psychiatrist, in response to the Government's expert, Dr. Dawn Hughes. As described in the Government's expert notice, attached hereto as Exhibit B, Dr. Hughes is expected to testify about, *inter alia*, sexual abuse and responses, coercive control, coping strategies during and related to sexual abuse and intimate partner violence, delayed disclosure, and memory. Dr. Hughes bases her opinions on her knowledge of relevant academic literature and over twenty-five years of clinical experience. Dr. Hughes has not evaluated any specific victim or evidence in the case.

As previewed in Exhibit A, Dr. Bardey offers the following opinions regarding Dr. Hughes's methodology:

- "Generalizations and vague psychological profiles are of little to no value in evaluating the facts and circumstances of any given case." Further, subject matter testimony is inherently flawed because it does not involve the assessment of the "evidentiary record" and therefore is "blind, and perhaps deliberately blind" to the particular facts of the case.

76

- Since Dr. Hughes did not conduct a forensic evaluation in connection with this case "her opinions have virtually no value."

- "To the extent Dr. Hughes bases her generalizations on knowledge purportedly gleaned from her own clinical experiences with patients, her opinions are questionable" since there is "limited opportunity . . . for anyone to probe the conclusion she draws from it."

Dr. Bardey further offers several opinions regarding the substance of Dr. Hughes' testimony:

- Coercive control is an "extremely broad and vague" topic since "[h]uman beings attempt to influence each other all the time."

- Further, "coercive control may be exercised in the opposite direction. When in the presence of someone famous or rich, other individuals may employ subtle, or even not so subtle, tactics to ingratiate themselves or curry favor" such as by "offer[ing] sex in return for favors or to advance their own agendas."

- "Some reports of sexual assault are false."

- Memory lapses regarding sexual trauma can result not only from the "pathology of trauma" but also from "prevarication" (*i.e.* the act of evading the truth).

These opinions should be precluded. As set forth below, Dr. Bardey's opinions are within the grasp of the jury, invade the province of the jury, and are unhelpful, unreliable, not scientifically supported, and/or irrelevant.

### B. Applicable Law

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

77

> (d) the expert has reliably applied the principles and
> methods to the facts of the case.

The party that proffers the testimony bears the burden of showing that it is admissible by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 & n.10 (1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).    A district court's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion.    *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

A threshold issue is, of course, whether the witness "is qualified to be an 'expert'" in the subject matter at issue.    *See Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). Testimony from a qualified expert is admissible only if the trial court determines that it is both relevant and reliable.    *Daubert*, 509 U.S. at 589-90; *see Kumho Tire Co., Inc. v. Carmichael*, 526 U.S. 137 (1999).    Specifically, in *Daubert*, the Supreme Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597.    "*Daubert* applies to both defense and government experts."    *United States v. Yousef*, 327 F.3d 56, 148 (2d Cir. 2003).

Applying Rule 702, the Court must determine whether the expert's reasoning and methodology underlying his testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury.    *See Kumho Tire*, 526 U.S. 137.    The reliability inquiry is flexible and "must be tied to the facts of a particular case." *Id.* at 150 (citations and internal quotation marks omitted).    The Second Circuit has emphasized that "it is critical that an expert's analysis be reliable at every step."    *Amorgianos v. Nat'l R.R. Pass. Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).    "In deciding whether a step in an expert's analysis

is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* Minor flaws with an otherwise reliable expert opinion will not bar admission of that evidence; however, the Court should exclude the expert evidence "if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Id.*

Rules 401 and 403 of the Federal Rules of Evidence state that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but it may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

Among other things, the Court "must consider whether an expert's proposed testimony would usurp the province of the judge to instruct on the law, or of the jury to make factual determinations." *Island Intell. Prop. LLC v. Deutsche Bank AG*, No. 09 Civ. 2675 (KBF), 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012). While Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue," the Second Circuit has admonished courts to take care "lest [the expert] be allowed to usurp the function of the judge." *Marx & Co. v. Diners Club, Inc.*, 550 F.2d 505, 511 (2d Cir. 1977). Accordingly, courts must not admit "opinions which would merely tell the jury what result to reach." *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992) (quoting Fed. R. Evid. 704 advisory committee's

note); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." (emphasis in original)). Nor may an expert opine as to a party's state of mind, credibility, intent, or motive. *See LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08 Civ. 8426 (WHP) (HBP), 2012 WL 466785, at *7 (S.D.N.Y. Feb. 14, 2012) (collecting cases); *see, e.g.*, *Highland Capital Mgmt.* v. *Schneider*, 551 F. Supp. 2d 173, 182-183, 187 (S.D.N.Y. 2008).

