UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 24-cr-542 (AS) |
| v. | |
| SEAN COMBS, | |
| Defendant. | |

### DEFENDANT SEAN COMBS'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 1

I.  THE GOVERNMENT IS NOT ENTITLED TO BROAD PRETRIAL RULINGS THAT
    HEARSAY STATEMENTS BY CERTAIN DECLARANTS ARE ADMISSIBLE
    UNDER RULES 801(d)(2)(D) & (E) ................................................................ 1

    A.  The Government's Rule 801(d)(2)(E) Arguments Are Premature And Overbroad ..... 2

    B.  The Government's Rule 801(d)(2)(D) Arguments Are Premature And Overbroad ..... 6

II.  THE COURT SHOULD RESERVE DECISION ON WHETHER PRIOR
     CONSISTENT STATEMENTS OF VICTIMS AND WITNESSES ARE
     ADMISSIBLE ...................................................................................................... 9

III.  THE DECEMBER 2011 911 CALL BY THE ALLEGED BURGLARY VICTIM IS
      INADMISSIBLE ................................................................................................. 10

     A.  The Government Has Not Established Personal Knowledge ..................................... 11

     B.  The Government Has Not Established The Elements Of The Hearsay Exceptions
         It Cites .................................................................................................................. 12

IV.  THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO
     PRECLUDE COMBS FROM OFFERING HIS OWN PRIOR STATEMENTS ............... 15

V.  THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO EXCLUDE
    ALL GOOD ACTS EVIDENCE .......................................................................... 18

VI.  THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO EXCLUDE
     ALL EVIDENCE OF COMBS'S BACKGROUND ........................................... 21

VII.  COMBS WILL NOT ARGUE TO THE JURY THAT THE CHARGES ARE
      VINDICTIVE, NOVEL, OR OTHERWISE IMPROPER ................................... 22

VIII.  COMBS SHOULD NOT BE PRECLUDED FROM CROSS-EXAMINING LAY AND
       LAW ENFORCEMENT WITNESSES WITH RESPECT TO ISSUES RELEVANT
       TO CREDIBILITY .............................................................................................. 23

IX.  COMBS SHOULD NOT BE DENIED A REBUTTAL EXPERT TO DEFEND
     AGAINST THE GOVERNMENT'S PROFERRED EXPERT ........................... 24

A.   The Federal Rules Contemplate Disagreement Among Experts ................................. 25

B.   Bardey's Opinion Has A Sufficient Foundation ........................................................ 27

C.   Bardey's Opinion Will Help The Jury ...................................................................... 28

CONCLUSION ................................................................................................................................ 30

## **TABLE OF AUTHORITIES**

**Cases**                                                                  **Page(s)**

*165 Park Row, Inc. v. JHR Development, LLC*,
  2013 WL 6190346 (D. Me. Nov. 25, 2013) ........................................................... 14

*Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*,
  2024 WL 4534791 (S.D.N.Y. 2024) ..................................................................... 26

*Amorgianos v. Nat. R.R. Pass. Corp.*,
  303 F.3d 256 (2d Cir. 2002) ................................................................................ 28

*Bourjaily v. United States*,
  483 U.S. 171 (1987) ............................................................................... 2, 3, 10

*Brown v. Keane*,
  355 F.3d 82 (2d Cir. 2004) ................................................................................. 11

*Capri Sun GmbH v. Am. Bev. Corp.*,
  595 F. Supp. 3d 83 (S.D.N.Y. 2022) ............................................................. 26, 29

*Crane v. Kentucky*,
  476 U.S. 683 (1986) ........................................................................................... 30

*Davis v. Alaska*,
  415 U.S. 308 (1974) ........................................................................................... 23

*Davis v. Washington*,
  547 U.S. 813 (2006) ........................................................................................... 15

*Doe v. Darien Bd. of Educ.*,
  110 F. Supp. 3d 386 (D. Conn. 2015) ................................................................ 13

*Hynes v. Coughlin*,
  79 F.3d 285 (2d Cir. 1996) ................................................................................. 12

*In re Digital Music Antitrust Litig.*,
  321 F.R.D. 64 (S.D.N.Y. 2017) .......................................................................... 26

*In re Zyprexa Prods. Liab. Litig.*,
  489 F. Supp. 2d 230 (E.D.N.Y. 2007) ................................................................ 25

*Krulewitch v. United States*,
  336 U.S. 440 (1949) ............................................................................................. 6

*Kyles v. Whitley*,
  514 U.S. 419 (1995) ........................................................................................... 23

*Litton Systems v. American Tel. and Tel. Co.*,
  700 F.2d 785 (2d Cir. 1983) ............................................................................ 7

*Marcic v. Reinauer Transp. Cos.*,
  397 F.3d 120 (2d Cir. 2005) ............................................................................ 6

*Pappas v. Middle Earth Condo. Ass'n*,
  963 F.2d 534 (2d Cir. 1992) ............................................................................ 7

*Quartararo v. Hanslmaier*,
  186 F.3d 91 (2d Cir. 1999) ............................................................................ 16

*Rapp v. Fowler*,
  20-cv-9586 (S.D.N.Y.) ............................................................................ 27

*Rekor Systems, Inc. v. Loughlin*,
  2023 WL 1777248 (S.D.N.Y. Feb. 6, 2023) ............................................... 24

*Shepard v. United States*,
  290 U.S. 96 (1933) ............................................................................ 14

*United States v. Blackwell*,
  853 F.2d 86 (2d Cir. 1988) ............................................................................ 21

*United States v. Bonds*,
  608 F.3d 495 (9th Cir. 2010) ............................................................................ 8

*United States v. Calonge*,
  20 Cr. 523 (GHW) (S.D.N.Y. 2021) ............................................................ 22

*United States v. Camacho*,
  353 F. Supp. 2d 524 (S.D.N.Y. 2005) .......................................................... 10

*United States v. Carter*,
  2024 WL 183198 (S.D.N.Y. Jan. 17, 2024) .................................................. 5

*United States v. Concepcion*,
  983 F.2d 369 (2d Cir. 1992) .......................................................................... 21

*United States v. Coplan*,
  703 F.3d 46 (2d Cir. 2012) ............................................................................ 16

*United States v. Dawkins*,
  999 F.3d 767 (2d Cir. 2021) .......................................................................... 19

*United States v. DiMaria*,
  727 F.2d 265 (2d Cir. 1984) .......................................................................... 16

*United States v. Fiumano*,
   2016 WL 1629356 (S.D.N.Y. Apr. 25, 2016) ........................................................ 21

*United States v. Geaney*,
   417 F.2d 1116 (2d Cir. 1969) ................................................................................. 5

*United States v. Gigante*,
   166 F.3d 75 (2d Cir. 1999) ................................................................................. 3, 4

*United States v. Goldstein*,
   2023 WL 3662971 (E.D.N.Y. May 25, 2023) ..................................................... 7

*United States v. Gotti*,
   457 F. Supp. 2d 395 (S.D.N.Y. 2006) ................................................................ 16

*United States v. Heinemann*,
   801 F.2d 86 (2d Cir. 1986) ................................................................................... 5

*United States v. Ibanez*,
   328 Fed. App'x 673 (2d Cir. 2009) ................................................................... 12

*United States v. Ilori*,
   2022 WL 2452258 (S.D.N.Y. July 5, 2022) ....................................................... 5

