# AGNIFILO
# INTRATER

April 21, 2025

<u>VIA EMAIL</u>
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

    We respectfully submit this letter to supplement our opposition to the government's motion *in limine* to protect the identities of certain victim-witnesses, dated April 2, 2025 ("Motion"). At the April 18 conference, the Court granted the government's motion and agreed that the defense may submit a short letter offering further argument that the individual circumstances of Alleged Victim-3 ▓▓▓▓▓▓ and Alleged Victim-4 ▓▓▓▓▓▓ demonstrate that the Court should not permit them to testify using pseudonyms.

    In agreeing that alleged Victim 2 should be permitted to testify under a pseudonym, but not 3 or 4, the defense analyzed the particular factors for each witness. We agreed that Victim 2 faced particularized and unique challenges if her name was used (having nothing to do with Mr. Combs). This assessment was based on Victim 2's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Victims 3 and 4 are in a different category. While it may be that the government prefers for Victims 3 and 4 to not use their names, the government's preferences (which do not seem to align with the alleged victims') are outweighed by other factors, including the defendant's constitutional rights and the rights of the public and the press to an open trial. As shown below, both Victims 3 and 4 have been publicly identified because of their relationships with the defendant. Also, the relative ambivalence of each reflects the lack of a demonstrated history of negative consequences stemming from their relationships with Combs. A detailed analysis of the individual factors related to each witness must be conducted.

    There is no binding precedent in this Circuit endorsing the constitutionality of allowing alleged victims of sex crimes to testify with a pseudonym over the objection of the defense. In its Motion, the government cites only three criminal cases where victim witnesses were permitted to use pseudonyms over the defense's objections where (i) the conduct involved sexual offenses that occurred when the witnesses were adults, and (ii) there was no risk of endangerment from reprisals—*United States v. Marcus*, No. 05 Cr. 457 (ARR), 2007 WL 330388 (E.D.N.Y. Jan. 31, 2007), *United States v. Martinez*, 17 Cr. 281 (BMC), Dkt. 34 (E.D.N.Y.), and *United States v. Raniere*, No. 20 Cr. 3520, 20 Cr. 3789, 2022 WL 17544087 (2d Cir. Dec. 9, 2022) (summary order). All three opinions are unpublished and non-binding.

Hon. Arun Subramanian
April 21, 2025

There is good reason for the lack of precedent in this area. The government has only recently adopted a regular practice of seeking to preclude the disclosure of victim identities in cases involving allegations of sexual misconduct. But alleged victims of sexual misconduct have no codified right to testify anonymously and should not be permitted to do so here with only speculated harm to them if they testify with their true names. While we appreciate the difficult positions that such witnesses are in, they are not, by law, entitled to any greater protection than victims of other crimes, many of whom are also subjected to potential adverse impacts from disclosing their identities in a public trial. *See United States v. Wiggins*, 2013 WL 12093020, at *3-4 (W.D. Tex. July 16, 2013) (rejecting argument that it was necessary for alleged victims to testify without disclosing their last names because they had "a fear or retaliation, and allowing disclosure of their identities w[ould] subject them to further trauma and embarrassment" and holding that "the Government has not shown that any witness in this case faces a serious safety threat if her identity is disclosed"). Indeed, as set forth in our opposition to the government's motion to allow these witnesses to proceed under pseudonyms, Mr. Combs's constitutional rights to confrontation and due process—as well as the public's and press's constitutional and common law rights to an open trial—would trump any such concerns.

Nevertheless, while fully preserving the constitutional arguments made in Mr. Combs's opposition, which the Court has rejected, we urge the Court to consider, in the alternative, a fact-specific balancing test that weighs the specific articulable harm to the witness against the defendant's confrontation and public trial rights. We respectfully submit that, at a minimum, there is a presumption of full disclosure absent codified protections for alleged victims of sex offenses.

This was the approach that the court took in the highly publicized Pennsylvania prosecution against Jerry Sandusky. *See Commw. v. Sandusky*, 14 Cr. 2421, 14 Cr. 2422 (Pa. Commw. Ct. June 4, 2012). There, the court rejected the motions of five adult victims to proceed using pseudonyms when testifying to incidents that occurred when they were minors.[1] The victims argued that "exposing their names would subject them to shame, ridicule and harassment," with one even submitting an affidavit from his psychologist stating that disclosure of his name "could trigger symptoms of post-traumatic stress disorder and interfere with the young man's treatment and recovery." *Id.* The court, however, denied the request, finding that while state law allowed child victims of sexual assault to shield their identities, there was no parallel for adult victims. *Id.*[2] Rejecting arguments that requiring the witnesses to use their identities was particularly harmful in sex offense cases because it would chill victims' willingness to come forward, the court held that alleged victims of sex offenses were not entitled to special protections:

> Arguably any victim of any crime would prefer not to appear in court, not to be subjected to cross-examination, not to have his or her credibility evaluated by a jury - not to put his name and reputation at stake, … [b]ut we ask citizens to do that every day in courts across the nation.[3]

---

[1] Michael Rubinkam, "Accusers to be unmasked at Penn State trial," NBC NEWS (June 4, 2012). Available at https://www.nbcnews.com/id/wbna47727682.

