UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

 -v.-

SEAN COMBS,
 a/k/a "Puff Daddy,"
 a/k/a "P. Diddy,"
 a/k/a "Diddy,"
 a/k/a "PD,"
 a/k/a "Love,"
         Defendant.

S3 24 Cr. 542 (AS)


# THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE CONOR McCOURT'S EXPERT TESTIMONY


MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Maurene Comey
Meredith Foster
Emily A. Johnson
Christy Slavik
Madison Reddick Smyser
Mitzi Steiner
Assistant United States Attorneys
*Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 1

APPLICABLE LAW ................................................................................................. 5

    A.    Federal Rule of Criminal Procedure 16 ............................................. 5

    B.    Federal Rules of Evidence 702, 703, and 704 ................................... 6

        1.    Rule 702 ............................................................................... 6

        2.    Rule 703 ............................................................................... 8

        3.    Rule 704 ............................................................................... 8

    C.    Federal Rules of Evidence 401 and 403 ............................................ 9

DISCUSSION ........................................................................................................... 9

    A.    McCourt's Expert Testimony Should Be Precluded Given Defendant's Untimely Notice ................................................................................. 9

    B.    McCourt's Testimony Should Be Precluded Under Rule 403 ........... 10

    C.    McCourt's Testimony Must Be Precluded, or in the Alternative Substantially Limited, Under Rule 702 ............................................. 12

CONCLUSION ...................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

Cases

*Amorgianos v. Nat'l R.R. Pass. Corp.*,
   303 F.3d 256 (2d Cir. 2002) ................................................................ 7, 13

*Bourjaily v. United States*,
   483 U.S. 171 (1987) .............................................................................. 6

*Carpenter v. United States*,
   585 U.S. 296 (2018) .............................................................................. 6

*Chambers v. Mississippi*,
   410 U.S. 284 (1973) ............................................................................ 10

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ................................................................. 6, 7, 9, 13

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .............................................................................. 7

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008) ................................................... 8

*Hygh v. Jacobs*,
   961 F.2d 359 (2d Cir. 1992) ............................................................. 8, 9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .............................................................................. 7

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ............................................... 7, 12, 14, 15

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) ................................................................... 16

*United States v. Felder*,
   993 F.3d 57 (2d Cir. 2001) ................................................................. 14

*United States v. Fuentes*,
   563 F.2d 527 (2d Cir. 1977) ............................................................... 13

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2012) ............................................................... 14

*United States v. Ida*,
   No. 96 Cr. (LAK), 1997 WL 122753 (S.D.N.Y. Mar. 18, 1997)..........................................13

*United States v. Lee*,
   834 F.3d 145 (2d Cir. 2016) ...........................................................................................6

*United States v. Mejia*,
   545 F.3d 179 (2d. Cir. 2008) ...........................................................................................8

*United States v. Mulder*,
   273 F.3d 91 (2d Cir. 2001) .............................................................................................15

*United States v. Nersesian*,
   824 F.2d 1294 (2d Cir. 1987)...........................................................................................9

*United States v. Sovie*,
   122 F.3d 122 (2d Cir. 1997) ....................................................................................12, 13

*United States v. Ulbricht*,
   858 F.3d 71 (2d Cir. 2017) ...................................................................................6, 9, 10

*United States v. Vayner*,
   769 F.3d 125 (2d Cir. 2014) ...........................................................................................16

Rules

Fed. R. Crim. P. 16............................................................................................................5, 6
Fed. R. Crim. P. 16(b)(1)(C)(i)...............................................................................................5
Fed. R. Crim. P. 16(b)(1)(C)(ii)..............................................................................................5
Fed. R. Evid. 401..................................................................................................................9
Fed. R. Evid. 702(a).............................................................................................................11
Fed. R. Evid. 703..................................................................................................................8
Fed. R. Evid. 704(b).............................................................................................................8

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion to preclude expert testimony of Conor McCourt, a purported forensic video expert. McCourt has analyzed video footage of the defendant's brutal assault of ███████ during a Freak Off at the Intercontinental Hotel on or about March 5, 2016. The defendant first moved to preclude this powerful footage, (*see* Dkt. 243), and in the event that motion is rightfully denied, the defendant seeks to call McCourt as an expert witness to challenge the authenticity of this footage before the jury. The Court should not permit McCourt do so. As set forth below, the notice is untimely and likely to confuse the jury despite limited probative value. His testimony should therefore be excluded in its entirety. And in the event the Court permits some portion of the testimony to be introduced, it should be limited to the parameters of Rules 702 and 403.

