UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    -against-<br><br>SEAN COMBS,<br>                              Defendant. | 24-CR-542 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Defendant Sean Combs moves to suppress evidence the Government obtained pursuant to four 2024 warrants: a January 2024 warrant to search Combs's iCloud accounts, a March 2024 warrant to search Combs's Los Angeles residence, a March 2024 warrant to search Combs's Miami residence, and a March 2024 warrant to search Combs's person and two cell phones. Dkt. 159; Dkt. 160 at 2. Combs claims there are two grounds for suppression. First, he argues that the Government's warrant applications were "intentionally misleading," which "at a minimum[] requires a *Franks* hearing." Dkt. 160 at 1 (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). Second, he says that the warrants were "unconstitutional general warrants." *Id.* at 2. For the following reasons, the motion to suppress is DENIED.

### I. No *Franks* hearing is required.

Under the Supreme Court's decision in *Franks*, "a defendant seeking to suppress evidence obtained pursuant to an affidavit containing erroneous information must satisfy both a state of mind requirement and a materiality requirement by showing that (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding." *United States v. Lauria*, 70 F.4th 106, 125 (2d Cir. 2023) (cleaned up).

To obtain an evidentiary hearing on a *Franks* motion, the defendant must make a "substantial preliminary showing" that he has met this standard, including the requirement that "the affiant made the allegedly false statement 'knowingly and intentionally, or with reckless disregard for the truth.'" *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (quoting *Franks*, 438 U.S. at 155–56). "[T]he burden imposed by the 'substantial preliminary showing' standard [is] a heavy one . . . ." *Id.* at 86. Combs fails to meet this burden.

### A. The claimed misstatements and omissions are not material.

The Court begins with materiality. *See Lauria*, 70 F.4th at 125 ("The materiality requirement is often considered first because, as the Supreme Court explained in *Franks*, 'if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant to support a finding of probable cause, no hearing is required.'" (quoting *Franks*, 438 U.S. at 171–72)).

"To determine whether misstatements are material, a court must set aside the falsehoods in the application and determine whether the untainted portions of the application suffice to support a probable cause or necessity finding." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (cleaned up). "Although omissions are governed by the same rules as misstatements, the literal *Franks* approach does not seem adequate [for omissions] because, by their nature, omissions cannot be deleted." *Id.* (cleaned up). So for omissions, "a better approach [is] to insert the omitted truths" and then ask whether there is a "residue of independent and lawful information sufficient to support a finding of probable cause." *Id.* (cleaned up). In this context, probable cause means "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate judge], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here, even if the Court excises the alleged misstatements and adds the allegedly missing information, Combs fails to demonstrate that the "residue of independent and lawful information" in the affidavits is insufficient to support a finding of probable cause:

<u>Victim-1.</u> Combs says omitted evidence disrupts the Government's narrative that he "forced Victim-1 to participate in [Freak Offs]," which was fundamental to the sex-trafficking charges identified in the affidavits. Dkt. 160 at 5. When the warrant applications were made, Combs alleges, the Government had possession of a device that "contained ███████████████████████████████████████████████████████████████ ███████" *Id.* at 5–6. Combs also points to messages between Combs and Victim-1 that he argues "contradict the [G]overnment's claims that the [Freak Offs] were coerced." *Id.* at 6. In these messages, Victim-1 tells Combs: ███████████████████████████████████████ ████████████████████████████ *Id.* at 6–7. Combs highlights a message Victim-1 sent him after a 2018 interaction during which the Government alleges ███████████████████████ ████████████████████████ *Id.* at 8. Combs argues that these messages "show the context of the relationship" between himself and Victim-1 and ████████████████████ contrary to her statements to law enforcement, actually ███████████████████████████ in a "long, complicated, and often loving" relationship with Combs. *Id.* at 8, 18.

