

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Robert Balin**
(212) 603-6440 tel

robertbalin@dwt.com

May 12, 2025

**VIA ECF**
Hon. Arun Subramanian
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:     *United States of America v. Combs*, Case No. 1:24-cr-00542-AS

Dear Judge Subramanian:

We write on behalf of American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Business Insider, CBS Broadcasting Inc. d/b/a CBS News, Dow Jones & Company, Inc. (publisher of *The Wall Street Journal*), National Public Radio, Inc., NBCUniversal News Group, Newsday LLC, The New York Times Company, NYP Holdings, Inc. (publisher of the *New York Post*), Reuters News & Media Inc., Vox Media, LLC (publisher of *New York Magazine*), and WP Company LLC (publisher of *The Washington Post*) (collectively, the "News Organizations") regarding the effort by the parties in the above-captioned criminal case against Defendant Sean Combs to prevent the public and the press from viewing certain audiovisual exhibits at trial.

Hip-hop mogul Sean Combs is among the most prominent men in entertainment to be accused of sexual misconduct since the start of the #MeToo movement. And the charges against him—sex trafficking, racketeering conspiracy, and transportation to engage in prostitution—are of the utmost gravity.

During a court conference on April 25, 2025, the Government explained that "the parties expect to have some sealed exhibits," some of which "involve sound," and they are "working on a way that the jury and the parties and the Court are able to hear that sound but not the public." ECF No. 304 (transcript of April 25, 2025 conference). While the News Organizations appreciate that some trial exhibits in this case may be sexually explicit and sensitive for the alleged victims, the public and the press should be permitted to view and consider this evidence (which lies at the heart of the Government's case), consistent with the First Amendment right of access to criminal trials. We therefore respectfully request that the Court deny any request to close the courtroom, thereby permitting the public and the press to evaluate for themselves the materials being shown to the jury and the Government's contention that Mr. Combs' conduct was non-consensual. For the avoidance of doubt, the News Organizations are not requesting copies of the video exhibits— simply the ability to see and hear them as they are being presented to the jury. Alternatively, if the

**DWT.COM**

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Page 2

Court were to conclude that the privacy interests of the alleged victims overcome the presumptive First Amendment right of general public access to trial exhibits, the News Organizations respectfully request that they be permitted to designate three pool reporters to watch and listen to the video exhibits as they are being shown.

The accusations against Mr. Combs are a matter of intense and legitimate public interest. Mr. Combs is one of the most successful musical artists in recent decades, having earned three Grammy Awards and topped the singles charts five times over. More recently, he has achieved renown for a clothing line, an alcohol brand, and other business ventures. Yet, in the past year, he has been accused of sexually assaulting or abusing more than 120 individuals going back decades and faces a host of civil lawsuits. In this criminal case, the Government contends that, from 2004 to 2024, Mr. Combs forced women to participate in sexual performances with male sex workers known as "Freak Offs," surreptitiously recorded some of these performances, and held them as "collateral" to ensure the women stayed silent. *See* ECF No. 144. Mr. Combs maintains that the women's participation was consensual. News outlets around the world have been closely following the case since the investigation became public in March 2024 and especially since his arrest in September 2024.

As Your Honor observed at the April 25, 2025 conference, the public and press have a constitutionally protected "interest at trial of seeing the proceedings in open court." ECF No. 304. There is a strong presumption of public access to all judicial proceedings. But "the public has an 'especially strong' right of access to evidence introduced in trials." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). Criminal trials in particular warrant public access, both because "the criminal trial historically has been open to the press and general public," and because "the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole." *Globe Newspaper Co. v. Superior Cot. For Norfolk Cty.*, 457 U.S. 596, 605-06 (1982). The Supreme Court has recognized that "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole." *Id.* at 606. Courts therefore enforce a "presumption of openness" when private citizens and news organizations seek to observe a criminal trial. *ABC v. Stewart*, 360 F.3d 90, 98 (2d Cir. 2004) (*citing Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984)). As the Second Circuit has made clear, "[t]he ability to see and to hear a proceeding as it unfolds is a vital component of the First Amendment right of access . . . not . . . an incremental benefit." *Id.* at 99.

The "presumption of openness cannot easily be overcome." *Id.* at 98. Restrictions on the public's right of access are justified only in "the most compelling circumstances," *In re Application of Nat'l Broadcasting Co.*, 635 F.2d 945, 952 (2d Cir. 1980), and require "specific, on the record findings" that sealing "is essential to preserve higher values and is narrowly tailored to serve that interest," *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citations and internal marks omitted).

The News Organizations recognize that the videos are sensitive and that some or all of the alleged victims or other participants in the Freak Offs may have meaningful privacy interests. But

Page 3

given the central role that the videos may play in the determination of Mr. Combs' guilt or innocence in this case, those privacy interests cannot overcome the public's powerful First Amendment interest in monitoring the judicial process. *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 47-48, 51 (2d Cir. 2019) (ordering the unsealing of the summary judgment record in a civil suit brought by a victim of sexual abuse by Jeffrey Epstein, notwithstanding the potential for public access to "exacerbate . . . harms to privacy"); *Breest v. Haggis*, 2022 WL 7109553, at *3 (N.Y. Sup. Ct. Oct. 12, 2022) (privacy interests of third-party witnesses in case involving "[a]llegations of sexual assault" insufficient to overcome presumption of openness). Indeed, there may be no more significant evidence in the case. *See generally Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (recognizing that the weight of the presumption of openness turns on "the role of the material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring the federal courts") (citation and internal marks omitted). The indictment alleges that physical and sexual abuse was common at the Freak Offs and points to videos filmed by Mr. Combs of alleged victims engaged in sex acts with commercial sex workers, *see* ECF No. 144, while the defense contends that the recordings merely capture the "swinging" lifestyle. The News Organizations should be permitted to view the videos for themselves and describe their contents to the public. Open proceedings will give the public "confidence in the administration of justice," "a more complete understanding of the judicial system and a better perception of its fairness." *Amodeo*, 71 F.3d at 1048 (citation omitted).

Alternatively, even if the parties seeking to close the courtroom can show "an overriding interest that is likely to be prejudiced," "the closure must be no broader than necessary to protect that interest" and "the trial court must consider reasonable alternatives to closing the proceeding" entirely. *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 304 (2d Cir. 2012); *see also, e.g.*, *Press-Enterprise Co.*, 464 U.S. at 513 (holding that trial court erred by "fail[ing] to consider alternatives to closure"); *Ayala v. Speckard*, 131 F.3d 62, 71 (2d Cir.1997) (suggesting that trial courts must "consider lesser alternatives . . . before taking the extreme step of closing an entire proceeding"). Thus, if the Court believes that playing the exhibits in open court would implicate victim privacy interests that overcome the general public access right to trial exhibits, the News Organizations request that three pool reporters be allowed to view and report on all of the video exhibits as they are being shown to the jury.

We thank the Court for its attention to this matter. Should the Court have any questions about this application, we are of course happy to appear to address them.

Respectfully Submitted,

DAVIS WRIGHT TREMAINE LLP

*s/Robert Balin*
Robert Balin
Alexandra Perloff-Giles

cc:      Attorneys of Record (via ECF)