

**Douglas H. Wigdor**
dwigdor@wigdorlaw.com

May 12, 2025

<u>**VIA ECF**</u>

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: <u>United States v. Combs, S3 24 Cr. 542 (AS)</u>

Dear Judge Subramanian:

We write as counsel for Casandra Ventura in opposition to the News Organizations' application for an order unsealing sexually explicit videos that will be introduced into evidence at trial ("Sealed Videos"). ECF 327.[1] The News Organizations do not cite any case, and nor are we aware of any authority, granting this unprecedented request in a sex trafficking case to unseal videos depicting coercive sex acts. For the reasons stated herein, we respectfully request that the Court deny the motion and deny any request for news reporters to "watch and listen to the video exhibits as they are being shown." <u>Id</u>. at 2.

## I. Legal Standard for Sealing Judicial Documents

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment, and a slightly weaker form based in federal common law." <u>United States ex rel. United States v. Am. Univ. of Beirut</u>, 718 F. App'x 80, 81 (2d Cir. 2018). In the analysis for either presumption, courts must first determine whether the record is a judicial document. <u>Id</u>.; <u>Doe 1 v. JP Morgan Chase Bank, N.A.</u>, 742 F. Supp. 3d 387, 392 (S.D.N.Y. 2024). There is no dispute that the Sealed Videos, which the government will seek to admit as evidence at trial, are "relevant to the performance of the judicial function and useful in the judicial process" and are considered judicial documents. <u>Brown v. Maxwell</u>, 929 F. 3d 41, 49 (2d Cir. 2019) (citing <u>United States v. Amodeo</u>, 44 F. 3d 141, 145 (2d Cir. 1995) ("Amodeo I")). Because the First Amendment right is considered "more stringent" than the common-law right of access, courts need not engage in the common law analysis when the

---

[1] The News Organizations' position effectively seeks the unsealing of the videos, as they are requesting public and media access to view the videos as they are presented to the jury. Their request that the Court deny any motion to close the courtroom is premature and inapt here, as there has been no such application made to the Court and it is understood that the Sealed Videos will only be accessible to the parties, the Court, and the jury.



First Amendment right attaches.  See Doe 1, 742 F. Supp. 3d at 392 (S.D.N.Y. 2024) (citing Newsday LLC v. Cnty. of Nassau, 730 F. 3d 156, 164 n.9 (2d Cir. 2013) ("Because in all cases where the First Amendment applies the common law right applies a fortiori, we need not address the common law right.")).

### A.     Public Right of Access is Not Absolute

That evidence may be relevant to the performance of the judicial function is not the only relevant consideration in evaluating the News Organizations' request.  In determining whether the public and press should "receive First Amendment protection in their attempts to access certain judicial documents," the Second Circuit has articulated two approaches: under the first test, the Court must consider "whether the documents have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question;" under the second test, the Court must evaluate the "extent to which the judicial documents are derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." Lugosch v. Pyramid Co. of Onondaga, 435 F. 3d 110, 120 (2d Cir. 2006) (quotations omitted).  "[A]ny right of access is not absolute."  Id., 435 F. 3d at 12, n.4.

In fact, this Court previously affirmed that descriptions of the content of the videos at issue were appropriately sealed in the parties' submissions pursuant to Lugosch, 435 F. 3d 110 (2d Cir. 2006) (ECF 141) (emphasis added).  In its Addendum to Protective Order (ECF 156), this Court found good cause to order restrictions the parties have agreed to with respect to the storing, handling, and viewing of the Sealed Videos.  Demonstrating that it intended for these videos to remain sealed during and after trial, the Court instructed Agnifilo Intrater LLP to return the devices containing the Sealed Videos to the government within one week following either the jury's verdict or the defendant's plea of guilty to the Government, so that they may be destroyed in accordance with Paragraph 12 of the Protective Order (ECF 26).  The Addendum includes specific language that the provisions "shall not terminate at the conclusion of this criminal prosecution and the Court will retain jurisdiction to enforce this Order following termination of the case." Id. at 4.  The Court's prior rulings highlight a recognition that this particular evidence raises unique and compelling circumstances requiring a careful balancing of interests.

