LAW OFFICES OF
# DRATEL & LEWIS

29 BROADWAY
Suite 1412
New York, New York 10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
EMAIL: llewis@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS
—
AMY E. GREER
JACOB C. EISENMANN

ACHARA AMY SCHRODER
*Paralegal*

May 14, 2025

**BY ELECTRONIC MAIL**
**SUBMITTED UNDER SEAL[1]**

The Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re: *United States v. Sean Combs,*
        24 Cr. 542 (AS)

Dear Judge Subramanian,

  This letter is submitted under seal and on behalf of my client, Jane Doe (hereinafter "Jane Doe"), who has been granted the right to proceed at trial under a pseudonym, and is also identified as Victim-2 in the Superseding Indictment in the above-captioned case. This letter simultaneously serves as the opposition to the May 12, 2025, Letter of Robert Balin and Alexandra Perloff-Giles to the Court, requesting on behalf of certain news organizations the ability to view as they are played for the jury "sexually explicit and sensitive" audiovisual trial exhibits that will be introduced at trial ("Video Exhibits") but will not be played in open court. *See* Dkt. No. 327.

  Since the Court has provisionally denied that application, along with the alternative "request that three pool reporters be allowed to view and report on all of the video exhibits as they are being shown to the jury[,]" this letter primarily serves to preserve Ms. Doe's position, and to set forth in greater detail than would be permissible in open court the bases for her

---

[1] Application has been made to the Court, via email to helpdesk@NYSD.UScourts.gov, requesting that Jane Doe (Victim-2) be added to the docket in the instant case as an interested party, and to allow for filing of documents by ECF. Such application has not yet been granted, but counsel for Ms. Doe is prepared to file a redacted version of this letter, as agreed upon by the parties, by ECF once Ms. Doe has been added and that capability is activated.

Case 1:24-cr-00542-AS   Document 350   Filed 05/22/25   Page 2 of 9

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
May 14, 2025
Page **2** of **9**

position. It is also requested that this letter be permitted to be filed under seal, with only a redacted version to be filed publicly, due to the sensitive information it contains as to Ms. Doe which could, if stated publicly, frustrate her ability to remain anonymous. *See* Dkt. No. 327; Trial Tr. 590, May 13, 2025.

Indeed, as set forth in greater detail below, to grant the News Organizations' request, or the alternative request that only three reporters be allowed to view and report on video exhibits, or in fact, to allow even one member of the press to view these videos would be manifestly and irreversibly unjust, and would serve only to re-traumatize the victim-witnesses who are the subject of these tapes.

This is particularly so with respect to Ms. Doe, who, as discussed **post**, has established significant privacy interests, including in these videos, in that she has never filed any lawsuit against Sean Combs or initiated any action which implicates these recordings. She is involved in the criminal case as a result of a government subpoena and has been granted the ability to testify under a pseudonym for various reasons, including due to the "unique and particularized challenges" the defense and prosecution both agree she would face if her identity were revealed.

Her pseudonymous status is based on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and which it is feared could be repeated. Also unique to Ms. Doe, allowing the press to view the videos at issue would not only reveal videos that the government alleged in its opening statement that the defendant has threatened her with, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

These factors constitute compelling and dispositive support for the Court's provisional decision denying the News Organizations' application, notwithstanding any general right of access under the First Amendment or common law principles.

I. *Neither the First Amendment Nor the Common Law Provide a Basis for Granting the Requested Access to the Sexually Explicit Videos at Issue*

Although there is a presumption of access under both the common law and the First Amendment, "documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). As set forth **ante**, and in greater detail below, Ms. Doe's privacy interests and the corresponding injury she would suffer if the Court were to grant the News Organizations' application constitute such factors.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
May 14, 2025
Page **3** of **9**

### A. *Analysis Under the First Amendment Right to Access Framework*

The Second Circuit has found that the public and press "have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents," *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 91 (2d Cir. 2004).

There are two tests available under the First Amendment to determine whether the public may be excluded from accessing judicial documents or a proceeding. Under the first, known as the "logic and experience" test, a court evaluates whether the documents are "those that have historically been open to the press and general public" and for which "public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120. See also *Press–Enterprise II,* 478 U.S., 106 S.Ct. 2735.

The second approach holds that First Amendment protections are "derived from or a necessary corollary of the capacity to attend the relevant proceedings." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004). Under this approach, the Court should consider whether closure, here the sealing of the audiovisual exhibits, is "essential to preserve higher values and is narrowly tailored to serve that interest." *In re New York Times Co.,* 828 F.2d at 116 (internal quotation marks omitted). *Press-Enterprise II,* 106 S.Ct. at 2743, citing *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984).

