Shapiro Arato Bach LLP

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

May 26, 2025

**VIA ECF**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

  We write on behalf of Sean Combs to provide legal authority pertinent to certain evidentiary issues that may arise in testimony next week and later in the trial, and to move to strike certain inadmissible evidence as to which prior defense objections were overruled.

  **A. Admissibility Of Relevant Defense Evidence**

   1. Constitutional Principles

  The defense appreciates the Court's May 19 order setting forth procedures the parties must follow to ensure that the trial is proceeding efficiently. We have been working hard to comply with the order and to meet and confer with the government as appropriate so that we can tee up evidentiary issues in advance whenever possible. At the same time, because of the nature of a criminal trial, issues will arise during the trial that we did not anticipate before trial or by the Court's deadline for exhibit lists. The defense must be afforded the opportunity to meet the government's case as it comes in, and to respond to testimony elicited by the government in real time. Although 3500 material helps to preview what the government's witnesses may say, it is not remotely a script and indeed often consists of mere rough notes. Until we hear the actual testimony, we do not know what the government will elicit or what its witnesses will say at trial. Accordingly, as the evidence comes in, we are continually adjusting our case and assessing whether we may need to add additional defense exhibits in response to the prosecution's case.[1]

---

[1] The rules anticipate such supplementing of both sides' discovery obligations through a provision for the "Continuing Duty To Disclose" where "A party…discovers additional evidence or material before or during trial." Fed. R. Crim. P. 16(c). Indeed, the government has also been adding new evidence not disclosed by either the original Rule 16 deadline of December 31, 2024, or the deadline for its exhibits list of April 25, 2025. The government made twenty-five Rule 16 productions after December 31. During trial, the government disclosed new exhibits during the trial on each of May 6, 8, 12, 14, 15, 16, 19, 20, 21, and 24, and continues to make Rule 16 productions during the trial, including on May 11, 12, 15, and 20.

Page 2

Hon. Arun Subramanian
May 26, 2025

With that in mind, it bears emphasis that fundamental constitutional principles protecting the rights of the accused must be considered when resolving prosecution objections to the introduction of defense evidence. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *accord United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995). Thus, under a variety of circumstances, the Second Circuit has reversed convictions where trial rulings erroneously prevented the defendant from presenting key evidence rebutting the government's case. *See*, *e.g.*, *United States v. Stewart*, 907 F.3d 677, 686-91 (2d Cir. 2018); *United States v. Scully*, 877 F.3d 464, 474-76 (2d Cir. 2017); *United States v. Litvak*, 808 F.3d 160, 182-84 (2d Cir. 2015); *United States v. Murray*, 736 F.3d 652, 659 (2d Cir. 2013); *Blum*, 62 F.3d at 68; *United States v. Masino*, 275 F.2d 129, 132-33 (2d Cir. 1960); *see also Scrimo v. Lee*, 935 F.3d 103, 112 (2d Cir. 2019) (granting habeas relief because exclusion of defense witnesses violated defendant's constitutional right to "a meaningful opportunity to present a complete defense"). To take just one of these examples, in *Murray*, the Court reversed the conviction where the trial court denied a defense request to introduce "surrebuttal evidence" in response to the government's rebuttal case, because the ruling denied the defendant "a fair opportunity to defend against the government's evidence." 736 F.3d at 659.

2. Photographs and Videos

The defense anticipates offering additional photographic evidence during its cross-examinations of the government's witnesses and in its case-in-chief, including some exhibits that we are disclosing during the course of the trial as soon as we identify them and decide we may offer them. This type of evidence is relevant for a variety of purposes. For example, photographs of Ms. Ventura illustrating that during her relationship with Mr. Combs, she continued to pursue her career as a model, musician, and actor are relevant to rebut the government's argument that Mr. Combs controlled her career and thereby coerced her to engage in "freak offs." For example, the evidence will show that Ms. Ventura released "Love A Loser" in 2017, and created the artwork for the song herself—the image of that artwork is thus directly probative of her agency and refutes the government's narrative.[2]

Likewise, photographs of Ms. Ventura participating in activities with her own friends demonstrate that she had her own life and support network. And photographs of Ms. Ventura with Mr. Combs at various public events, sometimes with other celebrities—many of which show her smiling and clearly enjoying herself—also powerfully rebut the government's claim that she was coerced and the victim of sex-trafficking and support the defense's position that she

---

[2] The Court sustained the government's objection to one image of the artwork, DX652, in connection with Mylah Morales's testimony, apparently on relevance grounds. Tr. 2422. With the legal authorities and additional proffer of relevance set forth herein as background, the defense will seek to introduce this artwork in a different form through another witness.

