

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 26, 2025

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

  The Government respectfully submits this letter to apprise the Court of certain issues expected to arise during the course of Lance Jimenez, who the Government expects to call as early as Monday, May 27.

### Lance Jimenez

  This week, the Government expects to call City of Los Angeles Fire Department ("LAFD") Arson Investigator Lance Jimenez, whom the Government noticed as an expert in fire cause and origin determinations on March 7, 2025.[1]  Investigator Jimenez is expected to testify, in substance, that he responded to the scene of an auto fire on or about January 9, 2025 at a residence located at 8925 Hollywood Hills Road.  There, he observed smoke and fire damage to a black Porsche parked in the driveway, a glass bottle filled with liquid that smelled of gasoline and a burnt handkerchief in the driver's seat of the Porsche, and a red Bic lighter near the Porsche.  Investigator Jimenez will testify that he concluded that the auto fire was deliberately set and that the cause of the fire was a Molotov cocktail dropped into the Porsche.[2]

  The Government understands that during Investigator Jimenez's testimony, the defense plans to attempt to elicit details regarding DNA testing and analysis that was performed after Investigator Jimenez responded to the scene of the auto fire.  Specifically, as noted in Investigator Jimenez's report, "LAPD Serology recovered partial female DNA from [the glass bottle]."  (Ex. B at p.6).  However, Investigator Jiminez did not collect the swabs personally, did not perform the testing himself, has no personal knowledge regarding the testing other than what is included in his report and the additional materials, and does not understand and cannot explain to what "partial female DNA" refers.  Moreover, the records regarding DNA collection and analysis are limited and do not detail, for instance, which part of the glass bottle the DNA was collected from, the

---

[1] Investigator Jimenez's expert notice is attached hereto as Exhibit A.

[2] Investigator Jimenez's investigative report is attached at Exhibit B.  The Government's understanding is that the defense will not introduce Investigator Jimenez's report into evidence.

concentration of DNA of additional contributors recovered, and how many distinct DNA profiles were developed from the glass bottle.[3] The Court should preclude cross-examination of Investigator Jimenez regarding DNA testing and results because (i) the testimony constitutes impermissible hearsay based on incomplete documentation of the DNA testing, (ii) the DNA evidence requires expert testimony, and (iii) cross-examination of Investigator Jimenez about the DNA testing results violates Federal Rules of Evidence 702 and 403.

*First*, the defense should not be permitted to question Investigator Jimenez about the DNA testing and results because such testimony would elicit inadmissible hearsay and should be excluded on those grounds alone. Investigator Jimenez did not swab evidence for DNA, did not conduct the DNA testing, did not perform analysis, and did not author any report. Accordingly, his knowledge of the results of the DNA analysis comes solely from an out-of-court statements made by a third party and is quintessential hearsay. *See United States v. Forrester*, 60 F.3d 52, 59 (2d Cir. 1995); *cf. Smith v. Arizona*, 602 U.S. 779, 795-96 (2024) (when a forensic testing expert conveys an out-of-court statement in support of his opinion, and the statement supports that opinion only if true, then the statement has been offered for the truth of what it asserts). The defense has also not articulated any hearsay exception for the admission of this evidence. The defense thus should not be permitted to admit the results of the analysis through Investigator Jimenez or ask Investigator Jimenez about the results of the DNA analysis. *See United States v. Eusebio*, 22 Cr. 522 (GHW), Nov. 7, 2025 Trial Tr. at 508-511 (precluding defense from questioning non-expert witness about DNA results on the basis that it is "hearsay" since they are asking a "witness to testify about the content of some information that's derived from a third source for the truth of the matter"); *United States v. Pabon*, 18 Cr. 319 (SHS), May 3, 2022 Trial Tr. at 81 (precluding defense from asking about results of the DNA evidence under Rule 403 and as hearsay).

