

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 18, 2025

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re:    *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

     The Government respectfully submits this letter to apprise the Court of certain issues with respect to witnesses that we expect to be called tomorrow for which the parties have not been able to reach agreement.

### Dawn Richard

     The defense has informed the Government that it may seek to introduce a series of text communications between Ms. Richard and Mr. Combs dating from 2020 through 2023—well after the time period relevant to her expected testimony—as well as two audio messages which appear to have been sent by the defendant to Ms. Richard. The Government seeks preclusion of this evidence.

- In the proposed text message exchanges, DX 1500 through DX 1519, Ms. Richard at times initiates contact with the defendant, discusses their professional development, and at times expresses love and admiration for the defendant. The defense has informed the Government that it may seek to introduce these messages under the hearsay exception for the declarant's then-existing state of mind. *See* Rule 803(3). However, the defense has failed to proffer a relevance to Ms. Richard's state of mind in the period from 2020 through 2023. Indeed, Ms. Richard is expected to testify to the defendant's threats and acts of violence that occurred between 2009 to 2011—over a decade prior. Ms. Richard's state of mind in 2020 to 2023 is therefore entirely irrelevant to her testimony. Moreover, the messages are not proper for purposes of impeachment. Ms. Richard is expected to testify that after leaving her employment for the defendant in 2011, she and the defendant maintained contact and that she intentionally sought to maintain a collegial relationship with the defendant in light of his prior threats to her. Thus, the content of the messages regarding Ms. Richard's expressions of affection for the defendant will corroborate, rather than impeach, her testimony.

### Kerry Morgan

If permitted, the Government anticipates that Kerry Morgan will testify about the following statements that Casandra Ventura made to her:

- Ms. Ventura told Ms. Morgan on numerous occasions that the defendant controlled her career and that she would record songs and the defendant would not let her release them; and

- Ms. Ventura told Ms. Morgan on various occasions that she felt she could not break up with the defendant because the defendant controlled her career and that Ms. Ventura was scared of the defendant.

The Government seeks to admit both statements as prior consistent statements of Ms. Ventura pursuant to Rule 801(d)(1)(B). The first statement directly responds to the defense's challenge to Ms. Ventura's credibility regarding her testimony about the defendant's control and limitation of her career opportunities. In particular, the defense repeatedly suggested on cross examination that the defendant did not actually thwart Ms. Ventura's music career but instead gave Ms. Ventura numerous music opportunities. (Tr. at 1338-40 ("in many ways, being his girlfriend meant that opportunities were available to you in many different ways, right?") ("And you also had plenty of studio time") ("And you put out a mixed tape called RockaByeBaby")). The defense has also opened the door to the second statement through cross-examining Ms. Ventura about the fact that she was eventually let out of her music contract with Bad Boy Records, (Tr. 1339-40), plainly attacking her credibility as to her statements about the defendant's control over her career, and by attacking Ms. Ventura's credibility through cross-examination as to her testimony that she was scared of the defendant by, among other things, pointing to messages in which Ms. Ventura expressed that she felt safe around the defendant. (Tr. 940-41, 951, 1054). The defense has informed the Government that it believes that these statements are inadmissible hearsay. In addition, the second statement—demonstrating Ms. Ventura's real-time state of mind with respect to the defendant's control over and danger to her—are also admissible to show her then-existing state of mind. Fed. Evid. 803(3).

In addition to the above statements, The Government anticipates that Ms. Morgan will testify about the following statements that Casandra Ventura made to her.



The Government anticipates that Ms. Morgan will testify that Ms. Ventura made

this statement to Ms. Morgan after Ms. Ventura came back to the apartment where they were both staying from the Intercontinental Hotel, had a black eye, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The Government anticipates that Ms. Morgan will then testify about a host of events that transpired at the apartment including the defendant coming to the apartment with a hammer, the police being called, and Ms. Morgan calling the defendant's employees to come pick him up.

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

The Government intends to offer the first two statements not for their truth but to provide background or context for the actions of that follow. As to the third statement, the Government intends to offer this statement not for its truth but as evidence of Ms. Ventura's state of mind and to show the degree to which Ms. Ventura perceived the defendant controlled her life. *See* Fed. R. Evid. 803(3). The defense has informed the Government that it believes that these statements are inadmissible hearsay, irrelevant, and/or should be excluded under Rule 403.

