

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 11, 2025

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

      The Government respectfully writes to respond to two issues discussed at the May 9, 2025 conference, specifically (i) whether a prior consistent statement is only admissible after a defendant attacks a witness's credibility as to that specific statement; and (ii) whether the defendant may cross examine Victim-1 about two specific prior ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ under Federal Rule of Evidence 404(a)(2)(B). As discussed further below, Rule 801, as amended, does not require the Court to parse whether the defense attacked the witness's credibility as to the specific statement prior to the admission of a prior consistent statement; instead, the attack on credibility need only be logically related to the prior consistent statement. In addition, contrary to defense counsel's claims at the May 9 conference, Rule 404(a)(2)(B) only allows for the admission of reputation or opinion evidence, and therefore does not permit Victim-1 to be cross-examined as to these two specific incidents.

    A.  Prior Consistent Statements

      Although a "generalized attack" on credibility may not open the door to admission of prior consistent statements, Rule 801 does not require that a witness's credibility be challenged with respect to a *specific* statement prior to the admission of prior consistent statement. Instead, there only needs to be some logical connection between the prior statements and the theory upon which the witness was attacked. *See United States v. Roye,* 2016 WL 4147133, at *1 (D. Conn. Aug 4, 2016); *see also United States v. Chiu*, 36 F.4th 294, 301 (1st Cir. 2022) (holding that there must be "some degree of fit between the alleged fabrication and the prior statement"); 1 McCormick on Evid. § 47 (9th ed.) ("The general test of admissibility is whether evidence of the witness's . . . consistent statement is logically relevant to explain the impeaching fact."); *cf. United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) ("The question is not whether the defense introduces a specific statement, but rather whether it has made a specific attack on a witness's credibility. Otherwise, as the Government argues, the defendant would be free to attack the witness with suggestive or misleading cross-examination or mischaracterization as long as he did not introduce a specific prior statement."). In addition, a challenge to the witness's testimony need not be express before prior consistent statements rebutting such a challenge may admitted. Instead, even a suggestion or insinuation that the witness altered his testimony is sufficient. *See United States*

*v. Caracappa*, 614 F.3d 30, 39 (2d Cir. 2010) (affirming admission of prior consistent statements to rebut defense insinuation that witness had testified from improper motive); *see also Lech v. von Goeler*, 92 F.4th 56, 68 (1st Cir. 2024) ("a charge of recent fabrication does not have to be expressly made."); *United States v. Frazier*, 469 F.3d 85, 88 (3d Cir. 2006) ("[T]here need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial.").

A witness's prior consistent statements are also admissible where a defendant points to other apparently contrary statements of the witness and claims that they are the "more accurate and truthful statements." *United States v. O'Connor*, 650 F.3d 839, 863 (2d Cir. 2011). For example, in *O'Connor*, the Second Circuit upheld the admission of a prior consistent statement of a victim where the defense in its opening statement pointed generally to other statements the victim had made which "omitted any charge of incest or sex trafficking" and the defendant claimed that they were the "more accurate and truthful" statements of the victim. *Id.*

Here, there are various bases on which Victim-1's credibility may be attacked during opening arguments—absent an attack on any specific statement—that would open the door to the admission of Victim-1's prior consistent statements. *First*, the Government anticipates that the defense may insinuate during its opening statement that Victim-1 was a willing participant in freak offs ("FOs") with the defendant and that Victim-1's communications show that she wanted to participate in FOs and took actions to set them up. For example, in various filings with the Court, the defendant has repeatedly pointed to prior statements of Victim-1 that they claim support that the FOs she engaged in were "voluntary and consensual, not coerced." (*See, e.g.*, Dkt. 160 at 2-3, 5-6). In addition, the defense may insinuate during opening statements that Victim-1's anticipated testimony as to the extent of the defendant's control over various aspects of her life is exaggerated. To the extent that the defendant makes any of these arguments during its opening statement or through cross-examination, the Government should be permitted to introduce prior consistent statements of Victim-1 that logically relate to and rebut such claims.[1] For example, statements in which Victim-1 mentions the defendant's threats about releasing explicit tapes of her, the defendant's abuse of her and her fear of him, his attempts to control her career, and which otherwise explain why Victim-1 felt she could not say no to the defendant's requests are admissible to rebut the claim by the defendant that Victim-1 was a willing participant in FOs.

*Second*, and relatedly, the Government anticipates that the defendant may suggest during its opening statement that Victim-1 has a financial motive for testifying that she was coerced by the defendant and that her account of the defendant's sexual exploitation of her was recently fabricated. If the defendant makes such an insinuation about specific aspects of Victim-1's testimony, then the Government should be permitted to admit prior consistent statements of Victim-1 which were made prior to such a motive arising and which logically rebut such a claim. *See United States v. Burrell*, 43 F. App'x 403, 406 (2d Cir. 2002) (upholding the admission of a prior consistent statement of a cooperating witness made at the time of the witness's arrest, where the defendant argued in opening statements that "the cooperating witness had a motive to lie."); *see also United States v. Flores*, 945 F.3d 687, 705 (2d Cir. 2019) (affirming district court's

---

[1] Many such statements are also admissible to show the declarant's state of mind pursuant to Fed. R. Evid. 803(3).

admission of prior consistent statements during direct testimony where defense argued in opening statements that the witness "had a motive to fabricate or embellish defendants' statements"). For example, if the defendant argues that prior to any financial motive, Victim-1 never claimed that she was coerced into participating in FOs, the Government should be able to admit statements of Victim-1 describing the defendant's coercion which were made prior to such a financial motive arising. *See Lech*, 92 F.4th at 69 (admitting prior statement where there was "at least some degree of fit between Zygmont's testimony and the charge of fabrication it was offered to rebut").

