

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

May 21, 2025

**VIA EMAIL**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

    The defense submits this letter in further support of its motion *in limine* to preclude the government from seeking to admit argumentative and unfairly prejudicial "summary charts" evidence under the guise of Rule 1006. *See* Dkt.203. When the defense first filed its motion, the government said it "agreed that any summary witness will only present charts summarizing voluminous exhibits consistent with [the rule]." Dkt.270 at 48. At the same time, the government conceded that the purpose of its charts was not to "prove a fact" but rather to present its interpretation of the evidence. *Id.* at 49. The Court reserved decision on Mr. Combs's motion until the government's produced its draft exhibits. 4/25/25 Tr.4-5. The government has now produced its draft charts, and it is clear that they represent the exact type of argumentative summary exhibits the Rules Advisory Committee has decided are not admissible under Rule 1006. Accordingly, Mr. Combs now renews his motion to preclude the government's summary exhibits.

    The government's draft exhibits, copies of which are being submitted with this letter, go far beyond what Rule 1006 permits. Draft GX 1402 through GX 1411 are not proper summaries at all—they are 112 pages of cherry-picked evidence organized in an argumentative, distorted fashion and accompanied by unnecessary annotations. The exhibits are exactly the sort of "mini-summation" exhibits that are inadmissible. *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998). One chart even attempts to summarize testimony from the trial, which is completely out-of-bounds. The Court should exclude these exhibits and any accompanying summary witness testimony.[1]

---

[1] GX 1401—a chart of selected phone numbers and associated names—is underinclusive, as it excludes many other phone numbers and associated names necessary to help the jury identify who is speaking in various text messages. However, the defense would not object to that exhibit if the government revises the chart to make it more complete and adds other phone numbers and names that could be helpful to the jury.

**A. Amended Rule 1006 "Summaries" and New Rule 107 "Illustrative Aids"**

Courts have repeatedly misapplied Rule 1006 by admitting into evidence charts that organize evidence in argumentative ways and create visual depictions of points for closing argument. That is why the Rules Advisory Committee amended the rule last year while creating an entirely new rule designed to govern "illustrative aids," which—unlike actual evidence—are generally not provided to the jury during deliberations. *See* Fed. R. Evid. 107. The government has prepared its draft exhibits as if Rule 1006 had never been amended.

"[T]he purpose of Rule 1006 is to permit alternative proof of the content of writings, recordings, or photographs too voluminous to be conveniently examined in court." Fed. R. Evid. 1006, advisory committee notes to 2024 amendments. That is why the rule appears in Article X of the Federal Rules of Evidence—"Rule 1006 does no more than create an exception to Federal Rule of Evidence 1002, which requires an original to prove contents of writings, recordings, and photographs." Wright & Miller, 31 Fed. Prac. & Proc. Evid. § 8043 (2d ed.). Rule 1006 thus permits "summary evidence in lieu of originals," but "where [the summary] is not offered to prove the content of the source materials on which it is based, Rule 1006 is inapplicable." *Id.*

Rule 1006 was not designed to allow parties to muster the evidence in conveniently packaged, argumentative outlines for the jury to take into deliberations. To the contrary, a threshold requirement is that Rule 1006 summaries must accurately reflect in non-argumentative fashion the underlying voluminous evidence on which they are based and whose contents they are intended to prove. Therefore, "[a] party offering summary evidence must … establish that the summary is accurate and nonprejudicial," free of "annotation or suggestion, even inferential, that may be considered argumentative." *UPS Store, Inc. v. Hagan*, 2017 WL 3309721, at *5 (S.D.N.Y. Aug. 2, 2017). And "the court must ascertain with certainty that [the exhibits] are based upon and fairly represent competent evidence." *United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) (citing *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977)). A summary may not "present the data in a way that doubles as legal argument." *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 651 F. Supp. 3d 95, 164 (D.D.C. 2023). Nor can a summary contain "argumentative matter." *Peat v. Vanguard*, 378 F.3d 1154, 1159-60 (11th Cir. 2004) (ordering a new trial based on "improper admission of a Rule 1006 summary exhibit"); *see also United States v. Lemire*, 720 F.2d 1327, 1350 (D.C. Cir. 1983) ("A summary chart should not draw controversial inferences or pronounced judgment; these functions are best left to the closing argument of counsel."); *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984). This requirement also means that summaries "cannot be used" as a vehicle through which the government "repeat[s] its entire case-in-chief shortly before jury deliberations." *United States v. Ekwuruke*, 372 Fed. Appx. 521, 523 (5th Cir. 2010) (cleaned up); *Bray*, 139 F.3d at 1110 (summaries cannot take the form of "mini-summation[s]"). In sum, "[a] chart which for any reason presents an unfair picture can be a potent weapon for harm, and permitting the jury to consider it is error." *Conlin*, 551 F.2d at 539.

