

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 13, 2025

**VIA EMAIL**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

The Government writes in opposition to the News Organization's request to unseal explicit images and videos, which depict sexual abuse of two victims by the defendant. (Dkt. 327). The public's interest in viewing these exhibits is plainly outweighed by the victims' serious privacy interests, the importance of not re-victimizing victims by essentially carrying out the blackmail that the defendant threatened them with, and the chilling effect that unsealing of these materials would have on other victims' reporting of sex crimes to law enforcement. Accordingly, as explained in more detail below, the Court should deny this request.

### I. Factual Background

#### A. Indictment

A third superseding Indictment was filed against the defendant on April 3, 2025. (Dkt. 209). Among other things, the defendant is charged with using force, threats of force, fraud, and coercion to cause women to engage in commercial sex, which included sex acts with male commercial sex workers that the defendant referred to as "Freak Offs." (*Id.* ¶ 12). The defendant ensured that female victims participated in Freak Offs ("FOs") through coercion and violence, including by supplying female victims with controlled substances; subjecting female victims to physical, emotional, and verbal abuse; and controlling female victims' careers, livelihoods, and housing. (*Id.*). The defendant also filmed and kept videos of victims engaging in FOs and used these sensitive and embarrassing recordings as collateral to ensure the continued obedience and silence of victims. (*Id.*).

#### B. The Trial

After conferring with defense counsel, the Government informed the Court that it intends to introduce a limited number of exhibits at trial under seal of a sexually explicit nature with respect to two victims: Casandra Ventura and Jane. Specifically, the Government intends to introduce certain of the videos that the defendant filmed of these victims engaging in FOs in which the victims, the defendant, and/or male third parties are nude or partially nude and engage in sex

acts. In addition, the Government expects to introduce a limited number of sexually explicit still images that were taken from the aforementioned videos.

Ms. Ventura commenced her trial testimony on May 13, 2025. On that date, Ms. Ventura testified about her participation in FOs at the direction of the defendant and about how these FOs were sometimes filmed by the defendant. (May 13 Tr. at 242:2-9). Ms. Ventura further testified that she found the FO videos to be "humiliating" and "disgusting," that she "never wanted anyone to ever see [her] like that," and that she would frequently request that the defendant delete all copies of them. (*Id.* at 571:10-22). Instead, however, the defendant subsequently used the FO videos as blackmail materials to coerce Ms. Ventura to continue to engage in Freak Offs. (*Id.* at 410:16-4:11:5, 411:15-24).

The Government expects Jane will provide similar testimony that she did not want to participate in FOs and that she was terrified of anyone seeing recordings of her engaged in sexual activity. Indeed, the Government expects to offer text messages Jane sent to the defendant's chief of staff on December 28, 2023 stating that the defendant "just threaten[ed] me about my sex tapes that he has of me on two phones" and "said he would expose me and send them to" another person. Jane went on to write in another December 28, 2023 text to the defendant's chief of staff:



Those text messages confirm that Jane views the recordings of her sexual encounters during FOs with the same level of horror as Ms. Ventura. The defendant used those recordings to blackmail both victims, who were and remain terrified of their release to anyone.

## II. Applicable Law

"[I]t is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks omitted). "Documents to which the public has a qualified right of access may be sealed only if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008) (quoting *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 13 (1986)).

In balancing the public right of access against countervailing concerns, courts consider whether "public access to the materials at issue is likely to impair" law enforcement efforts. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). In addition, the "[t]he privacy interests of innocent third parties," including those of crime victims, "should weigh heavily in a court's balancing equation." *Id.*; *see United States v. Cohen*, 366 F. Supp. 3d 612, 626 (S.D.N.Y. 2019) ("[T]he privacy and reputation of crime victims has been recognized to be a countervailing

interest to the presumption of public access."). As the Second Circuit has stated, "[s]uch interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access" and "courts have long declined to allow public access simply to cater 'to a morbid craving for that which is sensational and impure.'" *Amodeo*, 71 F.3d at 1051 (citation omitted).

### III.   Application

As noted on the record earlier today, the Government is unaware of any criminal case in which sexually explicit images or videos of alleged victims—whether minors or adults—have been shown to any member of the press or public. The News Organizations cite none. The Court should not break new ground here.

Compelling reasons exist to seal these sexually explicit videos and photos of Ms. Ventura's and Jane's abuse, which override any public right of access. *First*, the sealing of these videos and photos is necessary to prevent the re-victimization these women. Not only do these photos and videos show portions of the humiliating sexual acts that these women were forced to engage in by the defendant, but the videos *themselves* were used by the defendant as blackmail material to force these women to continue to engage in such acts. Accordingly, the idea that these videos may be shown to *even a single person* is a source of serious anxiety and fear for these victims. Releasing these videos to even a single person beyond what is absolutely necessary to conduct this trial would essentially carry out the threat that the defendant made to both of these victims. It would cause unnecessary trauma to display these recordings of coerced sex acts to any member of the press or public. To reduce that anxiety and fear to the extent possible, these materials should be maintained under seal and only shown to those parties who absolutely must see them as part of this criminal prosecution. *See Giuffre v. Dershowitz*, No. 15 CIV. 7433 (LAP), 2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020) ("[T]he psychological and emotional wellbeing of survivors of alleged sexual assaults [weighs against] such a broad disclosure").

*Second*, more traditional privacy interests also weigh strongly in favor of sealing these exhibits. Each of the sealed exhibits "depict not only nudity but also overtly sexual [] content" and courts "routinely grant sealing requests for nude or sexual photographs, even of adults" given the "substantial privacy interests at play." *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2024 WL 4931857, at *4 (S.D.N.Y. Dec. 2, 2024) (citing cases). Moreover, the Crime Victims' Rights Act explicitly grants crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8).

*Finally*, public access to such material may impair law enforcement efforts. If victims of sexual abuse were aware that recorded videos and images of their abuse may be played in court for the public, victims would be less likely to come forward and report their abuse to law enforcement. *See Amodeo*, 71 F.3d at 1050 ("Officials with law enforcement responsibilities may be heavily reliant upon the voluntary cooperation of persons who may want or need confidentiality. If that confidentiality cannot be assured, cooperation will not be forthcoming").

The sealing of these exhibits is also narrowly tailored. Each of the exhibits that the press seeks to unseal contain sexually explicit images of victims, the defendant, and/or third parties and

depict portions of sex acts that Jane and Ms. Ventura were directed to engage in by the defendant as part of the alleged criminal conduct charged in the Indictment. In addition, only the images and videos themselves would be under seal. As the Court noted, the victim's testimony about these videos as well as any descriptions of these videos by the parties will be in open court. *See Eckhart*, 2024 WL 4931857, at *4 ("The sealing of the photographs will be 'narrowly tailored,' as the Court will still make public the verbal descriptions of the photographs that Defendants included in their motion papers.").

## IV. Conclusion

For the foregoing reasons, the Court should deny the News Organization's request to unseal these sexually explicit materials.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: \_\_/s_____
Maurene Comey / Meredith Foster /
Emily A. Johnson / Christy Slavik /
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284