

**Shapiro Arato Bach LLP**

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

May 20, 2025

**VIA EMAIL**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

      We write on behalf of Sean Combs and in connection with the anticipated testimony of government expert Dr. Dawn Hughes. Based on 3500 material describing Hughes's meetings with the government following the April 18 and April 25, 2025 pre-trial conferences, and our meet-and-confer with government counsel this evening in anticipation of her testimony, the defense is concerned that Hughes will exceed the scope of testimony permitted by the Court and will opine on subject matter excluded by the Court's prior ruling. The purpose of this letter is to alert the Court to potential areas of objectionable testimony in advance of her testimony to ensure that Hughes does not stray into areas precluded by the Court's order. In addition, we note a few topics that are objectionable that the government agreed not to cover in direct examination or at all.[1]

      The Court ruled that Hughes's testimony must be limited to those sections of her disclosure concerning "coping strategies, delayed disclosure and memory," together with specific and limited "testimony concerning the reasons why victims stay in relationships." April 25, 2025 Tr. 5-6; Ex. A (Hughes Disclosure). The Court excluded the section on "coercive control" and Hughes's discussion of the motivation and intent of abusers. April 25, 2025 Tr. 5. The Court noted that "the jury can understand what abuse and violence is, and it doesn't need Dr. Hughes to explain an umbrella term of 'interpersonal violence' or to expound at length about different types of abusive conduct as a precursor to offering opinions that the Court has permitted." April 25, 2025 Tr. at 6.

      Recent disclosures of 3500 material suggest that Hughes will attempt to repackage her excluded testimony on "coercive control" under the nomenclature of "psychological aggression":

---

[1] The defense preserves its objection to Dr. Hughes's testimony in its entirety, for the reasons set forth in our prior briefing and in oral argument during the April 18 and 25 pre-trial conferences. *See* Dkt. 206, 271.

Hon. Arun Subramanian
May 20, 2025



In other words, Hughes is planning to testify about the concept of abuse and its various forms. While she might not be using the term "interpersonal violence," she is attempting to create the same atmosphere and paint the same background against which alleged perpetrators should be perceived. Moreover, in linking abuse to how victims react and are purportedly controlled, this is a repackaging of Hughes's opinions regarding "coercive control" that the Court correctly excluded. This should not be permitted, for all the reasons previously briefed and ruled upon by the Court. Hughes's testimony should be limited to explaining to the jury that certain inferences cannot necessarily be drawn from delayed reporting, poor memory, or certain behavior which may be described as "coping."

The 3500 material also indicates that Hughes may testify beyond the opinions disclosed to the defense prior to the trial, in violation of the government's obligations under Rule 16(a)(1)(G).

- ███████████████████████████████████████████████ There is no such opinion about the effect of alcohol on memory *formation* anywhere in the pre-trial disclosure. Ex. A. Indeed, the only reference to alcohol in that disclosure is to the use of alcohol *subsequent* to trauma "to numb and minimize painful sexual and abusive experiences." *Id.* at 4. Moreover, it is not clear that Hughes has the requisite scientific expertise to testify about the effects of alcohol on memory formation. The government advised us that they do not intend to elicit testimony on the effects of alcohol on memory formation in their direct examination, but reserve the right to re-direct on this topic if there is cross on it.

Hon. Arun Subramanian  
May 20, 2025

Page 3

- Hughes is also apparently planning to expand and revise her previously disclosed testimony to address themes raised by the defense opening.  This opinion is found nowhere in the pre-trial disclosure. Instead, it appears targeted at the defense opening statement, which promised that the violence the Combs's violence was "not connected to sex trafficking" but was "typically because of jealousy or drug use." Tr. 128, 131; *see also* Tr. 134 ("their fights … typically surrounded his cheating or it surrounded hers"), 136-37 ("this video is overwhelming evidence of domestic violence, but it's overwhelming evidence that this domestic violence is over a phone and not because of sex trafficking"). Particularly because Hughes is providing what is described as "blind" testimony, this last minute addition to rebut factual themes is inappropriate and unfair.

-  There is nothing in Hughes's pre-trial disclosure about            there is no reason in that disclosure to believe Hughes has expertise in this area. The defense has had no opportunity to prepare to meet this last-minute addition to Hughes's testimony. The government advised us that they do not intend to elicit testimony on this topic in their direct examination, but reserve the right to re-direct on this topic if there is cross on it.

