# Exhibit A

**Disclosure as to Expert Witness Dawn M. Hughes, Ph.D. ABPP**

March 7, 2025

### I.      Qualifications and Prior Testimony

Dr. Hughes is a clinical psychologist and a board-certified forensic psychologist, and a leading expert on sexual abuse, interpersonal violence, victimization, and traumatic stress. Dr. Hughes maintains an independent practice in clinical and forensic psychology, is a Clinical Assistant Professor of Psychology in the Department of Psychiatry at Weill Cornell Medical College, served as President of the Women's Mental Health Consortium from 2009 to 2017, and is the immediate past-president of the Trauma Psychology Division of the American Psychological Association. She has published, presented, and conducted professional legal and mental health trainings on the topics that will be the subject of her testimony. Dr. Hughes' testimony is based on her 25 years of clinical and forensic practice assessing victimization, her trauma-based education and training, and an extensive study of the empirical data and social science literature on sexual assault, interpersonal violence, victimization, coercive control, and trauma.

Dr. Hughes's qualifications, recent publications, and testimony in the last four years are further described in her curriculum vitae, which is attached as an exhibit.

### II.     Statement of Opinions, Bases, and Reasons

The following includes the anticipated opinions the Government expects Dr. Hughes will offer regarding sexual abuse and victim responses to sexual abuse; coercive control; coping strategies during and in relation to sexual abuse; delayed disclosure; and memory of sexual abuse.[1] Dr. Hughes's opinions are based on the totality of her relevant education, training, skills, knowledge, and professional experience, including her assessment and treatment of patients, her forensic assessments, her work and consultation with professional colleagues, continuing education, and review of relevant scientific literature in her field. Dr. Hughes has not evaluated any specific victim or evidence in the case, and the Government does not presently intend to offer Dr. Hughes's testimony regarding any specific victim.

**Sexual Abuse and Responses**

The Government expects that Dr. Hughes will testify regarding interpersonal violence in domestic relationships. Interpersonal violence is violence or abuse committed between individuals, including rape, sexual assault, sexual harassment, or intimate partner violence, among others. Interpersonal violence also refers to dynamics related to coercion and emotional abuse that may not necessarily involve physical violence as commonly understood. Sexual assault refers to contact and noncontact sexual violations. A contact sexual violation is when one individual has

---

[1] The defense has not yet provided notice of any testimony under Federal Rule of Criminal Procedure 16(b)(1)(C). To the extent such timely notice is provided, the Government will supplement this notice to include a statement of opinions it will elicit during its rebuttal to counter that testimony, as required by Federal Rule of Criminal Procedure 16(a)(1)(G).

physical contact with another in a sexual manner without the second individual's consent, either because the individual has not given consent, has been subject to trauma-coerced persuasion, or because they are incapable of consent. Contact sexual violations can also occur when a perpetrator directs unwanted sexual contact between the victim and a third-party. A non-contact sexual violation is limited to acts that do not involve physical contact, such as acts of voyeurism.[2]

The majority of sexual assaults are committed by someone known to the victim rather than a stranger. Perpetrators often exploit preexisting power differentials between themselves and their victims for the purpose of perpetuating sexual abuse and preventing disclosure.

### Coercive Control

The Government expects that Dr. Hughes will testify about coercive control as a tactic of victimization (i.e. the state or process of becoming a victim) and a strategy to gain dominance across a spectrum of relationships. Coercive control refers to a strategic pattern of behavior that is designed to attain and maintain control in a relationship. Dr. Hughes's testimony is expected to explain how the overarching dynamic of victimization is an abuse of power and control where the perpetrator engages in self-centered behavior to satisfy his own goals and desires regardless of the needs, wants, and well-being of the victim. Although coercive control is commonly discussed in the context of intimate partner violence, the use of coercive control strategies can be used by perpetrators to gain and maintain control in a broad range of interpersonal relationships, including employment relationships, among others.[3]

Coercive control often includes a variety of physical, sexual, and/or emotional tactics that together function to control the victim. More specifically, Dr. Hughes will explain that these tactics may include, among other things, the following: actual or threatened physical violence; aggression; sexual assault and abuse, sexual degradation; micro-regulation; financial and economic control; control over reproductive health; control through the use of drugs or alcohol; physical and emotional isolation from preexisting support networks and external influence; use of collateral or damaging or compromising information; exploitation of preexisting psychological, traumatic, or financial vulnerability; psychological degradation and humiliation; gaslighting; and surveillance techniques limiting privacy and independent thought, and instilling the belief that the perpetrator is omnipresent. These abusive techniques function to suppress an individual's freedom and autonomy.

