

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 26, 2025

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

      The Government respectfully writes to address the defendant's anticipated objections to portions of Ms. Capricorn Clark's testimony. Specifically, the defense objects to Ms. Clark's testimony regarding (1) threats she received during a 2004 kidnapping; and (2) statements made by Ms. Ventura to Ms. Clark regarding an assault by Combs. For the reasons stated below, the Court should admit Ms. Clark's testimony. ███████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████

### I. Background

      Capricorn Clark, a former employee of Combs, is expected to testify that in or around 2004, Combs gave Ms. Clark expensive jewelry for safekeeping, and the jewelry subsequently went missing. Combs then directed Ms. Clark to the Bad Boy office where she was interrogated by Paul Offord, a/k/a Uncle Paulie—Combs' head of security and longtime bodyguard—regarding the jewelry. When the jewelry was not located, Mr. Offord searched Ms. Clark's apartment in Astoria but was unable to locate it. Offord informed Ms. Clark that he would pick her up at her apartment the next day. The following day, Offord picked up Ms. Clark and took her to a deserted building (the "Building"), which had been leased as new office space for Bad Boy. There, Ms. Clark was administered lie detector tests by a heavy-set male ("Male-1") over the course of five days. Prior to administering the test, Male-1 threatened Clark that she would be thrown in the East River if she failed the test. The threat made Ms. Clark panic and, she was told that the tests produced non-conclusive results. Male-1 continued to make similar threats to Ms. Clark as the testing continued. Mr. Offord periodically checked on Ms. Clark, although he was not present for the threats. At night, after the lie detector tests had concluded each day, Offord took Ms. Clark home. Each morning, Mr. Offord brought Ms. Clark to the Building were Male-1 administered the lie detector tests again. Ms. Clark felt compelled to return to the Building and take the tests due to the threats made to her by Male-1.

In addition, Ms. Clark is expected to testify that in or around 2011, she witnessed an assault of Ms. Ventura by Mr. Combs. The prior evening, Combs and Ms. Ventura had spent the night at a hotel. Early the next morning, Mr. Combs appeared at Ms. Clark's apartment with a firearm and demanded that Ms. Clark accompany him to the residence of Mr. Mescudi to locate him. Mr. Combs later demanded that Ms. Clark bring Ms. Ventura to him. Shortly thereafter, Ms. Clark met with Ms. Ventura and Mr. Mescudi. Ms. Ventura informed Ms. Clark that she had been assaulted by Mr. Combs at the hotel. Although Mr. Combs had directed Ms. Clark to return Ms. Ventura to him, Ms. Clark was hesitant to do so because of Ms. Ventura's statements about the defendant's prior abuse. Ms. Clark ultimately drove with Ms. Ventura back to Mr. Combs' residence where Ms. Ventura was assaulted by Mr. Combs in Ms. Clark's presence.

## II. Discussion

Ms. Clark's testimony is admissible for the non-hearsay purpose of establishing the effect of the statements on Ms. Clark and/or as threats to Ms. Clark. Further, the disputed statements are highly relevant and not unduly prejudicial. Accordingly, the statements are admissible under Rules 401 and 403.

*First*, Ms. Clark's testimony regarding threats made to her in 2004 immediately prior to and during the lie detector tests is admissible as non-hearsay. *See United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."). Further, Ms. Clark's statement is highly probative and relevant to the kidnapping predicate alleged with respect to Ms. Clark, *see* Indictment ¶ 13(a).[1] Here, Ms. Clark is expected to testify that she reasonably feared for her safety due to the threats by Male-1 and therefore complied with the directives of Offord to travel repeatedly to the Building. Further, Ms. Clark is expected to testimony that Offord brought Ms. Clark to the building each day, and that he, in turn, reported to Combs. The testimony is also not unduly prejudicial under Rule 403. Although the threat was a serious one, it is no different in kind to other similar threats that Ms. Clark is expected to testify that the defendant levied at her during her employment. *See United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (admission appropriate where the offered evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged." ). Further, the significant probative value of this evidence far outweighs any unfair prejudice. *See*

---

[1] To establish New York state kidnapping, the Government is required to establish that (1) the person restricted an individual's movements in such a manner as to interfere substantially with his or her liberty by moving her from one place to another, or by confining her either in the place where the restriction commenced, or in a place where she had been moved; (2) the person did so without the consent of the individual; (3) that the person did so intentionally; (4) that the restriction of the individual's movements was unlawful and the person knew that the restriction was unlawful; and (5) the person restrained the individual with intent to prevent her liberation by secreting her in a place where she was not likely to be found. *See* N.Y. Penal Law § 135.20. A person is "restrained" "without consent" when the defendant accomplishes this by, *inter alia*, "physical force, intimidation or deception." N.Y. Penal Law § 135.00(1) *See Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, No. 22 Civ. 5055 (ER), 2025 WL 1266626, at *17 (S.D.N.Y. Apr. 30, 2025).

*United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) ( "[A]ny proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"). Accordingly, it should be admitted.

*Second*, Ms. Ventura's statement to Ms. Clark that she had been assaulted by Mr. Combs is admissible for the non-hearsay purpose of establishing its affect on the listener, here, Ms. Clark. *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay."). Indeed, Ms. Clark is expected to testify that Ms. Ventura's statement caused her concern regarding Mr. Combs' directives to return Ms. Ventura to him. Further, Ms. Ventura's statements clearly reflect the then-existing state of mind of Ms. Ventura. *See* Fed. R. Evid. 803(3). This statement is also probative and no more prejudicial than other evidence in the case, including the assault that Ms. Clark witnessed by Combs of Ms. Ventura shortly thereafter. Accordingly, this statement is also admissible under Rules 401 and 403.



Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ___/s_____
Maurene Comey / Meredith Foster /
Emily A. Johnson / Christy Slavik /
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284

cc:    Counsel of record (by ECF)