

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Robert Balin**
(212) 603-6440 tel

robertbalin@dwt.com

June 4, 2025

**<u>VIA ECF</u>**
Hon. Arun Subramanian
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:     *United States of America v. Combs*, Case No. 1:24-cr-00542-AS

Dear Judge Subramanian:

We write on behalf of The Associated Press, American Broadcasting Companies, Inc. d/b/a ABC News, Business Insider, NBCUniversal News Group, NYP Holdings, Inc. (publisher of the *New York Post*), The New York Times Company, Vox Media, LLC (publisher of *New York* Magazine), Associated Newspapers Limited (publisher of the *Daily Mail*), National Public Radio, Inc., Newsday LLC, and CBS Broadcasting, Inc. d/b/a CBS News (collectively, the "News Organizations") regarding the Government's June 3, 2025 request to prevent members of the public and press from viewing any exhibits submitted in connection with the forthcoming trial testimony of the pseudonymous witness "Jane" contemporaneously with her testimony.

As the Court knows, the trial of Defendant Sean Combs—among the most prominent men in entertainment to be accused of widespread sexual misconduct since the outset of the #MeToo movement—is a matter of utmost public interest and concern. The News Organizations have been pursing their role as the eyes and ears of the public at Mr. Combs' trial, covering it diligently and relaying prompt, daily coverage of its proceedings to their audiences.

We understand that in an on-the-record court conference on June 3, 2025, the Government's attorney asked that "all public screens and overflow room screens showing exhibits be turned off throughout" Jane's testimony. Tr. 4114:12-14. The Government's justification was that Jane's testimony will involve a "large volume of exhibits, including text messages with her name, her child's name, nicknames for her, her phone number," as well "her address throughout hundreds of pages of exhibits." Tr. 4114:16-21. According to the Government, "it is not feasible for us to carefully redact all of those" in a timely manner. *Id*. The Government professed wanting to avoid "the kind of accident that happened with [pseudonymous witness] Mia of accidentally putting up identifying information," Tr. 4114:21-23, and proposed that the parties "work diligently and quickly to review exhibits on a rolling basis and release them to the press and public with full redactions made promptly *after* her testimony." Tr. 4114-25-4115:3 (emphasis added). The Court indicated its intention to grant this request. We write to ask the Court to reconsider this decision,

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Page 2

and instead direct the Government to redact its exhibits ahead of Jane's testimony rather than limiting contemporaneous public access to them.

The News Organizations recognize that this trial involves serious privacy considerations that may justify limiting access to graphic sexual content and witness-identifying information in particularized cases. The Government's request, however, imposes a far broader and more burdensome limit on the public's First Amendment right of access to trial exhibits. It is nearly impossible for even the most sophisticated reporters to understand and accurately report on these criminal proceedings without seeing the documentary exhibits as they are being discussed. And, the Government's promise to release redacted exhibits "promptly" after Jane's testimony is a hollow one. As of yesterday, the Government was nearly a week behind on its public release of exhibits, having only made available exhibits that were introduced into evidence through Wednesday, May 28. These delays make the exhibits effectively useless for timely news coverage of the trial.

Courts have long recognized that "contemporaneous access to trials, rather than a review of the record following the trial, is an important component to ensuring the proper functioning of the criminal justice system." *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 223 n.4 (2d Cir. 2021). *See also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (noting that "[o]ur public access cases and those in other circuits emphasize the importance of immediate access where a right to access is found") (collecting cases). In our previous submission of May 12, 2025 on behalf of an overlapping group of News Organizations, ECF No. 327, we outlined the particular importance of the right of access to criminal trials, including "evidence introduced in trials." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). *See also Globe Newspaper Co. v. Superior Cot. For Norfolk Cty.*, 457 U.S. 596, 606 (1982) ("Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole."). But the Second Circuit has also made clear that "[t]he ability to see and to hear a proceeding as it unfolds is a vital component of the First Amendment right of access . . . not . . . an incremental benefit." *ABC v. Stewart*, 360 F.3d 90, 98 (2d Cir. 2004) (reversing lower court order denying the press contemporaneous access to voir dire proceedings, and providing instead that a transcript of the proceedings would be made public the next day). Accordingly, "there is a significant public interest in affording [the] opportunity" to review evidence "contemporaneously with the introduction of the [exhibits] into evidence in the courtroom, *when public attention is alerted to the ongoing trial*." *Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 952 (2d Cir. 1980) (emphasis added). That public interest is implicated here, where the Government proposes to limit the contemporaneous right of access.

While the News Organizations recognize the need to preserve Jane's anonymity, the Government's proposal is not "narrowly tailored to serve" those "higher values," as it must be to justify the burdens it would place on the First Amendment right of public access. *Lugosch*, 435 F.3d at 120. The Government's responsibility is to identify *specific* material that merits sealing, and provide access to the remainder. While the News Organizations appreciate that the Government regrets its mistake in failing to redact identifying information regarding its

Page 3

pseudonymous witness Mia, the press and public are not responsible for bearing the burden of that error by ceding their First Amendment right to effective contemporaneous access to redacted trial exhibits. Moreover, when a Court considers limiting access in a criminal trial, it must first "consider reasonable alternatives." *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 304 (2d Cir. 2012). Here, there is a reasonable way to accommodate the Government's privacy concerns without infringing the First Amendment right of access: The Government can take the time necessary to redact its exhibits *before* Jane testifies, if necessary changing the order of its witnesses should additional time be required. We understand the government has numerous witnesses still left to testify, thus we see no reason why this approach would delay trial. Moreover, this approach would not create additional work for the Government, it would only be a question of *when* they do the same intended work of redacting the exhibits.

We thank the Court for its attention to this matter. Should the Court have any questions about this application, we plan to attend the trial tomorrow morning, June 5, and will be happy to address them.

Respectfully Submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/ Robert Balin*

Robert Balin
Abigail Everdell

cc:   Attorneys of Record (via ECF)