LAW OFFICES OF

**DRATEL & LEWIS**

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006

---

TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: llewis@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS                                                                       ACHARA AMY SCHRODER
—                                                                                                    *Paralegal*
AMY E. GREER
JACOB C. EISENMANN

June 5, 2025

**FILED VIA ECF**

The Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                        Re: *United States v. Sean Combs*
                             24 Cr. 542 (AS)

Dear Judge Subramanian,

      This letter is submitted on behalf of my client, who has been granted the right to proceed at the above-captioned trial under the pseudonym "Jane," and opposes the June 5, 2025, letter on behalf of a collection of News Organizations requesting that the Government change the order of its witnesses, or otherwise delay "Jane"'s testimony, to allow for a pre-redaction of exhibits to be introduced during Jane's testimony.

      As set forth in detail below, the News Organizations' First Amendment and common law rights to trial access, and namely to trial exhibits, would not be infringed by the Government's rolling release of correctly-redacted evidence to the public, particularly given that the contents of the exhibits at issue will nonetheless be conveyed to the press and public in the courtroom in real time through the witness's testimony, and will be provided to the press and public as soon as is practicable. Nor do they pose a reasonable alternative to allowing "Jane"'s testimony to proceed as planned.

      Accordingly the News Organizations's request(s) should be denied.

      **I.**      *The News Organizations' First Amendment Right to Access Trial Is Not Infringed By Non-Contemporaneous Release of Evidence to the Public*

LAW OFFICES OF
**DRATEL & LEWIS**

While it is well-established that there is a qualified "First Amendment right of access to criminal trials." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 604, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), that right is "qualified" because it "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

Under the First Amendment the Court should consider whether the measures restricting the public's access to the trial are "essential to preserve higher values and [are] narrowly tailored to serve that interest." *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (internal quotation marks omitted). *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 106 S. Ct. 2735, 2743, 92 L. Ed. 2d 1 (1986), citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984).

To that end, although the First Amendment "require[s] that citizens know what has transpired in the courtroom" it "do[es] not require that they receive that information in the most dramatic form. *In re NBC Universal*, Inc., 426 F. Supp. 2d 49, 57 (E.D.N.Y. 2006).

The "higher values" standard, articulated in Press-Enterprise I, amplifies the privacy rights of vulnerable individuals, in that the "privacy interests of those who resist disclosure" (here "Jane") have been identified as such a higher value. *Doe 1 v. JP Morgan Chase Bank*, N.A., 742 F. Supp. 3d 387, 397 (S.D.N.Y. 2024), quoting *S.E.C. v. TheStreet.com*, 273 F.3d 222, 232 (2d Cir. 2001) (also stating that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation"). Certainly, given the fact that "Jane" has been granted the right to testify under a pseudonym in order to avoid "particularized and unique challenges" that the defense and prosecution agree she would face if her identity were revealed, and which premature publication of exhibits in connection with her testimony might result in, her privacy rights more than justify delayed disclosure. *See* Docket No. 266.

Moreover, the News Organizations rely on *Hartford Courant Company, LLC v. Carroll*, which while on point regarding the First Amendment balancing test itself, addressed a wholly distinct issue, finding that a blanket prohibition on access contravened the presumption of access. *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211 (2d Cir. 2021). In that case, at issue was a Connecticut state law requiring the "automatic sealing of all judicial records and the closure to the public of all court proceedings in cases transferred from the juvenile docket to the regular criminal docket." *Hartford Courant Co.* at 215. The Court in *Hartford Courant Co.* focused on the "automatic" and "mandatory" nature of the ban, and decided that the First Amendment requires simply "presumption of openness that can be reviewed on a case-by-cases basis." *Hartford Courant Co.* at 222.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
June 5, 2025
Page 3 of 5

Here, the Government has a compelling interest in carefully and properly redacting the exhibits that it releases to the public and press. This interest is further heightened due to the recent inadvertent exposure of another pseudonymous witness's personally identifiable information by way of evidence published to the public. And, the redactions themselves are narrowly tailored to remove only that information which would identify the pseudonymous witness. This is therefore quite different from *Hartford Courant Company, LLC v. Carroll* where the records were to be sealed, not simply released in a redacted version, on a rolling basis, when such release would not risk revelation of sensitive information.

  **II.**  ***The News Organizations' Common Law Right to Access Trial Is Also Not Infringed By Non-Contemporaneous Release of Evidence to the Public***

The common law also affords the public a right to access evidence introduced at trials but it "is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); see also *United States v. Graham*, 257 F.3d 143, 149 (2d Cir. 2001).

Applying the Common Law right of access consists of a three-step analysis. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d. Cir. 1995) ("*Amodeo II*"). First, the Court must determine whether the materials at issue are judicial documents. Second, the Court must determine the weight of the presumption by assessing the role of the material at issue in exercising its Article III power, and, third the Court must balance the "competing considerations against disclosure" by analyzing the "countervailing factors," which include but "are not limited to 'the danger of impairing law enforcement or judicial efficiency,' and 'the privacy interests of those resisting disclosure.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006), *quoting Amodeo II*, 71 F.3d at 1050.

