Shapiro Arato Bach LLP

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

May 28, 2025

**VIA EMAIL**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

      The defense submits this letter in response to the government objections, set forth in its letter this morning, to various exhibits the defense plans to use in its cross-examination of Mia. These objections should be overruled.

      By way of background, Mia is Mr. Combs's former employee who is expected to testify that she was the victim of years of sexual assault and physical violence. She claims to be the victim of harassment and humiliation that ruined her self-esteem throughout her employment with Mr. Combs and alleges that she was terrified of him. And she claims to now have PTSD and other mental health issues because of her relationship with Mr. Combs. Each of the exhibits identified in the government's motion is directly relevant to rebutting Mia's anticipated testimony and demonstrating that it is materially false—in fact, she loved Mr. Combs and was devoted to him and helping to promote him and his brand. Accordingly, these exhibits are highly probative of key issues in dispute and, for the reasons set forth below, the government's various hearsay and 403 objections are spurious.

**A.**      **The Scrapbook Is Admissible**

      The government objects to the admission of a scrapbook (DX 1700) that Mia gave to Combs on his 45th birthday in 2014. Mia painstakingly assembled the scrapbook as a gift to Combs. She collected dozens of articles from 1991 to 1999 and personally highlighted important anecdotes from Combs's past to remind him of his accomplishments. The scrapbook was also prefaced with an incredibly touching cover letter (DX 1700-A), which ended with "Happy happy Birthday! I love you forever and eva and eva!" The government's argument that the scrapbook is irrelevant and unfairly prejudicial is meritless.

      The scrapbook, and particularly Mia's cover letter, are powerful evidence of the nature of their relationship at that time and Mia's state of mind regarding the relationship. Her cover letter is full of lovely sentiments that are not being offered for their truth—rather, they are highly relevant as non-hearsay because they "convey [her] general mood or attitude." *See* 4 Mueller & Kirkpatrick, *Federal Evidence* § 8:10 (4th ed. & 2023 update). Mia's "state of mind" at the time,

Page 2

Hon. Arun Subramanian
May 28, 2025

which here is clearly probative, "can be proved circumstantially" in this way through "statements which are not intended to assert the truth of the fact being proved." *United States v. Johnson*, 117 F.4th 28, 47 (2d Cir. 2024). In other words, the scrapbook reflects Mia's expressive birthday wishes, not any "statement … intended … as an assertion" excludable under the hearsay rule. Fed. R. Evid. 801(a). Indeed, the act of giving a gift is non-assertive conduct, and like "[m]ost human behavior sheds light on the thinking and beliefs of the actor, which in turn suggest conclusions about acts, events, and conditions in the world." *Federal Evidence* § 8:11. "[Such] conduct is admissible whether it is verbal or nonverbal." *United States v. Cassano*, 372 F.3d 868, 883 (7th Cir. 2004) (internal quotation marks omitted). And the fact that Mia took the time to compile all the articles, highlight them, and gift them to Combs is similarly indicative of her mood and attitude at the time—entirely apart from any content contained in the articles, which Combs does not offer for their truth.

Moreover, the cover letter (DX 1700-A) is independently admissible as an obvious example of a statement admissible pursuant to Rule 803(3). Mia states, *inter alia*:

> All of this is to say I hope on THIS day - you get to sit back and actually take it all in of how much you've accomplished - how far you have gone (+ are <u>still</u> going) → so I put together this book of magazine articles from 1991 to 1999 that I hope will stir up nostalgic feelings of when you started and how you felt and what was a dream to you then that's now an everyday reality. So your "SELF" can tell your "YOUNG SELF" how GREAT you've become. Not that you'll ever forget your past – but I hope it reminds you of when this world made your eyes light up!!"

These statements are clearly "statement[s] of [Mia's] then-existing state of mind," including her "motive," "intent," and "emotional … condition," as well as her "mental feeling" at the time she gave Combs the scrapbook. Fed. R. Evid. 803(3). These are statements in which Mia conveys her "hope[s]" for Combs and explains the emotion behind her compiling the scrapbook. They are thus admissible.

The remainder of the statements in the cover letter are not being offered for their truth. For example, Combs obviously does not intend to argue that the following statements in the cover letter are true:

> Puff! Sometimes life goes by at catastrophic speeds where you never get to live in and enjoy the "<u>NOW</u>". Things that used to feel unattainable and symbolic of success can become "the norm" and lose all of the adrenaline and excitement it used to stir up, and life keeps going and going, and each new height reached can lose its celebration moment in the whirlwind of getting to that next goal.

