

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

**Request To Be Filed Under Seal**

March 3, 2025

**BY EMAIL**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Sean Combs*, S1 24 Cr. 542 (AS)

Dear Judge Subramanian:

    The Government's Filter Team respectfully submits this reply letter in further support of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ which seeks the production of a cellphone belonging to the defendant ("Device-1"). In the defendant's opposition to the Filter Team's letter dated February 4, 2025 ("Opp."), the defendant advances two primary arguments in support of his claim of privilege: (1) the June 23 Messages are protected by the common-interest rule; and (2) "necessity" is not required to protect communications between non-lawyers under *Kovel* or attorney-client privilege law more generally. Both arguments fail.

    **I.**    **Combs's New Common-Interest Argument Fails for the Same Reasons as His Agency and Corporate Attorney-Client Privilege Arguments**

    In his opposition, Combs raises for the first time the argument that the June 23 Messages are protected by the common-interest rule based on an oral joint defense agreement between himself and Staff-1. But this argument fares no better than the other grounds Combs raised prior to the filing of the Motion. In *United States v. Krug*, the Second Circuit squarely held, relying on *Kovel*, that, even in the context of the common-interest rule, which can protect privileged statements when an attorney is not present, "what is vital to the privilege is that the communication be made ... for the purpose of obtaining *legal* advice *from the lawyer*." 868 F.3d 82, 87 (2d Cir. 2017) (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)); *accord* Filter Team Br. 4-6.

    In *Krug*, the Government charged three police officers with criminal violations of constitutional rights by using excessive force during an arrest. *Id.* at 85. The defendants entered into a joint defense agreement. Their lawyers participated in meetings together, sent emails to each other, and shared legal memoranda and research. *Id.* Shortly before trial, one of the defendants,

Kwiatkowski, decided to cooperate against the other two. During a proffer session, Kwiatkowski told the Government about a conversation between himself and the remaining defendants, Krug and Wendel, that took place in a hallway while the joint defense agreement was still in effect. While the specific contents of that conversation are redacted from the public opinion, the Second Circuit described the conversation as Wendel "conveying his independent, non-legal research … while noting he had sent the same research to his attorney. No legal advice was mentioned, much less shared or otherwise conveyed, among the co-defendants." *Id.* at 87. Krug moved to preclude Kwiatkowski from testifying about the conversation on the basis that the common-interest rule protected those statements from disclosure even though their attorneys were not present. *Id.* at 85. The district court agreed.

On appeal, the Second Circuit reversed. Relying on *Kovel*'s necessity requirement, the Circuit held that the statements were "not made for the purpose of obtaining legal advice from a lawyer, nor did the excluded statements share among defendants advice given by a lawyer, nor did the excluded statements seek to facilitate a communication with a lawyer." *Id.* at 87; *see also infra* § II. The Court reiterated that it "constru[es] the privilege narrowly because it renders relevant information undiscoverable," *Krug*, 868 F.3d at 86 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)), and found that "the mere fact that the communications were among co-defendants who had joined in a joint defense agreement is, without more, insufficient to bring such statements within the attorney-client privilege." *id.* at 87.

*Krug* is fatal to Combs's common-interest argument. Combs contends that he sent the June 23 Messages to Staff-1 "as part of a collaborative joint defense effort to obtain legal advice" (Opp. at 3), such that the June 23 Messages were made "to facilitate a communication with a lawyer" and "for the purpose of obtaining legal advice from a lawyer," *Krug*, 868 F.3d at 87. But the defendant cannot fit that square peg into a round hole. First, there was nothing "collaborative" about the statements. Combs sent a series of messages to Staff-1 about the discovery of Device-1; the only information Staff-1 provided, at Combs's request, was Ms. Geragos's phone number. Nothing about that exchange demonstrates collaboration on legal advice. It, at bottom, reflects Combs asking for a telephone number and explaining why he needed that number urgently. Like the Second Circuit noted in dicta in *Mejia*, nothing stopped Combs from merely telling Staff-1 that he needed to talk to his lawyer and asking her for the number. *United States v. Mejia*, 655 F.3d 126, 134 (2d Cir. 2011).

