

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 3, 2025

**BY ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

   The Government respectfully writes to identify disputed evidentiary issues regarding Bryana Bongolan's testimony.

**A.  Defense Cross**

   The defense has advised the Government that they intend to cross-examine Ms. Bongolan regarding ███████████████████████ ██. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ The Government moved to preclude cross examination on each of these topics in its motions *in limine*, ██████████████████████████ ███████████████████████

   These topics are plainly improper cross-examination under Rule 608(b) as they have no bearing on the witnesses' character for truthfulness. Rule 608(b) "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." *United States v. Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (quoting *United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005)). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████.

In addition, Rule 403 requires the preclusion of the evidence. There is no probative value because each of these incidents took place years after the balcony incident in which the defendant held Ms. Bongolan up on a balcony and at least two years after Ms. Bongolan stopped spending time in the defendant's and Ms. Ventura's circle.[1] In addition, cross examination on these topics would create the need for a mini-trial on the circumstances of the incidents. They would also be unduly prejudicial, embarrassing, and inflammatory, ██████████████████████████████
████████████████████████████████████████████████████████████
██████████████████ These sensitive and irrelevant incidents have no place at this trial.

## B. Defense Exhibits

The Government objects to the following defense exhibits:

**DX 1855:** The Government understands that the defense intends to offer the first page of this exhibit. The Government objects on hearsay and Rule 403 grounds. The first page contains a text from Ms. Bongolan that appears to be the reason the defense seeks to offer this page and appears to be offered for its truth: ████████████████████ The purpose of the defense offering this text is to establish the truth of the ████████████████████████████
████████████████████████ Even if not inadmissible hearsay, the messages should be excluded based on Rule 403. They will be cumulative and unduly prejudicial, as the Government expects that Ms. Bongolan will testify that she and Ms. Ventura did drugs together and that Ms. Bongolan procured drugs for Ms. Ventura.

**DX 1856:** This exhibit is two text messages from the defendant to Ms. Bongolan, in which the defendant says, "When friends get high with each other there not supposed to let there friends fuck up and not try to stop them. Your real wack to me for that. If you gonna do k with her At least have her back" / "REAL WACK." The Government objects on hearsay and Rule 403 grounds. These are the defendant's own statements asserting that Ms. Bongolan was "wack" for letting friends—presumably Ms. Ventura—get high and "fuck up" when doing "k," i.e., ketamine. These statements are also unduly prejudicial and confusing, as they are a strong drug-related accusation from the defendant without any context. They cannot be offered for Ms. Bongolan's state of mind or the effect on her, as there she did not respond.

---

[1] The Court allowed the defense to cross examine Ms. Ventura about an assault of someone other than the defendant earlier in the trial. (Trial Tr. 344-45). In that case, the defense argued the defendant was aware of the assault and that it was relevant to his intent to coerce Ms. Ventura. (*See id.* 342-45). There is no similar argument here. Not only is there no evidence the defendant knew about these assaults or disputes, they also took place *after* the relevant time period, and thus could not be relevant to the defendant's state of mind or intent.

**DX 652 and 1875:**  These exhibits feature compromising photographs of Ms. Ventura, to which the Government objects on 401, 403, and 412 grounds.  These photographs have little to no probative value, but are unduly prejudicial, as DX 652 contains a topless photograph of Ms. Ventura and DX 1875 includes a photograph of Ms. Ventura in a wet top and without pants.  The defense can elicit the information they purport to want—evidence relating to Ms. Ventura's music career and marketing efforts, and Ms. Bangolan's involvement in it—without showing these images to the jury.  The images themselves have no relevance.

The Government also raised objections to **DX 1851, 1854, and 1858**.  The defense has not responded to the Government's objections in conferrals.  To the extent the defense attempts to offer these exhibits with Ms. Bongolan, the Government preserves its right to object.

## C.  Government Exhibits

The Government understands that the defense objects to the introduction of Government Exhibits 3S-105 and 3S-106.  Although the Government has asked, the defense has not provided a basis for an objection.  Both exhibits are photographs that are relevant to events that the Government expects Ms. Bongolan to testify about.  Specifically, GX 3S-105 is a social media post containing a photograph from a photoshoot in April 2016 in which Ms. Bongolan took photos of Ms. Ventura and one of Ms. Bongolan's friends.  Ms. Bongolan will testify that on the day of this shoot, which took place in the backyard of the defendant's Malibu house, the defendant threatened to kill Ms. Bongolan.  Similarly, GX 3S-106 is a second social media post with a photograph of Ms. Bongolan and Ms. Ventura on a shopping trip in late April 2016.  The Government expects that Ms. Bongolan will testify that when they were out shopping, the defendant texted and called Ms. Ventura multiple times, including sending her a list of places that had been that day, although Ms. Bongolan understood that neither she nor Ms. Ventura had told the defendant where they had gone.  These exhibits are probative because they provide corroboration for Ms. Bongolan's account and give the jury a visual for the incidents.  There is no prejudice apparent from the social media posts, and the defense has articulated none.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:  ___/s_____
Maurene Comey / Meredith Foster /
Emily A. Johnson / Christy Slavik /
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284

cc:    Counsel of record (by ECF)