

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 9, 2025

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

    The Government respectfully writes in opposition to the defendant's most recent motion for a mistrial, accusing the Government of intentionally eliciting perjured testimony from Casandra Ventura and Bryana Bongolan and for improperly eliciting testimony from Mia regarding her interactions with law enforcement related to the defendant. (Dkt. 381) ("Mot."). For the reasons described below, the motion is baseless and should be swiftly rejected.

    **A.   Applicable Law**

    For a mistrial to be warranted based on perjury by a Government witness, a defendant must show that (1) "the witness actually committed perjury"; (2) "the alleged perjury was material"; (3) "the government knew or should have known of the perjury at [the] time of trial"; and (4) "the perjured testimony remained undisclosed during trial." *United States v. Josephberg*, 562 F.3d 478, 494 (2d Cir. 2009) (quoting *United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000)); *see also United States v. Barcelo*, 628 F. App'x, 36, 40 (2d Cir. 2015) (applying this standard in affirming denial of mistrial). Perjury is not merely inaccurate testimony, but rather "requires that a witness believe that the testimony he gives is false." *United States v. Lighte*, 782 F.2d 367, 372 (2d Cir. 1986). A witness commits perjury only "if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *see also United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001) ("Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury."); *United States v. Manzano-Excelente*, 101 F.3d 1393, at *2 (2d Cir. 1996) (finding that "confused and even inaccurate answers," as well as an "inability to remember," do not constitute "intentional falsity"). "Differences in recollection do not constitute perjury . . . and when testimonial inconsistencies are revealed on cross-examination, the 'jury is entitled to weight the evidence and decide the credibility issues for itself.'" *Josephberg*, 562 F.3d at 494 (quoting *United States v. McCarthy*, 271 F.3d 387, 399 (2d Cir. 2001)).

### B. Discussion

The defendant's instant motion for a mistrial—his third—fails to establish any of the necessary elements to obtain a mistrial based on perjured testimony. *First*, the defense failed to show that either Ms. Ventura or Ms. Bongolan committed perjury by willfully providing false testimony—the "threshold element" necessary for a mistrial to be appropriate. *Manzano-Excelente*, 101 F.3d 1393, at *2. *Second*, even if either individual intentionally testified falsely—which they did not—any purported falsities were fully explored on cross examination and thus did not remain undisclosed during trial. *Third*, the Government was certainly not aware it was eliciting any allegedly false testimony nor can the defendant colorably claim otherwise. *Fourth*, the testimony as to the details of the balcony incident is immaterial to the jury's ultimate question of whether the defendant is guilty of the charged crimes. Accordingly, Ms. Ventura and Ms. Bongolan's testimony provides no support for the defendant's motion. Nor does Mia's testimony regarding her personal observations of police officers' reactions to the defendant. This testimony, which is unrelated to the other assertions underlying the defendant's motion, was properly elicited as it is directly relevant to her state of mind in deciding whether to disclose the defendant's abuse.

### 1. Ms. Ventura's Testimony Does Not Provide a Basis for a Mistrial

Ms. Ventura's testimony regarding her memory of the balcony incident was not perjured. Ms. Ventura testified on both direct and cross examination that she awoke in the early morning hours to see the defendant bring Ms. Bongolan over her balcony's railing and throw her on Ms. Ventura's patio furniture. (Tr. 802-03, 1069). On cross-examination, the defense showed Ms. Ventura DX 1340 (now in evidence as GX C-361-C) and pressed Ms. Ventura on whether the text exchange she had with Ms. Khorram showed that Ms Ventura "learned about this incident on the balcony after the fact" rather than observing it in real time. (Tr. 1071). In response, Ms. Ventura stated, "I saw what I saw."[1] (*Id.*).

Ms. Ventura truthfully testified to her memory of the balcony incident, and the defendant can cite to nothing indicating that Ms. Ventura intentionally provided false testimony. S*ee Lighte*, 782 F.2d at 371. As an initial matter, both GX C-361-C and Ms. Ventura's testimony establish that the balcony incident occurred and Ms. Ventura's personal knowledge of the same. The relevance of this incident relates in substantial part to Ms. Ventura's knowledge of the incident

