

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

June 24, 2025

**VIA EMAIL**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs, Inc.*, 24-cr-542 (AS)

Dear Judge Subramanian:

We submit this letter in further support of our requested edits to the Court's proposed jury charge, and to elaborate on some issues referenced in comment bubbles in our requested edits and objections to the government's redline edits.

### A. California Penal Law Section 137(a) – Racketeering Act 3

The defense requests a modification to the proposed charge regarding Racketeering Act 3—bribery in violation of California Penal Law Section 137(a). The requested modification clarifies that a "bribe" within the meaning of the statute means something offered with the corrupt intent to unlawfully influence the *content* of the testimony or information of the person to whom the bribe is given, where the person will be giving testimony or a report to law enforcement. It further clarifies that an attempt to prevent a person from appearing or reporting altogether is not sufficient.

Section 137(a) "punish[es] attempts to influence *the content* of testimony given, as distinguished from efforts to prevent a victim or witness from appearing at all." *People v. Fernandez*, 131 Cal. Rptr. 2d 358, 361 (Cal. Ct. App. 2003). The statute is "narrowly construed" to require an understanding that testimony or a law enforcement report "will be given," with the perpetrator intending "to *influence* the testimony" or report. *Id.* at 362. The government has previously argued that section 137(a) is broader in scope. *See* Gov. 3/19/25 Crime Fraud Mot. Reply at 5-6. However, the government's arguments misconstrued the statute and relevant precedent. The government cited a California Supreme Court decision from 1982, *People v. Pic'l*, 31 Cal. 3d 731 (1982), ignoring more recent California appellate court decisions such as *People v. Fernandez*, which the California Supreme Court favorably cited as recently as last year. *See People v. Reynoza*, 15 Cal. 5th 982 (2024) (discussing *Fernandez* and citing its observation that "'[t]he Legislature has taken pains to distinguish the various methods' of dissuasion" in part I, title 7, chapter 6 of the Penal Code (§§ 132-140)). In fact, *People v. Pic'l* expressed doubt as to the correct interpretation of "influence" in §137. *See* 31 Cal. 3d at 742 n.5. Its conclusion was premised on its

Hon. Arun Subramanian
June 24, 2025

interpretation of a separate statute, California Penal Code Section 136½, *see id.* at 742, which was later repealed in 1987.

### B. Sex Trafficking Instructions Generally

The defense strenuously objects to the government's proposed additions to the sex trafficking instructions. The Court's proposed charge regarding Counts Two and Four tracked the language of the statute and available pattern instructions. The Court's current proposed charge would properly and "adequately inform the jury of the law," *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014), and is "sufficiently balanced," *United States v. Dove*, 916 F.2d 41, 47 (2d Cir. 1990). The government seeks to undo the Court's effort by proposing voluminous one-sided argumentative additions to the charge that are fundamentally "unbalanced" and "only point[] towards how guilt is proved." *Id.* at 46-47. The government's proposed additions are improper, legally unsupported, and would constitute error if charged to the jury. The Court should reject the government's request to inject "inaccuracy [and] imbalance" into the charge, and to argumentatively inject the government's theory of the case into the charge. *Kopstein*, 759 F.3d at 173.

