UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

SEAN COMBS,

Defendant.

24-CR-542 (AS)

SEALED ORDER

ARUN SUBRAMANIAN, United States District Judge:

On February 4, 2025, the Government moved to compel compliance with a December 2024 subpoena for Device-1, a cell phone. The Government became aware of Device-1 due to messages from June 2024 recovered from a different device. Combs refused to comply with the December subpoena and makes two arguments in response to the Government's motion to compel. First, he argues that the June 2024 messages that prompted the Government's inquiry were privileged. The Court rejected that argument in its March 11, 2025 order, filed under seal. Second, he asserts that the production of Device-1 is protected by the Fifth Amendment's privilege against self-incrimination. The Government responds to that argument by invoking the foregone-conclusion doctrine.

The Fifth Amendment allows for a "narrow privilege against the *act* of production." *United States v. Fridman*, 974 F.3d 163, 174 (2d Cir. 2020). The privilege applies when "producing documents 'tacitly concedes the existence of the papers demanded and their possession or control by the [defendant] . . . [as well as] the [defendant's] belief that the papers are those described in the subpoena." *Id.* (second alteration in original) (quoting *Fisher v. United States*, 425 U.S. 391, 410–11 (1976)). But when "'[t]he existence and location of the papers are a foregone conclusion and the [defendant] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers,' production does not run afoul of the Fifth Amendment." *Id.* (alteration in original) (quoting *Fisher*, 425 U.S. at 411). For this foregone-conclusion doctrine to apply, "the Government must establish 'with reasonable particularity' its knowledge as to '(1) [the] existence of the documents, (2) the [defendant's] possession or control of the documents[,] and (3) the authenticity of the documents." *Id.* (quoting *United States v. Greenfield*, 831 F.3d 106, 115 (2d Cir. 2016)). The Government has the burden of proof to establish a foregone conclusion, but it is unsettled whether the standard is a preponderance of the evidence or clear and convincing evidence. *See United States v. Smith*, 706 F. Supp. 3d 404, 409 n.1 (S.D.N.Y. 2023). The Court here applies a clear-and-convincing evidence standard.

Before applying these factors to this case, it is necessary to consider what the Fifth Amendment privilege applies to in these circumstances. As the Supreme Court made clear nearly five decades

ago in *Fisher*, an individual "cannot avoid compliance with [a] subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else." 425 U.S. at 410; *see also, e.g.*, *Fridman*, 974 F.3d at 174 ("The [*Fisher*] Court held that documents voluntarily prepared prior to the issuance of a summons were not compelled testimony, so there was no Fifth Amendment protection for the *contents* of those records."). Instead, the focus is on what the act of production "tacitly concedes" to the Government and whether those "tacit averments . . . are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment." *Fisher*, 425 U.S. at 410.

Here, by producing the phone to the Government, Combs says nothing about what is *on* the phone. The subpoena didn't ask about any category of documents. It just asks for the phone. *See* Steiner Decl. Ex. A. So in terms of what Combs is "tacitly conced[ing]" by producing it, it is simply "the existence of the [phone] and [its] possession or control by [Combs]," as well as Combs's "belief that the [phone was] th[at] described in the subpoena." *Fisher*, 425 U.S. at 410.

True enough, by producing the phone, Combs is also producing whatever is on the phone. But again, the Fifth Amendment's concern is what Combs is telling the Government by turning over the phone, not its contents. Right now, the Government isn't asking any questions concerning those contents or any category of documents. So unlike a case such as *United States v. Hubbell*, where "collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions," Combs isn't being asked—explicitly or implicitly—to "make extensive use of 'the contents of his own mind' in identifying the hundreds of documents responsive to the requests in the subpoena." 530 U.S. 27, 41, 43 (2000). Combs has not identified any case involving a demand for a receptacle—an electronic device or even a physical receptacle like a box—that puts the inquiry's focus on the receptacle's *contents*.

He does point to cases involving the compelled decryption or unlocking of devices. *See, e.g.*, *United States v. Brown*, 125 F.4th 1186, 1201–04 (D.C. Cir. 2025) (compelled biometric unlock); *In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335, 1341–49 (11th Cir. 2012) (decryption and production of hard drives' contents); *Seo v. State*, 148 N.E.3d 952, 955–58 (Ind. 2020) (compelled unlocking of phone); *G.A.Q.L. v. State*, 257 So.3d 1058, 1061–63 (Fla. Ct. App. 2018) (disclosure of iPhone passcode and iTunes password). Whether or not these cases were rightly decided, *see Smith*, 706 F. Supp. 3d at 408 (noting that unlike responding to a document subpoena, "the act of physically unlocking a smartphone or providing the password does not communicate anything about what files exist on the phone, whether the files were created by the defendant, or whether the files are authentic"), decrypting or using a personal passcode to access a device's contents involves a greater use of the recipient's mind than merely turning over a device. And the Supreme Court has made clear that this is key to the Fifth Amendment inquiry. *See Hubbell*, 530 U.S. at 43 (holding that the assembly of "hundreds of documents responsive to the requests in the subpoena" raised Fifth Amendment concerns because it "was like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox"). Along these lines, the court in *In re Grand Jury*, one of Combs's cited cases, agreed

2

that "the Fifth Amendment privilege is not triggered where the Government merely compels some physical act, i.e. where the individual is not called upon to make use of the contents of his or her mind." 670 F.3d at 1345; *see also, e.g.*, *Moog Inc. v. Skyryse, Inc.*, 2022 WL 16852666, at *4 (W.D.N.Y. Oct. 2, 2022) ("[B]ecause the act of producing those devices therefore is not testimonial, [defendants] cannot rely on the contents of those devices to bar their production.").

