

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 11, 2025

**By EMAIL**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

      The Government respectfully writes regarding GX 1411, a summary chart of records taken from the electronic devices of Kristina Khorram. Earlier this evening, the defense informed the Government for the first time—after being in possession of these communications for over five months—that it intends to assert privilege over six images and videos included in in GX 1411 that depict communications between the defendant and Jane and which were stored on Ms. Khorram's devices. For the reasons stated below, the defendant's late-breaking privilege claim is meritless and should be denied.

      The Government also writes to advise the Court of various other evidentiary disputes concerning Special Agent LaMon's testimony and other exhibits contained in GX 1411 as well as summary chart GX 1410.

### Videos and Images from Ms. Khorram's Device Are Not Privileged

    I.    **Background**

      The Government seeks to introduce three videos and three images (GX C-361-B, -F, -G; GX C-362-D, -E, -F) (the "Khorram Exhibits") stored on a cellphone seized from Khorram. (GX 1301). The Government intends to include the Khorram Exhibits in summary chart GX 1411. The images and videos depict communications between the defendant and Jane in which Jane recounts threats and exploitation made to her by the defendant, including the defendant's threats to release sex tapes of Jane engaging in hotel nights. Further, the videos appear to depict Khorram's hand holding a cellphone containing these communications (which, based on the content of the communications, appears to belong to the defendant). The Khorram Exhibits were initially produced in discovery to the defendant on December 31, 2024. They were then marked as exhibits and produced on April 16, 2025.

      On May 12, 2025, the Government produced a draft of the summary chart referencing the Khorram Exhibits to the defense prior to the commencement of trial. Earlier today, the defense

raised for the first time that it believes the Khorram Exhibits are privileged. Specifically, they assert that they were taken by Khorram at the direction of the defendant's civil counsel.

## II. Applicable Law

The Second Circuit held over sixty years ago that "pre-existing documents and . . . records not prepared by the [client] for the purpose of communicating with their lawyers in confidence . . . acquired no special protection from the simple fact of being turned over to an attorney." *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962). "Any other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney." *Colton*, 306 F.2d at 639; *see also Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1165 (2d Cir. 1992) (attorney-client privilege did not apply to phone records "given by the client to his attorney in the course of seeking legal advice" because "[t]hose documents, though transmitted to [counsel], are not the client's confidential communications, are not within the privilege, and did not become exempt from discovery by that transmission" (citing *Fisher*, 425 U.S. at 403-04; *Hickman v. Taylor*, 329 U.S. 495, 508 (1947) ("the protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness"))). The "'mere transmittal of non-privileged documents'" is not a privileged communication, and a package of materials sent to an attorney does not "become privileged 'merely because it was sent . . . between an attorney and client.'" *United States v. Correia*, 468 F. Supp. 3d 618, 621 (S.D.N.Y. 2020) (citing *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 149 (S.D.N.Y. 2003); *Dep't of Econ. Dev. v. Arthur Anderson & Co.*, 139 F.R.D. 295, 300 (S.D.N.Y. 1991)).

## III. Analysis

The Khorram Exhibits are not privileged under settled Second Circuit precedent. These exhibits—which depict communications between the defendant and Jane, his then girlfriend—are not privileged in any manner. As an initial matter, the metadata of the messages establishes they were taken around the same time Khorram was directly communicating with Jane about Jane's relationship with the defendant—suggesting that Khorram had independent reason to look at and capture messages on the defendant's phone, to which she had regular access. *Compare* GX C-361 and C-362 *with* GX C-251. And even assuming Khorram captured the communications on her own cellphone for the purpose of transmitting them to the defendant's attorney, "their contents have acquired no special protection from the simple fact of being turned over to an attorney." *Colton*, 306 F.2d at 639. Indeed, "[a]ny other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney." *Id*.

Similarly, the attorney work product doctrine is inapposite here. The attorney work product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated March 19, 2022 and August 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003). "[T]he party invoking [the work product doctrine] bears the burden of establishing its applicability," and the "burden is a heavy one," in light of the "fundamental maxim . . . that the public has a right to every man's evidence." *Id*. at 384. The underlying communications depicted in the Khorram Exhibits were definitionally not prepared in anticipation of litigation or for trial—they were sent between the defendant and Jane.

And preservation of evidence by taking a photograph or video of it does not transform it into work product. That is because "[i]t is well established that the work-product privilege does not apply to documents . . . that would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). Here, the Khorram Exhibits contain no more substance than the underlying communications they depict. The Khorram Exhibits therefore also cannot be attorney work product.

