

Shapiro Arato Bach LLP

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

July 2, 2025

**VIA EMAIL**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

      Mr. Combs should be released on bail *today*. For months, the government repeatedly argued, and announced to the world, that Sean Combs was a monster who perpetrated a 20-year federal crime spree through a racketeering enterprise. It devoted enormous resources to this prosecution. Then, after almost a year in detention, Mr. Combs finally got his day in Court, and the government's allegations were tested before a jury of his peers. That jury heard the government's evidence, including testimony from his former girlfriends. By its verdict, the jury resoundingly rejected the government's depiction of Mr. Combs. The jury found him not guilty of racketeering conspiracy and not guilty of sex trafficking. It convicted him only on two prostitution counts, which were related to the transportation of *adults*—adults whom the jury clearly found were consensual participants in the sexual activity. These offenses are of a far less serious nature. Prostitution offenses are no longer even prosecuted as a matter of policy in the Manhattan D.A.'s Office, and the same is true of Los Angeles and many other local district attorney's offices. It would be unjust to continue detaining Mr. Combs at the MDC even one day longer, especially since—given the sentencing guidelines for these prostitution offenses—he would otherwise be entitled to serve any additional time imposed at a lower-security facility.

      We write to respond to the government's arguments opposing bail. *See* Dkt.433. First, Mr. Combs was not convicted of a "crime of violence," and the Court should therefore consider his bail application under the standards outlined in 18 U.S.C. § 3143(a)(1), not 18 U.S.C. § 3143(a)(2). Second, the government overstates Mr. Combs's sentencing exposure. And third, to the extent Section 3143(a)(2) applies, the Court should release Mr. Combs on the proposed conditions because there are "exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c).

      **A. Mr. Combs Was Not Convicted Of A "Crime Of Violence"**

      The government is incorrect to suggest that Mr. Combs was convicted of a "crime of violence," Dkt.433 at 5, as that provision includes only Chapter 117 offenses involving minors.

Hon. Arun Subramanian  
July 2, 2025

Page 2

That is not this case. Thus, the standards in 18 U.S.C. § 3143(a)(1) apply to Mr. Combs's bail request, not those contained in 18 U.S.C. § 3143(a)(2).

18 U.S.C. § 3156(a)(4)(C)'s definition of "crime of violence" was amended in 1998 to include felony offenses under Chapter 117, but the amendment was not designed to capture all offenses under Chapter 117. The amendment was effected through the "Protection Of Children From Sexual Predators Act Of 1998," PL 105–314 (HR 3494), and was specifically designed to capture sexual crimes involving *minors* only.[1] This is clear from the House Judiciary Committee's report of the proposed amendment. When introduced, the section-by-section analysis of the amendment identified its purpose as to "require pretrial detention for offenses involving: (1) transportation of *a minor* for illegal sexual activity; (2) coercion or enticement of *a minor* to engage in criminal sexual activity; or (3) transportation in interstate commerce with intent to engage in criminal sexual activity with *a minor*." H.R. REP. 105-557, 21, 1998 U.S.C.C.A.N. 678, 689 (emphasis added). As the Report made clear, the proposed amendment to 18 U.S.C. § 3156(a)(4)(C) "would add *these offenses* to the list of offenses in which pretrial detention is authorized." *Id.* Congress did not intend a broader amendment.[2] Indeed, a presumption of pre-trial detention arises in Mann Act case only where the "offense involv[es] a minor victim under section … 2241." 18 U.S.C. § 3142(e)(3)(E).

18 U.S.C. § 3156(a)(4)(C)'s "crime of violence" language is accordingly limited consistent with the House Judiciary Committee's instruction, and the statute should be interpreted "in light of the foregoing understanding of Congressional intent." *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999). The Court should read the relevant "text in context," which makes clear that detention is not presumed where minors are not involved. *United States v. Pulsifer*, 601 U.S. 124, 133 (2024). To the extent there is any ambiguity, the Court should interpret the statute not to cover the Mann Act convictions here under "the rule of lenity," which "require[s] a narrow construction," given the overbreadth and ambiguity in the statute. *Id.* at 13 n.12; *see also*, *e.g.*, *Yates v. United States*, 574 U.S. 528, 547-48 (2015) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.").

Of course, Chapter 117 includes various offenses involving transportation for illegal sexual activity and related crimes. But not all violations of Chapter 117 offenses involve minors, and this is a case in point. For example, 18 U.S.C. § 2421(a) punishes "knowingly transport[ing] any individual in interstate or foreign commerce … with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." By its terms, such an offense can involve a minor, but the offenses of conviction do not, and the government charged transportation to engage in prostitution only—nothing

---

[1] "The goal of the [Act] was to provide stronger protections for *children* from those who would prey upon *them*." *United States v. Searcy*, 418 F.3d 1193, 1198 (11th Cir. 2005) (emphasis added).

[2] This makes good sense in light of the other sections of 18 U.S.C. § 3156(a)(4), because sexual offenses against minors necessarily involve "the use, attempted use, or threatened use of physical force against" the child, *id.* § 3156(a)(4)(A), and "a substantial risk that physical force against the [child] may be used," *id.* § 3156(a)(4)(B).

Hon. Arun Subramanian
July 2, 2025

involving minors. Thus, the Court should not endorse the government's overbroad interpretation of "crime of violence" to conclude that 18 U.S.C. § 3143(a)(2) applies.

