

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

June 11, 2025

**VIA EMAIL**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

   We write on behalf of Sean Combs regarding government exhibits E-331-K, E-331-L, E-331-M, E-331-N, E-331-O, and E-331-P. As previously outlined in our June 5, 2025 letter, and for the reasons further explained below, these exhibits are inadmissible under Rule 801(d)(1)(B). These exhibits should be excluded under Rule 403, and the cross examination of Jane does not open the door to their admission.

 **A. The Notes Post-Date Motives To Fabricate And Are Inadmissible Under Rule 801(d)(1)(B)**

   Rule 801(d)(1)(B) "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive." *Tome v. United States*, 513 U.S. 150, 167 (1995). This is known as the rule's "fundamental temporal requirement," and "[a] prior consistent statement made after an improper motive exists is simply not within the scope of" the rule. *United States v. Al- Moayad*, 545 F.3d 139, 167 (2d Cir. 2008) (emphasis added) (vacating convictions due to erroneous admission of notes under rule). To satisfy the rule, the statement at issue must be "made before the source of [a] bias, interest, influence or capacity originated." *United States v. Forrester*, 60 F.3d 52, 64 (2d Cir. 1995) (quoting Tome, 513 U.S. at 156). Once a lawsuit is filed, a settlement is discussed, or "the government's criminal investigation" is initiated, an improper motive is clearly introduced. *United States v. Hotte*, 189 F.3d 462 (2d Cir. 1999). Put another way, once a motive to fabricate arises, *nothing* said after that point in time is admissible as a prior consistent statement. It is simply irrelevant whether, as the Court put it, "some other additional cumulative motive to lie…came up later." Tr.5661.

   Jane read Ms. Ventura's complaint the day it was filed on November 16, 2023. Tr.5068. Jane saw headlines related to Ms. Ventura's settlement with Mr. Combs the next day, and Jane testified that by December 2023 she and Mr. Combs discussed "com[ing] up with some sort of number to make peace with [their] situation." Tr.5101. In March 2024, Jane further learned that the government was investigating Mr. Combs, and she hired a lawyer soon thereafter after HSI agents visited her home. Tr.5147-48. Obviously, an "improper influence or motive" existed at

Hon. Arun Subramanian
June 11, 2025

the time Jane learned of Ms. Ventura's lawsuit and throughout this period. *Tome*, 513 U.S. at 167. The statements contained in government exhibits E-331-K, E-331-L, E-331-M, E-331-N, E-331-O, and E-331-P are therefore not admissible under Rule 801(d)(1)(B).[1] Indeed, the substance of the notes confirm they were drafted with an understanding that an improper motive existed at the time. ███████████████████████████████████████

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

The government's argument regarding its offer of immunity to Jane in November 2024 is irrelevant. Any questioning regarding Jane's immunity did not open the door to any Jane notes that post-date Ms. Ventura's lawsuit and thus were created after there was already a clear motive to fabricate.

And in any event, the defense questioning of Jane about her grant of immunity was brief and simply to correct a misleading impression created during Jane's direct. The government elicited that Jane had received a subpoena and had testified in the grand ██████████████ ████████████████████████████████ under a grant of immunity:

> Q. Jane, after Sean was arrested, did you receive a subpoena from the U.S. Attorney's Office?
>
> A. Yes.
>
> Q. Did that subpoena require you to come to New York and meet with prosecutors and the grand jury?
>
> A. Yes.
>
> Q. About when did that subpoena require you to come to New York?
>
> A. November of 2024.
>
> Q. Did you reach out to prosecutors or did prosecutors reach out to you?
>
> A. Prosecutors reached out to me.
>
> Q. Before you received that subpoena in November of 2024, had you spoken with prosecutors or law enforcement at all?

---

[1] ███████████████████████████████████████████████████████████████
███████████████████████████████████

[2] ██████████████

A. No.

Q. After you met in New York in the grand jury in November of 2024, when was the next time you saw prosecutors in person?

