# AGNIFILO INTRATER

August 3, 2025

**VIA ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: <u>United States v. Sean Combs</u>, 24 Cr. 542 (AS)

Dear Judge Subramanian:

  Sean Combs, through his counsel, submits this brief letter in reply to the government's response to his motion for release on conditions pending sentencing. Impervious to the jury's verdict, the government proceeds as though Combs was not acquitted of sex trafficking and racketeering conspiracy, along with all the racketeering acts with which he was charged and found not guilty. Hellbent on punishing him for being a user of prostitution services in a more draconian manner than anyone in U.S. history, the government continues to target him unfairly, just as it has done from the inception of this provably misplaced investigation. Despite the jury's verdict, it continues to make factual statements that are plainly at odds with what twelve New Yorkers found and to try to keep Combs incarcerated even though the jury rejected the serious charges that led to his pre-trial detention in the first place. Specifically, the government argues that Combs (1) has failed to meet the standard for reconsideration; (2) does not show exceptional circumstances; and (3) cannot reasonably show Combs' appearance in court or the safety of the community. For the reasons stated below, the government's arguments all fail.

## I. The Court Has Ample Authority to Grant Bail

  The government first argues that Combs's bail application should be "considered as a motion for reconsideration by the court." ECF 488 at 1. However, as the government acknowledges in a footnote the Bail Reform Act is "silent on when or if a district judge may consider his or her own detention order pending sentence." *United States v. Auletta*, No. 86 Cr. 245 (MJL), 1988 WL 103365 (S.D.N.Y. Sept. 28, 1988) at 2. The government also concedes, as it must, that the Court "can reconsider its discussion under its 'inherent power' to reconsider his own ruling." ECF 488 at n.1 citing *Auletta*, 1988 WL 103365, at *2. But all the cases cited by the government discuss *bail pending appeal,* and pursuant to 18 U.S.C. § 3141(b), this court may order that pending "imposition or execution of sentence, or pending appeal of conviction or sentence, a person be released." Thus, the Court may revisit its bail determination at any time. This makes sense, as courts routinely modify conditions of bail pending sentencing to allow for travel or many other circumstances, and the high standard of reconsideration is not considered. Accordingly, this Court may consider this application without treating it as a motion for reconsideration. This is especially

Hon. Arun Subramanian
August 3, 2025

true given the exigencies of July 2, 2025, where the jury reached a verdict in the morning and the parties were arguing bail several hours later the same day. Unlike a more traditional setting for motions, where parties typically have days if not weeks to consider the facts, the law and their arguments, the events of July 2nd were fast-moving, and it was impossible for the parties to review the scores of Mann Act cases to fashion an appropriate argument to the Court. For these reasons, we submit that the Court has ample discretion to consider this application.

## II.  Exceptional Reasons Exist Because of Both the Facts Underlying This Conviction and the Conditions at the MDC

The government argues that Combs has failed to show the "need to prevent a manifest injustice as required." ECF 488 at 3. The government claims the defense has already argued exceptional circumstances based on a comparison of this case to other Mann Act convictions, but that was a hurried application the day of the verdict based on a "very quick review over the course of the day of other Mann Act cases."[1] That "quick review" yielded four cases, which counsel distinguished at the hearing. After distinguishing just these *four* cases, counsel argued that they provided a "strong argument for a reasonable sentence in this case" and that counsel would try to get "Combs sentenced as soon as possible."[2] Now, with the benefit of further research, counsel has reviewed scores of cases from across the country, and submits this renewed motion for bail showing that exceptional circumstances exist to warrant release pending sentencing.

### A.  There Have Been No Remotely Similar Mann Act Convictions and the Cases the Government Cites Are Distinguishable

For purposes of this application, we assume that the Mann Act requires detention post-verdict subject to exceptional circumstances. However, as shown in our original application of July 29, 2025, the statute has been reserved for instances where people (primarily women) are forced into prostitution, where children are lured or forced into prostitution, and where the defendant is motivated by profiting from the business of prostitution. It has quite literally never been applied to the facts here: where a male defendant and his long-time companion agree to bring other males into their adult, consensual relationship. The government is unable to, and does not attempt to, dispute this point, which alone amounts to an exceptional reason for release.

