UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>SEAN COMBS,<br>      Defendant. | 24-CR-542 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

  After an eight-week trial, a jury convicted Sean Combs of two counts of transporting people for prostitution under the Mann Act. Dkt. 447. Before the government rested its case, Combs moved for acquittal under Rule 29. Tr. 7352; Fed. R. Crim. P. 29. The Court reserved its decision under Rule 29(b), and Combs renewed his motion after the verdict. Tr. 7391; Dkt. 485. He also moved for a new trial under Rule 33. Dkt. 485; Fed. R. Crim. P. 33(a). For the following reasons, both motions are DENIED.

## BACKGROUND

  The government first indicted Combs in September 2024 for violations of the Mann Act, for sex trafficking, and for a racketeering conspiracy. Dkt. 2. In its third and final indictment, the government's case was built on Combs's actions beginning in 2004 and continuing over the next two decades. Dkt. 209 ¶¶ 1, 6, 13, 17. The government alleged that Combs arranged for and paid men to travel across the United States and internationally to have sex with Combs's girlfriends, Cassie Ventura and Jane. *Id.* ¶¶ 12, 18, 20. Further, the government alleged that Combs transported Ventura and Jane to have sex with those men, gave them illegal drugs, and physically abused them. *Id.* This, the government argued, was all the product of the "Combs Enterprise"—a criminal organization comprised of Combs, his businesses, and his employees. *Id.* ¶¶ 7, 11. On the government's telling, that organization existed for lots of reasons: not only to run "a global business in the media, entertainment and lifestyle industries," but also to "fulfill[] the personal desires of Combs, particularly those related to Combs'[s] sexual gratification." *Id.* ¶ 11 (capitalization altered).

  The case went to trial. After the government rested, Combs moved for acquittal. Tr. 7352. That motion focused mostly on racketeering and sex trafficking but also contested the Mann Act charges. Tr. 7352–91. With respect to the Mann Act, Combs argued that the escorts who testified didn't travel across state lines, that they disavowed that they were paid for sex or engaged in prostitution, and that they sometimes were paid even when they didn't have sex. Tr. 7390–91. The Court withheld its decision, and the charges went to the jury. Tr. 7391.

The jury agreed with Combs about the sex-trafficking and racketeering charges, acquitting him on both. Dkt. 447. But it disagreed with Combs about the Mann Act, finding him guilty. *Id.* Combs now renews his Rule 29 motion and also moves for a new trial under Rule 33. Dkt. 485; Fed. R. Crim. P. 29(c)(1), 33(a).

## LEGAL STANDARDS

"[O]n the defendant's motion" a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Evidence is insufficient to sustain a conviction only if it is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013) (citation omitted). As the Second Circuit has explained, "[a] defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011).

Under Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). "In the exercise of its discretion, the court may weigh the evidence and credibility of witnesses. At the same time, the court may not wholly usurp the jury's role." *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000) (internal citation omitted). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convicted.'" *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (quoting *Ferguson*, 246 F.3d at 134). Accordingly, "the court must 'examine the entire case, take into account all facts and circumstances, and make an objective evaluation,' keeping in mind that the 'ultimate test' for such a motion is 'whether letting a guilty verdict stand would be a manifest injustice.'" *United States v. Landesman*, 17 F.4th 298, 330 (2d Cir. 2021) (quoting *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018)).

## DISCUSSION

Combs makes two types of arguments under Rule 29: legal ones about the correct definition of prostitution, and factual ones about the evidence at trial. On Rule 33, he argues that the evidence on the acquitted counts prejudiced the jury on the counts of conviction.

### I. Rule 29 Legal Arguments

The legal arguments in Combs's Rule 29 motion turn on what the word "prostitution" means in the Mann Act. The Act has two clauses. Both share the same act element: transporting somebody

2

in interstate or foreign commerce. 18 U.S.C. § 2421(a). But they have different intent requirements. The first clause—the one at issue here—requires that the defendant intend that the transported person "engage in prostitution." *Id.* The second clause—a broader catchall—requires that the defendant intend for the transported person to engage in "any sexual activity for which any person can be charged with a criminal offense." *Id.* Together, they read:

> "Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense …." *Id.*

At trial, Combs proposed that the jury instructions define prostitution as "engaging in sexual activity for money or its equivalent." Dkt. 273 at 56 (citing Black's Law Dictionary and state law definitions). The Court adopted Combs's definition in its instructions to the jury, which proceeded to convict Combs under that definition. Dkts. 424 at 49 (jury charge); 447 (verdict). Then Combs changed his mind. Now he argues that his proposed definition was wrong all along. Dkt. 486 at 25–37. Prostitution, he says, instead requires either that the defendant have a commercial motive, that the buyer has sex with the seller, or both. *Id.* at 25. That would mean that there was never any prostitution involving Combs, who lacked a financial motive and didn't directly have sex with any of the men he hired. On his telling, applying a broader definition would create constitutional problems. These arguments don't hold water for the reasons below.

### A. Combs didn't forfeit or waive these challenges

The first question is whether Combs can bring a legal challenge to his conviction on a Rule 29 motion. The government contends that Combs should have made his challenges earlier under Rule 12 (and so he forfeited them) and that the instruction given to the jury on the definition of prostitution was of his own devising (and so he waived any claim of error). Neither argument persuades the Court.

*First*, Combs can bring his legal challenges under Rule 29 despite not raising them earlier. These challenges are routinely made and decided by courts in this circuit, including the Second Circuit itself. *See, e.g.*, *United States v. Soler*, 759 F.3d 226, 228–29 (2d Cir. 2014); *United States v. Dennis*, 132 F.4th 214, 227–29 (2d Cir. 2025); *United States v. Lopez*, 143 F.4th 99, 105–06 (2d Cir. 2025).

