UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SEAN COMBS,<br><br>　　　　Defendant,<br><br>―――――――――――――――――<br><br>CLAYTON HOWARD, Crime Victim, (Count 3)<br><br>　　　　Movant, | 24-cr-542(AS)<br><br>DECLARATION OF CLAYTON HOWARD IN SUPPORT OF MOTION RO ENFORCE CRIME VICTIM RIGHTS |

I, Clayton Howard, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on my personal knowledge:

1. I am the movant in the matter and submit this declaration in support of my Motion to Enforce Crime Victim's Rights Under 18 U.S.C. § 3771.

BACKGROUND AND VICTIM STATUS

2. I am a victim of sex trafficking crimes prosecuted in United States v, Sean Combs, Case No. 24-cr-542(AS), in this Court.
3. I was trafficked interstate from New York City to Lose Angles and from New York City to Miami by defendants Sean Combs and Casandra Ventura between approximately 2012 and 2019.
4. The Unites States Attorney's Office confirmed my status as a victim of sex trafficking during the investigation and prosecution of this case.
5. I am specifically identified as a victim in the government's Sentencing Memorandum, filed at Docket #516, page 41, where I am listed as a victim of Count 3 immediately following my other offender, Casandra Ventura.

6. During the trial, defendant Casandra Ventura testified under oath that she located and recruited me for sex trafficking through advertisements containing my photographs that were posted to backpage.com.

COOPERATION WITH PROSECUTION

7. From December 2023 through completion of the trial, although I was not called to testify, I served as a cooperating witness in this prosecution.
8. I provided substantial cooperation to the U.S. Attorney's Office and federal investigator, including:
    a. Flight boarding passes documenting my interstate travel
    b. Airline ticket receipts
    c. Hotel photographs and reservation confirmations
    d. Detailed dates, times, and locations of trafficking incidents
    e. Written statements and testimony regarding the defendants' conduct
    f. Documentary evidence that was used by prosecutors during the trial
9. My cooperation was material to build the prosecution's case against the defendant
10. I have documented my experiences in a memoir titles "Cassie: Victim or Coconspirator - The Story of Dave", which I have published and which details the abuse, intimidation, and harm I suffered.
11. It details the truthful conduct of Casandra Ventura inside the encounters, which was not one of an intimidated, and fearful woman.

ATTEMPTS TO EXECRISE CVRA RIGHTS

12. I have made multiple attempts to exercise my rights pursuant to 18 U.S.C. § 3771 as a victim of both Sean Combs and Casandra Ventura. The U.S. Attorney was aware of my claims against Ms. Ventura and acknowledge my victim status to attorney's they provided me in multiple email communications. These attorneys would then contact me to confirm my status as a victim witness seen by prosecutors and my importance in the pending prosecution of Mr. Combs.
13. A true and correct copy of communications between me and attorneys provided to me by the U.S. Attorney's Office beginning September 2024 and ending in February 2025 are attached as Exhibit A
14. On October 18, 2025, I sent a comprehensive letter to the United States Attorney's Office Victim-Witness Coordinator requesting victim status verification, case materials, assistance with Backpage Remission Program and information about my rights under the Crime Victims' Right Act.
15. A true and correct copy of the October 18, 2025, letter is attached as Exhibit B.
16. I sent this letter via email and U.S. mail to the addresses I found for the prosecutors assigned which can be obtained by reviewing the Civil Docket attorney information located on Pacer.

