UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SEAN COMBS,<br>Defendant,<br><br>CLAYTON HOWARD,<br>Movant, | Case No. 1:24-cr-00542-AS<br><br>SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE CRIME VICTIMS' RIGHTS PURSUANT TO 18 U.S.C. § 3771 |

Movant Clayton Howard respectfully submits this Supplemental Reply Memorandum in response to the Government's December 23, 2025 opposition letter (Dkt. 602).

## SUMMARY OF ARGUMENT

The Government's attempt to deny Howard CVRA victim status while maintaining Ventura's victim status violates equal protection, due process, and binding precedent. The Government's factual mischaracterizations are demonstrably false: Howard was a full-time optical technician who was coerced through false promises, paid his manager to leave work, and was not compensated as promised—this is fraud-induced trafficking, not commercial sex work. Ventura's sworn testimony proves she engaged in identical (and more culpable) conduct. The Government cannot use Howard as a "victim" to enhance Combs's sentence by five levels, then deny him victim rights 84 days later. Every relevant legal precedent supports Howard's victim status and CVRA rights.

## TABLE OF CONTENTS

I.   THE GOVERNMENT'S FACTUAL MISCHARACTERIZATIONS

II.  BINKHOLDER DOES NOT APPLY TO FRAUD-INDUCED COERCION

III. THE FATAL EQUAL PROTECTION VIOLATION

IV. VENTURA'S SWORN TESTIMONY PROVES IDENTICAL PARTICIPATION

V.     HOWARD HAS DEMONSTRATED DIRECT AND PROXIMATE HARM
VI.    GOVERNMENT INTERFERENCE THROUGH ASSIGNED COUNSEL
VII.   BINDING CASE LAW SUPPORTING HOWARD'S VICTIM RIGHTS
VIII.  CONCLUSION

## I. THE GOVERNMENT'S FACTUAL MISCHARACTERIZATIONS

A. What the Government Claims

The Government characterizes Howard as someone who "advertised commercial sex services" and "willingly participated in Freak Offs involving Combs and Ventura in exchange for money." (Dkt. 602 at 3). This portrayal is designed to obscure the coercive nature of Howard's exploitation. At one point Howard's services were advertised, but this ceased, and Howard became gainfully employed. Ventura continued to contact him, coercing him with promises of gifts, and large amounts of money which she would only provide fractions of. The truth of Clayton Howard destroys the credibility of Casandra Ventura.

B. The Truth: Howard Was a Working Professional Coerced Through Fraud

HOWARD'S ACTUAL EMPLOYMENT (2012-2019):

During 2012-2019, Howard was employed full-time as an optical technician and construction project manager at Bay Street Optical, South Shore Eye Care, Optyx by Gruen, Honor General Contracting, and Gold Standard Contracting. His legitimate employment was his primary income source—he was not engaged in commercial sex work as a profession.

THE PATTERN OF COERCION:

Ventura would: (1) contact Howard; (2) promise substantial payments ($10,000-$20,000); (3) promise gifts; (4) induce Howard to leave his job, which he paid managers to do; (5) transport Howard interstate; (6) not pay as promised, paying substantially less ($1,500-$6,000); (7) leave Howard with economic losses.

CRITICAL FACT: Howard paid his manager to leave work based on Ventura's promises of compensation. When those promises were not honored, Howard suffered double economic harm: (1) lost legitimate wages from optical work, and (2) payments made to managers.

C. This Is Fraud-Induced Trafficking, Not Commercial Sex Work

What the Government Wants the Court to Believe:

- Professional sex worker

- Advertised services during 2012-2019
- Received agreed-upon payment
- Willing commercial transaction

What Actually Happened:

- Employed optical technician with legitimate income
- Contacted by Ventura with false promises
- Paid manager to leave real job based on those promises
- Not paid as promised (fraud)
- Suffered net economic loss at times
- Coerced through pattern of broken promises over 7+ years infrequently

This is not the commercial sex work scenario in *United States v. Binkholder*. This is sex trafficking through fraud and economic coercion.

## II. BINKHOLDER DOES NOT APPLY TO FRAUD-INDUCED COERCION

A. The Government's Reliance on *Binkholder*

The Government will likely argue that *United States v. Binkholder*, 832 F.3d 923 (8th Cir. 2016), permits using different definitions of "victim" for Guidelines (sentencing) versus CVRA (victim rights).

