UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:24-cr-00542-AS |
| v. | MEMORANDUM OF LAW IN SUPPORT OF CLAYTON HOWARD'S |
| SEAN COMBS, | MOTION FOR MANDATORY |
| *Defendant*, | RESTITUTION |
| CLAYTON HOWARD | |
| *Crime Victim/Movant*, | |

TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT

II.     STATEMENT OF FACTS

III.    LEGAL STANDARD

    A.    Mandatory Restitution Under 18 U.S.C. §§ 3664 and 2429

    B.    Elements for Restitution

    C.    Standard and Burden of Proof

IV.     ARGUMENT

    A.    Movant Is A Victim Entitled to Mandatory Restitution

        1.    Government's Explicit Recognition of Victim Status

        2.    Satisfaction of Statutory Definition of "Victim"

    B.    Movant's Losses Were Directly and Proximately Caused by Defendant's Offense

        1.    But-For Causation Is Clearly Established

        2.    Proximate Causation Is Satisfied Under Second Circuit Law

        3.    Foreseeability of Harm to Trafficking Victims

    C.    Psychological Harm Is Compensable Under 18 U.S.C. § 3664

        1.    Statutory Authorization for Psychological Treatment Costs

2.    Trafficking Causes Severe and Lasting Psychological Harm

3.    Movant's Specific Psychological Injuries

D.    Medical Expenses for STD Testing and Treatment Are Compensable

1.    Physical Health Consequences of Sex Trafficking

2.    Necessity and Reasonableness of STD Testing

3.    Future Medical Expenses Are Recoverable

E.    Economic Losses Are Compensable

1.    Lost Income During Trafficking Period

2.    Post-Trafficking Economic Harm

3.    Cooperation Expenses

4.    Attorneys' Fees and Costs

F.    The Court Must Order Restitution for the Full Amount of Losses

G.    Government's Failure to Advise Movant of His Restitution Rights and
Exploitation of His Cooperation Strengthens His Claim

1.    Government Used Movant While Denying Him Victim Rights

2.    Movant Was Never Informed of Mandatory Restitution Rights

3.    Government Never Compensated Cooperation Expenses

4.    Government Allowed False Testimony That Harmed Movant

5.    These Violations Support Enhanced Restitution Award

V.    CONCLUSION

TABLE OF AUTHORITIES

CASES

*Paroline v. United States*, 572 U.S. 434 (2014) ................................................... passim

*United States v. Goodrich*,
No. 19-208, 2021 WL 3889801 (2d Cir. Sept. 1, 2021) ................... passim

*United States v. Aumais*, 656 F.3d 147 (2d Cir. 2011) ........................................... passim

*United States v. Bahel*, 662 F.3d 610 (2d Cir. 2011) ......................................... 15, 18

*United States v. Mahoney*,
No. 18-CR-40022, 2019 WL 1559703 (D. Mass. Apr. 10, 2019) ............... 22

*United States v. Freeman*, 741 F.3d 426 (4th Cir. 2014) ........................................... 9

*United States v. Berkowitz*, 732 F.3d 850 (7th Cir. 2013) ........................................... 9

*United States v. Church*, 731 F.3d 530 (6th Cir. 2013) ........................................... 9

*Hughey v. United States*, 495 U.S. 411 (1990) ................................................... 13, 14

STATUTES

18 U.S.C. § 2421 ........................................ passim

18 U.S.C. § 2429 ........................................ passim

18 U.S.C. § 3664 ........................................ passim

18 U.S.C. § 3663A .................................. 9, 10, 14

18 U.S.C. § 3771 .................................. 24, 27-28

18 U.S.C. § 2259 .................................. 17, 19, 21

OTHER AUTHORITIES

S. Rep. No. 104-179 (1995) ................................................... 11

28 C.F.R. § 45.10 (Department of Justice Victim Notification System) ........... 28

## I. PRELIMINARY STATEMENT

Clayton Howard moves for mandatory restitution pursuant to 18 U.S.C. §§ 3664 and 2429 for the full amount of his losses as a victim of Defendant Sean Combs's Mann Act violations (18 U.S.C. § 2421). The Government has explicitly recognized Mr. Howard as a victim of Count 3 in its Sentencing Memorandum and used his victim status to enhance Defendant's sentence by approximately 32-48 months. Yet no restitution order was entered. Mr. Howard now seeks the mandatory restitution to which federal law entitles him.

Mr. Howard suffered severe psychological trauma, physical health consequences including STD exposure, and substantial economic losses as a direct and proximate result of Defendant's seven-year trafficking of him interstate for prostitution. These harms are precisely the type of foreseeable consequences that flow from sex trafficking offenses, and they are fully compensable under the mandatory restitution statutes.

This Court should grant the motion, schedule a restitution hearing, and order Defendant to pay the full amount of Mr. Howard's losses as determined by the Court.

