UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SEAN COMBS,<br>   *Defendant.*<br><br><br>CLAYTON HOWARD,<br>   *Movant-Victim.* | Case No. 1:24-cr-00542-AS<br><br><br>DECLARATION OF CLAYTON HOWARD IN SUPPORT OF MOTION FOR RECONSIDERATION OF JANUARY 28, 2026 ORDER DENYING CRIME VICTIMS' RIGHTS PURSUANT TO 18 U.S.C. 3771 |

I, Clayton Howard, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on my personal knowledge:

## I. INTRODUCTION AND BACKGROUND

1. My name is Clayton Howard. I reside in Middlesex County, New Jersey. I am over 19 years of age and I am possess intimate knowledge of the events herein.

2. I am a crime victim in this case. The United States Attorney's Office designated me as "Victim #2" in Count 3 of the indictment against defendant Sean Combs. (Government's Sentencing Memorandum, Dkt. 516, p. 41).

3. The government used my victim status to enhance defendant Combs's sentence by five levels under U.S.S.G. § 2G1.1, resulting in approximately 32 to 48 additional months of imprisonment. (Id. at pp. 68-69).

4. Despite this designation for sentencing purposes, I was denied all rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771. I submit this declaration to support my renewed motion seeking enforcement of those rights.

## II. MY EMPLOYMENT STATUS (2012-2019)

5. During the period of the alleged offenses (2012-2019), I was employed full-time in legitimate occupations. I was NOT a professional sex worker.

6. My employment history during this period includes:

   a. Optical Technician, Bay Street Optical (2012-2014)

   b. Optical Technician, South Shore Eye Care (2014)

   c. Optical Technician, Optyx by Gruen (2014-2016)

   d. Project Manager, Honor General Contracting (2016-2018)

   e. Owner, Gold Standard Contracting LLC (2018-present)

7. My legitimate employment was my primary income source throughout this period. I worked regular hours and received regular paychecks from these employers.

8. Both defendant Sean Combs and Cassandra Ventura were aware that I was not a professional sex worker and that I was gainfully employed.

### III. PATTERN OF COERCION AND ECONOMIC MANIPULATION

9. I only continued to have encounters with Cassandra Ventura due to her continued efforts to gain my participation through coercion and manipulation.

10. Each time Cassandra Ventura contacted me to participate in interstate encounters with defendant Combs, a consistent pattern occurred:

   a. False Promises of Payment: Ventura promised payment ranging from $10,000 to $20,000 for my participation.

   b. Economic Sacrifice to Participate: Based on these promises, I paid my manager out of my own pocket to cover my work shift so I could leave early. These payments ranged from approximately $200 to $500 per occasion.

   c. Interstate Travel Expenses: I traveled interstate at my own expense, including transportation costs and time away from work.

   d. Broken Promises: The promised payment was NOT provided as represented. Instead, I typically received between $1,500 and $6,000—far less than what was promised.

   e. Net Economic Loss: When I calculate my actual losses, I suffered a net economic loss on many occasions:

      i. Lost wages from my optical technician or construction work

      ii. Payment to my manager to leave work

        iii.  Travel expenses

        iv.  Total losses EXCEEDED the actual payment received

11. This pattern of fraudulent inducement occurred on multiple occasions between 2012 and 2019.

12. I continued to participate because:

    a.  I hoped to recover my losses from previous encounters through promised future payments

    b.  I feared retaliation from defendant Combs, a powerful figure in the entertainment industry

    c.  I became psychologically trapped in a cycle where each new promise seemed like an opportunity to finally receive what was owed to me

13. This constitutes fraud-induced coercion, not willing commercial sex work. My consent was vitiated by the systematic pattern of false promises and economic manipulation.

## IV. DIRECT PHYSICAL HARM

14. During encounters arranged by Ventura and Combs, I contracted a sexually transmitted disease requiring medical treatment.

15. I was not sexually active with any other party during this period except my then-girlfriend and Cassandra Ventura.

16. My girl friend at that time tested negative for any STD leaving only Casandra Ventura as the source.

17. During an encounter several weeks after the discovery and treatment, Casandra Ventura confessed to testing positive for Chlamydia.

18. The STD contraction occurred as a direct result of interstate transportation for commercial sex acts arranged by defendant Combs and Cassandra Ventura.