Finally, expert opinion should not be offered where it does not fit the facts of the case. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591; *cf. Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("expert testimony should be excluded if it is . . . [*inter alia*] in essence an apples and oranges comparison"); *see also LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 642 (S.D.N.Y. 2016) (expert opinion inadmissible where it is "a mismatch for the facts" of the case).

### C. Discussion

Dr. Bardey's opinions fail to adequately respond to the opinions proffered by Dr. Hughes. Rather, in an attempt to negate her testimony, Dr. Bardey superficially dismisses Dr. Hughes's views without providing any research, or conclusions supported by that research, to counter Dr. Hughes' opinions. To the extent Dr. Bardey does proffer an opinion, it is unreliable and invades the province of the jury. Accordingly, Dr. Bardey's testimony should be precluded under Rule 702.

**1.  Dr. Bardey's Opinions Regarding Dr. Hughes' Methodology Are Unfounded**

Dr. Bardey opines that Dr. Hughes' testimony is inherently flawed because it is based on mere "[g]eneralizations," when, in fact, her testimony is based on extensive empirical data, scientific literature, and clinical experience regarding inter-personal violence and traumatic stress.  Dr. Bardey further states that Dr. Hughes's testimony is of "little value" because it is not premised on the specific facts at issue.  This conclusory rejection is unfounded.  Indeed, blind testimony—by which an expert testifies to a particular subject matter rather than an individualized assessment of a witness—has long been accepted as expert testimony under Rule 702 and is admissible in this trial.

There are two types of testimony an expert can provide with regards to sexual abuse, intimate partner violence, and coercive control: subject matter testimony and individual assessment testimony.  In subject matter testimony, the circumstances and psychological characteristics of sexual abuse and intimate partner violence are offered to educate the jury regarding issues that are beyond the knowledge of the average jury.  Subject matter testimony has long been accepted by courts under Rule 702 as expert witness testimony on a myriad of issues, including, but not limited to, sexual abuse, coercive control, and violence.  *See, e.g.*, *United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2021 WL 5283951, at *2, 4-5 (S.D.N.Y. Nov. 11, 2021); *United States v. Kidd*, 385 F. Supp. 3d 259, 263 (S.D.N.Y. 2019); *United States v. Torres*, No. 20 Cr. 608 (DLC), 2021 WL 1947503, at *6 (S.D.N.Y. May 13, 2021); Feb. 25, 2020 Tr. at 24:1-40:15, *United States v. Randall*, 19 Cr. 131 (PAE) (S.D.N.Y.), Dkt. No. 335; Notice and Oct. 17, 2019 Tr. at 27:1-12, *United States v. Dupigny*, No. 18 Cr. 528 (JMF) (S.D.N.Y.), Dkt. Nos. 180-1, 198.  Dr. Hughes' proffered testimony falls into this category.  As described in her notice, Dr. Hughes is expected to offer subject matter testimony regarding sexual abuse, intimate partner violence, and coercive control based on the totality of her relevant education, training, skills, knowledge, and

professional experience, including her assessment and treatment of patients, her forensic assessments, her work and consultation with professional colleagues, continuing education, and review of relevant scientific literature in her field. *See* Ex. B. By contrast, the second form of expert testimony involves an individual assessment of a witness by an expert to opine on a particular witness's experience of sexual abuse, intimate partner violence, and trauma.

These two forms of expert testimony serve distinct functions. While the latter may be used to evaluate a complainant in a civil matter, it is strictly prohibited in the criminal context. *See Maxwell*, 2021 WL 5283951, at *5 ("The Defense argues that Dr. Rocchio's testimony is not relevant because the Government represents that she will testify only to general principles and not offer testimony regarding any specific victim. The Defense has the law backwards on this point. As explained above regarding the Second Circuit's *Nimely* decision, an expert may not testify as to a specific witness's credibility. And as other courts have explained in admitting similar testimony, Dr. Rocchio's testimony is appropriate because she does *not* testify as to any specific witness' credibility."). As the defense is well aware, testimony regarding the credibility of a trial witness based on an individualized assessment would constitute bolstering, which is entirely improper in a criminal case. Indeed, such testimony would amount to reversible error. *See United States v. Haynes*, 729 F.3d 178, 196 (2d Cir. 2013) (finding reversible error where expert testified regarding whether the defendant "realized" that there were drugs in the car since "it is expert testimony about the defendant's state of mind."); *United States v. Dukagjini*, 326 F.3d 45, 55 (2d Cir. 2003) (finding error where a case agent certified as an expert "acted at times as a summary prosecution witness[, with] the effect [of] . . . bolstering . . . the testimony" of other witnesses and "impinging upon the exclusive function of the jury"); *Cf. United States v. Dinero Express, Inc.*, 57 F. App'x 456, 460 (2d Cir. 2002) (finding no error where "expert testimony [] had no role, potential or actual, in bolstering the essential fact in

dispute in this case: Beras' state of mind."); *United States v. Young*, 623 F. App'x 863, 866 (9th Cir. 2015) (testimony about the "general behavioral characteristics" of child sexual abuse victims, rather than about the particular victims in a case, is not improper bolstering.).  Thus, while Dr. Bardey offers to "promptly perform" an evaluation of the Government's witnesses and "supplement his opinions accordingly," such testimony would be barred under clear Second Circuit precedent and is wholly inadmissible. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005).