*United States v. James*,
   607 F. Supp. 3d 246 (E.D.N.Y. 2022) ............................................................... 19

*United States v. Johnson*,
   507 F.3d 793 (2d Cir. 2007) ............................................................................... 17

*United States v. Kosinski*,
   16 Cr. 148 (VLB), 2017 WL 4953902 (D. Conn. Oct. 31, 2017) ...................... 21

*United States v. Lawal*,
   736 F.2d 5 (2d Cir. 1984) ................................................................................... 17

*United States v. Lea*,
   131 Fed. App'x 320 (2d Cir. 2005) ................................................................... 17

*United States v. Lieberman*,
   637 F.2d 95 (2d Cir. 1980) ................................................................................... 5

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015) ............................................................................... 30

*United States v. Ng*,
   18-CR-538 (MKB) (E.D.N.Y.) ....................................................................... 2, 5

*United States v. Ojudun*,
    915 F.3d 875 (2d Cir. 2019) ........................................................................ 1, 18

*United States v. Ray*,
    2022 WL 101911 (S.D.N.Y. Jan. 11, 2022) .................................................. 28

*United States v. Ray*,
    20-cr-110 (S.D.N.Y) ...................................................................................... 27

*United States v. Rioux*,
    97 F.3d 648 (2d Cir. 1996) ............................................................................. 7

*United States v. Russo*,
    302 F.3d 37 (2d Cir. 2002) ............................................................................. 3

*United States v. Santos*,
    201 F.3d 953 (7th Cir. 2000) ....................................................................... 19

*United States v. Scully*,
    877 F.3d 464 (2d Cir. 2017) ......................................................................... 30

*United States v. Shoup*,
    476 F.3d 38 (1st Cir. 2007) .......................................................................... 12

*United States v. Stewart*,
    907 F.3d 677 (2d Cir. 2018) ......................................................................... 30

*United States v. Tracy*,
    12 F.3d 1186 (2d Cir. 1993) ....................................................................... 2, 6

*United States v. Tuzman*,
    2021 WL 1738530 (S.D.N.Y. May 3, 2021) ................................................ 28

*United States v. Vilar*,
    729 F.3d 62 (2d Cir. 2013) ............................................................................. 8

*United States v. Yandell*,
    2024 WL 129804 (E.D. Cal. Jan. 11, 2024) ............................................... 4, 5

*United States v. Young*,
    736 F.2d 565 (10th Cir. 1983) ....................................................................... 7

*Williams v. Pharmacia, Inc.*,
    137 F.3d 944 (7th Cir. 1998) ......................................................................... 6

*Williamson v. United States*,
    512 U.S. 594 (1994) .................................................................................. 1, 18

*Zaken v. Boerer*,
    964 F.2d 1319 (2d Cir. 1992) ................................................................. 7

**Rules**

Fed. R. Evid. 104 .................................................................................... 10

Fed. R. Evid. 106 .................................................................................... 17

Fed. R. Evid. 403 ........................................................................... 1, 10, 24

Fed. R. Evid. 404 .................................................................................... 19

Fed. R. Evid. 608 .............................................................................. 23, 24

Fed. R. Evid. 702 .............................................................................. 25, 28

Fed. R. Evid. 801 ............................................................................. passim

Fed. R. Evid. 803 ............................................................................. passim

Fed. R. Evid. 805 .................................................................................... 11

Fed. R. Evid. 807 .................................................................................... 16

**Other Authorities**

Criminal RICO: 18 U.S.C. §§1961-1968, A Manual For Federal Prosecutors
    (6th ed. May 2016) .............................................................................. 4

Mueller & Kirkpatrick,
    *Federal Evidence* (4th ed. & 2023 update) ................................... passim

## INTRODUCTION

The government's omnibus motion *in limine* requests blanket pretrial rulings on broad categories of evidence.  It requests, for example, that large swaths of out-of-court statements be admitted or excluded at the outset.  But the admissibility of hearsay—like the admissibility of most evidence in a trial—must be determined on a statement-by-statement basis, because the operation of the hearsay rule and its exceptions "require assessment of … each assertion individually."  *United States v. Ojudun*, 915 F.3d 875, 885 (2d Cir. 2019) (citing *Williamson v. United States*, 512 U.S. 594, 600-01 (1994)).  That assessment requires close attention to context.  Applying other rules of evidence, such as the rules governing impeachment, background evidence, and Rule 403, also requires examination of each individual piece of evidence, its context, and the purpose for which it is offered.

In short, many of the government's requests are premature and should be addressed as trial unfolds.  Some of the government's other requests are reasonable, while some should be denied for reasons given below.

Finally, in seeking to preclude the testimony of Mr. Combs's rebuttal expert, Dr. Bardey, the government incorrectly argues that Dr. Bardey is not qualified.  If the government's expert is allowed to testify, then Mr. Combs has a right to rebut her testimony with his own eminently qualified expert.

## ARGUMENT

**I.    THE GOVERNMENT IS NOT ENTITLED TO BROAD PRETRIAL RULINGS THAT HEARSAY STATEMENTS BY CERTAIN DECLARANTS ARE ADMISSIBLE UNDER RULES 801(d)(2)(D) & (E)**

The government's request for a categorical pretrial ruling admitting hearsay statements under the agency or co-conspirator exceptions is premature and should be denied.  The government *may* be able to satisfy the conditions for admissibility for some of these statements,

but it has not yet done so.  This Court should rule after hearing the evidence regarding each statement in the context of the trial testimony.

### A.    The Government's Rule 801(d)(2)(E) Arguments Are Premature And Overbroad

The government has not satisfied the conditions necessary for the Court to rule now that broad categories of statements by numerous different declarants are admissible under Rule 801(d)(2)(E)'s coconspirator exception to the hearsay rule.  The Court should deny the government's premature request to apply the exception, and instead follow the procedures applied by Judge Brodie in *United States v. Ng*, 18-CR-538 (S-1) (MKB) (E.D.N.Y.).  There, the court heard arguments from the defense and prosecution regarding the anticipated statements "at the start or at the end of the trial [day]" before admitting the statements—after the government proffered further context and evidence.  *See id.* at 12/9/21 minute entry; *id.* at 12/7/21 Tr.14. With the parties' proposed trial day schedule from 9:30-3:00, this procedure is reasonable and will streamline the trial testimony when a witness testifies.

A pretrial ruling now would be premature.  Rule 801(d)(2)(E) requires an actual evidentiary basis, not just aspirational statements from the government as to what it hopes to prove or what the out-of-court statements might mean.  But the latter is all the government offers.  "Before admitting a co-conspirator's statement … under Rule 801 (d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  For a statement to qualify, the government must demonstrate, and "the court must find," "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993).  In other words, the government must

2

identify the statements, and show—as to each specific statement—sufficient evidence to warrant its admission. This further requires sufficient evidence that the relevant declarants were members of the alleged conspiracy at the time the statements were made. These prerequisites are "[p]reliminary questions" concerning the admissibility of evidence, Fed. R. Evid. 104(a), and must be proven by a preponderance of the evidence, *see Bourjaily*, 483 U.S. at 175. The government has not met this burden—nor can it before offering actual *evidence* satisfying the requirements.