[2] The court issued its opinion in 2012, years after the 2004 enactment of the Crime Victims' Rights Act, which applies to victims of federal and state crimes alike.

[3] Brad Segall and Ben Simmoneau, "Judge In Jerry Sandusky Case Denies Accusers' Bid For Pseudonyms; Bans Tweeting," CBS NEWS (June 4, 2017). Available at https://www.cbsnews.com/philadelphia/news/judge-in-jerry-sandusky-case-denies-accusers-bid-for-pseudonyms-bans-tweeting/.

Hon. Arun Subramanian
April 21, 2025

"Courts are not customarily in the business of withholding information," the court noted, finding that the defendant's interest in an open trial trumped the potential harm to alleged victims and that "secrecy is thought to be inconsistent with the openness required to assure the public that the law is being administered fairly and applied faithfully." *Id.*

Here, the government cannot rebut a presumption of full disclosure by showing that there is a compelling need to protect the identities of Victim-3 and Victim-4. Numerous factors counsel in favor of disclosure of Victim-3's identity. First, ▇▇▇▇ is ambivalent about testifying under her real name. After multiple telephone calls with ▇▇▇▇ counsel, the defense understands that ▇▇▇▇ feels "meh" about using a pseudonym. Second, ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* The government's argument that she hasn't disclosed the full nature of her relationship with Mr. Combs publicly—that's true of Victim-1 as well, but the government understands that she must testify publicly. It would be nearly impossible for either of them to describe the full nature of the ▇▇▇▇ relationships with Combs prior to the trial. In addition, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Third, any efforts to keep ▇▇▇▇ identity a secret ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Indeed, the government seeks to offer evidence that Mr. Combs coerced ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Gov't Gov't Opposition to Defendant's Motions *in Limine* at 39-48. In light of these facts, the government has failed to point to an articulable harm that will likely result from disclosure of ▇▇▇▇ name.

Similar factors weigh in favor of disclosure of Victim-4's identity. Like ▇▇▇▇ ▇▇▇▇ does not feel strongly about testifying using her real name. Jencks Act material produced after court on April 18, 2025, state that she ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ 3504-044 at 1. ▇▇▇▇ voluntary and public disclosure of her ▇▇▇▇ with Mr. Combs should serve as a waiver of the relief the Government seeks here. However, even more fundamentally, and this is especially true as to Victim 4, her testifying publicly under her name serves an important truth-finding function. Among the reasons behind the over-230-year tradition of having witnesses in criminal cases testify publicly under their names is so that if someone learns that the witness said something that is wrong, a lie or mistaken, that person can come forward to one of the parties and offer to correct it. As stated during the oral argument, the large volume of coverage in this case makes that dynamic, which is present in all cases, all the more powerful. The defendant should not lose that fundamental right in the truth-finding function of public trials due to the plainly insufficient record made in this case.

These facts cannot overcome the burden that attempting to conceal ▇▇▇▇ identity places on the defense. If the media cannot report ▇▇▇▇ name, individuals with information that may impeach her credibility may be prevented from coming forward. Such a situation is not just hypothetical: Several witnesses discussed with the defense information about

3

▮▮▮▮▮▮▮▮▮▮ relationship during ▮▮▮▮▮▮ tenure at Combs Enterprises[4] after ▮▮▮▮▮▮▮▮▮▮. This is distinguishable from *Marcus*, where the court found that the victim witnesses could use pseudonyms because "the defendant's contention that there may be witnesses who come forward during trial with information after learning the witnesses'[] full names [wa]s purely speculative." 2007 WL 330388, at *2. For these and all the reasons set forth in our opposition to the government's Motion, we continue to object to Victim-3 and Victim-4 testifying under pseudonyms.

Respectfully submitted,

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Alexandra Shapiro
Jason Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com

---

[4] It is not the case that that based on the public filings to date that potential defense witnesses know who Victim-4 is. When counsel referred to Victim-4 "putting herself out there publicly," counsel was referring to the ▮▮▮▮▮▮ ▮▮▮▮▮▮ (4/18/25 Tr. at 69.)

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