## BACKGROUND

On January 8, 2025, the Court ordered that the defendant provide his expert notices no later than March 14, 2025. (Dkt. 125). Although the defendant had retained Conor McCourt, a video technician and analyst, four months before this deadline, he did not provide a Rule 16 notice for McCourt at that time.[1] On March 18, 2025, defense counsel advised the Government for the first time that McCourt was expected to provide testimony at trial about surveillance footage of the March 2016 Intercontinental Hotel assault of ███████ similar to what was presented in Exhibit

---

[1] The defendant originally retained McCourt to examine surveillance footage of the defendant's March 5, 2016 assault of ██████ at the Intercontinental Hotel in connection with his renewed motion for bail. (*See* Dkt. No. 81, Ex. D). The facts of this assault are laid out in the Government's opposition to the defendant's motion to preclude all videos from the Intercontinental Hotel and are incorporated herein. (Gov't Opposition to Defendant's Motions *in Limine*, dated Apr. 12, 2025 ("Gov't MIL Opp.") at 24-26).

1

D of the defendant's November 21, 2024 bail motion, (*see* Dkt. 81, Ex. D). (Ex. A at 1).[2]  Despite McCourt's anticipated testimony including his determination that the video surveillance was "not a fair and accurate representation of actual life and the events that happened that day," (Dkt. 81, Ex. D at 15:22), clearly constituting expert testimony, defense counsel asserted that McCourt would testify as a fact witness.   The parties conferred further on March 20, 2025, and the Government requested Rule 16 notice, both during the meet and confer and later by writing.   In particular, the Government requested that the defense provide notice as soon as possible if they expected McCourt "to testify at trial to anything more than audio or video enhancement, including testimony similar to ECF 80, Ex. D."  The Government explained that it "need[ed] this notice to assess, among other things, whether a rebuttal expert is necessary."  Notwithstanding these specific requests, the defendant failed to provide notice for McCourt until April 3, 2025.

The defendant's expert notice for McCourt consists of a letter attaching McCourt's affidavit that was submitted to the Court in connection with the defendant's motion *in limine* to preclude any videos depicting the Intercontinental Hotel assault of ███████  The letter and the affidavit are attached hereto as Exhibits B and C respectively.   The letter states that "[t]he subject matter of Mr. McCourt's testimony" regarding the Intercontinental Hotel videos, "and the opinions that he has formed regarding the videos, are set forth in the affidavit."  (Ex. B at 1).  Neither the letter nor affidavit comported with Rule 16.  For instance, neither contained the publications that McCourt had authored in the past ten years or a list of cases in which he had testified as an expert in the past four years.  *See* Fed. R. Crim. P. 16(b)(1)(C)(iii).  On April 10, 2025, after the parties conferred further regarding the insufficiencies in McCourt's notice, defense counsel informed the

---

[2] This defendant sent this letter only after the Government, having received no expert disclosure from the defense, wrote to confirm that the defendant was not seeking to call any expert witnesses other than what the defendant previewed in court as a pharmacology expert.

Government that McCourt did not have any publications and provided the list of cases in which he had testified as an expert.

According to the affidavit, McCourt will offer opinions concerning certain videos the Government expects to offer at trial, including three videos of surveillance footage provided by CNN, (Dkt. 245, Exs. I-2, I-3, and I-4 (the "CNN Surveillance Videos")), and two cellphone videos ███████████████████████████ of the Intercontinental Hotel's security system, (Dkt. 245, Exs. C and D (the "Cellphone Videos"). (Ex. C. ("McCourt Aff.") ¶ 9). McCourt also offers opinions regarding two videos of footage aired on the network, (Dkt. 245, Exs. A and I-1 (the "CNN Broadcast Videos")), but because these videos will not be offered at trial, this portion of his notice—and his anticipated testimony—is irrelevant and moot.