Combs says that omitted evidence also undermines two other Government allegations: first, that he ███████████████████████████████████████████; and second, that he ███████ ███████████████████████████████████ *Id.* at 9. He cites texts from Victim-1 in which she

2

███████████████████████████████████████████
████████████████████████████████ *Id.* And he argues that the affidavits should have included evidence about "Victim-1's financial motive to exaggerate and falsify." *Id.* at 10. He accuses the Government of knowing, but impermissibly hiding, that Victim-1 had ██████
████████████████████████████████████████████████████████████████████████████
████████████████████████████ *Id.*

For several reasons, this information was not "necessary to the [issuing] judge's probable cause finding." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (alteration in original) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998)); *see also Franks*, 438 U.S. at 156 (allegedly false statements must be "necessary to the finding of probable cause"). First, the affidavits already state that ███████████████████████████████████████████
█████████████████████████████████ The affidavits also acknowledge that ██████
█████████████████████████████████████████████████ and ███████████
████████████████████████████████████████ Second, even if ███████
██████████████████████████████████, the affidavits detail Combs's use of force and coercion ████████ *See, e.g.*, █████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████

Third, although an "affiant cannot be expected to include . . . every piece of information gathered in the course of an investigation," *United States v. Mandell*, 710 F. Supp. 2d 368, 373 (S.D.N.Y. 2010) (citation omitted), a full view of the omitted messages includes information bolstering the probable-cause determination. *See Rajaratnam*, 719 F.3d at 155 ("[W]e cannot conclude that the [G]overnment omitted certain information . . . with 'reckless disregard for the truth' when it is clear that fully disclosing the details . . . would only have *strengthened* the wiretap application[] . . . ."). Just two weeks after one of the messages Combs says should have been included, for example, ████████████████████████████████████████████████
████████████████████████████████████████ Approximately a week after ██████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████ And after another text message Combs says should have been included, Victim-1 texted him: ██████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████ These texts, if included in the affidavits, would have strengthened the Government's showing of probable cause as further evidence that Combs physically abused Victim-1, that he coerced her using blackmail, and that she didn't want to participate in some Freak Offs.

3

As to evidence of Victim-1's civil suit against Combs, the affidavits already include this information. *See, e.g.*, ▓▓▓▓▓▓ While the affidavits don't reveal that Combs eventually ▓▓▓▓▓▓ to resolve the case, it is unclear how ▓▓▓▓▓▓ undermines Victim-1's credibility. Just the opposite: Having already been ▓▓▓▓▓▓, Victim-1 lacked any financial motive to lie. And while Combs is correct that information as to a confidential informant's credibility must be considered in a warrant application, *see McColley v. Cnty. of Rensselaer*, 740 F.3d 817, 825 (2d Cir. 2014), the Second Circuit differentiates between professional informants and witnesses like Victim-1, who "need *not* be shown to have been previously reliable before the authorities may rely on [their] statements." *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) (emphasis in original) (quoting *United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir. 1986)). In addition, other witnesses corroborated Victim-1's information. For example, the affidavits state that ▓▓▓▓▓▓ They also state that ▓▓▓▓▓▓, and that Victim-1 told Doctor-1 ▓▓▓▓▓▓ Victim-1's own statements to law enforcement were not the sole basis for probable cause.

Finally, even if alleged misstatements and omissions as to Victim-1 undercut probable cause of sex trafficking (and they do not), Combs has not argued that they are material to other federal offenses identified in the warrants. Here, the applications sought evidence related to multiple offenses other than sex trafficking. *See, e.g.*, ▓▓▓▓▓▓ Victim-1 was also not the only alleged victim of sex trafficking in three of the four challenged affidavits, and Combs doesn't show that information about Victim-1 was necessary to the overall determination of probable cause of sex trafficking when there was evidence as to other victims.[1]

Sex Worker-1. ▓▓▓▓▓▓ Dkt. 160 at 11. But if the Government relied on this information in the affidavit, Combs says, it should also have included Sex Worker-1's other statements, including that ▓▓▓▓▓▓ to give the magistrate judges a more accurate understanding of ▓▓▓▓▓▓ *Id.* The Government says it didn't have Sex Worker-1's other statements when the warrants were sought, *see* Dkt. 171 at 12 n.6, and Combs doesn't have any specific response on reply. Also,

---

[1] While Combs identifies alleged omissions about individuals other than Victim-1, particularly in relation to the obstruction-of-justice charge, on reply he doesn't respond to the Government's arguments about why those omissions were immaterial. *See* Dkt. 187.

4

Combs doesn't challenge Sex Worker-1's statement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Nor was Sex Worker-1 the only witness who corroborated Victim-1's account of that violence. Even if his statement was removed from the affidavits, or the omitted material added, statements by multiple other witnesses support the probable-cause determination.