### B.     Highly Sensitive Exhibits Implicate Ms. Ventura's Privacy Interests

The presumptive right to access is outweighed by the privacy interests of Ms. Ventura and others depicted in the videos.  "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  Lugosch, 435 F. 3d at 120.  "The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." Amodeo I, 71 F. 3d at 1050 (citations omitted).  Making the sexually explicit Sealed Videos public will effectively punish Ms. Ventura for testifying and re-traumatize her as the public will watch her abuse when she was at her most vulnerable.  Allowing the public to view the Sealed Videos will further violate her rights under the Crime Victims' Rights Act ("CVRA"), which affords her the "right to be treated with fairness and



with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8). It would be profoundly unfair for Ms. Ventura's brave choice to testify publicly and using her own name to require such a gross invasion of her dignity. This is especially true because she will testify and be cross-examined about the content of the videos in an open courtroom, thereby undermining any argument that the videos themselves are necessary for the News Organizations to report on the substance of this evidence. Ms. Ventura's privacy interests clearly outweigh the limited right of public access in this circumstance.

The News Organizations do not cite any authority supporting public access to sexually explicit evidence shown to a jury in a sex trafficking criminal trial—particularly when, as noted above, the public will hear detailed testimony concerning the contents of the Sealed Videos. Indeed, case law cited by the News Organizations are inapposite and have facts entirely distinguishable from the unique circumstances of this case. See Brown v. Maxwell, 929 F. 3d 41, 47-48, 51 (2d Cir. 2019) (finding no countervailing privacy interest sufficient to justify continued sealing of summary judgment record); Breest v. Haggis, 2022 WL 7109553, at *3 (N.Y. Sup. Ct. Oct. 12, 2022) (evaluating privacy interests of third-party witnesses seeking to use pseudonyms at trial); Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F. 3d 132, 142 (2d Cir. 2016) (finding no compelling privacy interest in a civil complaint that did not contain private or confidential client information).

### C.    Publicization of the Unsealed Videos Will Have Chilling Effect on Other Survivors

As the government has already explained in its opening statement in this case, the Unsealed Videos depict individuals, including those other than Ms. Ventura, nude, intoxicated, and engaging in sexual activity. Public disclosure will jeopardize the identities of individuals who are not testifying at this trial and may implicate potential confidential/pseudonymous witnesses
.
This is particularly so given that we anticipate Ms. Ventura will attest that Defendant filmed her engaging in unwanted sexual acts and then threatened her with the distribution and publicization of these explicit videos to manipulate Ms. Ventura into doing what Defendant wanted. Unsealing these videos would therefore essentially allow the media to carry out the very threats that Defendant held over her. Unsealing the videos would also therefore present an additional chilling effect on potential victims and witnesses who would be discouraged from cooperating with law enforcement and participating in the judicial process for fear of severe public humiliation and re-traumatization.

### D.    The Exhibits Have Minimal Value to the Public's Understanding of the Trial

The News Organizations' ability to report accurately and fully on this matter is not hindered by their inability to view the Sealed Videos. Nor will the lack of access to the Sealed Videos obstruct the public's ability to monitor the judicial process and have knowledge as to the substance of the evidence. During her anticipated testimony, Ms. Ventura will describe the videos in detail in an



open courtroom and will be subject to cross-examination. The defense will be able to question Ms. Ventura on what the Sealed Videos depict. Given the significant forthcoming testimony detailing the content of the Sealed Videos—and the News Organizations' acknowledgement that there may be significant privacy interests at stake—the media's request that the videos are shown publicly is therefore unreasonably prurient. See Amodeo I, 71 F. 3d at 1050 ("Courts have long declined to allow public access simply to cater 'to a morbid craving for that which is sensational and impure.'") (citation omitted); cf. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to ensure that its records are not "used to gratify private spite or promote public scandal" . . . .). The public will learn of the content of the Sealed Videos through testimony in open court without viewing extremely sensitive and sexually explicit videos, and all parties will have the opportunity to explore and probe the weight of this evidence even with the reasonable guardrails the Court has already placed around this evidence.

For reasons articulated herein, we respectfully request the Court deny the News Organizations' motion to unseal. We are prepared to address our position and any further questions the Court may have during tomorrow's proceedings. We thank the Court for its time and attention to this matter.


Respectfully submitted,

Douglas H. Wigdor