Under either approach, presenting the sensitive evidentiary material at issue solely to the jury would not violate the First Amendment rights of the press or the public, and is therefore consistent with the Court's provisional denial of the News Organizations' request.

### 1. *Sensitive Evidentiary Materials Depicting Sexual Acts of Alleged Victim-Witnesses and Other Documents Revealing the Identity of Victims or Private Details of Their Sexual Abuse Have Not Historically Been Available to the Press and/or General Public*

Historically, the courts in this Circuit, rather than affording the general public and the press access to documents including images, videos, or audio of sex crimes, have been exceedingly conscious of the potential harm public exposure of this type could cause, and have chosen to admit exhibits only under seal..

Notably, in *United States v. Raniere*, a case in which the defendant was alleged to have abused victims by forcing them to engage in sexual acts and recording those acts as blackmail, and which involved sexually explicit videos as to adult women as in the instant case, the Court granted a joint motion to admit evidence consisting of "sexually explicit photographs and videos" at trial only under seal. *United States v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019).

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
May 14, 2025
Page **4** of **9**

Likewise, in other contexts, the public has been refused access to a variety of documents revealing the identity of alleged victims and private details of alleged sexual abuse. *See, e.g.*, *Murphy v. Warden of Attica Corr. Facility*, No. 20CV3076PAEJLC, 2020 WL 6866403 (S.D.N.Y. Nov. 23, 2020); *Martich v. Smith*, No. 08-CV-6277 (SAS), 2009 WL 2043894, at *1 n.4 (S.D.N.Y. July 14, 2009); *Archbold v. Hessel*, No. 08-CV-3898 (SHS) (FM), 2011 WL 2671527 (S.D.N.Y. June 20, 2011) (Motion to file state court records under seal was granted to protect privacy of sexual assault victim.); *McKenzie v. United States Tennis Ass'n Inc.*, No. 6:22-CV-615-PGB-LHP, 2023 WL 6626109 (M.D. Fla. Oct. 11, 2023) (holding that "Jane Doe's privacy interest outweighs the public's minimal interest in disclosure because these exhibits represent only a fraction of the documents submitted.").

Nor, as the Court observed during discussion of this issue (Trial Tr. 588:15, May 13, 2025), is there any case in which a Court has found a requirement of public access to images or video evidence depicting sexual abuse, "especially when the individuals [depicted] are subjecting themselves to testimony about the incidents in open court, and the public will have access to that testimony."

**2.    *Public Access to Video Exhibits Depicting Sexual Acts of Ms. Doe Would Have a Significant Negative Role in the Function of the Trial***

Because of the salacious and prurient nature of the materials that are the subject of the News Organizations' application, which as discussed in Court involve solely those sections of the videos which depict sexual encounters (*see* Trial Tr. 587–588), admitting them publicly at trial would detract from the weight of the testimony itself, from any legal issues raised in regard to the content depicted in the video recordings, and would, most critically ███████████
████████████████████████████████████████████

Relevant also to consideration of this factor is not just the fact that the portions of the videos at issue portray sexual acts, but that they are alleged to portray -- as discussed in Counts 1 and 4 of the April 3, 2025, Third Superseding Indictment, which specifically relate to Ms. Doe -- "commercial sex acts [engaged in] as a result of force, fraud, or coercion."

Further, ███████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Case 1:24-cr-00542-AS    Document 350    Filed 05/22/25    Page 5 of 9

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
May 14, 2025
Page **5** of **9**

████████████████████████████████████████████
██

Also of significant concern, ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

3.  ***Sealing of the Video Exhibits at Issue Is Essential to the Preservation of "Higher Values" and Has Been Narrowly Tailored to Serve that Interest by the Court***

Under the First Amendment framework, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re New York Times Co.,* 828 F.2d at 116 (internal quotation marks omitted). *Press-Enterprise II,* 106 S.Ct. at 2743, citing *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984).

The "higher values" standard, articulated in *Press-Enterprise I*, amplifies the privacy rights of vulnerable individuals, in that the "privacy interests of those who resist disclosure" (such as Ms. Doe) have been identified as such a higher value. *Doe 1 v. JP Morgan Chase Bank, N.A.,* 742 F. Supp. 3d 387, 397 (S.D.N.Y. 2024), quoting *S.E.C. v. TheStreet.com*, 273 F.3d 222, 232 (2d Cir. 2001) (also stating that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation").

The means chosen here, *i.e.* presentation of the Video Exhibits solely to the jury, is narrowly tailored to serve that interest with precision. The public will be excluded only from viewing video evidences which depicts sexually explicit conduct, not from hearing testimony from the witness-victims depicted, including Ms. Doe, and potentially others, as to their contents on both direct and cross-examination. As explained by the defense and the government during on the record discussion of this issue, which led to the Court's provisional ruling denying the News Organizations' request "[t]he only thing that would be under seal would be visual images and video and associated audio that is purely reflecting sexual conduct." Trial Tr. 338:23, May 13, 2025. The Court further noted, summarizing the arguments of the parties, that "testimony will be heard in open court and […] the only thing not being shown in open court will be the images and the videos themselves."