Page 3

Hon. Arun Subramanian
May 26, 2025

loved Mr. Combs, had her own reasons for being around him, and consented to the sexual activity at issue.[3]

*Authentication of photographs.* During our discussions, the prosecutors have suggested they may object to some photographs unless they are admitted through a witness who was present when the photograph was taken or had personal knowledge of the event at which the photograph was taken. Assuming a photograph is relevant and admissible, however, that is not a valid objection.[4] "The bar for authentication of evidence is not particularly high." *United States v. Gagliardi*, 506 F. 3d 140, 151 (2d Cir. 2007). The proponent of the evidence must simply "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Proof of authenticity "may be direct or circumstantial." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008). To authenticate a photograph, "the witness need only have personal knowledge of the facts represented or the scene or objects photographed." 2 McCormick On Evid. § 215 (9th ed.). The witness "does not need to be the photographer or see the picture taken. It is only necessary that he recognize and identify the object depicted and testify that the photograph fairly and correctly represents it." *Kleveland v. United States*, 345 F.2d 134, 137 (2d Cir. 1965); *accord United States v. Okulaja*, 21 F.4th 338, 345 (5th Cir. 2021). Thus, testimony that an individual "[is] featured in the photograph" and describing the scene depicted "provide[s] sufficient information to authenticate the photograph." *United States v. Gonzalez*, 279 F. App'x 806, 810 (11th Cir. 2008). Indeed, the government itself has introduced numerous photographs of people in this way, through witnesses who recognized the person depicted in the photograph, without establishing that the witness was familiar with the circumstances under which the photograph was taken.

*Authentication of videos.* The Second Circuit "has never expressly adopted a rigid standard for determining the" authenticity of video tapes, and authenticity may be established by presenting witnesses who recall the events depicted, testimony as to chain of custody, testimony of the person recording the events, or any other evidence tending to show the accuracy of the depictions. *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977); *accord United States v. Hamilton*, 334 F.3d 170, 186 (2d Cir. 2003); *see also Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 974 (2d Cir. 1985) (testimony as to authentication is sufficient); *Mikus v. United States*, 433 F.2d 719, 725 (2d Cir. 1970) (holding that a video tape is admissible where there was testimony that the recording was a "fair and accurate representation of the occurrences"). As with photographic evidence, "[t]here simply is no requirement that the [recordings] be put in evidence through the person" making the recording or "through a contemporaneous witness to the record[ings]." *Fuentes*, 563 F.2d at 532.

*Photographs and videos have independent relevance even if they depict something also addressed in witness testimony.* During Mylah Morales's testimony, the Court suggested that if

---

[3] For example, government witness Kerry Morgan testified that Cassie "lost her confidence big time," "lost her spark," and "was always very slumped" during the relationship. Tr. 1589-90.

[4] Obviously, to the extent feasible or useful for providing context, we will introduce photographs through witnesses with personal knowledge about the event depicted. But that is not required under the rules.

Hon. Arun Subramanian
May 26, 2025

an image "is a depiction of something that you can elicit through testimony," then it "is not probative of anything." Tr. 2422. Respectfully, that is incorrect. For starters, "the definition of relevance under [Rule] 401 is very broad," *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014), and "unless an exception applies, all '[r]elevant evidence is admissible.'" *United States v. White*, 692 F.3d 235, 246 (quoting Fed. R. Evid. 402) (alteration original). "[E]vidence need not be conclusive in order to be relevant. An incremental effect ... is sufficient." *Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 147 (2d Cir. 1981).

Thus, if a photograph "corroborate[s] and clarifie[s] testimony," then it is relevant under Rule 401. *United States v. Sampson*, 486 F.3d 13, 43 (1st Cir. 2007); *United States v. Mohammed*, 27 F.3d 815, 822 (2d Cir. 1994) (photographs admissible because they "simply corroborated … testimony"); *United States v. Ayers*, 2024 WL 1158686, at *4 (E.D.N.Y. Mar. 18, 2024) (admissible where "provide probative value and corroborate witness testimony").

Photographs may also be independently relevant and thus admissible "independent of the testimony of any witness." *United States v. Rembert*, 863 F.2d 1023, 1028 (D.C. Cir. 1988); *see United States v. Stearns*, 550 F.2d 1167, 1170-72 (9th Cir.1977) ("[A] photograph may have probative value that is independent of amplification by other testimony"). Photographic evidence is also admissible as "[b]ackground evidence," and "need not go to a fact in dispute to be admissible." *United States v. Condrin*, 473 F.3d 1283, 1286 n.2 (10th Cir. 2007).

Moreover, visual evidence like photographs and videos adds a dimension to the evidence beyond what oral testimony can depict for the jury. For instance, photographs showing Ms. Ventura smiling at public events with Mr. Combs have evidentiary value independent of any testimony that Ms. Ventura was happy at times or enjoyed particular events and activities during her relationship with Mr. Combs. Likewise, an album cover or a photo from a modeling shoot will add a dimension not captured by oral testimony about the fact that Ms. Ventura released an album or did modeling work. As the Supreme Court has explained, parties are permitted to present their case in a manner that "tells a colorful story with descriptive richness," using testimony and exhibits that have "evidentiary depth" and communicate "narrative integrity." *Old Chief v. United States*, 519 U.S. 172, 187-90 (1997). Indeed, "[i]f [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." *Id.* at 188. It is not sufficient merely to *tell* the jury that a particular narrative is true, or present testimony on the subject. Rather, "[a]s every schoolchild knows, a picture is worth a thousand words," *F.C.C. v. CBS Corp.*, 567 U.S. 953 (2012) (Robert, C.J., concurring in the denial of certiorari), and can play an important role in a party's trial presentation.