*Second*, an expert is required for the admission of DNA analysis evidence and no such expert has been noticed here. *See Walker v. City of New York*, No. 14-CV-680 (NRM) (PK), 2024 WL 4198451, at *9 (E.D.N.Y. Sept. 16, 2024) ("[A]s with any other scientific evidence whose admission is challenged by an opposing party, the proponent's use of DNA evidence and the specific conclusions offered by its DNA experts must be screened for scientific validity and reliability."); *see United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) ("If the opinion of a witness 'rests in any way upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701. . .'" (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)). Investigator Jimenez is not an expert in DNA testing and analysis and was not noticed as such. Nor has the defense noticed its own DNA expert, let alone submitted any type of documentation as to the validity and reliability of that expert's analysis. Because no expert has been noticed by the defendant as to this DNA evidence, the

---

[3] Certain materials obtained in discovery indicate that Investigator Jimenez requested that multiple evidentiary items—including the glass bottle, the burned handkerchief, and the Bic lighter—be tested for DNA. (*See* Materials from Case File, attached at Exhibit C at p.10). The case materials include a two-page "Forensic Case Report" dated March 22, 2012, which concludes merely that a "partial DNA profile obtained from [the glass bottle] is consistent with a female contributor." (*See* Ex. C at p.11). Besides a one-page summary of alleles reported for each sample (*see* Ex. C at p.12), there is no documentation regarding the DNA testing.

defendant should be precluded from making any mention of the DNA testing results. *See e.g.*, *Al-Sabah v. Agbodjogbe*, No. CV SAG-17-730, 2019 WL 6498049, at *4 (D. Md. Dec. 3, 2019) ("The Defendants and their witnesses are precluded from making any mention of the DNA testing, or any results of such testing, at trial" because the defense did not notice an expert in DNA testing); *McCree v. City of Chester*, No. CV 0:20-867-JFA-PJG, 2023 WL 1814175, at *10 (D.S.C. Feb. 8, 2023), *appeal dismissed sub nom. McCree v. Walmart Inc.*, No. 23-1267, 2024 WL 1092546 (4th Cir. Jan. 19, 2024) (precluding plaintiff from stating conclusions regarding DNA testing as argument without first calling an expert).

*Third*, the defense should also be precluded from questioning Investigator Jimenez about the DNA analysis results under Federal Rule of Evidence 403 and 702. As noted above, the scant two pages of materials regarding DNA analysis contains woefully incomplete information about the DNA analysis performed here and leaves out necessary information, such as additional DNA profiles that were developed from the glass bottle and the concentration of those DNA profiles. Without additional facts and necessary context, the potential for jury confusion is exceedingly high, particularly when the DNA profile referenced in the two-page report was collected from a glass bottle that may have come in contact with any number of individuals from the time of its production to its use in the arson. Although the report notes that one of the samples is consistent with a female contributor, there is no additional documentation supporting this conclusion, no qualified expert to interpret it, and no suggestion that this was the only DNA recovered from the glass bottle. Without such information, the reliability, validity, and relevance of the results cannot be verified. *See, e.g.*, *United States v. Cortorreal*, 668 F. Supp. 3d 309, 318 (S.D.N.Y. 2023) (in assessing expert testimony regarding DNA testing, district court must consider whether (1) the testimony is grounded on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case); *see also United States v. Jones*, 965 F.3d 149, 162 (2d Cir. 2020) (district court's decision to admit expert testimony can be manifestly erroneous if the expert opinion is based on data inadequate to support the conclusions reached or if the opinion is speculative or based on assumptions). On the other hand, if the defense is allowed to mention the DNA results, there is a serious risk that the jury will assume that such evidence is reliable and valid. *See United States v. Lopez*, No. 3:20-CR-95 (VAB), 2025 WL 1114619, at *10 (D. Conn. Apr. 15, 2025) ("Expert evidence—particularly on the topic of DNA—can be 'both powerful and quite misleading'"). Accordingly, to prevent both juror confusion and an end run around Rule 702, the defense should be precluded from mentioning the DNA results.

Page 4

 For the same reasons, the Court should exclude any attempt to elicit testimony regarding latent fingerprints that were collected from the scene. As with the DNA testing, Investigator Jimenez did not personally collect fingerprints or conduct the fingerprint analysis. Nor has Investigator Jimenez—or anyone for that matter—been noticed as a fingerprinting expert qualified to testify to such analysis.

         Respectfully submitted,

         JAY CLAYTON
         United States Attorney

  By:  /s         
     Maurene Comey / Meredith Foster /
     Emily A. Johnson / Christy Slavik /
     Madison Reddick Smyser / Mitzi Steiner
     Assistant United States Attorneys
     (212) 637-2324/-2310/-2409/-1113/-2381/-2284