### David James

Disputed topics of Mr. James's testimony along with the bases of admission are set forth below:

- Mr. James will testify about a conversation he had with Casandra Ventura in or around 2007 or 2008 during which Ms. Ventura told Mr. James, in sum and substance, "this life is crazy." When Mr. James asked Ms. Ventura why she didn't just leave, Ms. Ventura responded that the defendant had too much control over her, including control over her career. The Government respectfully submits that Ms. Ventura's statements are admissible under Fed. R. Evid. 803(3) to show Ms. Ventura's state of mind. It is also admissible under Fed. R. Evid. 801(d)(1)(B) as Ms. Ventura's prior consistent statement. (*See* Gov't Mot. *In Limine* at 21-24, 30-31; *see also* May 16, 2025 Tr. at 1338-40; 1341-44).

- Mr. James will testify that in or around January 2009, the defendant went out to a club with Ms. Ventura and members of his staff. Mr. James had the night off and was at the defendant's home in Los Angeles when the defendant burst into the house and demanded to see Mr. James's Internet browsing history because, according to the defendant, someone was lying that he had assaulted Ms. Ventura. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The defendant later instructed Mr. James to bring food to Ms. Ventura at the London Hotel, where she stayed for approximately one week. When Mr. James arrived at Ms. Ventura's room, a member of the defendant's personal staff answered the door, which Mr. James noted as unusual. The Government respectfully submits that Ms. Robles's statements are admissible under Fed. R. Evid. 801(d)(2)(D), given that Ms. Robles was the defendant's employee and her statements were made "on a matter within the scope of that relationship and while it existed." *See Pappas v. Middle Earth Condominium Ass'n*, 963

F.2d 534, 537 (2d Cir. 1992) (noting that "an employee is usually the person best informed about certain acts committed in the course of his employment," and because "while still employed an employee is unlikely to make damaging statements about his employer, unless those statements are true"). Alternatively, the Government offers the statements not for their truth but to provide context to Mr. James's subsequent actions (*i.e.*, bringing food to Ms. Ventura at a hotel). (*See* Gov't Mot. *In Limine* at 9-12).

- Mr. James will testify about a physical altercation involving the defendant and the defendant's personal chef, Jourdan Atkinson. Although Mr. James did not witness the physical altercation personally, he arrived at the defendant's residence shortly after it happened. The defendant told Mr. James that Ms. Atkinson had assaulted him and instructed Mr. James to go to the police station and file a report that Ms. Atkinson had been the aggressor in the altercation. Mr. James did not comply because he did not want to file a false police report. ████████████████████████████████████████████████ The Government respectfully submits that the statements of both Mr. Bonds and Ms. Atkinson are admissible under Fed. R. Evid. 801(d)(2), given that both Mr. Bonds and Ms. Atkinson were employed by the defendant and the statements were made "on a matter within the scope of that relationship and while it existed." In particular, the statements of Bonds and Atkinson were made in the context of the defendant's directive to Mr. James to file the police report. Alternatively, the Government offers the statements not for their truth but to provide context to Mr. James's actions (*i.e.*, receiving instruction to file a police report but failing to do so). (*See* Gov't Mot. *In Limine* at 9-12).

- Mr. James will testify that Mr. Bonds told him about one of the defendant's former personal assistants, Capricorn Clark, being required to take a lie detector test after some of the defendant's valuable jewelry went missing. Mr. Bonds told Mr. James about this incident after Mr. James found what he thought was a loose diamond that had fallen off of the defendant's jewelry. Mr. Bonds explained that since the incident after which Ms. Clark was required to take a lie detector test, the defendant's jewelry was largely made of cubic zirconium. The Government respectfully submits that Mr. Bonds's statements are admissible under Fed. R. Evid. 801(d)(2), given that Mr. Bonds was employed by the defendant and the statements were made "on a matter within the scope of that relationship and while it existed." (*See* Gov't Mot. *In Limine* at 8, 10-12).

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    /s                      
     Maurene Comey / Meredith Foster /
     Emily A. Johnson / Christy Slavik /
     Madison Reddick Smyser / Mitzi Steiner
     Assistant United States Attorneys
     (212) 637-2324/-2310/-2409/-1113/-2381/-2284