B. Rule 404(a)(2)(B)

During the May 9, 2025 conference, defense counsel argued that it could cross examine Victim-1 as to two specific prior ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ under Federal Rule of Evidence 404(a)(2)(B). This is wrong.

Rule 404(a)(2)(B) states that "subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may: (i) offer evidence to rebut it; and (ii) offer evidence of the defendant's same trait." Fed. R. Evid. 404(a)(2)(B). "Rule 403 vests the district court with broad discretion to exclude such evidence when outweighed by the danger of undue delay or confusion." *United States v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990). However, even where pertinent trait evidence is admissible under this rule, "it is limited to reputation or opinion evidence, and does not extend to specific-act evidence." *United States v. Brugnara*, No. CR 14-00306 WHA, 2015 WL 1907513, at *5 (N.D. Cal. Apr. 23, 2015), *aff'd*, 856 F.3d 1198 (9th Cir. 2017); *see, e.g.*, *U.S.A. v. Shaw*, No. CR 14-00338(B)-SJO, 2018 WL 9649495, at *6 (C.D. Cal. Feb. 7, 2018) (defendant may not introduce "specific violent or aggressive actions of the victims to bolster the self-defense claim"); *United States v. Ballou*, 59 F. Supp. 3d 1038, 1064 (D.N.M. 2014). That is because, under Rule 405, unless a specific character trait is "an essential element of a charge, claim, or defense," then evidence of a person's character or character trait is admissible only "in the form of an opinion" and not through inquiry into "specific instances of the person's conduct." Fed. R. Evid. 405; *see United States v. Nixon*, 694 F.3d 623, 636 (6th Cir. 2012); *United States v. Stevenson*, No. CR-21-275-RAW, 2022 WL 4468139, at *1 (E.D. Okla. Sept. 26, 2022) ("Rule 405 establishes the permissible methods of proving character under Rule 404(a)(2)."); *see also United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978) ("[C]haracter evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts."). To be an essential element of a charge, claim or defense, it is not sufficient that the character trait is merely relevant to an element of a charge, claim or defense. *See United States v. Menendez*, 759 F. Supp. 3d 460, 529 (S.D.N.Y. 2024). Instead, the person's character itself must be an element of a crime, claim or defense—for example, the "competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver." *Shakur v. United States*, 32 F. Supp. 2d 651, 668 (S.D.N.Y. 1999); *see U.S.A. v. Shaw*, No. CR 14-00338(B)-SJO, 2018 WL 9649495, at *6 (C.D. Cal. Feb. 7, 2018) (stating that the "Ninth Circuit determined that even though a victim's 'violent character' is relevant, it is not an 'essential element' of a defendant's self-defense argument in a shooting case, and thus declined to permit the defendants to introduce specific violent or aggressive actions of the victims to bolster the self-defense claim"). "[C]haracter is an essential element of a charge, claim or defense only in very limited circumstances." 1 Wharton's Criminal Evidence § 4:21 (15th ed.).

Although the defense claimed at the May 9 conference that "[w]hether these incidents occurred may become relevant to rebutting the government's argument that [Victim-1] was coerced," the defense does not claim that the victim's character is an element of a crime, claim or defense. (May 9, 2025 Tr. at 69). Not could they: while a jury *may* consider in assessing the element of coercion for a sex trafficking charge whether a *reasonable person* with the same background and circumstances of the victim would have felt coerced by the defendant, *see United States v. Rivera*, 799 F.3d 180, 187 (2d Cir. 2015), no support exists for the proposition that the specific victim's character as a "strong or weak person" is an essential element of such a claim or a defense to that claim. (May 9, 2025 Tr. at 70).

Accordingly, specific-act evidence is not admissible under Rule 404(a)(2)(B), and the defense cannot cross examine Victim-1 regarding specific ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Further, even assuming such evidence was admissible, which it is not, it should be precluded under Rule 403. Allowing the defense to cross examine Victim-1 as to these events poses serious risk of juror confusion and delay without any probative value. *See Schatzle*, 901 F.2d at 256 ("The district court was well within its discretion in concluding that the potential delay from allowing a mini-trial on Gorayeb's conduct during his 1985 altercation with Diamond outweighed any likely probative value [as it] posed a genuine risk of focusing the jury upon the wrong event.").

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

By:   /s                     
     Maurene Comey / Meredith Foster /
     Emily A. Johnson / Christy Slavik /
     Madison Reddick Smyser / Mitzi Steiner
     Assistant United States Attorneys
     (212) 637-2324/-2310/-2409/-1113/-2381/-2284