In addition to being confined to nonargumentative summaries, Rule 1006 further requires the proponent to demonstrate that: (1) the information the chart is summarizing is truly

Hon. Arun Subramanian
May 21, 2025

"voluminous"; and (2) this information in its source form "cannot be conveniently examined in court." Fed. R. Evid. 1006.

Separately, a summary admissible under Rule 1006 must also pass Rule 403's balancing test. "[I]f the summary does not accurately reflect the underlying voluminous evidence, or if it is argumentative, its probative value may be substantially outweighed by the risk of unfair prejudice or confusion." Fed. R. Evid. 1006, advisory committee notes to 2024 amendments. Summaries should also be excluded where they "mislead[] the jury," cause "undue delay" or "wast[e] time," or "needlessly present[] cumulative evidence" the jury has already seen. Fed. R. Evid. 403.

The 2024 amendments clarified the "distinction between summaries of voluminous admissible information offered to prove a fact, and illustrations offered solely to assist the trier of fact in understanding the evidence. The former are subject to the strictures of Rule 1006. The latter are illustrative aids, which are now regulated by Rule 107." Fed. R. Evid. 1006, advisory committee notes to 2024 amendments. In contrast to 1006 summaries offered to prove content, Rule 107 illustrative aids "summarize and display evidence (particularly documentary evidence) that has already been admitted at trial." 2 McCormick On Evid. § 214 (9th ed.). Such aids are designed "to render [that evidence] more comprehensible to the trier of fact" by helping the jury understand "other real, testimonial and documentary evidence." *Id.* While "Rule 1006 summaries must be admitted as substantive evidence," Fed. R. Evid. 1006, advisory committee notes to 2024 amendments, Rule 107 illustrative aids are "not evidence and must not be provided to the jury during deliberations," Fed. R. Evid. 107(b).

### B. The Government's Purported Rule 1006 Exhibits Are Inadmissible

As previously noted, the government's own description of its exhibits puts them in the latter, inadmissible category. It concedes its goal is not to "prove a fact" using the summary exhibits. Rather, it seeks to offer the exhibits to "coherently and efficiently present" its interpretation of the evidence. Dkt.270 at 49. Cherry-picking a series of potentially inculpatory "hotel records, travel records, financial records, phone records, text messages, emails, photographs, and videos," *id.*, for inclusion in conveniently packaged summary exhibits accompanied by argumentative annotations does not "prove the content of voluminous writings, recordings, or photographs" as required by Rule 1006. Instead, it merely serves as a "presentation offered … to assist the trier of fact in understanding [the government's] evidence or argument." Fed. R. Evid. 107, advisory committee notes to 2024 amendments.

Unlike a neutral summary of voluminous phone and bank records, for example, the exhibits are argument masquerading as evidence. The exhibits do not contain any neutral summary of emails, text messages, voice messages, photos, and other records the government otherwise cannot conveniently show the jury. Rather, the draft exhibits organize in argumentative fashion a series of highlight reels of what the government believes is its best evidence. They include only inculpatory material and present it in summation-like form. *See United States v. Javice*, 23 Cr. 251 (AKH) (S.D.N.Y.), Tr.2608 (excluding chart, holding: "This document is for summation. This is not a document for evidence."). The exhibits seek to convey

Page 4

Hon. Arun Subramanian
May 21, 2025

only the guilty inferences the government will ask the jury to draw during its closing argument, while omitting other information that would undermine those inferences. Worse yet, in some instances, those guilty inferences are included in the exhibits in narrative form unsupported by any actual evidence. These types of illustrative aids are what new Rule 107 is designed to govern, and that rule mandates that such exhibits "are not to go to the jury room unless all parties consent or the court, for good cause, orders otherwise." Fed. R. Evid. 107, advisory committee notes to 2024 amendments; *see* Fed. R. Evid. 107(b).