- The same disclosure also suggests that Hughes may be planning to testify about  It is not clear what opinion Hughes may be giving regarding this area, or whether that opinion complies with Rules 702 and 403, or is just an exercise in giving a scientific-sounding name to a sequence of events. In any event, this opinion, whatever it may be, is not in Hughes's pre-trial disclosure, and should not be permitted.[2]

Hughes's prior testimony in *United States v. Raniere*, 18 Cr. 204 (E.D.N.Y), also raises concerns about Hughes's ability to stay within the lines when giving long, discursive answers. In *Raniere*, Hughes went out of her way to paint a picture of interpersonal violence and sexual assault as a major societal problem crying out for redress—implicitly, redress by the jury listening to her testimony.

- Asked about the percentage of women who "experience some form of unwanted sexual contact in their lifetimes"—itself an irrelevant and improper question—

---

[2] During our meet-and-confer, the government said it believed this testimony fit the category of "reasons why victims stay in relationships," which the Court's ruling permits, but obviously no one stays in a relationship because they are assaulted after the relationship has ended.

Hon. Arun Subramanian
May 20, 2025

Page 4

> Hughes turned unbidden to the official position of the CDC, explaining that the CDC "continues to determine that sexual violence is a prevalent public health problem."  3547-002 (Tr. 3692).
>
> - Similarly, asked about concerns raised "when victims are part of larger communities or institutions," Hughes turned to an extended—and for the jury, no doubt impressive—narrative about "cases that I've worked on with the Boy Scouts" and "the enormous work I've done in the Catholic church" and about the "college campus rapes."  *Id.* (Tr. 3700).

This and other similar testimony portrayed Hughes as a crusading psychologist working to rid the world of abusers, implicitly inviting the jury to join the effort.  This is improper under Rules 702 and 403, and it is beyond the scope of her notice and beyond the scope of testimony permitted by the Court's ruling.  It should not be permitted.

Hughes should also not be permitted, as she was in *Raniere*, to:

- Explain that she went into psychology to "help" people.  *Id.* (Tr. 3679).

- Explain—in response to a question about her "role here today"—that "*it's important* for me to be able to impart what we know empirically and clinically in the field."  *Id.* (Tr. 3691).

- Instruct the jury that "the evaluation of *the legitimacy* of the sexual assault [does not] depend on whether a victim reported the event to law enforcement"  *Id.* (Tr. 3696).

We understand from our meet-and-confer that the government does not intend to elicit such testimony.

In other words, while Hughes may be permitted to provide opinions on matters of psychology, she should not be permitted to provide opinions on what is important societally or to her personally.

Hughes's winding answers in *Raniere* also led almost inevitably to flagrantly impermissible opinions.

- The question "why does a victim remain in that relationship" led, almost a page of transcript later, to the assertion that women are incapable of "stop[ping] the violence and the abuse and the coercive control" and that "[w]e know that … the only person who can stop that violence and abuse and sexual assault is the perpetrator … The onus rests on him."  *Id.* (Tr. 3730-31).

- A question about whether "abusive acts" are "often interspersed with times of normalcy" led, half a page later, to the bizarre opinion that victims can be led into "a very conditioned response, almost like a slot machine, that you know, I want to

Hon. Arun Subramanian
May 20, 2025

keep going because maybe I'm going to get more of this and maybe it really wasn't so bad." *Id.* (Tr. 3735-36). ████████████
████████████████████████████████████████

All of this is either beyond the scope of Hughes's disclosure in this case, beyond the scope of testimony permitted by the Court's ruling, or obviously impermissible under the Rules of Evidence. Hughes should not be permitted to testify in this fashion in this case. The Court was clear that she is here to alert the jury that certain inferences may not always be proper, but not to elaborate on abuse more generally and the problems it can create.

Respectfully submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4880
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
HARRIS TRZASKOMA LLP
156 West 56th St., Ste. 2004
New York, NY 10019
(212) 970-6465
aestevao@harristrz.com

Brian Steel
THE STEEL LAW FIRM, P.C.
1800 Peachtree Street, Ste. 300
Atlanta, GA 30309

Hon. Arun Subramanian
May 20, 2025

(404) 605-0023

Xavier R. Donaldson
136 Madison Ave, 6th Floor
New York, New York 10016
646-772-3334
Xdonaldson@aol.com

Nicole Westmoreland, Esq.
WESTMORELAND LAW, LLC
132 Cone Street, Suite A
Atlanta, GA 30303
Tel: (404) 446-2620
nw@westmorelandlawgroup.com