Dr. Hughes will testify that some of these coercive control tactics can be subtle and not immediately obvious to the lay observer, although they may be used in conjunction with more

---

[2] Basile, K.C., Smith, S.G., Kresnow, M., Khatiwada S., & Leemis, R.W. (2022). The National Intimate Partner and Sexual Violence Survey: 2016/2017 Report on Sexual Violence. Atlanta, GA: National Center for Injury Prevention and Control, Centers for Disease Control and Prevention.

[3] Evan Stark (2007). *Coercive Control: How Men Entrap Women in Personal Life*. Oxford University Press; Dutton & Goodman. (2005) Coercion in intimate partner violence: Toward a new conceptualization. *Sex Roles*, *52*(11-12).

tangible physically violent behaviors. She will further testify that perpetrators of domestic violence often use particular coercive control tactics that are targeted to exploit the vulnerabilities of their specific victim. As a result, the tactics are not one-size-fits-all and may be difficult for an outside observer to understand.

With respect to sexual abuse, coercive control may include the perpetrator causing the victim to engage in sexual activity in which they would not otherwise engage for fear of the negative consequences if they refused. This may include risky sexual activity, such as unprotected sex with multiple partners, and sex acts with third parties in the perpetrator's presence.

As a result of coercive control, an abuser can create an environment of fear and obedience that impacts a victim's decision-making and free will, as well as manipulates the victim's emotions. A perpetrator's coercive tactics and abuse are often interspersed with rewards, positivity, affection, and normalcy, which can create emotional attachment and psychological dependency. As a result of intimate partner abuse and coercive control, victims of domestic violence may stay with or return to, rather than leave, their abusers. This can result from a victim's feeling of psychological entrapment due to deterioration of the psychological functioning of the victim. Dr. Hughes will testify that there are multiple psychological reasons why victims may express love, tenderness, or loyalty for their abuser in the face of fear or violence and why victims face obstacles to leaving an abusive relationship. These can include fear, not wanting to get their abuser in trouble, love and emotional attachment, and material reasons such as financial dependence.[4]

Some examples of emotional bonds include a trauma bond, which is a psychological dependence on one's abuser created by an abuser's intermittent use of reward and punishment, and predatory helpfulness. An intense psychological attachment can also occur when a perpetrator manipulates a victim with "love bombing" followed by violence and/or abuse.[5]

Dr. Hughes will also testify that abusers may escalate coercive control tactics if they feel they are going to lose the victim or if the victim is trying to leave. These escalated tactics can include use of force and threats of violence, as well as seduction, positive validation, and other romantic tactics. The combination of violence and romance creates psychological confusion for the victim, which further impacts their ability to leave.

---

[4] Barnett O.W. (2001). Why Battered Women Do Not Leave, Part 2: External Inhibiting Factors—Social Support and Internal Inhibiting Factors. *Trauma, Violence, & Abuse, 2*(1), 3 – 35; Dutton, M.A. (1992). Empowering and healing the battered woman: A model for assessment and intervention. New York, NY: Springer Publishing Company.

[5] Doychaka, K. & Raghavan, C. (2023). Trauma-coerced attachment: Developing DSM-50's dissociative disorder "identity disturbance due to prolonged and intense coercive persuasion." *European Journal of Trauma & Dissociation, 7*(2).

**Coping Strategies During and In Relation to Sexual Abuse**

Dr. Hughes will speak about a broad range of defense mechanisms and coping strategies commonly used by victims in response to sexual abuse.[6] These strategies function to allow the individual to maintain an attachment to and/or relationship with the perpetrator, and to put aside and protect themself from painful and frequently overwhelming psychological distress. Victims often fall back on ingrained responses to power in order to stay safe, such as attempting to please or placate the abuser, bargaining with the perpetrator, compliance with demands and expectations, and/or remaining silent. In addition, the victim may engage in avoidance, compartmentalization, minimization, directed forgetting, making excuses for others, self-blame, and denial. Victims may also seek to numb and minimize painful sexual and abusive experiences through the use of substances, such as drugs and alcohol. When talking about their experiences of sexual abuse, individuals typically will not use words such as sexual assault or rape and will use minimizing or distancing language such as an unwanted or uncomfortable sexual experience.

Commonly, victims experience a sense of mental defeat upon realizing they are unable to prevent the abuse or its continuation and escalation. While most victims use some form of verbal response to communicate non-consent, other behavioral responses that communicate lack of consent commonly include habitual responses to power, such as engaging in polite resistance, and attempts to persuade, deflect, or convince the perpetrator to stop.