"[W]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d. at 1050.

Pursuant to the common law framework, "[i]n determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. . . The nature and degree of injury must also be weighed. This will entail consideration . . . of the sensitivity of the information and the subject." *Amodeo II*, 71 F.3d at 1051.

Courts, however, have long declined to allow public access simply to cater "to a morbid craving for that which is sensational and impure." *In re Caswell*, 18 R.I. 835, 836, 29 A. 259, 259 (1893).

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Arun Subramanian
June 5, 2025
Page 4 of 5

The News Organizations cite to *Application of Nat'l Broad. Co., Inc.* to support their argument for contemporaneous right to access.  June 4, 2025 Letter at 2.  *Application of Nat'l Broad Co.* held, however, that "When physical evidence is in a form that permits inspection and copying without any significant risk of impairing the integrity of the evidence or interfering with the orderly conduct of the trial**,** only the most compelling circumstances should prevent contemporaneous public access to it."  *Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 952 (2d Cir. 1980)  (emphasis added).

At issue here are the second and third prongs of the common law test. Regarding the second prong, the weight of the presumption is low, considering that the News Organizations will be able to hear and report on the testimony of Jane, including what is read into evidence, and will receive properly redacted exhibits as they are completed. Thus, the "material at issue" here is only the physical text of the evidence, not the testimony itself, and thus plays a minor role in the Court's Article III function.

Addressing the third prong, the countervailing factors here also weigh in favor of non-contemporaneous disclosure. For instance, the Court has a strong interest in protecting the privacy interests of witnesses, like "Jane," who have been granted pseudonymous status by the Court. That interest is heightened given the nature of the allegations related to "Jane," who has also been identified as Victim-2 in the Indictment.  *See Giuffre v. Dershowitz*,  2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020) (holding in that case that "[countervailing] interests are particularly acute given that the psychological and emotional wellbeing of survivors of alleged sexual assaults may be implicated by such a broad disclosure").  It is even further heightened given the recent inadvertent exposure of personal identifying information of another pseudonymous witness and the global media coverage this case has received which enhances the risk of public disclosure of such details beyond the courtroom.

Further, with regard to the "orderly conduct of the trial" and "judicial efficiency," the request the News Organizations have made to either publish the exhibits contemporaneously or else delay "Jane's" testimony by changing the order of witnesses, would be impossible to adhere to given our understanding that "Jane" is likely to be on the witness stand for multiple days and has a conflict commencing June  13th which requires that her testimony conclude before that time, and which the parties have agreed to honor.  Nor, is it my understanding, would a short delay allow for the careful and proper redaction of the volume of exhibits that are at issue. Indeed, such a delay would therefore be inefficient and would threaten the ability of the parties to fully examine "Jane."

**III.**     ***The News Organizations Proposal that The Order of Witnesses Be Changed In Order to Permit Contemporaneous Publication of Redacted Exhibits Is Not a "Reasonable***

LAW OFFICES OF
# DRATEL & LEWIS

Hon. Arun Subramanian
June 5, 2025
Page 5 of 5

*Alternative"*

As discussed to some extent **ante**, the proposal from the News Organizations to change the order of witnesses to permit the Government time to pre-redact exhibits to be introduced through her testimony is not a reasonable or practicable alternative to permitting "Jane" to commence her testimony today. *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth*., 684 F.3d 286, 304 (2d Cir. 2012).

Nor would such a proposal be in line with considerable precedent establishing far more restrictive alternatives than merely providing redacted exhibits to the public on a rolling basis, rather than at the time of testimony. Indeed, in *N.Y. Civ. Liberties Union* the Court recognized that "'the privacy interest of individuals' such as witnesses, third parties, and those investigated in connection with a legal violation, may 'warrant closure.'" *Quoting United States v. Doe*, 63 F.3d 121, 127 (2d Cir. 1995). Examples of proper use of alternatives, which are much more restrictive than those proposed by the Government, and which are enumerated in *N.Y. Civ. Liberties Union*, include the exclusion of the public from only part of *voir dire*, *United States v. King*, 140 F.3d 76 (2d Cir.1998), excluding the public during the testimony of a single witness, *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir.1997), and the limiting of new observers only during a trial, "in order to not distract the jury." *New York C.L. Union* at 305, *citing Williams v. Artuz*, 237 F.3d 147 (2d Cir. 2001). Further, in *N.Y. Civ. Liberties Union*, at issue was the exclusion of the public from proceedings before Transit Adjudication Bureau, which is easily distinguishable from the limited restriction on contemporaneous access to exhibits caused by the need for careful redaction to protect the privacy of a pseudonymous witness.

Accordingly, the Court should deny the News Organizations's request to change the order of its witnesses, or otherwise delay the testimony of "Jane," to allow for a pre-redaction of exhibits to be introduced during Jane's testimony

Respectfully Submitted,

*Lindsay Lewis*

Lindsay A. Lewis

LAL/