In short, neither the cover letter nor the accompanying articles constitute inadmissible hearsay offered to prove the truth of the matters asserted therein. The cover letter is admissible under Rule 803(3) and is also relevant as evidence displaying Mia's contemporaneous attitude in her own ebullient words. And the entire scrapbook is relevant not for anything said in it, but

simply in what the act of making it and gifting it demonstrates. Any concerns about hearsay can be handled with a simply limiting instruction that the jury will no doubt understand.[1]

The government also argues that the articles in the scrapbook are unfairly prejudicial because they might "play[] to juror sympathies." It is not even clear what the government means by this, and the Court has already—and will likely during the final charge—instruct the jury that it is "here to administer justice …according to the law and evidence … without bias, prejudice, or sympathy." Tr. 85. Almost all evidence, including Mia's testimony on direct, will play to juror sympathies in some regard. The articles contained in the scrapbook mention Combs's accomplishments, but the jury is already well aware that Combs was a very accomplished musician, producer, and businessman. The government has not identified any actual unfair prejudice, and none exists. On the other, the scrapbook is highly probative of how Mia viewed her relationship with Combs on his 45th birthday, which is directly relevant to the charges and will undermine her credibility and rebut her account.

**B.     Social Media Posts**

1. <u>Relevance</u>. The government vaguely objects to the social media posts under Rule 401. But Rule 401 is a very low standard, and the relevance of the social media posts is obvious—namely, Mia's social media posts are contemporaneous evidence of her state of mind at the time and the nature of her relationship with Mr. Combs. They demonstrate her desire to promote Mr. Combs's career, as well as her own personal desire to garner attention and publicity by virtue of her proximity to Mr. Combs. In addition, and in stark contrast to her expected testimony, the posts reflect Mia's praise for Mr. Combs and pride for her relationship with him, as well as her willingness to get close to him. Indeed, the posts show the jury what Mia broadcast to the public regarding her relationship with Mr. Combs during the relevant period, and what she thought and felt at the time.

For example, in DX-1703, Mia posted a picture of Combs purchasing a coffee, with the caption "Just the #1 guy on the Forbes list. Getting me a vanilla latte. No big deal. Regular people shit." In the post, Mia is bragging about her relationship with Combs, and even tags Mr. Combs ("@iamdiddy"), even though she now claims to have been terrified of him. She is, in other words, enjoying her time in the limelight and celebrating her relationship with Combs. DX-1710 is similar. Mia states "Look ma! I'm on a billboard in Times Square with @iamdiddy !!," with a picture of her in a Cîroc advertisement.

In DX-1714, Mia reposts a comment by Mr. Combs stating, "Beside every great man is a great woman. Happy Birthday Mia. Love you! … P.S. sorry I was acting crazy last night." Mia adds to the post "I have to repost this because A) my hair is crazy B) puff daddy has 4 million followers C) it's the nicest caption ever. Thanks, Puff! Love you. You've shown me the world! #layingonsunset". Again, this is relevant to show what Mia was thinking and feeling at the time

---

[1] For example, the Court could instruct: "The scrapbook is being admitted as evidence of Mia's conduct and state of mind. The statements in the articles contained in the scrapbook are not being offered for their truth and you should not consider the articles for their truth."

Page 4

Hon. Arun Subramanian
May 28, 2025

and will be offered as probative evidence tending to disprove the claims in her anticipated testimony that she lived in terror while with Mr. Combs.

Certain of the posts are probative for separate and more specific reasons. For example, DX-1707 shows Mia's proximity to Mr. Combs in a swimming pool during the time period when Mia claims she was being sexually assaulted by Mr. Combs. It is therefore relevant to impeach her credibility concerning testimony she is expected to give.

The remaining social media posts are similar to those discussed above. Individually and collectively, the exhibits will undermine Mia's testimony on direct—and the government's theory of guilt—that her relationship with Mr. Combs was consistently hostile and abusive. The relevance is straightforward.