Second, while the Government does not have access to Combs' *ex parte* filings, there does not appear to be a basis for Combs to argue that his statements describing the discovery of Device-1 somehow "facilitated" his and Staff-1's ability to talk to their lawyers or were made "for the purpose of obtaining legal advice from a lawyer." Combs did not ask Staff-1 to "interpret" or "translate" what the discovery of Device-1 meant for his lawyers. *See United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999). All he said was that he made a discovery that he thought was "good for us," and, assuming arguendo that discovery was Device-1, that he needed to talk to Ms. Geragos. Combs sharing the discovery of Device-1 by Staff-1 is no different than the "independent, non-legal research" Wendel shared with Krug that the Second Circuit held non-privileged in *Krug*.

All of Combs' arguments to the contrary were rejected by *Krug*. The fact that Combs met with his lawyer shortly after sending the June 23 Messages (Opp. at 3) is irrelevant to the privilege analysis, which focuses on the specific statements made and their purpose at the time they were made. *Krug*, 868 F.3d at 87 (holding common interest rule did not apply "[n]otwithstanding that the lawyers for the defendants were nearby and had recently been in communication with their clients"). ████████████████████████████████████████████████████████████████. *Krug*, 868 F.3d at 85, 87 (rejecting argument that statements were part of "mutual sharing of defense strategies, thoughts, and theories"). ████████████████████████████████████████████████████████████████████. *Krug*, 868 F.3d at 87 (rejecting applicability of privilege even where Wendel "had sent the same research to his attorney"); *accord, e.g.*, Third Restatement of the Law Governing Lawyers § 76.

To hold otherwise would allow non-lawyers to shield their communications as privileged under the common interest rule whenever they could later loosely connect the substance to a subsequent conversation with an attorney. That is expressly what the Second Circuit rejected in *Krug*. 868 F.3d at 87 ("We know of no precedent applying the attorney-client privilege on such facts and we find no circumstances present here that could justify extending the attorney-client privilege to these communications."). And that same rule has been applied in other jurisdictions. For example, in *Comtide Holdings*, the court explained in rejecting the application of common interest rule there, that "substantial proof" is required to invoke the common-interest rule when no lawyers are present to ameliorate the "concern" of construing the rule too broadly and "swallow[ing] up a large number of non-privileged, and perhaps highly relevant, communications." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07 Civ. 1190, 2010 WL 5014483, at *3 (S.D. Ohio Dec. 3, 2010).

Combs argues that if it is obvious to both parties in a non-lawyer communication that they need to talk to a lawyer, "then it is clear" the messages are sent to "seek legal advice." (Opp. at 4). That is precisely the unmoored expansion of the privilege that court after court has found incompatible with the narrow scope of the attorney-client privilege and the common interest corollary. *Comtide*, 2010 WL 5014483, at *3 (rejecting argument that "any time there is some temporal relationship between non-lawyer communications and a request for legal advice from an attorney concerning the same subject, the former must necessarily have been intended, or primarily intended, to facilitate the latter" because it "ignore[s] the reality that when a person or business is threatened with litigation, that threat may spawn a flurry of both business and legal communications, and the burden must rest with the proponent of the privilege to come forward with sufficient evidence to allow the Court to distinguish between the two").

Combs's attempt to distinguish *Comtide* on the basis that "the information was never passed along to counsel and subsequent communications did not 'refer to' the information" (Opp. at 3) misstates that opinion in a way that obscures how similar *Comtide* is to this case. In *Comtide*, one employee, Joyce, sent an email to another employee with an attachment about a brokerage claim to be printed for the benefit of the company's president, Gillett. 2010 WL 5014483, at *1.