---

[1] Ms. Ventura also told the defense on cross examination that the Government had not shown her the text exchange in evidence as GX C-361-C in preparation for trial. (Tr. 1071). This statement was not correct, as this document was among the many thousands of pages of material Ms. Ventura reviewed in advance of trial. (*See* 3501-045, at 7, 10). Ms. Ventura's failure of memory is hardly material, however, and it certainly does not constitute perjury that Ms. Ventura did not recall every communication she reviewed in the months she spent preparing to testify. *See Dunnigan*, 507 U.S. at 94. Moreover, as the defense is aware, Ms. Ventura said precisely the same thing when she was shown the text thread in evidence as GX C-361-C in a preparation meeting as she did during her testimony about her memory of the balcony incident. (*See* 3501-045, at 10

and its effect on her state of mind and the evidence is consistent on this point. The defendant's contention that Ms. Ventura committed perjury, however, rests on his assumption that every statement in GX C-361-C both relates to the balcony incident and represents an accurate description of the balcony incident. But as Ms. Ventura pointed out on cross examination, Ms. Ventura's text that she "just found out some crazy shit" may or may not have related to Ms. Bongolan's experience. (Tr. 1070 ("Q: Did you tell Ms. Khorram that you had just learned something crazy? A: Well . . . I saw that I did text that. I don't know if that's what I was referring to, because a lot of crazy things happened.")). In addition, even if Ms. Ventura was referring to Ms. Bongolan's experience on the balcony in that portion of her message to Ms. Khorram, Ms. Ventura could have been referring to aspects of the incident that Ms. Ventura never testified to having seen herself, such as Ms. Bongolan being "choked" and having her feet "dangled" off the balcony. (GX C-361-C; Tr. 802-03). And based on Ms. Ventura's overall testimony, it would also be reasonable to infer that, in or around 2016, Ms. Ventura would not have been candid about all details of what she had directly witnessed in speaking with one of the defendant's closest employees. Finally, and independently fatal to the defendant's claim here, to the extent that Ms. Ventura's testimony could be considered inconsistent with GX C-361-C, the defense already cross-examined Ms. Ventura on these perceived inconsistencies before the jury. Likewise, the defense can make similar arguments to the jury, who can weigh the evidence and make credibility determinations. *See Josephberg*, 562 F.3d at 494. The bottom line is that Ms. Ventura's truthful account of her memory, which may or may not align perfectly with a text message she sent to one of the defendant's closest associates and which was the subject of cross-examination, simply does not amount to intentionally false testimony and does not support the defendant's motion for a mistrial.

### 2. Ms. Bongolan's Testimony Does Not Provide a Basis for a Mistrial

Ms. Bongolan also did not commit perjury. She explained that in or around September 2016, she was sleeping in Ms. Ventura's living room with her girlfriend, when the defendant banged on the door. (*See* Tr. 4281-83). Ms. Bongolan woke up and hid her girlfriend in the bathroom before going out to the balcony. (Tr. 4283). The defendant then got into the apartment, came up behind Ms. Bongolan, and held her up on the seventeenth-floor balcony. (Tr. 4284-85). Ms. Bongolan testified that her feet were on the balcony railing and that she was pushing back against the defendant, trying not to slip. (Tr. 4286). As that was happening, the defendant yelled at her multiple times, "You know what the fuck you did." (Tr. 4286-87). The defendant then threw her onto the balcony furniture, and she was injured as a result. (Tr. 4287). Ms. Bongolan testified that as she was falling on the furniture, she heard Ms. Ventura's voice coming from near the balcony door, asking, in sum and substance, if the defendant had hung Ms. Bongolan over the balcony. (Tr. 4288). When pressed as to what exactly Ms. Ventura saw, Ms. Bongolan said she did not know what Ms. Ventura saw and could not "speak for her." (Tr. 4448). Ms. Bongolan explained that although she did not remember all the details of the night of the balcony incident, she had "no doubt" that the defendant held her up on the balcony. (Tr. 4449, 4500-01). She further explained that every time she talked with the Government about the balcony incident, she discussed the main points: that the defendant held her up, screamed at her, and threw her on the balcony furniture. (Tr. 4502).

The defendant has not shown that any of this testimony was demonstrably false, let alone intentionally so. Instead, he focuses on the metadata associated with a photograph of a bruise on Ms. Bongolan's leg. The metadata associated with that photograph indicates that the photograph was taken on September 26, 2016 at 9:45 a.m. (GX 3S-102-A). Ms. Bongolan stated that she took this photograph on the day of the balcony incident, and that it was taken around the date and time listed in the metadata, (Tr. 4290-91), but that she did not have an independent memory of the exact date of the balcony incident, (Tr. 4505-06).