The government cites no precedential authority stating that its proposed one-sided additions to the sex trafficking instructions are legally appropriate or required. Indeed, it cites no authority at all stating as much. The government's cited Second Circuit caselaw does not support any of its proposed additions to the charge. In fact, *United States v. Rivera* found error in the district court's instructions directing the jury to "focus[] on 'the particular Jane Doe.'" 799 F.3d 180, 186 (2d Cir. 2015). If anything, *Rivera* pointed to Sand's instruction—the instruction the Court and the defense propose here—as the legally correct instruction. *See id.* at 187 (citing 2–47A Modern Federal Jury Instructions—Criminal P 47A.03, Instruction 47A–21). That is the instruction the Court should give here. In other words, *Rivera* supplies no authority for any of the government's proposed additions to the sex trafficking charge and only reaffirms that Sand is the legally correct instruction. The unpublished *United States v. Shine* decision reviewed a charge under a plain error standard where the defendant did not object to the erroneous language, and the decision merely reaffirmed *Rivera* and again cited Sand as providing the legally correct instruction. No. 20-314, 2022 WL 761520, at *3 (2d Cir. Mar. 14, 2022). And *United States v. Purcell* merely considered the sufficiency of evidence. 967 F.3d 159, 193 (2d Cir. 2020). The decision is simply irrelevant in this context and did not endorse any of the charging language proposed by the government. *United States v. Raniere* similarly assessed only the sufficiency of the evidence and did not endorse the government's proposed charging language. In fact, the Court observed that "[t]he statute defines 'coercion'" as well as "serious harm," and did not suggest that additional gloss on these definitions was appropriate. 55 F.4th 354, 366 (2d Cir. 2022). The government further cites *United States v. Marcus*, but that decision vacated and remanded a sex trafficking conviction based on an erroneous jury charge. 628 F.3d 36, 44 (2d Cir. 2010) (further observing that jury instruction stating "consensual … activities alone could not constitute the basis for a conviction under the sex trafficking charge" was "proper").

More broadly, nothing in these decisions directs courts to marshal the government's evidence or theory of guilt in the charge or identify and elucidate what "particular vulnerabilities" or means and methods might be at issue, or even endorses such instructions.

Page 3
Hon. Arun Subramanian
June 24, 2025

*Rivera*, 799 F.3d at 186.  Those are all questions reserved for the jury, questions that need no further instructions beyond what Sand's model charge provides.

Tellingly, in addition to Sand's model charge, every available pattern instruction from the Circuit Courts supports the Court's and the defense's initial proposed charge.  None endorses any of the language offered by the government.  *See* Fifth Circuit Pattern Criminal Jury Instructions, S1 Modern Federal Jury Instructions-Criminal 2.68; Sixth Circuit Pattern Criminal Jury Instructions, S2 Modern Federal Jury Instructions-Criminal 16.12; Seventh Circuit Pattern Criminal Jury Instructions, 18 U.S.C. § 1591(a)(1);[1] Eighth Circuit Pattern Criminal Jury Instructions, S2 Modern Federal Jury Instructions-Criminal 6.18.1591; Ninth Circuit Pattern Criminal Jury Instructions, S3 Modern Federal Jury Instructions-Criminal 20.25A; Eleventh Circuit Pattern Criminal Jury Instructions, S3 Modern Federal Jury Instructions-Criminal 63.  That should be a decisive reminder that the government's additional proposed language is legally incorrect and would constitute error if injected into deliberations here.

The government's proposed additions to the charge are erroneous and unsupported for another reason: the majority of the terms used in the sex trafficking statute are ***statutorily defined***.  *See* 18 U.S.C. § 1591(e); *see also* 18 U.S.C. § 1591(b)(1) (penalty provision requiring that "the offense was effected by means of force, threats of force, fraud, or coercion *described in subsection (e)(2)*") (emphasis added).  There is simply no reason to depart from the language Congress itself prescribed to govern enforcement of the statute—and particularly no reason to do so without any precedential authority whatsoever.

The government further proposes instructing the jury that "it is not required that a commercial sex act occur."  The proposal is unsupported by any binding authority, is legally incorrect, and conflicts with the indictment.  Both the language of the statute and its penalty provision suggest that a commercial sex act must occur.  *See* 18 U.S.C. § 1591(a)(1) (means "will be used to cause the person to engage in a commercial sex act"); 18 U.S.C. § 1591(a)(1) (penalty provision requiring that "the offense *was effected* by means of force, threats of force, fraud, or coercion) (emphasis added).  And the government's proposal is inconsistent with the indictment, which charged Counts Two and Four on the theory that "COMBS … willfully caused [the victims], to engage in commercial sex acts, knowing and in reckless disregard of the fact that [the victims were] engaging in commercial sex acts as a result of force, fraud, and coercion." Indictment ¶¶17, 19.  The government has separately charged attempt to violate the statute, *see* 18 U.S.C. § 1594(a), and the Court proposes instructing accordingly.  That is all that is needed, and the Court should not suggest in the substantive charge that no commercial sex act is required to convict.