The Court reviews the Government's foregone-conclusion argument against this backdrop. The focus of this inquiry is to determine whether the "tacit averments" made by the act of producing the demanded items—here, the phone—adds materially to what the Government already knows. *See Fisher*, 425 U.S. at 410–11. If not, then the act of producing the phone isn't testimonial and incriminating in any real sense. Again, the test is that the "Government must establish 'with reasonable particularity' its knowledge as to '(1) [the] existence of the documents, (2) the [defendant's] possession or control of the documents[,] and (3) the authenticity of the documents." *Fridman*, 974 F.3d at 174 (quoting *Greenfield*, 831 F.3d at 115).

Here, this test is easily satisfied. First, the Government has established with reasonable particularity its knowledge of the phone's existence. In the June 2024 messages, Combs says: "all of a sudden this phone just came up . . . I'm gonna send you a picture of it so you can see . . . this phone is just sitting there." Reply at 2. Combs also included a photo of Device-1 with this message. *Id.* Based on these communications, the Government has established its knowledge as to the existence of the phone, what it looks like, and even what its lock-screen photo is.

Second, the Government has established with reasonable particularity its knowledge of Combs's possession of or control over the phone. This requirement is satisfied if, for example, the Government "establish[es] its knowledge of the physical possession of the requested [materials] by the subpoenaed individual" or "the subpoenaed individual's control over the requested [materials]." *Fridman*, 974 F.3d at 175. "Control" is the ability to "exercise power or influence over." *Id.* (quoting Black's Law Dictionary (11th ed. 2019)). Combs says that "[t]here is no particular reason to believe that the cell phone belonged to [him], and there is no reason to believe [he] physically possessed the phone in June 2024 or had it in his control." Opp. Br. at 13. Even setting aside Combs's reference in the June 2024 messages to the phone being "found in the house," the Government points out that the June 2024 messages show that Combs had physical access to the phone such that he could take a photo of it, knew what was on the phone, apparently had the ability to access its contents ("I didn't, I didn't delete nothing out of the phone."), and had the power to use it for his purposes as a "big breakthrough." Reply at 4–5. As to the third requirement, Combs doesn't contest that the Government can establish its knowledge as to the phone's authenticity. All he says is that the Government hasn't demonstrated the authenticity of *documents on* the phone. Opp. Br. at 2–3. But as discussed above, that's not the focus of the inquiry.

Although the Government has shown its knowledge concerning the existence, control, and authenticity of the phone as of the time of the June 2024 messages, it must also establish "that [Device-1] remained in [Combs's] control through the issuance of the [subpoena]" in December 2024. *Greenfield*, 831 F.3d at 123. Combs says that there's no evidence about "what happened to

the phone following [the June 2024 messages]." Opp. Br. at 13. The Government responds that there is a "strong inference of [Combs's] continued possession." Reply at 5.

The Second Circuit uses a four-factor test to determine whether such an inference can be made: "(1) the nature of the documents, (2) the nature of the business to which the documents pertained, (3) the absence of any indication that the documents were transferred to someone else or were destroyed, and (4) the relatively short time period between the date as of which possession was shown and the date of the ensuing [subpoena]." *Greenfield*, 831 F.3d at 125–26 (cleaned up). Applying these factors, they support an inference of continued possession. A phone is not a throwaway item like "receipts or prosaic emails" might be, so it is likely to be "retained long term." *Id.* at 126. There is no indication that the phone was transferred or destroyed. While Combs argues that his arrest and detention was a "significant intervening event," Op. Br. at 13 (quoting *Greenfield*, 831 F.3d at 126), Combs was aware by June 2024 that he was under investigation, and he felt that the phone was a key part of his legal strategy, calling it a "big breakthrough." Reply at 5. This makes the phone's inadvertent destruction or loss less plausible. And the six-month gap between the June 2024 messages and the December 2024 subpoena is shorter than the nineteen-month and thirteen-month periods the Second Circuit has found to be "relatively short." *Fridman*, 974 F.3d at 179. The Government has established an inference of continued possession.

None of this is to say that Combs has the phone or that the Government will ever be able to use it. If the Government wants to search the phone, it acknowledges that it "will need to obtain a search warrant." Reply at 6. And to the extent that the Government needs a passcode from Combs to access the phone's contents, that raises a separate Fifth Amendment issue not addressed here.

For these reasons, the Government's motion to compel is GRANTED, and Combs must produce Device-1, if it is within his possession, custody, or control, by **April 21, 2025**.

SO ORDERED.

Dated: April 18, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge

4