And while there is no applicable privilege here, the Government does *not* intend to use the Khorram Exhibits to prove or argue anything about why or how the communications ended up on Khorram's personal cellphone. Rather, the Government intends to rely on the substance of the underlying communications and their presence on Khorram's device to argue that the Khorram was aware of the content of the communications as of the dates she created the images of them. Whether Khorram took the images of her own accord or at the direction of someone else is irrelevant to this point. Of course, the defendant can argue that the mere presence of the messages on her phone does not establish that Khorram reviewed or understood them, but that argument goes to the weight of the evidence and not its admissibility.

Finally, the defendant has waived any attorney-client and work product privileges, had they existed in the first place over the Khorram Exhibits. Because the defendant did not timely assert privilege until the eve of their admission at trial—after being in possession of those records for almost six months[1]—any claim to privilege has been waived.

In sum, the defendant provides no basis to assert privilege over these records. Rather, the defendant's eleventh-hour claim of privilege appears to be a last-ditch effort to preclude powerful evidence of Khorram's awareness of the defendant's abuse of Jane. He cannot do so on the basis of privilege. For the reasons stated above, the Court should deny the defendant's privilege claim and admit GX C-361-B, -F, -G; GX C-362-D, -E, -F.

## Other Evidentiary Issues

### IV. Andre LaMon Testimony

The Government understands that the defense intends to cross examine Special Agent Andre LaMon, the leader of the search team that conducted the search of the defendant's 200 Mapleton residence, about certain irrelevant aspects of the search. In particular, the defense intends to cross-examine Special Agent LaMon about law enforcement handcuffing and pointing firearms towards certain individuals present at the residence during the search.

To start, Special Agent LaMon has no firsthand knowledge of law enforcement taking these actions. The Government's understanding is that, to the extent that these interactions occurred, they would have taken place while the property was being cleared and secured by a specialized law enforcement team that entered the property prior to Special Agent LaMon's search team. Moreover, this line of cross-examination has absolutely no relevance to any issue in this case and is inadmissible under Rule 403. Courts regularly hold that, under Rule 401 and 403, defendants

---

[1] Extractions of Khorram's devices were produced to the defense on December 31, 2024.

may not shift the focus of their trial from the charges against them to the quality or propriety of the agent's investigation, which is exactly what the defendant seeks to do here. *See United States v. Reese*, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) ("[A] defendant 'may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case.'") (quoting *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004)); *Bell v. Ercole*, 05 Cv. 4532 (ERK), 2011 WL 5040436, at *27 (E.D.N.Y. Oct. 21, 2011), *aff'd*, 471 F. App'x 17 (2d Cir. 2012) (quoting *United States v. Patrick*, 248 F.3d 11, 22 (1st Cir. 2001)) ("Moreover, "[s]uch speculative evidence of the inadequacy of the police investigation would have shifted the jury's focus from the accusations against [the defendant] to accusations against the police, thus creating a real danger of unfair prejudice and jury confusion that substantially outweighed" the evidence's probative value."); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 899 (2d Cir. 2006) (barring defendant from "belabor[ing] the details of the investigation's chronological development" as it would "be irrelevant to the central question of Demosthene's guilt or innocence, and as such, is inadmissible"). Accordingly, this line of cross should be precluded in its entirety.

## V.    Summary Chart Exhibits

### A.  GX 1410

The defense has alerted the Government that it objects to two exhibits cited in the summary chart marked as GX 1410 on hearsay grounds. Specifically, the defense objects to H-105-A and H-105-B as hearsay. These statements—between the defendant and Damion Butler ("D Roc") about reaching out to Mia in late-2023 to early-2024—are plainly not hearsay. *First*, the defendant's statements are admissible as party-opponent statements and D Roc's statements are admissible to contextualize the defendant's statements. *See Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 420 (S.D.N.Y. 2011) ("Where a statement is deemed admissible as an admission by a party-opponent, under Rule 801(d)(2), the surrounding statements providing essential context may also be considered."); *United States v. Mackey*, No. 21-CR-80-NGG, 2023 WL 2457861, at *3 (E.D.N.Y. Mar. 10, 2023). *Second*, D Roc's statements are admissible as co-conspirator statements made in furtherance of the conspiracy to obstruct and tamper with Mia. (*See, e.g.*, Feb. 1, 2025 Enterprise Letter at 15, Trial Tr. 3432-3442 (Mia testifying about obstruction and noting that "Puff wanted to get me and make sure that I wasn't a threat")). As Mia testified, around the time of these messages, D Roc reached out to Mia, at the direction of the defendant, told Mia that the defendant and Ms. Ventura "[w]ere just a normal couple that fought but sometimes it got out of control," (Trial Tr. 3432), and later said that he would send Mia money after Mia did not answer the defendant's calls, (*id.* at 3439). For these reasons, the defense's objections on hearsay grounds should be rejected.