### B. The Government Overstates Mr. Combs's Sentencing Exposure

The government's arguments about the Sentencing Guidelines also suffer from numerous flaws. For example, the government is now claiming that Casandra Ventura and Jane were co-conspirators and that Mr. Combs was a "manager or supervisors of one or more participants, namely, Ms. Ventura and Jane." Dkt.433 at 3. On this basis, it claims that three levels are added to the guidelines calculation. But the government has always previously asserted that Ms. Ventura and Jane were *victims*, not co-conspirators. Indeed, in the Mann Act counts the indictment identifies them as victims. Count Three alleges that, "From 2009 to 2018," Mr. Combs "transported, aided and abetted, and willfully caused the transportation of multiple individuals, including but not limited to *Victim-1* and commercial sex workers, in interstate and foreign commerce on multiple occasions with the intent that they engage in prostitution." Dkt.209 ¶18. Similarly, Count Five alleges that from 2021 to 2024 Mr. Combs "transported, aided and abetted, and willfully caused the transportation of multiple individuals, including but not limited to *Victim-2* and commercial sex workers, in interstate and foreign commerce on multiple occasions with the intent that they engage in prostitution. *Id.* ¶20. Consistent with this theory, the government argued at trial that the transportation of Ms. Ventura and Jane was part of the Mann Act violation and listed their travel in the summary charts. Accordingly, it should not now be permitted to suddenly label them co-conspirators in order to suggest that an inapplicable guidelines enhancement would increase his offense level.

For similar reasons, the government's new claim that seven escorts should be treated as "victims" for grouping purposes (Dkt.433 at 3) fails. The government has never previously suggested that any of the male escorts were victims. Indeed, in stark contrast to the measures the government took to protect the identities of the alleged female victims, the government never sought pseudonymity for any of the escorts. Instead, it introduced photos of them, elicited testimony identifying them even when they were not called as witnesses, and released the photos to the press. Therefore, it is inappropriate to deem these individuals "victims" for purposes of the guidelines.

The government's argument that two points should be added for obstruction (Dkt.433 at 3), are equally meritless. First, the enhancement would not apply to either of the payment for the Intercontinental Hotel video or Mr. Combs's November 2024 calls with Jane. The enhancement only applies "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels. U.S.S.G. §3C1.1; *see also* Application Note 1 (enhancement applies only if it "occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction"). Mr. Combs's payment for the Intercontinental Video of the domestic assault over nine years ago obviously did not occur with respect to the "investigation, prosecution, or sentencing" in this case. As for the calls with Jane in November

Page 4

Hon. Arun Subramanian
July 2, 2025

2024, the government presented no evidence at the time of these calls that Mr. Combs was aware of any law enforcement investigation. Instead, as the trial evidence showed, the calls were made in the immediate wake of the Ventura lawsuit and months before Mr. Combs learned he was under federal investigation.

Second, even if the enhancement otherwise could apply, the two incidents were charged as racketeering acts of bribery and obstruction as part of the RICO conspiracy, on which the jury acquitted Mr. Combs.

### C. "Exceptional Reasons" Make Detention Inappropriate

*United States v. Lea* itself holds that detention is not mandatory if there are "exceptional circumstances," as provided in 18 U.S.C. § 3145(c). It further holds that "[t]he test under §3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'" 360 F.3d 401, 403 (2d Cir. 2006) (citation omitted). "Exceptional circumstances exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'" *Id.*

Exceptional circumstances exist here, including:

- Mr. Combs has 18-year-old twin daughters, as well as a 27-year-old son with no other living parent;

- Mr. Combs's mother is 85 years old. She suffers from various health conditions. For example, she was hospitalized in July 2024 for a heart condition and had brain surgery the previous year. She lives near Mr. Combs in Florida and she would like him to be her primary caretaker.

- Mr. Combs also has a 3-year-old child who also needs her father.

- Mr. Combs has served almost 10 months in the MDC, with its notoriously problematic conditions, and under any view of the guidelines, he would qualify for a camp or low or minimum security prison, with far less onerous and restrictive conditions.[3]

\* \* \* \*

For the foregoing reasons the Court should release Mr. Combs on the proposed conditions. *See* Dkt.432.

---

[3] Indeed, Judge Furman recently observed that conditions at the MDC "ha[ve] gotten to the point that it is routine for judges in both this District and the Eastern District to give reduced sentences to defendants based on the conditions of confinement in the MDC." *United States v. Chavez*, 22-cr-00303-JMF (S.D.N.Y.), Dkt.31 at 2-3 (collecting cases).

Hon. Arun Subramanian
July 2, 2025

Respectfully submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4880
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
HARRIS TRZASKOMA LLP
156 West 56th St., Ste. 2004
New York, NY 10019
(212) 970-6465
aestevao@harristrz.com

Brian Steel
THE STEEL LAW FIRM, P.C.
1800 Peachtree Street, Ste. 300
Atlanta, GA 30309
(404) 605-0023

Xavier R. Donaldson
136 Madison Ave, 6th Floor
New York, New York 10016
646-772-3334
Xdonaldson@aol.com

Nicole Westmoreland, Esq.
WESTMORELAND LAW, LLC
132 Cone Street, Suite A
Atlanta, GA 30303
Tel: (404) 446-2620

Hon. Arun Subramanian
July 2, 2025

Page 6

nw@westmorelandlawgroup.com