A. January of 2025.

Tr.5247-48. The defense had a right to correct the record and the misimpression the government created by concealing its grant of immunity to Jane, and we did so with just a few simple questions:

Q. Okay. And after Mr. Combs' arrest when they subpoenaed you, you went into *the grand jury, right?*

A. Yes.

Q. And did the government give you immunity?

A. Yes.

Q. And what is your understanding of what a grant of immunity is?

A. That when I share my story, that I am immunized, the whole thing.

Q. Is your understanding that they can't prosecute you for any federal crimes if they determine you tell the truth?

A. Yes.

Q. You didn't want the government to prosecute you, obviously, right?

A. Yes.

Tr.5285-86. That was it. Usually witnesses who testify with immunity are people whom the government considers unindicted co-conspirators of some sort, and the cross about the immunity is extensive and similar to a cooperator cross. Here, by contrast, Jane is an alleged victim, and no one was suggesting that she got special treatment even though she was involved in crimes with the defendant. The only point was to complete the picture, since the government had concealed its grant of immunity from the jury.

As the Supreme Court held in *Tome*, Rule 801(d)(1)(B) does not "permit the introduction of prior statements as substantive evidence to rebut every implicit charge that a witness' in-court testimony results from recent fabrication or improper influence or motive." *Tome*, 513 U.S. at

165.  Nor does the rule permit "the Government … to present a parade of sympathetic" evidence—such as Jane's personal notes—merely "[i]n response to a rather weak charge" of recent fabrication.  *Id.*  The defense's questioning regarding Jane's immunity is precisely the type of "weak," "implicit" charge discussed in *Tome* that does not warrant the use of prejudicial rebuttal evidence the government seeks to use here.

### B.  The Notes Are Inadmissible Under Rule 403

Regardless of whether they are inadmissible hearsay, the notes should be excluded because any probative value is substantially outweighed by a high risk of unfair prejudice, confusion, and wasted time should they be admitted.

The notes themselves have low probative value.  Jane testified that the contents of her notes were personal and that she did not always communicate the substance to Mr. Combs. Tr.4835 ("Sometimes I would feel better just getting it out and writing it.  And sometimes I would just have the courage to actually send it to him.").  This reduces the probative value of the notes, because the sex trafficking statute focuses on whether the defendant "kn[ew]" or acted "in reckless disregard of the fact" that "means of force, threats of force, fraud, coercion … , or any combination of such means w[ould] be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1).  It does not focus on the victim's personal intimate thoughts.

The government also has no need to resort to these prejudicial notes.  If Jane communicated the contents of the notes to Mr. Combs, that is what the jury should see—not her personal diary entries which reveal little about the elements of the charged offenses.  For this reason, the government has already elicited myriad communications Jane actually sent to Mr. Combs during the period in which the notes were written.  *See, e.g.*, Tr. 5088-5108.  The notes are a less probative, more inflammatory and prejudicial variety of these "evidentiary alternatives."  *Old Chief v. United States*, 519 U.S. 172, 184 (1997).  Permitting this evidence would merely waste time and prejudice the defense.

And the notes are highly inflammatory and will introduce unfair prejudice. ███████████████████████████████████████████████████████████████████ Should they be admitted, it would result in lengthy re-cross-examination to properly contextualize the feelings expressed in the notes, further wasting time and confusing the jury.

Respectfully submitted,

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036

(212) 257-4880
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
HARRIS TRZASKOMA LLP
156 West 56th St., Ste. 2004
New York, NY 10019
(212) 970-6465
aestevao@harristrz.com

Brian Steel
THE STEEL LAW FIRM, P.C.
1800 Peachtree Street, Ste. 300
Atlanta, GA 30309
(404) 605-0023

Xavier R. Donaldson
136 Madison Ave, 6th Floor
New York, New York 10016
646-772-3334
Xdonaldson@aol.com

Nicole Westmoreland, Esq.
WESTMORELAND LAW, LLC
132 Cone Street, Suite A
Atlanta, GA 30303
Tel: (404) 446-2620
nw@westmorelandlawgroup.com