Even the few other cases where the defendant of a Mann Act prosecution was a user of prostitution services are completely different from the instant case. The defense's bail application cited *Trowbridge*, *Stebick* and *Tills* as examples of "johns" solely convicted of the Mann Act who all received bonds after their conviction. The government argues that those defendants were not as culpable as Combs; that defendant Stebick only had one occasion of transporting a victim across state lines, defendant Trowbridge only had two occasions and defendant Tills had six. What the government ignores, however, is that the defendants were members of a group called the Jesters, who brought prostitutes across state lines to have sex for money with the members of the group as a common practice, not just the occasions indicted. Moreover, the victims for all three defendants

---
[1] Tr. at 8150.
[2] Tr. at 8152.

Hon. Arun Subramanian
August 3, 2025

were victims of sex trafficking. They could hardly speak English and were undocumented immigrants who were tricked and coerced to work as prostitutes by a defendant in a related case who profited from their forced labor. It cannot possibly be that patronizing sex trafficked undocumented victims is less culpable than the conduct here, where these alleged victims were adult American men who chose to participate in the sexual activity, got paid thousands of dollars, and considered themselves friends of Combs and his girlfriends. Notably, regarding *Stebick*, the defendant was a member of the Jesters and yet the government argued that the defendant did not even have sex with the victim. Similarly, Combs did not have sex with the men here.

The government brushes over *Collins*, where the defendant was released following a mistrial on sex trafficking counts, then tried for violating the Mann Act, was convicted and allowed to remain on bond pending sentencing. *Collins*'s conduct was far more egregious, as the victim called 911 stating she was being held against her will.[3] This shows that Combs's continued detention pending sentencing despite his acquittal on the charges that actually involved true violence—unlike the Mann Act counts—is unwarranted and extraordinary, and these are "exceptional" circumstances warranting his release.

The government also cites *United States v. Bloomer*, 791 F. Supp. 100, 102 (D. Vt. 1992), which it claims shows the present circumstances are not exceptional. ECF 488 at 4. In *Bloomer*, however, the defendant's exceptional reasons were solely family circumstances, which the court found was not enough to qualify as "exceptional." *Id.* In so finding, the court in *Bloomer* held that to qualify as "exceptional…the reasons put forward by the defendant need not present an 'absolute legal novelty'; an 'unusual legal or factual question can be sufficient' as can a substantial question . . . . in the presence of one or more remarkable and uncommon factors.'" *Id.* at 102. That is exactly what we have here. Combs' conviction on these Mann Act counts, as well as the "unusual legal" application of the facts, are indeed "sufficient" to qualify as exceptional circumstances.

      B.     <u>MDC Is an Exceptional Circumstance Under Chavez</u>

The government argues that *Chavez* is no longer persuasive authority for this Court because *Chavez* was published "over eight months *before* Combs stepped foot in the MDC." ECF 488 at 7. The government, however, ignores the reality at MDC, the cases *since Chavez* (which counsel cited) that describe the conditions there, and paints a misguided picture for the Court of the reality of the conditions at the facility.

We continue to be grateful to the facility's staff for allowing access for counsel to Combs to prepare for trial. Without this critical access, Combs would not have been able to prepare his successful defense. However, that does not change the reality of the conditions at the facility for the past eleven months. The government argues that "during the defendant's stay at the MDC, the facility has made enormous strides in increasing and stabilizing their staffing level, improving

---

[3] "Evidence presented at trial established that OPD Officers responded to an Oxford motel on April 27, 2017, after receiving a 911 call indicating that the victim was being held against her will. ("Atlanta Residents Convicted of Interstate Trafficking of a Victim for Commercial Sex Purposes," Dep't of Just. (Dec. 20, 2017), https://www.justice.gov/usao-ndms/pr/atlanta-residents-convicted-interstate-trafficking-victim-commercial-sex-purposes.)

Hon. Arun Subramanian
August 3, 2025

medical services, and improving physical conditions." ECF 488 at 7. Though MDC initiated these efforts in 2024 after the *Chavez* decision, any increases in spending were reversed *this year* due to the federal government's aggressive budget cuts. For example, since January 2025, there have been cuts to BOP staffing and pay, and decreases pending across the agency, exacerbating an already troubled situation.[4]

Contrary to the government's contention, living conditions at the MDC remain inhumane and the conditions seem unlikely to improve due to the aggressive government budget cuts. MDC routinely serves food that is expired and infested with maggots.[5] The maggot-infested food captured in that photo is, unfortunately, not an uncommon experience. Lockdowns also remain common, despite the government's claims. For example, the MDC sent a notice to detainees that they would be on lockdown from February 22, 2025 to at least March 3, 2025 because "multiple inmates became disruptive and utilized weapons during an incident."[6] This was just a few months ago.