*Second*, Combs didn't waive his arguments concerning the definition of prostitution by proposing the instruction the Court gave. To be sure, this case involves an unusual series of events. Combs proposed the instruction, the Court adopted it, and now Combs says that it was wrong the whole time. Ordinarily, the invited-error doctrine would bar this kind of challenge to the instructions. *See United States v. Boyle*, 2010 WL 4457240, at *10–11 (S.D.N.Y. Oct. 27, 2010) (on a Rule 33 motion); *United States v. Klein*, 216 F. App'x 84, 90 (2d Cir. 2007) (on appeal). But Combs argues that his Rule 29 motion doesn't challenge the jury instructions but instead turns on what the definition of prostitution *should* be. On that view, the jury instructions aren't relevant to his arguments.

3

Combs is right. In *Musacchio v. United States*, the Supreme Court held that "[a] reviewing court's limited determination on sufficiency review … does not rest on how the jury was instructed." 577 U.S. 237, 243 (2016). Though that holding addressed only whether the Due Process Clause requires that an appeals court abide by erroneous jury instructions given below that *advantaged* a defendant, the Second Circuit extended that reasoning shortly afterward. In *United States v. Blaszcak*, it held that this principle also applied when the jury instructions *disadvantaged* a defendant. 947 F.3d 19, 31 (2d Cir. 2019), *vacated on other grounds*, 141 S. Ct. 1040 (2021). There, like here, the defendant failed to object to the jury instructions but then challenged the evidence based on a different interpretation under Rule 29. *Id.* Relying on *Musacchio*, the Second Circuit held that "[i]n answering this question, [it] was not bound the district court's jury instruction." *Id.* Separately from this line of cases, the Second Circuit recently got to the same place in *United States v. Dennis*, addressing a Rule 29 challenge even though it turned on a limiting definition that the defendant didn't insist be included in the jury instructions. 132 F.4th at 228–35. The Court did find the defendant's *Rule 33* challenge to those instructions forfeited, *id.* at 235, but Combs isn't making that kind of argument here. These cases support Combs's contention that the *actual* jury instructions aren't relevant to his Rule 29 challenge. So he isn't barred from now arguing that the Mann Act means something different.

### B. Combs's newly proposed definition of prostitution is wrong

Combs argues that prostitution, properly defined, has two elements absent from this case. First, the defendant must have a financial motive. Second, the exchange of money for sex must be bilateral—whoever pays for the sex must engage in it. Both arguments share a similar structure. Each posits that the definition of prostitution at the time of the Mann Act's passage was overbroad in some respect; then each suggests a way to narrow that definition to avoid potential constitutional problems. If Combs is right, then his convictions, even on an alternative theory like aiding and abetting, should be reversed because no prostitution occurred at all. But both arguments fail. Combs got it right the first time: The correct definition of prostitution in the Mann Act is sex in exchange for money or its equivalent. And that definition poses no constitutional problem.

#### 1. Prostitution means sex for sale

To any modern reader, the plain meaning of prostitution is sex for sale. Every modern dictionary the Court consulted says the same thing. *See, e.g.*, *Prostitution*, Oxford English Dictionary ("the practice or occupation of engaging in sexual activity with someone for payment"); *Prostitution*, Merriam Webster ("the act or practice of engaging in sex acts and especially sexual intercourse in exchange for pay"); *Prostitution*, Black's Law Dictionary (12th ed. 2024) ("The practice or an instance of engaging in sexual activity for money or its equivalent; commercialized sex.").

The Mann Act's history doesn't suggest that a different definition applies. True, in 1917, the Supreme Court indicated that prostitution as used in the statute could be "for hire or without hire." *United States v. Caminetti*, 242 U.S. 470, 486 (1917). And that appears to reflect how the word was used at the time. *See, e.g.*, Black's Law Dictionary (2d ed. 1910) (defining "prostitution" as "common lewdness; whoredom"). But the Court walked away from that expansive definition three

decades later in *Cleveland v. United States*, recognizing that prostitution "normally suggests sexual relations for hire." 329 U.S. 14, 17 (1946). And while *Cleveland* didn't explicitly overturn *Caminetti*, its definition of prostitution was key to its reasoning. *Id.* at 17–18 (reasoning that "debauchery" differs from "prostitution" in the statute because debauchery doesn't require payment). That was the Supreme Court's last word on the matter before 1986.

In 1986, Congress amended the Mann Act, cementing the commonsense definition of prostitution. It struck the entirety of § 2421(a) and reenacted it, re-inserting the prostitution clause but cutting the law's "anachronistic features" like the "debauchery" and "immoral purpose" provisions. H.R. Rep. No. 99-910 at 3; Child Sexual Abuse and Pornography Act of 1986, Pub. L. 99-628, 100 Stat. 3511-12. Congress is presumed to have been aware of the *Cleveland* Court's interpretation of prostitution and to have adopted it when re-enacting the statute. *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 75 (2d Cir. 2022). That definition is also what prostitution unambiguously meant at the time of amendment: "an act of sexual intercourse or any unlawful sexual act for hire." *Prostitution*, Black's Law Dictionary (5th ed. 1979); *Prostitution*, Black's Law Dictionary (6th ed. 1990) ("act of performing … a sexual act for hire"); *Prostitution*, Oxford English Dictionary (2d ed. 1989) ("The offering of the body to indiscriminate lewdness for hire."); *Prostitution,* Webster's New Collegiate Dictionary (9th ed. 1983) ("[T]he act or practice of indulging in promiscuous sexual relations esp. for money.").[1]