17. The prosecutors contacted were as follows:
    a. Emily Johnson
    b. Mitzi Steiner
    c. Madison Smyer
    d. Meredith Foster
    e. Mary Slanik
18. In My October 18, 2025, letter, I specifically requested:
    a. Written victim status verification
    b. All victim-related materials from the case file
    c. Assistance establishing my eligibility for the Backpage Remission Program
    d. Trial transcripts and evidence regarding my trafficking and Backpage
    e. Contact information for the assigned Victim-Witness Coordinator
19. I received no response to my October 18, 2025, letter-not even an acknowledge of receipt.
20. On November 19, 2025, after waiting over a month without a response, I set a follow-up letter to the U.S. Attorney's Office.
21. A true and correct copy of my November 19, 2025, letter is attached as Exhibit B.
22. My November 19, 2025, letter:
    a. Referenced my priority with unanswered correspondence
    b. Reinterred my request with additional legal analysis
    c. Emphasized the urgency due to the upcoming Backpage remission deadline
    d. Requested the opportunity to submit a victim impact statement
    e. Sought notice of proceeding and consultation with government counsel
23. I sent the November 19, 2025, letter via both U.S. Mail and email to the victim-witness Unit and multiple prosecutors whose names I had learned through my own research, including Emily Johnson, Madison Smyer, Mitzi Steiner, Meredith Foster, and Mary Slavik.
24. Again, I received no response of any kind to my November 19, 2025, letter.
25. In September 2025, I traveled to 26 Federal Plaza, Manhattan New York to speak with the victim witness coordinator regarding assistance and help with obtain verification.
26. Security in the reception area assisted me by providing the number to the Victim Witness advocate.
27. This advocate called me that same day as I was traveling home from New York into Middlesex New Jersey. My reception was horrible, and I could not hear her name.
28. We discussed my request for assistance, and I was told I would be help but before we could continue, I lost the call.
29. When I was in a location with a stable connection I called the number back. I could not make out the name on the voicemail, but I left my name and number seeking to be called back.
30. The advocate never called back.

31. On December 1, 2025, I sent a third letter—a final demand letter—to the U.S. Attorney's Office via certified mail, regular mail, email.
32. A true and correct copy of the final demand letter is attached as Exhibit C.
33. In this final demand latter, I:
    a. Summarized the complete lack of response to my prior communications
    b. Listed each specific violation of the Crime Victims' Right Act
    c. Provided a seven-day deadline for the response
    d. Gave explicit notice that I would seek judicial enforcement if the government did not respond.
34. On December 5, 2025, AUSA Emily Johnson responded to my email. Mrs Johnson attempted to deny my victim status claiming it was not correct. (Exhibit G; Email of Email Johnson.)
35. On December 5, 2025, I responded to AUSA Emily Johnson notifying her of the docket #516 Page 41, where I am named after Casandra Ventura as a victim of Count 3. (Exhibit G: My response to Emily Johnson, page 2)
36. In total, I have sent three detailed letters over a period of more than two months and have made one (1) personal trip the U.S. Attorney's Office in downtown Manhattan, along with one (1) phone conversation with an advocated who pretend to assist then never return contact.
37. I strongly believe I am being denied Crime Victims Rights due to my refusal to withhold information regarding the complicity of Casandra Ventura.

COMPLCITY OF CASANDRA "CASSIE" VENTURA

38. For several years the media and public have been fed a narrative that is false. Despite Casandra Ventura being a victim of domestic violence (Which I also verified extensively for prosecutors), she is not a victim of Sex Trafficking, and she was certainly no victim within the RICO prosecution of Mr. Combs.
39. I, as the former male whom she contacted and coerced for years can confidently state that Casandra Ventura was an active participant in the sexual encounters I was trafficked into.
40. I informed the Assistant U.S. Attorney, Maurine Comey of this all attempting to provide the entire truth and not pieces which favored neither Mr. Combs nor Ms. Ventura.
41. I have been sexually violated by Ms. Ventura, I contracted an STD due to unprotected sexual contact with Ms. Ventura, who never once informed me of the sexual depravity she engaged in alongside her lover Mr. Combs.
42. Ms. Ventura convinced me that I was participating in consensual encounters and used promises of money and gifts to compel my compliance.
43. Once I was in the custody of the defendants, my property, including identification, cellphone, and clothing would be confiscated by Ms. Ventura and kept until she wanted to release me.