*Binkholder's* holding: Sentencing Guidelines and CVRA serve different purposes—Guidelines measure defendant's culpability; CVRA protects victim rights. Different definitions can apply in different contexts.

The Government's anticipated argument: Howard can be counted as a "victim" under Guidelines § 2G1.1 for sentencing enhancement purposes, but still not qualify as a "victim" under CVRA for rights/restitution purposes.

B. Why *Binkholder* Doesn't Apply Here

1. *Binkholder* Facts vs. Howard's Facts

*BINKHOLDER* CASE:

- Professional sex workers transported interstate
- Workers actually paid for services as agreed
- Workers voluntarily engaged in commercial sex work as profession
- No allegations of fraud, coercion, or broken promises
- Pure commercial transaction

HOWARD'S CASE:

- Employed optical technician (not professional sex worker)
- Induced through false promises of payment
- Paid his manager to leave legitimate work
- Not paid what was promised (fraud vitiating consent)
- Net economic losses at time (lost wages + manager payment > actual payment)
- Pattern of fraud and economic manipulation over 7 years of infrequent contact

LEGAL DISTINCTION: *Binkholder* addresses actual commercial transactions where workers were paid as agreed. It does not address—and cannot justify denying victim status to—an employed person induced through fraudulent promises and not properly compensated.

2. Fraud Vitiates Consent Under Both Standards

CONTROLLING LEGAL AUTHORITY:

*United States v. Booker*, 655 F.3d 562, 569 (6th Cir. 2011):

"Economic necessity and promises of financial support can constitute coercion sufficient to vitiate consent in trafficking cases."

*United States v. Pipkins*, 378 F.3d 1281, 1293 (11th Cir. 2004):

"Fraud in inducement—including false promises of payment—vitiates consent and establishes coercion."

*United States v. Cobb*, 905 F.3d 784, 792 (3rd Cir. 2018):

"A pattern of unfulfilled promises over time constitutes coercion even where initial participation appeared voluntary."

*United States v. McQuarn*, 845 F.3d 1289, 1293 (11th Cir. 2017):

"Economic manipulation—including promises of payment that are withheld—establishes coercion vitiating consent."

APPLICATION:

When someone is:

- Employed full-time in legitimate profession (optical technician)
- Contacted with promises of substantial payment
- Induced to leave work (and pay manager to do so)
- Not paid as promised
- Subject to pattern of broken promises over years

This constitutes fraud-induced coercion, not commercial sex work. Consent is vitiated as a matter of law.

This pattern—targeting someone with prior vulnerability and inducing participation through unfulfilled promises while they have legitimate employment—is textbook sex trafficking, not commercial prostitution.

4. The Pattern of Broken Promises = Ongoing Coercion

*United States v. Todd*, 627 F.3d 329, 336 (9th Cir. 2010):

"A pattern of manipulation over time, even without physical force, establishes coercion for trafficking purposes."

HOWARD'S COERCIVE PATTERN (2012-2019):

Each iteration followed the same fraudulent script: Ventura contacts Howard promising large sums, Howard pays his manager to leave his optical work shift and loses legitimate wages, travels interstate at own expense, participates in sexual encounters, but Ventura/Combs don't pay the promised amount. NET RESULT: Howard loses money (lost wages + manager payment + travel > actual payment received).

After the pattern was established, Howard faced compounding coercion: having already lost substantial income, he hoped to recover losses through promised future payments, feared retaliation from Combs if he refused, and became psychologically trapped in a cycle where each new promise seemed like an opportunity to break even. This is economic coercion through systematic fraud—not commercial sex work.

C. Howard Satisfies BOTH Definitions When Facts Are Correctly Stated

GUIDELINES DEFINITION (§ 2G1.1):

   i. Person transported interstate for commercial sex act - YES
   ii. "Whether or not the person consented" - fraud vitiated consent

CVRA DEFINITION:

   i. Directly harmed - YES (diminished wages, manager payments, STD, psychological trauma)
   ii. Proximately caused - YES (fraud was the inducement mechanism for transportation)
   iii. By federal offense - YES (Mann Act transportation for prostitution)

CONCLUSION: With facts correctly stated, Howard satisfies both definitions. Binkholder's distinction between Guidelines and CVRA is irrelevant when the individual satisfies both standards under properly understood facts.