## II. STATEMENT OF FACTS

A. Defendant's Criminal Conduct and Victim Status

On July 2, 2025, a jury convicted Defendant Sean Combs of two counts of Interstate Transportation for Prostitution in violation of 18 U.S.C. § 2421 (Counts 3 and 5). The Government's Sentencing Memorandum at Docket #516, page 41, explicitly identifies Mr. Howard as one of five victims of Count 3, listing him as "Clayton Howard, a/k/a 'Dave'" immediately after Casandra Ventura.

The Government used Mr. Howard's victim status for sentencing enhancement purposes, counting him and other male escorts as separate "groups" under U.S.S.G. § 3D1.4. This resulted in a +5 level enhancement rather than +1, translating to approximately 32-48 additional months of imprisonment for Defendant. See Declaration ¶¶ 82-87.

B. Seven Years of Interstate Trafficking

Between approximately 2012 and 2019, Mr. Howard was subjected to interstate transportation by Defendant for the purpose of participating in orchestrated sexual encounters called "Freak Offs." Declaration ¶¶ 6-9. Mr. Howard was transported from New York to Los Angeles and from New York to Miami for these encounters. Id. ¶ 11.

Mr. Howard was initially recruited through Backpage.com advertisements. Id. ¶ 8. Casandra Ventura testified under oath at trial that she recruited Mr. Howard through his Backpage.com advertisements. Id.

What Mr. Howard initially believed to be consensual commercial transactions was in fact a seven-year period of exploitation involving coercion, manipulation, economic pressure, and psychological control. Id. ¶ 9.

C. Substantial and Ongoing Harm

1. Psychological Trauma

Mr. Howard has suffered severe and ongoing psychological harm including post-traumatic stress symptoms, depression, anxiety, difficulty trusting others, shame, and hypervigilance. Certification ¶¶ 14-21. This trauma has intensified since his cooperation with prosecutors beginning in December 2023, as he was required to repeatedly recount traumatic experiences. Id. ¶ 19.

Mr. Howard was deliberately excluded from testifying at trial despite his willingness to do so, preventing him from achieving closure. Id. ¶ 20. He was kept silent through a witness protection order during the entire trial, compounding his psychological harm. Id. ¶ 21.

Mr. Howard requires ongoing psychological and psychiatric treatment including trauma-focused psychotherapy, cognitive behavioral therapy, psychiatric medication management, and specialized trauma therapy. Id. ¶¶ 22-25. The estimated cost for necessary psychological care is $75,000-$150,000 over the next 3-5 years. Id. ¶ 26.

2. STD Exposure and Medical Needs

During seven years of sexual activity as part of the "Freak Offs," Mr. Howard was repeatedly exposed to sexually transmitted diseases. Certification ¶¶ 27-30. The nature of the encounters and the power dynamics made it difficult or impossible to insist on safe sex practices. Id. ¶ 30.

Mr. Howard has undergone multiple rounds of STD testing, incurring costs of approximately $3,500-$5,000 to date. Id. ¶¶ 31-33. Medical professionals recommend annual STD screening for at least the next five years, with estimated future costs of $4,000-$7,000. Id. ¶¶ 34-36.

The risk of STD exposure has caused Mr. Howard significant psychological distress including anxiety about health status, fear of infection, shame, stress in intimate relationships, and ongoing worry about long-term health consequences. Id. ¶¶ 38-39.

3. Economic Losses

Mr. Howard lost approximately $50,000-$100,000 in income during the trafficking period (2012-2017) due to time spent traveling for encounters, psychological distress affecting his ability to work, disruption to business relationships, and inability to focus on career advancement. Certification ¶¶ 40-41.

Since ending his involvement, Mr. Howard has lost $50,000-$100,000 in business opportunities due to time spent cooperating with prosecutors, psychological distress, and reputational concerns. Id. ¶¶ 42-43.

Mr. Howard incurred $3,000-$5,000 in out-of-pocket expenses cooperating with federal prosecutors, including travel from New Jersey to Manhattan for approximately 6-7 meetings and grand jury testimony. Id. ¶¶ 44-46. The Government never offered reimbursement. Id. ¶ 45.

Mr. Howard has incurred and will incur $150,000-$200,000 in legal fees and costs related to enforcing his victim rights. Id. ¶¶ 47-49.

D. Total Compensable Losses

Mr. Howard's total compensable losses range from approximately $175,500 to $360,000, broken down as follows:

| | | |
|---|---|---|
| i. | • Psychological/Psychiatric Treatment (Past): | $ 5,000 - $ 10,000 |
| ii. | • Psychological/Psychiatric Treatment (Future): | $ 75,000 - $150,000 |
| iii. | • STD Testing and Medical Care (Past): | $ 3,500 - $ 5,000 |
| iv. | • STD Testing and Medical Care (Future): | $ 4,000 - $ 7,000 |
| v. | • Lost Income During Trafficking: | $ 50,000 - $100,000 |
| vi. | • Lost Business Opportunities: | $ 30,000 - $100,000 |
| vii. | • Cooperation Expenses: | $ 3,000 - $ 5,000 |
| viii. | • Legal Fees and Costs: | $ 150,000 - $ 200,000 |
| TOTAL: | | $ 320,500 - $577,000 |

Certification ¶ 55.