19. I incurred medical expenses for diagnosis, treatment, and follow-up care related to this infection.

20. This physical harm was a foreseeable consequence of the criminal conduct for which defendant Combs was convicted.

## V. PSYCHOLOGICAL AND EMOTIONAL HARM

21. I have suffered ongoing psychological trauma from these experiences, including:

    a.  Post-traumatic stress disorder (PTSD)

    b.  Anxiety and depression

    c.  Difficulty with intimate relationships

    d.  Emotional harm from being commodified and exploited

    e.  Dignitary harm from being used for sentencing enhancement while being denied victim protections

22. I have sought and continue to require psychological treatment to address this trauma.

VI. ECONOMIC HARM

23. In addition to the net economic losses during the encounters themselves, I have suffered:

    a.  Damage to Gold Standard Contracting LLC's business reputation

    b.  Difficulty obtaining contracts due to media coverage

    c.  Reduced income and earning capacity

    d.  Costs associated with addressing public exposure

    e.  Reduction in income due to extensive research and drafting seeking to obtain justice and my rights pursuant to 18 U.S.C. 3771

VII. ATTEMPTS TO CONTACT VICTIM ADVOCATES AND GOVERNMENT (2025)

24. Throughout 2025, I made repeated attempts to contact the U.S. Attorney's Office Victim Witness Coordinator and prosecutors to assert my victim rights and seek assistance. I was consistently ignored, given incomplete information, or actively prevented from participation.

Attempt # 1: May 5 – June 20, 2025: Attempts to exercise rights through counsel Tyrone Blackburn, Esq.

25. After my May 2, 2025 meeting with AUSA Comey, I made repeated inquires through Tyrone Blackburn, Esq. seeking to testify and be heard before the court regarding the events of my victimization used to prosecute Defendant Sean Combs by the government.

26. On May 17, 2025, I began to realize that prosecutors were intentionally withholding my testimony. I belived this to be due to my ability to contradict the sworn testimony of Casandra "Cassie" Ventura, who had testified falsey regarding events I had been party too.

27. Mr Blackburn informed me that prosecutors had replied I would be called shortly, but I never was.

Attempt # 2: June 23, 2025 - First Victim Advocate Contact Attempt

28. On or about June 23, 2025, I attempted to contact the U.S. Attorney's Office Victim Witness Coordinator seeking information about my victim rights and assistance with the case.

29. I did not receive a meaningful response to this contact.

Attempt # 3: July 16-18, 2025 – Attempt to seek assistance from Washington DOJ and FBI

30. During mid July 2025, I lacked knowledge of whom to contact to obtain assistance regarding the misconduct of prosecutors and what had been done to me. I attempted to contact several key officials within Washington, DC who represent justice within federal government:

    i.    Attorney General Pamela Bondi

    ii.    Director Kash Patel

    iii.    President Donald J. Trump

31. I was completely ignorant regarding whom I could contact to obtain assistance regarding how prosecutors violated my right to be heard and testify against my offenders. I was not aware of my rights fully under CVRA, but I was sure I had the right to be heard which prosecutors denied me to protect Casandra Ventura.

32. I received no reply from my outreach which compelled me to seek additional avenues to obtain assistance.

Attempt # 4: September 19, 2025 - Second Victim Advocate Contact Attempt

33. On or about September 19, 2025, I again attempted to contact the U.S. Attorney's Office Victim Witness Coordinator seeking assistance.

34. I did not receive a meaningful response to this contact either.

Attempt # 5: Late September 2025 - Personal Visit to U.S. Attorney's Office

35. During the third or fourth week of September 2025, after receiving no response to my previous attempts, I made a personal trip to the U.S. Attorney's Office for the Southern District of New York.

36. I signed in on the 37th floor seeking to speak with a victim advocate about my rights and the case.

37. I was called later that same day by a victim advocate. However, the phone connection was extremely poor and the call disconnected.

38. I immediately returned the call to the victim advocate, but the advocate never called me back.

39. This was my third failed attempt to obtain assistance from the victim witness unit.

Attempt # 6: September 29, 2025 – Direct Attempt to provide Victim Impact Statement to Hon Judge Arun Subramanian

40. After repeated attempts to engage prosecutors who ignored me, I made a direct attempt to file a victim impact statement with the court documenting my experience with chambers of this court and Hon. Arun Subramanian on September 29, 2025.