Moreover, while Dr. Bardey proffers his view that opinions based on group data or clinical experience, such as those offered by Dr. Hughes, are without "value," he offers no basis in scientific literature for this unfounded claim.  Nor can he.  Population and group-based data are the cornerstone of scientific data and research.  Courts have repeatedly found expert testimony based on similar experience and scholarship to be proper.  *See, e.g.*, *United States v. Ray*, No. 20 Cr. 110 (LJL), Dkt. No. 287 at 18-28 (S.D.N.Y. January 11, 2022) (rejecting defense arguments that Dr. Hughes's expert testimony was inadmissible and finding that the Government had established Dr. Hughes's competence and qualifications to give expert testimony regarding, among other things, "a common set of conduct experienced by those who are victims of interpersonal violence and the effect that that conduct commonly has on those who are victims of it."); *United States v. Raniere*, No. 18 Cr. 204 (NGG), Dkt. No. 667 at 12 (E.D.N.Y. May 22, 2019) (finding Dr. Hughes's testimony regarding, among other things, delayed disclosure of sexual assault by victims, to be admissible based on "her extensive study of empirical data and medical and social science literature and her substantial clinical experience."); *United States v. Copeland*, No. 21 Cr. 521 (KMK); *Maxwell*, 2021 WL 5283951, at *2-5; *United States v. Kelly*, No. 19 Cr. 286, Dkt. No. 250 (E.D.N.Y. October 12, 2021); Tr. at 29:4 to 30:20, *Randall*, No. 19 Cr.

131, Dkt. No. 335 (noting that "studying the circumstances and psychological drivers of trafficked women is not like studying diseases or potential cures in laboratory animals. . . . The testimony . . . necessarily uses more qualitative research methodologies. These involve interviews and case studies and clinical examinations over time.").

Further, the *single* citation in Dr. Bardey's disclosure provides no relevant support for his position. Dr. Bardey cites to the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct for the proposition "that psychologists must consider individual differences and diversity when forming psychological opinions. (§ 9.01)."[26] But the section from which Dr. Bardey cites speaks only to evaluating the psychological characteristics of *individuals*, which for the reasons stated above, would be improper in a criminal trial. By contrast, Dr. Hughes' testimony will be premised on a breadth of research on trauma psychology, as well as her own clinical experience with thousands of trauma patients, which is entirely appropriate and consistent with similar expert testimony admitted in numerous trials in this Circuit. *See Maxwell*, 2021 WL 5283951, at *2 (permitting expert with "extensive experience treating minors who have been sexually abused" to provide expert opinions because "those decades of relevant experience, combined with her formal training, are an adequate basis for her to testify on methods that

---

[26] *See* American Psychological Association, Ethical Principles of Psychologists and Code of Conduct, Section 9.01 ("Assessment"); available at https://www.apa.org/ethics/code.

perpetrators of sexual abuse often use to build trust with their victims, whether that be grooming or other forms of manipulation and coercion").

Further, contrary to Dr. Bardey's unreliable assertion that there is no "typical response to trauma," the DSM-5, the Diagnostic and Statistical Manual of Mental Disorders that is used by psychiatrists and psychologists alike, specifically states otherwise, as reflected in the diagnostic category of post-traumatic stress disorder ("PTSD").[27]  In addition, Dr. Hughes will *not* opine that every person, or *any one person*, has a particular response, or has PTSD from a trauma exposure.[28]  Indeed, the very premise of diagnostic categories, which are universally accepted in the field of psychology and psychiatry, depends on the identification of patterns of symptoms and behavior to an individual's response to particular circumstances.  Dr. Bardey's claim that individual data is the "best means" to provide psychological insight is therefore unfounded and unreliable and not relevant in this case.

### 2.  Dr. Bardey's Opinions Are Inadmissible to Rebut Dr. Hughes' Subject Matter Testimony

Similarly, Dr. Bardey's opinions regarding the subject matter of Dr. Hughes's testimony do not approach satisfying the rigorous *Daubert* standard.  Dr. Bardey's assessment that the term "coercive control" is "extremely broad and vague" is not reliable or based on any scientific research.   While Dr. Bardey claims that the term coercive control is "so broad as to be meaningless"—that opinion simply reflects Dr. Bardey's own lack of awareness of the vast

---

[27] *See* American Psychiatric Association. (2022). Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision. Washington, DC.