For starters, the government's argument as to the existence of a conspiracy and its alleged members is too broad to support application of the exception outright. The government broadly proclaims that "[a]t the time of the statements, the declarants were members or associates of the Combs Enterprise who were charged with accomplishing the purposes of the Enterprise." Gov't MIL 17. It asserts it "expects to demonstrate at trial that ███████████████, among other employees, were all co-conspirators who agreed to assist in at least some of the racketeering activity outlined in the Indictment." *Id.* Those types of arguments do not suffice, particularly in a RICO conspiracy case, where the Second Circuit has warned against unbridled application of the coconspirator exception. Rather, before admitting the statements, the Court must find, "in each instance," "the existence of a specific criminal conspiracy beyond the general existence of the [alleged enterprise]." *United States v. Gigante*, 166 F.3d 75, 82-83 (2d Cir. 1999); *see also United States v. Russo*, 302 F.3d 37, 44 (2d Cir. 2002) (the defendant must be "associated with the declarant in a conspiracy or joint venture having that criminal act as its objective," and "a general association … will not suffice.").[1] The Court cannot rely on the

---

[1] The government knows its reading of 801(d)(2)(E) is not supported by Second Circuit precedent. *See* Criminal RICO: 18 U.S.C. §§1961-1968, A Manual For Federal Prosecutors 183-

government's broad allegations alone, which suggest a conspiracy that "spans many years" and pursued various "generic" purposes. *United States v. Yandell*, 2024 WL 129804, at *3 (E.D. Cal. Jan. 11, 2024). Endorsing the government's arguments "at such a general level" would "lead to the admission of statements that shared no other purpose than the one superimposed on them after the fact by prosecutors." *Id.* (cleaned up).

Moreover, the government's motion is not substantiated by any actual evidence. There must be "proof the speaker and listener were part of the same ongoing conspiracy and there was a connection between that conspiracy and statement." *Yandell*, 2024 WL 129804, at *2. And in a RICO case like this one, before a statement allegedly concerning racketeering activity is admissible, "the defendant must be linked to [the] individual predicate act by more than hearsay alone." *Gigante*, 166 F.3d at 82. But the Court has not yet heard the evidence as to each predicate act or the context or purpose of the specific statements the government seeks to offer. Nor has the government sufficiently proffered any such evidence beyond the hearsay described in its motion.

As for the government's arguments that certain statements meet the "in furtherance" requirement, more context is needed. All the government has done is posit a laundry list of ways in which the anticipated statements *could be* construed as being in "furtherance" of the alleged conspiracy, but such blanket claims are insufficient. For example, the government argues some statements were made "to keep members of the Combs Enterprise informed about the activities of its members and its victims and about the current status of the conspiracy." Gov't MIL 18. Such statements might be admissible, but the Court cannot conclude as much without

---

84 (6th ed. May 2016) (noting that the contours of Rule 801(d)(2)(E) in RICO conspiracy cases is "not clear at this juncture" and discussing "the Second Circuit's evolving doctrine on the admission of co-conspirator statements in RICO cases").

considering the context of the statements and the speakers' purposes.  Indeed, some of the statements on their face reflect mere "casual conversation about past events" "which amount[] to no more than idle chatter," *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980), or are "mere[] narrative account[s] by one [individual] of the facts of [another's] past activities," *United States v. Heinemann*, 801 F.2d 86, 95 (2d Cir. 1986) (cleaned up).  Such statements do not satisfy the rule's "in furtherance" requirement.

For these reasons, the Court should resist any ruling now and reject the government's premature, categorical request, as courts in this district and elsewhere routinely do.  *See United States v. Ilori*, 2022 WL 2452258, at *2 (S.D.N.Y. July 5, 2022) (denying government motion "*in limine* for blanket permission to admit out of court statements made by certain purported co-conspirators," because "[c]ourt cannot make blanket rulings in advance of hearing the proffered evidence and any objection or knowing the context in which the statement is offered"); *United States v. Carter*, 2024 WL 183198, at *2 (S.D.N.Y. Jan. 17, 2024) ("The Government has provided a brief description of the messages it seeks to admit ….  Without more, the Court is unable to grant blanket approval to potentially over 1000 exchanges at this preliminary stage."); *Yandell*, 2024 WL 129804, at *2 (denying government motion in limine in RICO case for same reasons).

Instead, the Court should withhold decision and hear proffers from the government, preferably at the beginning or end of the trial day before the government seeks to offer any statements.  *See United States v. Ng*, 18-CR-538 (S-1) (MKB) (E.D.N.Y.), at 12/9/21 minute entry.  While one practice in this district is to conditionally admit the statements subject to later connection, *see United States v. Geaney*, 417 F.2d 1116 (2d Cir. 1969), that practice would be unworkable here.  Because the statements the government seeks to admit constitute "so large a

proportion of [its anticipated] proof," if the evidence falls short of satisfying Rule 801(d)(2)(E), a later corrective instruction would be "of doubtful utility" and a mistrial would be required. *Tracy*, 12 F.3d at 1199. As Justice Jackson explained, "a conspiracy often is proved by evidence that is admissible only upon assumption that conspiracy existed. The naive assumption that prejudicial effects can be overcome by instructions to the jury all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (concurring).

The procedure used in *Ng* is a practical, efficient alternative that would not inconvenience the Court or the parties. And it avoids imposing on the jury the mental gymnastics required by the *Geaney* procedure. The Court should deny the government's in limine request and follow the procedure used in *Ng* here.

### B.    The Government's Rule 801(d)(2)(D) Arguments Are Premature And Overbroad

Like its request for rulings under Rule 801(d)(2)(E), the government's Rule 801(d)(2)(D) request is premature and fails. The government has not established the proper foundation to claim that any statements were made by Combs's "agent[s] or employee[s]" concerning a "matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). And its argument that alleged Victim-1 and Victim-2 were Combs's agents is unsupported by any law or evidence and is contrary to the meaning of "agent" in the rule.

Rule 801(d)(2)(D) provides that a statement is not hearsay if it "is offered against an opposing party and … was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D); *see Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 128-29 (2d Cir. 2005). Circuit courts agree that "not everything that relates to one's job falls within the scope of one's agency or employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998); *see also Litton Systems v. American Tel. and*

*Tel. Co.*, 700 F.2d 785, 816-17 (2d Cir. 1983) ("The fact that [company attorney] summarized what some [company] employees said about other employees in the course of his investigation does not bring the events he summarized within the 'scope of his agency or employment.'").  To be "within the scope," the declarant must be an "advisor or other significant participant in the decision-making process that is the subject matter of the statement."  *United States v. Rioux*, 97 F.3d 648, 661 (2d Cir. 1996).  And the declarant must have "authority to take action about which the statements relate."  *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 538 (2d Cir. 1992).  Not every comment made by an employee counts, and "expanding the rule to include statements made by any person who is subordinate to a party opponent"—as the government asks the Court to do here—would "create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted."  *United States v. Young*, 736 F.2d 565, 567 (10th Cir. 1983), *cited with approval in Zaken v. Boerer*, 964 F.2d 1319, 1322-23 (2d Cir. 1992).