Based on his observations of the video footage, McCourt noticed certain alleged "technical issues" in the footage, which he claims "greatly affect a viewers' perception of recorded events," (McCourt Aff. ¶ 27). As relevant, these alleged issues include McCourt's observations that:

- the CNN Surveillance Videos and the CNN Broadcast Videos are "artificially sped up," (*id*. ¶ 18), which he claims has the effect of "depict[ing] faster, and seemingly more urgent action," (*id*. ¶ 15);

- the CNN Surveillance Videos and the CNN Broadcast Videos have "digital visual distortion that is not native to the file," (*id*. ¶ 18), which McCourt believes is a result of a process called transcoding, in which a video is converted from one file type to another, (*see id*. ¶¶ 16, 18, 25);

- the Cellphone Videos have a "distorted . . . aspect ratio" as a result of the wide angle of Individual-3's iPhone filming the Intercontinental Hotel's security screen "causing distortion of [the defendant's] actual stature, (making [him] look heavy set)," (*id*. ¶ 18), which McCourt alleges makes the defendant "appear more domineering" than he was, (*id*. ¶ 17);

---

[3] The Government uses the same identifiers in this memorandum as referenced in the Enterprise Letters previously provided to the defense and the Court.

- the Cellphone Videos "do not have their respective file names (IMG_XXXX)," so McCourt is "unable to determine whether the two files are sequential or not," (*id.* ¶ 17), and

- all the videos have "conflicting and inaccurate" time stamps, (*id.* ¶ 18).

In addition to these observations, the affidavit also lays out a number of McCourt's opinions. First, because the Cellphone Videos lack their original file names, McCourt states that he is "wary of their authenticity." (*Id.* ¶ 17). Second, McCourt comments that "[t]he possibility of editing can not be ruled out as none of [the] video is original, but all transcoded copies." (*Id.* ¶ 25). Third, McCourt claims that "[t]he distortions in all of the available video files make it impossible to determine what the original video footage depicted in any reliable way," (*id.* ¶ 18), and that "[t]he transcoded nature of all the video make it impossible to know what the original video file actually depicted," (*id.* ¶ 25). Finally, McCourt states that it is his opinion that none of the available videos are original, nor are they "accurate and reliable copies of the original." (*Id.*).

On April 21, 2025, the Government responded to the defendant's motion to preclude video footage from the Intercontinental Hotel, attaching an affidavit from Frank Piazza, a certified video technician who also examined the CNN Surveillance Videos, the CNN Broadcast Videos, and the Cellphone Videos. (Gov't MIL Opp., Ex. B ("Piazza Aff.")). Like McCourt, Mr. Piazza found there were certain distortions in the Cellphone Videos, such as the aspect ratio. (Piazza Aff. ¶ 17). In addition, he found that one of the CNN Surveillance Videos, Defense Exhibit I-3, had a faster frame rate than the Cellphone Videos and momentary glitches when there is accelerated motion, likely as a result of the export and/or conversion process.[4] (*Id.* ¶¶ 24-25). Mr. Piazza explained that the distortions in the Cellphone Videos could be corrected, and that Defense Exhibit I-3 could

---

[4] Mr. Piazza's analysis of Defense Exhibits I-2 and I-3 was ongoing at the time he signed his affidavit. (*See* Piazza Aff. ¶¶ 10, 22).

be slowed down to match the frame rate of the Cellphone Video and the original surveillance footage displayed on the Intercontinental Hotel's surveillance system (the "Original Footage"), which was captured by the Cellphone Videos. (*See id.* ¶¶ 16, 24). Mr. Piazza concluded that there was no evidence of manual editing or tampering in the videos, and that the Cellphone Videos and at least one of the CNN Surveillance Videos, Defense Exhibit I-3, are reliable depictions of the Original Footage. (*Id.* ¶¶ 10, 27).