Assistant-1. The warrant affidavits state that Combs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Combs says the affidavits "cherry-picked a couple of statements out of context to imply ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ when Butler had in fact told Assistant-1: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 160 at 13. But the warrant application *does* include this text. *See, e.g.,* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ So this can't possibly be an omission, let alone a material one. Combs also quotes friendly text messages where ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 160 at 13. Without these friendly texts, Combs says, the magistrate judges were given a "completely distorted picture" of what was really a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* This is another instance where full inclusion of the relevant texts would strengthen the probable-cause determination. While Butler was texting Assistant-1, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A few days later, Combs texted Assistant-1: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even if ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were included in the affidavits, the close coordination between Combs and Butler is more than enough for probable cause of obstruction.

Combs also argues that the warrant affidavits, which said that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ should have included evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 160 at 12. But as with Victim-1, Assistant-1 ▮▮▮▮▮▮▮▮▮ *before* making her statements to law enforcement. Dkt. 171 at 22–23. At the time she made the statements to law enforcement, she did not have a financial motive to lie. If anything, she had a motive to *avoid* embellishing her story and embroiling herself in the government's investigation of Combs.

Producer-1. The affidavits stated, based in part on interviews with Producer-1, that Combs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 160 at 14. Combs says that this was a misstatement because

5

it was "uncorroborated" by any other witness and contradicted by "boatloads of contrary evidence, including ███████████████████████████████████████" *Id.* Combs also argues the Government "failed to disclose Producer-1's financial incentive to fabricate and embellish," revealed by the ████████████████████ ███████████████████████████████████████████████████████████████████████ *Id.* Combs says that the Government's decision not to rely on Producer-1 at trial underscores his lack of credibility. *Id.* at 15. Including the missing information in the affidavit would have shown, according to Combs, Producer-1's "motive to fabricate and to tell the [G]overnment a story that matched the stories ███████████████████████████████████████" *Id.* However, Producer-1's statements about drug use were in fact corroborated. For example, the March 22, 2024 warrant application to search Combs's home stated that ████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████ The affidavits also include several witness observations of drug use that support probable cause as to narcotics offenses. ████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████ Even if what Producer-1 said about ██████ ████████████████ was taken out of the affidavit as a misstatement, or if every fact about his lawsuit and demand letter was added, Assistant-1's nearly identical recollection and supporting information from other witnesses would support a probable-cause finding. *See United States v. Martin*, 426 F.3d 68, 73 (2d Cir. 2005) ("[E]very statement in a warrant affidavit does not have to be true." (citation omitted)).

<u>Victim-2.</u> Combs argues that the Government ███████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████ Dkt. 160 at 15. But the affidavits acknowledge that ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ The affidavits also ███████████████████████████████████████████████████ ████████ *See* ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████ Even if the affidavits didn't clearly state that ████████ ███████████████████████████████████████████████, they provide detailed evidence that ███████████████████████████████████████████████████████████████████ ███████████████████████████

6

Victim-3. Combs argues that the warrant affidavits, which stated that Combs ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ excluded her ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 160 at 15–16. She said that she was ▮▮▮▮▮▮▮▮ and that Combs ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 16. But if the affidavits had included all of Victim-3's public statements, they would also have included a public interview in which ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. 171 at 19 n.9. Nor do a few positive statements undo the probable-cause analysis when the affidavits recount how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In another incident, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see also* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This is clearly sufficient to establish that Combs "used force and coercion ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Dkt. 171 at 16.

Victim-4. The warrant affidavit states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that Combs's employees later ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 160 at 16. Combs objects that the affidavits left out critical information, including a text that her attorney ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* The Government wasn't aware of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ when the affidavits were sworn. *See* Dkt. 171 at 22 n.11, 28. Combs's only response is that it "simply defies belief" that the Government wasn't aware of this specific evidence. Dkt. 187 at 10. Like Victim-1 and Assistant-1, Victim-4 is not a professional informant whose credibility had to be assessed before the affiant could rely on her statements. *See Rowell*, 903 F.2d at 903. And inclusion of this allegedly missing information would not have "necessarily" undermined the probable-cause determination. Further, while the affidavit's detailed information about how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was based on an interview with Victim-4, *see, e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Victim-4's allegations were corroborated by phone records. On the day that Combs's associates (including Producer-3) allegedly tried to silence her after the assault, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see, e.g.*, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This evidence enhances Victim-4's credibility and, at the very minimum, provides enough for probable cause of ▮▮▮▮▮▮▮▮▮▮.