Thus, the public will not be deprived of the essential details of the recordings, from which they may make educated conclusions regarding the evidence adduced and as to the Court's

Case 1:24-cr-00542-AS    Document 350    Filed 05/22/25    Page 6 of 9

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
May 14, 2025
Page **6** of **9**

administration of justice. In short, narrowly tailoring the closure solely to the viewing of the Video Exhibits, would not constitute a loss of First Amendment freedoms.

This Court has also made on the record findings consistent with the First Amendment framework, demonstrating that exclusion of public access as to the Video Exhibits is essential to the preservation of those higher values, discussed **ante**, and is narrowly tailored to serve that interest, stating [w]hether it stems from the Crime Victims' Rights Act or from basic notions of avoiding that kind of trauma to alleged victims at this point, those are compelling interests that would override any interests in the public having access to these materials." This Court further finds that "even spotting the news organizations, . . . there is a compelling interest on the side of the public having access to trial materials, those are overridden by the interests in these victims."

This Court, in addressing the narrow tailoring of the proposed presentation of the evidence, has also appropriately distinguished *Brown v. Maxwell*, which the News Organizations cite to in their application, and in which, as the court notes, "the *entire summary judgement record* was sealed and the Court of Appeals determined that the district court had erred by not doing a document-by-document review of what needed to be sealed." Trial Tr. 589:7, May 13, 2025 (emphasis added).  The Court also noted that in that case "material was redacted, especially when it related to intimate encounters that the parties expected to remain confidential, and that would seem to apply, among other reasons, to the materials we're talking about here." *Id*., at 589:9.  The Court also established that it is unlikely that "images or videos [of] these types of acts that are alleged to be sexual abuse would be required to be shown in open court,"  because of "the obvious risk of revictimization of the people who are providing this testimony, especially when" as discussed **ante**, "the individuals are subjecting themselves to testimony about the incidents in open court, and the public will have access to that testimony." *Id*., at 588:21.

In sum, all the elements of a rebuttal to the presumption of the First Amendment right of access have been met, including (1) an on the record finding;  (2) demonstration that closure is essential to the preservation of higher values;  and (3) and that the latter is narrowly tailored to serve that interest.

### B.  *Analysis Under The Common Law Right to Access Framework*

Certain key tenets have developed along with analysis of right to access under the common law.  For instance, courts have long declined to allow public access simply to cater "to a morbid craving for that which is sensational and impure." *In re Caswell,* 18 R.I. 835, 836, 29 A. 259, 259 (1893). And, perhaps even more critically, although "the public has an 'especially strong' right of access to evidence introduced in trials," *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995), it "is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also United States v. Graham*, 257 F.3d 143, 149 (2d Cir. 2001).

**LAW OFFICES OF**
# DRATEL & LEWIS

Hon. Arun Subramanian
May 14, 2025
Page **7** of **9**

Applying the Common Law right of access consists of a three-step analysis. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d. Cir. 1995) ("*Amodeo II*"). First, the Court must determine whether the materials at issue are judicial documents. Second, the Court must determine the weight of the presumption by assessing the role of the material at issue in exercising its Article III power, and, third the Court must balance the "competing considerations against disclosure" by analyzing the "countervailing factors," which include but "are not limited to 'the danger of impairing law enforcement or judicial efficiency,' and 'the privacy interests of those resisting disclosure.'" *Lugosch*, 435 F.3d at 120, quoting *Amodeo II,* 71 F.3d at 1050.

Notably, after the "First Amendment right attaches, [the Court] 'need not ... engage in such a common law analysis' because in any case where the First Amendment presumption of access is overcome," as is the case here, "so too will the common-law presumption." *United States v. Erie Cnty.*, 763 F.3d 235, 241 (2d Cir. 2014).

Given the modest value to the public in viewing the Video Exhibits, as opposed to hearing testimony as to their contents, and the enormous strength of the countervailing considerations, the Court should find that the common law right of access presumption is wholly rebutted.

### 1. *Due to the De Minimis Evidentiary Value of the Viewing of Video Exhibits the Presumption of Access Should be Given Little Weight*

"[W]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d. at 1050.

Here, only short segments of the Video Exhibits are to be shown, accompanied by testimony in open court as to the contents of the videos, thus the viewing of the videos themselves would play a negligible role in the evidentiary record. As the Court noted during trial on May 13, 2025, and as discussed **ante**, the "only thing not being shown in open court will be the images and the videos themselves." Trial Tr. 588:1, May 13, 2025.