Indeed, these are some of the reasons the government is ordinarily permitted (including in this case) to introduce photographs to corroborate testimony about what it recovered during a search, or to display guns, drugs, or other physical objects it seized to the jury, rather than being limited to oral testimony about those subjects. Likewise, the rules permit both sides to introduce photographs of various people who are part of the story of the case, even if those people also testify or are present in court, and the government has certainly done that in this trial. Of course, as a matter of basic due process, the Rules of Evidence must be applied evenhandedly to both sides. The types of photographic and video evidence the defense will seek to introduce plainly

Page 5

Hon. Arun Subramanian
May 26, 2025

meet the "low threshold" for "[r]elevance under the FRE," and should thus be admitted unless some exception actually precludes their admission. *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019).

With these principles as background, we will address any specific objections the government makes to particular photographs or videos the defense seeks to introduce at the appropriate time in accordance with the schedule set forth in the Court's May 19 order.

### B. <u>Improper Testimony Regarding Fact Witnesses' Opinions Should Be Struck And Precluded Going Forward</u>

Scott Mescudi's opinion that Mr. Combs was "lying" about his Porsche was erroneously admitted and should be stricken from the record. On re-direct, the government elicited the following testimony from Mr. Mescudi regarding his meeting at the Soho House with Mr. Combs:

> Q. Mr. Combs said, I don't know what you're talking about when you asked about your car; is that correct?
>
> A. Yes.
>
> Q. Did you believe Mr. Combs when he said he didn't know what you were talking about?
>
> MR. STEEL: Objection.
>
> THE COURT: Ms. Johnson, can you just rephrase the question.
>
> Q. What was your understanding when Mr. Combs said he didn't know what you were talking about, at the end of that conversation?
>
> MR. STEEL: Objection.
>
> THE COURT: That's overruled.
>
> Q. You can answer.
>
> A. That he was lying.

Tr. 2409.

That testimony was highly improper, and the objection should have been sustained. A witness generally cannot testify that in his opinion, a declarant was lying when making a statement. "When the issue is a party's knowledge" or "state of mind," "in most instances a proffered lay opinion will not meet the requirements of Rule 701." *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992). That is because a lay opinion must be "*rationally based* on [the witness's] own perceptions." *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007)

Hon. Arun Subramanian
May 26, 2025

Page 6

(reversing conviction). This "rational-basis requirement 'is the familiar requirement of first-hand knowledge or observation.'" *Rea*, 958 F.2d at 1215. Here, Mescudi admitted he had no personal knowledge "that anybody affiliated with Mr. Combs was on or around [his] property at the time of the damage to [his] vehicle." Tr. 2376. His testimony that Combs was lying was therefore mere speculation that does not satisfy Rule 701.

Opinions as to the credibility of the defendant's out of court statements also pose significant dangers of unfair prejudice and should be excluded under Rule 403. Courts have held that "it is error to permit a witness to testify over objection that another witness's extra-judicial statements were truthful" or "untruthful," and the same is true as to a witness's opinion "regarding whether the defendant was untruthful." *United States v. Sanchez*, 176 F.3d 1214, 1221 (9th Cir. 1999); *see also United States v. Sutton*, 2007 WL 1341400, at *2 (D. Ariz. May 7, 2007) (granting motion in limine precluding "witness[es from] referring to any statement of Defendants[] as lies or false"). Here, Mescudi's speculation about Combs's involvement had minimal probative value, whereas the danger of unfair prejudice, particularly since he was opining about an ultimate issue as to which he was the alleged victim—whether Combs was guilty of arson, one of the charged racketeering acts—was great. Accordingly, this testimony should be stricken from the record, and the government should not be permitted to elicit similar improper opinions about Mr. Combs's state of mind from other lay witnesses.

Respectfully submitted,

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4880
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
HARRIS TRZASKOMA LLP
156 West 56th St., Ste. 2004

Hon. Arun Subramanian
May 26, 2025

New York, NY 10019
(212) 970-6465
aestevao@harristrz.com

Brian Steel
THE STEEL LAW FIRM, P.C.
1800 Peachtree Street, Ste. 300
Atlanta, GA 30309
(404) 605-0023

Xavier R. Donaldson
136 Madison Ave, 6th Floor
New York, New York 10016
646-772-3334
Xdonaldson@aol.com

Nicole Westmoreland, Esq.
WESTMORELAND LAW, LLC
132 Cone Street, Suite A
Atlanta, GA 30303
Tel: (404) 446-2620
nw@westmorelandlawgroup.com