Indeed, the government's draft exhibits confirm that it seeks to do exactly what it told the defense and the Court it would not do. The government previously stated it "does not intend to offer the type of testimony that Judge Nathan precluded in *United States v. Maxwell*, and which the defendant highlighted as objectionable in his motion." Dkt.270 at 49 n.11 (citing Dkt.204 at 2-3). But without a summary witness, how could the government even introduce these charts? And if the government calls a paralegal or case agent to "connect up several exhibits and review them in a way to make those exhibits clear to the jury," *United States v. Maxwell*, 20-CR-330 (AJN), ECF No. 757, at 1980 (Dec. 9, 2021), that would be akin to a "mini closing argument via a witness who has no personal involvement in the investigation … with materials that don't require [a] 1006 summary." *Id.* at 1984. The Court should not permit the government to use a summary witness to do exactly what Rule 1006 forbids.

We discuss each exhibit below:[2]

- **GX 1402 & GX 1406**: GX 1402 is a chart with columns titled Date, City, Hotel, Reservation Name, Room Damage, Escort Identity, Travel, Video, Ventura/Combs Communications, Escort Communications, Combs's Employees Communications, and Combs's Employees Identity. GX 1406 is similar. These charts purport to tie together the government's theory of which escorts traveled to which hotels to engage in alleged "freak offs" with either Ms. Ventura or Jane. They also purport to show which of Combs's employees assisted and who booked hotels, and to identify for the jury which contemporaneous communications might corroborate this information. In other words, the charts make the government's argument as to how it has proved elements of the charged offenses, rather than simply summarizing voluminous records.

   In GX 1402's "Travel" column, for example, the government has listed either a "Yes" or a mere "-", answering for the jury whether the interstate commerce requirement is satisfied. GX 1406 depicts the same information in prejudicial narrative form, telling the jury, for example, that "records show flights from ATL to LAX on 11/9 and from LAX to ATL on 11/11." *See* GX 1406 line 3.

---

[2] The defense provides these overviews merely as a non-exhaustive summary of the main reasons the government's charts are not admissible under Rule 1006. The defense has not had sufficient time to review each of the thousands of entries in the government's chart and would also need further time to review each entry for possible further inaccuracies and other errors. The charts are also in draft form. Any final charts will need to be separately reviewed.

Page 5

Hon. Arun Subramanian
May 21, 2025

> GX 1406 also makes the government's arguments as to whether it has proved an element—here, whether escorts were paid in connection with alleged "freak offs." And some of the information presented is clearly based on nothing more than the chart drafter's speculation as to what communications might show. Row 9 of GX 1406, for example, states that "Arthur" "Stops by to be paid in cash," but that is supported by nothing more than text messages stating "Hey Paul ! GM! Sean was asking if you could swing by to get pay" followed by "Ok." GX G-103, p.31. In addition, this information is misleading, because, as the government is aware, Arthur was being paid for other purposes, such as for being Combs's personal trainer, and the government has the burden of proving the payments were for sex and not some other reason.
>
> Further, certain cells in GX 1406 are supported by nothing more than "Jane testimony"—*i.e.*, a witness who has not yet testified.[3] And the charts include other unfairly prejudicial content. GX 1402, for example, tells the jury whether there was "room damage" without describing the nature of the damage or who or what might have caused it. GX 1406 does the same.

- **GX 1403**: This PowerPoint exhibit is a classic example of a "timeline" demonstrative, not a Rule 1006 summary. It is an 18-page exhibit excerpting various texts, photos, and call records, and displaying them in chronological form on a timeline from March 4, 2016 to March 8, 2016. The underlying records themselves are not "voluminous." To the contrary, the exhibit contains a few dozen communications sourced from a handful of exhibits. And the chart is full of hearsay that has not yet been admitted,[4] most of it involving Ms. Ventura's communications. Ms. Ventura—who presumably has personal knowledge of the cited communications—has already testified. The government did not seek to admit the exhibit through Ms. Ventura. Instead, the government presumably will do exactly what it assured the defense and the Court that it would not do—enter the exhibit through a summary witness with no personal knowledge to parade the government's interpretation of the evidence before the jury as a mini-closing to preview its actual closing arguments.