**Delayed Disclosure**

Dr. Hughes will testify about what might prompt a victim to disclose abuse that had previously remained secret. The disclosure of abuse is a process that occurs over time and delayed disclosure is common. Both external and internal barriers to disclosure of sexual abuse have been identified. External barriers refer to others' perceptions and anticipated reactions to them, such as fear of getting into trouble if they tell someone, fear that others will blame or judge them, fear of not being believed, or fear that the perpetrator will get in trouble. Internal factors have more to do with the victim's own feelings that inhibit disclosure, such as shame, guilt, humiliation, self-blame, confusion, and inability to recognize that they have been victimized.[7]

Research has consistently shown that sexual abuse is considered among the most underreported crimes.[8] Victims often experience intense shame and embarrassment, self-doubt, psychological confusion, and self-blame, as well as fear of retaliation or fear of being disbelieved, which can also contribute to their decision whether or not to disclose abuse, and with whom they

---

[6] Dworkin, E. R., Jaffe, A. E., Bedard-Gilligan, M., & Fitzpatrick, S. (2023). PTSD in the Year Following Sexual Assault: A Meta-Analysis of Prospective Studies. *Trauma, Violence & Abuse, 24*(2), 497–514.

[7] Ullman, S., O'Callaghan, E., Shepp, V., & Harris, C. (2020). Reasons for and Experiences of Sexual Assault Nondisclosure in a Diverse Community Sample. *Journal of Family Violence,* 35, 839–851.

[8] Tapp, S. & Coen, E. (2024). Criminal Victimization, 2023. U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics Bulletin, NCJ309335.

discuss their experiences. When individuals do disclose and talk about their experiences of sexual abuse and sexual assault, they are most likely to talk with a close friend or family member.

The relationship between the victim and the perpetrator also has been demonstrated to impact the disclosure process. The nature of the relationship between victim and perpetrator can function to obscure or inhibit the victim's ability to recognize and label sexual abuse as such. The closer the relationship between the victim and the perpetrator, the less likely the victim is to recognize or label what happened as sexual abuse. A relationship of trust and/or a power differential between the perpetrator and the victim can also increase the likelihood that a victim will not disclose or delay disclosure. Gendered norms, tradition, and culture can also influence a victim's response to sexual abuse and the disclosure process.

**Memory**

Dr. Hughes will also describe some features of how victims recollect sexual abuse. Traumatic stress is a psychological response to exposure to an extreme or severe stressor, such as actual or threatened death, serious injury, or sexual violence. Because of traumatic stress, abuse memories can be retained but also may be lost or fragmented.[9] While most victims are aware of the central detail that they were abused, their memories of precise or peripheral details may be incomplete, including details about the sequence of events. This may be the result of common psychological defense mechanisms to trauma such as dissociation, suppression, avoidance, directed forgetting, or compartmentalization.[10] The goals of these trauma-related defenses are to avoid experiencing distressing memories, thoughts, and feelings about the victimization, and to regulate emotion. When these strategies are used repeatedly over time, they can become habitual and automatic, and they have been found to cause voluntary and involuntary forgetting and deficits in recall, even of central details. As recognized in the Diagnostic and Statistical Manual of Mental Disorders, a criterion of Posttraumatic Stress Disorder is the inability to recall an important aspect of a traumatic event.[11] This happens across trauma groups, including victims of sexual abuse and intimate partner violence. Memories of experiences of sexual abuse are also influenced by factors such as the relationship between the perpetrator and the victim, the context in which the abuse occurred, the specific nature of the abuse, and the frequency of the sexual abuse incidents.

As a result of trauma, and particularly when a person employs dissociation during the event, memories of abuse may get encoded as flashbulbs, or fragments of memory, without a clear linear or coherent narrative. Similarly, in circumstances of repeated assault, victims may not have the capacity to recall each isolated incident. Rather, the details of the assaults may blend together

---

[9] Iffland, B. & Neuner, F. (2016). Trauma and Memory, in G. Fink (Ed.) *Stress: Concepts, Cognition, Emotion, and Behavior*, (p.161-167). San Diego, CA: Academic Press.

[10] Dalenberg, C. (2006). Recovered Memory and the Daubert Criteria. Recovered Memory as Professionally Tested, Peer Reviewed, and Accepted in the Relevant Scientific Community. *Trauma, Violence, & Abuse*, 7(4), 274-310.

[11] American Psychiatric Association. (2022). *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision*. Washington: American Psychiatric Association.

due to the frequency of the abuse. As a result, a victim of repeated sexual abuse may not be able to recall the time, place, occurrence, and other details regarding the traumatic incident. A victim may work to retrieve memory over time. Recalling trauma memories is highly context specific and may be activated by retrieval cues (i.e. other thoughts and memories), which can then trigger additional details of their victimization.

_____
**Dawn M Hughes PhD ABPP**