2. <u>Hearsay</u>.  The government argues that the posts "often" contain hearsay and that they should not be admitted unless and until the defense offers "a proper non-hearsay purpose for the posts." Gov. Ltr. at 8-9. As an initial matter, hearsay is examined statement-by-statement, because the operation of the hearsay rule and its exceptions "require assessment of … each assertion individually." *United States v. Ojudun*, 915 F.3d 875, 885 (2d Cir. 2019) (citing *Williamson v. United States*, 512 U.S. 594, 600-01 (1994)). And it is the opponent's initial burden to identify which statements are potentially hearsay and state a specific ground of objection. *See* Fed. R. Evid. 103(a)(1)(B). In the absence of a specific objection, a party offering exhibits does not have a burden to identify a non-hearsay purpose for each exhibit.

Regardless, none of the statements in the social media posts are hearsay, as none are offered for the truth of the matter asserted. The posts of full of exclamations such as "Fuck off, Patron!" (DX-1745) and "Look ma!" (DX-1710) and "Baaaad boyyyyy come out and plaaayyyy." (DK-1739). Such utterances are non-declarative statements—they do not assert anything and thus cannot be offered for the truth of the matter asserted. *See* 4 *Federal Evidence*, *supra*, § 8:10 ("social pleasantries" are non-hearsay because they lack factual content and merely convey sentiment and attitude). The posts are full of such non-assertive utterances, so the hearsay rule provides no basis for their exclusion.

And the statements that are declarative are not offered for their truth. For example, as discussed above, in DX-1703, Mia stated that Combs was getting her a vanilla latte. The defense is not offering that exhibit to prove that Combs in fact bought Mia a vanilla latte. Maybe it was a mocha or a drip coffee—maybe Combs was only buying himself a coffee. None of that matters. The point of the post is that Mia was bragging about being together with Combs at a coffee shop—that she loved her proximity to fame, wealth, and power, and Mr. Combs himself.

Nor is the defense seeking to prove the truth that Combs was, in fact, the "#1 guy on the Forbes list" (DX-1703), that Mia was on a billboard in Times Square (DX-1710), or that the Combs had "4 million followers" on social media (DX-1714). All those statements might be false or exaggerated—it does not matter, for example, whether Combs actually had 4 million followers. The relevance is simply that the posts were made at all—they demonstrate that Mia was an active participant in promoting Combs, and her thoughts and feelings at the time.

In short, the relevance of the posts has nothing to do with the truth of the statements. Their relevance, in other words, is not in what they *report*. Rather, their relevance is "as social

Hon. Arun Subramanian
May 28, 2025

behavior that fills or acts out (or gives substance to) the relationship between the declarant" and Combs.  See 4 *Federal Evidence*, *supra*, § 8:10.  Mia's contemporaneous statements will also be inconsistent with her testimony and are thus admissible as non-hearsay under Rule 613.

If the government could actually identify any hearsay statements in the exhibits, then they could be redacted.  But the government has not identified any statement offered for its truth, so there is nothing to redact.  And finally, any concern about hearsay could be handled with a limiting instruction telling the jury not to consider statements for their truth.

3. <u>Unfair Prejudice</u>.  The government argues in conclusory fashion that some of the exhibits are unfairly prejudicial and thus barred by Rule 403.  Some of these arguments border on silly.  For example, the government argues DX-1701 and 1726 are unfairly prejudicial because they display bottles of alcohol, and DX-1707 is unfairly prejudicial because it shows people in a pool giving the middle finger.  The jury in this case has already heard extensive evidence of sex, alcohol, drugs, and partying—it is undisputed that Combs, his employees, and nearly all the government's fact witnesses partook.  There is nothing shocking or emotional about the defense's additional exhibits.  All they demonstrate is that Mia herself partook, and that she enjoyed it.

The government singles out DX-1701, which shows Mia with several bottles of Ciroc, making a silly face, and a caption "What we do when you're not around," followed by the tag "#ciroc."  The government clutches its pearls and argues there is a "real risk" that the jury will see the photo and conclude that "Mia was drinking often."  Jurors are not stupid, and they are not prudes.  Mia's post was obviously in jest—no reasonable human would view the post and think that Mia was actually drinking four large bottles of vodka right then.  The relevance, again, is simply that Mia was joyfully and actively promoting both Combs and his businesses, in this case Ciroc, and also directing these comments at Mr. Combs.

The government also singles out DX-1734, which is an Instagram post by Mia with a collage of photos of Combs's son—including one of her together with his son—and a nice birthday message.  The exhibit does not "play[] to juror sympathies by putting the defendant's children at issue."  Gov. Ltr. at 10.  Rather, it demonstrates the true extent to which Mia went out of her way to praise Mr. Combs and her relationship with him and affection for him and his family.  The government's rule 401 and 403 objection is meritless.