"Several hours" later, Joyce contacted the company's outside counsel to discuss the brokerage claim. *Id.* at *2. Joyce did not send the attachment to the lawyers; Gillet did not talk to the lawyers.[1]

On those facts, the court found the original email and attachment were not privileged, as there was no evidence that the "dominant purpose" *of the email and attachment* was to seek legal advice. *Id.* at *3. That was so even though Joyce sent the email to Gillett *and separately sought legal advice* about the same issue on the same day. The court held that was insufficient because it did not show that Joyce's purpose in the sending the attachment to Gillett was for Gillett to transmit it to counsel, and the "loose connection" between the attachment and the legal advice was insufficient to show Joyce sent the email "in order to facilitate the later communication with [outside counsel]." *Id.*

Combs errs by claiming the "information" in *Comtide* was not communicated to counsel; that is not what *Comtide* said. Rather, the relevant question is whether the *communication itself*—in *Comtide*, the email and its attachment—was sent for the *purpose* of obtaining legal advice. Replace "email attachment" in *Comtide* with Combs's voice note and photograph here and the same reasoning follows. This Court should similarly hold the June 23 Messages are not privileged.

It is telling that Combs cites no case that supports his groundless extension of the common interest rule. The only case he cites, *Vandenberg v. Univ. of St. Thomas*, held that text messages between two co-plaintiffs were *not* protected by the common interest rule because they were not made "at the direction of counsel or for a clear litigation-related objective." No. 4:18 Civ. 379, 2020 WL 4018846, at *2 (S.D. Tex. July 16, 2020). This Court should not extend the limited common-interest corollary to the attorney-client privilege in the unprecedented fashion Combs seeks.

## II. *Kovel* and Its Progeny Require Agent Communications Be "Necessary" for Attorney to Provide Legal Advice to Protect Against Waiver of the Privilege

Like his flawed, new common-interest argument, Combs's broader claim of privilege over the June 23 Messages under *Kovel* fails. (Opp. at 5-6). Combs's argument incorrectly focuses on the *general* relationship between himself, Staff-1, and Ms. Geragos when he argues that Staff-1 was Combs's "primary point of contact" between himself and Ms. Geragos (Opp. at 5). Their general course of dealing is not the relevant question. The question is whether the *specific communications* claimed as privileged were "necessary, or at least highly useful, for the effective consultation between the client and the lawyer." *Kovel*, 296 F.2d at 922. The June 23 Messages were not.

Combs first attempts to circumvent *Kovel*'s holding by arguing that this Court should apply the opinion of a treatise author that "the question should be not whether the third person is necessary, but whether he or she is helpful to the interests of the lawyer-client relationship." (Opp. at 6 (quoting 3 Weinstein's Federal Evidence § 503.15 (2024) ("Weinstein"))). But Combs ignores that Weinstein recognizes that interpretation conflicts with *Kovel*. *See* 3 Weinstein's Federal

---

[1] [redacted]

Evidence § 503.15 n.19 ("[B]ut see *Cavallaro v. Untied States*, 284 F.3d 236, 246-49 (1st Cir. 2002) (attorney-client privilege did not protect communications with or documents disclosed to accounting firm, because party failed to show that accountants were 'necessary, or at least highly useful,' for effective consultation between client and lawyer; citing Weinstein's)"); *see also Cavallaro*, 284 F.3d at 247-48 (following *Kovel*).

The *Kovel* rule that a communication be "necessary, or at least highly useful" sets a high bar for non-lawyer communications to reach, as the Second Circuit has stated in both *Kovel* itself and reaffirmed in *Ackert*, 169 F.3d at 139-40. In *Kovel*, the Court explained that the privilege could theoretically cover an accountant employed by the law firm, so that the lawyer could make sense of the complex financial documents presented by the firm's client in a tax fraud case. *Kovel*, 296 F.2d at 922. The accountant "interpret[s] [the information] so that the lawyer may better give legal advice." *Id.* As the Second Circuit later elaborated in *Ackert*, "[i]f a client and attorney speak different languages, an interpreter could help the attorney understand the client's communications without destroying the privilege. *Kovel* recognized that an accountant can play a role analogous to an interpreter in helping the attorney understand financial information passed to the attorney by the client." 169 F.3d at 139.