The defendant argues that Ms. Bongolan perjured herself because he was on the east coast, not in Los Angeles, on September 26, 2016. (Mot. at 3). But potentially misremembering a date is far from perjurious testimony. Not only did Ms. Bongolan not affirmatively state that the balcony incident took place on September 26, 2016 or that she took the photograph on that particular date, she also qualified her testimony several times, explaining that she did not remember "all the details" of the night and that she did not have an "independent memory," apart from her phone's metadata, about the date of the incident. (Tr. 4505-06). If the defendant was in fact in New York on September 26, 2016, it is possible that the phone's metadata did not reflect when the photograph was originally taken or that Ms. Bongolan misremembered when exactly she took the photograph. This kind of "confusion, mistake, or faulty memory," especially about an incident that happened nearly a decade ago, is exactly the kind of testimony that the Second Circuit has held to not be perjurious. *Dunnigan*, 507 U.S. at 94. In fact, courts have held that an inability to recall particular dates or mistakes regarding such dates do not constitute materially false testimony. *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 90 (2d Cir. 2018); *United States v. Glover*, 588 F.2d 876, 879 (2d Cir. 1978); *United States v. Tuzman*, No. 15 Cr. 536 (PGG), 2021 WL 1738530, at *50 (S.D.N.Y. May 3, 2021), *aff'd*, No. 21-2229, 2024 WL 1173044 (2d Cir. Mar. 19, 2024).

There is also no basis for a mistrial given that the defense cross examined Ms. Bongolan regarding the date of the photograph and the defendant's whereabouts that day, and will presumably argue to the jury that the defendant could not have injured Ms. Bongolan on September 26, 2016. *See Kirk Tang Yuk*, 885 F.3d at 90 ("[E]ven if [witness's] statements with regard to his involvement with guns and drugs, and as to the meaning of the photographs of those items, were false, the jury had sufficient information on those issues to evaluate [the witness's] credibility: [defense] counsel cross-examined [witness] about those issues, specifically."); *Zichettello*, 208 F.3d at 102 (refusing to reverse conviction based on alleged perjury where jury was "aware of . . . dispute" about witness's testimony, and defense had "ample opportunity to rebut [that] testimony and undermine his credibility" and to "argue[] to the jury that their version" of events was correct); *Tuzman*, 2021 WL 1738530, at *50 (denying motion for new trial where defense counsel cross-examined witness about inconsistency regarding date and "cited it in summation as a reason to discount [witness's] testimony").

The defense argues that the Government improperly objected and asked for sidebars when it "expose[d] the perjury on cross-examination." (Mot. at 4). But there was nothing improper about the Government's objections. The first of the sidebars the defense cites was called by the Court, not the Government—after the defendant was inappropriately nodding to the jury during cross examination. (Tr. 4481-82). The second sidebar was requested by the Government after the defense repeatedly mischaracterized Ms. Bongolan's testimony as to the date of the balcony

incident, (Tr. 4488-90).[2] As explained at the sidebar, the Government had no objection to the defense directly asking Ms. Bongolan if the balcony incident occurred on September 26, 2016, but it could not permit the defense to mischaracterize Ms. Bongolan's testimony regarding the date. (Tr. 4491). In addition, contrary to the defense's aspersions, the Government did not object when the defense attempted to impeach Ms. Bongolan using hotel records reflecting a September 24-29, 2016 hotel reservation in New York. (Tr. 4486-88).

The defense has similarly failed to show that the Government was aware of any perjured testimony, that such alleged perjured testimony was material or that it remained undisclosed during trial. As Ms. Bongolan mentioned on her direct examination, the bruise photograph was taken "around" September 26, 2016, and GX C-361-C, a screenshot of text messages taken on September 30, 2016, discussed the balcony incident. Ms. Bongolan also provided the Government with records of a chiropractor appointment on September 30, 2016, as well as a photograph of her neck and back that appears to have been saved on her phone that same day, (GX 3S-101-A). This evidence, taken together, supports the Government's understanding—now and at the time the evidence was introduced at trial—that the incident on the balcony occurred, and that it occurred no later than September 30, 2016, when Ms. Khorram and Ms. Ventura exchanged text messages about it. The evidence introduced by the defense during their cross-examination of Ms. Bongolan does not undermine that position and certainly does not establish that the Government knew its position was false. Further, the defense provided potential impeachment exhibits *ex parte* to the Court—presumably regarding the date of this incident—but chose not to provide them to the Government in advance of Ms. Bongolan's testimony. The defense cannot have it both ways: impeaching Ms. Bongolan as to the date and now moving for a mistrial on the basis that the Government knowingly elicited false testimony based on documents the defense chose to withhold.