### C.  Section 1591(d) – Racketeering Act 6

The Court should not charge the jury on 18 U.S.C. § 1591(d) because it is unconstitutional as written, and because including a charge on this provision would be a

---

[1] https://juryinstruction.ca7.uscourts.gov/jury-instructions/instructions/criminal/Bauer_pattern_criminal_jury_instructions_2022updates.pdf.

Hon. Arun Subramanian
June 24, 2025

constructive amendment of the indictment in violation of the Fifth Amendment's Grand Jury Clause.

     1. Section 1591(d) violates both the First and Fifth Amendments as written. The subprovision criminalizes merely "interfer[ing] with or prevent[ing] the enforcement" of the sex-trafficking statute "in any way." This capacious language sweeps in a breathtakingly vast range of completely innocent conduct. Consider, for example, the alleged sex-trafficking victim who seeks advice about whether to press charges against her significant other and ultimately decides against doing so—or the close friend the victim consulted before making that decision. This is not a far-fetched scenario: one of the government's potential witnesses for this trial, Gina Huynh, voluntarily decided against testifying or pressing charges against Mr. Combs. Does this really constitute "interference" with or "preventing the enforcement" of the sex-trafficking statute? Indeed, even if the alleged victim chose not to report an incident because her partner apologized and she decided to stay in the relationship after their discussion, should either of them be subject to punishment of up to 25 years' incarceration because the government had a different view of the situation?

     Such breathtakingly broad applications of §1591(d) cannot be constitutional. Although true obstruction can, of course, be prosecuted when properly defined to avoid serious constitutional problems, here the government seeks to impose the "opprobrium and stigma of a criminal conviction" under an impossibly vague statutory provision for conduct that no person would fairly know or understand to be illegal. *Reno v. ACLU*, 521 U.S. 844, 872 (1997). This raises serious "concerns about (1) fair notice and (2) arbitrary and discriminatory prosecutions." *Skilling v. United States*, 561 U.S. 358, 412 (2010); *see also United States v. Davis*, 588 U.S. 445, 451 (2019) (discussing dangers of vague statutes and holding criminal statute unconstitutionally vague). The Supreme Court has long emphasized the need to provide "fair warning . . . to the world in language that the common world will understand, of what the law intends to do if a certain line is passed," and has construed other obstruction statutes narrowly to avoid such problems. *E.g.*, *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005). Section 1591(d)'s "harsh penalties"—i.e., up to a 25-year prison sentence—only heighten these vagueness problems. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 71-72 (1994). The subprovision's remarkably broad sweep may also have a powerful First Amendment chilling effect by "caus[ing] speakers to remain silent," *Reno*, 521 U.S. at 872, rather than engage in completely innocent and wholly protected speech with their friends, family members—and lawyers.

     Indeed, some of § 1591(d)'s potential applications threaten to gut the Sixth Amendment right to counsel—the very "foundation for our adversary system." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). Suppose that an individual, on the advice of his lawyer, decides to exercise his constitutional right against self-incrimination or invoke the attorney-client privilege and refuse to speak with law enforcement. Read literally, both the lawyer and her client could be charged under § 1591(d) for "interfer[ing] with or prevent[ing] the enforcement" of the statute. Or what if the lawyer, realizing that her client is the target of a § 1591 investigation, seeks to avoid charges through negotiations or proffer sessions with the prosecutor. How about if the lawyer interviews potential defense witnesses who may help her client at trial, or recommends that that an unrepresented witness obtain counsel before speaking to the government, knowing that a good lawyer would recommend that the witness invoke his or her Fifth Amendment right? It takes