### B.  GX 1411

The defense also alerted the Government that it has a hearsay objection to numerous exhibits cited in the summary chart marked as GX 1411, which includes various communication involving Kristina Khorram.[2] These objections should be rejected. To start, all of these

---

[2] Those exhibits are GX 3G-118 and 3G-136 (excerpted communications between Brendan Paul and Kristina Khorram), 3G-127 (excerpted communications between Brendan Paul and Kristina

communications fall squarely within Federal Rule of Evidence 801(d)(2)(D), which provides that a statement is not hearsay if it is offered against an opposing party and was made by the party's employee on a matter within the scope of the employment relationship. As the Court is aware, Ms. Khorram worked for the defendant in many capacities, most recently as his chief of staff, (Tr. 1591), and had wide ranging responsibilities including responsibilities relating to the defendant's personal life. Many of the other participants in these texts include the defendant's personal assistants, the defendant's accountant, Robin Greenhill, (Tr. 4614), and his security guards (Tr. 4717 (J9 and Faheem)). It is also plain from the content of the messages that they concern matters that fall within the scope of the declarant's employment. In addition, with regard to communications that involve the defendant, the defendant's statements are admissible as party-opponent statements and Ms. Khorram's and other employees' statements are admissible to contextualize the defendant's statements. *See Lime Grp. LLC*, 784 F. Supp. 2d at 420. Finally, the statements by Ms. Khorram and Mr. Combs' security are admissible as co-conspirator statements under Federal Rule 801(d)(2)(E).

*Second*, the defendant objects to the admission of GX C-259-D, which is a screenshot on Ms. Khorram's phone of an email from an accounts payable specialist asking about certain charges related to Kabrale Williams, on the basis of authenticity and lack of foundation. These objections should be rejected. As to authenticity, the defendant has already stipulated in GX 1301 that GX C-259-D is a true and accurate excerpt of data extracted from one of Ms. Khorram's devices. This is sufficient to meet the "low bar for authentication." *Sanmina Corp. v. Dialight plc*, No. 19 CIV. 11710 (KPF), 2023 WL 9022882, at *6 (S.D.N.Y. Dec. 29, 2023). A sufficient foundation has also been laid for the admission of this exhibit. Jane testified extensively about Kabrale Williams and how he was an escort that the defendant would fly to certain locations to participate in "Hotel Nights" with Jane and the defendant. (Tr. 4728). The Government therefore seeks to offer this exhibit as important evidence of Ms. Khorram's knowledge of the defendant's use of escorts in Hotel Nights/Freak Offs.

---

Khorram), 3G-135 (excerpted communication between Brendan Paul, Kristina Khorram, J9, and Faheem Muhammed), C-257-A (excerpted communications between Jonathan Perez and Kristina Khorram), C-332-E, C-332-F, and C-357 (excerpted communications between Kristina Khorram and David Shirley), C-343-B (excerpted communications between Kristina Khorram and Melissa Feola), C-356 (excerpted communications between Kristina Khorram, Ryan Lopez, and David Shirley), C-365 and C-654 (excerpted communications between Kristina Khorram and Phil Pines), C-622-1 (excerpted communications between Kristina Khorram and Sean Combs), C-625, C-629-2, C-629-3, C-367, C-639-1, C-641, C-642-2, C-657, and C-658 (excerpted communications between Kristina Khorram and Sean Combs), C-501 (excerpted communications between Kristina Khorram and Robin Greenhill), C-506 and C-507 (excerpted communication between Kristina Khorram, Sean Combs, Robin Greenhill, and Faheem Muhammed), GX C-263, 264, 265 (excerpted communications between Kristina Khorram and Jane), and GX C-341-B (excerpted communications between Kristina Khorram and Kerry Morgan).

*Finally*, the defense objects to certain chats, specifically GX C-501, C-506, and C-507, GX-641, and C-366 under Rule 403.[3] The exhibits are highly probative evidence of the Government's racketeering conspiracy count. *See, e.g.*, GX C-366 (personal assistant Ryan Lopez telling Ms. Khorram that he spotted "one of the cowboys today . . . in a lobby like a escort"). Among other things, the exhibits provide direct evidence of the existence of the enterprise, the means by which the defendant committed the crimes charged in the Indictment, and the requisite knowledge of Mr. Combs' coconspirators. One the other side of the ledger, none of these chats are *unfairly* prejudicial. *See United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)) (The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"). Their only effect is in tending to prove facts and issues critical to the Government's case.

                                    Respectfully submitted,

                                    JAY CLAYTON
                                  United States Attorney

By:   /s                         
        Maurene Comey / Meredith Foster /
        Emily A. Johnson / Christy Slavik /
        Madison Reddick Smyser / Mitzi Steiner
        Assistant United States Attorneys
        (212) 637-2324/-2310/-2409/-1113/-2381/-2284

---

[3] The defense also informed the Government that they object under Rule 403 to certain messages that mention the defendant's meetings or conversations with lawyers. The Government has agreed to redact these discrete messages.