The government argues that the "unchecked violence" relied upon in *Colucci* "does not serve as a valid basis for finding of exceptional circumstances because this violence "occurred over a year ago." ECF 488 at 7. Unfortunately, this shows the government's ignorance with respect to inmate violence at the MDC. On March 6, 2025, the U.S. Attorney's Office for the Eastern District of New York announced criminal charges against 25 defendants in 12 separate cases relating to violence and contraband smuggling at the MDC, all of which occurred recently, between April 2024 and the present. These include charges against 15 inmates for violent assaults against other inmates from May 2024 to the present; a former correctional officer for attempting to smuggle contraband into the facility on January 21, 2025; an inmate for orchestrating a contraband smuggling operation between April and June 2024; an inmate for smuggling ceramic scalpels into the facility on October 12, 2024; an inmate for possession of contraband and continuing to commit fraud while detained at MDC; and an MS-13 gang associate for attempting to smuggle a large package of contraband, including 18 cellphones and marijuana, to other MS-13 gang members incarcerated at MDC.[7] Additionally, upon information and belief, just two Fridays ago, an inmate in the floor *above* Combs' was stabbed.

Finally, the government argues that Combs' "bail motion is devoid of any claims that the defendant himself was impacted in any way by the conditions he alleges." ECF 488 at 8. Once again, this shows the government's ignorance with respect to the situation at the MDC. █

---

[4] *See, e.g.*, *Bureau Of Prisons Is A 'Powder Keg' With Problems*, Forbes, April 4, 2025, https://www.forbes.com/sites/walterpavlo/2025/04/04/bureau-of-prisons-is-a-powder-keg-with-problems/;
Employees at the Bureau of Prisons try to deal with agency-side pay cuts, Federal News Network, March 18, 2025, https://federalnewsnetwork.com/pay/2025/03/employees-at-the-bureau-of-prisons-try-to-deal-with-agency-side-pay-cuts/.
[5] *New photo shows maggot-infested food in MDC Brooklyn jail, where Diddy and Luigi Mangione are held*, New York Daily News, Feb. 21, 2025, https://www.nydailynews.com/2025/02/21/new-photo-shows-maggot-infested-food-in-mdc-brooklyn-where-diddy-and-luigi-mangione-are-held/.
[6] *See* February 22, 2025 BOP Notice to Inmate Population.
[7] Press Release, U.S. Attorney's Office, Eastern District of New York, 25 Metropolitan Detention Center Inmates, Their Associates and a Former Correctional Officer—Charged in a Dozen Criminal Cases at the Federal Jail in Brooklyn (March 6, 2025) https://www.justice.gov/usao-edny/pr/25-metropolitan-detention-center-inmates-their-associates-and-former-correctional.



Hon. Arun Subramanian
August 3, 2025

### III. The Defendant Will Submit to Any Conditions the Court Deems Appropriate to Assure His Appearance and Ensure the Safety of the Community

The government argues that even if extraordinary circumstances could be demonstrated, Combs fails to establish by clear and convincing evidence that he does not pose a danger to the community or a flight risk. ECF 488 at 9-10. The government is wrong—Combs has shown this Court through his behavior in confinement that he does not pose a danger. Moreover, a combination of conditions (PTS-monitored security, drug testing, approved visitor lists, etc.) could provide the Court with the necessary assurance that absolutely nothing will continue to happen while Combs is pending sentencing.

#### A. The Defendant Does Not Pose a Danger to Others

First, despite the conditions of confinement at the MDC, Combs has not gotten into *any* fights. There have been no allegations of violence at the MDC with respect to Combs—and for good reason. At trial, the defense admitted violence in connection with decades-old violence, and an incident of assault for which Combs was first attacked repeatedly in June of 2024. But Combs' has not participated in any violence for the past 11-months, demonstrating to the Court that even in the conditions he is currently subject to, where there is "unchecked violence" surrounding him, he will not commit assault. He is sober, has been committed to bettering himself with therapy (as established in the trial record) and is committed to doing everything possible to support himself and his family.[9]

Second, the government argues that the "trial record is replete with evidence of the defendant's act of violence towards others." ECF 488 at 9. The witnesses the government called testified in support of racketeering conspiracy and sex trafficking charges—all of which Combs was acquitted. And stunningly, the government is trying to support Combs' detention with its failed evidence that Combs assaulted Bryana "Bana" Bongolan, who testified that Combs caused her substantial injury in Los Angeles, at a time when he was 3,000 miles away.[10]