To think that Congress instead wanted to revert to *Caminetti*'s expansive definition of prostitution disregards the entire purpose of the amendment. It eliminated provisions that had been criticized—as Combs criticizes them now—for their alarming scope. *Caminetti*, 242 U.S. at 496–97 (McKenna, J., dissenting); *Cleveland*, 329 U.S. at 21–22 (Rutledge, J., concurring). It would make little sense for Congress to get rid of those provisions but, at the same time, preserve a sweeping definition of prostitution with the same effect. *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 222 (2008) ("The amendment is relevant because our construction … must, to the extent possible, ensure that the statutory scheme is coherent and consistent."). Using the older, *Caminetti*-era meaning of prostitution "would undo what Congress plainly sought to achieve when it scrapped" the debauchery and immoral purpose provisions. *San Francisco v. EPA*, 604 U.S. 334, 349 (2025).

So, consistent with prostitution's ordinary meaning, how the *Cleveland* Court understood it, the judicial state of play when Congress last amended the provision, and how Congress would have understood the term at the time of amendment, the right definition is the one Combs proposed

---

[1] Combs offers a slightly different account of this history, which focuses on a summary order that the Supreme Court issued in 1954. In *Amadio v. United States*, the Court vacated a Seventh Circuit decision that affirmed a Mann Act conviction. 348 U.S. 892 (1954). Neither this two-sentence summary order nor the opinion below have anything to do with the definition of prostitution in the Mann Act. In *Amadio*, the defendant was convicted under the "immoral purpose" provision. *United States v. Amadio*, 215 F.2d 605, 607–08 (7th Cir. 1954). And the problem the Supreme Court (and dissent below) appeared to identify was that the indictment wasn't tethered to the statutory language. *Id.* (Major, C.J., dissenting); *Amadio*, 348 U.S. at 892.

at trial and that the Court used in its jury instructions: engaging in sexual activity for money or its equivalent.

But Combs isn't satisfied with that definition. He says that prostitution has two additional requirements, neither of which is grounded in the text of the statute, the meaning of prostitution at the time of the Mann Act's enactment in 1910, or its meaning when the statute was amended in 1986. For the following reasons, the Court rejects Combs's proposed additional requirements.

### 2. *A defendant need not have a financial motive*

Combs first argues that prostitution in the Mann Act requires that a defendant have a financial motive. There's nothing in the text of the statute to support this requirement, and it doesn't make any sense in this context. Combs wasn't convicted of prostitution, but rather transporting others for prostitution. Combs seems to be conflating two things: the definition of prostitution and the motive of the defendant who transports somebody for prostitution. The statute requires only the "intent that [the transported person] engage in prostitution." 18 U.S.C. § 2421(a). Combs's argument imposes an additional mental-state requirement for *the transporter* and grafts it onto the word "prostitution"—a word that by itself doesn't contemplate anybody but the parties involved in the sex act. What happened in this case was transportation for prostitution even under Combs's understanding of the term: Combs transported the escorts (who were financially motivated) and intended for them to engage in prostitution. Whether Combs himself was financially motivated never enters the calculus. There's no basis to adopt Combs's proposed financial-motive requirement for defendants in Mann Act cases.

### 3. *A bilateral exchange of money for sex is not required*

Combs also argues that prostitution is a strictly bilateral transaction. One party pays the other for sex, then those same two parties have sex. That definition would narrow prostitution almost out of existence. It would exclude any situation in which a person pays a third party (like a brothel) to have sex with an employee. To support that narrow construction, Combs invokes a series of state-court decisions that he says adopt his definition. Putting aside that none of these decisions interprets the Mann Act (as the government points out), these cases aren't good evidence of the meaning of the word prostitution. To the extent that these cases are relevant, they stand only for the proposition that states have defined prostitution differently within their statutes.

The cases can be grouped into two general categories. The first group is the masturbation cases. In each of these a defendant either masturbated in front of somebody else for money or offered to. *See, e.g.*, *People v. Greene*, 441 N.Y.S. 2d 636 (Crim. Ct. 1981); *Commonwealth v. Bleigh*, 586 A.2d 450 (Pa. Sup. Ct. 1991); *State v. Turnpaugh*, 741 N.W. 2d 488 (Wisc. Ct. App. 2007); *State v. Mayfield*, 900 P.2d 358 (N.M. Ct. App. 1995).[2] In each, the defendant was charged with violating a state prostitution statute. *Id.* Each of those statutes defined prostitution in a way that the court

---

[2] Combs also cites *Metwally v. City of New York*, 187 N.Y.S. 3d 719 (App. Div. 2d 2023), but this case cites the law examined by *Greene* in passing and is otherwise irrelevant to the definition of prostitution.

6

interpreted to require sexual contact between the people involved. *Greene*, 441 N.Y.S. at 40–41 (citing state law that defined prostitution as "sexual conduct with another person in return for a fee"); *Bleigh*, 586 A.2d at 453 (interpreting prostitution to exclude "self-masturbation for hire without any physical contact between performer and viewer"); *Turnpaugh*, 741 N.W. 2d at 489 (interpreting the phrase "nonmarital sexual intercourse for anything of value"); *Mayfield*, 900 P.2d at 360 (interpreting "sexual act for hire" where state law defined a "sexual act" as "sexual intercourse, cunnilingus, fellatio, masturbation of another, anal intercourse or the causing of penetration to any extent … of another").

Combs argues that these cases show that prostitution requires a bilateral exchange of money for sex. Not so. These cases involved the question of whether there's prostitution when there's no sexual contact at all between the participants. That isn't at issue here given that there's no question that Ventura, Jane, and the escorts had sex. The cases didn't address whether prostitution requires a bilateral exchange of money and sex between only those participants, as Combs insists. And even if they were relevant, these cases didn't turn on the bare word "prostitution," but instead on the definitions provided in each statute.