44. On May 2, 2025, before Assistant U.S. Attorney Maure Comey, I directly stated my position to be truthful regarding the conduct of both my offenders Mr. Combs AND Ms. Ventura.
45. Assistant Prosecutor Maurine Comey became annoyed when I said this and began to claim I was too "traumatized" to testify, which I denied stating my wish to confront my offenders.
46. My counsel and I were told me would be called in the following Thursdays May 8, 2025, to begin witness prepare for trial.
47. However, I was not called again, but I was also not released from the mandatory protection order which ordered all witnesses not to speak out during the criminal trial.
48. This was done intentionally to keep me silent regarding the truth of Ms. Ventura's involvement.
49. I was never called to testify and denied my CVRA Right to confront my offender.
50. I received no contact after the Jury verdict. I was not allowed to submit a victim impact statement; I was completely ignored in favor of protecting a lie regarding Ms. Ventura.
51. Parts of my story were used to support the prosecution's case, while parties which could expose Ms. Ventura for Perjury were intentional withheld.
52. In summary, prosecutors violated my rights pursuant to 18 U.S.C. 3771 in favor of protecting the image of the prosecution and the credibility of one of my offenders, my primary offender, who is Casandra Ventura.

GOVERNMENTS INTERFERENCE WITH CIVIL ACTION AGAINST VENTURA

53. I attempted to file civil action against Ms. Ventura at least three (3) separate times before the criminal prosecution of Mr. Combs.
54. Each attempt I made would be dissuaded by the assigned counsel provided to me by the U.S. Attorney due to the protection of their case against Mr. Combs
55. I was directly told by these attorneys several times that my filing would injure my civil action, which I now know was a complete falsity.
56. In February 2025, I demanded my former counsel Tyrone A. Balckburn to begin my civil action as a statutory deadline was approaching and I wanted to file in the jurisdiction were it all began which was New York. (See Exhibit D: Screenshots, Clayton Howard and Tyrone A. Blackburn, Esq)
57. Mr. Blackburn began by reaching out to counsel for Ms. Ventura, Douglas Wigdor, to discuss possible mediation and settlement seeking to avoid any negative public reaction.
58. Instead of addressing my victimization by his client Casandra Ventura, he contacted the U.S. Attorney seeking they persuade my attorney to refrain from filing.
59. Mr. Blackburn refused to answer me until the deadline I sought to utilize in NYS expired. Once it had, he told me the truth regarding how prosecutors advised him he could use the TVPA to file an action in California based on my trafficking to Los Angles.

60. This was confirmed when Tyrone Blackburn stated it during the May 2, 2025, meeting between prosecutors and Myself. Mr. Blackburn confronted Maurine Comey with this, and she did not deny it.

HARM FROM GOVERNMENTS NON-RESPONSE

61. I was never notified of the sentencing hearing in this case, despite being a named vicim and cooperating witness.
62. I was denied the opportunity to testify despite prosecutors being aware of the truth within my claims to protect the credibility of Casandra Ventura.
63. Evidence of this is my Memoir titled "Cassie: Victim or Conspirator-The Story of Dave" which detailed the encounters exactly as described for seventeen (17) months to prosecutors.
64. My manuscript was subpoenaed by this court, but due to misconduct of former counsel I was substituted and presented to the Defenses. Because of this Tyrone A. Blackburn was terminated June 20, 2025.
65. A true and correct copy of the letter of termination of Tyrone Blackburn is attached as Exhibit E.
66. I contacted Ms. Teney Garrigus, was I was informed that the document had not been received and Mr. Blackburn substituted the material. I provided the manuscript to defense counsel myself.
67. A true and correct copy of the emails between myself and Tenay Geragous is attached as Exhibit F.
68. I was never given the opportunity to submit a victim impact statement, wither in writing or orally at the sentencing hearing, which I was never contacted in regard too.
69. I have never been provided with ANY information about restitution procedures, including what types of losses I can seek for restitution for, what documentation is required, applicable deadlines, or how to enforce any restitution order.
70. I have suffered substantial financial losses as a result of the defendant criminal conduct and prosecution, including:
    a. Lost income and business opportunities (I'm now called a prostitute, when I am currently pursuing a law degree)
    b. Medial and Mental Health treatment expenses
    c. Costs of security measures to protect myself
    d. Out of Pocket expenses
71. I reside in Middlesex County, New Jersey. Prosecutors have never sought to reimburse me with all my travel expenses which accumulated as a primate result of attempting to assist the office obtain justice.
72. My Trauma, and my experiences were used to prosecute Mr. Combs. While all of my rights pursuant to 18 U.S.C. § 3771 have been denied despite my credibility and the use of my trauma.