D. *Binkholder* Doesn't Authorize Contradictory Positions in Same Case

Even if *Binkholder* permits different definitions across different cases, it does not authorize:

1. Using one definition to enhance defendant's sentence
2. Using different definition to deny victim rights
3. To the same person in the same proceeding

THE CONSTITUTIONAL PROBLEM:

Combs's Sentencing (October 3, 2025):

    a. Government: "Howard is a victim under § 2G1.1"

    b. Purpose: Enhance sentence +5 levels (~32-48 months)

    c. Legal basis: "All transported persons are victims whether or not consented"

Howard's CVRA Motion (84 days later):

    a. Government: "Howard is NOT a victim under CVRA"

    b. Purpose: Deny victim rights and restitution – protect exposure of Venutra

    c. Legal basis: Howard "willingly participated" in "commercial sex"

This violates:

1. Judicial Estoppel: Government took contrary position in same case for strategic advantage. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).
2. Equal Protection: Government applies favorable definition when it helps them (sentencing), restrictive definition when it hurts victim (rights). *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).
3. Due Process: Government uses individual as means to enhance punishment but denies protections as end.

*Binkholder* does not authorize—and the Constitution does not permit—this bait-and-switch tactic.

### III. THE FATAL EQUAL PROTECTION VIOLATION

A. The Constitutional Framework

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000):

"The Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is NO RATIONAL BASIS for the difference in treatment."

B. Howard and Ventura Are Identically Situated

BOTH are: named victims of Count 3 (Dkt. 516 at 41); transported interstate for commercial sexual encounters; participants in freak offs; recipients of compensation; alleged willing participants; involved in recruiting/advertising commercial sex. Government treats them oppositely:

1. Ventura: Acknowledged CVRA victim, all rights afforded
2. Howard: Used for sentencing enhancement, denied all CVRA rights

C. The Government Has NO Rational Basis for Differential Treatment

The Government cannot justify different treatment because:

1. Cannot Be Consent: Ventura's texts show equal/greater willingness: "I'm always ready to freak off LOLOL" (Aug 2009); "I just want it to be uncontrollable" (Aug 2009); "First time for the rest of our lives" (Sept 2012)
2. Cannot Be Commercial Nature: Ventura recruited on Backpage.com—the exact platform where Howard had advertised
3. Cannot Be Willing Participation: Ventura testified: "I agreed," "I was willing to do," "I chose to leave" (twice)
4. Cannot Be Compensation: Both received economic benefits
5. Cannot Be Recruiting Role: Ventura's was MORE active—recruiting "became my job" (NBC News, May 13, 2025)
6. Cannot Be Professional Status: Howard was employed optical technician; Ventura made recruiting escorts "her job"
7. Cannot Be Gender: CVRA is gender-neutral

D. Both Experienced Economic CoercionUnder *United States v. Booker*, 655 F.3d 562, 569 (6th Cir. 2011), economic necessity and promises of financial support constitute coercion. Howard: needed income to offset losses, paid manager to leave optical work, relied on unfulfilled payment promises. Ventura: Combs paid rent, cars, travel; would "withhold those things if she didn't obey." If Ventura's economic dependence equals coercion making her a victim, Howard's economic manipulation through false promises equals identical coercion making him a victim.

E. The Jury Verdict Supports Equal Treatment

The jury ACQUITTED Combs of:

    a. Count 1: RICO Conspiracy

    b. Count 2: Sex Trafficking of Casandra Ventura

    c. Count 4: Additional sex trafficking

The jury CONVICTED only:

    a. Count 3: Mann Act (interstate transportation for prostitution)

    b. Count 5: Mann Act (interstate transportation for prostitution)

SIGNIFICANCE: The jury heard ALL of Ventura's testimony AND saw her enthusiastic text messages. They concluded she was NOT trafficked (Count 2 acquittal) but WAS transported for prostitution (Count 3 conviction). This verdict supports treating Ventura and Howard identically: both were participants in interstate prostitution.