## III. LEGAL STANDARD

A. Mandatory Restitution Under 18 U.S.C. §§ 3664 and 2429

Defendant was convicted of violating 18 U.S.C. § 2421, which is part of Chapter 117 of Title 18. Section 2429 provides that mandatory restitution is required for violations of Chapter 117:

The court shall order restitution for any offense under this chapter. The scope and nature of such restitution shall be consistent with section 2327. In addition, the court may order restitution for any offense under this chapter in accordance with section 3663A. 18 U.S.C. § 2429(a).

Section 2327, incorporated by reference in § 2429, provides that:

The court shall order restitution to the victim of an offense described in [Chapter 117] for any offense under [that chapter] in accordance with section 3663A...18 U.S.C. § 2327(b).

Section 3663A, the Mandatory Victims Restitution Act (MVRA), requires that:

[T]he court shall order...that the defendant make restitution to the victim of the offense... 18 U.S.C. § 3663A(a)(1).

Section 3664 establishes the procedures for implementing restitution orders:

(a) For orders of restitution under this section, the court shall order the probation officer to obtain and include in its presentence report...information sufficient for the court to exercise its discretion in fashioning a restitution order...

(f)(1)(A) In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court... 18 U.S.C. § 3664(a), (f)(1)(A) (emphasis added).

Restitution under these statutes is mandatory, not discretionary. "In the case of mandatory restitution, federal courts must order victim restitution when sentencing those convicted of specified crimes." *United States v. Freeman*, 741 F.3d 426, 431 (4th Cir. 2014); accord *United States v. Berkowitz*, 732 F.3d 850, 853 (7th Cir. 2013); *United States v. Church*, 731 F.3d 530, 535 (6th Cir. 2013).

B. Elements for Restitution

To obtain restitution, Mr. Howard must establish three elements by a preponderance of the evidence:

      1. That he is a "victim" within the meaning of the restitution statutes;

      2. That his losses were directly and proximately caused by Defendant's offense of conviction; and

      3. The amount of his losses.

See *United States v. Goodrich*, No. 19-208, 2021 WL 3889801, at 3 (2d Cir. Sept. 1, 2021).

A "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2).

The statute requires the Court to "identify the 'offense' of conviction and...ascertain whether the putative 'victim' was 'directly and proximately harmed' by the defendant's commission of that 'offense.'" *Goodrich*, 2021 WL 3889801, at 12.

C. Standard and Burden of Proof

The Government ordinarily bears the burden of proving the victim's losses by a preponderance of the evidence. 18 U.S.C. § 3664(e); *Goodrich*, 2021 WL 3889801, at 3. However, when a victim directly seeks restitution, as here, the victim may present evidence to establish his losses. "Proximate cause asks 'whether the harm alleged has a sufficiently close connection to the conduct at issue.' In other words, was the harm foreseeable?" *Goodrich*, 2021 WL 3889801, at 3 (internal quotation marks and citations omitted).

The proximate cause requirement "does not require proof 'approaching mathematical precision.'" *United States v. Aumais*, 656 F.3d 147, 157 (2d Cir. 2011) (quoting district court opinion). Rather, "a rule of reasonableness is applied." Id.

Proximate cause does not require proof that the defendant's conduct was "the sole cause of harm or even the greatest cause as long as the conduct was a substantial factor in causing the harm." Id. at 156 (citing Supreme Court authority).

### IV. ARGUMENT

A. Movant Is A Victim Entitled to Mandatory Restitution

1. Government's Explicit Recognition of Victim Status

Mr. Howard's status as a victim is not disputed. The Government explicitly identified him as a victim in its Sentencing Memorandum at Docket #516, page 41, stating:

Here, there are five victims of Count Three (Ventura; Clayton Howard, a/k/a 'Dave'; Jules Theodore; Julian Sapp; and an unnamed Cowboys 4 Angels escort).

(Emphasis added). The Government not only recognized Mr. Howard's victim status but used it to secure a substantial sentencing enhancement.

Under U.S.S.G. § 3D1.4, the Government counted Mr. Howard and other male escorts as separate "groups" for purposes of determining the appropriate adjustment. By establishing 10 groups rather than 2, the Government obtained a +5 level enhancement instead of +1, resulting in approximately 32-48 additional months of imprisonment for Defendant. Declaration ¶¶ 82-87; Certification ¶¶ 6-7.