41. My statement expressed the truth of my victimization, and sought to document that Casandra Ventura was not the victim the government fabricated her to be with regard to the sex trafficking conspiracy and aquitted R.I.C.O. of Defendant Combs.

42. I felt based on my experience with the government, that Defendant Combs had been maliciously prosecuted and began to realize prosecutors my have violated Brady v Maryland by intentionally withholding my testimony seeking to retain the credibility of Casandra Ventura.

43. My letter to the court sought tenancy for Defendant Combs, as my feeling was that Defendant Combs should not be held solely responsible for something I as a victim could completely verify he was not solely responsible for.

44. I sent this letter via U.S. Mail, possibly certified but I am unable to located the receipt. I am actively working with Post Office Personal to obtain a record of the transaction.

45. I received no meaningful reply from the court, and I was never contacted in regard to my letter.

Attempt # 7: October 21, 2025 - Contact with Ombudsman and Terminated Pro Bono Counsel Ross Kramer, Esq.

46. When my attempts to contact the victim advocates failed, I took two additional steps on October 21, 2025:

   a. I contacted the Office of the Ombudsman for the Department of Justice seeking assistance with my victim rights; and

   b. I contacted former terminated pro bono counsel  Ross Kramer, the pro bono counsel assigned to me by the U.S. Attorney's Office.

October 23, 2025 - Responses Received

47. On October 23, 2025, I received two responses:

    a. Ombudsman Response: The Ombudsman informed me that she had forwarded my communication to the prosecutors handling the Combs case.

    b. Ross Kramer's Assistant Response: Brigid Reidy, the assistant for Ross Kramer, returned my contact and provided me with email addresses for all prosecutors connected to the Combs prosecution, including Emily Johnson (who had replaced Maureen Comey as lead prosecutor).

Attempt # 8: Late October 2025 - Email to Prosecutors

48. Shortly after October 23, 2025, I emailed Emily Johnson and all other prosecutors whose contact information I had received from Ms. Reidy.

49. I sought information about:

    a. My victim status

    b. The sentencing proceeding

    c. My rights under the Crime Victims' Rights Act

    d. Documentation I needed for the Backpage Remission Program

50. Between October 23 through December 5, 2025, I made a minimum of three (3) additional attempts to contact prosecutors.

No Response Until December 5, 2025

51. Despite multiple attempts to contact prosecutors throughout October and November 2025, I did not receive any response from AUSA Emily Johnson or any other prosecutor until on or about December 5, 2025.

52. By the time I received a response in early December 2025, sentencing had already occurred (October 3, 2025), and I had been completely excluded from that proceeding without notice.

53. This pattern of non-responsiveness, delayed responses, and failure to provide victim services violated my rights under 18 U.S.C. § 3771(c)(1), which requires government attorneys to "make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a)."

VIII. GOVERNMENT INTERFERENCE THROUGH ASSIGNED PRO BONO COUNSEL

Assignment of Ross Kramer (December 2023)

54. On or about December  2023, Ross Kramer and Sanctuary for Families were assigned by the U.S. Attorney's Office to represent me as pro bono counsel.

55. I did not select Mr. Kramer. He was provided to me by the government to supposedly protect my interests as a victim and witness.

Kramer's Interference with My Rights

56. Ross Kramer did NOT act in my best interests. Instead, he acted to protect Cassandra Ventura's narrative and the government's case strategy. Specifically, Ross Kramer:

    a. Discouraged Civil Litigation: In Multiple emails between September 2024 and April 2025 Ross Kramer actively sought to suppress my testimony and prevent the exposure of Casandra Ventura. In an email dated October 8, 2024, Kramer discouraged me from filing civil litigation against the perpetrators, advising: "It will make your testimony much more difficult at a criminal trial if you have already filed a civil case seeking money... my recommendation would be to hold off." This advice benefited the prosecution, not me.

    b. Prevented Publication of My Memoir: Kramer told me not to publish my memoir titled "Cassie: Victim or Coconspirator?" before trial, even though the book contained truthful information about Cassandra Ventura's conduct. This protected Ventura's credibility as a prosecution witness, not my interests.

    c. False "Mental Health" Claims: Kramer advised prosecutors that testifying would harm my "mental health," which was fabricated to justify my exclusion from trial.

    d. Protected Ventura's Narrative: In an email dated February 18, 2025, Kramer acknowledged Ventura's culpability while insisting she remain classified as a "victim": "Regarding Cassandra, in many cases a victim can also be someone who engaged in criminal behavior. That is likely how they view Cassandra. She was victimized by the defendant, but she also took steps that endangered others, including you."