[28] Sexual violence and intimate partner violence are recognized as traumatic stressors capable of resulting in PTSD.  *See id.*; *see also* U.S. Dep't for Veterans Affairs, PTSD: National Center for PTSD, https://www.ptsd.va.gov/understand/types/violence_abuse.asp.

academic literature in the areas of intimate partner violence[29] and coercive control.[30]  Dr. Hughes, is expected to testify that "coercive control" has a highly particular, data-driven definition that is defined in the academic literature.[31]  In addition, she is expected to testify that while coercive control was traditionally used as a concept to describe the coercive strategies used by perpetrators in intimate partner violence, it has since also been recognized in the academic literature as a strategy used by perpetrators across a wide range of victimization, including, among other things, trafficking and sexual violence.[32]

Further, while Dr. Bardey argues that Dr. Hughes's definition of coercive control is all-encompassing, he paradoxically also opines that her definition *excludes* certain conduct, such as coercive control exerted by a victim on their perpetrator.  Dr. Bardey's characterization is therefore inconsistent on its face.  Dr. Bardey also does not provide an alternative definition of coercive control other than to state that "coercive control may be exercised in the other direction,"

---

[29] Intimate partner violence has been extensively researched for decades, and the Centers for Disease Control and Prevention's (CDC) National Intimate Partner and Sexual Violence Survey (NISVS, 2022) indicated that it is a widespread public health problem affecting millions of individuals in the United States.  *See* Basile, K.C., Smith, S.G., Kresnow, M., Khatiwada S., & Leemis, R.W. (2022). The National Intimate Partner and Sexual Violence Survey: 2016/2017 Report on Sexual Violence. Atlanta, GA: National Center for Injury Prevention and Control, Centers for Disease Control and Prevention.

[30] A quick search on PubMed, the National Institute of Health's database for academic research, returns over 1,300 articles on the topic of coercive control.  *See* National Institute of Health, available at https://pubmed.ncbi.nlm.nih.gov/?term=coercive+control.

[31] *See, e.g.*, Evan Stark (2007). *Coercive Control: How Men Entrap Women in Personal Life*. Oxford University Press; Dutton & Goodman. (2005) Coercion in intimate partner violence: Toward a new conceptualization. *Sex Roles*, *52*(11-12); Hamberger, Larsen, & Lehrner, (2017).  Coercive control in intimate partner violence. *Aggression and Violent Behavior*, 37.

[32] *See* Duron, J. F., Johnson, L., Hoge, G. L., & Postmus, J. L. (2021).  Observing coercive control beyond intimate partner violence: Examining the perceptions of professionals about common tactics used in victimization.  Psychology of Violence, 11(2), 144-154.

which is descriptive rather than definitional.  And Dr. Bardey cites no literature or data-driven support for his assertions, nor does he have a background in coercive control or intimate partner violence as reflected in his curriculum vitae, which focuses largely on psychiatric disorders and the treatment of the mentally ill in the criminal justice system.  *See Ray*, 20 Cr. 110, Dkt. No. 329 (excluding testimony of defense expert to rebut Dr. Hughes testimony regarding coercive control, where defense expert had expertise in psychotic disorders but not "victimization, coercive control, or interpersonal violence.").  Dr. Bardey's opinion regarding coercive control therefore lacks any basis in the empirical literature and is altogether unreliable.  As such, it falls "outside the range where experts might reasonably differ," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999), and should be precluded.

Finally, Dr. Hughes is not expected to contest certain opinions proffered by Dr. Bardey.  For example, Dr. Hughes will not contest that *some* reports of sexual assault are false.  Similarly, Dr. Hughes will not contest that *some* memory lapses can result from "prevarication," rather than sexual trauma.[33]  These, however, are concepts that are well within the ken of the average juror and do not require separate testimony to explain.  *See Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1335 (11th Cir. 2014) ("[C]ommon-sense concepts are especially appropriate for consideration by a jury.").  As such, expert testimony from Dr. Bardey is unnecessary and inappropriate to make these points.  *See id.*; *see also, e.g.*, *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) ("[T]he district court should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.").

---

[33] While Dr. Bardey claims that Dr. Hughes would "attribute[] *all* such memory lapses to the pathology of trauma," Ex. A at 4 (emphasis added), that is a clear mischaracterization of Dr. Hughes' testimony, for the reasons described above.

In short, the proffered testimony from Dr. Bardey fails to meet the requirements of Rule 702. It should be precluded.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Government's motions *in limine* in their entirety.


MATTHEW PODOLSKY
Acting United States Attorney


By:   /s/ _____
Maurene Comey / Meredith Foster
Emily A. Johnson / Christy Slavik
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284