        The government's motion is simply premature, and more evidence is required before ruling on the admissibility of any agency statements.  Even the government's caselaw does not support its motion.  In *United States v. Goldstein*, for example, the court denied in part the government's motion in limine regarding the bulk of its Rule 801(d)(2)(D) evidence, concluding it had "insufficient information to determine whether the … individuals the Government regards as agents within the scope of Rule 801(d)(2)(D) were sufficiently responsible to the Defendants." 2023 WL 3662971, at *7 (E.D.N.Y. May 25, 2023).  The court thus "reserve[d] judgment … until trial."  *Id.  United States v. Vilar* affirmed the admission of statements under Rule 801(d)(2)(D), but the district court there made its "preponderance of the evidence" finding only "after a lengthy colloquy" concerning the statements during trial and prior to the testimony.  729

F.3d 62, 87 (2d Cir. 2013).  Consistent with these cases, the Court should reserve decision until trial when it can properly rule on the admissibility of any proffered statements in context after considering the evidence.

Separately, the Court should deny the government's request for a pre-trial ruling that statements by alleged Victim-1 and Victim-2 are admissible under Rule 801(d)(2)(D).  The government's argument relies on an overbroad interpretation of the rule, and would render anyone who agrees to do any task for another person an "agent" of that person.  But that is not how agency law, or Rule 801(d)(2)(D), operates.  Rule 801(d)(2)(D) uses the term "agent" in a technical sense, and the rule thus requires "a fact-based inquiry" in which courts "apply[] common law principles of agency."  *United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010).  An "agent" is one who "act[s] on the principal's behalf and subject to the principal's control."  *Id.* at 506 (quoting *Restatement (Third) Agency* § 1.01).  And "[t]o form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent."  *Id.*  The government presents no such evidence.

Moreover, the government's request is legally unprecedented, and granting the request now would assume the defendant's guilt before the Court (or jury) even hears the evidence.  The government cites no authority for the proposition that an alleged sex trafficking or Mann Act victim becomes an "agent" of the defendant within the meaning of Rule 801(d)(2)(D).  And the question of whether the women acted on their own accord, or at Combs's sole behest as the government's argument assumes, will be the primary question at trial.  To decide the issue now would prematurely assume that Combs coerced and controlled the women, and thus presume his guilt.

Contrary to the government's argument, alleged Victim-1 and Victim-2 do not qualify as "agents," and the evidence will show that the women were not Combs's agents. ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████ ██████████████████████████████████

████████████████████████████████████████████

██████████████████████████ *See, e.g.*, Feb. 18, 2025 Geragos Decl., Ex. 18. The evidence will show that the women did not "depend[] on the defendant for instructions with respect to organizing the Freak Offs," Gov't MIL 20, and the government does not otherwise proffer any evidence rendering them "agents" within the meaning of the rule.

The Court should therefore reserve decision on the application of Rule 801(d)(2)(D).

## II.    THE COURT SHOULD RESERVE DECISION ON WHETHER PRIOR CONSISTENT STATEMENTS OF VICTIMS AND WITNESSES ARE ADMISSIBLE

The government seeks to admit the victims' prior statements. Although the government's argument is framed as an argument about prior consistent statements pursuant to Rule 801(d)(1)(B), the government also suggests that many of the statements will be admissible for non-hearsay purposes, to provide context for conversations between the victim and the defendant, and to show the declarant's state of mind under Rule 803(3). Gov't MIL 22.

As a general matter, Mr. Combs agrees with much of the government's position. For example, the government seeks to admit "Victim-1's text messages that discuss Freak Offs." Gov't MIL 26. Mr. Combs generally agrees that these text messages should be admitted— including those that are exculpatory and discuss ██████████████████████. And,

as discussed below, many of Mr. Combs's own statements in these conversations are also admissible for non-hearsay purposes and to show *his* state of mind under Rule 803(3), as well as under the rule of completeness.  In short, Combs agrees that the conversations between him and alleged victims regarding the FOs are relevant and admissible.[2]

To be sure, there may be portions of these conversations that are inadmissible hearsay, and some portions may be inadmissible under Rule 403 because they are unfairly prejudicial or needlessly cumulative.  Combs reserves the right to object on such grounds at trial and expects that the government may object to certain portions as well.  This Court can resolve those particular objections as they arise at trial.

As for Rule 801(d)(1)(B), the government's description of the legal standard is generally correct.  But there is no way to determine what statements are consistent with a witness's trial testimony until the witness testifies—and there is similarly no way to determine what statements are necessary to rehabilitate the witness's credibility until the witness's credibility is attacked.  Decisions on admissibility under Rule 801(d)(1)(B) should thus be reserved until trial.

## III.    THE DECEMBER 2011 911 CALL BY THE ALLEGED BURGLARY VICTIM IS INADMISSIBLE

The government seeks to admit a 911 call made by ██████████████ — reporting a break-in at his house.  But none of the hearsay exceptions cited by the government apply.  The government, as proponent, bears the burden of establishing by a preponderance of the evidence that the elements of the hearsay exception are satisfied.  *Bourjaily*, 483 U.S. at 175-76; *United States v. Camacho*, 353 F. Supp. 2d 524, 536 (S.D.N.Y. 2005); *see* Fed. R. Evid. 104(a).  The government has not, and likely cannot, meet that burden for any of the three

---

[2] Combs proposed an agreement with the government for reciprocal admissibility of these conversations, but the government declined.

exceptions it cites.[3]  Even if it could, admission of the hearsay would violate the Confrontation Clause.

### A.    The Government Has Not Established Personal Knowledge

As an initial matter, it is not clear that ███ himself had the requisite personal knowledge. Hearsay exceptions require the declarant to have personal knowledge of whatever he is reporting or describing.  "The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures," and excited utterances must similarly "rest on personal knowledge."  *Brown v. Keane*, 355 F.3d 82, 89-90 (2d Cir. 2004).  If ███ himself did not personally observe the events at his house and was only reporting what someone told him, then the statements are hearsay within hearsay.  *See* Fed. R. Evid. 805.

███████████████████████████████████████
█████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
███████████████████████████████████████
████████████████████████████████

In sum, the available evidence so far suggests that ██████████████████
██████████████████████████████████.  The government has

---

[3] The government's motion provides very little factual context—and the government did not even submit the 911 call recording as an exhibit.  Obviously this Court should, at a minimum, listen to the recording before ruling on its admissibility.  Mr. Combs therefore submits the recording as Exhibit A to this filing.

not established the requisite personal knowledge by a preponderance, and so its request to admit the 911 call should be denied. At a minimum, this Court should defer ruling on the issue until the fuller factual context is developed, including through █████ trial testimony.

### B.    The Government Has Not Established The Elements Of The Hearsay Exceptions It Cites

Personal knowledge aside, it is doubtful whether any hearsay exception applies. The government cites Rules 803(1), (2), and (3), but the contents of the call itself suggest that none of the three applies.

*First*, the government claims the 911 call is admissible under the present sense impression exception. But Rule 803(1) has a contemporaneity requirement—it only applies to statements describing an event "made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1); *see also id*. advisory committee's note (stating that only a "slight lapse" of time is allowed). Courts have held that to be admissible, statements must be made within a few minutes of the event. *See United States v. Ibanez*, 328 Fed. App'x 673, 675-76 (2d Cir. 2009); *see also United States v. Shoup*, 476 F.3d 38, 42 (1st Cir. 2007) (admitting 911 call made one or two minutes after event). The Second Circuit has stated that a delay of 15 to 45 or more minutes "hardly qualifies as 'immediately.'" *Hynes v. Coughlin*, 79 F.3d 285, 294 (2d Cir. 1996) (quoting *Hilyer v. Howat Concrete Co*., 578 F.2d 422, 426 n.7 (D.C. Cir. 1978)); *see also* Mueller & Kirkpatrick, *Federal Evidence* § 8:67 (4th ed. & 2023 update) ("More significant delays—those measured in minutes or hours …—bar resort to Rule 803(1) because they do permit time for reflection and lessen or remove the assurance of trustworthiness.").