## APPLICABLE LAW

### A. Federal Rule of Criminal Procedure 16

Rule 16(b) governs the defendant's duty to disclose evidence to the Government. The defendant's obligations with regard to experts are laid out in Rule 16(b)(1)(C). That subsection provides that at the Government's request, the defendant must provide a written disclosure for any expert witnesses he intends to call, which "must contain a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(b)(1)(C)(i), (iii). Under this rule, the court "must set a time for the defendant to make the defendant's disclosures," which "must be sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence," Fed. R. Crim. P. 16(b)(1)(C)(ii), including the time needed to secure an "expert to respond to expert testimony disclosed" by the defendant, Fed. R. Crim. P. 16, advisory committee notes to 2022 amendment.

"The purpose of the expert disclosure requirement is to 'minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the

opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" *United States v. Ulbricht*, 858 F.3d 71, 114 (2d Cir. 2017) (quoting Fed. R. Crim. P. 16, advisory committee's note to 1993 amendment)), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). "With increased use of both scientific and nonscientific expert testimony, one of counsel's most basic discovery needs is to learn that an expert is expected to testify." Fed. R. Crim. P. 16, advisory committee's note to 1993 amendment.

"If a party fails to comply with Rule 16, the district court has 'broad discretion in fashioning a remedy,' which may include granting a continuance or 'ordering the exclusion of evidence.'" *Ulbricht*, 858 F.3d at 115 (quoting *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016)).

## B. Federal Rules of Evidence 702, 703, and 704

Rules 702, 703, and 704 of the Federal Rules of Evidence govern the admissibility of expert testimony.

### 1. Rule 702

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party that proffers the testimony bears the burden of showing that it is admissible by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 & n.10 (1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). A

district court's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

A threshold issue is whether the witness "is qualified to be an 'expert'" in the subject matter at issue. *See Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). Testimony from a qualified expert is admissible only if the trial court determines that it is both relevant and reliable. *Daubert*, 509 U.S. at 589-90; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Specifically, in *Daubert*, the Supreme Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597.

Applying Rule 702, the Court must determine whether the expert's reasoning and methodology underlying his testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury. *See Kumho Tire*, 526 U.S. 137. The reliability inquiry is flexible and "must be tied to the facts of a particular case." *Id.* at 150 (citations and internal quotation marks omitted). The Second Circuit has emphasized that "it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Pass. Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* Minor flaws with an otherwise reliable expert opinion will not bar admission of that evidence; however, the Court should exclude the expert evidence "if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* (quotation marks omitted).

2.    **Rule 703**

Though an expert may base an opinion on facts or data upon which other "experts in the particular field would reasonably rely," Rule 703 of the Federal Rules of Evidence precludes an expert from disclosing to the jury "facts or data [that] would otherwise be inadmissible" unless the court determines that their probative value "substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Thus, experts cannot be used as a substitute to calling witnesses to the events or facts at issue. Any testimony along these lines would constitute impermissible hearsay. *See, e.g.*, *United States v. Mejia*, 545 F.3d 179, 197 (2d. Cir. 2008) ("The expert may not, however, simply transmit hearsay to the jury. . . . Otherwise, the expert is 'simply repeating hearsay evidence without applying any expertise whatsoever.'") (citations and quotations omitted); *see Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180, 183 (S.D.N.Y. 2008) ("[The expert] has no personal knowledge of these facts and they are lay matters that the jury is capable of understanding and deciding without [the expert's] testimony.").

3.    **Rule 704**

Rule 704(b) places an additional limitation on expert testimony. The rule states:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the offense or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b).

Moreover, a district court must exclude expert testimony that "expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (collecting cases). As the Second Circuit explained, "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." *Id.* at 364. Further, an expert "is not qualified

to compete with the judge in the function of instructing the jury." *Id.*; *see United States v. Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987) (recognizing the risk "that an expert may come dangerously close to usurping the jury's function").

### C. Federal Rules of Evidence 401 and 403

Rules 401 through 403 provide that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citation and quotations omitted).