Designer-1. The warrant affidavits allege that Combs's representatives tried to silence Designer-1. Dkt. 160 at 16–17. But they didn't mention that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

███████████████████████ *Id.* at 17. Together with Producer-1 and Victim-4, Combs says, Designer-1 was part of a ████████████████████████ ████████████████████ *Id.* However, the affidavits already acknowledge that Designer-1 contemplated ████████, *see* ████████████ ████████████████████████████████████, and the Government says (and Combs doesn't contest) that at the time of the affidavits it wasn't aware that ████████ ████████████████ Dkt. 171 at 22 n.11. Again, like Victim-1, Assistant-1, and Victim-4, Designer-1 is not a confidential informant, so the affiant was under no special duty to investigate her credibility before relying on her statements.

Combs hasn't shown that these alleged misstatements or omissions are material on their own, and he also fails to demonstrate that, even when evaluated as a whole, they were "necessary" to the probable-cause determination. *See Canfield*, 212 F.3d at 718. The affidavits rely on ████████ ████████████████████████████████████████████████████████████████████████ Combs doesn't identify any misstatements or omissions in the affidavits as to corroborating ████████████████████████, who gave the Government consistent statements about Combs's physical abuse of female victims. *See, e.g.*, ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████ Nor does he challenge the veracity of records that serve as further evidence of the subject offenses. *See, e.g.*, ████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ So even if everything Combs challenged as a misstatement was taken out and everything Combs says was inappropriately omitted was added in, there was still enough for probable cause of the federal offenses identified in the affidavits.

"At a minimum," Combs eventually argues, "an honest affiant would have stated: ████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████" Dkt. 187 at 11. But the affidavits ████████████████████████████████████████████████████████████ ████████████████████████████████████

8

███████████████████████ So the authorizing judge already knew that the information in the applications was not exhaustive and that new evidence would likely emerge over time.

### B. Combs fails to show that the affidavits were intentionally misleading or made with a reckless disregard of the truth.

Combs's motion also fails to make out a "substantial preliminary showing," *Franks*, 438 U.S. at 155, of the affiant's intent to mislead or recklessness. "Allegations of negligence or innocent mistake are insufficient" to satisfy this requirement. *Id.* at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* "To prove reckless disregard for the truth, the defendant[] [must] prove that the affiant in fact entertained serious doubts as to the truth of his allegations." *Rajaratnam*, 719 F.3d at 154 (second alteration in original) (quoting *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001)). It is not enough to argue that an affiant omitted "the kind of thing the judge would wish to know." *Id.* (distinguishing the Eighth Circuit's objective standard, set out in *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). And "[a] reviewing court should not interpret supporting affidavits in a hypertechnical, rather than a commonsense manner." *United States v. Nelson*, 828 F. App'x 804, 807 (2d Cir. 2020) (citation omitted).

While reckless disregard can "sometimes be *inferred* from the omission of critical information," *Rajaratnam*, 719 F.3d at 154, it is harder to show recklessness or intent to deceive where (as is the case here) the omissions are not necessary to the probable-cause determination. *Cf. United States v. Lambus*, 897 F.3d 368, 400 (2d Cir. 2018) ("[W]here the omitted facts would have provided an additional or stronger reason for the judge or magistrate to authorize the requested warrant, a finding that those facts were omitted with 'reckless disregard for the truth' is counterintuitive."); *United States v. Thomas*, 788 F.3d 345, 351 (2d Cir. 2015) ("[W]e cannot conclude that any omission here was made deliberately or with 'reckless disregard for the truth' when it is clear that full disclosure of the relevant information would only have *strengthened* the search warrant application."). Unlike, for example, a case where an inaccurate statement in a warrant affidavit was (by the affiant's own admission) the "*only* basis for seeking a search warrant," *see United States v. Cerda*, 2023 WL 3792448, at *7 (E.D.N.Y. June 2, 2023) (emphasis in original), here there was no material omission or misstatement, let alone a "clearly critical" one. Because there is "no basis to *infer* recklessness or intent to mislead," *United States v. Menendez*, 2024 WL 912210, at *6 (S.D.N.Y. Mar. 4, 2024), Combs must give the Court "credible and probative evidence," *Rajaratnam*, 719 F.3d at 154, or an "offer of proof" of intentional wrongdoing or recklessness, *Franks*, 438 U.S. at 171.