### 2. *The Balancing of Competing Considerations, Namely the Privacy Interests of Ms. Doe Against the Presumption of Access, Reaffirms the Court's Provisional Finding Against the Video Exhibits' Public Disclosure*

Pursuant to the common law framework, "[i]n determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. . . The nature and degree of injury must also be weighed. This will entail consideration . . . of the sensitivity of the information and the subject." *Amodeo II*, 71 F.3d at 1051. The privacy interests of the party opposing disclosure and

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
May 14, 2025
Page **8** of 9

"subject matter [that] is traditionally considered private rather than public" will both weigh "heavily against access." *Amodeo II*, 71 F.3d at 1050-1051.

In a recent case in the Southern District of New York (involving a different Jane Doe), the Court found that "[g]iven the specific, graphic detail of the alleged non-consensual activity that Doe describes in these excerpts, the privacy interest Doe has in non-disclosure of her testimony is robust. Unsealing these documents would force Doe 'to relive these traumatic moments from her deposition publicly, and the mere redaction of her name would not protect her from retraumatization.'" *Doe 1 v. JP Morgan Chase Bank*, N.A., 742 F. Supp. 3d 387 (S.D.N.Y. 2024).

Similarly, in *Giuffre v. Dershowitz*, the Court held that "[countervailing] interests are particularly acute given that the psychological and emotional wellbeing of survivors of alleged sexual assaults may be implicated by such a broad disclosure." *Giuffre v. Dershowitz*, 2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020).

The Supreme Court has also recognized that the privacy of sexual offense victims is a "highly significant" interest. *The Florida Star v. B.J.F.,* 491 U.S. 524, 537, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989).

The facts and circumstances unique to Ms. Doe, as set forth **ante,** only reinforce the propriety of the Court's ruling. Ms. Doe has a heightened privacy interest in the Video Exhibits at issue. As noted, she is a victim-witness with deep trauma related to the conduct and videos at issue. The Video Exhibits depict sexual acts in which Ms. Doe is alleged in the Third Superseding Indictment, to have participated as a result of force, fraud or coercion. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

As AUSA Comey stated in Court May 13, 2025, "[t]his was blackmail material that was used to victimize these women . . . and showing them to anyone more than absolutely necessary would feed into that victimization, would re-victimize them, and would unnecessarily humiliate them." Trial Tr. 586:16, May 13, 2025.

Ms. Doe has taken every step not to reveal her identity or private life in connection with this trial, while upholding her duty to testify as a witness in the trial. She has received pseudonymous status from the Court, upon an unopposed application by the government, based on the fact that she "face[s] particularized and unique challenges if her name [were to be] used," Dkt. No. 266, but which also undoubtedly contemplated the fact that she had never sought to engage publicly as to the conduct at issue in this case, such as by filing a lawsuit against Mr. Combs.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
May 14, 2025
Page **9** of **9**

[redacted]

The videos themselves were meant to remain private, recorded without exception on phones possessed by the participants.

It also bears stating that any injury Ms. Doe suffers from the disclosure of these tapes would be amplified by the unprecedented exposure that this trial has received, and will continue to receive, internationally. As set forth in the May 12, 2025, letter on behalf of the News Organizations, at 2, "[n]ews outlets around the world have been closely following the case since the investigation became public in March 2024 and especially since [Mr. Combs'] arrest in September 2024." *Id*. This timeline of interest is reflected in the data: according to Google Trends, data spikes in searches regarding the defendant occurred in March and September of 2024.[2] In the lead-up to and beginning of trial, there has been a further steady increase in searches and results, which will likely continue to rise as the trial progresses. The trial itself is the subject of intense public scrutiny, producing salacious and prurient headlines.

Accordingly, a full denial of the News Organizations' application is also warranted under the common law analysis.

II.     *Conclusion*

Analysis of the specific facts and circumstances relevant to Ms. Doe as applied to the First Amendment and common law frameworks, only reinforces the propriety of the Court's May 13, 2025, provisional ruling "denying the application raised by the news organizations and including the suggestion that three pool reporters be allowed to view and report on the video exhibits." Trial Tr. 590, May 13, 2025.  No less restrictive means are appropriate given the dire impact and retraumatization that public exposure, even to a single member of the public, would have on Ms. Doe. If the Court does at any point reconsider or change its position as to the news organizations' application, counsel for Ms. Doe respectfully requests to be heard on the matter as it pertains to Ms. Doe.

Respectfully submitted,



Lindsay A. Lewis

---

[2] https://trends.google.com/trends/explore?date=today%205-y&geo=US&q=Diddy&hl=en-US