- **GX 1407, GX 1410, GX 1411**: These exhibits include 57 pages (thousands of rows) of chronological compilations of text messages, phone records, and other records. The government has essentially cherry-picked the records it wants the jury to focus on and assembled them in a one-sided presentation. These exhibits

---

[3] Rule 1006 does not allow the admission into evidence of charts purporting to summarize trial testimony. It authorizes only summaries of writings, recordings and photographs. "It has no application to summaries of other forms of evidence, such as testimony." Wright & Miller, 31 Fed. Prac. & Proc. Evid. § 8043 (2d ed.).

[4] The government argued in its opposition that the underlying evidence need not be admitted, Dkt.271 at 29 n.10, but the underlying records must still be "admissible" under the Rules of Evidence, Fed. R. Evid. 1006. They cannot reflect hearsay not subject to any exception, for example, or other inadmissible evidence.

Hon. Arun Subramanian
May 21, 2025

are not offered to prove the content of any communications but are "more akin to argument than evidence since [they] organize[] the jury's examination of testimony and documents already admitted in evidence." *Bray*, 139 F.3d at 1111. The messages included in the presentation are taken out of context, and the material included misconstrues what the full evidentiary record would reveal. *See United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984). The admission of summary exhibits cannot be employed to "unfairly emphasize part of the proponent's proof or create the impression that disputed facts have been conclusively established." *Id.* (citing J. Weinstein and M. Berger, Weinstein's Evidence § 1006 [07] (1983)). Moreover, many of the records captured in the exhibits include inadmissible hearsay. And certain of the cited records are plainly improper and unfairly prejudicial. *See*, *e.g.*, GX 1411, p.6 line 260 (web search stating "what is the legal age of consent in new york"). Nor would large portions of the exhibits even be useful to the jury, as half the cells merely cite an image or video file name, web URL, or other record lacking any content.

- **GX 1404, GX 1405, GX 1408, GX 1409**: These exhibits are generally confusing, unfairly prejudicial, and misleading and contain inaccurate portrayals of the Combs Business accounting practices. The jury will assume the payments for the expenses depicted in these charts are accurate and somehow prove a RICO, but they simply show that his wholly-owned LLCs paid for certain hotel stays.

  GX 1404 is strange in that it purports to document a $46,786 hotel charge from October 6, 2012, then prejudicially notes the $944,058.81 "Total AmEx Bill" in which that charge appears. The exhibit then lists various "payment amount[s] & date[s]" and the purported source of payments, seemingly implying that the Combs Business paid for each of the expenses on the AmEx Bill. Again, that is incorrect and misleading.

  GX 1405 seeks to tie a series of credit card charges to particular hotels, locations, dates, and individuals. There is no support provided for the "Name" column in the exhibit, which speculatively implies that certain escorts and alleged victims were involved in the hotel stays and credit card transactions. The chart seeks to connect the dots and argue certain inferences from evidence, which the government is free to do in its closing, but this chart is not evidence and shouldn't be provided during deliberations. And like GX 1404, the "AmEx Payment Account" column presents an overly simplified and confusing picture of who paid the at-issue expenses. Providing the jury with this exhibit without a complete picture of the Combs Business accounting for these expenses is unfairly prejudicial and confusing to the jury. GX 1408 and GX 1409 are similar to GX 1405 and include confusing and prejudicial depictions of hotel and travel expenses and "Payment Account Holder" information.