Unfair prejudice refers to the capacity of some evidence to persuade the jury on some illegitimate ground.  The government has not even identified anything that counts as unfair prejudice, much less that the unfair prejudice is so great that it substantially outweighs the probative value of the social media posts.

**C.     Text Messages**

Finally, the government objects to three text threads between Mia and Combs.  These objections are similarly baseless.

The government argues that DX-1730—a single text message sent by Mia to Combs—is irrelevant hearsay.  The relevance is the same as texts between Combs and Cassie, and it is the same as Mia's social media posts—it is contemporaneous evidence demonstrating the nature of

Hon. Arun Subramanian
May 28, 2025

their relationship, and her attitude toward him. Nor is it hearsay. Much of her text includes non-declarative utterances like "Fucking CRUSH IT AND MAKE HISTORY." And the text message is admissible under Rule 803(3) as it reflects her then-existing state of mind, intent, and plan. *See, e.g.,* DX-1730 ("Love you so much and thank you for this historic moment. Can't believe after almost a decade with y'all I miss this beautiful combination of all the people I love that I grew up with and the people I love that helped me grow up."). Thus, even if the statements were hearsay, they would be admissible under Rule 803(3).

The government objects to DX-1733, a text chain spanning from 2018 to 2020. The primary relevance of the chain is that Mia repeatedly reaches out to Combs to wish him well and express her fondness for him—"Always so much love to you!!"; "Just thinking of you today and everyday!"; "Just sending you all the love in the world." Such statements are obviously relevant in demonstrating the true nature of their relationship at the time, and they are not hearsay. The only portion identified by the government as potential hearsay are Mia's statements on August 29, 2020. But those expressions of memory are not offered for truth but rather their tenor and tone and the effect on the listener. In response to Combs's requests for videos, Mia happily responds that she will send "like Fucking HYSTERICAL ones".

Nor does the government offer any actual argument that Mia's consistent expression of loving sentiments toward Combs is unfairly prejudicial. These contemporaneous statements undermine her testimony and the government's case—that is precisely the point. But evidence that undermines the other party's case is not *unfairly* prejudicial.

Finally, the government objects to DX-1735, a 2016 text chain between Mia and Cassie. Once again, the government objects in conclusory scattershot fashion—"hearsay, speculation, and Rule 401 and Rule 403 grounds." Gov. Ltr. at 10. Once again, the relevance is obvious, in that it shows the women's attitudes and moods at that moment in time. Once again, almost nothing in the chain can seriously be considered hearsay. Statements like "Omg this TUPAC script is actually really good" are obviously not offered to prove that the Tupac script was, in fact, really good. And once again, the government has not identified any actual unfair prejudice. The messages on the last page of the chain are particularly probative in demonstrating how Mia perceived Combs at the time. In response to a message from Cassie that Combs was "being jerky," Mia gives advice to Cassie, conveying an understanding of Mr. Combs that will directly contradict her testimony that he is manipulative and seeks to humiliate.

* * *

For the foregoing reasons, the government's objections should be overruled.

Respectfully submitted,

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.

Hon. Arun Subramanian
May 28, 2025

      New York, NY 10036
      (212) 257-4880
      ashapiro@shapiroarato.com
      jdriscoll@shapiroarato.com

      Marc Agnifilo
      Teny Geragos
      AGNIFILO INTRATER
      445 Park Ave., 7th Fl.
      New York, NY 10022
      646-205-4350
      marc@agilawgroup.com
      teny@agilawgroup.com

      Anna Estevao
      HARRIS TRZASKOMA LLP
      156 West 56th St., Ste. 2004
      New York, NY 10019
      (212) 970-6465
      aestevao@harristrz.com

      Brian Steel
      THE STEEL LAW FIRM, P.C.
      1800 Peachtree Street, Ste. 300
      Atlanta, GA 30309
      (404) 605-0023

      Xavier R. Donaldson
      136 Madison Ave, 6th Floor
      New York, New York 10016
      646-772-3334
      Xdonaldson@aol.com

      Nicole Westmoreland, Esq.
      WESTMORELAND LAW, LLC
      132 Cone Street, Suite A
      Atlanta, GA 30303
      Tel: (404) 446-2620
      nw@westmorelandlawgroup.com