*Ackert* relied on this "interpretation/translation" understanding of the "necessary, or at least highly useful" rule to hold that, the privilege did not apply, as Paramount's in-house lawyer reached out to its investment banker not to "translate or interpret information given to [the lawyer] by his client. Rather, [the lawyer] sought out [the investment banker] for information Paramount did not have about the proposed transaction and its tax consequences." *Id.* at 139-40 ("Because [the banker's] role was not as a translator or interpreter of client communications, the principle of *Kovel* does not shield his discussions with [the lawyer]."). Combs thus errs again when he claims the Government's interpretation of *Kovel* is "unsupported by any binding authority."

Similarly, Combs errs in contending that the district court opinions applying *Kovel*'s necessity requirement are distinguishable because they rely on New York state law, not federal common law. (Opp. at 6 n.5). Those decisions expressly grounded their reasoning in *Kovel*, not some particular facet unique to New York State common law. *See Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, No. M8-85 (WHP), 1999 WL 378337, at *2 (S.D.N.Y. June 10, 1999) (noting, under *Kovel* and *Ackert*, that the "'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications"); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013) (public relations firm was not "necessary to facilitate communications" between client and lawyer, "as in the case of a translator or an accountant clarifying communications between an attorney and client" (citing *People v. Osorio*, 75 N.Y.2d 80, 84 (1989) (in turn citing *Kovel*, 296 F.2d at 921-22))); *accord Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 54-55 (S.D.N.Y. 2000).

Secretaries can fall within the scope of *Kovel* protection in appropriate circumstances, and the Filter Team does not argue or "suggest" that the June 23 Messages were not privileged because Staff-1 acted as a "mere secretary." (Opp at 5). To the contrary, the Filter Team's opening brief cited *Abbott Labs. v. Airco, Inc.*, as an example of a case where privilege applied to a secretary's notes because the notes "transmit[ted] legal advice from" in-house counsel to a company

executive, or were "requests to [counsel] for such advice." No. 82 C 3292, 1985 WL 3596, at *3-4 (N.D. Ill. Nov. 4, 1985) ("All of the documents indicate that [the secretary] authored the notes at the behest of [the executive] seeking legal advice, [or the attorney] imparting legal advice.").

The problem for Combs, however, is that the June 23 Messages themselves—specifically the voice note and the photograph of Device-1—do not contain information that Staff-1 needed to interpret or translate so that Ms. Geragos could provide legal advice on Combs's behalf. That makes this case akin to *Nat'l Educ. Training Grp.*, where the investment banker note-taker was not the person intermediating directly on that conversation between the attorney and the client, such that they were not "necessary to clarify, facilitate or improve" the attorney's comprehension of attorney-client communications. 1999 WL 378337, at *4. All Combs asked Staff-1 to do was give him Ms. Geragos's phone number. Like the jail call in *Mejia*, that telephone-operator role does not mean Combs's communications were made for the "purpose" of seeking legal advice. They are not privileged.

The same is true of Combs's passing invocation of Combs Global's corporate privilege. (Opp. at 6). Combs does not dispute that the same standard applied to agents under *Kovel* applies to corporate employees under *Upjohn*. *See La Suisse, Societe d'Assurances Sur Law Vie v. Kraus*, 62 F. Supp. 3d 358, 364-65 (S.D.N.Y. 2014). Accordingly, like his other claims of privilege, this claim fails because the messages informing Staff-1 of the discovery of Device-1 were not prepared to somehow advance the "purpose" of Combs Global securing legal advice from Ms. Geragos.

At bottom, Combs ignores the Circuit's repeated exhortation that "to balance this protection of confidentiality with the competing value of public disclosure, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Krug*, 868 F.3d at 86 (quoting *Mejia*, 655 F.3d at 132); *accord Fisher*, 425 U.S. at 403 (explaining the attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.").

### III.     Conclusion

The defendant's claim of attorney-client privilege should be rejected ████
████████████████████████████████████████

                                  Respectfully submitted,

                                  MATTHEW PODOLSKY
                                Acting United States Attorney

                        By:   /s/
                                Matthew R. Shahabian
                                Assistant United States Attorney
                                (212) 637-1046

cc: Marc A. Agnifilo, Esq. (by email)
    Jason A. Driscoll, Esq. (by email)
    Anna Estevao, Esq. (by email)
    Teny R. Geragos, Esq. (by email)
    Alexandra A.E. Shapiro, Esq. (by email)