---

[2] The Government's objections came at the end of a cross-examination that was triple the length of the direct examination. During this lengthy cross-examination, counsel repeatedly asked questions that were improperly argumentative in tone and content and included commentary suggesting or stating that Ms. Bongolan was lying, (*see, e.g.*, Tr. 4361 ("Q. So he just walked in the door with a knife? A. I don't know. Q. You're not sure? A. I'm not sure. Q. You telling the truth? A. Yes, ma'am. Q. You remember telling this story before? MS. SMYSER: Objection. THE COURT: Sustained. Q. Are you being honest? MS. SMYSER: Objection. THE COURT: Sustained.")), which the Court recognized, (Tr. 4371-73). In addition, defense counsel repeatedly asked questions without a good faith basis to do so, by mischaracterizing Ms. Bongolan's testimony and the Section 3500 material. (*See, e.g.*, Tr. 4335-36 (asking if Ms. Bongolan "would agree with me that you and Cassie did drugs every day," to which Ms. Bongolan answered, "Not every day," followed by defense counsel showing the Ms. Bongolan 3508-029, page 29, which states, "███████████████████████████" in an unsuccessful attempt to refresh her recollection, and then asking a question that began, "So besides you and Cassie getting high daily or weekly." This resulted in a sustained objection); Tr. 4394 (asking "[i]sn't it true that just two days ago, you told the prosecution you just don't recall *the* details of the balcony allegation," where the 3500 material actually reflected that Ms. Bongolan said ███████████████████████████. Had defense counsel not engaged in this kind of improper cross-examination of a victim-witness, which the Government has already raised as an issue, (Tr. 3704-06), there would have been fewer objections.

In addition, while Ms. Bongolan and Ms. Ventura's testimony is relevant to Ms. Ventura's state of mind and fear of the defendant, the allegedly perjured testimony is not material. Even assuming that Ms. Bongolan or Ms. Ventura perjured herself as to the details of the balcony incident (which they did not), the court cannot find, as a matter of law, that the jury would likely acquit the defendant on that basis. *United States v. Wallach*, 935 F.2d 445, 459 (2d Cir. 1991), *abrogated on other grounds by Ciminelli v. United States*, 598 U.S. 306 (2023). For this reason, and those described above, the Court should deny the defendant's motion for a mistrial.

### 3. Mia's Testimony Does Not Provide a Basis for a Mistrial

In a last-ditch effort to support their mistrial motion, the defendant argues that the Government's questioning of Mia regarding two incidents in which she personally observed that the police did not enforce a penalty or continue to investigate was improper because it shows "the government's real purpose in its questioning of a different witness, fire inspector, Lance Jimenez. The defense argues that the Government sought to improperly suggest that "Mr. Combs caused the destruction of the fingerprints" and "constitutes another instance of prosecutorial misconduct." (Mot. at 5). The defendant is wrong, and his convoluted reasoning does not warrant a mistrial.

The Government's questioning of Mia was unconnected to the line of questioning of Inspector Jimenez, whom Mia has never met or interacted with. The Government asked Mia why she did not go to the police after the defendant sexually assaulted her, and she responded, "I didn't even think—that wasn't even like an option. I didn't even think that was an option." (Tr. 3344-45). The Government then asked Mia if she had previously had any interactions with the police to support that belief, and she testified, without objection, to two personal interactions she had with the police that involved the defendant. (Tr. 3345-46). The defense extensively cross-examined Mia as to these sexual assaults, suggesting—and sometimes explicitly stating—that she was lying about them, and the defense even asked her specifically about when she first disclosed the assaults and to whom, (Tr. 3750). Mia's testimony establishes one of the actual reasons she did not disclose the defendant's misconduct to law enforcement—namely her reasonable belief that the defendant was above the police, which is relevant to her state of mind and her credibility. The defense then confirmed the testimony's relevance by extensively questioning why Mia had not previously disclosed the defendant's abuse. In short, Mia's truthful testimony regarding her state of mind at the time cannot justify a mistrial.

      For these reasons, the Government respectfully requests that the Court deny the defendant's motion for a mistrial.

                Respectfully submitted,

                JAY CLAYTON
                United States Attorney

          By:   /s
                Maurene Comey / Meredith Foster /
                Emily A. Johnson / Christy Slavik /
                Madison Reddick Smyser / Mitzi Steiner
                Assistant United States Attorneys
                (212) 637-2324/-2310/-2409/-1113/-2381/-2284

cc:     Counsel of record (by ECF)