Hon. Arun Subramanian
June 24, 2025

little work to imagine more examples that would likewise threaten an individual's fundamental right to "have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

Section 1591(d)'s constitutional problems are accentuated by its lack of any mens rea requirement. Other similar statutes require the defendant to, for example, "corruptly persuade[]" another person "with intent to" obstruct justice in various ways. 18 U.S.C. § 1512(b). By contrast, § 1591(d) punishes mere "interference" with or "preventing the enforcement" of the sex-trafficking statute without imposing any mens rea at all. Even the very subprovision of the sex-trafficking statute with which the government has charged Mr. Combs in two standalone counts, § 1591(a), expressly requires a mental state—the defendant must "know[] . . . [or be] in reckless disregard of the fact that means of force, threats of force, fraud, coercion" will be used to cause alleged victim to engage in commercial sex acts. Not so with § 1591(d). And when Congress omits words from one statute but includes them elsewhere in the same or a related statute, "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).

2. Charging the jury on Section 1591(d) would also effect a constructive amendment of the indictment in violation of the Fifth Amendment's Grand Jury Clause.

It is clear from the indictment, including Counts Two and Four and the RICO Special Sentencing Factor in Count One, that Section 1591(d)—unlike Section 1591(a)(1)—was not charged and thus not considered by the grand jury. Permitting a conviction on the basis of § 1591(d), therefore, would constructively amend the indictment.

"[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). And when it comes to RICO offenses, when "the government charges a particular pattern of racketeering, … its choice has consequences." *United States v. Basciano*, 599 F.3d 184, 203 (2d Cir. 2010). Because the pattern is an essential element of the offense, "[o]nce a grand jury has charged a pattern of racketeering … only the grand jury, not the court, may decide whether an individual defendant should be charged with a different pattern …." *Id.* at 206 (citing *Stirone*).

For Mr. Combs to face the prospect of a conviction based on § 1591(d) that complied with the Fifth Amendment, the government needed to supersede again to include that provision. It failed to do so.

The government has argued that the jury need only agree to the "types of predicate racketeering acts" that Mr. Combs agreed to commit, not that "any particular act was in fact committed." Gov't Apr. 25 Ltr. 3-4. But this argument is wholly unresponsive to the point that only the grand jury—not the prosecutor—is constitutionally empowered to enlarge the list of *statutory offenses* for which a defendant may be convicted. *See Stirone*, 361 U.S. at 215-16. Section 1591(d) is not merely a new "act" or "occasion" of alleged criminality—it is an entirely new theory of guilt, codified in a federal felony offense that only the grand jury can initiate. Even the case the government relies most heavily on acknowledges that the defendant must have agreed to violations of "specific statutory provision[s]." *United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011). The Court should reject the government's eleventh-hour attempt to bring a

Hon. Arun Subramanian
June 24, 2025

new provision into this case—a tactic that would be highly problematic even if the provision *weren't* blatantly unconstitutional, *see supra* Point A.1.

### D. Voluntary Intoxication

The voluntary-intoxication defense applies to more than just specific intent crimes. "Intoxication is a defense to a crime" so long as it "negatives a required element of the crime." 2 LaFave, Subst. Crim. L. § 9.5(a) (3d ed. 2024); *accord, e.g.*, *United States v. Dupre*, 462 F.3d 131, 137, 137 n.8 (2d Cir. 2006). Any crime that requires intent, knowledge, or willfulness accordingly "may be negatived by intoxication which negatives the required" mens rea, LaFave § 9.5(a)—even if the crime is not a specific intent crime. In particular, "if intoxication does in fact negative an intention which is a required element of the crime (*whether it be called specific intent or general intent*), the crime has not been committed." *Id.* (emphasis added). In *United States v. Odeh*, for example, the Sixth Circuit vacated a conviction and remanded because the district court erroneously excluded PTSD-related evidence and held that the crime need not require specific intent for such evidence to be relevant. 815 F.3d 968, 976-99 (6th Cir. 2016). "Regardless of whether" the crime was one of "specific or general intent," the Court explained, the "proffered testimony [was] relevant to whether" the defendant had the required mental state, and was "potentially exculpatory because it undermine[d] an element of the crime." *Id.* at 976-77; *accord, e.g.*, *United States v. Sashy*, 281 F. Supp. 2d 1241, 1245 n.1 (M.D. Ala. 2017).