The government troublingly also points to unsworn evidence of non-testifying individuals to try to keep Combs in custody. It had a two-month trial where it could have, but chose not to, call these witnesses, when they would have been subject to cross-examination, and their allegations could have been tested. The government should not be able to support its argument with untested accusations, as they did at the pre-trial bail hearings. For example, it argued that Combs was "violent toward Virginia 'Gina' Huynh, with whom the defendant was in a relationship at the same time as Ms. Ventura." ECF 488 at 9. Ms. Huynh has written a letter in support of Combs's motion for bond, which is attached as Exhibit A. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ f any of this was true, the government would have called this individual, but without credible evidence the Court should not consider this to continue to detain Combs.

---

[9] Tr. at 5368: 10-22 (Jane cross); Tr. at 5885: 2-13 (Jane cross); Tr. 6701: 19-21 (Penland cross); DX 1096 at 6.
[10] Tr. at 4488-4494.
[11] Pursuant to the Protective Order entered into in this case (ECF 26), this information is properly under seal.

Hon. Arun Subramanian
August 3, 2025

Finally, the government argues that Combs "brutally attacked Jane in June of 2024…in the context of a Freak Off." *Id.* However, the Court will recall that on an evening in June 2024, Jane invited Combs to her home, she had a magnum of champagne and tequila waiting.[12] Unprompted by anything Combs said or anything that happened that evening, at one point Jane smashed Combs's head into her kitchen counter as he was bending over tying his shoes.[13] She then began throwing glasses and burning candles at him, saying she hated him and calling him a pedophile. She explained this by testifying that Combs was dating another woman who was older than 18 but was younger than Jane.[14] She continued throwing glasses at him and believed she got hot candle wax on him.[15] It was in *this* context that Combs defended himself and several hours *after this* that an entertainment night allegedly occurred. The government tried Combs on this incident of sex trafficking, and he was acquitted by the jury.

It is disingenuous for the government to claim that this "extensive history of violence"—the vast majority of which occurred over a decade ago, while Combs was addicted to drugs—means he is unable to show he is not a danger to the community now. How is it that Combs—who has been in this institution for 11-months——has not been in any fights whatsoever, yet he cannot establish by clear and convincing evidence that he does not pose a danger to the community? Moreover, Combs will submit to any conditions the Court views as sufficient.

In closing on this point, we ask the Court to focus on Combs's time in jail. Violent people are violent in jail as well. They fight with inmates, they challenge the prison staff, they sometimes align themselves with violent groups so they can be more violent. That Sean Combs has been free of violence of every sort is important to understanding that man he is today. He has shown nothing but respect for the criminal justice system and everyone in it, from his first minute in jail until now. There is no reason to believe he will be violent or threatening to anyone in any manner.

B.   Sean Combs Is Not a Risk of a Flight

The government cannot seriously argue that Combs is a risk of flight given his history of *flying to* New York, under circumstances much greater than now, to face his impending federal case head on. He is and always has been an active participant in his defense and would not make the decision to flee when he has prevailed against the most serious charges against him. When Combs was facing a life sentence, he did everything one man could do to show his desire to come to court—now that he is facing much less than that, there is no credible reason to believe he would flee. In addition, as the Court is aware, he is an active, supportive, loving father to seven children, four of whom have spent the last almost eleven months without the presence of either parent. Combs is focused on returning to his life with his children and will not run from his responsibilities to his children or this Court.

---

[12] Tr. at 5175:18-5175:23 (June 9, 2025) (Jane Direct); Tr. at 5793:5-5794:22 (June 12, 2025) (Jane cross).
[13] Tr. at 5180:20-5181:8 (June 9, 2025) (Jane Direct), Tr. 5807:2-580:7 (June 12, 2025) (Jane cross).
[14] Tr. 5179:15-5180:13 (June 9, 2025) (Jane Direct)
[15] Tr. 5182:3-5182:4 (June 9, 2025) (Jane Direct)

Hon. Arun Subramanian
August 3, 2025

      For the foregoing reasons, we ask that the Court release Combs on whatever conditions this Court believes are necessary pending his sentencing on October 3, 2025. We thank the Court for its consideration.

      Respectfully submitted,

      /s/ *Marc Agnifilo*
      Marc Agnifilo
      Teny R. Geragos
      Alexandra Shapiro
      Jason D. Driscoll
      Nicole Westmoreland
      Xavier Donaldson
      Brian Steel
      Anna Estevao

cc:    Counsel for the government (via ECF and email)