The second group of cases concerns strip clubs and commercial voyeurism. A few of these cases simply aren't relevant. One did nothing but note that some forms of commercial voyeurism are distinct from prostitution. *See Smoot v. State*, 729 S.E. 2d 416, 426 (Ga. Ct. App. 2012). In another, a court held that a dancer didn't engage in prostitution with a patron who touched the clothing covering her genitals, because Missouri law required touching of "the genitals themselves." *State v. Burgess*, 669 S.W.2d. 637, 639 (Mo. Ct. App. 1984). But again, recall that Combs's proposed definition of prostitution turns on whether the money and sex flow between the same people, not whether sexual touching happens *at all*. And notably in *Burgess*, the statute didn't require a bilateral exchange of sex and money, but covered situations where "something of value [is] received by the person *or by a third person*," *id*. at 639 (emphasis added), undermining Combs's argument.

Two other cases in this category appear more relevant on first blush. In *State v. Taylor* and *Wooten v. Superior Court*, courts in Arizona and California confronted the setup of a theater or club where customers could pay to watch employees touch each other sexually. 808 P.2d 314 (Ariz. Ct. App. 1990); 113 Cal. Rptr. 2d 195 (Ct. App. 2001). In *Taylor*, the Arizona court held that the charged employee—who engaged in the touching with another dancer—was "legitimately prosecuted under Arizona's prostitution statutes," which required "sexual conduct with another person." 808 P.2d at 316, 319. That was so even though the defendant didn't pay the other dancer, undermining Combs's proposed construction. And just as in *Burgess*, the Arizona statute made clear that the fee arrangement could be with the person engaged in the sex "or any other person." *Id*. at 316. So that case also cuts against Combs.

Next, in *Wooten*, the California court held that the purveyors of a similar club weren't involved in prostitution. 113 Cal. Rptr. 2d at 204–05. Unlike *Taylor*, a combination of the statutory definition of prostitution and prior caselaw led to the conclusion that "California's statute was not written

7

sufficiently broadly to encompass a sexual transaction for a customer who engages only as voyeur." *Id.* at 205 (citing *Taylor*, 808 P.2d at 316). That's the conclusion that Combs would have this Court reach for the Mann Act as well. But he doesn't explain why the definition of prostitution in a California statute and interpreted by a California state court should control the definition of prostitution in a federal statute. That problem is exacerbated by the array of definitions used by the states—why should one control above all others? Indeed, in *Wooten* itself, the court observed that Wisconsin courts had adopted a broader interpretation of that state's laws that would include instances where a third party paid for the sex, such as a businessman paying someone to have sex with his client, demonstrating that these state decisions are state specific. *Id.* at 434 ("If California's statute contained the language that was included in Wisconsin's statute, the sexual conduct alleged herein could constitute prostitution.").

Finally, in *People v. Paulino*, a New York trial court addressed a challenge mounted by a purveyor of sex for hire to his conviction for promoting prostitution. 2005 N.Y. Misc. LEXIS 3430 (N.Y. Sup. Ct. Aug. 4, 2005). The New York law at issue, he argued, should apply also to pornographers—and, because it wasn't enforced against pornographers, his case was selective prosecution in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id.* at *4, *6. The court rejected that argument because it would "eradicate[] the traditional bilateral notion of prostitution, which entails A paying B for sexual activity to be performed on A." *Id.* at *8. The Court isn't persuaded by this interpretation. *Paulino* reasoned that under New York law, a bilateral exchange of money for sex is required, drawing inferences from prior New York cases and a practice commentary (which itself does not address the bilateral-exchange issue directly). It cites no authority for its assertion that this is the "traditional" definition more generally. *Paulino* instead begins with the premise that pornography simply could not be covered by the definition and works backward to explain why. Some of its reasoning rested on the definition it divined from New York authorities, while other parts rested on the premise that a corporation enjoys First Amendment protection while a brothel doesn't. *See id.* at *12–13.[3]

### C. Defining prostitution as sex for money doesn't create constitutional problems

Combs argues that any definition of prostitution broader than the one he suggests would create constitutional problems. Specifically, he says that the statute would be void for vagueness, violate substantive due process rights, create "federalism problems," and violate the First Amendment. Dkt. 486 at 35. Even though he makes all his arguments under the auspices of statutory interpretation, he also mounts a standalone challenge to his conviction under the First Amendment. None of these arguments is persuasive.

---

[3] Like *Paulino*, some of Combs's cited cases invoke First Amendment concerns. *See, e.g.*, *People v. Freeman*, 46 Cal. 3d 419 (1988). Those issues are discussed below.

8

### 1. *Void for vagueness*

A statute is void for vagueness if it: (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010). As his counsel confirmed at argument, Combs challenges the Mann Act as applied to him. Arg. Tr. at 13. When, as here, the "statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993).

Combs argues that the Act is void for vagueness for four reasons. First, because the word prostitution has come to mean different things over time—for example, from *Caminetti* in 1917 to *Cleveland* in 1946. Second, because the statute doesn't include a definition. Third, because states have defined it differently over time. And fourth, because the Act hasn't been used before to prosecute somebody in Combs's position. The Court takes each in turn.

*First*, the word's changing nature has little to do with Combs's challenge. His argument is that the outer boundaries of the word's meaning have changed. On his account, the definition was previously so broad that it encompassed general lewdness, divorced from any transaction. And since then, the definition narrowed to require the exchange of money. But neither of these changes has moved his activities in or out of statute's ambit. To be sure, some other defendant, in some other case, might have a voidness argument to make. But Combs doesn't show that the Mann Act's text doesn't plainly apply to *him*, where the evidence showed that he transported escorts for them to have sex for money.