73. Without the information and assistance of the U.S.Attorneys's office, I cannot effetely pursue justice against my known offenders as the victim documented in the government's own sentencing memorandum.
74. I have pending litigation against the defendants in which I am seeking compensation for harms, and trauma I suffered. The case materials I have requested from the U.S. Attorney's Office are essential to support my civil claims.
75. None of the evidence I provided was returned which I provided during the investigation such as: flight records, photographs etc.

THE BACKPAGE REMISSION PROGRAM

76. On July 31, 2025, the Department of Justice announced th Backpage Remission Program, which will distribute over $200 million in forfeited assets to compensate victims whose sex trafficking was facilitated through the advertisements of Backpage.com
77. The deadline to file a petition for compensation under the Backpage Remission Program is February 2, 2026.
78. Based on Casandra Ventura's sworn trial testimony that she used Backpage.com to locate and recruit me for trafficking, I clearly meet the eligibility criteria for this program.
79. To establish my eligibility and document my losses for the Backpage Remission petition, I need:
    a. Trial transcripts documenting Ms. Ventura's testimony about finding me on Backpage.com
    b. Exhibits and evidence from the trial that show a backpage connection
    c. Official confirmation from the U.S. Attorney's Office of my victim status
    d. Documentation of my cooperation with the prosecution
    e. Any other materials that would support my petition
80. I specifically requested assistance with the Backpage Remission Program in both my October 18 and November 19, 2025, explaining the connection between Backpage.com and my trafficking.
81. The U.S. Attorney's Office has not provided any assistance with the Backpage remission program despite my clear requests and the established connection through trial testimony.
82. If I miss the February 2, 2026 deadline due to the government's failure to provide the necessary documentation, I will lose the opportunity to seek potentially substantial compensation for my trafficking-related loses.
83. This deadline is rapidly approaching, and each day of delay by the government reduces the time I have to prepare and file a complete petition.

IMPACT OF VIOLATIONS

84. The U.S. Attorney's Office's complete non-response to my requests has caused me substantial harm beyond the specific losses detailed above.

85. As a victim who cooperated extensively with the prosecution, providing critical evidence and testimony, I feel disrespected and devalued by the government's refusal even to acknowledge my communications.
86. The government used my cooperation when it served their interest in prosecuting the defendants but now treats me as if I do not exist when I need assistance exercising my statutory rights.
87. This treatment violates my rights under 18 U.S.C. § 3771(a)(8) to be treated with fairness with respect for my dignity.
88. I have been patient and persistent, sending three (3) separate communications over more than two (2) months and making phone contact with the Victim-Witness Unit. I even traveled from Central New Jersey to visit prosecutors which let to my phone conversation with the Victim-Witness Unit.
89. Despite these good-faith efforts, the government has maintained absolute silence.
90. I am not seeking anything beyond what federal law guarantees to crime victims. I simply want:
    a. Recognition of my victims status
    b. Information about my rights and available relief
    c. The materials and assistance needed to pursue compensation
    d. Basic fairness and respect after my cooperation
91. I filed this motion as a last resort, only after the exhausted all administrative avenues and receiving no response from the U.S. Attorney's Office.
92. I request this Court's intervention to enforce the rights that Congress has guaranteed to crime victims under the Crime Victims' Rights Act.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is True and Correct

Executed this 7th day of December, 2025, at Carteret, New Jersey.

*Clayton Howard*
───────────────
Clayton Howard (Movant)

Victim #2 -Count 3