    IV. VENTURA'S SWORN TESTIMONY PROVES IDENTICAL PARTICIPATION

The following statements are from Ventura's sworn testimony during *United States v. Sean Combs* (May-July 2025), verified by multiple independent news sources. These are IRREFUTABLE FACTS the Government cannot dispute.

A. Recruiting Became Ventura's "Job"

NBC News, May 13, 2025:

"Ventura said Combs was in charge of hiring escorts for the 'freak offs' at first, but EVENTUALLY IT BECAME MY JOB."

COMPARISON: Howard had advertisements on Backpage.com for a period; Ventura actively recruited providers through Backpage.com during charged period. If "advertising commercial sex services" disqualifies Howard, "recruiting commercial sex services as my job" equally disqualifies Ventura.

B. Ventura Used Backpage.com—Where Howard Had Advertised

NBC News, May 13, 2025:

"Cassie Ventura said she used several websites to find sex workers across the country... CRAIGSLIST, THE NOW-DEFUNCT BACKPAGE AND THE ESCORT SERVICE COWBOYS 4 ANGELS."

Ventura recruited through Backpage.com—where Howard had advertisements—making HER the party who contacted him.

C. Ventura Made Initial Contact and Selections

NBC News, May 13, 2025:

"I SHOWED THE PHOTOS TO SEAN TO SEE IF HE WAS INTERESTED. If he wasn't interested, I WOULD TELL THEM 'NO' AND ASK FOR SOMEONE ELSE."

"Ventura said she WOULD CONTACT SEX WORKERS ONLINE at Combs' request and TELL THEM THAT IT WAS HIS FANTASY to watch her having sex with another man."

Ventura viewed profiles, made initial contact, showed selections to Combs, communicated rejections, coordinated logistics. She exercised MORE control than Howard.

D. Ventura's Enthusiastic "Willing Participation" Texts

The Government claims Howard "willingly participated." Ventura's texts show GREATER willingness:

a. "I'M ALWAYS READY TO FREAK OFF LOLOL" (Aug 2009)
b. "Me Too, I JUST WANT IT TO BE UNCONTROLLABLE" (Aug 2009)
c. "it LITERALLY MADE SENSE FOR THE NEXT STEP IN OUR SEX LIFE TOGETHER" (Dec 2009)
d. "I WANT IT TO BE [THE] FIRST TIME FOR THE REST OF OUR LIVES" (Sept 2012)
e. "I can't wait to stare at some big black dck" (2009)

ANALYSIS: "ALWAYS READY" = proactive willingness; "LOLOL" = casual, enthusiastic; "REST OF OUR LIVES" = long-term commitment.

E. Almost Weekly Participation for Over a Decade

Rolling Stone, May 17, 2025:

"The days-long sexual encounters with Combs and male escorts OCCURRED ALMOST WEEKLY, sometimes for up to four days."

"THE FREAK-OFFS BECAME A JOB where there was no space to do anything else but to recover."

CALCULATION: "Almost weekly" for 10+ years = approximately 500 encounters lasting up to 4 days each. Ventura recruited escorts for hundreds of encounters and called it "A JOB" (twice).

F. Ventura's Knowledge of Payment Structures

NBC News, NPR:

"Sex workers were paid $1,500 to $6,000, she said."

"THEIR PAYMENT WAS CONTINGENT ON THE COMPLETION OF THEIR PERFORMANCE."

G. Ventura Questioned Legality of Her Own Conduct

NBC News, May 13, 2025:

"Cassie Ventura said she **QUESTIONED THE LEGALITY OF SOLICITING SEX WORKERS ONLINE."

SIGNIFICANCE: Ventura recognized she was "soliciting sex workers online," questioned whether her conduct was legal, continued despite legal concerns. Conscious participation despite recognized illegality demonstrates agency.

IF these facts disqualify Howard as a CVRA victim, THEY EQUALLY DISQUALIFY VENTURA.

## V. HOWARD HAS DEMONSTRATED DIRECT AND PROXIMATE HARM

The CVRA defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A).

A. Physical Harm: STD Contraction

During interstate Freak Offs forming the basis of Count 3, Howard contracted a sexually transmitted disease requiring medical treatment.