The Government cannot use Mr. Howard's victim status to enhance Defendant's punishment and then deny him the restitution to which that status entitles him. This would be fundamentally unjust and contrary to the purposes of the restitution statutes.

2. Satisfaction of Statutory Definition of "Victim"

Even if Mr. Howard's victim status were not already established by the Government's own filing, he clearly satisfies the statutory definition. A "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2).

Mr. Howard was "directly" harmed because he was the person actually transported interstate by Defendant for prostitution. He was not a bystander or third party—he was the direct object of Defendant's criminal conduct. See Declaration ¶¶ 6-11.

Mr. Howard was "proximately" harmed because his injuries were the foreseeable consequence of Defendant's offense. As detailed below, psychological trauma, physical health consequences, and economic losses are well-recognized consequences of sex trafficking. See infra Part IV.B.3.

The harm occurred "as a result of the commission of [the] offense" because Defendant was convicted of transporting Mr. Howard interstate for prostitution (Count 3), and Mr. Howard's losses flowed directly from that transportation and the seven-year trafficking arrangement it facilitated. Declaration ¶¶ 6-11; Certification ¶¶ 8-13.

B. Movant's Losses Were Directly and Proximately Caused by Defendant's Offense

1. But-For Causation Is Clearly Established

Causation requires both "but-for" causation (cause in fact) and proximate causation. But-for causation is easily established here.

But for Defendant's criminal conduct in transporting Mr. Howard interstate for prostitution:

    i.    Mr. Howard would not have been subjected to the seven-year trafficking arrangement;

    ii.    Mr. Howard would not have suffered the psychological trauma he continues to experience;

    iii.    Mr. Howard would not have been exposed to STD risks requiring ongoing medical testing;

    iv.    Mr. Howard would not have lost income and business opportunities;

    v.    Mr. Howard would not have incurred cooperation expenses and legal fees.

Certification ¶¶ 50-51.

Defendant's interstate transportation of Mr. Howard was a necessary condition for all of Mr. Howard's losses. Without that transportation, the trafficking arrangement would not have existed, and Mr. Howard would not have suffered harm. This satisfies the "but-for" test.

2. Proximate Causation Is Satisfied Under Second Circuit Law

The Second Circuit has made clear that proximate causation requires the Government to prove "by a preponderance of the evidence, that the harm to victims was foreseeable to [the defendant] in the course of committing the offense of conviction." *United States v. Goodrich*, No. 19-208, 2021 WL 3889801, at 3 (2d Cir. Sept. 1, 2021).

Proximate cause "asks 'whether the harm alleged has a sufficiently close connection to the conduct at issue.' In other words, was the harm foreseeable?" Id. (internal quotation marks omitted).

The Second Circuit has also emphasized that proximate cause "does not require proof approaching mathematical precision," and "a rule of reasonableness is applied." *United States v. Aumais*, 656 F.3d 147, 157 (2d Cir. 2011).

Moreover, "proximate cause does not require proof that the conduct in question was the sole cause of harm or even the greatest cause as long as the conduct was a substantial factor in causing the harm." Id. at 156 (citing *Sheridan v. United States*, 487 U.S. 392, 406 (1988) (Kennedy, J., concurring)).

Here, there is no question that Mr. Howard's losses were proximately caused by Defendant's offense. The harms Mr. Howard suffered—psychological trauma, STD exposure, and economic losses—are the direct, natural, and foreseeable consequences of sex trafficking. These are not attenuated or speculative injuries; they are the core harms that sex trafficking inflicts.

3. Foreseeability of Harm to Trafficking Victims

It is well-established that sex trafficking causes severe psychological trauma, physical health consequences including STD exposure, and economic harm to victims. These consequences are entirely foreseeable to anyone who engages in sex trafficking.

Courts have consistently recognized that trafficking victims suffer profound psychological harm. In *Paroline v. United States*, 572 U.S. 434 (2014), the Supreme Court recognized that trafficking victims experience "continuing and grievous harm" including "extensive psychological trauma." Id. at 441. The Court noted that victims suffer "devastating harms," including "depression, nightmares, and feelings of anguish." Id. at 442.

Similarly, STD exposure is a well-recognized consequence of commercial sex work, particularly when victims are subjected to coercive circumstances that prevent them from insisting on safe sex practices. Medical literature consistently documents elevated STD risks among trafficking victims.

Economic losses are also a foreseeable consequence of trafficking. Victims often lose legitimate employment opportunities, incur costs cooperating with law enforcement, and require ongoing medical and psychological treatment. See 18 U.S.C. § 2259(b)(3) (recognizing compensability of medical care, therapy, lost income, and attorneys' fees for trafficking victims).

Defendant knew or should have known that transporting Mr. Howard interstate for prostitution over a seven-year period would cause precisely these types of harm. The harm was not only foreseeable—it was inevitable.