57. Ross Kramer never informed me of my rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771.

58. Ross Kramer never advised me that I had a right to be notified of and present at sentencing.

59. Ross Kramer never told me that I had a right to confer with the government about the case disposition.

Termination of Kramer's Representation (May 1, 2025)

60. On May 1, 2025, I terminated Ross Kramer's representation because he prevented me from telling the full truth about Ventura's conduct.

61. In an email to Kramer dated May 1, 2025, I wrote: "Everything in that book I have tried to tell them and They choose not to indulge or cut me short. You sat there as I told them about the menstrual situation. Maurine didn't care. I told them about long island, they moved on. That is not my fault, I had a claim and they ignored me."

62. I continued: "It unfortunate we fall out over my truth but that's ok with me if need be."

63. This email proves that:

   a. Kramer pressured me not to disclose information in my book

   b. I tried to tell prosecutors the full truth about Ventura

   c. Prosecutors deliberately cut me short and ignored relevant information

   d. The "falling out" was over my insistence on telling the truth

Meeting with New Counsel and AUSA Comey (May 2, 2025)

64. On May 2, 2025—one day after terminating Kramer—I met with AUSA Maureen Comey accompanied by my then civil attorney, Tyrone Blackburn, Esq.

65. At this meeting, I explicitly stated my willingness and ability to testify at trial.

66. I informed AUSA Comey that I had written a book detailing the true conduct of both Sean Combs and Cassandra Ventura.

67. AUSA Comey promised to call me on May 8, 2025 to discuss my testimony.

68. AUSA Comey never called me on May 8, 2025 or any subsequent date.

Exclusion from Trial (May 12, 2025 and thereafter)

69. Trial began on May 12, 2025 without my testimony.

70. During the trial, I contacted my attorney Tyrone Blackburn multiple times seeking information about when I would be called to testify.

71. We were constantly told "the following week," but I was never called to testify.

72. The government used my testimony and evidence I provided during the investigation to prosecute defendant Combs, but excluded me from trial.

73. I was told multiple times by both prosecutors and counsel that I was a "victim and witness."

## IX. DENIAL OF NOTICE OF SENTENCING

74. I was NEVER notified that sentencing was occurring on October 3, 2025.

75. I learned about the sentencing after it had already occurred.

76. I had no opportunity to be present, to be heard.

77. I attempted to submit a victim impact statement on my own without knowledge of when sentencing would could. I mailed it to the Chambers of Hon Arun Subramanian on or about September 29, 2025.

78. This violated my rights under 18 U.S.C. § 3771(a)(2) (right to reasonable, accurate, and timely notice) and § 3771(a)(4) (right to be reasonably heard at sentencing).

## X. FALSE "MENTAL HEALTH" CLAIM

79. I DENY that I ever told Ross Kramer or anyone else that testifying would harm my mental health.

80. This claim was fabricated to justify my exclusion from trial.

81. The timeline proves this claim is false:

   a. Kramer allegedly told prosecutors in April 2025 that I was "too traumatized" to testify

   b. One day after Kramer withdrew (May 1, 2025), I met with AUSA Comey with new counsel (May 2, 2025)

   c. At that meeting, I explicitly confirmed my willingness and ability to testify

   d. If I was truly too traumatized to testify, I would not have immediately retained new counsel and met with prosecutors to confirm my availability

82. The "mental health" excuse was manufactured to protect Cassandra Ventura's narrative by excluding testimony that would damage her credibility.

## XI. DISCOVERY OF CVRA RIGHTS

83. I did not learn about my rights under the Crime Victims' Rights Act until November 2025, after sentencing had already occurred.

84. Ross Kramer never informed me of these rights during his representation of me.

85. Tyrone Blackburn never informed me of these rights during his representation of me.

86. The U.S. Attorney's Office never informed me of these rights despite their statutory duty under 18 U.S.C. § 3771(c)(1).