In this instance, circumstances suggest that █████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████.

    *Second*, the government claims the 911 call is admissible as an excited utterance.  While it is true that Rule 803(2) does not have the same contemporaneity requirement as Rule 803(1), it nonetheless requires some degree of spontaneity.  "Spontaneity is the key factor," because the theory underlying the exception is "that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."  Fed. R. Evid. 803(2) advisory committee's note.  Thus, "[i]n order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation."  *Doe v. Darien Bd. of Educ.*, 110 F. Supp. 3d 386, 397 (D. Conn. 2015) (quoting *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir. 1980); *see also Federal Evidence*, *supra*, § 8:68 (stating the exception requires that the "the speaker was still laboring under stress that stilled reflective capacity")).

    That condition is not met here.  The recording does not demonstrate that ███ was laboring under some great stress that eliminated his reflective capacity.  To the contrary, he was remarkably calm—and "the exception does not apply if the speaker was not excited, even if another would be."  *Id*. ████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████  Ex. B at 2.  █████████████████████████

██████" *id.*, which he did.  *See Federal Evidence*, *supra*, § 8:68 ("Especially important are the degree of surprise or suddenness of the stimulus, and the physical and psychological distance of the speaker from the acts or events or condition that constitutes the stimulus ….").

Finally, and most importantly, the circumstances do not demonstrate spontaneity. ████ ███████████████████████████████████████████ ███████████████████████████████████████  Clearly, then, he had some time to reflect and deliberate—and fabricate.

*Third* and finally, the government argues—half-heartedly—that the statements in the 911 call are admissible under Rule 803(3).  That is not even a close call.  Rule 803(3) covers only statements about the declarant's "then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)."  Fed. R. Evid. 803(3).  In the 911 call, ████ is not describing his own condition—rather, he is describing an external event and the conduct of other people.  "[T]he exception reaches only statements describing present mental conditions and physical feelings," and it "does not allow statements to show *the external cause* of physical sensations."  *Federal Evidence*, *supra*, § 8:70.  Statements that are "merely commenting about external events [a declarant] perceived" are not covered.  *165 Park Row, Inc. v. JHR Development, LLC*, 2013 WL 6190346 at *3 (D. Me. Nov. 25, 2013).  The mere fact that some of ████ statements in the call were phrased with the words ██████ does not change the analysis—especially when the prosecution's obvious purpose is to prove the facts of the alleged burglary, not the declarant's state of mind.  *See Shepard v. United States*, 290 U.S. 96, 104-05 (1933) (statement by wife that she believed her husband poisoned her inadmissible to prove state of mind, because the government "used the declarations as proof of an act committed by some one else").

14

Rule 803(3) also does not allow backward-looking "statement[s] of memory or belief to prove … fact[s] remembered or believed."  Here, ▮▮▮ was describing a past event that took place perhaps an hour or more earlier.  That is not a statement of his own then-existing condition.

* * * *

Even if the government could point to a hearsay exception allowing admission of the 911 call, which it cannot, the evidence would be inadmissible under the Confrontation Clause.  It is testimony by a declarant describing past events to authorities—and accusing a person of a crime.  Although 911 calls are ordinarily non-testimonial, they cease to be so once an emergency has ended.  *See Davis v. Washington*, 547 U.S. 813, 828-29 (2006).  Here, the emergency had ended, because although ▮▮▮▮ was unaware of it, police had already arrived at the scene.  Moreover, he was calling to report an encounter that had ended, so he was describing "what happened," not "what is happening."  *Id*. at 830.  Consequently, his statements are also barred by the Sixth Amendment.

The 911 call should be excluded.

## IV.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE COMBS FROM OFFERING HIS OWN PRIOR STATEMENTS

The government appears to seek a categorical ruling precluding "the defendant from offering his own prior statements."  Gov't MIL 50.  Aside from being premature, that is a nonsensical request.  In this case, there are among other things thousands of text and voice messages between Mr. Combs and the alleged victims—some may be precluded by the hearsay rule, but many will not be, and there is no way to issue a categorical ruling in advance of trial.  While it is true that a defendant may not offer his own statements for the truth of the matter asserted under Rule 801(d)(2)(A), there are other paths to admissibility.

*First*, Mr. Combs's statements may be admitted for purposes other than their truth.  For example, some of the statements may be relevant to demonstrate the effect on the listener—for example, to explain the listener's state of mind or response.  Such statements are non-hearsay. *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006).  On the flip side, some statements may be admissible for the non-hearsay purpose of providing circumstantial evidence of the declarant's attitude, intent, or belief.  *Federal Evidence*, *supra*, §§ 8:22 & 8:23.  Some of the statements are questions and commands, which are not hearsay.  *United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012); *Quartararo v. Hanslmaier*, 186 F.3d 91, 98 (2d Cir. 1999).  More generally, some statements are nonassertive, reflexive verbalizing, or otherwise lacking factual content.  Because such statements do not assert anything that can be either true or false, they cannot be admitted for their truth, and are therefore non-hearsay.  *Federal Evidence*, *supra*, at § 8:10.

*Second*, Mr. Combs's statements may be admitted for the truth of the matter asserted if they fit within some exception to the hearsay rule.  Some exceptions that might be applicable in this case include: present sense impressions, Rule 803(1); excited utterances, 803(2); statements of the declarant's then-existing physical or mental condition, 803(3); business records, 803(6); and the residual exception, 807.  The asymmetry of Rule 801(d)(2)—that statements may only be offered against a party—does not apply to Rules 803 and Rule 807.  Thus, as the Second Circuit has held, a defendant may offer his own statements under Rule 803(3) to prove his innocent state of mind.  *United States v. DiMaria*, 727 F.2d 265, 271-72 (2d Cir. 1984); *see also Federal Evidence*, *supra*, § 8:71 ("The state-of-mind exception is necessary if a party seeks to prove his own mental condition by his statements. The exception is available to a criminal defendant, as

the basis for introducing his own statements to show, for instance, good faith, intent, knowledge, or coercion ….).

The government pulls a few quotes from cases out of context in an effort to show that the Second Circuit categorically bars a defendant from admitting his own statements.  Gov't MIL 50-51.  None of these cases, however, involved the applicability of other hearsay exceptions. And the Second Circuit has repeatedly made clear that a defendant can admit his own statements under exceptions if the elements of the exception are met.  *E.g.*, *United States v. Lea*, 131 Fed. App'x 320, 321-22 (2d Cir. 2005) (finding error where district court excluded defendant's statements, which should have been admitted under Rule 803(3)); *United States v. Lawal*, 736 F.2d 5, 8-9 (2d Cir. 1984) (same).