### <u>DISCUSSION</u>

The defendant's expert notice for McCourt is untimely, and his testimony should be precluded on those procedural grounds alone. In addition, McCourt's testimony should be precluded as a whole under Rule 403, or at minimum, significantly limited to ensure that his testimony does not exceed the bounds of the protections provided by Rule 403 and 702.

### A. McCourt's Expert Testimony Should Be Precluded Given Defendant's Untimely Notice

Despite having retained McCourt months earlier, the defendant failed to provide notice of this expert testimony by the March 14, 2025 deadline. (Dkt. 125). Indeed, despite the Government's prodding, no notice was provided until April 3, 2025, and even then, the notice was facially deficient. (*See* Ex. B). Because the defendant has failed to meet his obligations under Rule 16, the Court should preclude his use of McCourt at trial. *See Ulbricht*, 858 F.3d at 115

9

(explaining that district court has "broad discretion in fashioning a remedy," including "exclusion of evidence," for a defendant's failure to provide timely expert notice (citation omitted)).

While the defendant initially disclaimed McCourt was an expert witness, the Government was unaware of his position until *after* the expert deadline passed. The Government then promptly and repeatedly informed the defense of its view that McCourt's anticipated testimony qualified as expert testimony and requested Rule 16 notice. The defendant continued not to do so for two more weeks, until after his motion *in limine* to preclude the Intercontinental video footage was filed. This delay notably prejudiced the Government, as it substantially shortened the time the Government had available to review the notice and have a rebuttal expert analyze the video footage in conjunction with McCourt's opinions before the Government's opposition to the defendant's motion to exclude the footage was due.

Although exclusion of the defendant's expert evidence is a "harsh sanction," courts have found it appropriate in certain circumstances because the defendant too is required to "'comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *See id.* at 117 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). Given the defendant's flagrant gamesmanship in delaying notice for an expert he had retained months earlier, despite multiple Government requests, exclusion is the appropriate remedy.

## B.  McCourt's Testimony Should Be Precluded Under Rule 403

Even if the Court excuses the defendant's failure to timely comply with Rule 16, the Court should preclude his testimony under Rule 403 because its limited probative value is substantially outweighed by the danger of unfair prejudice. As described below, the testimony is likely to confuse and mislead the jury, cause undue delay, and waste time.

As an initial matter, the potential relevance of McCourt's testimony is minimal. The defense could only call McCourt to testify about the videos if the Court admitted them into evidence. As detailed in the Government's opposition to the defendant's motions *in limine*, the Government plans to authenticate and offer the Cellphone Videos and the CNN Surveillance Videos ████████████████████████████████████████████ ████████████████████████████████████████.[5] McCourt would then testify about his opinions regarding the authenticity of the videos admitted based on highly technical issues such as frame rate, visual distortions, aspect ratios, and the transcoding process. This testimony will contribute little to the jurors' understanding of the events depicted.[6] However, given that the testimony would be cloaked in the auspices of an expert, it may erroneously be given more weight than is justified—leading to unnecessary juror confusion. To correct that confusion, the Government would need to call a video expert in rebuttal who would make clear, among other things, that the technical issues in the videos are highly unlikely to be the result of intentional interference or tampering with the videos.

On the other hand, while the expert testimony would add little to the jury's assessment of the video evidence, precluding it has minimal downside. The defendant can still cross-examine ████████████████████ about the events depicted on the videos, including as to the various visual anomalies in the videos that McCourt mentions. Moreover, as the Government has previously agreed to do, to the extent that certain technological issues in the videos can be corrected—such as the speed of Defense Exhibit I-3—the Government will offer corrected files.

---

[5] As the Government has already indicated, the CNN Broadcast Videos will not be offered.

[6] For this same reason, the testimony does not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Similarly, as to any issues that cannot be corrected, the Government would consent to an appropriate limiting instruction or stipulation.

In sum, McCourt's proffered expert testimony creates a side show only marginally related to the conduct at issue at this trial. Considering the "uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony" and "given the unique weight such evidence may have in a jury's deliberations," *Nimely*, 414 F.3d at 397, the Court should preclude McCourt's testimony under Rule 403.