Combs hasn't done that. He argues that the warrant "applications were intentionally misleading" because the Government had exculpatory evidence in its possession but failed to include it in the affidavits. Dkt. 160 at 1–3. The Government responds that it was unaware of most of this evidence at the time the warrant applications were made, so the omissions could not possibly have been deliberately designed to mislead the authorizing judge. *See, e.g.*, Dkt. 171 at 26–27

(███████████████████████████) were not released by the Filter Team until "months after the March 2024 Warrants were issued"); *id.* at 27 (full text thread ████████████ was only in the Government's possession six months after the warrant applications); *id.* (Sex Worker-1's allegedly exculpatory statement ██████████████████████████████ ██████████████████████); *id.* at 29 ("[A]t the time the Affidavits were sworn out, the Government was not aware of the size of the settlements ████████████████ received from the defendant."). In reply, Combs makes three arguments:

First, he says the Government's claim of lack of knowledge is "unsupported by any evidence" and "simply defies belief." Dkt. 187 at 10. But Combs bears the burden to make a "substantial preliminary showing" that the standard has been met. *See Franks*, 438 U.S. at 171 (attack must be "more than conclusory" and "must be accompanied by an offer of proof").

Second, Combs says that the Government is imprecise about what the affiant knew at the time of the warrant applications. *Id.* at 10–11. The Court received a 12-page affidavit from █████████ ████████. In the affidavit, ████████████ explained exactly what █ did and did not know as to each of the individuals Combs says the Government omitted information about, for example:

- <u>Victim 1.</u> ████████████ acknowledged that he knew about Victim-1's lawsuit against Combs but stated that he was ██████████████████████████████████████████ While Combs (in a supplemental letter) claims the Government ██████████████ ██████████████████████████████, *see* Dkt. 200, ████████████ explained that the ██████ ██████████████████████ from the documents the Government received. He also stated that he was not aware of anything on Victim-1's electronic devices other than a single chat thread, that the laptop ██████████████████████ was in the Filter Team's review process until after the warrants were authorized, and that he only heard that ██████████████████ ██████████████████████ at the public bail hearing in September 2024.

- <u>Sex Worker-1.</u> ████████████ stated that Sex Worker-1 only told him that he ████████████ ██████████████████████████████████████████████████████████████████████████████████, which was conducted months after the warrant applications.

- <u>Assistant-1.</u> Combs claimed in another supplemental letter that the Government possessed additional screenshots of the text conversation between ██████████████████████ before the warrant applications were made, and he further argues that the Government's possession of the screenshots showed that it was "in contact with ████████████ and could have obtained whatever additional context was required." Dkt. 199 at 1. ████████████ affidavit clarifies that ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ While law enforcement extracted information from ██████████████████████████████████████, ██████████████ never reviewed the extractions. ████████████ was aware that Assistant-1 ██████████████████████████████████████████████████████████████

10

▬▬▬▬▬ but ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬

- <u>Producer-1.</u> ▬▬▬▬ had no knowledge of whether ▬▬▬▬▬▬▬
  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
  ▬▬

- <u>Victim-4.</u> Victim-4 sent ▬▬▬▬▬▬▬▬▬▬▬▬ the night before the March warrant applications were made, and ▬▬▬▬▬▬▬▬▬▬
  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
  ▬▬▬▬▬▬▬▬▬▬▬▬ did not, and does not, know if ▬▬▬▬▬
  ▬▬▬▬

In a letter responding to ▬▬▬▬▬ affidavit (which has not yet been docketed), Combs says only that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ However, given the lack of evidence of material falsehoods or omissions in the affidavits, the Government's showing as to the availability of information at the time of the affidavits, and ▬▬▬▬ *Franks* affidavit, Combs fails to satisfy his burden to make a "substantial preliminary showing" of intent to deceive or recklessness. *Franks*, 438 U.S. at 155.