Page 7

Hon. Arun Subramanian
May 21, 2025

The government claimed its charts would fall within the "heartland of summary charts routinely admitted in this Circuit," Dkt.270 at 50, but, whether true or not under the old rule, the 2024 amendment has now made clear any such prior "routine" practice does not comply with Rule 1006.[5]  For example, *United States v. Ho*, 984 F.3d 191 (2d Cir. 2020), and the line of cases on which it relied—is no longer good law in the wake of the 2024 amendments.  Indeed, those cases represent a clear example of courts that applied "misperceptions about the operation of [Rule 1006]." Fed. R. Evid. 1006, advisory committee notes to 2024 amendments.  In *Ho*, the Second Circuit affirmed the use of two summary charts, but only because the trial court "instruct[ed] the jury … that it [was] not to consider the charts as evidence." 984 F.3d at 210 (quoting *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989)).  That is true of many other decisions the government typically cites when seeking to admit improper summary exhibits.  *See United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003) ("charts … highlight[ed] certain patterns of telephone calls that were culled from a two-binder set of telephone-record summaries," and district court instructed the "charts were not evidence"); *Blackwood*, 366 F. App'x at 212 (charts "showed the pattern and timing of telephone calls," and district court instructed "the charts were not evidence; they were only graphic demonstrations of the underlying evidence").  Yet the 2024 amendment made clear that because Rule 1006 summaries are admissible evidence, "[t]he court may not instruct the jury that a summary admitted under this rule is not to be considered as evidence." Fed. R. Evid. 1006, advisory committee notes to 2024 amendments.  Thus, the limiting instructions given in these pre-amendment cases could not cure this problem, as it would defeat the purpose of the rule.  And elevated to the status of actual evidence, the summaries are even more unfairly prejudicial than a mere demonstrative and more likely to commandeer deliberations.

Separately, even if the exhibits were proper Rule 1006 summaries (they are not), they should be excluded under Rule 403.  The exhibits are unfairly prejudicial in that they include only inculpatory material.  The exhibits present that material in a misleading form lacking the full (often exculpatory) context.  Certain of the exhibits are entirely cumulative of evidence the jury will have already reviewed.  And if the Court allows the exhibits to be presented through summary testimony from witnesses lacking any first-hand knowledge of the underlying materials, it will merely waste the jury's time.

Finally, we note that the government's draft summary exhibits also raise an additional problem—as noted, the material compiled in argumentative fashion in several of these exhibits consists of text messages and other communications, including documents the government either has already introduced or intends to introduce after a person involved in the communications has completed their testimony.  The government apparently intends to do it with other witnesses aside from Ms. Ventura.  If the government wants to introduce communications involving a witness, it should be required to do so while that witness is testifying, so that the defense can cross-examine him or her on their communications.  It would be fundamentally unfair, and a violation of Mr. Combs's Confrontation Clause rights, for the government to try to short-circuit

---

[5] The amendment only took effect in December 2024, just a few months ago, so it is far too early to speculate on what routine practice may develop under the amended rule.

Hon. Arun Subramanian
May 21, 2025

the defense's ability to cross-examine a participant in the communications at issue by waiting until after the witness has testified to introduce these messages, and by doing it through a summary witness with no personal knowledge who also cannot be cross-examined about the substance of the communications.

* * * *

      In sum, admitting the government's charts would be analogous to sending the jury a copy of the government's closing arguments during deliberations, and would violate the basic tenet that lawyers' arguments are not evidence. Accordingly, and for the foregoing reasons, the Court should preclude the government from offering its draft summary exhibits and any accompanying summary testimony. The materials are not proper Rule 1006 evidence and their admission would also violate Rule 403.

Respectfully submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4880
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
HARRIS TRZASKOMA LLP
156 West 56th St., Ste. 2004
New York, NY 10019
(212) 970-6465
aestevao@harristrz.com

Brian Steel
THE STEEL LAW FIRM, P.C.

Hon. Arun Subramanian
May 21, 2025

        1800 Peachtree Street, Ste. 300
        Atlanta, GA 30309
        (404) 605-0023

        Xavier R. Donaldson
        136 Madison Ave, 6th Floor
        New York, New York 10016
        646-772-3334
        Xdonaldson@aol.com

        Nicole Westmoreland, Esq.
        WESTMORELAND LAW, LLC
        132 Cone Street, Suite A
        Atlanta, GA 30303
        Tel: (404) 446-2620
        nw@westmorelandlawgroup.com