Although the Second Circuit has indicated—albeit in the narrow context of the federal bank robbery statute—that voluntary intoxication may be limited to specific-intent crimes, *United States v. Sewell*, 252 F.3d 647, 650-51 (2d Cir. 2001), it has nonetheless affirmed the grant of a new trial based on the failure to instruct the jury on voluntary intoxication as to crimes such as attempted sexual abuse and attempted aggravated sexual abuse, *see United States v. Crowley*, 236 F.3d 104, 111 (2d Cir. 2000). Moreover, the Second Circuit has held that intoxication evidence is admissible "for the purpose of rebutting the prosecution's proof" of mens rea and "for the purpose of negating the intent element of a crime." *United States v. Dupre*, 462 F.3d 131, 138 n.8 (2d Cir. 2006). In any case, the intoxication evidence is highly relevant to this case even under this narrowed definition of the defense because many of the alleged crimes are specific intent crimes:

- RICO conspiracy. *See* 3 Leonard B. Sand et al., Modern Federal Jury Instructions-Criminal ¶ 52.05 (52-30) (defendant must have participated in conspiracy "with knowledge of its unlawful purpose and with the *specific intention* of furthering its objective as an associate or worker" (emphasis added) (included in Court's proposed charge)); *see also United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018); *United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009)..

- Attempt under California law, *see* Cal. Penal Code § 21a, and New York law, *see People v. Saunders*, 85 N.Y.2d 339, 342 (1995) ("An attempt is . . . an act done with the specific intent to commit some other crime.").

- Kidnapping under New York law. *See People v. Lawrence*, 255 A.D.2d 398, 399 (2d Dep't 1998) ("[S]pecific intent [is] necessary to commit the crime[] of kidnapping in the second degree."); *see also People v. Denson*, 26 N.Y.3d 179, 188-89 (2015).

Hon. Arun Subramanian
June 24, 2025

- Bribery under California law. *See People v. Ford*, 193 Cal. Rptr. 684, 686 (Cal. Ct. App. 1983) ("The various forms of bribery require specific intent."); *accord People v. Meacham*, 64 Cal. Rptr. 362, 368 (Cal. Ct. App. 1967).

- Witness tampering under both 18 U.S.C. § 1512(b)(3), *United States v. Veliz*, 800 F.3d 63, 73 (2d Cir. 2015) (§ 1512(b)(3) "requires a specific intent to interfere with the communication of information"), and possibly § 1512(c)(2), *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021) (surveying approaches in other Circuits, including at least two defining "corruptly" to include "specific intent," and adopting that definition).

- Forced labor. *See United States v. Sabhnani*, 539 F. Supp. 2d 617, 629 (E.D.N.Y. 2008) ("[F]orced labor . . . [is a] specific intent crime[].”), *aff'd* 599 F.3d 215 (2d Cir. 2010); *United States v. Garcia*, 2003 WL 22956917, at *3 (W.D.N.Y. Dec. 2, 2003) ("In order to establish a violation of § 1589, the government must prove a specific intent . . . .").

- The Mann Act under 18 U.S.C. § 2421 and § 2422. *See United States v. Perlitz*, 728 F. Supp. 2d 46, 54 (D. Conn. 2010) (analogously worded § 2423 "requires that the foreign travel be with the specific intent to engage in illicit sex" (citing *United States v. Clark*, 435 F.3d 1100, 1116 (9th Cir. 2006)); *United States v. Robinson*, 2024 WL 1513500, at *5 (D. Colo. Apr. 8, 2024) ("§ 2421 has a mens rea of specific intent."); *United States v. Niece*, 9 F.3d 110 (Table) at *5 (6th Cir. 1993) ("18 U.S.C. § 2423 is a specific intent offense"); *see also* 2 Leonard B. Sand et al., Modern Federal Jury Instructions-Criminal P 64.02 (64-9).