*Second*, the lack of a definition isn't a problem. As the government notes, "a statutory term is not impermissibly vague simply because it lacks a statutory definition." *United States v. Concepcion*, 139 F.4th 242, 250 (2d Cir. 2025). "To be sure, the absence of a statutory definition can be a relevant consideration in the void-for-vagueness inquiry." *Id.* But "the plain meaning of the statute's wording" along with "a scienter requirement" can "defeat a vagueness challenge." *Id.* (cleaned up). As discussed earlier, the plain meaning of prostitution is sex for money. Paying an escort to have sex with somebody is exactly the kind of activity that "a person of ordinary intelligence" would have "fair notice" is meant by prostitution. *Id.* at 251. And on top of that, the Mann Act's scienter requirement also cuts against vagueness; a defendant must transport somebody "knowingly" and "with intent" that they engage in prostitution. 18 U.S.C. §2421(a); *see also Concepcion*, 139 F.4th at 250.

*Third*, the state-law definitions that Combs raises aren't relevant. Though the Mann Act has a provision that integrates state law, that isn't the one that Combs was convicted under. *See* 18 U.S.C. § 2421(a); Dkts. 424, 447. If Combs's argument is that a constellation of conflicting state laws renders the federal term vague, this presents two further problems. The first is that, as has been already discussed at length, the state-law cases that Combs cites don't conflict with the definition the Court used, and even if they did, they interpreted statutes with different language. The second is that, even if there were a conflict, the Court is skeptical that a federal statute could be

9

de-fanged by state laws that occupy a similar field; the principles of preemption and intergovernmental immunity run in the other direction.

*Fourth*, it makes no difference that this statute may not have been applied this way before by the government. Combs argues that he's "the only person ever convicted" under the Mann Act for his conduct. Dkt. 486 at 12.[4] He cites Department of Justice guidance against charging prostitution customers under the Mann Act. *Id.* at 21–23. But "criminal laws are for courts, not for the Government, to construe." *Abramski v. United States*, 573 U.S. 169, 191 (2014). And "the fact that defendant is the first person to be prosecuted under [a provision for specific conduct] does not render [the] provision vague." *United States v. Harmon*, 2021 WL 1518344, at *8 (D.D.C. Apr. 16, 2021); *see also United States v. Ulbricht*, 31 F. Supp. 3d 540, 565 (S.D.N.Y. 2014). That's especially true where, as here, the defendant's conduct fits squarely into the statute's text.

### 2. Substantive due process

Combs fails to show that his conviction implicates any right or liberty interest protected by the Fifth Amendment. He argues that laws banning prostitution "are hard to square" with Supreme Court decisions recognizing substantive-due-process rights related to sexual activity. In doing so, he leans on two cases that are inapposite. First, he cites *Obergefell v. Hodges*, which concerned only the right to marriage, not any specific right to participate in sexual activity. 576 U.S. 644 (2015). Second, he leans more heavily on *Lawrence v. Texas*, which did concern sexual activity. 539 U.S. 558 (2003). But as the government points out, the *Lawrence* court explicitly wrote that it wasn't addressing prostitution. *Id.* at 578 ("This case does not involve … prostitution."). Combs's argument is cabined to suggestive, inferential support from authorities like these. He doesn't invoke the *Glucksberg* test, provide any "careful description of the asserted fundamental liberty interest," or explain why the right to pay somebody for sex is "implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citation and internal quotation marks omitted).

### 3. Federalism

Combs relies on *Ciminelli v. United States* for the proposition that the scope of a federal statute should be narrowed when it governs "a vast array of conduct traditionally policed by the States." 598 U.S. 306, 316 (2000) (quoting *Cleveland v. United States*, 531 U.S. 12, 27 (2000)). Because the states regulate prostitution, he says, the word "prostitution" should be read as narrowly as possible. This argument misapplies the federalism canon. The canon, as deployed in *Ciminelli* and elsewhere, requires Congress to "convey[] its purpose clearly" before it's "deemed to have significantly changed the federal-state balance in the prosecution of crimes." *Cleveland*, 531 U.S. at 25 (citation and internal quotation marks omitted). That's met here. The statute criminalizes the *interstate* transport of people for prostitution, a concern that could hardly be "traditionally policed

---

[4] The government disagrees, pointing to Mann Act convictions where, like Combs, the transporting defendant lacked a financial motive. *See, e.g., United States v. Wheeler*, 444 F.2d 385, 388 (10th Cir. 1971); *Forrest v. United States*, 363 F.2d 348, 349 (5th Cir. 1966).

by the States." *Ciminelli*, 598 U.S. at 316; *accord Western Union Telegraph Co. v. Call Pub. Co.*, 181 U.S. 92, 100 (1901) ("This court has often held that the full control over interstate commerce is vested in Congress, and that it cannot be regulated by the states."). Moreover, even if prostitution *were* traditionally regulated by states, Congress's intention to criminalize activity related to prostitution is crystal clear from its use of the word "prostitution" in the statute. There's no ambiguity there.