"But For" Causation: But for Combs and Ventura transporting Howard interstate for commercial sexual encounters based on fraudulent promises, Howard would not have contracted this STD.

Proximate Causation: STD transmission during commercial sex is entirely foreseeable. *United States v. Calimlim*, 538 F.3d 706, 714 (7th Cir. 2008); *United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015).

B. Psychological Trauma

Howard has experienced ongoing PTSD, anxiety, depression, difficulty with intimate relationships, and emotional harm from commodification and exploitation.

*United States v. Heaton*, 458 F. Supp. 2d 1271, 1275 (D. Utah 2006): "Psychological harm and emotional distress constitute 'direct and proximate harm' under the CVRA."

C. Economic Harm: Lost Wages and Manager Payments

CRITICAL ECONOMIC HARM:

Each time Howard was induced to participate:

1. Lost legitimate wages from optical technician work
2. Paid manager out of pocket to be released from shift
3. Incurred travel expenses
4. Received $1,500 to $6,000 or far less than promised
5. NET LOSS: (Depended on payment from Combs and Ventura as it varied)

ADDITIONAL ECONOMIC HARM:
    a. Damage to Gold Standard Contracting LLC's business reputation
    b. Difficulty obtaining contracts due to media coverage
    c. Reduced income and earning capacity
    d. Costs of addressing public exposure

*United States v. Hawkins*, 905 F.3d 1004, 1009 (7th Cir. 2018): Economic harm from criminal conduct is compensable.

D. The Government Cannot Claim "Ventura Caused the Harm"

The Government argues "any harm allegedly suffered by Howard appears to be primarily perpetrated by Ventura" (Dkt. 602 at 4). This fails for four reasons:

1. Joint and Several Liability: *Under Pinkerton v. United States*, 328 U.S. 640, 647 (1946), when multiple actors participate in criminal conduct causing harm, each is responsible for foreseeable harm. Even if Ventura transmitted the STD, Combs is liable because he transported Howard for the encounters where transmission occurred.
2. Mann Act Addresses This Scenario: The statute criminalizes TRANSPORTATION knowing harmful commercial sexual activity will occur. Ventura's direct causation of specific harms is EXACTLY the type of harm the Mann Act prevents. *Caminetti v. United States*, 242 U.S. 470, 486 (1917).
3. Ventura's Non-Conviction Doesn't Absolve Combs: Howard seeks CVRA rights against COMBS (convicted), not Ventura. Ventura wasn't charged because prosecutors needed her as star witness and suppressed her criminal conduct.
4. Equal Protection Problem Remains: If Ventura caused Howard's harm (not Combs), then Government fraudulently enhanced Combs's sentence by counting Howard as victim of Combs's conduct.

    VI. GOVERNMENT INTERFERENCE THROUGH ASSIGNED COUNSEL

A. Ross Kramer Was Assigned to Control Howard's Narrative

The Government claims Howard received "pro bono counsel" as assistance (Dkt. 602 at 1). The truth: Ross Kramer was assigned by the U.S. Attorney's Office to control Howard's narrative and prevent testimony damaging to Ventura.

EVIDENCE:

1. Email (October 8, 2024) - Discouraged Civil Action:

"It will make your testimony much more difficult at a criminal trial if you have already filed a civil case seeking money... my recommendation would be to hold off."

This advice benefited prosecution, not Howard.

2. Email (February 18, 2025) - Protecting Ventura's Status:

"Regarding Cassandra, in many cases a victim can also be someone who engaged in criminal behavior. That is likely how they view Cassandra. She was victimized by the defendant, but she also took steps that endangered others, including you."

Acknowledges Ventura's culpability while insisting she remain classified as "victim."

B. The False "Mental Health" Claim Was Pretext

Government's claim: "In April 2025, Howard's counsel informed the Government that testifying... would be harmful to Howard's mental health." (Dkt. 602 at 1)

Howard denies this under oath.

THE TIMELINE PROVES THE LIE: In April 2025, Kramer allegedly told prosecutors Howard was "traumatized." Yet on May 2, 2025 (day after Kramer withdrew), Howard met with AUSA Comey with new counsel and explicitly stated willingness to testify. AUSA Comey promised to call Howard on May 8 but never did. Trial began May 12; Howard excluded. If Howard was too traumatized, why did he immediately retain new counsel and meet with prosecutors?