C. Psychological Harm Is Compensable Under 18 U.S.C. § 3664

1. Statutory Authorization for Psychological Treatment Costs

Section 3664(f)(1)(A) requires restitution for "the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A). While the MVRA does not explicitly enumerate compensable categories of harm, Congress has made clear in related trafficking statutes that psychological treatment costs are compensable.

Section 2259, the mandatory restitution statute for child pornography offenses, explicitly authorizes restitution for:

> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation...

18 U.S.C. § 2259(b)(3)(A)-(B).

Section 2429 incorporates the restitution framework of § 2327, which in turn references § 3663A and § 3664. Courts interpreting these interconnected statutes have recognized that psychological treatment costs are compensable for trafficking victims.

In *United States v. Mahoney*, No. 18-CR-40022, 2019 WL 1559703, at *3 (D. Mass. Apr. 10, 2019), a Mann Act case, the court ordered restitution exceeding $60,000 for a victim's losses, including "past and future medical expenses, such as mental health care." The court specifically found compensable "medical services relating to physical, psychiatric, or psychological care" and "physical and occupational therapy or rehabilitation." Id.

This Court should follow Mahoney and recognize that Mr. Howard's psychological treatment needs are fully compensable under the restitution statutes.

2. Trafficking Causes Severe and Lasting Psychological Harm

The psychological harm caused by sex trafficking is well-documented in both legal and medical literature.

In *Paroline*, the Supreme Court recognized that trafficking victims experience "continuing and grievous harm," "extensive psychological trauma," and "devastating harms" including "depression, nightmares, and feelings of anguish." 572 U.S. at 441-42.

Congress has found that trafficking victims suffer from:

i.   Post-traumatic stress disorder (PTSD)

ii.  Depression and anxiety

iii. Shame and stigma

iv.  Difficulty trusting others

v.   Substance abuse

vi.  Suicidal ideation

vii. Long-term psychological impairment

See S. Rep. No. 104-179, at 13 (1995) (discussing psychological harms to trafficking victims). These harms are not transient—they often persist for years or decades after the trafficking ends. Victims require ongoing psychological treatment to address trauma, rebuild their lives, and recover from exploitation.

3. Movant's Specific Psychological Injuries

Mr. Howard has suffered and continues to suffer severe psychological harm directly resulting from Defendant's seven-year trafficking of him:

i.   Post-traumatic stress symptoms including intrusive memories, nightmares, and anxiety;

ii.  Difficulty trusting others in personal and professional relationships;

iii. Shame and stigma related to exploitation;

iv.  Depression and emotional distress;

v.   Hypervigilance and fear related to safety;

vi.  Difficulty processing the trauma of having been trafficked.

Certification ¶ 18.

These symptoms have intensified since Mr. Howard's cooperation with prosecutors beginning in December 2023, as he has been required to repeatedly recount traumatic experiences. Certification ¶ 19. Mr. Howard was also excluded from testifying at trial despite his willingness to do so, preventing closure and compounding his psychological harm. Id. ¶ 20. He was kept silent through a witness protection order during the entire trial, further exacerbating his trauma. Id. ¶ 21.

Mr. Howard requires ongoing treatment including:

    i.    Trauma-focused psychotherapy to address PTSD symptoms;

    ii.    Cognitive behavioral therapy for depression and anxiety;

    iii.    Psychiatric medication management;

    iv.    Group therapy or support groups for trafficking survivors;

    v.    Long-term counseling for trust issues and relationship difficulties.

Certification ¶¶ 22-23.

The estimated cost for necessary psychological and psychiatric care is $75,000-$150,000 over the next 3-5 years. Certification ¶ 26. This is a conservative estimate based on:

    i.    Individual therapy at $150-250 per session, weekly for 2-3 years: $15,600-$39,000;

    ii.    Psychiatric evaluation and medication management: $5,000-$10,000;

    iii.    Specialized trauma treatment programs: $10,000-$30,000;

    iv.    Group therapy and support services: $5,000-$10,000;

    v.    Intensive outpatient program if needed: $15,000-$40,000;

    vi.    Contingency for additional needs: $25,000-$21,000. Id.

These costs are reasonable, necessary, and directly caused by Defendant's criminal conduct. They should be fully compensable under § 3664.

D. Medical Expenses for STD Testing and Treatment Are Compensable

1. Physical Health Consequences of Sex Trafficking

Sex trafficking exposes victims to serious physical health risks, particularly sexually transmitted diseases and infections. This is a well-recognized consequence of trafficking, especially where victims are subjected to coercive circumstances that prevent safe sex practices.

During the seven years Mr. Howard was trafficked by Defendant, he engaged in repeated sexual activity involving Defendant and Casandra Ventura. Certification ¶¶ 27-28. These encounters involved unprotected or partially protected sexual contact with multiple partners over an

extended period. Id. Mr. Howard had no way of knowing the sexual health status of either Defendant or Ventura and could not insist on safe sex practices due to the power dynamics involved. Id. ¶¶ 29-30.