87. I discovered the CVRA through my own legal research in late October 2025, while attempting to understand why I had been excluded from sentencing and denied information.

88. Once I learned what the CVRA was and the rights it provided, I immediately began work to draft a motion seeking enforcement of my victim rights.

89. I could not have asserted my CVRA rights earlier because I did not know they existed until late October 2025.

## XII. BACKPAGE REMISSION PROGRAM DEADLINE

90. The Backpage Remission Program has a deadline of February 2, 2026 for victims to file claims for restitution related to trafficking through Backpage.com.

91. I cannot file a complete application without the following materials, all of which are in the government's possession:

    a. Victim status verification from the U.S. Attorney's Office

    b. Documentation connecting me to Backpage.com trafficking

    c. Evidence from this case showing interstate transportation

    d. Trial transcripts and exhibits

    e. Other case materials proving my victimization

92. Despite this Court's January 28, 2026 order directing the government to "try to share those documents" with me, the government has refused to provide these materials.

93. I have filed a Backpage Remission application and contacted the fund administrator requesting an extension while I seek compliance from prosecutors.

94. If I cannot obtain victim status verification and supporting documentation before the February 2, 2026 deadline, I will suffer irreparable financial harm and lose my only opportunity to recover restitution for the Backpage trafficking.

## XIII. HARM FROM CVRA VIOLATIONS

95. I have suffered significant harm from the government's violations of my CVRA rights, including:

    a. Loss of Right to Be Heard: I was denied the opportunity to be present at sentencing, to submit a victim impact statement, and to address the court about the impact of defendant Combs's crimes on my life.

    b. Loss of Right to Confer: I was denied the right to confer with the government about the case disposition, plea agreements, and sentencing recommendations.

    c. Potential Loss of Restitution: Due to the government's failure to provide documentation, I face potential loss of my Backpage Remission claim, which is my primary avenue for recovering financial losses.

    d. Dignitary Harm: The government used me as a means to enhance defendant Combs's punishment (counting me as a "victim" for sentencing purposes) while simultaneously denying me the protections and rights afforded to crime victims under federal law.

    e. Ongoing Psychological Trauma: Being treated as expendable—useful for enhancing punishment but unworthy of victim protections—has compounded my psychological trauma from the underlying victimization.

    f. Economic Harm: I was never compensated for:

        i. Expenses for travel from central New Jersey to New York for meetings with prosecutors

        ii. Lost wages from missing work to meet with prosecutors and cooperate with the investigation

        iii. Costs associated with participating in the prosecution

96. I was told I was a "victim and witness" by both prosecutors and counsel, as can be verified through emails with Ross Kramer and communications with the U.S. Attorney's Office.

97. However, I was never informed of my rights as a victim under 18 U.S.C. § 3771.

98. I was never provided the protections the CVRA guarantees to crime victims.

99. I only learned of these rights after I began my own research efforts in response to the misconduct of prosecutors and assigned counsel.

## XIV. GOVERNMENT'S CONTRADICTORY POSITIONS

100.     The government has taken contradictory positions regarding my victim status:

    a. At Sentencing (October 3, 2025): The government represented to the district court that "All ten of these individuals are considered victims" and explicitly listed me as "Clayton Howard, a/k/a 'Dave'" as Victim #2 in Count 3. (Dkt. 516, pp. 41, 69).

    b. In CVRA Opposition (December 23, 2025): The government claimed I "willingly participated" in "commercial sex work" and thus am not entitled to CVRA protections. (Dkt. 602).

101.    The government cannot claim I am a victim when it benefits them (sentencing enhancement) and then claim I am not a victim when it burdens them, and possibly exposes the office to misconduct and victim rights violations (CVRA obligations).

102.    This violates the doctrines of judicial estoppel, due process, and equal protection.

## XV. GOVERNMENT INTERFERENCE PREVENTED TIMELY ASSERTION OF RIGHTS

103.  I could not assert my CVRA rights "before or during" the sentencing proceeding as required by 18 U.S.C. § 3771(d)(5) because:

    a. The government's assigned counsel (Ross Kramer) never informed me of these rights

    b. The government never informed me of these rights despite their statutory duty

    c. The government never notified me that sentencing was occurring

    d. The government actively prevented my participation through false "mental health" claims

    e. I did not discover these rights existed until November 2025, after sentencing

104.  Under *United States v. Stevens*, 239 F.3d 820, 824 (6th Cir. 2001), "Where government interference prevents timely assertion of victim rights, equitable tolling applies."