*Third*, Mr. Combs's statements may be admissible under the Rule 106, the rule of completeness.  That rule applies when one party admits a portion of some statement, and the remainder "ought to be considered at the same time" to avoid misleading the jury.  Fed. R. Evid. 106.  It requires an omitted portion of a statement to be admitted "if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion."  *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (quoting *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)).  The rule of completeness might apply in this case if, for example, the government admitted only a portion of a text exchange between Combs and one of his girlfriends, and the remainer were necessary to place the admitted portion in context or avoid misleading the jury about the overall tenor of the exchange.

* * * *

As noted above, the admissibility of hearsay must be determined on a statement-by-statement basis.  Again, the operation of the hearsay rule, and its exceptions, "require[s] assessment of … each assertion individually."  *Ojudun*, 915 F.3d at 885 (citing *Williamson*, 512 U.S. at 600-01).  Given the volume and variety of the statements potentially admissible in this case—as well as the ongoing uncertainty about the government's overall case, and what evidence it will introduce—there is no way to determine in advance which of Combs's statements will be admissible.  This Court should therefore deny the government's request for a categorical ruling and instead address these issues as they arise at trial.

The government requests in the alternative that the defense be ordered to "preview to the government" any statements it seeks to offer so that this Court can assess the admissibility of the evidence before it comes in.  Obviously, the defense agrees that this Court should address these issues as they arise at trial, and the defense will endeavor to provide reasonable notice for this and other evidence it offers at trial.  Nonetheless, the government's request for a special notice order for Combs's own statements is predicated on the false premise that the *only* path of admissibility is the rule of completeness.  Combs's own statements may be admissible for other purposes, as described above, and their admissibility can be determined at the time they are offered.

The government's request for a broad pretrial order should be denied.

## V.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO EXCLUDE ALL GOOD ACTS EVIDENCE

The government moves to preclude any defense evidence that Combs "engaged in certain consensual sexual encounters, including sexual encounters similar in kind to Freaks Offs, with women other than the" alleged victims.  Gov't MIL 54-56.   It further moves to preclude any

defense evidence of other "good acts involving his employment." *Id.* at 57. The government's requests should be denied.

Good acts evidence is usually not admissible because its relevance normally turns on impermissible propensity inferences that Rule 404(b)(1) prohibits. *See, e.g.*, *United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021). For example, the government is correct that Combs cannot argue that "because *other* women supposedly consented to Freak Offs, the victims in this case must have also consented." *See* Gov't MIL 54. However, evidence of Combs other sexual conduct is relevant and admissible when offered for another purpose. Indeed, good acts evidence "may be relevant" in a case like this one "where it is alleged the defendant has 'always' or 'continually' committed 'bad acts,' or where such 'good acts' 'would undermine the underlying theory of [the] criminal prosecution.'" *United States v. James*, 607 F. Supp. 3d 246, 257 (E.D.N.Y. 2022) (quoting *United States v. Balboa*, 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (citing *United States v. Damti*, 109 F. App'x 454, 455-56 (2d Cir. 2004))); *United States v. Santos*, 201 F.3d 953, 962 (7th Cir. 2000) ("good acts" evidence is relevant when it "cast[s] doubt on the government's theory"). Such is the case here with respect to both categories of evidence the government seeks to preclude.

With respect to Combs's prior consensual sexual activity with other women, such evidence is probative and admissible because it will be offered to negate the government's RICO allegations. For example, the government argues it will prove a RICO enterprise and a pattern of racketeering by demonstrating that alleged "members and associates" assisted the defendant by "set[ting] up … hotel rooms for the purposes of Freak Offs," "arranging travel," "replenishing supplies," and "cleaning hotel rooms." Gov't MIL 8-9; S3 Indict. ¶12(c). It will further argue that Combs engaged in a "persistent and pervasive pattern of abuse toward women and other

individuals," S3 Indict. ¶3, and that the alleged enterprise "constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of" facilitating the alleged sex trafficking, *id.* ¶8.  It seeks to prove a twenty year conspiracy by arguing that alleged "members and associates" knew Combs was abusing women and yet continuously facilitated his actions.  It cites "███████████████, among other employees," asserting they "were all co-conspirators" because they "were aware of the defendant's multiple assaults of female victims."  Gov't MIL 17.  But what if the evidence demonstrates that Combs engaged in similar consensual sexual activity with other women, and that the alleged "members and associates" facilitated that consensual activity in the same way they facilitated the activity the government alleges was criminal?  What if their knowledge with respect to the alleged criminal sexual activity was no greater than their knowledge with respect to the consensual sexual activity?  That evidence would tend to disprove any culpable knowledge or intent on the part of these individuals and make less likely the existence of any RICO enterprise that engaged in a pervasive, continuing pattern of abuse.[4]

The same logic applies to Combs's prior acts involving his businesses.  The government will argue at trial that the alleged enterprise included the "Combs Business."  S3 Indict. ¶2.  While Combs does not intend to offer evidence of irrelevant "unrelated good acts," Gov't MIL 57, rebutting the government's allegations and arguments may require eliciting evidence of prior acts or practices involving the Combs Business.

---

[4] This is not a controversial proposition.  Just as the law permits the government in a RICO case to "introduce evidence of uncharged criminal acts as background and to prove the existence of the racketeering enterprise and a pattern of racketeering activity," Dkt.215 at 12-13, so too does it permit the defense to rebut such evidence with other acts evidence of its own.

The Court should assess so-called "good acts" evidence just like any other "other acts" evidence. If its purpose is "to prove material facts other than … propensity," it is relevant and admissible. *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992). That is the case here with respect to the categories the government moved on, and the Court should reserve decision. *See United States v. Fiumano*, 2016 WL 1629356, at *7 (S.D.N.Y. Apr. 25, 2016) (reserving "decision on whether any ['good acts'] evidence the Defendant seeks to introduce is, in fact, inadmissible 'good acts' evidence").

## VI. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO EXCLUDE ALL EVIDENCE OF COMBS'S BACKGROUND

Mr. Combs will not be making jury nullification arguments at trial or attempt to elicit sympathy by referring to the possible punishment or consequences of this case. However, the government's request to preclude any discussion of his personal background—presumably excepting those aspects of his background that the government believes probative of its case—should be denied.

Mr. Combs's arguments, including his opening statement, will focus on the evidence. But a defendant is not precluded from providing the jury with some background information about his life and experiences, and we expect that many of the government's witnesses will testify that Mr. Combs's life and experiences inspired them to work for him and his businesses. For this reason, the district court has "wide discretion concerning the admissibility of background evidence." *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988). This includes the customary "evidence concerning [a defendant's] … education and employment," and other relevant background. *Id.* Accordingly, motions like the government's motion are routinely denied. *See United States v. Kosinski*, 16 Cr. 148 (VLB), 2017 WL 4953902, at *6 (D. Conn. Oct. 31, 2017) (denying without prejudice government's motion to exclude general

personal background such as defendant's age, basic information about his employment, and family background); *see United States v. Calonge*, 20 Cr. 523 (GHW), ECF 42 (S.D.N.Y. 2021) (denying "Government's motion in limine requesting that the Court exclude all evidence or argument regarding the Defendant's family background, health, age, or any other similar factors").