### C. McCourt's Testimony Must Be Precluded, or in the Alternative Substantially Limited, Under Rule 702

Even if the defendant could overcome Rule 403's overall hurdle to McCourt's testimony—which he cannot—the Court should also preclude the testimony under Rule 702. Preliminarily, as noted above, McCourt's testimony must be limited to the particular videos that the Court allows into evidence. The Government is not offering the CNN Broadcast Videos at trial and thus McCourt cannot testify about them. (*See* McCourt Aff. ¶ 18). Moreover, and as detailed below, many of McCourt's conclusions are not supported by the evidence, are not outside the ken of the ordinary juror, constitute legal conclusions that are the province of the jury to decide, are outside the scope of McCourt's expertise, or are irrelevant to the videos that may be in evidence. In the event McCourt is permitted to testify, the Court should substantially limit such testimony to avoid these failures. *See United States v. Sovie*, 122 F.3d 122, 127 & n.1 (2d Cir. 1997) (allowing testimony related to "alleged tampering" of tapes but placing limits on such testimony where it was "speculative, confusing to the jury, and overly prejudicial").

*First*, McCourt's opinions on tampering and the possibility of determining what the Original Footage showed do not have adequate bases in the video evidence and should be precluded as unsupported under Rule 702 and as confusing and prejudicial under Rule 403.

As to tampering, McCourt says only that "[t]he possibility of editing can not be ruled out as none of [the] video is original, but all transcoded copies." (McCourt Aff. ¶ 25). While allegations of tampering in recordings may be appropriate for the jury to consider in certain circumstances, *see Sovie*, 122 F.3d at 127-28, an expert opinion about tampering cannot be based on a "subjective belief or unsupported speculation," *Daubert*, 509 U.S. at 590 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation."); *cf. United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977) (affirming admission of recording where arguments about tampering were "completely speculative" and "specious"); *United States v. Ida*, No. 96 Cr. 430 (LAK), 1997 WL 122753, at *3 (S.D.N.Y. Mar. 18, 1997) ("The tapes are not inadmissible merely because 'one can conjure up hypothetical possibilities that tampering occurred.'" (citation omitted)). Moreover, for McCourt to testify about the prospect of intentional tampering with the videos based solely on the video files being converted from one format to another is extremely prejudicial. It is also a waste of time and confusing to the jury. In short, it is precisely the type of testimony that the Court's gatekeeping function is meant to keep away from the jury. *See Amorgianos*, 303 F.3d at 266 ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."). Any testimony about tampering should thus be excluded.

McCourt also claims that "[t]he distortions in all of the available video files make it impossible to determine what the original video footage depicted in any reliable way," (McCourt Aff. ¶ 18), and that "[t]he transcoded nature of all the video make it impossible to know what the original video file actually depicted," (*id.* ¶ 25). McCourt's extreme opinion that it is "impossible" to determine what the original footage showed "in any reliable way" ignores technical options and

common sense.  For example, McCourt does not attend to the fact that the Original Footage is displayed in the Cellphone Videos, and does not try, as the Government's rebuttal expert does, to make changes to the available videos to better reflect the original, (*e.g.*, by slowing down the CNN Surveillance Video or correcting the aspect ratio on the Cellphone Videos).  Not only is McCourt's opinion on this matter unfounded, it is also needlessly prejudicial as the jury may place outsized importance on an expert's testimony.  *Nimely*, 414 F.3d at 397 (commenting on the importance of Rule 403 "given the unique weight [expert] evidence may have in a jury's deliberations").

The inadequacy of McCourt's anticipated testimony is evident by his conflation of several of the videos, which each stand on their own as highly probative, admissible evidence.  For example, McCourt comments that the videos are "all transcoded copies" so "[t]he possibility of editing can not be ruled out," and that "[t]he transcoded nature of all the video make it impossible to know what the original video file actually depicted." (McCourt Aff ¶ 25).  But McCourt clearly states only that the CNN Surveillance Videos are transcoded—not the Cellphone Videos.  Indeed, in Exhibit D of the defendant's renewed bail application, McCourt even stated that there was "no indication of editing" of the Cellphone Videos.  (Dkt. 81, Ex. D at 15:43, 17:55).  McCourt's imprecise, and thus inaccurate opinion, can be expected to confuse the jury and may cause jurors to make inferences about *all* of the videos when the bases for those inferences are only accurate as to a subset.  The Court should preclude the testimony.