    Third, Combs argues that "the *Franks* inquiry is not limited to what the individual affiant knew." Dkt. 187 at 11. Combs relies on the collective-knowledge doctrine, which provides that (under certain circumstances) "an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001). Combs says that "Fourth Amendment doctrine is generally governed by" the collective-knowledge doctrine, Dkt. 187 at 11, but in the Second Circuit, the doctrine has solely been applied to *warrantless* searches and seizures, not to a judge's probable-cause determination when issuing a warrant. *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 502 (S.D.N.Y. 2015) (extending the collective-knowledge doctrine to exigent circumstance analysis while recognizing that "settled law in this Circuit" applies the doctrine only to "warrantless searches and seizures"). This makes sense, because the doctrine was developed to address fluid, evolving situations in the field where "mobile defendants" are pursued by "large police departments" equipped with "swift modern communication" technology. *Colon*, 250 F.3d at 135 (quoting *Williams v. United States*, 308 F.2d 326, 327 (D.C. Cir. 1962)). These are not the conditions under which judges decide whether to authorize search warrants, and Combs cites no case applying the doctrine in these circumstances.

    Even if the Government's knowledge could be imputed to the affiant (and it cannot), "misstatements or omissions caused by 'negligence or innocent mistake[s]' do not warrant

11

suppression." *Rajaratnam*, 719 F.3d at 153 (alteration in original) (quoting *Franks*, 438 U.S. at 171). Combs identifies no "credible and probative evidence" of wrongdoing, *id.* at 154, and makes no "offer of proof," *Franks*, 438 U.S. at 171. He concedes as much when, in his reply brief, he argues that there is a "strong inference of intentional deception" based on the Government's omissions. Dkt. 187 at 12. But as the Court has already explained, no such inference can be made because the alleged misstatements and omissions were not material, much less "clearly critical," to the probable-cause determination. *Rajaratnam*, 719 F.3d at 154 (citation omitted).

Courts have recognized that "[t]he burden to obtain [a *Franks*] hearing is a heavy one, and such hearings are exceedingly rare." *United States v. Melendez*, 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016); *see also Sandalo*, 70 F.4th at 86 (noting "courts have construed the burden imposed by the 'substantial preliminary showing' standard as a heavy one that requires more than a mere conclusory showing," and that it is a "'high' burden" (citation omitted)). Combs fails to show his entitlement to a hearing here.

## II. The warrants were sufficiently particularized.

Combs also contends that the warrants were unconstitutional "general warrants." The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement has three components: "First, a warrant must identify the specific offense for which the police have established probable cause"; "[s]econd, a warrant must describe the place to be searched"; and "[t]hird, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir. 2013) (cleaned up). "'[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based.'" *Id.* at 446 (alteration in original) (quoting 2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012)).

Combs doesn't contest that, at least on their face, the warrants at issue satisfy *Galpin*'s particularity requirements. Instead, he says that "circumstance-specific considerations"—here, the sheer breadth of the charges against him—render the warrants unconstitutional. Dkt. 160 at 21 (quoting *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 454 (S.D.N.Y. 2013)). The Government "charged [his] whole life as a racketeering enterprise," Combs protests, and it inappropriately "obtained warrants to search his whole life." *Id.* at 24. Such warrants allow the Government to "evade the Fourth Amendment's limits simply by stating that [he] was himself a sort of 'criminal racketeering enterprise.'" *Id.* To support his position, Combs points to *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017), as a case where comparable warrants were held to be unconstitutional.

*Wey* is the only example Combs cites, and the warrants there are not comparable. In *Wey,* neither warrant at issue "set forth the crimes under investigation," which alone was "enough to render [them] insufficiently particularized." *Wey*, 256 F. Supp. 3d at 384. They failed to "cite criminal statues" or even "describe any suspected criminal conduct." *Id.* Here, the warrants detail