- Possession with intent to distribute and distribution of controlled substances. *See United States v. Heras*, 609 F.3d 101, 105-06 (2d Cir. 2010) (noting the "[s]pecific [i]ntent [e]lement of § 841(a)(1) [p]ossession [c]rimes" in context of conspiracy offense); *see also United States v. Ali*, 735 F.3d 176, 186 (4th Cir. 2013) (§ 841(a)(1) "requires specific intent to distribute a controlled substance or to possess with intent to distribute a controlled substance"); *United States v. Rivera-Donate*, 682 F.3d 120, 133 (1st Cir. 2012) (possession with intent to distribute requires proof of "the specific intent to distribute").

To accommodate certain of the government's arguments, *see* Dkt.415 at 2-3, we have proposed further modifications to the involuntary intoxication instruction.

### E. Forced Labor Under 18 U.S.C. § 1589(a) – Racketeering Act 5

The defense requests a modification to the Court's proposed instruction concerning 18 U.S.C. § 1589(a)'s mens rea requirement. Forced labor requires knowledge, and with respect to § 1589(a), the defendant must engage in the prohibited conduct knowingly *in order to* obtain the victim's labor or services specifically. In other words, the defendant must have intended to cause the victim to believe that if she stopped working for him, she would suffer the sort of serious harm that would compel someone in her circumstances to keep working to avoid that harm. It is not enough that the defendant merely "obtained or provided the labor or services of another individual" while knowingly using force or serious threats of harm.

Hon. Arun Subramanian
June 24, 2025

      The defense's requested modifications to the Court's instruction is consistent with both Sand and the relevant case law. *See* 2 Leonard B. Sand et al., Modern Federal Jury Instructions-Criminal ¶ 47A.02 (47A-15); *United States v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011) ("[S]omeone is guilty of forced labor if he intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm . . . that would compel someone in her circumstances to continue working to avoid that harm."); *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017) ("There must be evidence from which the jury could find that the employer intended to cause the victim to believe that she would suffer serious harm . . . if she did not continue to work."); *United States v. Calimlim*, 538 F.3d 706, 711-12 (7th Cir. 2008); *see also United States v. Zhong*, 26 F.4th 536, 550 (2d Cir. 2022) (citing *Muchira*); *Tegete v. Maryknoll Sisters of Saint Dominic, Inc.*, 2023 WL 2504744, at *9-12 (S.D.N.Y. Mar. 14, 2023) (citing *Dann* and *Muchira*).

### F. Immunized Witness Instruction

      The defense requests a modification to the Court's proposed immunized witness instruction. The defense's requested instruction is both recommended by Sand and consistent with binding Second Circuit precedent. 1 Leonard B. Sand et al., Modern Federal Jury Instructions-Criminal ¶ 7.01 (7-8); *United States v. Gleason*, 616 F.2d 2, 15 (2d Cir. 1979) ("[T]estimony of certain types of witnesses may be suspect and should therefore be scrutinized and weighed with care, such as . . . those who have been granted immunity"); *accord, e.g., United States v. Jacobs*, 735 F. App'x 739, 741 (2d Cir. 2018); *United States v. Dixon*, 511 F. App'x 48, 51 (2d Cir. 2013); *see also United States v. Lawrence*, 934 F.2d 868, 873 (7th Cir.1991) ("Immunized witnesses receive a benefit for their testimony, and their testimony may be colored," so it is appropriate to instruct the jury to view such testimony "with caution and great care"); *United States v. Deloach*, 530 F.2d 990, 994, 994 n.5 (D.C. Cir. 1975).

      The government previously objected to the defense's requested instruction, Dkt. 415 at 1, but not one of its arguments are responsive to the sound logic of Sand's proposed language or the precedent supporting it. And the government cites no law or other authority to support its own proposed erroneous instruction. The government merely recites the undisputed facts—which are true for every immunized witness—that the immunity orders in this case don't prevent the government from prosecuting the witnesses for perjury or based on other evidence, that immunity is contingent on truthful testimony, and that whether Mr. Combs is convicted "has no effect" on the immunity grants. *Id*.

      These are standard features of immunity orders, and yet courts nonetheless routinely give the sort of instruction Mr. Combs requests. There is no reason for the Court to deviate from this standard practice.

### G. Drug Predicate Instructions

      The defense has several proposals for and objections to the instructions for Predicate Racketeering Act 8, which alleges both the substantive offense of 21 U.S.C. § 841(a)(1) and conspiracy to commit that offense under § 846.

Hon. Arun Subramanian
June 24, 2025

      1. Mr. Combs proposes adding standard language clarifying that possession for mere personal use does not violate § 841(a)(1). This proposal is both recommended by Sand, Modern Federal Jury Instructions-Criminal ¶ 56.01 (56-11), and consistent with binding case law.

      In *United States v. Swiderski*, the Second Circuit explained that the federal drug laws distinguish between "possession with intent to distribute" and "simple possession," and that Congress intentionally "provid[ed] more severe penalties for" the former. 548 F.2d 445, 450 (2d Cir. 1977). Courts have therefore respected this distinction by making clear that "the possession of a small quantity of drugs standing alone is insufficient to prove an intent to distribute." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995) (citing *Turner v. United States*, 396 U.S. 398 (1970)).

      Mr. Combs requests an instruction that draws this bright line for the jury in a case where failure to do so could easily lead it astray. The jury must be on notice that the ample evidence of the personal use of narcotics in this case—by both Mr. Combs and others around him—does not prove the charged predicate act. As Sand explains, the jury must determine "whether the drugs in the defendant's possession were for his personal use or for the purpose of distribution." Modern Federal Jury Instructions-Criminal ¶ 56.01 (56-11). Without Mr. Combs's proposed language, the jury won't even know it needs to make this choice.

      Relatedly, Mr. Combs objects to the Court's proposal (at the government's suggestion) to instruct that "sharing drugs with friends is direct evidence that a person engaged in the distribution of controlled substances." Court's Proposed Charge 41. This theory is only a small step removed from the improper personal-use theory, and it too should never be charged to the jury.

      The Second Circuit has specifically faulted a trial court for giving a very similar instruction—i.e., that "an intent to distribute could be inferred from the mere giving of the drug 'to a friend of yours or even to your fiancée.'" *Swiderski*, 548 F.2d at 452 (holding that this error "[could not] be labelled harmless"). The Court should avoid giving an analogous instruction here because it would be unduly suggestive to the jury—particularly in a case with voluminous evidence of drug use by Combs as well as his "friends" and significant others, but no evidence of any drug dealing by them.

      The Second Circuit has repeatedly cautioned against giving "prejudicial" instructions that do not "adequately inform the jury of the law." *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014) (vacating conviction and remanding for new trial); *see also Hudson v. City of New York*, 271 F.3d 62, 71 (2d Cir. 2001) (vacating and remanding for new trial based on incorrect jury instructions). The Court can avoid that course here by declining to give the government's argumentative proposal.

      2. The Court should reject the government's request to instruct the jury on conspiracy to violate § 841(a)(1). The Court has wisely decided against instructing the jury on conspiracy offenses for the other Predicate Acts. It should do the same for Predicate Act 8, for which there is no legal or factual support for a conspiracy theory. Such an instruction would also be highly confusing to the jury—not just because of the general conceptual difficulty of comprehending a

Hon. Arun Subramanian
June 24, 2025

"conspiracy to conspire" in the context of an 18 U.S.C. § 1962(d) charge, but also because this is the only predicate for which they would be instructed on a conspiracy theory. The Court should adhere to its prior position declining to instruct on conspiracy predicates and reject the government's late-breaking request to tack on a new theory to its otherwise deficient § 841(a)(1) predicate.

In any event, if the Court does decide to charge a conspiracy theory for Predicate Act 8, it should instruct the jury that an individual's agreement to buy narcotics from a seller does not establish that the buyer joined with the seller in a conspiracy to distribute (or possess with intent to distribute) those narcotics. As the Second Circuit explained in *United States v. Brock*, such a buy-sale agreement "has no separate criminal object." 789 F.3d 60, 63 (2d Cir. 2015); *accord, e.g.*, *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009). Accordingly, evidence that one of Mr. Combs's associates purchased drugs from a dealer does not establish a conspiracy between the two to violate § 841(a)(1)—and the jury should be aware that it cannot find Predicate Act 8 was proven on this basis.

The Court should also instruct the jury that an agreement to distribute narcotics from one alleged conspirator to another also cannot be the agreement that forms a conspiracy between them—absent an additional agreement to thereafter redistribute the drugs. "An agreement that one member of a conspiracy supply another with a drug," the Second Circuit has explained, "does not comprise an agreement to distribute that drug." *United States v. Wexler*, 522 F.3d 194, 208 (2d Cir. 2008); *accord, e.g.*, *United States v. Hawkins*, 547 F.3d 66, 72-74 (2d Cir. 2008). So any evidence that drugs were passed between Mr. Combs and an alleged conspirator is insufficient, in and of itself, to establish a conspiracy to distribute drugs (or possess them with intent to distribute), and the jury should not be misled into believing otherwise.

### H.  Implicit Bias Instruction

The defense further requests that the Court give the following additional instruction on implicit bias, added to the "Improper Considerations" portion of the charge:

> The defendant and the government are both entitled to a trial free from prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.
>
> I'm also going to ask you and advise you to not decide the case based on implicit biases. Everyone, including me, has feelings or assumptions or perceptions or fears, or even stereotypes, and they're referred to as implicit biases. And you may not even be aware of them. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and to resist jumping to any conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases.

Page 11

Hon. Arun Subramanian
June 24, 2025

*See United States v. Golston*, 23-cr-632-AT (S.D.N.Y.) at Tr.346; *accord United States v. Guo*, 23-cr-118-AT (S.D.N.Y.) at Tr.5880-81; *United States v. Bright*, 18-cr-56-KPF (S.D.N.Y.) at Tr.36; *see also United States v. Freita Da Costa*, 23-cr-610-PKC (S.D.N.Y.) (giving similar instruction).

        Respectfully submitted,

        /s/Alexandra A.E. Shapiro
        Alexandra A.E. Shapiro
        Jason A. Driscoll
        SHAPIRO ARATO BACH LLP
        1140 Avenue of the Americas, 17th Fl.
        New York, NY 10036
        (212) 247-4880
        ashapiro@shapiroarato.com
        jdriscoll@shapiroarato.com

        Marc Agnifilo
        Teny Geragos
        AGNIFILO INTRATER
        445 Park Ave., 7th Fl.
        New York, NY 10022
        (646) 205-4350
        marc@agilawgroup.com
        teny@agilawgroup.com

        Anna Estevao
        HARRIS TRZASKOMA LLP
        156 West 56th St. Ste. 2004
        New York NY 10019
        (212) 970-6465
        aestevao@harristrz.com

        Brian Steel
        THE STEEL LAW FIRM, P.C.
        1800 Peachtree Street, Ste. 300
        Atlanta, GA 30309
        (404) 605-0023

        Xavier R. Donaldson
        136 Madison Ave, 6th Floor
        New York, New York 10016
        (646) 772-3334
        Xdonaldson@aol.com

Hon. Arun Subramanian
June 24, 2025

    Nicole Westmoreland, Esq.
    WESTMORELAND LAW, LLC
    132 Cone Street, Suite A
    Atlanta, GA 30303
    (404) 446-2620
    nw@westmorelandlawgroup.com