    4. *The First Amendment*

Combs argues that because he's an amateur pornographer and consumer of pornography, his conviction violates his First Amendment rights. That argument fails for two reasons.[5]

*First*, Combs's conduct is not protected by the First Amendment. First Amendment protection applies "only to conduct that is inherently expressive." *Rumsfeld v. F. for Acad. and Inst. Rts., Inc.*, 547 U.S. 47, 66 (2006). Conduct is inherently expressive if there's both "an intent to convey a particularized message" and the "likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation and quotation marks omitted). Though film is an expressive medium protected by the First Amendment, "at some point, it must certainly be true that otherwise illegal conduct is not made legal by being filmed." *California v. Freeman*, 488 U.S. 1311, 1313 (1989) (O'Connor, J., in chambers); *see also Rumsfeld*, 547 U.S. at 66 ("If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it."). And the same goes for the desire to view a pornographic performance—at some point, illegal activity can't be laundered into constitutionally protected activity just by the desire to watch it. Combs's conduct goes far beyond that point. Evidence at trial showed that when Combs filmed he didn't typically give notice ahead of time or ask for consent, as a film producer would; and that he masturbated, suggesting that the purpose was his immediate sexual gratification. Tr. 569 (no notice or consent to film), 4818 (same), 565 (masturbation). In fact, he sometimes participated in the sexual activities. The evidence showed that Combs "and the escort would both … have intercourse" with Ventura at the same time. Tr. 560. And after Ventura or Jane finished having sex with an escort, Combs would have sex with Ventura or Jane, often while the escort's semen was still on their body. Tr. 4626–27. At other times, Ventura would "put [the men's] semen on [Combs], "usually on his chest, on his nipples." Tr. 561.

Combs's incidental filming resembles the facts of *Arcara v. Cloud Books, Inc.*, in which a bookstore could be shut down to combat the prostitution happening on its premises. 478 U.S. 697 (1986). Even though that restriction affected the distribution of pornographic materials, the shutdown didn't implicate the First Amendment. *Id.* at 706–07. The Court "underscored the fallacy of

---

[5] Combs doesn't make a facial overbreadth challenge, but the Court notes anyway that the definition of prostitution as sex for hire is unlikely to have "presumptively impermissible applications … [that] far outnumber any permissible ones." *United States v. Stevens*, 559 U.S. 460, 481 (2010). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *United States v. Williams*, 553 U.S. 285, 293 (2008) (cleaned up and citations omitted).

seeking to use the First Amendment as a cloak for obviously unlawful … sexual conduct by the diaphanous device of attributing protected expressive attributes to that conduct." *Id.* at 705. In concurrence, Justice O'Connor emphasized that "[a]ny other conclusion would lead to the absurd result that any government action that had some conceivable speech-inhibiting consequences, such as the arrest of a newscaster for a traffic violation, would require analysis under the First Amendment." *Id.* at 708 (O'Connor, J., concurring).

Against that, Combs relies on three state court cases; none moves the needle. First is the *Paulino* case from New York, discussed earlier. Yes, the *Paulino* court worried about the consequences of extending prostitution laws to commercial pornography. *Paulino*, 2005 N.Y. Misc. LEXIS 3430, at *12. But Combs didn't engage in anything resembling the adult-film distributors that *Paulino* assumed would be "shielded by the First Amendment." *Id.* at *13. Recall that Combs doesn't bring a facial challenge, but instead only challenges the statute as applied to him. Arg. Tr. at 13. That means that just as *Paulino* confronted a factual situation far from the core of any protected activity, so too does this Court.

The other two are cases where prostitution convictions were invalidated based, at least in part, on free-speech considerations: *People v. Freeman*, a California Supreme Court case that held that a California statute on prostitution would violate the First Amendment if applied to a pornographer, 46 Cal. 3d 419 (1998), and *State v. Theriault*, a New Hampshire Supreme Court case involving a defendant who paid to videotape sex between other people, 960 A.2d 687 (N.H. 2008). But in both cases, the courts' free-speech concerns arose from the fact that the defendant's purpose was to film a performance, not sexual arousal or gratification. That isn't the case here. *See Freeman*, 46 Cal. 3d at 424–25 ("There is no evidence that defendant paid the acting fees for the purpose of sexual arousal or gratification, his own or the actors. Defendant, of course, did not himself participate in any of the sexual conduct."); *id*. at 429 ("the acts of alleged 'prostitution' in this case were not crimes independent of and apart from payment for the right to photograph the performance"); *Theriault*, 960 A.2d at 689–90 (there was "no evidence or allegation that the defendant acted with the purpose of sexual arousal or gratification").

*Second*, even if Combs's conduct falls under the First Amendment's protection, his conviction doesn't violate it. If speech is implicated, then the Mann Act is a content-neutral restriction that has an incidental effect on speech. Such restrictions are analyzed under the *O'Brien* test. *United States v. O'Brien*, 391 U.S. 367, 377 (1968); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 296 (2000). The *O'Brien* test is satisfied if (1) the government has the power to enact the law, (2) it furthers an important or substantial government interest, (3) that interest is unrelated to the suppression of expression and (4) the restriction is no greater than essential to further the government interest. *City of Erie*, 529 U.S. at 296–301.

Combs challenges only the second prong: whether the law furthers an important or substantial government interest. At the outset, the government "has a strong interest in controlling prostitution within its jurisdiction." *Freeman*, 488 U.S. at 1313 (O'Connor, J., in chambers); *see also Kilgore v. City of South El Monte*, 3 F.4th 1186, 1192 (9th Cir. 2021) ("[T]here is no question that curtailing prostitution … is a substantial government interest."); *Paulino*, 2005 N.Y. Misc. LEXIS 3430, at

\*14 ("[P]rostitution carries with it a host of ills including AIDS, venereal diseases, drugs, pimping, loan sharking, physical abuse and rape."). Add to that the significant federal interest in halting the interstate sex trade, which may be associated with all manner of other criminal conduct. Contrary to Combs's assertion, his own activities implicated many of these concerns. While paying for sex, he enabled commercial prostitution, distributed illegal drugs, and was physically violent.

Against that, Combs argues that "[t]he government's proffered interest in 'controlling prostitution' is not implicated in this unprecedented case" because there are no minors involved. Dkt. 499 at 24. He asserts that the legislative history around the 1986 amendment to the Mann Act "made clear" that "the statute was not intended to apply to transportation of fully consenting adult males." Dkt. 486 at 52. His evidence consists entirely of (1) a citation to the title of the act that included this amendment (the "Child Sexual Abuse and Pornography Act of 1986") and (2) the House Report summarizing the act's purposes. *Id.* That the title and legislative history focused on children is unsurprising when one of the act's primary functions was to create new child pornography crimes. But at the same time, Congress amended § 2421(a) in a way that obviously included more than just conduct involving minors. Pub. L. 99-628, 100 Stat. 3511-2 (criminalizing transport for "any sexual activity for which any person can be charged with a criminal offense"). And looking to the rest of the text of § 2421(a), it plainly isn't limited to minors, who are specifically addressed in a different section. *Compare* 18 U.S.C. § 2421(a) ("Whoever knowingly transports any individual ….") *with* 18 U.S.C. § 2423(a) ("A person who knowingly transports an individual who has not attained the age of 18 years ….").

Finally, though Combs doesn't mention the fourth prong of *O'Brien*, the Court notes that the Mann Act isn't broader than necessary. "The requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation, and the means chosen are not substantially broader than necessary to achieve that interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 782–83 (1989). The first requirement is plainly met here, as the law works to curb the sex trade. And the second is also met because the law applies specifically to interstate transport, not more broadly to sex for hire itself.

\* \* \* \* \*

Combs is right that the Mann Act's text and application have changed over the last century. But that has little relevance to his conduct, which sits at the heartland of the Act's legitimate proscriptions. Unsurprisingly then, his conviction raises no constitutional problem.

## II.    There was sufficient evidence to convict under the definition adopted

Combs's fact-based challenge also fails. He argues that the evidence wasn't sufficient to convict him under the definition of prostitution used at trial. To sustain a conviction under the Mann Act, "one of the dominant purposes" of the transportation must be for the transported individual to "engage in prostitution." *United States v. Miller*, 148 F.3d 207, 211–13 (2d Cir. 1998) (interpreting the same language in § 2422). "It need not have been his only purpose or motivation, but it must have been more than merely incidental." *Id.* at 211. Combs's arguments all sound in the same tenor: that even if he paid escorts and they had sex with Ventura or Jane, he didn't intend to

13

pay for sex at the time of interstate travel. Dkt 486 at 38 (citing *United States v. Broxmeyer*, 616 F.3d 120, 129 (2d Cir. 2010)). Instead, he meant to pay only for their time. If they ended up having sex on that time (and even if that was foreseeable), it wasn't the object of the transaction.

To support that framing, Combs argues that the evidence at trial showed that sex was never part of the bargain. He points to evidence that the agencies that provided the escorts didn't advertise themselves as selling sex for money. Instead, they offered "time and companionship." Tr. 7057. Or alternatively, dancing and stripping services, but not sex. Tr. 1928–29. During the negotiation, Combs wasn't privy to any of the details other than "what [are] we doing" and "who's available." Tr. 540. One of the escorts "wouldn't have thought twice to think that [it] was prostitution." Tr. 312. Another, who massaged Ventura, was there only to "create what [he] called a sexy scene." Tr. 1895. At least one of the escorts also had sex with Ventura without payment and felt romantically attached to her. Tr. 274, 379–80, 1924–26. Finally, Jane and Ventura sometimes described the escorts are "entertainers" paid "to entertain." Tr. 479.

The problem for Combs is that the Court "defer[s] to … the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Griffith*, 284 F.3d 338, 348 (2d Cir. 2002) (quoting *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998)). And a great deal of evidence supported the competing inference that a dominant purpose of the transport was to pay for sex.

First, evidence at trial showed that both parties to the transactions acted as if they were engaging in prostitution. Each side worried that the other side was undercover police, a concern that wouldn't be relevant if Combs's intent hadn't been to pay for sex. At least one escort asked Combs whether he was a cop and Combs had Ventura ask multiple escorts the same. GX 3A-111 ("Hey, are you a cop?"); Tr. 530 (Ventura: "Sean wanted me to clarify if the person was a cop."). And Combs believed that the escorts were frequently being tested for sexually transmitted diseases as part of their job. Tr. 4590 (Jane: "He just said, why [wear a condom?] … [T]hese guys are safe. They get tested all the time."). Second, Ventura testified that the escorts were paid to ejaculate and to have sex with her, contrary to Combs's contention that they were paid for their time and companionship. Tr. 532 ("Q: For the escorts who you interacted with, what were they paid thousands of dollars to do? A: To ejaculate, to finish."); Tr. 533 ("Q: For all the dancers you interacted with, what were they paid … to do? A: To entertain and to also ultimately have intercourse with me."). Even the escort that Combs claims testified that he "wouldn't have thought twice to think it was prostitution" explicitly stated that he was paid money for sex and wasn't paid when he couldn't "sexually perform." Tr. 274, 246 ("Q: What did Cassie Ventura give you money for in around 2012? A: To have sex with her."). Jane testified that multiple men were routinely paid by Sean after they finished having sex with her. Tr. 4815–18. Third, their compensation was tethered to their performance at that job: "[W]hen escorts ejaculated without having been told to do so," Combs "wasn't pleased by their performance" and they "would take less money." Tr. 561; *see also* GX 3A-103. And fourth, even though some escorts also spent time with Ventura and Combs outside of sexual activity, others engaged in sexual activity on every single trip with both Ventura and Jane. Tr. 256 ("Q: Every time you met with Ms. Ventura and Mr. Combs, what was the purpose

14

of the meeting? A: To have sex with Cassie."); Tr. 4681 ("Q: Jane, in a typical hotel night, how would intercourse with an entertainer end? A: With them finishing on me."); Tr. 4737 ("Q: At the end of each hotel night with Kabrale, what, if anything, did you give to Kabrale? A: Money.").

Combs's other arguments fall flat. Yes, much of this evidence comes from after the escorts traveled. But it's still relevant and probative of Combs's intent beforehand. *United States v. Goffer*, 721 F.3d 113, 124 (2d Cir. 2013) ("Subsequent acts are frequently probative as to intent."). And to be sure, some of the escorts may have had mixed motives, as Combs points out. But the evidence still supported that Combs intended to pay the escorts for sex and that the escorts indeed had sex and got paid. Finally, even if the government relied on some circumstantial evidence, it also presented direct evidence in the form of Ventura's and Jane's testimony. And, in any event, "[a] jury's verdict may be based entirely on circumstantial evidence." *United States v. Rutigliano*, 790 F.3d 389, 402 (2d Cir. 2015) (quoting *Goffer*, 721 F.3d at 124). There was also sufficient evidence admitted at trial of interstate transport (of escorts, of Ventura, and of Jane) for paid sex. *See, e.g.*, GX 1402; GX 1406. For this reason, Combs's argument that the escorts who testified at trial didn't themselves travel between states isn't grounds for granting relief.

### III. No new trial is warranted under Rule 33

Combs says that he should get a new trial under Rule 33 because his RICO and sex trafficking counts shouldn't have been joined together with the Mann Act counts. *See* Fed. R. Crim P. 14. The evidence introduced to prove the former, he says, spilled over and prejudiced the jury against him on the latter. *See United States v. Hamilton*, 334 F.3d 170, 181–82 (2d Cir. 2003) (discussing "retroactive misjoinder"). These challenges are difficult to prevail on. As a general matter, a Rule 33 motion "should be granted only with great caution and in the most extraordinary circumstances." *Sanchez*, 969 F.2d at 1414. And on top of that, a defendant arguing prejudicial spillover "bears an extremely heavy burden." *Griffith*, 284 F.3d at 351. A court considers: (1) "whether the evidence that related to the dismissed charges was of a type that would incite or arouse the jury into convicting the defendant," (2) "the similarities and differences between the evidence relating to the dismissed charges and the evidence relating to the remaining charges," and (3) "the strength of the government's case on the remaining counts." *Id.* (quotation marks and citations omitted).

The government argues that these factors shouldn't come into play, and that Combs's argument should be "summarily rejected" because there's "no precedent for a new trial based on retroactive misjoinder following a split jury verdict." Dkt. 493 at 53. Putting aside whether that's correct (Combs disagrees), it's certainly correct that Combs is asking the Court to find retroactive misjoinder in an unusual circumstance. He says that the evidence that was introduced on the RICO and sex-trafficking charges prejudiced him on the Mann Act counts. But he was acquitted on the RICO and sex-trafficking counts. So his claim is that the jury was prejudiced against him because of the evidence of racketeering and sex trafficking, but still didn't him guilty of those same counts. As Combs concedes, the Second Circuit has never found spillover prejudice when the jury acquitted the defendant on the allegedly prejudicial charges. That's for good reason. "The absence of such spillover is most readily inferable where the jury has convicted a defendant on some counts

15

but not on others." *Hamilton*, 334 F.3d at 183. When "the jury was able to distinguish between counts or between defendants, and to assess separately the evidence pertinent to each, [there's] no basis for concluding that a new trial [is] warranted." *Id.* As a result, the typical articulation of retroactive misjoinder is that it kicks in only after "later developments—such as a district court's *dismissal* of some counts for lack of evidence or an appellate court's *reversal* of less than all convictions—render the joinder improper." *Id.* at 181 (quoting *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994)) (emphasis added). Neither of these scenarios ponders a split verdict.

Nevertheless, the Court declines to "summarily reject" Combs's argument without reaching the test. Dkt. 493 at 53. Applying the relevant factors, Combs fails to carry his "heavy burden" of showing spillover prejudice. *Griffith*, 284 F.3d at 351.

The Court takes the factors in reverse order, starting with the third: the strength of the government's case. As described earlier, the government at trial presented overwhelming evidence of Combs's guilt under the Mann Act on many occasions with respect to both Ventura and Jane. That evidence consisted of testimony from Ventura and Jane, testimony from the escorts involved, and evidence from text messages and emails. The government proved its case many times over. That by itself might be enough to dispose of Combs's challenge. But the other factors don't do much to help Combs either. He concedes that under the second factor "if the inflammatory evidence would have been admissible anyway on a separate trial for the remaining counts" then his "claim of spillover prejudice likely fails." Dkt. 486 at 59. That narrows any factual challenges to evidence unrelated to the Mann Act charges, like arson or forced labor, to give a few examples. But on the first factor, it isn't at all clear that this evidence worked to incite the jury or prejudice Combs. It weighs heavily that the jury declined to convict him on any of the counts related to that conduct. Had the prejudice indeed been so great, one would expect a jury to convict on the most relevant counts before it could spill over and infect the others. A new trial is not warranted.

## CONCLUSION

For these reasons, Combs's motion under Rules 29 and 33 is DENIED.

The Clerk of Court is directed to terminate Dkt. 485.

SO ORDERED.

Dated: September 30, 2025
New York, New York

                                                              ARUN SUBRAMANIAN
                                                              United States District Judge