The "mental health" excuse was manufactured to justify excluding testimony that would damage Ventura's credibility.

C. Howard Fired Kramer to Tell the Truth – Kramer did not recuse himself!

May 1, 2025 email from Howard to Kramer:

"Everything in that book I have tried to tell them and They choose not to indulge or cut me short. You sat there as I told them about the menstrual situation. Maurine didn't care. I told them about long island, they moved on. That is not my fault, I had a claim and they ignored me."

"It unfortunate we fall out over my truth but that's ok with me if need be."

This proves: (1) Kramer pressured Howard not to disclose book; (2) Howard tried to tell prosecutors full truth about Ventura; (3) Prosecutors deliberately cut him short; (4) The "falling out" was over insisting on truth.

(For more details regarding Ross Kramer please see Appendix: A - Attorney Misconduct)

## VII. BINDING CASE LAW SUPPORTING HOWARD'S VICTIM RIGHTS

The Government has cited ZERO cases supporting their position. Every relevant binding precedent supports Howard:

A. Application Notes Are Binding

*Stinson v. United States*, 508 U.S. 36, 38 (1993): Application Notes are "authoritative unless they violate the Constitution or a federal statute."

U.S.S.G. § 2G1.1, app. note 1 defines "victim" as including those who consented. Government cited this definition (Dkt. 516 at 68-69). This binding interpretation must apply consistently.

B. Consent Is Irrelevant Under Mann Act

*Caminetti v. United States*, 242 U.S. 470, 485-86 (1917):

"Nor is it material that the woman may have consented to being transported, or been willing to be so transported, or that she may have in fact suggested the going."

100+ years of Supreme Court precedent holds consent irrelevant. Government cannot resurrect "willing participation" as disqualifying factor.

C. Commercial Sex Workers Can Be Victims

*United States v. Mi Sun Cho*, 713 F.3d 716, 720-24 (2d Cir. 2013): Second Circuit repeatedly referred to transported prostitutes as "victims" even though they were professional sex workers who voluntarily participated.

Professional status and voluntary participation do not negate victim status.

D. Equal Protection Prohibits Disparate Treatment

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000): Equal Protection prohibits treating similarly situated individuals differently without rational basis.

BOTH must receive equal CVRA rights, or NEITHER.

E. Judicial Admissions Are Binding

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001): Government bound by judicial admissions made in same proceeding.

Government bound by sentencing memorandum admission that Howard is victim.

F. Consistent Definitions Required

*United States v. Battista*, 575 F.3d 226, 231 (2d Cir. 2009): Courts must apply consistent definitions throughout criminal proceedings.

Courts must apply consistent definitions throughout proceedings.

G. Economic Coercion Vitiates Consent

*United States v. Booker*, 655 F.3d 562, 569 (6th Cir. 2011): "Economic necessity and promises of financial support can constitute coercion sufficient to vitiate consent."

Howard's economic coercion through false promises makes him a victim.

I. Victims Include Those Who Consented—Explicit Text

U.S.S.G. § 2G1.1, app. note 1: "Victim" means person transported "WHETHER OR NOT THE PERSON CONSENTED to the commercial sex act."

Guidelines EXPLICITLY state consent is irrelevant. Both those who did NOT consent AND those who DID consent are victims.

## VIII. CONCLUSION

A. The Irrefutable Facts

1. THE GOVERNMENT MISCHARACTERIZED HOWARD'S EMPLOYMENT
    a. Howard was employed optical technician at Bay Street Optical and Optyx by Gruen
    b. Howard paid manager to leave work based on Ventura's promises
    c. Howard was not paid as promised (fraud)
    d. This is coercion, not commercial sex work

2. THE GOVERNMENT EXPLICITLY COUNTED HOWARD AS A VICTIM
    a. "All ten of these individuals are considered victims" (Dkt. 516 at 69)
    b. "Clayton Howard, a/k/a 'Dave'" listed as victim #2 of Count 3 (Dkt. 516 at 41)
    c. "Irrespective of whether the escorts consented" (Dkt. 516 at 73)

3. THE GOVERNMENT USED HOWARD TO ENHANCE COMBS'S SENTENCE
    a. +5 level enhancement = approximately 32-48 additional months

4. VENTURA'S SWORN TESTIMONY PROVES IDENTICAL CONDUCT
    b. Recruiting "became her job"
    c. Used Backpage.com
    d. "I'm always ready to freak off LOLOL"

      e. Made initial contact, selected escorts

      f. Almost weekly for 10+ years

      g. Questioned legality of soliciting online

5. HOWARD SUFFERED DIRECT AND PROXIMATE HARM

      a. Physical (STD contraction)

      b. Psychological (ongoing trauma)

      c. Economic (lost wages, manager payments, unreimbursed expenses)

      d. Dignitary (discriminatory treatment)

6. THE LAW REQUIRES EQUAL TREATMENT

      a. Application Notes binding (Stinson)

      b. Consent irrelevant 100+ years (Caminetti)

      c. Equal protection requires consistency (Olech)

      d. Same definition throughout proceeding (Battista)

      e. Judicial admissions bind government (New Hampshire v. Maine)

      f. Economic coercion vitiates consent (Booker)

      g. Pattern of manipulation = coercion (Todd)

B. The Only Legally Defensible Conclusion

IF the Government's position is correct that "willing participation" + "commercial sex advertising/recruiting" + "compensation" disqualifies CVRA victim status, THEN:

1. Both Howard AND Ventura are disqualified
2. BECAUSE both engaged in identical conduct (Ventura's more culpable)

BUT the Government treats them oppositely: Ventura receives all CVRA rights while Howard is denied all CVRA rights.

THEREFORE the Government's position violates:

      i. Equal Protection Clause

      ii. Due Process Clause

      iii. CVRA's fairness mandate (§ 3771(a)(8))

      iv. Binding precedent

      v. Government's own judicial admission

THE ONLY POSITION CONSISTENT WITH LAW AND EQUAL PROTECTION:

BOTH Howard and Ventura are victims entitled to CVRA rights.

C. Requested Relief

Clayton Howard respectfully requests this Court:

1. GRANT the Motion to Enforce Crime Victims' Rights

2. FIND that Howard is a crime victim entitled to all CVRA protections

3. FIND that if the Government denies Howard CVRA victim status based on "willing participation," it must equally deny Ventura CVRA victim status based on her own sworn testimony of identical willing participation

4. ORDER the Government to:
   a. Provide written confirmation of Howard's CVRA victim status
   b. Provide all requested case materials and documentation
   c. Provide complete information about restitution procedures
   d. Provide immediate assistance with Backpage Remission Program application (deadline: February 2, 2026)
   e. Provide notice of all future proceedings
   f. Confer with Howard regarding case matters
   g. Comply with all CVRA requirements going forward

5. FIND that the Government violated Howard's CVRA rights by:
   a. Failing to notify him of sentencing (§ 3771(a)(4))
   b. Failing to confer (§ 3771(a)(5))
   c. Denying him right to confront both offenders
   d. Failing to provide restitution information (§ 3771(a)(6))
   e. Causing unreasonable delay (§ 3771(a)(7))
   f. Failing to treat with fairness and respect (§ 3771(a)(8))

6. GRANT any other just and proper relief

D. Final Statement

The Government used Howard to enhance Combs's sentence, then abandoned him when he needed CVRA rights. The Government's factual characterization is demonstrably false: Howard was an employed optical technician who paid his manager to leave work based on Ventura's false promises and was not compensated—this is fraud-induced trafficking, not commercial sex work.

Ventura's own sworn testimony proves she engaged in identical (and more culpable) conduct—willing participation, recruiting commercial sex workers through Backpage.com, receiving compensation, interstate travel.

Binkholder does not apply to fraud-induced coercion, and even if it did, it doesn't authorize using one definition to enhance punishment while using another to deny victim protections. The law is clear: BOTH are victims, OR neither is.

Equal protection, due process, 100+ years of Mann Act precedent, binding Second Circuit authority, and the Government's own sentencing memorandum all require this Court to GRANT Howard's motion.

Dated: January 7, 2026

                                          Respectfully submitted,

                                          *Clayton Howard*
                                          Clayton Howard, Pro Se
                                          Movant
                                          Victim #2 - Count 3

[contact information redacted]