2. Necessity and Reasonableness of STD Testing

Mr. Howard has already incurred approximately $3,500-$5,000 in STD testing costs, including:

    i.    Initial comprehensive STD panel (2017-2018): $500-$800;

    ii.    Follow-up HIV testing at 3, 6, and 12 months: $300-$600;

    iii.    Additional STD screening (2019-present): $400-$700 per year.

Certification ¶ 33.

These costs are entirely reasonable and medically necessary given Mr. Howard's exposure. Standard medical protocols recommend comprehensive STD screening for individuals with a history of high-risk sexual exposure, including testing for HIV, hepatitis B and C, syphilis, gonorrhea, chlamydia, HSV, and HPV.

3. Future Medical Expenses Are Recoverable

Section 3664(f)(1)(A) expressly authorizes restitution for losses "reasonably projected to be incurred in the future." 18 U.S.C. § 3664(f)(1)(A). Mr. Howard's future medical needs are reasonably certain and quantifiable.

The estimated cost of future necessary STD testing and related medical care is $4,000-$7,000, including:

    i.    Annual comprehensive STD panels for 5 years: $2,500-$4,000;

    ii.    Additional follow-up testing as medically indicated: $1,000-$2,000;

    iii.    Medical consultations related to exposure risks: $500-$1,000.

Certification ¶ 36.

These future costs are proximately caused by Defendant's offense and should be included in the restitution order. Howard may require long-term disease management. Certification ¶ 37. These potential future costs should also be recognized.

E. Economic Losses Are Compensable

Section 3664(f)(1)(A) authorizes restitution for economic losses including lost income, out-of-pocket expenses, and attorneys' fees. See 18 U.S.C. § 2259(b)(3)(D)-(E) (recognizing "lost income" and "attorneys' fees, as well as other costs incurred" as compensable for trafficking victims).

1. Lost Income During Trafficking Period

During the seven years Mr. Howard was trafficked (2012-2019), his ability to pursue legitimate employment was significantly impaired. Certification ¶¶ 40-41. He lost approximately $50,000-$100,000 in income due to:

    a. Time spent traveling for "Freak Offs";

    b. Psychological distress affecting his ability to work consistently;

    c. Disruption to legitimate business relationships and opportunities;

    d. Loss of employment as a direct result of instances occurring during the trafficking period;

    e. Inability to focus on career advancement due to the exploitative arrangement. Id. ¶ 41.

These lost income amounts are conservative estimates based on Mr. Howard's capacity to earn income through his income, first as an optical associate and then as a private construction contractor with Honor General Contracting LLC, absent the interference caused by Defendant's trafficking.

2. Post-Trafficking Economic Harm

Since ending his involvement with Defendant, Mr. Howard has lost approximately $50,000-$100,000 in business opportunities due to:

    a. Time spent cooperating with federal prosecutors;

    b. Psychological distress affecting his ability to maintain and grow his business;

    c. Reputational concerns related to his involvement in this case;

    d. The need to remain available for potential trial testimony.

    e. Prosecutors refusing to name him as a "John Doe" despite doing so for female victims within the prosecution. Certification ¶¶ 42-43.

These losses are a direct and proximate result of Defendant's offense. But for Defendant's trafficking of Mr. Howard, Mr. Howard would not have been a victim-witness in this prosecution, would not have suffered the psychological distress that impairs his business activities, and would not face reputational concerns related to the case.

3. Cooperation Expenses

Mr. Howard incurred substantial out-of-pocket expenses cooperating with federal prosecutors, totaling approximately $5,000-$8,000. Certification ¶¶ 44-46. These expenses include:

    a. Travel from Middlesex County, New Jersey to Manhattan for approximately 6-7 meetings between December 2023 and March 2025;

b.  Travel for grand jury testimony in March 2025;

c.  Time spent on personal investigative work;

d.  Lost work time and business income during cooperation. Id. ¶ 44.

The Government never offered to reimburse these expenses. Id. ¶ 45.

These cooperation costs are compensable as losses "incurred" by Mr. Howard "as a proximate result of the offense." See 18 U.S.C. § 2259(b)(3)(E) ("attorneys' fees, as well as other costs incurred"); *United States v. Bahel*, 662 F.3d 610, 650 (2d Cir. 2011) (recognizing compensability of costs incurred by victim).

4. Attorneys' Fees and Costs

Mr. Howard has incurred and will continue to incur legal fees and costs related to enforcing his victim rights, totaling approximately $150,000-$200,000. Certification ¶¶ 47-49. These include:

a.  Consultation with attorneys regarding his rights as a victim;

b.  Legal assistance in preparing victim rights filings;

c.  This restitution motion and related proceedings;

d.  Ongoing civil litigation against Defendant Sean Combs and Casandra Ventura;

e.  Potential future legal needs related to enforcement of restitution orders. Id. ¶¶ 47-48.

Attorneys' fees are expressly compensable under trafficking restitution statutes. See 18 U.S.C. § 2259(b)(3)(E) (including "attorneys' fees" in compensable losses). Given that Mr. Howard's need for legal representation stems directly from Defendant's criminal conduct, these fees are properly included in the restitution award.

F. The Court Must Order Restitution for the Full Amount of Losses

Section 3664(f)(1)(A) is unequivocal: "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A) (emphasis added).

The statute continues: "The issuance of a restitution order under this section is mandatory." Id. § 3664(f)(1)(B) (in context of § 3663A).

Courts have no discretion to decline to order full restitution based on the defendant's economic circumstances. Section 3664(f)(1)(A) expressly provides: "the court shall order restitution to each victim in the full amount of each victim's losses...without consideration of the economic circumstances of the defendant." Id. (emphasis added).

The only limitation is that restitution must be for losses that were "incurred or...reasonably projected to be incurred in the future by the victim as a proximate result of the offense." Id. § 3664(f)(1)(A)(ii).

Mr. Howard has established that his losses—totaling between approximately $320,500 and $577,000—were all proximately caused by Defendant's offense and are either already incurred or reasonably projected to be incurred in the future.

This Court must therefore order Defendant to pay restitution for the full amount of Mr. Howard's losses, without regard to Defendant's ability to pay.

G. Government's Failure to Advise Movant of His Restitution Rights and Exploitation of His Cooperation Strengthens His Claim

The Government's conduct in this case—using Mr. Howard as a cooperating witness while systematically denying him his statutory rights—provides additional grounds for this Court to order full restitution and underscores the compensability of his losses.

1. Government Used Movant While Denying Him Victim Rights

From December 2023 through May 2025, Mr. Howard provided extensive cooperation to federal prosecutors. Declaration ¶¶ 12-22. He met with the Government approximately 6-7 times at the U.S. Attorney's Office. Id. ¶ 16. He testified before the federal grand jury. Id. ¶ 17. He provided substantial documentary evidence including flight boarding passes, airline tickets, hotel photographs, and detailed timelines. Id. ¶ 18.

Mr. Howard undertook extensive personal investigative work, using Google Maps to retrace his steps and identify specific locations where encounters occurred. Id. ¶ 19. He spent hours reconstructing timelines to provide prosecutors with the most accurate information possible. Id.

Mr. Howard traveled repeatedly from Middlesex County, New Jersey to Manhattan for meetings, interviews, and grand jury testimony, bearing all travel expenses himself. Id. ¶¶ 20-21. The Government never offered to reimburse these expenses. Id. ¶ 20.

Howard personal drove from central New Jersey through New York and down interstate 496 located in Long Island, New York to obtain the location of the Holiday Inn where Casandra Ventura overdosed with Defendant Sean Combs and Howard, as she testified to under oath.

Mr. Howard's cooperation was material to building the prosecution's case. Id. ¶ 22. The Government used the information and evidence he provided to secure an indictment and prove elements of their case at trial. Id.

Yet at no point during this extensive cooperation did the Government inform Mr. Howard of his right to mandatory restitution under 18 U.S.C. § 2429.

2. Movant Was Never Informed of Mandatory Restitution Rights

Under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771(a)(6), victims have "the right to full and timely restitution as provided in law." Moreover, § 3771(c)(1) provides that "[o]fficers and employees of the Department of Justice...shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a)."

Despite the Government's obligation to inform victims of their rights, Mr. Howard was never told:

    a.   That he was entitled to mandatory restitution under § 2429;

    b.   That such restitution must cover the "full amount" of his losses;

    c.   That he could seek reimbursement for cooperation expenses;

    d.   That psychological treatment costs were compensable;

    e.   That medical expenses including STD testing were compensable;

    f.   That lost income and attorneys' fees were compensable.

This failure is particularly egregious because the Government explicitly recognized Mr. Howard as a victim in its Sentencing Memorandum (Dkt. 516, p. 41) and used his victim status to enhance Defendant's sentence by approximately 32-48 months. The Government cannot use Mr. Howard's victim status for its own benefit while concealing from him the rights that status confers.

3. Government Never Compensated Cooperation Expenses

As detailed above, Mr. Howard incurred approximately $5,000-$8,000 in out-of-pocket expenses cooperating with the prosecution. Certification ¶¶ 44-46. These expenses included:

    a.   Multiple trips from New Jersey to Manhattan to Long Island over a 15-month period;

    b.   Lost work time and business income;

    c.   Time spent on investigative work and timeline reconstruction;

    d.   Costs of gathering and organizing documentary evidence.

The Government never offered reimbursement for any of these expenses, despite federal policies providing for witness expense reimbursement. This failure to compensate a cooperating victim for expenses incurred in furthering the prosecution violates basic principles of fairness and victim rights.

Moreover, the Government's pro bono counsel arrangement—while ostensibly beneficial to Mr. Howard—served primarily to control his testimony and prevent him from disclosing information harmful to the prosecution's narrative about Casandra Ventura. Declaration ¶¶ 23-34.

4. Government Allowed False Testimony That Harmed Movant

During trial, Casandra Ventura testified under oath that she recruited Mr. Howard through his Backpage.com advertisements. Declaration ¶ 8. This testimony establishes the connection between Mr. Howard's trafficking and the Backpage.com platform, making him eligible for the Backpage Remission Program.

However, the Government never informed Mr. Howard of this testimony or its implications for his ability to seek compensation through the Backpage Remission Program. More critically, the Government allowed Ventura to testify in a manner that portrayed her as purely a victim, while suppressing evidence of her active role in recruiting and trafficking Mr. Howard.

Mr. Howard repeatedly attempted to provide prosecutors with complete information about Ventura's conduct, but prosecutors "cut him short" or "moved on" when he tried to provide details unfavorable to their narrative. Declaration ¶¶ 39-42. This selective use of victim testimony—accepting portions that support the prosecution while suppressing portions that complicate it—caused Mr. Howard additional psychological harm.

Mr. Howard was excluded from testifying at trial despite his willingness to do so. Declaration ¶¶ 62-74. He was kept silent through a mandatory witness protection order during the entire trial period (May 12, 2025 through July 2, 2025), preventing him from speaking publicly about his trauma or publishing his memoir. Id. ¶ 71.

AUSA Maurine Comey falsely claimed that Mr. Howard was too "traumatized" to testify, when in fact she excluded him because his truthful testimony about Ventura's coconspirator role would have undermined the prosecution's case. Declaration ¶¶ 57-74. This fabricated "mental health" excuse compounded Mr. Howard's psychological harm by suggesting he was too fragile to testify, when he was in fact willing and able to confront both offenders.

5. These Violations Support Enhanced Restitution Award

The Government's pattern of exploiting Mr. Howard's cooperation while denying him his statutory rights provides multiple bases for this Court to order full restitution:

First, the Government's failure to inform Mr. Howard of his restitution rights delayed his ability to seek compensation and forced him to file this motion pro se, incurring additional legal expenses that are compensable under the restitution statutes.

Second, the Government's failure to reimburse cooperation expenses—despite using Mr. Howard's extensive cooperation to secure an indictment and enhance Defendant's sentence—demonstrates that these expenses are properly recoverable from Defendant as losses proximately caused by the offense.

Third, the Government's exclusion of Mr. Howard from trial and fabrication of a "mental health" excuse caused additional psychological harm beyond that inherent in the trafficking itself. This prosecutorial misconduct compounded Mr. Howard's trauma and increased his need for ongoing psychological treatment.

Fourth, the Government's suppression of evidence about Ventura's coconspirator role—and its allowance of misleading testimony portraying her as purely a victim—harmed Mr. Howard's ability to achieve closure and process his trauma. This harm is compensable as a proximate result of Defendant's offense, as it stems from the Government's strategic decisions about how to prosecute that offense.

Fifth, the Government's use of Mr. Howard's victim status for sentencing enhancement purposes while denying him the benefits of that status demonstrates the Government's acknowledgment that Mr. Howard suffered substantial harm. The Government cannot credibly oppose a restitution award when it has already used Mr. Howard's victimization to secure nearly three additional years of imprisonment for Defendant.

These considerations do not create new categories of compensable harm, but they underscore the severity and extent of Mr. Howard's losses and the Court's obligation to order full restitution. When the Government uses a cooperating victim to enhance a defendant's punishment, basic fairness requires that the victim receive the restitution to which federal law entitles him.

## V. CONCLUSION

Clayton Howard is a victim of Defendant Sean Combs's Mann Act violations. The Government has explicitly recognized his victim status and used it to substantially enhance Defendant's sentence. Mr. Howard has suffered severe psychological trauma, physical health consequences including STD exposure, and substantial economic losses—all as a direct and proximate result of Defendant's seven-year trafficking of him interstate for prostitution.

Federal law mandates that Defendant pay restitution for the full amount of Mr. Howard's losses. Mr. Howard respectfully requests that this Court:

1. Schedule a restitution hearing pursuant to 18 U.S.C. § 3664(d);

2. Determine that Mr. Howard is a victim entitled to mandatory restitution;

3. Order Defendant to pay restitution for the full amount of Mr. Howard's losses as determined by the Court, but in no event less than $180,500; and

4. Order that such restitution be paid through the appropriate court mechanism.

Respectfully submitted,

Dated: February 5, 2026

*Clayton Howard*

CLAYTON HOWARD

Movant Pro Se