105.  I cannot be faulted for failing to assert rights I did not know existed at a proceeding I did not know was occurring.

106.  The government cannot benefit from its own violations of the CVRA by claiming my assertion of rights is untimely.

## XVI. I CANNOT CONTROL PROSECUTOR AND ATTORNEY MISCONDUCT

107.  I cannot control the misconduct of prosecutors or the attorneys they assigned to represent me.

108.  I had no knowledge that I would be used for sentencing enhancement and then discarded despite providing truthful testimony that was used to prosecute defendant Sean Combs.

109. I cooperated fully with the government's investigation and prosecution:

    a.  I provided testimony about my victimization

    b.  I provided documents, records, and evidence

    c.  I made myself available for interviews and meetings

    d.  I traveled to New York multiple times at my own expense

    e.  I lost wages to participate in the prosecution

110. I believed the government when prosecutors and counsel told me I was a "victim and witness."

111. I trusted that the government would fulfill its obligations to me under the CVRA.

112. The government's failure to do so, and the assigned counsel's active interference with my rights, should not be held against me.

## XVII. EQUAL PROTECTION VIOLATION

113. The government has treated me differently from Cassandra Ventura without any rational basis:

    a.  Both Engaged in Identical Conduct: Both Ventura and I:

        i.  Traveled interstate for commercial sexual encounters

        ii.  Received compensation or economic benefits

        iii.  Sent text messages suggesting willing participation

        iv.  Continued involvement over multiple years

        v.  Were involved in recruiting or advertising commercial sex

    b.  Ventura's Greater Culpability: According to her own sworn trial testimony:

        vi.  Recruiting escorts "became her job" (NBC News, May 13, 2025)

        vii.  She used Backpage.com to recruit sex workers

        viii.  She sent enthusiastic messages: "I'm always ready to freak off LOLOL"

        ix.  She participated in "almost weekly" encounters for over 10 years

        x.  She questioned the legality of her own conduct

    c.  Differential Treatment: Despite identical or more culpable conduct:

        xi.  Ventura received full CVRA victim status and all protections

        xii.  I was denied all CVRA rights and protections

114. This differential treatment violates the Equal Protection Clause of the Fifth Amendment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

115. The government has provided no rational basis for treating similarly situated persons differently.

XVIII. CONCLUSION

116. I was designated as "Victim #2" by the government and used to enhance defendant Combs's sentence.

117. I was systematically denied every right guaranteed to crime victims under 18 U.S.C. § 3771.

118. The government interfered with my ability to assert these rights through:

    a. Assignment of counsel who protected the government's interests, not mine

    b. Failure to inform me of my victim rights

    c. Failure to notify me of critical proceedings

    d. Active exclusion from trial and sentencing

    e. Non-responsiveness to my repeated attempts to contact victim advocates and prosecutors

119. I discovered my CVRA rights through my own research in late October 2025, after sentencing had already occurred.

120. I immediately began pursuing enforcement of those rights.

121. The government cannot benefit from its own violations of the CVRA by claiming my assertion of rights is untimely.

122. I believe the failure of prosecutors and their assigned counsel to fulfill their obligations under the CVRA should be considered in this Court's decision to provide me with the victim rights I seek.

123. I respectfully request that this Court grant my renewed motion to reopen sentencing and enforce my rights under the Crime Victims' Rights Act.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 5, 2026 at Staten Island, New York.

*Clayton Howard*

CLAYTON HOWARD
24 Orchard Street
Carteret, New Jersey 07008
Telephone: (929) 781-7791

Email: itsclaytonhoward@gmail.com

ATTACHMENTS:

Exhibit A: Victim Acknowledge via Pro Bono Counsel

Exhibit B: Attempts to seek aid from Washington

Exhibit C: Attempts to engage Counsel, Prosecutors, and Victim Witness Advocates

Exhibit D: Termination of Both Pro Bono and Civil Counsel Misconduct