Indeed, it is highly likely that evidence of Combs's background and family circumstances will be directly relevant in this case. The government has alleged a far-reaching RICO conspiracy stretching back to 2004 and involving Combs's businesses and personal activities. The indictment involves multiple aspects of Combs's personal life—including his intimate personal relationships—and his personal life will be relevant at trial. The government has already noticed a purported expert witness hoping to offer opinions on topics such as coercive control and power dynamics in interpersonal relationships. Moreover, the government has previously suggested that certain of Combs's own family members are possible coconspirators. The Court will need to decide the relevance of any personal background evidence in the context of the trial evidence. But safe to say, much of the "personal factors" the government claims are irrelevant will be relevant at trial. Gov't MIL 58.

Of course, the Court's jury charge will likely incorporate the usual instructions that irrelevant factors such as sympathy are not to be considered by the jury—instructions the jury is perfectly capable of following here.

## VII. COMBS WILL NOT ARGUE TO THE JURY THAT THE CHARGES ARE VINDICTIVE, NOVEL, OR OTHERWISE IMPROPER

The defense has no intention of arguing to the jury that the charges are vindictive, novel, or otherwise improper. Thus, the government's request is moot. Obviously, evidence and argument that the government's investigation was inadequate or defective is relevant and

22

admissible.  *See Kyles v. Whitley*, 514 U.S. 419, 446, n.15 (1995).  As is evidence of any

preferential treatment, promises made, or favors given by the government to individuals involved

in the case.

**VIII.  COMBS SHOULD NOT BE PRECLUDED FROM CROSS-EXAMINING LAY AND LAW ENFORCEMENT WITNESSES WITH RESPECT TO ISSUES RELEVANT TO CREDIBILITY**

The government seeks an order precluding the defense from cross-examining its

witnesses on various "matters affecting credibility."  Gov't MIL 64.  Once again, this request is

both premature and overly broad.

The government first seeks to exclude various evidence of bad acts committed by lay

witnesses who will testify for the prosecution.  Its motion focuses on Rule 608(b).  *See* Gov't

MIL 68-69.  It is true, as the government argues, that Rule 608(b) only permits questions on

cross that relate to an act of dishonesty.  It is thus true that, without more, Rule 608(b) would not

permit a cross-examiner to ask a question about a witness's prior instance of domestic violence.

But Rule 608(b) is just one method of impeachment.  *See Federal Evidence*, *supra*, § 6:75

(discussing the five methods of impeachment).  Some of the acts cited by the government may be

admissible for other purposes.

For example, if a witness has committed an act that could result in criminal charges, or if

a witness has been convicted of a crime and is on probation, the witness may fear exposure to

sanctions.  The evidence of the witness's crime may thus be admissible to show the witness's

bias or interest in testifying for the government—even if it is not admissible to show the

witness's poor character for truthfulness.  *See Davis v. Alaska*, 415 U.S. 308, 316-17 (1974).

Similarly, while evidence of a witness's drug use would generally not be admissible under Rule

608(b), it could be admissible if it bears on the witness's ability to perceive or remember relevant

events.  *Federal Evidence*, *supra*, § 6.75 ("A second method of impeachment involves proof that

the witness labors under some incapacity that affects perception, memory, or ability to communicate.").  In short, even if this evidence is not admissible under Rule 608(b), it may be admissible for some other purpose.

And for evidence that is admissible under Rule 608(b)—such as evidence that a witness made false statements on a tax return—the defense need only show that it has a "good faith basis to believe [the witness] in fact made an untruthful statement on such returns."  *Rekor Systems, Inc. v. Loughlin*, 2023 WL 1777248 at *4 (S.D.N.Y. Feb. 6, 2023).  The government is of course correct that this Court may limit such questioning under Rule 403, but the government's claim that Rule 608(b) only applies to repeated acts of dishonesty "over a significant period of time" (Gov't MIL 74) has no basis in law.  And no special proffer is required—the cross-examiner need only have a good faith basis to ask the question.

As for the law enforcement witnesses, it may be true that a mere act of officer misconduct is not automatically admissible under Rule 608(b).  *See* Gov't MIL 74-75.  But some acts of misconduct involve false statements.  Evidence that an officer's partner shot a dog would not be admissible, Gov't MIL 74 n.25—but if the officer lied about the incident during the investigation, then evidence of the lies *would* be admissible.

Once again, the government's request for a categorical pretrial ruling rests on a cramped view of the law.  Whether impeachment evidence will be admissible will depend on the context in which it arises and the purpose for which it is offered.  The same is true of impeachment evidence for the government's law enforcement witnesses.

## IX.    COMBS SHOULD NOT BE DENIED A REBUTTAL EXPERT TO DEFEND AGAINST THE GOVERNMENT'S PROFERRED EXPERT

The government takes the unusual step of offering a witness to explain certain general concepts to the jury and then protests when the defense offers classic rebuttal evidence.  Dr.

Bardey, a preeminently qualified psychiatrist, will point to weaknesses and limits in the opinions

Dr. Hughes may offer, so the jury can evaluate them in proper context.  That is a textbook

example of what expert rebuttal testimony is for:  to highlight weaknesses in opinions the other

side's expert is attempting to present.  To deprive the defense of such rebuttal is to deprive Mr.

Combs of the opportunity to present his defense.

Like Hughes, Bardey has examined hundreds, if not thousands of alleged perpetrators and

alleged victims in cases of domestic and sexual abuse.  He has been qualified to give expert

testimony in such cases, including in a recent trial in this courthouse in which he testified on the

trauma suffered by an alleged victim of sexual assault.  Bardey disagrees with Hughes's opinion

that certain patterns are typical in such cases.  His opinion, like Hughes's, is based on his

professional training and experience and his review of the academic literature.  The defense

objects to Hughes' testimony and has moved to exclude it.  If Hughes testifies over defense

objection, Bardey must be permitted to present his contrary opinion to the jury.

A.    **The Federal Rules Contemplate Disagreement Among Experts**

The government spends most of its motion arguing that Hughes's opinion is correct and

that Bardey's disagreement with Hughes means he must necessarily be unqualified or "lack …

awareness of the vast academic literature in the areas of intimate partner violence and coercive

control."  Gov't MIL 85-86.  But "[t]he mere fact that an expert's testimony conflicts with the

testimony of another expert or scientific study does not control admissibility," and assuming the

rebuttal expert's testimony is reliable "it is the function of the factfinder, utilizing the

'conventional devices' of 'cross-examination, presentation of contrary evidence, and careful

instruction on the burden or proof,' to determine which is more trustworthy and credible."  *In re*

*Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) (Weinstein, J.) (quoting

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)); *see also* Fed. R. Evid. 702

advisory committee note (2000) ("When a trial court … rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable.").

Moreover, "the task of a rebuttal expert is different from that of an affirmative expert." *Capri Sun GmbH v. Am. Bev. Corp.*, 595 F. Supp. 3d 83, 138 (S.D.N.Y. 2022); *accord In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 78 (S.D.N.Y. 2017). Rebuttal experts have a "less demanding task," *Capri Sun*, 595 F. Supp. 3d at 138, and reliable "[r]ebuttal expert evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 2024 WL 4534791, at *2 (S.D.N.Y. 2024).

Here, Bardey will explain to the jury that not all professionals in the field agree with Hughes that perpetrators use certain typical methods to control their victims and that victims typically react in certain ways. For example, whereas Hughes will testify that certain victim reactions to trauma are "common" or "typical," Bardey will explain that victims react in many different ways and "[t]here is no clear empirical evidence to demonstrate which of these behaviors is most common." Hughes Disclosure 4-5; Bardey Disclosure 1. Whereas Hughes will testify that trauma victims "typically will … use minimizing or distancing language," Bardey will explain that it is also the case that alleged victims "use maximizing language." Hughes Disclosure 4; Bardey Disclosure 3-4. Whereas Hughes will explain that "the overarching dynamic of victimization is an abuse of power and control" (whatever that means), Bardey will opine that the science does not support the reduction of complex human relationships to a paradigm of "coercive control" that, in Hughes's telling, is little more than a multi-factor checklist that, regardless of the combination, supports a finding of coercion. Hughes Disclosure 2; Bardey Disclosure 3.

Hughes's opinions will not help the jury determine the truth in this case, are not based on sound science, and will cause unfair prejudice and confusion. *See* Dkt.206. They should be excluded. But if Hughes is permitted to testify, Bardey must be permitted to rebut her view of the science and put her opinions in context.

### B.    Bardey's Opinion Has A Sufficient Foundation

Bardey is highly qualified to give the opinion outlined in his expert disclosure. Despite this, the government claims that Bardey "does [not] have a background in coercive control or intimate partner violence." Gov't MIL 87. This is nonsense. Bardey has examined hundreds, if not thousands, of alleged perpetrators *and* alleged victims, of interpersonal violence, including in cases of alleged sexual abuse and domestic violence. In 2022, in this courthouse, he testified before Judge Kaplan in rebuttal of a plaintiff's expert's opinion that the plaintiff suffered delayed onset post-traumatic stress disorder because of the alleged assault by the defendant, the actor Kevin Spacey. *Rapp v. Fowler*, 20-cv-9586 (S.D.N.Y.). Bardey has also examined defendants alleged to be victims of domestic violence for purposes of resentencing under the New York Domestic Violence Survivors Justice Act, C.P.L. §440.47(1), and testified to the abuse suffered by defendants in such cases.[5] He has also examined alleged victims and given deposition testimony in a number of sexual abuse cases. Ex. C. And the cases in which Bardey has given testimony are just a fraction of the many cases of sexual abuse and intimate partner violence in which Bardey has conducted examinations. The government's perfunctory reference to the rebuttal expert excluded in *United States v. Ray*, 20-cr-110, ECF 329 (S.D.N.Y), who lacked "any background or experience in victimization, coercive control, or interpersonal violence," Gov't MIL 87, is therefore a long way off base.

---

[5] A revised summary of Bardey's expert testimony and depositions is annexed as Exhibit C.

The government also argues that Bardey's opinions are "not based on the scientific literature." Gov't MIL 76; *see also id.* at 80 (criticizing Bardey for not "providing any research"), 83 (arguing that Bardey "offers no basis in scientific literature"), 87 ("Bardey's opinion … lacks any basis in the empirical literature"). This is not true, and Bardey will supplement his disclosure with citations to relevant articles should the Court deem it necessary. But an "expert need not cite any records or scientific literature he relied upon," *United States v. Ray*, 2022 WL 101911, at *6 (S.D.N.Y. Jan. 11, 2022), and "there is no requirement in the Federal Rules of Evidence or controlling case law that requires an expert to draw from published materials in crafting an opinion," *United States v. Tuzman*, 2021 WL 1738530, at *34 (S.D.N.Y. May 3, 2021); *see also Amorgianos v. Nat. R.R. Pass. Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (holding that an expert need not "back his or her opinion with published studies that unequivocally support his or her conclusions").

Bardey has extensive professional experience in the relevant area. He has extensively reviewed the relevant literature, including the articles and other sources relied on by Hughes, which often contradict her opinions. Dkt.206 at 14-18. He is unquestionably qualified to give the opinions in his disclosure.

### C.    Bardey's Opinion Will Help The Jury

The government's argument that Bardey's opinion is inadmissible under Rule 702(a) is mostly scattershot rhetoric unconnected to the opinions Bardey will actually offer. The government claims that Bardey's opinion will "invade[] the province of the jury." Gov't MIL 80. But it does not say how, and Bardey's opinion, entirely focused on the limitations of Hughes's opinion, plainly does no such thing. The government also alleges that "Bardey's opinions fail to *adequately* respond to the opinions proffered by" Hughes. *Id.* (emphasis added). What the government means is that it disagrees with Bardey's opinions and agrees with

Hughes's. That's no ground for excluding Bardey's testimony. The government simultaneously argues that Bardey's opinions are "within the ken of the average juror" and "altogether unreliable [and] outside the range where experts might reasonably differ." *Id.* at 87. And it chides Bardey for not offering his own "definition" of coercive control, Gov't MIL 86-87, failing to understand that as a rebuttal expert Bardey has "no burden to produce models or methods of [his] own" but "need only attack those of [the government's] expert." *Capri Sun GmbH*, 595 F. Supp. 3d at 138.

Finally, the government argues that Hughes will not disagree with "certain opinions" offered by Bardey. Gov't MIL 87. The government then gives two examples—"*some* reports of sexual assault are false"; "*some* memory lapses can result from 'prevarication,' rather than sexual trauma"—but then describes these opinions as "well within the ken of the average juror." *Id.* (emphasis added). The government is distorting both Hughes's and Bardey's expected testimony. Hughes will not testify that some victims react in certain ways and others in others: she will testify that there are certain "typical" behaviors seen in both the actions of perpetrators and victims. *See* Dkt.206 at 2-3. Typical means "combining or exhibiting the essential characteristics of a group," Merriam-Webster, merriam-webster.com/dictionary/typical. Bardey will not only testify that "some" victims act in a manner different to what Hughes describes as "typical": he will testify that there is no empirical scientific basis to conclude that the supposed victim behaviors described by Hughes are "typical," *i.e.*, characteristic of the group of people who are victims. Bardey and Hughes disagree on this crucial point—to the extent either testifies, both must testify.

Just as Hughes will (in the government's view) provide some helpful concepts to put the government's lay witness testimony in context and help the jury evaluate it, Bardey will provide

some helpful concepts to put the government's expert witness testimony in context and help the jury evaluate it. That is what rebuttal witnesses do. They point to the limits of and poke holes in the opening expert's testimony.

A defendant must be provided "a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Indeed, the Second Circuit readily reverses convictions where defense evidence rebutting the government's case or impeaching a witness was excluded. *See, e.g.*, *United States v. Stewart*, 907 F.3d 677 (2d Cir. 2018); *United States v. Scully*, 877 F.3d 464 (2d Cir. 2017); *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015). If Hughes is allowed to testify, then both the Rules of Evidence and due process require that Combs be permitted to offer Bardey's testimony in rebuttal.

## **CONCLUSION**

For the foregoing reasons, the government's motions *in limine* should be denied, or decision reserved, pending further context at trial.

Date: April 12, 2025       Respectfully Submitted,
   New York, NY

               /s/Alexandra A.E. Shapiro
               Alexandra A.E. Shapiro
               Jason A. Driscoll
               Shapiro Arato Bach LLP
               1140 Ave of the Americas, 17th Fl.
               New York, NY 10036
               (212) 257-4881
               ashapiro@shapiroarato.com
               jdriscoll@shapiroarato.com

               Marc Agnifilo
               Teny Geragos
               AGNIFILO INTRATER
               445 Park Ave., 7th Fl.
               New York, NY 10022
               646-205-4350
               marc@agilawgroup.com
               teny@agilawgroup.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com