*Second*, McCourt makes a number of observations that are not "outside the ken of the average person" and improperly uses subjective terminology in doing so.  *United States v. Felder*, 993 F.3d 57, 72 (2d Cir. 2001) (quoting *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2012)).  The Court should preclude this testimony because it is directed "to lay matters which a jury is

capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (citation omitted).

For example, McCourt said that the Cellphone Videos were "hand held with varying focus and zoom, recording a fixed camera view, which has the effect of making the action more dramatic." (McCourt Aff. ¶ 17). There is no need for McCourt or any expert to opine whether a video filmed on a cellphone is "more dramatic" than surveillance footage. This kind of subjective observation, which is based on comparing one type of visual recording with another, is certainly something that the jury is more than capable of making without McCourt's testimony and his opinion on the matter should be precluded.

Similarly, McCourt opines that he has compared the Cellphone Videos and the CNN Surveillance Videos and determined that the Cellphone Videos "are distorted in their aspect ratio due to the amateur collection process (i.e., recording the hotel security screen with the wide angle function engaged on an iPhone, causing distortion of subject's actual stature (making them look heavy set))." (*Id.* ¶ 18). McCourt then goes even further, stating that the aspect ratio issue "has the effect of making [the defendant] appear more domineering." (*Id.* ¶ 17). This goes too far. Whether or not the defendant appears more domineering on the Cellphone Videos than the CNN Surveillance Videos is a determination that any lay juror could make for themselves. Introducing this conclusion in "expert" testimony would also be unduly prejudicial. *See Nimely*, 414 F.3d at 397.

Along these same lines, in comparing the CNN Surveillance Video, specifically Defense Exhibit I-3, to the Cellphone Videos, McCourt observed that the CNN Surveillance Video was sped up in that the defendant "moved faster in the CNN video files than in the iPhone 6 video and that he reached the near side of the elevator lobby sooner in the CNN video files than in the iPhone

6 video." (McCourt Aff. ¶ 15). McCourt goes onto say that the CNN videos "depict faster, seemingly more urgent action" than the Cellphone Videos. (*Id.*). The Court should not permit McCourt's subjective characterizations of the various speeds of the videos. Again, this is an observation the jury can make, and McCourt's use of subjective terms such as "more dramatic," "more technical," and "more urgent" should be precluded as prejudicial.

*Third*, McCourt opines that technical issues in the videos "greatly affect a viewers' perception of recorded events." (*Id.* ¶ 27). But what another viewer perceives when they watch the videos falls outside both McCourt's expertise and personal knowledge. McCourt should not be permitted to testify as to what other viewers may *perceive* when watching the videos.

*Fourth*, the Second Circuit "requires the exclusion of [expert] testimony which states a legal conclusion." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). McCourt, however, opines on the "authenticity" of certain videos. Specifically, McCourt stated that he was "wary of [the] authenticity" of the Cellphone Videos because those videos "do not have their respective original file names." (McCourt Aff. ¶ 17). Not only does McCourt fail to explain how a lack of original file names would lead to the conclusion that the videos were not what they purport to be, his use of the term "authenticity" is problematic because it implies the legal conclusion that the videos are not authentic, which is an "ultimate determination" that the jury, not McCourt, will be tasked with making. *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (explaining that "[t]he ultimate determination as to whether the evidence is, in fact, what its proponent claims is thereafter a matter for the jury"); *Duncan*, 42 F.3d at 101 ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's"). The Court should therefore preclude this opinion and any use of the term "authenticity."

16

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the testimony of McCourt.

MATTHEW PODOLSKY
Acting United States Attorney

By:    /s/_____
Maurene Comey / Meredith Foster
Emily A. Johnson / Christy Slavik
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284