12

the specific crimes under investigation: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The *Wey* warrants also failed to connect the items subject to seizure "to the suspected criminal activity." *Wey*, 256 F. Supp. 3d at 385. Instead, they called for seizure of "expansive categories of often generic items" without "any meaningful content-based parameter or other limiting principle" other than (for some categories) "requiring that items . . . bear some . . . generalized connection to at least one of the individuals and entities." *Id.* at 385–86. In contrast, the Government's warrants in this case repeatedly emphasize that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Combs says that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ doesn't mean much in this case because the underlying charges implicate all aspects of his life, personal and professional. *See* Dkt. 160 at 23 ("[B]ecause the subject offenses were defined as including all of Combs's businesses, his household, and his relationships with his girlfriends over the last two decades, it is hard to think of anything that would not have been 'related to the subject offenses.'"). In practical terms, he argues, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ isn't a limitation at all, especially because the warrants authorized seizure of personal electronic devices that could contain sensitive, private information. *See id.* at 21. The Government responds that the requirement that materials be related to the subject offenses is a real limitation because materials that "*were not* related to criminal activity were fully protected from seizure" and because Combs's "decades-long criminal activity" was the reason for the large volume of recovered material. Dkt. 171 at 33–34 (emphasis in original).

Courts in this Circuit have observed that long-running, wide-ranging, and complex alleged crimes justify casting a wide net. *See, e.g.*, *United States v. Purcell*, 967 F.3d 159, 179 (2d Cir. 2020) ("When, for example, 'the criminal activity pervades [an] entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements.'" (alteration in original) (quoting *U.S. Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir. 1989))); *United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017) ("A warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement."), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018); *United States v.*

13

*Zeitlin*, 2024 WL 3429506, at *5 (S.D.N.Y. July 15, 2024) ("Courts must take into account the nature of the alleged wrongdoing and the complexity of the alleged crimes and evidence when evaluating particularity. And here, the allegations of fraud are particularly wide-ranging, with evidence of wrongdoing likely touching numerous aspects of [the] defendant's business, employees, personal life, and property. Moreover, the charges against [the] defendant include allegations that he obstructed the [G]overnment's investigation into his conduct, which certainly . . . justif[ies] collection of a broader array of evidence."); *United States v. Gotti*, 42 F. Supp. 2d 252, 274 (S.D.N.Y. 1999) ("[W]here a particularly complex scheme is alleged to exist, it may be appropriate to use more generic terms to describe what is to be seized."). As the Government points out, it is also well-settled that warrants can authorize seizure of electronic devices if they "link the items to be searched and seized to the suspected criminal activity," *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010), which the warrants at issue in this case do. *See, e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Dkt. 171 at 33 n.16.[2]

Finally, even if the warrants were infirm, suppression would not be warranted given the good-faith exception, which "recognize[s] an exception to the exclusionary rule for 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Exclusion is a "last resort, not [a] first impulse." *Herring v. United States*, 555 U.S. 135, 140 (2009) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). This is because the "exclusionary rule is *not* an individual right." *Id.* at 141 (emphasis added). Instead, it "applies only where it results in appreciable deterrence." *Id.* (cleaned up). There are four circumstances where the deterrence goal justifies exclusion: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Clark*, 638 F.3d at 100 (quoting *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)).

As to the first exclusion, the Court has already rejected Combs's contention that the issuing magistrate judges were "knowingly misled." As to the second, Combs doesn't argue that the magistrate judges who authorized the warrants "abandoned [their] judicial role[s]." And as the Government argues, the warrant applications "contained detailed recitations of evidence from numerous sources" such that "five different magistrate judges in three districts agreed that there was sufficient evidence of probable cause," Dkt. 171 at 35, so the warrants were not "so lacking in indicia of probable cause as to render reliance . . . unreasonable." Nor are the warrants "so facially deficient" that it was unreasonable for agents to rely on them. This isn't a case where the warrant, for example, does not "even arguably include a reference to the . . . alleged crimes." *In re*

---

[2] Combs mentions the September 2024 warrant for his cell phones in passing. He doesn't address that warrant in any detail or make any arguments specific to any of the September 2024 warrants. Nevertheless, the Court has reviewed the September warrants, and for the same reasons set forth in this opinion, they were not defective.

*650 Fifth Ave. & Related Props.*, 934 F.3d 147, 163 (2d Cir. 2019). By contrast, these warrants satisfied the governing requirements and are materially different from those in *Wey*, Combs's sole example. The good-faith exception would apply even if the warrants were defective.

## CONCLUSION

Combs's motion to suppress is DENIED. The Clerk of Court is respectfully directed to terminate Dkt. 159.

SO ORDERED.

Dated: May 9, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge